B1 (Official Form 1)(4/10)

| United States Bankruptcy Court<br>Southern District of Texas | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**KT Spears Creek, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**20-1680512** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**5410 Piping Rock**<br>**Houston, TX**<br>ZIP Code **77056** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Harris** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above):     **Elgin, SC** | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) | |
|---|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>■ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other | ☐ Chapter 7<br>☐ Chapter 9<br>■ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13 | ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."     ■ Debts are primarily business debts. | |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

■ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ■ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☐ OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ■ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ■ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1)(4/10)                                                                                                                            Page 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **KT Spears Creek, LLC** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>**X** _____<br>Signature of Attorney for Debtor(s)        (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1)(4/10)

| **Voluntary Petition** | **Name of Debtor(s):** |
|---|---|
| *(This page must be completed and filed in every case)* | **KT Spears Creek, LLC** |

<div align="center">

**Signatures**

</div>

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

| **Signature of Attorney** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|

X **/s/ Matthew Okin**
Signature of Attorney for Debtor(s)

**Matthew Okin 00784695**
Printed Name of Attorney for Debtor(s)

**Okin Adams & Kilmer LLP**
Firm Name

**1113 Vine Street, Suite 201**
**Houston, TX 77002**

_____
Address

**(713) 228-4100  Fax: (888) 865-2118**
Telephone Number

_____
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Kyle D. Tauch**
Signature of Authorized Individual

**Kyle D. Tauch**
Printed Name of Authorized Individual

**Sole Member**
Title of Authorized Individual

_____
Date

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

# KT SPEARS CREEK, LLC
## UNANIMOUS CONSENT
## TO ACTION WITHOUT MEETING
## BY THE SOLE MEMBER

### May 2, 2011

The undersigned, being the sole member of KT Spears Creek, LLC, a South Carolina limited liability company (the "Company"), does hereby unanimously take, consent to, adopt and ratify the following resolutions as the actions of the sole member of the Company pursuant to the South Carolina Limited Liability Company Act, as amended (the "Act"), and the relevant provisions of the Company's Operating Agreement.

WHEREAS, the sole member deems it to be in the best interests of the Company to file a bankruptcy petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for the purpose of reorganizing the Company's business (the "Case").

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:

### *Filing of Bankruptcy Petition*

In the judgment of the sole member, it is in the best interests of the Company, its creditors, and other interested parties that a petition be filed by the Company seeking relief under chapter 11 of the Bankruptcy Code.

### *Retention of Professionals*

The law firm of Okin Adams & Kilmer LLP shall be employed as counsel to the Company under a general retainer; and, as counsel to the Company, is hereby approved to act as general bankruptcy counsel for the Company in the Chapter 11 Case; and

Kyle D. Tauch, as sole member of the Company, shall be, and hereby is, authorized and empowered on behalf of, and in the name of, the Company, to retain and employ other attorneys, investment bankers, accountants, and other professionals to assist the Company in its Chapter 11 Case on such terms as the Mr. Tauch deems necessary or proper.

### *Miscellaneous*

The sole member of the Company hereby authorizes and directs Mr. Tauch, as sole member of the Company, to do such acts, to pay such costs, and to execute and deliver such documents as deemed necessary, appropriate, or advisable in the exercise of his sole and absolute discretion and to carry out the intent of the foregoing resolution.

All actions described in the foregoing resolutions by the Company's sole member, and of any person authorized to act by the Company's sole member, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of

such resolutions, are hereby ratified, confirmed, approved and adopted as acts on the Company's behalf.

IN WITNESS WHEREOF, the undersigned sole member of the Company has executed this written consent to be effective as of the date first above written.

By: _____

Name:  Kyle D. Tauch
Title:  Sole Member

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:                          §
                                §          **CASE NO. 11-33991**
**KT SPEARS CREEK, LLC**        §          **Chapter 11**
                                §
                                §
    **DEBTOR.**                 §
                                §

## NOTICE OF APPEARANCE AND
## REQUEST FOR SERVICE AND PAPERS

Please take notice that the undersigned counsel represents RBC BANK (USA), in the above referenced case, and hereby enters their appearance pursuant to § 1109(b) of the Bankruptcy Code and Bankruptcy Rule 9010(b) and request copies of all notices and pleadings pursuant to Bankruptcy Rules 2002(a), (b), and (f) and 3017(a). All such notices should be addressed as follows:

> David A. Zdunkewicz
> Joseph P. Rovira
> Andrews Kurth LLP
> 600 Travis Street, Suite 4200
> Houston, Texas 77002
> Telephone: (713) 220-4128
> Facsimile: (713) 238-7106
> email: dzdunkewicz@andrewskurth.com
> email: josephrovira@andrewskurth.com
>
> -and-
>
> Constance L. Young[1]
> Johnston, Allison & Hord, PA
> 1065 East Morehead Street
> Charlotte, NC 28204
> Telephone: (704) 998-2259
> Facsimile: (704) 376-1628

---

[1] Simultaneously with this Notice of Appearance, Constance L. Young is filing a Motion to Appear Pro Hac Vice.

email: cyoung@jahlaw.com

PLEASE TAKE FURTHER NOTICE THAT, pursuant to § 1109(b) of the Bankruptcy Code, the foregoing demand includes not only the notices and papers referred to in the Bankruptcy Rules specified above, but also includes, without limitation, notices of any application, complaint, demand, hearing, motion, petition, pleading or request, whether formal or informal, written or oral, and whether transmitted or conveyed by mail, delivery, telephone, telegraph, telex or otherwise filed with regard to the referenced case and the proceedings.

Respectfully submitted this 4th day of May, 2011.

By: */s/ David A. Zdunkewicz*
David A. Zdunkewicz
State Bar No. 22253400
Joseph P. Rovira
State Bar No. 24066008
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200 (Telephone)
(713) 220-4285 (Facsimile)

-and-

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC 28204
Telephone: (704) 998-2259
Facsimile:  (704) 376-1628
email: cyoung@jahlaw.com

**COUNSEL FOR RBC BANK (USA)**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice of Appearance and Request for Service of Papers was served by U.S. first class mail, postage prepaid and/or ECF for all parties listed below and for those parties set up for ECF on this 4th day of May, 2011.


By:  _/s/ Joseph P. Rovira_
      Joseph P. Rovira


KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

Magdalene Duchamp Conner
Okin Adams & Kilmer LLP
1113 Vine Street, Suite 201
Houston, TX 77002

Ellen Maresh Hickman
Office of United States Trustee
515 Rusk, Suite 3516
Houston, TX 77002

UNITED STATES BANKRUPTCY COURT                    SOUTHERN DISTRICT OF TEXAS

MOTION AND ORDER
FOR ADMISSION *PRO HAC VICE*

| Division | Houston | Main Case Number | 11-33991 |
|----------|---------|------------------|----------|
| Debtor | In Re: | KT Spears Creek, LLC | |

This lawyer, who is admitted to the State Bar of _North Carolina, Oklahoma and Georgia_ :

| Name<br>Firm<br>Street<br>City & Zip Code<br>Telephone<br>Licensed: State & Number | Constance L. Young<br>Johnston, Allison & Hord, PA<br>1065 East Morehead Street<br>Charlotte, NC 28204<br>(704) 998-2259<br>North Carolina, # 16115 |
|---|---|

Seeks to appear as the attorney for this party:

| RBC Bank (USA) | |
|---|---|
| Dated: 05/04/2011 | Signed: *Constance L. Young* |

COURT USE ONLY: The applicant's state bar reports their status as: _____.

| Dated: | Signed: _____<br>Deputy Clerk |
|---|---|

| Order |
|---|

This lawyer is admitted *pro hac vice*.

Dated: _____          _____
                                        United States Bankruptcy Judge

# United States Bankruptcy Court
## Southern District of Texas

In re  **KT Spears Creek, LLC**

Debtor(s)

Case No.  **11-33991**

Chapter  **11**

# VERIFICATION OF CREDITOR MATRIX

I, the Sole Member of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:  **May 5, 2011**

**/s/ Kyle D. Tauch**

**Kyle D. Tauch/Sole Member**
Signer/Title

Matthew Okin
Okin Adams & Kilmer LLP
1113 Vine Street, Suite 201
Houston, TX 77002


KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056


United States Trustee's Office
515 Rusk St., Suite 3516
Houston, TX 77002


First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223


First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211


G. William McCarthy, Jr.
W. Harrison Penn
McCarthy Law Firm, LLC
P.O. Nox 11332
Columbia, SC 29211


GREP Atlantic, L.P.


Greystar
3411 Richmond Avenue, Ste. 200
Houston, TX 77046

```
Greystar
750 Bering, Ste. 300
Houston, TX 77057



Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602


IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Atty at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098


IES Residential, Inc.
c/o Christine Kirklin
10203 Mula Circle
Stafford, TX 77477



Jeanne A. Pearson
Johnston, Allison & Hord, P.A.
1065 East Morehead Street
Charlotte, NC 28204



Kyle D. Tauch
701 North Post Oak Road, Ste. 300
Houston, TX 77024



Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202



RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220
```

Richland County



Thomas W. Bunch, II
Robinson McFadden & Moore, P.C.
P.O. Box 944
Columbia, SC 29202

B9F (Official Form 9F) (Chapter 11 Corporation/Partnership Case) (12/08)                              Case Number **11–33991**

---

## UNITED STATES BANKRUPTCY COURT Southern District of Texas

### Notice of
### Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 11 bankruptcy case concerning the debtor(s) listed below was filed on 5/3/11.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below.
NOTE:   The staff of the bankruptcy clerk's office cannot give legal advice.

## See Reverse Side For Important Explanations

| Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address): KT Spears Creek, LLC 5410 Piping Rock Houston, TX 77056 | |
|---|---|
| Case Number: 11–33991 | Social Security / Individual Taxpayer ID / Employer Tax ID / Other nos: 20–1680512 |
| Attorney for Debtor(s) (name and address): Magdalene Duchamp Conner Okin Adams & Kilmer LLP 1113 Vine Street, Suite 201 Houston, TX 77002 Telephone number:   713–228–4100 | |

### Meeting of Creditors

Date:  **June 2, 2011**                                        Time:  **01:00 PM**
Location:  **Suite 3401, 515 Rusk Ave, Houston, TX 77002**

### Deadline to File a Proof of Claim

Proof of claim must be *received* by the bankruptcy clerk's office by the following deadline:

For all creditors (except a governmental unit):  **8/31/11**                  For a governmental unit:

### Creditor with a Foreign Address:

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts:

### Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:** United States Bankruptcy Court PO Box 61010 Houston, TX 77208 Telephone number:   (713) 250–5500 | **For the Court:** Clerk of the Bankruptcy Court: David J. Bradley |
|---|---|
| Hours Open:  Monday – Friday 9:00 AM – 5:00 PM | Date:   5/5/11 |

# EXPLANATIONS

B9F (Official Form 9F) (12/08)

| | |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code §§ 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor's representative must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on the plan. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadlines for filing claims set forth on the front of this notice apply to all creditors. If this notice has been mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code §§ 1141(d). A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code §§ 1141(d)(6)(A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

## Refer to Other Side for Important Deadlines and Notices

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of Texas

In re    **KT Spears Creek, LLC**

Debtor(s)

Case No.    **11-33991**

Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br>*Name of creditor and complete mailing address including zip code* | (2)<br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **Richland County South Carolina**<br>**2020 Hampton Street**<br>**Columbia, SC 29204** | **Richland County South Carolina**<br>**2020 Hampton Street**<br>**Columbia, SC 29204** | **Taxes** | | **25,000.00** |
| **Nexsen Pruett, LLC**<br>**Attn:  Henry W. Brown**<br>**P.O. Drawer 2426**<br>**Columbia, SC 29202** | **Nexsen Pruett, LLC**<br>**Attn:  Henry W. Brown**<br>**P.O. Drawer 2426**<br>**Columbia, SC 29202** | **Legal Fees** | | **10,000.00** |
| **Orkin, Inc.**<br>**P.O. Box 71869**<br>**North Charleston, SC 29415** | **Orkin, Inc.**<br>**P.O. Box 71869**<br>**North Charleston, SC 29415** | **Vendor** | | **276.00** |
| **Signs by Tomorrow**<br>**7364 Two Notch Road**<br>**Columbia, SC 29223** | **Signs by Tomorrow**<br>**7364 Two Notch Road**<br>**Columbia, SC 29223** | **Vendor** | | **160.25** |
| **First Palmetto Savings Bank**<br>**1636 HWY 17 North**<br>**Columbia, SC 29223** | **First Palmetto Savings Bank**<br>**1636 HWY 17 North**<br>**Columbia, SC 29223** | **Loan # 77-075616-3** | **Contingent**<br>**Unliquidated**<br>**Disputed** | **870,000.00**<br><br>**(Unknown secured)** |
| **First Savers Bank, a division of**<br>**Plantation Federal Bank**<br>**c/o Amy L.B. Hill**<br>**1310 Gadsden Street, P.O. Box 11449**<br>**Columbia, SC 29211** | **First Savers Bank, a division of Plantation Federal Bank**<br>**c/o Amy L.B. Hill**<br>**Columbia, SC 29211** | **Pending lawsuit** | **Contingent**<br>**Unliquidated**<br>**Disputed** | **6,300,000.00**<br><br>**(Unknown secured)** |
| **Hyco Plumbing, Inc.**<br>**c/o N. Ward Lambert**<br>**Harper Lambert & Brown**<br>**P.O. Box 908**<br>**Greenville, SC 29602** | **Hyco Plumbing, Inc.**<br>**c/o N. Ward Lambert**<br>**Harper Lambert & Brown**<br>**Greenville, SC 29602** | **Confession of Judgment Entered August 4, 2010** | | **Unknown**<br><br>**(Unknown secured)** |

B4 (Official Form 4) (12/07) - Cont.

In re   **KT Spears Creek, LLC**                                         Case No.   **11-33991**
_____
Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **IES Residential, Inc. f/k/a Houston-Stafford Electric c/o Stephen E. Toomey, Atty at Law 4200 South Shepherd, Ste. 212 Houston, TX 77098** | **IES Residential, Inc. f/k/a Houston-Stafford Electric c/o Stephen E. Toomey, Atty at Law Houston, TX 77098** | **Judgment** | | **Unknown** |
| **RBC P.O. Box 1220 Rocky Mount, NC 27802-1220** | **RBC P.O. Box 1220 Rocky Mount, NC 27802-1220** | **Pending lawsuit** | **Contingent Unliquidated Disputed** | **22,646,397.88**<br><br>**(Unknown secured)** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B4 (Official Form 4) (12/07) - Cont.

In re    **KT Spears Creek, LLC**
_____
Debtor(s)

Case No.    **11-33991**
_____

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Sole Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    **May 6, 2011**
_____

Signature    **/s/ Kyle D. Tauch**
_____
**Kyle D. Tauch**
**Sole Member**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

B9F (Official Form 9F) (Chapter 11 Corporation/Partnership Case) (12/08)                    Case Number **11−33991**

| UNITED STATES BANKRUPTCY COURT Southern District of Texas |
|---|

## Notice of
## Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 11 bankruptcy case concerning the debtor(s) listed below was filed on 5/3/11.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below.
NOTE:   The staff of the bankruptcy clerk's office cannot give legal advice.

## See Reverse Side For Important Explanations

| Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):<br>KT Spears Creek, LLC<br>5410 Piping Rock<br>Houston, TX 77056 | |
|---|---|
| Case Number:<br>11−33991 | Social Security / Individual Taxpayer ID / Employer Tax ID / Other nos:<br>20−1680512 |
| Attorney for Debtor(s) (name and address):<br>Magdalene Duchamp Conner<br>Okin Adams & Kilmer LLP<br>1113 Vine Street, Suite 201<br>Houston, TX 77002<br>Telephone number:   713−228−4100 | |

## Meeting of Creditors

Date:   **June 2, 2011**                                  Time:   **01:00 PM**
Location:   **Suite 3401, 515 Rusk Ave, Houston, TX 77002**

## Deadline to File a Proof of Claim

Proof of claim must be *received* by the bankruptcy clerk's office by the following deadline:
For all creditors (except a governmental unit):   **8/31/11**                          For a governmental unit:

### Creditor with a Foreign Address:
A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts:

## Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:**<br>United States Bankruptcy Court<br>PO Box 61010<br>Houston, TX 77208<br>Telephone number:   (713) 250−5500 | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>David J. Bradley |
|---|---|
| Hours Open:   Monday – Friday 9:00 AM – 5:00 PM | Date:   5/5/11 |

## EXPLANATIONS

B9F (Official Form 9F) (12/08)

| | |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor's representative must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on the plan. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadlines for filing claims set forth on the front of this notice apply to all creditors. If this notice has been mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code § 1141(d). A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code §§ 1141(d)(6)(A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

### Refer to Other Side for Important Deadlines and Notices

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Southern District of Texas | PROOF OF CLAIM |
|---|---|

| Name of Debtor: KT Spears Creek, LLC | Case Number:    11-33991 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent: | **Court Claim Number:_____**<br>*(If known)* |
| Telephone number: | Filed on:_____ |
| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| | ☐ Check this box if you are the debtor or trustee in this case. |
| Telephone number: | |

**1. Amount of Claim as of Date Case Filed:**        $_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** _____
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

   **3a. Debtor may have scheduled account as:** _____
         (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   **Nature of property or right of setoff:**  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   **Describe:**

   **Value of Property: $_____    Annual Interest Rate___%**

   **Amount of arrearage and other charges as of time case filed included in secured claim,**

   **if any: $_____    Basis for perfection: _____**

   **Amount of Secured Claim: $_____    Amount Unsecured: $_____**

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*\*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| **Date:** | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**B10 (Official Form 10) (04/10) - Cont.**

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____**DEFINITIONS**_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)** Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____**INFORMATION**_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

United States Bankruptcy Court
Southern District of Texas

In re:                                                              Case No. 11-33991-lzp
KT Spears Creek, LLC                                               Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: dhan              Page 1 of 1          Date Rcvd: May 05, 2011
                              Form ID: b9f            Total Noticed: 21

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
May 07, 2011.
db          +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
aty         +David A Zdunkewicz,   Andrews Kurth,   600 Travis,   Ste 4200,   Houston, TX 77002-2929
aty         +Joseph Peak Rovira,   Andrews Kurth LLP,   600 Travis,   Suite 4200,   Huston, TX 77002-2929
aty         +Magdalene Duchamp Conner,   Okin Adams & Kilmer LLP,   1113 Vine Street, Suite 201,
             Houston, TX 77002-1045
7462826      First Palmetto Savings Bank,   1636 HWY 17 North,   Columbia, SC 29223
7462827     +First Savers Bank, a division of,   Plantation Federal Bank,   c/o Amy L.B. Hill,
             1310 Gadsden Street, P.O. Box 11449,   Columbia, SC 29211-1449
7462828     +G. William McCarthy, Jr.,   W. Harrison Penn,   McCarthy Law Firm, LLC,   P.O. Nox 11332,
             Columbia, SC 29211-1332
7462831     +Greystar,   750 Bering, Ste. 300,   Houston, TX 77057-2112
7462830     +Greystar,   3411 Richmond Avenue, Ste. 200,   Houston, TX 77046-3412
7462832     +Hyco Plumbing, Inc.,   c/o N. Ward Lambert,   Harper Lambert & Brown,   P.O. Box 908,
             Greenville, SC 29602-0908
7462833     +IES Residential, Inc.,   f/k/a Houston-Stafford Electric,   c/o Stephen E. Toomey, Atty at Law,
             4200 South Shepherd, Ste. 212,   Houston, TX 77098-5354
7462834     +IES Residential, Inc.,   c/o Christine Kirklin,   10203 Mula Circle,   Stafford, TX 77477-3326
7462835     +Jeanne A. Pearson,   Johnston, Allison & Hord, P.A.,   1065 East Morehead Street,
             Charlotte, NC 28204-2812
7462836     +Kyle D. Tauch,   701 North Post Oak Road, Ste. 300,   Houston, TX 77024-3818
7462823     +Matthew Okin,   Okin Adams & Kilmer LLP,   1113 Vine Street, Suite 201,   Houston, TX 77002-1045
7462837     +Nexsen Pruett, LLC,   Attn: Henry W. Brown,   P.O. Drawer 2426,   Columbia, SC 29202-2426
7462838      RBC,   P.O. Box 1220,   Rocky Mount, NC 27802-1220
7462840     +Thomas W. Bunch, II,   Robinson McFadden & Moore, P.C.,   P.O. Box 944,   Columbia, SC 29202-0944

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
aty          +E-mail/Text: ustpregion07.hu.ecf@usdoj.gov May 05 2011 20:17:00   Ellen Maresh Hickman,
              Office of the U S Trustee,   515 Rusk St,   Ste 3516,   Houston, TX 77002-2604
ust          +E-mail/Text: ustpregion07.hu.ecf@usdoj.gov May 05 2011 20:17:00   US Trustee,
              Office of the US Trustee,   515 Rusk Ave,   Ste 3516,   Houston, TX 77002-2604
7462825      +E-mail/Text: ustpregion07.hu.ecf@usdoj.gov May 05 2011 20:16:59
              United States Trustee's Office,   515 Rusk St., Suite 3516,   Houston, TX 77002-2604
                                                                                       TOTAL: 3

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
intp          RBC Bank (USA)
7462829       GREP Atlantic, L.P.
7462839       Richland County
7462824*     +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
                                                                              TOTALS: 3, * 1, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: May 07, 2011**                    **Signature:**   _Joseph Speetjens_



**ENTERED**
**05/08/2011**

UNITED STATES BANKRUPTCY COURT          SOUTHERN DISTRICT OF TEXAS

MOTION AND ORDER
FOR ADMISSION *PRO HAC VICE*

| Division | Houston | Main Case Number | 11-33991 |
|---|---|---|---|
| Debtor | In Re: | KT Spears Creek, LLC | |

This lawyer, who is admitted to the State Bar of ___North Carolina, Oklahoma and Georgia___ :

| Name / Firm / Street / City & Zip Code / Telephone / Licensed: State & Number | Constance L. Young<br>Johnston, Allison & Hord, PA<br>1065 East Morehead Street<br>Charlotte, NC 28204<br>(704) 998-2259<br>North Carolina, # 16115 |
|---|---|

Seeks to appear as the attorney for this party:

| RBC Bank (USA) | |
|---|---|
| Dated: 05/04/2011 | Signed: _Constance L. Young_ |

| COURT USE ONLY: The applicant's state bar reports their status as: _active_ | |
|---|---|
| Dated: 5/5/11 | Signed: _Maria Rodriguez_<br>Deputy Clerk |

| Order |
|---|

This lawyer is admitted *pro hac vice*.

DATED: May 5, 2011

_Leticia Z. Paul_

UNITED STATES BANKRUPTCY JUDGE

#4

## United States Bankruptcy Court
### Southern District of Texas

In re  **KT Spears Creek, LLC**

_____
Debtor(s)

Case No.  **11-33991**
Chapter  **11**

# VERIFICATION OF CREDITOR MATRIX - AMENDED

I, the Sole Member of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:  **May 10, 2011**

**/s/ Kyle D. Tauch**
**Kyle D. Tauch/Sole Member**
Signer/Title

Matthew Okin
Okin Adams & Kilmer LLP
1113 Vine Street, Suite 201
Houston, TX 77002


KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056


United States Trustee's Office
515 Rusk St., Suite 3516
Houston, TX 77002


ALLIED WASTE SERVICES #993
LEXINGTON P.O. BOX 9001265,
LOUISVILLE, KY 40290-1265


Apartment Association of Greater Columbi
P. O. Box 7515
Columbia, SC 29202


APARTMENT NEWSLETTERS.COM
PO Box 699
Grapevine, TX 76099


Apartments.com
16610 COLLECTION CENTER DRIVE
Chicago, IL 60693


APARTMENTS.COM LLC
2563 Collection Center Drive
Chicago, IL 60693

APPLIANCE WAREHOUSE OF  AMERICA, INC.
Lockbox 847696
DALLAS, TX 75284-7696


APPLIANCE WAREHOUSE OF AMERICA, INC.
LOCKBOX 847696
DALLAS, TX 75284-7696


AT & T
P.O. Box 105262
Atlanta, GA 30348


AT&T
PO BOX 105262
ATLANTA, GA 30348-5262


AUDIO IMAGES INC
PO Box 550819
JACKSONVILLE, FL 32255


AUDIO IMAGES, INC.
PO BOX 550819
JACKSONVILLE, FL 32255


BENSON MEDIA, INC
220 Turner Boulevard
Ball Ground, GA 30107


Buzzier Bee's LLC
930 East Main St, Apt 915
Lexington, SC 29072

CAPTURE THE MARKET
7750 North MacArthur Boulevard, Suite 12
Irving, TX 75063


Cedric Stover
10682 Two Notch Road
Elgin, SC 29045


CITY OF COLUMBIA
1136 Washington Street
Columbia, SC 29201


CONSUMER SOURCE INC.
PO BOX 402039
Atlanta, GA 30384


CONSUMER SOURCE, INC.
PO BOX 402039
ATLANTA, GA 30384-2039


County of Richland
Office of County Treasurer
P.O. Box 11947
Columbia, SC 29211


DUPLICATING PRODUCTS, INC.
150 Lott Court
West Columbia, SC 29169


ELITE RENTING LLC
PO BOX 4152
SEATTLE, WA 98194

ELITE RENTING, LLC
PO Box 4152
Seattle, WA 98194


ELLIS PARTNERS IN MYSTERY SHOPPING
4324 North Beltline Road
Irving, TX 75038


FAIRFIELD ELECTRIC COOPERATIVE
P.O. Box 2500
Blythewood, SC 29016


FedEx
P.O. Box 371461
Pittsburg, PA 15250-7461


First Advantage Saferent
P.O. Box 402453
Atlanta, GA 30384-2453


First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223


First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211


Floor Mart West Inc.
4336 Augusta Road
Lexington, SC 29073

FLOOR MART WEST, INC.
4336 Augusta Road
Lexington, SC 29073-9151


G. William McCarthy, Jr.
W. Harrison Penn
McCarthy Law Firm, LLC
P.O. Nox 11332
Columbia, SC 29211


GREP Atlantic, L.P.


Greystar
3411 Richmond Avenue, Ste. 200
Houston, TX 77046


Greystar
750 Bering, Ste. 300
Houston, TX 77057


HANDY TRAC SYSTEMS
510 Staghorn  Court
Alpharetta, GA 30004


HD SUPPLY FACILITIES MAINTENANCE
PO Box 509058
San Diego, CA 92150-9058


Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Atty at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098


IES Residential, Inc.
c/o Christine Kirklin
10203 Mula Circle
Stafford, TX 77477


Jeanne A. Pearson
Johnston, Allison & Hord, P.A.
1065 East Morehead Street
Charlotte, NC 28204


Kyle D. Tauch
701 North Post Oak Road, Ste. 300
Houston, TX 77024


LaCresha Johnson
10682 Two Notch Road
Elgin, SC 29045


LEVEL ONE CORE LEASING SOLUTIONS
PO BOX 671476
Dallas, TX 75267-1476


LEVEL ONE, LLC
1511 S. Batesville Road
Greer, SC 29650


Lexis Nexis Screening Solutions, Inc.
1000 Alderman Drive
Alpharetta, GA 30005

```
MARLIN LEASING
PO Box 13604
PHILADELPHIA, PA 19101-3604




MARLIN LEASING CORP
PO BOX 13604
PHILADELPHIA, PA 19101-3604




MAXX Fitness Inc.
POBox 7654
Myrtle Beach, SC 29572




MISTY JONES CLEANING
531 Foremost Drive
Lexington, SC 29073




NETWORK COMMUNICATIONS, INC.
PO Box 935080
Atlanta, GA 31193-5080




Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202




OFFICE DEPOT
P.O. Box 88040
Chicago, IL 60680-1040




Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415
```

Orkin, LLC
1126 Silstar Rd
West Columbia, SC 29170


PALMETTO UTILITIES INC.
1710 WOODCREEK FARMS; INC.
Elgin, SC 29045


PALMETTO UTILITIES, INC.
1710 Woodcreek Farms, Inc.
Elgin, SC 29045


Private I Print Promotions, LLC
PO Box 937, Mount Pleasan
Mount Pleasant, SC 29465


PROTECTION SYSTEMS TECHNOLOGIES, INC.
PO Box 411821,  ,   28241
Charlotte, NC 28241


RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220


RENT.COM
Rent.com - Payment Center, Department 19
LOS ANGELES, CA 90084-1987


RENT.COM / VIVA GROUP, INC.
PAYMENT CENTER DEPT 1987
LOS ANGELES, CA 90084

RENTWIKI.COM
264 19th Street, Suite 2230
Atlanta, GA 30363


Richland County Business Service Center
P.O. Box 192
Columbia, SC 29202


SALUDA HILL INC.
P.O. Box 2518, 2025 Industrial Blvd.
Lexington, SC 29071


SANDY RUN EXTERMINATING COMPANY, INC.
189 Julia Lane
Gaston, SC 29053


ScentAir Technologies, Inc
P.O. Box 534448
Atlanta, GA 30353-4448


SECURITY CENTRAL
PO Box 5759,
Statesville, NC 28687


Sherwin Williams
GREYSTAR MASTER ACCOUNT, PO Box 277499
Atlanta, GA 30384


Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

SOUTH CAROLINA APARTMENT ASSOCIATION
PO Box 1763
Columbia, SC 29202


South Carolina Department of Health &
POBox 100103, Columbia, SC  29202
Columbia, SC 29202


SOUTHERN COMFORT PROPERTY MAINT.
3801 Country Club Blvd. #7
Cape Coral, FL 33914


SOUTHERN COMFORT SERVICES
813 Woodtrail Dr., Gaston, SC  29053
Gaston, SC 29053


Steam Systems LLC
POBox 2661
West Columbia, SC 29171


STEAM SYSTEMS, LLC
PO Box 2661
West Columbia, SC 29171


Tara Allen
10682 Two Notch Road
Elgin, SC 29045


Thomas W. Bunch, II
Robinson McFadden & Moore, P.C.
P.O. Box 944
Columbia, SC 29202

```
Universal Background Screening
7720 N 16th Street Suite 200
Phoenix, AZ 85020



WILMAR INDUSTRIES
PO Box 404284
Atlanta, GA 30384-4284
```

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |
| | § | |

## CERTIFICATE OF SERVICE
(Relates to Docket Nos. 6 and 8.)

I hereby certify that I served a true and correct copy of the Notice of Bankruptcy Case, Meeting of Creditors and Deadlines and Proof of Claim form attached hereto as **Exhibit A** upon the parties identified on the attached Service List *via* regular United States mail on May 11, 2011.

Dated:  May 11, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: */s/ Maggie D. Conner*
        Matthew S. Okin
        Texas Bar #00784695
        Maggie D. Conner
        Texas Bar. #24038439
        1113 Vine St., Suite 201
        Houston, TX  77002
        Tel:  713- 228-4100
        Fax:  888-865-2118
        mokin@oakllp.com
        mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE DEBTOR**

SERVICE LIST

ALLIED WASTE SERVICES #993
LEXINGTON P.O. BOX 9001265,
LOUISVILLE, KY 40290-1265

Apartment Association of Greater
Columbia
P. O. Box 7515
Columbia, SC 29202

APARTMENT NEWSLETTERS.COM
PO Box 699
Grapevine, TX 76099

Apartments.com
16610 COLLECTION CENTER DRIVE
Chicago, IL 60693

APARTMENTS.COM LLC
2563 Collection Center Drive
Chicago, IL 60693

APPLIANCE WAREHOUSE OF AMERICA,
INC.
LOCKBOX 847696
DALLAS, TX 75284-7696

AT&T
PO BOX 105262
ATLANTA, GA 30348-5262

AUDIO IMAGES, INC.
PO BOX 550819
JACKSONVILLE, FL 32255

BENSON MEDIA, INC
220 Turner Boulevard
Ball Ground, GA 30107

Buzzier Bee's LLC
930 East Main St, Apt 915
Lexington, SC 29072

CAPTURE THE MARKET
7750 North MacArthur Boulevard, Suite 12
Irving, TX 75063

Cedric Stover
10682 Two Notch Road
Elgin, SC 29045

CITY OF COLUMBIA
1136 Washington Street
Columbia, SC 29201

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina 28204

CONSUMER SOURCE, INC.
PO BOX 402039
ATLANTA, GA 30384-2039

County of Richland
Office of County Treasurer
P.O. Box 11947
Columbia, SC 29211

DUPLICATING PRODUCTS, INC.
150 Lott Court
West Columbia, SC 29169

ELITE RENTING LLC
PO BOX 4152
SEATTLE, WA 98194

ELLIS PARTNERS IN MYSTERY SHOPPING
4324 North Beltline Road
Irving, TX 75038

FAIRFIELD ELECTRIC COOPERATIVE
P.O. Box 2500
Blythewood, SC 29016

FedEx
P.O. Box 371461
Pittsburg, PA 15250-7461

First Advantage Saferent
P.O. Box 402453
Atlanta, GA 30384-2453

FLOOR MART WEST, INC.
4336 Augusta Road
Lexington, SC 29073-9151

G. William McCarthy, Jr.
W. Harrison Penn
McCarthy Law Firm, LLC
P.O. Nox 11332
Columbia, SC 29211

GREP Atlantic, L.P.
Greystar
3411 Richmond Avenue, Ste. 200
Houston, TX 77046

Greystar
750 Bering, Ste. 300
Houston, TX 77057

Greystar
Lisa Taylor
521 East Morehead Street, Suite 140
Charlotte, North Carolina 28202

Greystar
Kelly Carrig
10682 Two Notch Road
Elgin, South Carolina 29045

HANDY TRAC SYSTEMS
510 Staghorn Court
Alpharetta, GA 30004

HD SUPPLY FACILITIES MAINTENANCE
PO Box 509058
San Diego, CA 92150-9058

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina

LaCresha Johnson
10682 Two Notch Road
Elgin, SC 29045

LEVEL ONE CORE LEASING SOLUTIONS
PO BOX 671476
Dallas, TX 75267-1476

LEVEL ONE, LLC
1511 S. Batesville Road
Greer, SC 29650

Lexis Nexis Screening Solutions, Inc.
1000 Alderman Drive
Alpharetta, GA 30005

MARLIN LEASING CORP
PO BOX 13604
PHILADELPHIA, PA 19101-3604

MAXX Fitness Inc.
POBox 7654
Myrtle Beach, SC 29572

MISTY JONES CLEANING
531 Foremost Drive
Lexington, SC 29073

NETWORK COMMUNICATIONS, INC.
PO Box 935080
Atlanta, GA 31193-5080

OFFICE DEPOT
P.O. Box 88040
Chicago, IL 60680-1040

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Orkin, LLC
1126 Silstar Rd
West Columbia, SC 29170

PALMETTO UTILITIES, INC.
1710 Woodcreek Farms, Inc.
Elgin, SC 29045

Private I Print Promotions, LLC
PO Box 937, Mount Pleasan
Mount Pleasant, SC 29465

PROTECTION SYSTEMS
TECHNOLOGIES, INC.
PO Box 411821,
Charlotte, NC 28241

RENT.COM
Rent.com - Payment Center,
Department 19
LOS ANGELES, CA 90084-1987

RENT.COM / VIVA GROUP, INC.
PAYMENT CENTER DEPT 1987
LOS ANGELES, CA 90084

RENTWIKI.COM
264 19th Street, Suite 2230
Atlanta, GA 30363

Richland County Business Service Center
P.O. Box 192
Columbia, SC 29202

SALUDA HILL INC.
P.O. Box 2518, 2025 Industrial Blvd.
Lexington, SC 29071

SANDY RUN EXTERMINATING
COMPANY, INC.
189 Julia Lane
Gaston, SC 29053

ScentAir Technologies, Inc
P.O. Box 534448
Atlanta, GA 30353-4448

SECURITY CENTRAL
PO Box 5759,
Statesville, NC 28687

Sherwin Williams
GREYSTAR MASTER ACCOUNT,
PO Box 277499
Atlanta, GA 30384

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

SOUTH CAROLINA APARTMENT
ASSOCIATION
PO Box 1763
Columbia, SC 29202

South Carolina Department of Health &
POBox 100103, Columbia, SC 29202
Columbia, SC 29202

SOUTHERN COMFORT PROPERTY MAINT.
3801 Country Club Blvd. #7
Cape Coral, FL 33914

SOUTHERN COMFORT SERVICES
813 Woodtrail Dr., Gaston, SC 29053
Gaston, SC 29053

STEAM SYSTEMS, LLC
PO Box 2661
West Columbia, SC 29171

Tara Allen
10682 Two Notch Road
Elgin, SC 29045

Universal Background Screening
7720 N 16th Street Suite 200
Phoenix, AZ 85020

WILMAR INDUSTRIES
PO Box 404284
Atlanta, GA 30384-4284

# Exhibit A

Case 10-44241-H3-99 Doc 1 Filed 07/05/11 in TXSB on 07/05/11 18:12:45 Desc Main
Case 11-33991 Document 3 Filed in TXSB on 05/07/11 Page 1 of 3
Document Page 42 of 824

B9F (Official Form 9F) (Chapter 11 Corporation/Partnership Case) (12/08)    Case Number **11–33991**

## UNITED STATES BANKRUPTCY COURT Southern District of Texas

### Notice of
### Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 11 bankruptcy case concerning the debtor(s) listed below was filed on 5/3/11.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights.
All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below.
NOTE: The staff of the bankruptcy clerk's office cannot give legal advice.

### See Reverse Side For Important Explanations

| | |
|---|---|
| Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):<br>KT Spears Creek, LLC<br>5410 Piping Rock<br>Houston, TX 77056 | |
| Case Number:<br>11–33991 | Social Security / Individual Taxpayer ID / Employer Tax ID / Other nos:<br>20–1680512 |
| Attorney for Debtor(s) (name and address):<br>Magdalene Duchamp Conner<br>Okin Adams & Kilmer LLP<br>1113 Vine Street, Suite 201<br>Houston, TX 77002<br>Telephone number:  713–228–4100 | |

### Meeting of Creditors

Date: **June 2, 2011**                    Time:  **01:00 PM**
Location:  **Suite 3401, 515 Rusk Ave, Houston, TX 77002**

### Deadline to File a Proof of Claim

Proof of claim must be *received* by the bankruptcy clerk's office by the following deadline:

For all creditors (except a governmental unit):  **8/31/11**              For a governmental unit:

### Creditor with a Foreign Address:

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts:

### Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| | |
|---|---|
| Address of the Bankruptcy Clerk's Office:<br>United States Bankruptcy Court<br>PO Box 61010<br>Houston, TX 77208<br>Telephone number:  (713) 250–5500 | For the Court:<br>Clerk of the Bankruptcy Court:<br>David J. Bradley |
| Hours Open:  Monday – Friday 9:00 AM – 5:00 PM | Date:  5/5/11 |

## EXPLANATIONS

B9F (Official Form 9F) (12/08)

| | |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code §§ 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor's representative must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on the plan. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadlines for filing claims set forth on the front of this notice apply to all creditors. If this notice has been mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code §§ 1141(d). A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code §§ 1141(d)(6)(A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

## Refer to Other Side for Important Deadlines and Notices

Case 1:04-cv-14...1999-Doc#14...Filed 07/05/14...in TXSB 07/05/11 18:12:15 4 Desc Main
Case 11-33991 Document 8 Filed in TXSB on 05/07/11 Page 3 of 5
Document Page 44 of 824

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT **Southern District of Texas** | | **PROOF OF CLAIM** |
|---|---|---|
| Name of Debtor: KT Spears Creek, LLC | Case Number: | 11-33991 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: | **Court Claim Number:**_____ <br> (*If known*) <br><br> Filed on:_____ |
| Telephone number: | |
| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $_____ <br><br> If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. <br><br> If all or part of your claim is entitled to priority, complete item 5. <br><br> ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** <br><br> Specify the priority of the claim. <br><br> ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** _____ <br> (See instruction #2 on reverse side.) <br> **3. Last four digits of any number by which creditor identifies debtor:** _____ <br><br>       **3a. Debtor may have scheduled account as:** _____ <br>       (See instruction #3a on reverse side.) <br> **4. Secured Claim (See instruction #4 on reverse side.)** <br> Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. <br><br> **Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other <br> **Describe:** <br><br> **Value of Property:** $_____   **Annual Interest Rate**____% <br><br> **Amount of arrearage and other charges as of time case filed included in secured claim,** <br><br> if any: $_____ **Basis for perfection:** _____ <br><br> **Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____ | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). <br><br> ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5). <br><br> ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7). <br><br> ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). <br><br> ☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:** <br><br> $_____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) <br><br> DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. <br><br> If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| **Date:** | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | **FOR COURT USE ONLY** |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B10 (Official Form 10) (04/10) - Cont.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.



**ENTERED**
**05/08/2011**

UNITED STATES BANKRUPTCY COURT          SOUTHERN DISTRICT OF TEXAS

MOTION AND ORDER
FOR ADMISSION *PRO HAC VICE*

| Division | Houston | Main Case Number | 11-33991 |
|---|---|---|---|
| Debtor | In Re: | KT Spears Creek, LLC | |

This lawyer, who is admitted to the State Bar of ___North Carolina, Oklahoma and Georgia___ :

| | |
|---|---|
| Name<br>Firm<br>Street<br>City & Zip Code<br>Telephone<br>Licensed State & Number | Constance L. Young<br>Johnston, Allison & Hord, PA<br>1065 East Morehead Street<br>Charlotte, NC 28204<br>(704) 998-2259<br>North Carolina, # 16115 |

Seeks to appear as the attorney for this party:

| RBC Bank (USA) | |
|---|---|
| Dated: 05/04/2011 | Signed: *Constance L. Young* |

| COURT USE ONLY: The applicant's state bar reports their status as: *active* . | |
|---|---|
| Dated: 5/5/11 | Signed: *Maria Rodriguez*<br>Deputy Clerk |

Order

This lawyer is admitted *pro hac vice.*

DATED:  May 5, 2011

*Jetitia Z Paul*

UNITED STATES BANKRUPTCY JUDGE

#4

United States Bankruptcy Court
Southern District of Texas

In re:                                                                    Case No. 11-33991-lzp
KT Spears Creek, LLC                                                      Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod              Page 1 of 1              Date Rcvd: May 09, 2011
                              Form ID: pdf002         Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
May 11, 2011.
db            +KT Spears Creek, LLC,    5410 Piping Rock,    Houston, TX 77056-4916

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                              TOTAL: 0

         ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
intp          RBC Bank (USA)
                                                                      TOTALS: 1, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: May 11, 2011**                    **Signature:**    _Joseph Speetjens_

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| **KT SPEARS CREEK, LLC,** | § | **(Chapter 11)** |
| | § | |
| Debtor. | § | |

## MOTION TO SUBSTITUTE COUNSEL

Creditor, RBC Bank (USA) hereinafter ("RBC") moves the Court to allow a substitution of its counsel of record, and would show:

1.     RBC is currently represented by David A. Zdunkewicz and Joseph P. Rovira of Andrews Kurth, LLP.

2.     RBC requests Joseph G. Epstein and Winstead PC to substitute as its counsel of record in place of David A. Zdunkewicz and Joseph P. Rovira.

3.     Joseph G. Epstein with the law firm of Winstead PC at 600 Travis, Suite 1100 in Houston, Texas  77002 has agreed to substitute as RBC's attorney of record in this case.

4.     This Motion is not sought for delay, but so that justice may be done.

5.     Accordingly, RBC requests the Court's permission to allow David A. Zdunkewicz and Joseph P. Rovira to withdraw as its attorneys of record and to allow Joseph G. Epstein to be substituted in their place, effective immediately.

WHEREFORE, PREMISES CONSIDERED, RBC Bank (USA) respectfully requests this Court to grant this Motion to Substitute Counsel, allowing its counsel to be substituted, as set forth above, and for such other and further relief, both at law and in equity, to which RBC may be entitled.

Respectfully submitted,

**WINSTEAD PC**
600 Travis Street, Suite 1100
Houston, Texas 77002
(713) 650-8400 (telephone)
(713) 650-2400 (facsimile)

By: _____
        Joseph G. Epstein
        Texas Bar No. 06639320
        S.D. Tex. No. 11733


**ATTORNEY FOR RBC BANK (USA)**


## CERTIFICATE OF CONFERENCE

I hereby certify that I, Joseph G. Epstein, as proposed counsel for RBC, conferred with David A. Zdunkewicz and Joseph P. Rovira, counsel for Creditor, on May 12, 2011, and they are not opposed to this Motion.

_____
Joseph G. Epstein

## CERTIFICATE OF SERVICE

On this 12th day of May, 2011, a true and correct copy of the foregoing pleading was forwarded to the parties listed below.

KT Spears Creek, LLC
5410 Piping Rock
Houston, TX  77056

Magdalene Duchamp Conner
Okin Adams & Kilmer LLP
1113 Vine Street, Suite 201
Houston, Texas  77002

Ellen Maresh Hickman
Office of United State Trustee
515 Rusk, Suite 3516
Houston, Texas  77002


Joseph G. Epstein

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| KT SPEARS CREEK, LLC, | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

## ORDER GRANTING MOTION TO SUBSTITUTE COUNSEL

On this day came on to be heard the Motion to Substitute Counsel, filed by Creditor, RBC Bank (USA). After reviewing such motion and all other matters properly before it, the Court is of the opinion that such motion should be granted. It is, therefore,

ORDERED that David A. Zdunkewicz and Joseph P. Rovira are hereby permitted to withdraw as attorneys-of-record for RBC Bank (USA), and that Joseph G. Epstein of the law firm of Winstead PC is hereby substituted in their place. It is further

ORDERED that all parties and their counsel of record shall henceforth serve notices, pleadings, motions, responses, correspondence and other filings required to be served on RBC Bank (USA) through its new counsel of record, as follows:

> Joseph G. Epstein
> Winstead PC
> 600 Travis Street, Suite 1100
> Houston, Texas 77002
> Telephone: (713) 650-8400
> Telecopy: (713) 650-2400
> jepstein@winstead.com

SIGNED this _____ day of _____, 2011.

_____

LETITIA Z. PAUL
U.S. BANKRUPTCY JUDGE

B6 Summary (Official Form 6 - Summary) (12/07)

.

# United States Bankruptcy Court
## Southern District of Texas

| In re | **KT Spears Creek, LLC** | | Case No. | **11-33991** |
|---|---|---|---|---|
| | | Debtor | Chapter | **11** |

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 11 | 12,800,000.00 | | |
| B - Personal Property | Yes | 13 | 304,543.15 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 29,816,397.88 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 2 | | 25,000.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 10,436.25 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 30 | | | |
| Total Assets | | | 13,104,543.15 | | |
| Total Liabilities | | | | 29,851,834.13 | |

Form 6 - Statistical Summary (12/07)

.

# United States Bankruptcy Court
## Southern District of Texas

In re  **KT Spears Creek, LLC**
                    Debtor,

Case No.   **11-33991**

Chapter   **11**

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

    ☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | |
| Average Expenses (from Schedule J, Line 18) | |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |

B6A (Official Form 6A) (12/07)

.

In re     **KT Spears Creek, LLC**                                              Case No.  _____11-33991_____
                                                    ,
                            Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Approximately 30 acres including apartment homes**<br>**Greenhill Parish Crossing Apartment Homes**<br>**10682 Two North Road**<br>**Elgin, South Carolina  29045**<br>**See attached Schedule A-1** | **Fee simple** | **-** | **Unknown** | **22,646,397.88** |
| **Approximately 65 acres, undeveloped**<br>**See attached Schedule A-2** | **Fee simple** | **-** | **11,000,000.00** | **6,300,000.00** |
| **Approximately 7 acres, undeveloped**<br>**See attached Schedule A-3** | **Fee simple** | **-** | **1,800,000.00** | **870,000.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **12,800,000.00** | (Total of this page) |
| Total > | **12,800,000.00** | |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

# SCHEDULE A-1

## PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST, A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND) ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF 33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 81°49'37" WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00 FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37" EAST 34.85 FEET TO A #5 REBAR (SET);THENCE CONTINUING ALONG SAID R/W SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A CALCULATED POINT ; THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51 FEET TO A CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE OF 100.67 FEET TO A CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT; THENCE NORTH 61°03'52" WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH 14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR (FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF 69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W NORTH 72°00'37" EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W NORTH 71°54'05" EAST, A DISTANCE OF 5.80 FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF 104.64 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17" EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#: A portion of 25800-03-05 and 25900-04-04

Derivation: Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

## PHASE II PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59" EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND; THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03" EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

# SCHEDULE A-2

**LEGAL DESCRIPTION**

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582.  Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION:  Deed from DAK I, LLC to K T Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.:  25800-03-40 (portion)

# SCHEDULE A-3

6.28

EXHIBIT A

LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28-2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland, State of South Carolina containing 6.28 acres, more or less, and shown on boundary survey prepared for K. T. Spears Creek LLC, prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S. No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079, at page 572, and having the following metes and bounds to wit:  BEGINNING at a point located at the intersection of U. S. Highway No 1 and Old National Highway and running in a southeasterly direction along Old National Highway S 50°27'26" a distance of 426.96 feet to a point; thence turning and running in a southwesterly direction S81°04'18"W a distance of 242.18 feet to a point; thence S78°40'38"W a distance of 809.15 feet to a point; thence turning and running in a northwesterly direction N11°19'22"W a distance of 268.21 feet to a point; thence turning and running in a northeasterly direction N74°48'34"E a distance of 783.43 feet to the point and place of Beginning.

DERIVATION:  An undivided one-half interest to Virginia R. Monroe from G. P. Monroe, Jr. by deed dated December 29, 1997 and recorded December 30, 1997 in the Office of the Register of Deeds for Richland County in Deed Book 1425, at page 688; and Deed to G. P. Monroe, Jr. from J. L. Rogers dated April 26, 1960 and recorded April 28, 1960 in the Office of the Clerk of Court (n/k/a Register of Deeds) for Richland County in Volume 273, at page 374.

TMS No.:  Portion of 25900-04-04

NPCOL1:787401.1-DE-(IMM) 035873-00001

**EXHIBIT "A"**

1.08

**LEGAL DESCRIPTION**

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being  in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E. F. Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in  the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43, at page 812. Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

DERIVATION: Quitclaim Deed to Dorothy W. Hudson from Joe Q. Hudson dated September 14, 1999 and recorded September 28, 1999 in the Office of the Register of Deeds for Richland County, South Carolina in Record Book 348, at page 1216.

TMS NO.:  25800-03-04

- 4 -

NPCOL1:1272286.1-DE-(IMM) 035873-00002

B6B (Official Form 6B) (12/07)

.

In re      **KT Spears Creek, LLC**                                               Case No.   __11-33991__
_____,
                                        Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **RBC Centura - Business Checking - Acct. # XXX-XXX-473-1 (Held directly by KT Spears Creek, LLC)** | - | 0.00 |
| | | **RBC Centura - Checking/Money Market - Acct. # XXX-XXX-547-8 (Held directly by KT Spears Creek, LLC)** | - | 0.00 |
| | | **First Palmetto Savings - Business Checking - Acct. # XX-XXX324-0 (Held directly by KT Spears Creek, LLC)** | - | 143.15 |
| | | **Bank of America - Acct. XXXX-XXXX-6757 (Held by Property Manager, GREP Atlantic, LLC on behalf of KT Spears Creek, LLC)** | - | 16,167.07 |
| | | **Bank of America - Acct. XXXX-XXXX-3393 (Held by Property Manager, GREP Atlantic, LLC on behalf of KT Spears Creek, LLC)** | - | 72,626.46 |
| | | **RBC Bank - Acct. XX-XXX-611-7 (Held by Receiver, Henry W. Moore, Colliers International on behalf of KT Spears Creek, LLC)** | - | 2,985.79 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |

                                                          Sub-Total >        **91,922.47**
                                                       (Total of this page)

__3__   continuation sheets attached to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re    **KT Spears Creek, LLC**                                              ,    Case No.    __11-33991__
                                        Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Wells Fargo - Policy on Kyle D. Tauch** | - | 0.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |

Sub-Total >                   0.00
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re    **KT Spears Creek, LLC**                                                    , Case No.    **11-33991**
                                    Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **See attached Schedule B28 & B29.** | - | 154,874.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | **See attached Schedule B28 & B29.** | - | 57,746.68 |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| | | | Sub-Total > | 212,620.68 |
| | | | (Total of this page) | |

Sheet  **2**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

**B6B (Official Form 6B) (12/07) - Cont.**

In re   **KT Spears Creek, LLC**                         ,        Case No.   **11-33991**
_____
Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  |  |
|---|---:|
| Sub-Total > | **0.00** |
| (Total of this page) | |
| Total > | **304,543.15** |

Sheet  **3**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

# Attachment
# Schedule B 28 & 29

## GREENHILL PARISH CLUBROOM
## VERSION "B"

| QUANTITY | ITEM | UNIT COST | TOTAL COST |
|:---:|:---|:---:|:---:|
| | **ENTRY** | | |
| 1 | Entry Table | $1,100.00 | $1,100.00 |
| 1 | Rug | $800.00 | $800.00 |
| | | | |
| | **CLUBROOM** | | |
| 2 | Sofa | $1,650.00 | $3,300.00 |
| 2 | Chairs | $575.00 | $1,150.00 |
| 1 | Cocktail Table | $600.00 | $600.00 |
| 2 | Sofa Table | $600.00 | $1,200.00 |
| 2 | Mirrors | $350.00 | $700.00 |
| 2 | Buffet Top | $550.00 | $1,100.00 |
| 2 | Buffet Base | $1,300.00 | $2,600.00 |
| 4 | Chairs | $1,050.00 | $4,200.00 |
| 1 | Cocktail Table | $600.00 | $600.00 |
| 4 | Lamps | $200.00 | $800.00 |
| 2 | Area Rug | $1,800.00 | $3,600.00 |
| | | | |
| | **MANAGER'S OFFICE** | | |
| 1 | Desk | $1,200.00 | $1,200.00 |
| 1 | Credenza | $1,200.00 | $1,200.00 |
| 1 | Lateral File | $700.00 | $700.00 |
| 1 | Task Chair | $425.00 | $425.00 |
| 2 | Guest Chairs | $300.00 | $600.00 |
| 2 | Lamps | $200.00 | $400.00 |
| | | | |
| | **ASST. MANAGER'S OFFICE** | | |
| 1 | Desk | $1,200.00 | $1,200.00 |
| 1 | Credenza | $1,200.00 | $1,200.00 |
| 1 | Task Chair | $425.00 | $425.00 |
| 2 | Guest Chairs | $300.00 | $600.00 |
| 2 | Lamps | $200.00 | $400.00 |
| | | | |
| | **LEASING OFFICES** | | |
| 1 | Writing Desk | $800.00 | $800.00 |
| 1 | L-Shaped Desk | $2,000.00 | $2,000.00 |
| 2 | Task Chairs | $425.00 | $850.00 |
| 4 | Guest Chairs | $300.00 | $1,200.00 |
| 3 | Lamps | $150.00 | $450.00 |
| | | | |
| | **CLOSING AREA** | | |
| 1 | Closing Table Top | $1,300.00 | $1,300.00 |
| 2 | Closing Table Bases | | |
| 4 | Closing Chiars | $375.00 | $1,500.00 |
| 1 | Console | $1,300.00 | $1,300.00 |
| | | | |
| | | | |
| | | | |
| | | | |

5/4/2011

## GREENHILL PARISH CLUBROOM
## VERSION "B"

| | BUSINESS CENTER | | |
|---|---|---|---|
| 2 | Desk Chairs | $400.00 | $800.00 |
| 2 | Chairs | $600.00 | $1,200.00 |
| 1 | Cocktail Ottoman | $400.00 | $400.00 |
| 1 | Spot Table | $400.00 | $400.00 |
| 1 | Rug | $1,300.00 | $1,300.00 |
| | | | |
| | GAMEROOM | | |
| 1 | Poker Table | $1,285.00 | $1,285.00 |
| 6 | Game Chairs | $450.00 | $2,700.00 |
| 2 | Bar Height Table | $400.00 | $800.00 |
| 12 | Barstools | $440.00 | $5,280.00 |
| 1 | Pool Table | $4,500.00 | $4,500.00 |
| 1 | Shuffle Board Table | $4,000.00 | $4,000.00 |
| | | | |
| | WORKROOM | | |
| 2 | Task Chairs | $225.00 | $450.00 |
| | | | |
| | SUB-TOTAL | $39,575.00 | $62,615.00 |
| | | | |
| | Artwork | $12,600.00 | $12,600.00 |
| | Silk Plants | $3,600.00 | $3,600.00 |
| | Accessories | $3,600.00 | $3,600.00 |
| | Decorative Window Treatments | $18,000.00 | $18,000.00 |
| | | | |
| | | | |
| | SUB-TOTAL | $77,375.00 | $100,415.00 |
| | | | |
| | Freight | | $6,024.90 |
| | Design Fee | | $10,000.00 |
| | Rec.& Delivery | | $7,029.05 |
| | Travel | | $1,800.00 |
| | | | |
| | Total | | $125,268.95 |
| | | | |
| | | | |
| | LESS 3% FROM DESIGN FEE | | $3,000.00 |
| | | | |
| | TOTAL | | $122,268.95 |

5/4/2011

**Purchase Order**

**K.T. Builders, Ltd.**

| PURCHASE ORDER NO. | VENDOR | | DATE |
|---|---|---|---|
| 80506-28 | General Electric Company | | October 31, 2006 |

ADDRESS

301 Belfair Road, Irmo, South Carolina, 29063

| ATTN | PHONE | FAX |
|---|---|---|
| Loree Marsh | 803-781-7173 | 803-749-9811 |

| JOB  **Greenhill Parish Crossing** | JOB NO. | |
|---|---|---|
| 10682 Two Notch Road, Elgin, South Carolina 29045 | 80506 | |

| DELIVERY DATE | FOB JOBSITE:  10682 Two Notch Road, Elgin, South Carolina 29045 |
|---|---|
| Per Jobsite Super. | Super: Carl Fairchild 803-419-8904 cell: 832-622-8214 |

TERMS

Net 30, Invoices due by 25th of each month

| ITEM NO. | COST CODE | COST TYPE | DESCRIPTION | NO. OF UNITS | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|
| 1 | 11452 | 2 | GTS18CC 18.2 cf Refer w / ice | 240 | $379.00 | $90,960.00 |
| 2 | 11452 | 2 | Tenant Ready Refer | 240 | $15.00 | $3,600.00 |
| 3 | 11452 | 2 | JBSO7 Elec. Range | 228 | $210.00 | $47,880.00 |
| 4 | 11452 | 2 | JBS15 ADA Elec. Range | 12 | $260.00 | $3,120.00 |
| 5 | 11452 | 2 | WX9X35 Elec. range cord, 40 amp… | 240 | $6.00 | $1,440.00 |
| 6 | 11452 | 2 | M270 Ins Elec Range & Anti-tip | 240 | $14.00 | $3,360.00 |
| 7 | 11452 | 2 | GSD2001 Dishwasher, built-in… | 228 | $169.00 | $38,532.00 |
| 8 | 11452 | 2 | GLDA690 ADA Dishwasher, buil-in.. | 12 | $400.00 | $4,800.00 |
| 9 | 11452 | 2 | GFC325 Disp, 1/3 hp, cord | 240 | $31.00 | $7,440.00 |
| 10 | 11452 | 2 | JN327 30" Hood, Non-vent | 240 | $28.00 | $6,720.00 |

All appliances to be white on white.  Price includes delivery, distribution to apt. units,

uncrating, clean-up and disposal of cartons, all taxes, freight charges, and a minimum

of 14 shipments / deliveries as directed by Proj. Supertintendant.

This is a lump sum P.O., attached proposal is for estimate purposes only.

| | |
|---|---|
| Sub-Total | $207,852.00 |
| Tax@6.00% | $12,269.52 |
| Total | $220,121.52 |

ALL TERMS AND CONDITIONS AS SET FORTH ON PAGE TWO ARE PART OF THIS PURCHASE ORDER.  K.T. BUILDERS, LTD. HEREBY OBJECTS TO ANY DIFFERENT OR ADDITIONAL TERMS IN SELLER'S OFFER OR ACCEPTANCE.  ACCEPTANCE OF THIS ORDER OR SHIPMENT OF GOODS IS AN AGREEMENT TO ALL TERMS AND CONDITIONS STATED HEREIN.

INVOICE MUST REFLECT PURCHASE ORDER NUMBER.  ALL INVOICES SHOULD BE SENT TO ADDRESS LISTED BELOW.
***ALL PAYMENTS ARE ON HOLD PENDING THE RETURN OR THE ATTACHED ACKNOWLEDGEMENT COPY OF THIS PURCHASE ORDER TO:***
**K.T. BUILDERS, LTD.**
**701 North Post Oak Road, Suite 300**
**Houston, Texas  77024**
**Phone: 713/316-8700   Fax: 713/316-8704**

Supplier:

Contractor:

**K.T. Builders, Ltd.**

_____    _____

Signature                                        Date

_____    _____

Carl M. Byars, Vice-President                Date

# Purchase Order

**KT Builders, Ltd.**

701 North Post Oak Rd., Suite 300, Houston, Texas 77024
O: 713-316-8700
F: 713-316-8704

| PURCHASE ORDER NO. | VENDOR | | DATE |
|---|---|---|---|
| 80506-43-Owner | Fitness Unlimited | | July 06, 2007 |

| ADDRESS | | | |
|---|---|---|---|
| 5911 Westheimer, Houston, Texas 77057 | | | |

| ATTN | PHONE | | FAX |
|---|---|---|---|
| Carlos Saldivar | 713-974-7721 | | 713-622-5220 |

| JOB | JOB NO. | |
|---|---|---|
| **Greenhill Parish Crossing** | | |
| 10682 Two Notch Road, Elgin, South Carolina 29045 | 80506 | |

| DELIVERY DATE | |
|---|---|
| Approx. September 15, 2007 Call To Confirm. | FOB JOBSITE: 10682 Two Notch Road, Elgin, South Carolina 29045<br><br>Confirm with Super: Alan Martin 281-850-5489 or Casey Kinard 803-309-8337<br><br>Job site phone: 803-419-8905 |

| TERMS |
|---|
| Net 30 |

| ITEM NO. | COST CODE | COST TYPE | DESCRIPTION | No. UNITS | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|
| 1 | 13-200 | 2 | Life Fitness 90T Treadmill | 3 | $3,975.00 | $11,925.00 |
| 2 | 13-200 | 2 | Life Fitness 93Xi Cross Trainer | 2 | $3,999.00 | $7,998.00 |
| 3 | 13-200 | 2 | Life Fitness 90C Lifecycle Upright Bike | 1 | $1,599.00 | $1,599.00 |
| 4 | 13-200 | 2 | Life Fitness 90 S Stepper | 1 | $2,299.00 | $2,299.00 |
| 5 | 13-200 | 2 | Life Fitness Fit 3 - 3 Stack Multi Gym | 1 | $3,695.00 | $3,695.00 |
| 6 | 13-200 | 2 | Life Fitness Club Series Hexagon Dumbbe | 1 | $439.00 | $439.00 |
| 7 | 13-200 | 2 | Troy 5-50 lb. Rubber Hex Dumbbells | 1 | $549.00 | $549.00 |
| 8 | 13-200 | 2 | Life Fitness CSAJB Club Series Multi Ang | 1 | $549.00 | $549.00 |
| 9 | 13-200 | 2 | Life Fitness CSAAB Club Series Adjustabl | 1 | $529.00 | $529.00 |
| 10 | 13-200 | 2 | Life Fitness CSVKR Club Series Vertical k | 1 | $529.00 | $529.00 |
| 11 | 13-200 | 2 | Custom Sport Flooring, ~1,000sf, 1/4" | 1 | $0.00 | $0.00 |
| | | | thickness, 10% Grey Color Chip | | | |

| | |
|---|---|
| *Prices includes delivery, unloading, and installation. | Sub-Total     $30,111.00 |
| *Price includes free one year service contract w/ quarterly visits. | Tax@6.00%     $1,806.66 |
| *Deliver carpet to installer in HOUSTON. DO NOT DELIVER TO JOBSITE. | Total     $31,917.66 |
| Call Carl Byars for address and contact. | |

ALL TERMS AND CONDITIONS AS SET FORTH SECOND SHEET OF PURCHASE ORDER ARE PART OF THIS PURCHASE ORDER. K.T. BUILDERS, LTD. HEREBY OBJECTS TO ANY DIFFERENT OR ADDITIONAL TERMS IN SELLER'S OFFER OR ACCEPTANCE. ACCEPTANCE OF THIS ORDER OR SHIPMENT OF GOODS IS AN AGREEMENT TO ALL TERMS AND CONDITIONS STATED HEREIN.
INVOICE MUST REFLECT PURCHASE ORDER NUMBER. ALL INVOICES SHOULD BE SENT TO ADDRESS LISTED BELOW.
*ALL PAYMENTS ARE ON HOLD PENDING THE RETURN OR THE ATTACHED ACKNOWLEDGEMENT COPY OF THIS PURCHASE ORDER TO:*
*K.T. BUILDERS, LTD.*
*701 North Post Oak Road, Suite 300*
*Houston, Texas 77024*

| Supplier: | Contractor: |
|---|---|
| | **K.T. Builders, Ltd.** |
| _____    _____ | _____    _____ |
| Signature         Date | Carl M. Byars, Vice-President     Date |

**Purchase Order**

# K.T. Builders, Ltd.

| PURCHASE ORDER NO. | VENDOR | | DATE |
|---|---|---|---|
| 80506-40 | Direct Compactor Systems, Ltd. | | March 16, 2007 |

**ADDRESS**

2202 Kelley Street, Houston, Texas  77026

| ATTN | PHONE | FAX |
|---|---|---|
| Craig Harris | (713) 462-3733 | (713) 462-5365 |

**JOB** **Greenhill Parish Crossing**

10682 Two Notch Road, Elgin, South Carolina 29045     JOB NO.  80506

| DELIVERY DATE | |
|---|---|
| Approx 4/10/07 | FOB JOBSITE:  10682 Two Notch Road, Elgin, South Carolina 29045 |
| | Carl Fairchild, superintendent:  O: 803-419-8904, Cell: 832-622-8214 |

**TERMS**

Net 30 Invoices due the 25th of each month, payable on or about the 25th of the following month.

| ITEM NO. | COST CODE | COST TYPE | DESCRIPTION | UNIT | TOTAL PRICE |
|---|---|---|---|---|---|
| 1 | 11-172 | 2 | Galbreth Model OSC 2-34 Roll-Off, | $   20,624.00 | $          20,624.00 |
| | | | Self Contained Compactor with | | $                    - |
| | | | Chute, Security Door & Frame | | $                    - |
| 2 | 11-172 | 2 | Optinal Single Phase Moter | $     1,243.00 | $            1,243.00 |
| 3 | 11-172 | 2 | Freight & Installation | $     2,500.00 | $            2,500.00 |
| | | | | Sub-Total | $          24,367.00 |
| | | | | 6% TAX | $            1,462.02 |
| | | | | TOTAL | $          25,829.02 |

Purchase order includes all labor, materials, and equipment.  All applicable taxes, licenses, permits, fees, and insurance shall be furnished and paid for by Direct Compactor Systems, Ltd.  Equipment shall include:  Self contained 34 yd. Compactor, 10v HP 220 V Single Phase Motor, Key Activated Controls, Automatic / Manual Functions, Multi-Cycle Operation, 80% and 100% Full Warning Lights, Low Oil/High Temp.  Shut Down, Hydraulic Quick Disconnect Couplers, Hydraulic Pressure Gauge, Fully Enclosed Loading Hopper w/ Interlocking Door, Container Guide Island w/ Stops, Side Chute with Security Door and Frame Installation shall include:  Anchoring of system guides and stops, Installation of compactor, final electrical connections, testing of unit for all functions, and training of personnel in usage and maintenance operations.  Color: Beige P1009  See attached proposal date 10/05/05 for additional scope.

ALL TERMS AND CONDITIONS AS SET FORTH ON SECOND SHEET OF THIS PURCHASE ORDER ARE PART OF THIS PURCHASE ORDER.  K.T. BUILDERS, LTD. CONSTRUCTION HEREBY OBJECTS TO ANY DIFFERENT OR ADDITIONAL TERMS IN SELLER'S OFFER OR ACCEPTANCE. ACCEPTANCE OF THIS ORDER OR SHIPMENT OF GOODS IS AN AGREEMENT TO ALL TERMS AND CONDITIONS STATED HEREIN.

INVOICE MUST REFLECT PURCHASE ORDER NUMBER.  ALL INVOICES SHOULD BE SENT TO ADDRESS LISTED BELOW.
ALL PAYMENTS ARE ON HOLD PENDING THE RETURN OR THE ATTACHED ACKNOWLEDGEMENT COPY OF THIS PURCHASE ORDER TO:
**K.T. BUILDERS, LTD**
**701 North Post Oak Road, Suite 300**
**Houston, Texas  77024**
**Phone:  713/316-8700   Fax:  713/713-8704**

Supplier:                                                          Contractor:

                                                                 **K.T. Builders, Ltd.**

_____                    _____
Signature                              Date          Carl M. Byars, Vice-President          Date

GREENHILL PARISH CROSSING
Columbia (Elgin), South Carolina

CLUBHOUSE / MAINTENANCE INVENTORY

| BUSINESS CENTER ITEMS | | | | | |
|---|---|---|---|---|---|
| Quantity | Item Description | | | | |
| 2 | Dell computer systems | $ | 800 | $ | 1,600 |
| 1 | Kyocera printer FS-1020D serial: XBR4205090 | $ | 300 | $ | 300 |
| 1 | large Toshiba TV | $ | 2,100 | | |
| | | | | | |
| RECREATION ROOM | | | | | |
| 1 | Toshiba TV with remote | $ | 2,100 | $ | 2,100 |
| 1 | Denon Audio receiver | $ | 280 | $ | 280 |
| 1 | JVC CD Player | $ | 250 | $ | 250 |
| 1 | I-Pod Docking Station | $ | 215 | $ | 215 |
| | | | | | |
| OFFICES | | | | | |
| Quantity | Item Description | | | | |
| 3 | Dell computer system | $ | 800 | $ | 2,400 |
| 1 | Telephone Equipment | $ | 2,500 | $ | 2,500 |
| 1 | Key Track System | $ | 5,276 | $ | 5,276 |
| | | | | | |
| POOL FURNITURE / PICNIC | | | | | |
| 3 | Ash Urns | $ | 67 | $ | 201 |
| 2 | Trash Cans | $ | 183 | $ | 366 |
| 1 | Misc Pool Supplies | $ | 200 | $ | 200 |
| 1 | Lot Patio Furniture | $ | 11,126 | $ | 11,126 |
| 2 | Benches | $ | 500 | $ | 1,000 |
| 1 | Lot Flower Pots | $ | 2,500 | $ | 2,500 |
| | | | | | |
| SECURITY ROOM | | | | | |
| Quantity | Item Description | | | | |
| 1 | Security Package with Recorder | $ | 3,880 | $ | 3,880 |
| | | | | | |
| FITNESS CENTER ITEMS | | | | | |
| Quantity | Item Description | | | | |
| 2 | 27inch Toshiba TVs | $ | 425 | $ | 850 |
| 1 | Lot Towels | $ | 450 | $ | 450 |
| 1 | Trash Bin | $ | 100 | $ | 100 |
| 1 | Trash Bin | $ | 50 | $ | 50 |
| | | | | | |
| SHOP & EQUIPMENT | | | | | |
| Quantity | Item Description | | | | |
| 1 | Yamaha golf cart - Maintenance | $ | 3,200 | $ | 3,200 |
| 1 | Yamaha golf cart - Leasing | $ | 2,500 | $ | 2,500 |
| 2 | Golf Cart chargers | $ | 450 | $ | 900 |
| 8 | Plastic storage racks | $ | 50 | $ | 400 |
| 1 | toilet snake | $ | 100 | $ | 100 |
| 1 | A/ C recovery machine | $ | 1,250 | $ | 1,250 |
| 1 | VAC pump | $ | 350 | $ | 350 |
| 1 | Acetylene tank | $ | 125 | $ | 125 |
| 1 | nitrogen tank | $ | 125 | $ | 125 |
| 1 | A/C torch kit | $ | 325 | $ | 325 |
| 2 | OSHA shelving | $ | 825 | $ | 1,650 |
| 1 | 5 gallon wet vac | $ | 175 | $ | 175 |
| 1 | Carpet tornado blower | $ | 200 | $ | 200 |
| 1 | Lot of 5 ladders | $ | 1,200 | $ | 1,200 |
| 1 | Jackson Wheel barrel | $ | 125 | $ | 125 |

| | | | | | |
|---|---|---|---|---|---|
| 1 | key machine 045 | $ | 900 | $ | 900 |
| 1 | Milwaukee hand truck | $ | 325 | $ | 325 |
| 1 | Echo Blower | $ | 325 | $ | 325 |
| 1 | Power Washer | $ | 500 | $ | 500 |
| 1 | Vacuum | $ | 200 | $ | 200 |
| 3 | Motorola Radios | $ | 275 | $ | 825 |
| 2 | 50 Gallon Trash Cans | $ | 250 | $ | 500 |
| 8 | Trash Cans | $ | 20 | $ | 160 |
| 3 | Pet Stations | $ | 300 | $ | 900 |
| 6 | Golf Umbrellas for Leasing | $ | 30 | $ | 180 |
| 1 | Lot safety supplies | $ | 500 | $ | 500 |
| 1 | Lot misc. tools | $ | 750 | $ | 750 |
| 1 | metal desk | $ | 125 | $ | 125 |
| | | | | | |
| | | TOTAL = | | $ | 54,459 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## GREENHILL PARISH MODEL
## BUDGET BREAKDOWN

| QUANTITY | ITEM | UNIT COST | TOTAL COST |
|---|---|---|---|
| | LIVING ROOM | | |
| 1 | Sofa | $700.00 | $700.00 |
| 1 | Chair | $500.00 | $500.00 |
| 1 | Spot Table | $225.00 | $225.00 |
| 1 | Cocktail Table | $300.00 | $300.00 |
| 1 | End Table | $300.00 | $300.00 |
| 1 | End Table | $275.00 | $275.00 |
| 1 | Desk Chair | $185.00 | $185.00 |
| | | | |
| | DINING ROOM | | |
| 1 | 42" Dining Table | $475.00 | $475.00 |
| 1 | 30" Bar Table | $225.00 | $225.00 |
| 4 | Dining Chairs | $175.00 | $700.00 |
| 4 | Bar Stools | $215.00 | $860.00 |
| | PATIO | | |
| 1 | Table | $125.00 | $125.00 |
| 2 | Chairs | $100.00 | $200.00 |
| | BEDROOM 1 | | |
| 1 | Headboard | $260.00 | $260.00 |
| 1 | Set of Mattresses | $350.00 | $350.00 |
| 2 | Nightstands | $205.00 | $410.00 |
| 1 | Chest | $700.00 | $700.00 |
| 1 | Mirror | $300.00 | $300.00 |
| | BEDROOM 2 | | |
| 1 | Queen Headboard | $550.00 | $550.00 |
| 1 | Set of Mattresses | $350.00 | $350.00 |
| 2 | Nightstands | $225.00 | $450.00 |
| 1 | Chest | $650.00 | $650.00 |
| 1 | Chair | $375.00 | $375.00 |
| 1 | Mirror | $300.00 | $300.00 |
| | | | |
| | SUB-TOTAL FOR FURNIUTRE | $8,065.00 | $9,765.00 |
| | | | |
| | Artwork | $3,000.00 | $3,000.00 |
| | Silk Plants | $1,600.00 | $1,600.00 |
| | Accessories | $2,800.00 | $2,800.00 |
| | Lamps | $960.00 | $960.00 |
| | Window Treatments & Linens | $5,600.00 | $5,600.00 |
| | | | |
| | SUB-TOTAL | $22,025.00 | $23,725.00 |
| | | | |
| | Freight | $1,321.50 | $1,321.50 |
| | Rec.& Delivery | $1,762.00 | $1,762.00 |
| | Design Fee | $2,000.00 | $2,000.00 |
| | Travel | $900.00 | $900.00 |
| | | | |
| | TOTALS | $28,008.50 | $29,708.50 |

5/4/2011

B6D (Official Form 6D) (12/07)

In re  **KT Spears Creek, LLC**                              ,  Case No.  **11-33991**
_____
Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No.<br><br>**First Palmetto Savings Bank**<br>**1636 HWY 17 North**<br>**Columbia, SC 29223** | X | - | | | **KT Spears Creek, LLC is borrower to First Palmetto Savings Bank for Loan # 77-075616-3 secured by lien on approximately 7 acres, undeveloped See attached Schedule A-3** | | | | | |
| | | | | | Value $          **1,800,000.00** | | | | **870,000.00** | **0.00** |
| Account No.<br><br>**First Savers Bank, a division of Plantation Federal Bank**<br>**c/o Amy L.B. Hill**<br>**1310 Gadsden Street, P.O. Box 11449**<br>**Columbia, SC 29211** | X | - | | | **Loan Agreement and Promissory Note dated December 21, 2007 secured by lien on approximately 65 acres, undeveloped See attached Schedule A-2** | | | | | |
| | | | | | Value $         **11,000,000.00** | | | | **6,300,000.00** | **0.00** |
| Account No.<br><br>**Hyco Plumbing, Inc.**<br>**c/o N. Ward Lambert**<br>**Harper Lambert & Brown**<br>**P.O. Box 908**<br>**Greenville, SC 29602** | | - | | | **Confession of Judgment Entered August 4, 2010 regarding property described on Schedule A-1** | | | X | | |
| | | | | | Value $           **Unknown** | | | | **Unknown** | **Unknown** |
| Account No.<br><br>**RBC**<br>**P.O. Box 1220**<br>**Rocky Mount, NC 27802-1220** | X | - | | | **Commercial Promissory Note as amended or modified dated May 25, 2006 secured by lien on approximately 30 acres including apartment homes- Greenhill Parish Crossing Apartment Homes See attached Schedule A-1** | | | X | | |
| | | | | | Value $           **Unknown** | | | | **22,646,397.88** | **Unknown** |

__0__  continuation sheets attached

| | |
|---|---|
| Subtotal (Total of this page) | **29,816,397.88**    **0.00** |
| Total (Report on Summary of Schedules) | **29,816,397.88**    **0.00** |

B6E (Official Form 6E) (4/10)

.

In re    **KT Spears Creek, LLC**                                            Case No.    **11-33991**

,

                                        Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**   (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

_____1_____ continuation sheets attached

B6E (Official Form 6E) (4/10) - Cont.

In re **KT Spears Creek, LLC** _____ , Case No. **11-33991** _____

Debtor

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | **2009 & 2010 Taxes** | | | | | | |
| **County of Richland Office of County Treasurer P.O. Box 11947 Columbia, SC 29211** | | | | | | | | 0.00 | |
| | | | | | | | 25,000.00 | 25,000.00 | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |

Sheet **1** of **1** continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal | 0.00 | |
| (Total of this page) | 25,000.00 | 25,000.00 |
| Total | 0.00 | |
| (Report on Summary of Schedules) | 25,000.00 | 25,000.00 |

B6F (Official Form 6F) (12/07)

In re  **KT Spears Creek, LLC**                           ,     Case No.   **11-33991**
                                           Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | Codebtor | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | Contingent | Unliquidated | Disputed | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| **Account No.** | | | Judgment | | | | |
| **IES Residential, Inc.** **f/k/a Houston-Stafford Electric** **c/o Stephen E. Toomey, Atty at Law** **4200 South Shepherd, Ste. 212** **Houston, TX 77098** | | - | | | | | **Unknown** |
| **Account No.** | | | Legal Fees | | | | |
| **Nexsen Pruett, LLC** **Attn:  Henry W. Brown** **P.O. Drawer 2426** **Columbia, SC 29202** | | - | | | | | **10,000.00** |
| **Account No.** | | | Vendor | | | | |
| **Orkin, Inc.** **P.O. Box 71869** **North Charleston, SC 29415** | | - | | | | | **276.00** |
| **Account No.** | | | Vendor | | | | |
| **Signs by Tomorrow** **7364 Two Notch Road** **Columbia, SC 29223** | | - | | | | | **160.25** |
|   **0**  continuation sheets attached | | | Subtotal (Total of this page) | | | | **10,436.25** |
| | | | Total (Report on Summary of Schedules) | | | | **10,436.25** |

B6G (Official Form 6G) (12/07)

.

In re    **KT Spears Creek, LLC**                                               Case No.    __11-33991__
_____,
                              Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature
of debtor's interest in contract, i.e., "Purchaser", "Agent", etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and
complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts,
state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not
disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code,<br>of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest.<br>State whether lease is for nonresidential real property.<br>State contract number of any government contract. |
|---|---|
| **GREP Atlantic, L.P.** | **Management Agreement - property 10682 Two Notch Road, Elgin, SC** |

__0__
continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                                                Best Case Bankruptcy

B6H (Official Form 6H) (12/07)

.

In re    **KT Spears Creek, LLC**                                                        Case No. ___**11-33991**___
                                                              ,
                              Debtor

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Kyle D. Tauch**<br>**5410 Piping**<br>**Houston, TX 77056** | **First Savers Bank**<br>**a division of Plantation Federal Bank**<br>**c/o Amy L.B. Hill**<br>**1310 Gadsden Street, P.O. Box 11449**<br>**Columbia, SC 29211** |
| **Kyle D. Tauch**<br>**5410 Piping Rock**<br>**Houston, TX 77056** | **First Palmetto Savings Bank**<br>**1636 HWY 17 North**<br>**Columbia, SC 29223** |
| **Kyle D. Tauch**<br>**5410 Piping Rock**<br>**Houston, TX 77056** | **RBC**<br>**P.O. Box 1220**<br>**Rocky Mount, NC 27802-1220** |
| **Kyle D. Tauch**<br>**5410 Piping Rock**<br>**Houston, TX 77056** | **First Savers Bank, a division of**<br>**Plantation Federal Bank**<br>**c/o Amy L.B. Hill**<br>**1310 Gadsden Street, P.O. Box 11449**<br>**Columbia, SC 29211** |

**0**
____ continuation sheets attached to Schedule of Codebtors

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## Southern District of Texas

In re  **KT Spears Creek, LLC**                                    Case No.  **11-33991**

Debtor(s)                                Chapter  **11**

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Sole Member of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___**32**___ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date  **May 16, 2011**                              Signature  **/s/ Kyle D. Tauch**

**Kyle D. Tauch**
**Sole Member**

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
## Southern District of Texas

| | | |
|---|---|---|
| In re | **KT Spears Creek, LLC** | Case No. ___**11-33991**___ |
| | Debtor(s) | Chapter ___**11**___ |

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$1,708,324.00** | **2009 Income** |
| **$2,026,741.00** | **2010 Income** |
| **$266,100.00** | **2011 Income (to-date)** |

---

**2. Income other than from employment or operation of business**

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                          SOURCE

---

2

### 3. Payments to creditors

None
■

***Complete a. or b., as appropriate, and c.***

   a.   *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐

   b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| **See attached Schedule 3(b)** | | **$0.00** | **$0.00** |

None
☐

   c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| **None** | | **$0.00** | **$0.00** |

### 4. Suits and administrative proceedings, executions, garnishments and attachments

None
☐

   a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Plantation Federal Bank and First Savers Bank, a division of Plantation Federal Bank v. KT Spears Creek, LLC; Kyle D. Tauch, Individually; and Greenhill Parish Community Association, Inc., a/k/a The Greenhill Parish Community Association, Inc. Civil Action No. 2010-CP-40-06221** | **Lawsuit** | **In the Court of Common Pleas in the Fifth Judicial Circuit State of South Carolina County of Richland** | **Pending** |
| **RBC Bank (USA) v. KT Spears Creek, LLC, KT Builders, Ltd., Kyle D. Tauch and Hyco Plumbing, Inc. Cause No. 2010-CP-40-6025** | **Lawsuit seeking foreclosure** | **In the Court of Common Pleas State of South Carolina County of Richland** | **Pending. Public Sale-April 4, 2011-bidding open through May 4, 2011** |

---

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

3

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Hyco Plumbing, Inc.** | | | **Confession of Judgment August 4, 2010 Mechanic's Lien** |
| **IES Residential, Inc. f/k/a Houston-Stafford Electric** **v.** **K.T. Builders, Ltd., and K.T. Spears Creek LLC** **Case No. 2011-20481** | **Lawsuit** | **In the District Court of Harris County, Texas 61st Judicial District** | **Foreign Judgment** |

None
■   b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None
■   List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None
■   a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None
☐   b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|
| **Henry Moore** **Colliers International** **1301 Gervais St., Ste. 600** **Columbia, SC 29211** | **RBC Banks (USA)** **v.** **KT Spears Creek, LLC, KT Builders, Ltd., Kyle D. Tauch and Hyco Plumbing, Inc.** **Cause No. 2010-CP-40-6025** **In the Court of Common Pleas** **State of South Carolina** **County of Richland** | **11/12/2010** | **Greenhill Parish Crossing Apartment Homes and rents and profits therefrom** **Unknown** |

4

## 7. Gifts

None
■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

## 8. Losses

None
■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

## 9. Payments related to debt counseling or bankruptcy

None
☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Okin Adams & Kilmer LLP** 1113 Vine Street, Ste. 201 Houston, TX 77002 | **April 28, 2011** **Payor - Kyle D. Tauch** | **$25,000.00** |

## 10. Other transfers

None
■

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

None
■

b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
| --- | --- | --- |

**11.  Closed financial accounts**

None
☐

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| **First Savers Bank**<br>**501 Roper Mountain Road**<br>**Greenville, SC 29615** | **Money Market - Acct. # XX-XXX118-9** | **Closed 1/20/2011 - $166.26** |
| **Wells Fargo Bank, N.A.**<br>**P.O. Box 266000**<br>**Dallas, TX 75326** | **Checking/Business - Acct. # XXXXX6298** | **Closed - 9/27/2010 - $4.09** |

**12.  Safe deposit boxes**

None
■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13.  Setoffs**

None
■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14.  Property held for another person**

None
■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15.  Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■  a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■  b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■  c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None ■  a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None ■  b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

---

### 19. Books, records and financial statements

None
☐    a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|
| **Barry Levine**<br>**Levine & Co.**<br>**101 Southwestern Blvd., Ste. 191**<br>**Sugar Land, TX 77478** | **Approximately September 14, 2004 to present** |

None
■    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|---|---|---|

None
■    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|---|---|

None
■    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|---|---|

---

### 20. Inventories

None
■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY<br>(Specify cost, market or other basis) |
|---|---|---|

None
■    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

---

### 21 . Current Partners, Officers, Directors and Shareholders

None
■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

8

| None ☐ | b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation. |

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
| --- | --- | --- |
| **Kyle D. Tauch**<br>**5410 Piping Rock Lane**<br>**Houston, TX 77056** | **Sole Member** | **100%** |

---

**22 . Former partners, officers, directors and shareholders**

| None ■ | a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case. |

| NAME | ADDRESS | DATE OF WITHDRAWAL |
| --- | --- | --- |

| None ■ | b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case. |

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
| --- | --- | --- |

---

**23 . Withdrawals from a partnership or distributions by a corporation**

| None ■ | If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case. |

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

---

**24. Tax Consolidation Group.**

| None ■ | If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case. |

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

---

**25. Pension Funds.**

| None ■ | If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case. |

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

---

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date  **May 16, 2011**                    Signature   **/s/ Kyle D. Tauch**
                                                        **Kyle D. Tauch**
                                                        **Sole Member**

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

**EXHIBIT 3(b)**

[The Debtor is waiting on information from the Receiver to

complete this Exhibit]

# United States Bankruptcy Court
## Southern District of Texas

In re    **KT Spears Creek, LLC**

_____,    Case No. _____**11-33991**_____

Debtor    Chapter _____**11**_____

# LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address<br>or place of business of holder | Security<br>Class | Number<br>of Securities | Kind of<br>Interest |
|---|---|---|---|
| **Kyle D. Tauch**<br>**5410 Piping Rock**<br>**Houston, TX 77056** | | **100%** | **Sole Member** |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Sole Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date____**May 16, 2011**_____    Signature__**/s/ Kyle D. Tauch**_____

**Kyle D. Tauch**
**Sole Member**

_Penalty for making a false statement or concealing property_:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§  152 and 3571.

**0**____ continuation sheets attached to List of Equity Security Holders

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

### APPLICATION FOR AN ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF <u>OKIN ADAMS & KILMER LLP AS COUNSEL FOR THE DEBTOR</u>

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN <u>21 DAYS</u> OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, KT Spears Creek, LLC, as debtor and debtor in possession ("<u>KT Spears</u>" or the "<u>Debtor</u>") and files this *Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Okin Adams & Kilmer LLP as Counsel for the Debtor* (the "<u>Application</u>") and in support hereof, respectfully states as follows:

# I.
## JURISDICTION

1.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

# II.
## BACKGROUND

**A.    The Debtor's Business and Real Property**

2.    The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

3.    The Debtor's assets include, *inter alia*, three real estate holdings.  One of these real estate holding includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

**B.    Secured Credit Facilities**

**RBC**

4.    The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Centura Bank ("RBC") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Note was modified on May 25, 2006 by the

execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

5.       As security for the RBC Note, the Debtor executed in favor of RBC a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

6.       As of the Petition Date, the Debtor's obligation under the RBC Note was approximately $22,646,397.88.

### First Savers

7.       The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank ("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property.

8.       As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

### First Palmetto

9.       The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in approximately 7 acres of undeveloped commercial real property described in the Debtor's Schedule A-3.

10.     As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

**C.**    <u>**The Receivership and Foreclosure Action**</u>

11.     RBC filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "<u>Court of Common Pleas</u>") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

12.     On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "<u>Receiver</u>") over property including the Greenhill Apartments and rents and profits therefrom (the "<u>Property</u>").   The Greenhill Apartments are currently in receivership (the "<u>Receivership</u>") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "<u>Property Manager</u>").

13.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "<u>Foreclosure Judgment</u>").  Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

**D.**    <u>**Factors Leading to Bankruptcy**</u>

14.     As a result of factors including the economic slowdown in the real estate market, the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection.   Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

15.     The Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the

Southern District of Texas, Houston Division (the "Court") on May 3, 2011 (the "Petition Date").  The Debtor continues to operate its business and manage its properties as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

### III.
### RETENTION OF OKIN ADAMS & KILMER LLP

16.      KT Spears first contacted Okin Adams & Kilmer LLP ("OAK") on or about April 18, 2011, to seek advice with regard to the restructuring of the Debtor's business debts and the possibility of filing bankruptcy.  OAK was first retained by KT Spears on April 25, 2011 and has continued to advise the Debtor on bankruptcy related matters ever since.   As part of this relationship, KT Spears retained OAK to act as the Debtor's restructuring and principal bankruptcy counsel during this case.  Matthew S. Okin, the partner at OAK who is primarily responsible for the representation of the Debtor, is admitted to practice in this district.

17.      KT Spears respectfully submits that it will be necessary to employ and retain counsel pursuant to 11 U.S.C. § 327 to serve as the Debtor's general bankruptcy counsel in this case and to:

  a)      advise the Debtor with respect to its rights, duties and powers in this case;

  b)      assist and advise the Debtor in its consultations relative to the administration of this case;

  c)      assist the Debtor in analyzing the claims of the creditors and in negotiating with such creditors;

  d)      assist the Debtor in the analysis of and negotiations with any third party concerning matters relating to, among other things, the terms of plans of reorganization;

  e)      represent the Debtor at all hearings and other proceedings;

  f)      review and analyze all applications, orders, statements of operations and schedules filed with the Court and advise the Debtor as to their propriety;

  g)      assist the Debtor in preparing pleadings and applications as may be

necessary in furtherance of the Debtor's interests and objectives; and

h)    perform such other legal services as may be required and are deemed to be
in the interests of the Debtor in accordance with the Debtor's powers and
duties as set forth in the Bankruptcy Code.

18.    Because of the extensive legal services that will be necessary in this case, and the
fact that the full nature and extent of such services are not known at this time, KT Spears
believes that the employment of OAK for all of the Debtor's purposes set forth above would be
appropriate and in the best interests of the Debtor.

19.    KT Spears believes that OAK possesses extensive knowledge and expertise in the
areas of law relevant to this case and that OAK is well qualified to represent the Debtor in this
proceeding.

## IV.
## <u>OKIN ADAMS & KILMER LLP IS "DISINTERSTED"</u>

20.    Under § 327(a) of the Bankruptcy Code, the trustee or debtor in possession is
authorized to employ one or more professional persons that do not hold or represent an interest
adverse to the estate and that are "disinterested persons," as that term is defined in § 101(14) of
the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties
under the Bankruptcy Code.   11 U.S.C. §§ 101(14) and 327(a).   Section 1107(b) of the
Bankruptcy Code modifies §§ 101(14) and 327(a) in cases under chapter 11 of the Bankruptcy
Code, providing that a person is not disqualified for employment under § 327(a) of the
Bankruptcy Code by a debtor in possession solely because of such person's employment by or
representation of the debtor before the commencement of the case.   11 U.S.C. § 1107(b).

21.    To the best of KT Spears' knowledge, OAK is not a creditor or an insider of the
Debtor, nor does it have any direct or indirect relationship to, connection with, or interest in the
Debtor that would make its interests materially adverse to the interests of the estate or of any

class of creditors or equity security holders. Except as set forth in the Affidavit of Matthew S.

Okin, which is attached to and incorporated to this Application as **Exhibit A**, to the best of KT

Spears' knowledge, OAK does not have any connections with the Debtor, its creditors, any other

party in interest, their respective attorneys and accountants, the United States trustee, or any

person employed in the office of the United States trustee. Based upon the Affidavit, KT Spears

believes that OAK is a "disinterested person" as that term is defined in § 101(14) of the

Bankruptcy Code, as modified by § 1107(b) and is therefore qualified to be employed by KT

Spears pursuant to § 327(a) of the Bankruptcy Code.

## V.
## TERMS OF OKIN ADAMS & KILMER LLP'S ENGAGEMENT

22.    KT Spears is informed that OAK intends to apply for compensation for

professional services rendered in connection with this case, subject to approval of this Court and

compliance with applicable provisions of the Bankruptcy Code, on an hourly basis, plus

reimbursement of actual, necessary expenses and other charges incurred by OAK, as more

specifically described in the Affidavit.

23.    As set forth in the Affidavit, upon its initial retention by KT Spears, OAK

received from Kyle D. Tauch, the Debtor's sole member, a retainer of $25,000.00 (the

"Retainer").

24.    On the Petition Date, OAK applied the Retainer to pay all fees and expenses then

incurred by the Debtor. In total, OAK was paid $9,981.44 in fees and expenses prior to the

Petition Date, and thus, as of the filing of KT Spears' bankruptcy case, OAK was not owed any

fees and expenses by the Debtor.

25.    From the beginning of its engagement by KT Spears until the Petition Date, OAK

billed KT Spears for and received payment of $8,566.50 in fees and $1,414.94 in expenses.

After application to prepetition fees and expenses, the Retainer currently held by OAK is now $15,018.56.

26.     KT Spears requests approval of this application *nunc pro tunc* to the Petition Date as provided by the terms of Bankruptcy Local Rule 2014-1(b).

## VI.
## NOTICE

27.     Notice of this pleading has been provided by United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules.

## VII.
## PRAYER

WHEREFORE, KT Spears requests that this Court enter an order approving the retention of Okin Adams & Kilmer LLP as bankruptcy counsel for the Debtor in this proceeding and granting such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 17th day of May, 2011.


By: */s/ Kyle D. Tauch*                                    
      Kyle D. Tauch
      Sole Member of KT Spears Creek, LLC


**OKIN ADAMS & KILMER LLP**

By: */s/ Maggie D. Conner*                                    
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118

      mokin@oakllp.com
      mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**


<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that a true and correct copy of the foregoing Application was served upon the parties on the attached service list *via* United States Mail postage prepaid, e-mail and/or the Court's Electronic Case Filing system on the 17th day of May, 2011.


      */s/Maggie D. Conner*                                    
      Maggie D. Conner

# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | CASE NO. 11-99991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

### AFFIDAVIT OF MATTHEW S. OKIN IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF OKIN ADAMS & KILMER LLP AS COUNSEL FOR THE DEBTOR

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Matthew S. Okin, being duly sworn according to law, upon his oath, deposes and says:

1.      I am a partner with the firm Okin Adams & Kilmer LLP ("OAK" or the "Firm"), which has its principal offices located at 1113 Vine Street, Suite 201, Houston, Texas 77002.  I am an attorney licensed to practice law in the State of Texas since 1992.  Except where otherwise specifically noted, I have personal knowledge of the facts set forth below.

2.      This affidavit is being submitted in connection with the proposed retention of OAK as bankruptcy counsel for KT Spears Creek, LLC (the "Debtor" or "KT Spears") to perform services as set forth in the Application for Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Okin Adams & Kilmer LLP as Counsel for the Debtor (the "Application").

3.      OAK is well qualified to serve as bankruptcy counsel to the Debtor.  Both within and outside of the chapter 11 process, the Firm's professionals have assisted, advised and

provided legal counsel to debtors in possession of all sizes, including debtors who are involved in real estate development.

4.     As bankruptcy counsel for the Debtor, OAK will render such services as are necessary and appropriate during the pendency of the Debtor's bankruptcy case.  OAK's decision to accept this engagement to assist the Debtor is contingent upon its ability to be retained in accordance with its customary terms and conditions of employment.

5.     OAK is providing and will continue to provide the Debtor with the following generally described services:

a)     advise the Debtor with respect to its rights, duties and powers in this case;

b)     assist and advise the Debtor in its consultations relative to the administration of this case;

c)     assist the Debtor in analyzing the claims of the creditors and in negotiating with such creditors;

d)     assist the Debtor in the analysis of and negotiations with any third party concerning matters relating to, among other things, the terms of plans of reorganization;

e)     represent the Debtor at all hearings and other proceedings;

f)     review and analyze all applications, orders, statements of operations and schedules filed with the Court and advise the Debtor as to their propriety;

g)     assist the Debtor in preparing pleadings and applications as may be necessary in furtherance of the Debtor's interests and objectives; and

h)     perform such other legal services as may be required and are deemed to be in the interests of the Debtor in accordance with the Debtor's powers and duties as set forth in the Bankruptcy Code.

6.     For services rendered, OAK will be paid fees as fully set forth in the Engagement Agreement dated May 2, 2011 and effective April 25, 2011.  The primary attorneys at OAK who will represent the Debtor and their rates are as follows:

(a)     Matthew S. Okin, Partner          $375.00 per hour

**AFFIDAVIT OF MATTHEW S. OKIN IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF OKIN ADAMS & KILMER LLP AS COUNSEL FOR THE DEBTOR** – Page 2

(b)   Greg Young, Partner            $350.00 per hour

(c)   Maggie D. Conner, Associate    $275.00 per hour

7.      In addition, OAK will charge $95.00–130.00 per hour for the work of legal assistants on this matter.

8.      OAK will bill the Debtor for services rendered and expenses incurred postpetition on a monthly basis.  KT Spears will pay OAK as funds are available and only after they are permitted to be paid in accordance with the Court's[1] orders and the requirements of the Bankruptcy Code.

9.      On April 28, 2011, OAK received from Kyle D. Tauch, the Debtor's sole member, a retainer in the amount of $25,000.00 (the "Retainer").  In addition, Mr. Tauch has personally guaranteed payment of attorney's fees and expenses incurred by the Debtor and due to OAK relating to this Case.

10.     On the Petition Date, OAK applied the Retainer to pay all fees and expenses then incurred by the Debtor.

11.     From the beginning of its engagement by KT Spears until the Petition Date, OAK billed KT Spears for and received payment of $8,566.50 in fees and $1,414.94 in expenses. After application to prepetition fees and expenses, the retainer currently held by OAK is now $15,018.56.

12.     I have reviewed OAK's records to determine whether the Firm or its partners have any current or prior relationship with the Debtor or any of the individuals or entities who may be creditors or parties in interest in this case.  To the extent that I have been able to ascertain, other than OAK's representation of the Debtor for a few weeks prior to the Petition Date and as set

---

[1] All terms not defined herein shall have the same meaning as ascribed in the Application.

**AFFIDAVIT OF MATTHEW S. OKIN IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF OKIN ADAMS & KILMER LLP AS COUNSEL FOR THE DEBTOR – Page 3**

forth in the following paragraphs, OAK has no connection with the Debtor or with any of the individuals or entities, of whom I am aware, that are or may become creditors or parties in interest in this case, nor, to the extent they are known to us, does OAK have any connection with such parties' respective attorneys and accountants. Further, the Firm and its partners do not have any connection with the United States trustee for the Southern District of Texas or any person employed in the office of the United States trustee for the Southern District of Texas. To the extent OAK discovers any such connections, I will promptly supplement this disclosure. Based upon the above review and to the best of my knowledge, OAK has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this case. If this Court approves the proposed employment of OAK by KT Spears, OAK will not accept any engagement or perform any service for any entity or person other than the Debtor in this case.

13.    Other than as disclosed herein, OAK holds no interest that is materially adverse to the interests of the Debtor. As such, to the best of my knowledge, OAK is a "disinterested person" as defined by 11 U.S.C. § 101(14).

14.    There is no agreement or understanding between OAK and any other person or entity for the sharing of compensation received or to be received for services rendered by OAK in connection with this case.

I declare under penalty of perjury that the forgoing is true and correct.



_____
Matthew S. Okin
Managing Partner
OKIN ADAMS & KILMER, LLP
1113 Vine Street, Suite 201
Houston, Texas 77002

Sworn to before me on this
___17___ day of May, 2011.


_ℓ. Shelly Mohammed_____
Notary Public in and for the State of Texas


My commission expires: ___12 · 16 · 12___

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:  713.220.4128
Fax:  713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF OKIN ADAMS & KILMER LLP AS BANKRUPTCY COUNSEL TO THE DEBTOR

CAME ON FOR CONSIDERATION the Debtor's[1] Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Okin Adams & Kilmer LLP ("OAK") as Counsel for Debtor (the "Application") and the Affidavit of Matthew S. Okin submitted in support of the Application (the "Affidavit"); the Court hereby finds that based upon the representations made in the Application and the Affidavit: (i) OAK represents no interests adverse to the Debtor's estate or its creditors with respect to the matter upon which it is to be engaged; (ii) OAK is a "disinterested person" as that term is defined under § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code and as provided and disclosed in the Application and the Affidavit; and (iii) the employment of OAK is necessary and is in the best interests of the Debtor's estate; it is therefore hereby

ORDERED that the Application is **GRANTED**; and it is further

ORDERED that, in accordance with § 327(a) of the Bankruptcy Code, the Debtor is authorized to retain OAK to represent the Debtor in this case under chapter 11 of the Bankruptcy Code, effective *nunc pro tunc* as of May 3, 2011.

Dated: _____.

_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[1] All terms not defined herein shall have the same meaning ascribed in the Application.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |
| | § | |

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF STIPULATION AND ORDER REGARDING RECEIVERSHIP

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), files this *Emergency Motion for Entry of Stipulation and Order Regarding Receivership* (the "Motion to Approve Stipulation").  In support of the Motion to Approve Stipulation, the Debtor would respectfully show the Court as follows:

### JURISDICTION AND PROCEDURAL BACKGROUND

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion to Approve Stipulation concerns the administration of the Debtor's estate; and, therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

4.     Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

1

5.      As of the date of this Motion to Approve Stipulation, no official committee of unsecured creditors has been appointed.

6.      Contemporaneously with the filing of this Motion to Approve Stipulation, the Debtor filed its *Request for Emergency Consideration of Motion for Entry of Stipulation and Order Regarding Receivership*.

## STATEMENT OF FACTS

### A.    The Debtor's Business and Real Property

7.      The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

8.      The Debtor's assets include, *inter alia*, three real estate holdings.  One of these real estate holding includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

### B.    Secured Credit Facilities

### RBC Bank

9.      The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May

25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

10.     As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

11.     As of the Petition Date, the Debtor's obligation under the RBC Bank Note was approximately $22,646,397.88.

### First Savers

12.     The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank ("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property.

13.     As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

### First Palmetto

14.     The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in approximately 7 acres of undeveloped commercial real property.

3

15.    As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

**C.    The Receivership and Foreclosure Action**

16.    RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

17.    On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "Property Manager").

18.    On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment"). Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

**D.    Factors Leading to Bankruptcy**

19.    As a result of factors including the economic slowdown in the real estate market, the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection. Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

4

## RELIEF REQUESTED

20.     The Debtor requests that this Court approve the stipulation between the Debtor and RBC Bank to allow the Receiver to continue to operate the Greenhill Apartments on an interim basis.  The *Stipulation and Order Regarding Receivership* is attached hereto as **Exhibit A** (the "Interim Order").  As set forth below, the Debtor and RBC have agreed to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

### A.     Need to Allow Receiver to Continue to Operate Greenhill Apartments

21.     There exists an immediate need to allow the Receiver to continue to operate the Greenhill Apartments on an interim basis.  Permitting him to do so will avoid business interruption, which would harm the Debtor's estate and creditors.   The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of receiver through the end of May 2011.  Accordingly, the Debtor requests that this Court waive the turnover pursuant to Bankruptcy Code § 543 on an interim basis.  Without such relief, the Debtor's estate and its creditors will suffer immediate and irreparable harm.

### B.     The Stipulation

22.     The Debtor and RBC Bank have entered into an agreement to permit the Receiver to remain in place through May 2011 (the "Stipulation").  As part of the Stipulation, RBC Bank has agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011.  In exchange, the Debtor has agreed not to pursue turnover in accordance with Bankruptcy Code § 543.  The terms of the Stipulation are as follows:

5

a.    The Stipulation shall be in effect through and including May 31, 2011 (the "<u>Interim Period</u>"); and

b.    RBC Bank consents to the Debtor's interim use of funds in which it claims an interest during the Interim Period; and

c.    The Debtor and RBC Bank agree to allow the Receiver to remain in place and to permit the Property Manager to continue to operate the Greenhill Apartments and collect and distribute rents and profits therefrom; and

d.    RBC Bank agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor; and

e.    The Debtor agrees that during the Interim Period, RBC will receive continue to receive all excess proceeds generated by the property after the payment of normal operating expenses for the month of May 2011; and

f.    RBC Bank agrees not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during the Interim Period and specifically reserves its right to pursue these forms of relief following the expiration of the Interim Period; and

g.    The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543 during the Interim Period and specifically reserves its right to do so following the expiration of the Interim Period.

**C.    <u>Use of Existing Bank Accounts</u>**

23.    The following bank accounts (the "<u>Bank Accounts</u>") are controlled by the Receiver and used to collect, hold and transmit funds related to the Greenhill Apartments.

a.    RBC Bank Account No. XX-XXX-617-7
(Held by the Receiver)

b.    Bank of America Account No. XXXX-XXXX-6757
(Held by the Property Manager)

c.    Bank of America Account No. XXXX-XXXX-3393
(Held by the Property Manager)

The Debtor requests, with the agreement of RBC Bank, that this Court permit the Receiver to continue to use the existing Bank Accounts, cash management procedures and policies and any

business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Stipulation and any and all related orders entered by this Court. *See, In re Energy Partners, Ltd.*, Case No. 09-32956 (S.D. Tex.); *In re CDX Gas, LLC*, Case No. 08-37922 (Banker. S.D. Tex.); *In re Integrated Elec. Servs., Inc.*, Case No. 06-30602 (Bankr. N.D. Tex.); *In re Daisytek, Inc.*, Case No. 03-34762 (Bankr. N.D. Tex.).

## **NOTICE**

24.     Notice of this pleading has been provided by United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules.

## **REQUEST FOR IMMEDIATE RELIEF**

25.     Bankruptcy Rule 6003 prohibits the payment of prepetition claims, or other use of property outside the ordinary course of business, within the first twenty-one (21) days of this Case, except as necessary to prevent immediate and irreparable harm.  For the reasons stated previously herein, the Debtor submits that the relief requested is necessary to prevent immediate and irreparable harm to the Debtor's estate.

26.     Furthermore, to successfully implement the foregoing, the Debtor requests a waiver of the notice requirements of Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h) (to the extent applicable).  The exigent nature of the relief

sought herein justifies immediate relief, which is necessary for the Debtor to be able to continue to operate its business and preserve the value of its estate.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that this Court (a) enter the attached *Stipulation and Order Regarding Receivership*; and (b) grant the Debtor such other legal or equitable relief to which it may be justly entitled.

Dated:  May 18, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: */s/  Maggie D. Conner*
            Matthew S. Okin
            Texas Bar #00784695
            Maggie D. Conner
            Texas Bar. #24038439
            1113 Vine St., Suite 201
            Houston, TX  77002
            Tel:  713- 228-4100
            Fax:  888-865-2118
            mokin@oakllp.com
            mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* e-mail and/or the Court's Electronic Case Filing system on the 18th day of May, 2011.

*/s/  Maggie D. Conner*
Maggie D. Conner

8

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:  713.220.4128
Fax:  713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

### STIPULATION AND ORDER
### REGARDING RECEIVERSHIP
[This Interim Order relates to Docket. No. _____.]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank") (collectively, the "Parties") stipulate as follows:

1.      The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

2.      The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008. As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate. As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill

Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008

3.    RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025, which sought to foreclose its mortgage and security interest and obtain a deficiency judgment.

4.    On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of the Court of Common Pleas of Richland County, South Carolina and are managed by GREP Atlantic, L.P. (the "Property Manager").

5.    The Debtor and RBC Bank have entered into an agreement to allow cash usage (the "Cash Usage Stipulation"). As part of the Cash Usage Stipulation, RBC has agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011, but specifically reserves its right to pursue these claims for relief and others after May 31, 2011. In exchange, the Debtor has agreed not to pursue turnover in accordance with Bankruptcy Code § 543. The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of receiver during the Interim Period.

6.    Specifically, the parties agree that the Cash Usage Stipulation shall be in effect through and including May 31, 2011 (the "Interim Period").

7.     The Debtor and RBC agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

8.     RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

9.     The Debtor agrees that during the Interim Period, RBC Bank will receive continue to receive all excess proceeds generated in May, 2011 by the property after the payment of normal operating expenses.

10.     RBC Bank agrees not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during the Interim Period and specifically reserves its right to pursue these forms of relief following the expiration of the Interim Period.

11.     The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543 during the Interim Period and specifically reserves its right to do so following the expiration of the Interim Period.

12.     Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on an interim basis, on the terms and conditions provided for in this interim order authorizing Cash Usage (the "Interim Order"), *nunc pro tunc*, commencing on the Petition Date through and including May 31, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court, or written agreement among RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court.

13.    In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Cash Usage Stipulation and any and all related orders entered by this Court.  All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

14.    Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

15.    Under the circumstances, notice of the Cash Usage Motion was appropriate and sufficient for the limited purpose of this Interim Order.

16.    Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this is an Interim Order and will remain in effect pending entry of a final order on the Cash Usage Motion.

17.    Nothing in this Interim Order shall preclude RBC Bank from (i) seeking to transfer venue of this Case, and/or (ii) asserting that rents and profits from the Greenhill Apartments are not property of the estate, after the expiration of the Interim Period.

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393  (Held by the Property Manager)

18.     Nothing in this Interim Order shall preclude the Debtor from (i) seeking turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543, and/or (ii) seeking termination of the Receivership, following the termination of the Interim Period.

19.     Nothing in this Interim Order shall constitute a determination of the existence, validity, or priority of any prepetition security interest or lien of RBC, any other secured creditor, or any other party in interest, nor shall the positions of the Debtor reflected in this Interim Order be construed as admissions of any factual or legal issues between such parties. This Interim Order shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Cash Usage Motion's request for subsequent cash collateral orders.

20.     The entry of this Interim Order shall not prejudice or limit the rights of the Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash Usage or for adequate protection. This Interim Order shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

APPROVED AND ENTRY REQUESTED:


By: */s/  Constance L. Young*_____          By: */s/  Maggie D. Conner*_____

Constance L. Young                                       Matthew S. Okin

**JOHNSTON, ALLISON & HORD, PA**        Texas Bar #00784695

1065 East Morehead Street                         Maggie D. Conner

Charlotte, North Carolina  28204                 Texas Bar. #24038439

Tel:  704.998.2259                                     **OKIN ADAMS & KILMER LLP**

Fax:  704.376.1628                                     1113 Vine St., Suite 201

Houston, TX  77002

Tel:  713- 228-4100

Joseph G. Epstein                                       Fax:  888-865-2118

**WINSTEAD PC**

1100 JPMorgan Chase Tower

600 Travis Street

Houston, Texas 77002                               **PROPOSED ATTORNEYS FOR THE**

Tel:  713.650.2740 Direct                          **DEBTOR IN POSSESSION**

Fax:  713.650.2400 Fax


**COUNSEL FOR RBC BANK**


The above *Stipulation and Order Regarding Receivership* is approved and its terms are

so ORDERED.


Signed this _____ day of _____ 2011.


_____

HONORABLE LETITIA Z. PAUL

UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**MOTION FOR EMERGENCY CONSIDERATION
OF DEBTOR'S EMERGENCY MOTION FOR ENTRY OF
STIPULATION AND ORDER REGARDING RECEIVERSHIP**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN <u>21 DAYS</u> OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE <u>LESS THAN 21 DAYS</u> TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "<u>Debtor</u>") files this

Motion for Emergency Consideration of Emergency Motion for Entry of Stipulation and Order

Regarding Receivership (the "Emergency Motion"), and in support hereof, respectfully states as follows:

## I.
## JURISDICTION

1.    This Court has jurisdiction to consider this Emergency Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Emergency Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

2.    On May 17, 2011, the Debtor filed its Emergency Motion for Entry of Stipulation and Order Regarding Receivership (the "Motion to Approve Stipulation") [Doc. No. 18].

## III.
## RELIEF REQUESTED AND GROUNDS FOR EXPEDITED CONSIDERATION

3.    The Debtor hereby requests emergency consideration of the Motion to Approve Stipulation to prevent immediate and irreparable harm to the Debtor's estate.  As set forth in the Motion to Approve Stipulation, there exists an immediate need to allow the Receiver[1] to continue to operate the Greenhill Apartments on an interim basis.  Permitting him to do so will avoid business interruption, which would harm the Debtor's estate and creditors.   The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of receiver through the end of May 2011.  Without the requested relief, the Debtor's estate and its creditors will suffer immediate and irreparable harm.  Therefore, the Debtor respectfully requests that this Court enter an order granting the Emergency Motion.

---

[1] All terms not defined herein shall have the meanings ascribed to them in the Motion to Approve Stipulation.

2

# IV.
## NOTICE

4.  Notice of this pleading has been provided by United States mail, e-mail and/or the

Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors;

(c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured

creditors; (f) the Internal Revenue Service and all governmental agencies required to receive

notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or

entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b)

of the Bankruptcy Rules.

Respectfully submitted this 18th day of May, 2011.


**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118
      mokin@oakllp.com
      mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served
on the parties listed on the attached Service List *via* United States mail, e-mail and/or the Court's
Electronic Case Filing system on the 18th day of May, 2011.

*/s/  Maggie D. Conner*
      Maggie D. Conner

3

Service List

### *United States Trustee:*

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

### *IRS:*

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

### *Counsel for RBC:*

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:  713.220.4128
Fax:  713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

### *Receiver:*

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

### *Property Manager:*

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

**ORDER GRANTING MOTION FOR EMERGENCY CONSIDERATION
OF DEBTOR'S EMERGENCY MOTION FOR ENTRY OF
<u>STIPULATION AND ORDER REGARDING RECEIVER</u>**
(This Order relates to Docket No. ___.)

CAME ON FOR CONSIDERATION the Motion for Emergency Consideration of Emergency Motion for Entry of Stipulation and Order Regarding Receiver (the "<u>Emergency Motion</u>"); the Court having jurisdiction over the Emergency Motion pursuant to 28 U.S.C. §§ 157 and 1334 and this being a core proceeding under 28 U.S.C. § 157(b); and it appearing that adequate and sufficient notice of the Emergency Motion has been given and that no other or further notice need be given; and good cause appearing therefore, it is therefore hereby

ORDERED that the Emergency Motion is **GRANTED**; it is further

ORDERED that a hearing will be held on the Emergency Motion for Entry of Stipulation and Order Regarding Receiver (the "<u>Motion to Approve Stipulation</u>") [Doc. No. 18] on _____, 2011 at __:___ ___.M. in the courtroom for the Honorable Letitia Z. Paul, located at 515 Rusk Avenue, Courtroom 401, Houston, TX 77002; and it is further

ORDERED that the Debtor shall provide notice of the hearing on the Motion to Approve Stipulation as soon as possible after entry of this Order.

Dated: _____.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**NOTICE OF HEARING**
(RELATES TO DOCKET NO. 18)

    **PLEASE TAKE NOTICE** that a hearing will be held on KT Spears Creek, LLC's

Emergency Motion for Entry of Stipulation and Order Regarding Receivership [Doc. No. 18] on

**Tuesday, May 24, 2011 at 10:00 a.m.** (CDT) in the courtroom for the Honorable Letitia Z. Paul,

located at 515 Rusk Avenue, Courtroom 401, Houston, TX 77002.

Dated:  May 20, 2011

<div align="center">

**OKIN ADAMS & KILMER LLP**

</div>

        By:  _/s/  Maggie D. Conner_____
            Matthew S. Okin
            Texas Bar #00784695
            Maggie D. Conner
            Texas Bar. #24038439
            1113 Vine St., Suite 201
            Houston, TX  77002
            Tel:  713- 228-4100
            Fax:  888-865-2118
            mokin@oakllp.com
            mconner@oakllp.com

        **PROPOSED ATTORNEYS FOR THE**
        **DEBTOR IN POSSESSION**

<u>**CERTIFICATE OF SERVICE**</u>

  The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail, e-mail and/or the Court's Electronic Case Filing system on the 20th day of May, 2011.

         */s/ Maggie D. Conner*    
         Maggie D. Conner

Service List

| | |
|---|---|
| **_United States Trustee:_** | **_Receiver:_** |

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:  713.220.4128
Fax:  713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 11-33991** |
| **KT SPEARS CREEK, LLC,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF PAPERS**

PLEASE TAKE NOTICE that the undersigned counsel represents First Palmetto Savings

Bank, F.S.B. ("First Palmetto"), and hereby enters an appearance pursuant to 11 U.S.C. §1109(b)

and Fed. R. Bankr. P. 9010(b).  Counsel for First Palmetto requests that it be added to the

appropriate lists and matrices in this case.  Counsel for First Palmetto further requests that copies

of all notices and pleadings pursuant to Fed. R. Bank. P. 2002, 3017, 3019, 3020, 4001, 6006,

9007, 9013, and 9019 be served as follows:

> Shari L. Heyen
> HeyenS@gtlaw.com
> GREENBERG TRAURIG, LLP
> 1000 Louisiana, Suite 1700
> Houston, Texas 77002
> Telephone: (713) 374-3500
> Telecopier: (713) 374-3505

PLEASE TAKE FURTHER NOTICE THAT the foregoing demand includes not only the

notices and papers referred to in the Rules specified above, but also includes, without limitation,

notices of any application, complaint, demand, hearing, motion, petition, pleading, or request,

whether formal or informal, written or oral, and whether transmitted or conveyed by mail,

delivery, telephone, telegraph, telex or otherwise filed with regard to this case.

1

Dated:   May 24, 2011.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  /s/ Shari L. Heyen
      Shari L. Heyen
      HeyenS@gtlaw.com
      Texas State Bar No. 09564750
      Federal Bar No. 13664
      1000 Louisiana, Suite 1700
      Houston, Texas 77002
      Telephone: 713-374-3500
      Facsimile: 713-374-3505

**COUNSEL FOR FIRST PALMETTO SAVINGS
BANK, F.S.B.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing Notice of Appearance and

Request for Service of Papers has been served upon the parties eligible to receive notice through

the Court's ECF facilities by electronic mail on May 24, 2011.

/s/ Shari L. Heyen
Shari L. Heyen

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
05/24/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## STIPULATION AND ORDER
## REGARDING RECEIVERSHIP
[This Interim Order relates to Docket. No. _____.]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank") (collectively, the "Parties") stipulate as follows:

1.    The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

2.    The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.  As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate.  As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill

Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008

3.   RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025, which sought to foreclose its mortgage and security interest and obtain a deficiency judgment.

4.   On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of the Court of Common Pleas of Richland County, South Carolina and are managed by GREP Atlantic, L.P. (the "Property Manager").

5.   The Debtor and RBC Bank have entered into an agreement to allow cash usage (the "Cash Usage Stipulation"). As part of the Cash Usage Stipulation, RBC has agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011, but specifically reserves its right to pursue these claims for relief and others after May 31, 2011. In exchange, the Debtor has agreed not to pursue turnover in accordance with Bankruptcy Code § 543. The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of receiver during the Interim Period.

6.   Specifically, the parties agree that the Cash Usage Stipulation shall be in effect through and including May 31, 2011 (the "Interim Period").

Case 11-34241-jw39D9oc Ddcumfiled 2B7/05/ed inEntexecoO7O5t41118:P2gt53 dDesc Main
Document    Page 143 of 824
Case 11-33991   Document 18-2   Filed in TXSB on 05/18/11   Page 3 of 6

7.     The Debtor and RBC agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

8.     RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

9.     The Debtor agrees that during the Interim Period, RBC Bank will receive continue to receive all excess proceeds generated in May, 2011 by the property after the payment of normal operating expenses.

10.     RBC Bank agrees not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during the Interim Period and specifically reserves its right to pursue these forms of relief following the expiration of the Interim Period.

11.     The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543 during the Interim Period and specifically reserves its right to do so following the expiration of the Interim Period.

12.     Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on an interim basis, on the terms and conditions provided for in this interim order authorizing Cash Usage (the "Interim Order"), *nunc pro tunc*, commencing on the Petition Date through and including May 31, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court, or written agreement among RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court.

Case 11-04241-jw39 Doc Document 207/05/ed in Entered 07/05/11 18:Page54 Desc Main
Document  Page 144 of 824
Case 11-33991  Document 18-2  Filed in TXSB on 05/18/11  Page 4 of 6

13.    In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Cash Usage Stipulation and any and all related orders entered by this Court. All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

14.    Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

15.    Under the circumstances, notice of the Cash Usage Motion was appropriate and sufficient for the limited purpose of this Interim Order.

16.    Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this is an Interim Order and will remain in effect pending entry of a final order on the Cash Usage Motion.

17.    Nothing in this Interim Order shall preclude RBC Bank from (i) seeking to transfer venue of this Case, and/or (ii) asserting that rents and profits from the Greenhill Apartments are not property of the estate, after the expiration of the Interim Period.

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393  (Held by the Property Manager)

Case 11-34141-jw39Doc Document 27/05/ed in Entered 07/05/4/118:Pagt55 dDesc Main
Document Page 145 of 824
Case 11-33991 Document 18-2 Filed in TXSB on 05/18/11 Page 5 of 6

18.    Nothing in this Interim Order shall preclude the Debtor from (i) seeking turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543, and/or (ii) seeking termination of the Receivership, following the termination of the Interim Period.

19.    Nothing in this Interim Order shall constitute a determination of the existence, validity, or priority of any prepetition security interest or lien of RBC, any other secured creditor, or any other party in interest, nor shall the positions of the Debtor reflected in this Interim Order be construed as admissions of any factual or legal issues between such parties. This Interim Order shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Cash Usage Motion's request for subsequent cash collateral orders.

20.    The entry of this Interim Order shall not prejudice or limit the rights of the Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash Usage or for adequate protection. This Interim Order shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

Case 11-03411-j39D Doc Document 27/05/led in Entered 07/05/41 18:Page56 Desc Main
Document   Page 146 of 824
Case 11-33991  Document 18-2  Filed in TXSB on 05/18/11  Page 6 of 6

APPROVED AND ENTRY REQUESTED:


By: /s/ Constance L. Young
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628


Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax


**COUNSEL FOR RBC BANK**


By: /s/  Maggie D. Conner
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713- 228-4100
Fax:  888-865-2118


**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**


The above *Stipulation and Order Regarding Receivership* is approved and its terms are

so ORDERED.

Signed this ___2̶7̶___ day of ___My___ 2011.


HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

Case 11-34241-jw39D1oc Document 27 /Filed in Texasco 07/05/6/11 18:Page51 dDesc Main
Document  Page 147 of 824
Case 11-33991  Document 18-2  Filed in TXSB on 05/18/11  Page 1 of 6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
05/24/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

**STIPULATION AND ORDER
REGARDING RECEIVERSHIP**
[This Interim Order relates to Docket. No. _____.]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled

bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank") (collectively, the "Parties")

stipulate as follows:

1. The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of

the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court

has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

2. The Debtor is the borrower under that certain Commercial Promissory Note dated

as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original

principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base

Rate plus 1.85% per annum. The RBC Note was modified on May 25, 2006 by the execution of

a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a

Change in Terms Agreement on May 23, 2008. As of the Petition Date, the Debtor's obligation

under the RBC Note was $22,646,397.88, plus interest at an allowable rate. As security for the

RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and

Security Agreement dated as of May 25, 2006 covering the property located in Richland County,

South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill

Case 11-33991 Doc Document 18-2 Filed in Enterd on 07/05/16 18:Page 2 De Main
Document Page 148 of 824
Case 11-33991 Document 18-2 Filed in TXSB on 05/18/11 Page 2 of 6

Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008

3. RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025, which sought to foreclose its mortgage and security interest and obtain a deficiency judgment.

4. On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of the Court of Common Pleas of Richland County, South Carolina and are managed by GREP Atlantic, L.P. (the "Property Manager").

5. The Debtor and RBC Bank have entered into an agreement to allow cash usage (the "Cash Usage Stipulation"). As part of the Cash Usage Stipulation, RBC has agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011, but specifically reserves its right to pursue these claims for relief and others after May 31, 2011. In exchange, the Debtor has agreed not to pursue turnover in accordance with Bankruptcy Code § 543. The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of receiver during the Interim Period.

6. Specifically, the parties agree that the Cash Usage Stipulation shall be in effect through and including May 31, 2011 (the "Interim Period").

7.    The Debtor and RBC agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

8.    RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

9.    The Debtor agrees that during the Interim Period, RBC Bank will receive continue to receive all excess proceeds generated in May, 2011 by the property after the payment of normal operating expenses.

10.    RBC Bank agrees not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during the Interim Period and specifically reserves its right to pursue these forms of relief following the expiration of the Interim Period.

11.    The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia,* Bankruptcy Code § 543 during the Interim Period and specifically reserves its right to do so following the expiration of the Interim Period.

12.    Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on an interim basis, on the terms and conditions provided for in this interim order authorizing Cash Usage (the "Interim Order"), *nunc pro tunc,* commencing on the Petition Date through and including May 31, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court, or written agreement among RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court.

13.     In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Cash Usage Stipulation and any and all related orders entered by this Court. All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

14.     Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

15.     Under the circumstances, notice of the Cash Usage Motion was appropriate and sufficient for the limited purpose of this Interim Order.

16.     Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this is an Interim Order and will remain in effect pending entry of a final order on the Cash Usage Motion.

17.     Nothing in this Interim Order shall preclude RBC Bank from (i) seeking to transfer venue of this Case, and/or (ii) asserting that rents and profits from the Greenhill Apartments are not property of the estate, after the expiration of the Interim Period.

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393  (Held by the Property Manager)

Case 11-03241-jw39D0c Document 247/05/led in Entered 07/05/11 18:Page55 Desc Main
Document Page 151 of 824
Case 11-33991 Document 18-2 Filed in TXSB on 05/18/11 Page 5 of 6

18.     Nothing in this Interim Order shall preclude the Debtor from (i) seeking turnover
of assets pursuant to, *inter alia*, Bankruptcy Code § 543, and/or (ii) seeking termination of the
Receivership, following the termination of the Interim Period.

19.     Nothing in this Interim Order shall constitute a determination of the existence,
validity, or priority of any prepetition security interest or lien of RBC, any other secured creditor,
or any other party in interest, nor shall the positions of the Debtor reflected in this Interim Order be
construed as admissions of any factual or legal issues between such parties.  This Interim Order
shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such
may relate to the Cash Usage Motion's request for subsequent cash collateral orders.

20.     The entry of this Interim Order shall not prejudice or limit the rights of the
Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash
Usage or for adequate protection. This Interim Order shall not limit or otherwise alter the rights
of the Debtor or other parties in interest, except to the limited extent specifically provided for
herein.

Case 11-03241-jw39 DocDocument 27/05/ed in Enteredo 705/6/118:Pag56 0Desc Main
Document   Page 152 of 824
Case 11-33991   Document 18-2   Filed in TXSB on 05/18/11   Page 6 of 6

APPROVED AND ENTRY REQUESTED:

By: /s/ Constance L. Young _____
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628


Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax


**COUNSEL FOR RBC BANK**

By: /s/  Maggie D. Conner _____
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713- 228-4100
Fax:  888-865-2118


**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**


The above *Stipulation and Order Regarding Receivership* is approved and its terms are

so ORDERED.

Signed this _____ day of _____ 2011.

HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court
Southern District of Texas

In re:                                                          Case No. 11-33991-lzp
KT Spears Creek, LLC                                            Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
May 26, 2011.

```
db        +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
cr        +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
           1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001
7467296   +ALLIED WASTE SERVICES #993,   LEXINGTON P.O. BOX 9001265,,   LOUISVILLE, KY 40290-1265
7467298   +APARTMENT NEWSLETTERS.COM,   PO Box 699,   Grapevine, TX 76099-0699
7467300   +APARTMENTS.COM LLC,   2563 Collection Center Drive,   Chicago, IL 60693-0025
7467301   +APPLIANCE WAREHOUSE OF AMERICA, INC.,   Lockbox 847696,   DALLAS, TX 75284-7696
7467303   +AT & T,   P.O. Box 105262,   Atlanta, GA 30348-5262
7467305   +AUDIO IMAGES INC,   PO Box 550819,   JACKSONVILLE, FL 32255-0819
7467297   +Apartment Association of Greater Columbi,   P. O. Box 7515,   Columbia, SC 29202-7515
7467299   +Apartments.com,   16610 COLLECTION CENTER DRIVE,   Chicago, IL 60693-0166
7467307   +BENSON MEDIA INC,   220 Turner Boulevard,   Ball Ground, GA 30107-6507
7467308   +Buzzier Bee's LLC,   930 East Main St, Apt 915,   Lexington, SC 29072-4248
7467309   +CAPTURE THE MARKET,   7750 North MacArthur Boulevard, Suite 12,   Irving, TX 75063-7514
7467311   +CITY OF COLUMBIA,   1136 Washington Street,   Columbia, SC 29201-3215
7467313   +Cedric Stover,   10682 Two Notch Road,   Elgin, SC 29045-9834
7467314   +County of Richland,   Office of County Treasurer,   P.O. Box 11947,   Columbia, SC 29211-1947
7467315   +DUPLICATING PRODUCTS, INC.,   150 Lott Court,   West Columbia, SC 29169-3039
7467316   +ELITE RENTING LLC,   PO BOX 4152,   SEATTLE, WA 98194-0152
7467318   +ELLIS PARTNERS IN MYSTERY SHOPPING,   4324 North Beltline Road,   Irving, TX 75038-3585
7467319   +FAIRFIELD ELECTRIC COOPERATIVE,   P.O. Box 2500,   Blythewood, SC 29016-2500
7467320    FedEx,   P.O. Box 371461,   Pittsburg, PA 15250-7461
7467321    First Advantage Saferent,   P.O. Box 402453,   Atlanta, GA 30384-2453
7462826    First Palmetto Savings Bank,   1636 HWY 17 North,   Columbia, SC 29223
7462827   +First Savers Bank, a division of,   Plantation Federal Bank,   c/o Amy L.B. Hill,
           1310 Gadsden Street, P.O. Box 11449,   Columbia, SC 29211-1449
7467322   +Floor Mart West Inc.,   4336 Augusta Road,   Lexington, SC 29073-9151
7462828   +G. William McCarthy, Jr.,   W. Harrison Penn,   McCarthy Law Firm, LLC,   P.O. Nox 11332,
           Columbia, SC 29211-1332
7462831   +Greystar,   750 Bering, Ste. 300,   Houston, TX 77057-2132
7462830   +Greystar,   3411 Richmond Avenue, Ste. 200,   Houston, TX 77046-3412
7467324   +HANDY TRAC SYSTEMS,   510 Staghorn   Court,   Alpharetta, GA 30004-0737
7467325    HD SUPPLY FACILITIES MAINTENANCE,   PO Box 509058,   San Diego, CA 92150-9058
7462832   +Hyco Plumbing, Inc.,   c/o N. Ward Lambert,   Harper Lambert & Brown,   P.O. Box 908,
           Greenville, SC 29602-0908
7462833   +IES Residential, Inc.,   f/k/a Houston-Stafford Electric,   c/o Stephen E. Toomey, Atty at Law,
           4200 South Shepherd, Ste. 112,   Houston, TX 77098-5354
7462834   +IES Residential, Inc.,   c/o Christine Kirklin,   10203 Mula Circle,   Stafford, TX 77477-3326
7481773    INTERNAL REVENUE SERVICE,   P.O. 7346,   PHILADELPHIA 19101-7346
7462835   +Jeanne A. Pearson,   Johnston, Allison & Hord, P.A.,   1065 East Morehead Street,
           Charlotte, NC 28204-2812
7462836   +Kyle D. Tauch,   701 North Post Oak Road, Ste. 300,   Houston, TX 77024-3818
7467327    LEVEL ONE CORE LEASING SOLUTIONS,   PO BOX 671476,   Dallas, TX 75267-1476
7467328   +LEVEL ONE, LLC,   1511 S. Batesville Road,   Greer, SC 29650-4810
7467326   +LaCresha Johnson,   10682 Two Notch Road,   Elgin, SC 29045-9834
7467329   +Lexis Nexis Screening Solutions, Inc.,   1000 Alderman Drive,   Alpharetta, GA 30005-4101
7467330    MARLIN LEASING,   PO Box 13604,   PHILADELPHIA, PA 19101-3604
7467332   +MAXX Fitness Inc.,   POBox 7654,   Myrtle Beach, SC 29572-0015
7467333   +MISTY JONES CLEANING,   531 Foremost Drive,   Lexington, SC 29073-8519
7462823   +Matthew Okin,   Okin Adams & Kilmer LLP,   1113 Vine Street, Suite 201,   Houston, TX 77002-1045
7467334    NETWORK COMMUNICATIONS, INC.,   PO Box 935080,   Atlanta, GA 31193-5080
7462837   +Nexsen Pruett, LLC,   Attn: Henry W. Brown,   P.O. Drawer 2426,   Columbia, SC 29202-2426
7467335    OFFICE DEPOT,   P.O. Box 88040,   Chicago, IL 60680-1040
7467336   +Orkin, Inc.,   P.O. Box 71869,   North Charleston, SC 29415-1869
7467337   +Orkin, LLC,   1126 Silstar Rd,   West Columbia, SC 29170-2200
7467338   +PALMETTO UTILITIES, INC.,   1710 WOODCREEK FARMS; INC.,   Elgin, SC 29045-8755
7467341   +PROTECTION SYSTEMS TECHNOLOGIES, INC.,   PO Box 411821, ,   28241,   Charlotte, NC 28241-1821
7467340   +Private I Print Promotions, LLC,   PO Box 937, Mount Pleasant,   Mount Pleasant, SC 29465-0937
7462838   +RBC,   P.O. Box 1220,   Rocky Mount, NC 27802-1220
7467342    RENT.COM,   Rent.com - Payment Center, Department 19,   LOS ANGELES, CA 90084-1987
7467343   +RENTWIKI.COM,   264 19th Street, Suite 2230,   Atlanta, GA 30363-1139
7467344   +Richland County Business Service Center,   P.O. Box 192,   Columbia, SC 29202-0192
7467345   +SALUDA HILL INC.,   2025 Industrial Blvd.,   Lexington, SC 29072-3732
7467346   +SANDY RUN EXTERMINATING COMPANY, INC.,   189 Julia Lane,   Gaston, SC 29053-8393
7467348   +SECURITY CENTRAL,   PO Box 5759,,   Statesville, SC 28687-5759
7467351   +SOUTH CAROLINA APARTMENT ASSOCIATION,   PO Box 1763,   Columbia, SC 29202-1763
7467353   +SOUTHERN COMFORT PROPERTY MAINT.,   3801 Country Club Blvd. #7,   Cape Coral, FL 33904-5106
7467354   +SOUTHERN COMFORT SERVICES,   813 Woodtrail Dr.,   Gaston, SC   29053,   Gaston, SC 29053-8939
7467347    ScentAir Technologies, Inc,   P.O. Box 534448,   Atlanta, GA 30353-4448
7467349   +Sherwin Williams,   GREYSTAR MASTER ACCOUNT, PO Box 277499,   Atlanta, GA 30384-7499
7467350   +Signs by Tomorrow,   7364 Two Notch Road,   Columbia, SC 29223-7620
7467352   +South Carolina Department of Health &,   POBox 100103, Columbia, SC   29202,
           Columbia, SC 29202-3103
7467355   +Steam Systems LLC,   POBox 2661,   West Columbia, SC 29171-2661
```

```
District/off: 0541-4        User: kgui          Page 2 of 2           Date Rcvd: May 24, 2011
                            Form ID: pdf001      Total Noticed: 73

7467357      +Tara Allen,   10682 Two Notch Road,   Elgin, SC 29045-9834
7462840      +Thomas W. Bunch, II,   Robinson McFadden & Moore, P.C.,   P.O. Box 944,   Columbia, SC 29202-0944
7467358      +Universal Background Screening,   7720 N 16th Street Suite 200,   Phoenix, AZ 85020-4496
7467359       WILMAR INDUSTRIES,   PO Box 404284,   Atlanta, GA 30384-4284

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
7467312      +E-mail/Text: GSTEWART@CONSUMERSOURCE.COM May 24 2011 20:59:47     CONSUMER SOURCE INC.,
              PO BOX 402039,   Atlanta, GA 30384-2039
7462825      +E-mail/Text: ustpregion07.hu.ecf@usdoj.gov May 24 2011 21:03:06
              United States Trustee's Office,   515 Rusk St., Suite 3516,   Houston, TX 77002-2604
                                                                                         TOTAL: 2

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
intp          RBC Bank (USA)
7462829       GREP Atlantic, L.P.
7462839       Richland County
7467302*      APPLIANCE WAREHOUSE OF AMERICA, INC.,   LOCKBOX 847696,   DALLAS, TX 75284-7696
7467304*      AT&T,   PO BOX 105262,   ATLANTA, GA 30348-5262
7467306*     +AUDIO IMAGES, INC.,   PO BOX 550819,   JACKSONVILLE, FL 32255-0819
7467313*      CONSUMER SOURCE, INC.,   PO BOX 402039,   ATLANTA, GA 30384-2039
7467317*     +ELITE RENTING, LLC,   PO Box 4152,   Seattle, WA 98194-0152
7467323*      FLOOR MART WEST, INC.,   4336 Augusta Road,   Lexington, SC 29073-9151
7462824*     +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
7467331*      MARLIN LEASING CORP,   PO BOX 13604,   PHILADELPHIA, PA 19101-3604
7467339*     +PALMETTO UTILITIES, INC.,   1710 Woodcreek Farms, Inc.,   Elgin, SC 29045-8755
7467356*     +STEAM SYSTEMS, LLC,   PO Box 2661,   West Columbia, SC 29171-2661
                                                                          TOTALS: 3, * 10, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: May 26, 2011**          **Signature:**     _Joseph Speetjens_

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

KT SPEARS CREEK, LLC,

     DEBTOR.

Case No. 11-33991-H3-11
Chapter 11

## MOTION TO DISMISS FOR BAD FAITH FILING AND FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1408

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE LETITIA Z. PAUL, U.S. BANKRUPTCY JUDGE:

     RBC Bank (USA) ("RBC Bank"), by and through counsel, moves this Court, pursuant to the criteria established in *Little Creek Development Co.,* and pursuant to Rule 1014 of the Bankruptcy Rules to dismiss this case on the basis that the case was filed in bad faith and venue of this case is improper pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1406(a) ("Motion").

### Jurisdiction and Venue

     1.    This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334 and the standing order of reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue properly lies in the United States Bankruptcy Court for the District South Carolina rather than in this Court. The statutory

predicates for relief are 28 U.S.C. § 1406(a) and § 1408, and Sections 105(a) and 1112(b) of the
Bankruptcy Code.

## Relief Requested

2.    This bankruptcy case constitutes a "bad faith" filing designed to thwart RBC Bank
from completing its foreclosure of the Property (as defined below).  The general partner has
orchestrated a last minute ruse to place the Debtor in bankruptcy to presumably obtain further
delay after conclusion of the state court foreclosure litigation that had rendered judgment, directed
the foreclosure sale, and conducted a foreclosure sale by a South Carolina magistrate.  Since a
deficiency was being claimed, the sale was required to remain open for 30 days to allow further
bidding.  RBC Bank seeks the entry of an order determining that this case should be dismissed
because:  (A) the case was filed in bad faith, pursuant to the criteria established in *Little Creek
Development Co.*; and (B) venue is not properly with this Court pursuant to 28 U.S.C. § 1408 and
dismissal is appropriate pursuant to 28 U.S.C. § 1406(a).

## Factual Background

3.    KT Spears Creek, LLC ("Debtor" or "KT Spears") filed its voluntary petition for
relief under Title 11 of the United States Code on May 4, 2011, in order to stop the completion of a
judicial foreclosure of a multi-family apartment complex located in Richland County, South
Carolina.

4.    On or about May 25, 2006, KT Spears executed and delivered to RBC Bank a
written Promissory Note in the original principal amount of $19,700,000.00, as amended or
modified by that certain Modification, Cross-Collateralization and Cross-Default Agreement dated
May 25, 2006, and that certain Change In Terms Agreement dated May 23, 2008 (as may be
amended from time to time including all renewals and modifications collectively "Note").

5.    To secure the indebtedness owed to RBC Bank under the Note, KT Spears executed and delivered to RBC Bank a written Mortgage, Assignment of Rents and Security Agreement dated May 25, 2006, and recorded with the Register of Deeds of Richland County, South Carolina on June 2, 2006 in Book 1190, Page 1008 ("Mortgage") encumbering certain real property located in Richland County, South Carolina ("Real Property") described therein.

6.    KT Spears also assigned all of KT Spears Creek's interest in and to all leases, rents and profits affecting the use, enjoyment or occupancy of all or any part of the Real Property, all as more particularly set forth in the Assignment of Leases, Rents and Profits dated May 25, 2006, and recorded on June 16, 2006 in Book 1195, Page 2187 of the Richland County Registry ("Assignment of Leases").

7.    KT Spears defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full at maturity.    As of the date of the Petition Date, the outstanding balance owed to RBC Bank was as follows:

| | |
|---|---|
| Principal | $19,015,447.16 |
| Interest | $ 3,479,264.72 |
| Total | $22,494,711.88 |

The per diem at a default rate is $9,507.72.  The principal includes $835,940.11 in advances made by RBC Bank to pay past due and unpaid property taxes for 2009 and 2010 to Richland County, South Carolina.

8.    The Debtor's real and personal property, including the income generated therefrom, was and continues to be in the hands of a state-appointed receiver in Columbia, South Carolina, pursuant to the Order Appointing Receiver entered by the Special Circuit Court Judge in Richland County, South Carolina dated November 12, 2010.   A true and correct copy of the Order Appointing Receiver is attached as **Exhibit 1**.

9.      The Debtor's only asset is located in South Carolina and the Debtor is a South Carolina limited liability company.

10.      Upon information and belief, all of the secured creditors are located in North and South Carolina.  A title search revealed one unpaid lien claimant, Hyco Plumbing, Inc., located in South Carolina, that had performed repair or construction work on the apartment complex.  Other unsecured creditors who provide services, supplies or other goods have been paid on an ongoing basis by the Receiver appointed in Richland County, South Carolina.  RBC Bank has paid $835,940.11 in past due and unpaid property taxes for 2009 and 2010 to Richland County, South Carolina.

11.      The only known connection to the Southern District of Texas is that Kyle Tauch, the sole member of the Debtor resides in Houston Texas.

12.      The Debtor conducts no business other than alleged development operations associated with a portion of the vacant land that it owns.

### Argument and Authorities

**A.      Venue is Not Proper in the Southern District of Texas and the Case Must Be Dismissed.**

13.      Venue is proper where the domicile, residence, principal place of business, or principal assets are located for the 180 days immediately prior to the commencement of a case. *See 28 U.S.C. §1408 (1).*

14.      The Debtor is a South Carolina limited liability corporation whose principal place of business is Richland County, South Carolina and its only assets are located in Richland County, South Carolina.

15.      The only arguable basis that the Debtor has to establish and maintain venue in the Southern District of Texas is the allegation that the Debtor's principal place of business is located

in the Southern District of Texas because it is the "nervecenter" or place where general operations

are supervised because the sole member of the limited liability company, Kyle Tauch, is located in

the Southern District of Texas. *See e.g., In re Commonwealth Oil Ref. Co.,* 596 F.2d 1239 (5th

Cir. 1979)*, cert. denied,* 444 U.S. 1045, 62 L. Ed. 2d 731, 100 S. Ct. 732 (1980)*; In re New Luxury*

*Motors, LLC,* 2010 Bankr. LEXIS 753, 52 Bankr. Ct. Dec. 239 (Bankr. S.D. Texas 2010).

      16.     This argument must fail, however, because Kyle Tauch was not in control of the

operations or taking any effort to direct or control the operations for the 180 days prior to the

bankruptcy filing.

      17.     The day-to-day operations of the Debtor have been conducted by Greystar Real

Estate Partners for the past several years.  After entry of the Temporary Restraining Order by the

Richland County Court of Common Pleas on September 3, 2010, all of the Debtor's excess income

was directed to be turned over to RBC Bank after payment of normal and customary operating

expenses. *See Temporary Restraining Order,* attached hereto as **Exhibit 2**.

      18.     On November 17, 2010, the Debtor was placed under a state court receivership and

Kyle Tauch was specifically ordered NOT to interfere with the ongoing operations of the Debtor.

*See Order Appointing Receiver* attached hereto as **Exhibit 1**.

      19.     Finally, although the Complaint was filed on September 2, 2010, Kyle Tauch did

not make an appearance or file an Answer in the case until November 12, 2010, after RBC Bank

had gone to great lengths, even to the extent of service by publication because Kyle Tauch was

apparently avoiding service in the South Carolina foreclosure action.  The process server tried six

consecutive days to obtain service on Mr. Tauch and stated that although someone appeared to be

picking up the mail, there was no sign of Mr. Tauch. *See Affidavit of Service of John Kaspar,* an

authorized process server in Houston, Texas, attached hereto as **Exhibit 3**.

20.    Kyle was an absentee owner for the 180 days prior to the bankruptcy filing and was specifically prohibited by the Court of Common Pleas in Richland County, South Carolina from making any decisions or having any control of the Debtor from and after November 12, 2010. Therefore, the Debtor cannot establish that the operations of the business were directed managed or controlled from the Southern District of Texas as required to establish that the principal place of business was in the Southern District of Texas.

21.    Pursuant to 28 U.S.C. § 1406(a), when a case is filed in the wrong district, the Court shall dismiss the case, or, if it be in the interest of justice, transfer the case to the district where it could be brought. *See, In re Victorville Aerospace, LLC*, 2008 Bankr. LEXIS 3586 (Bankr. S.D. Texas 2008).

22.    If this Court chose to transfer venue, rather than dismiss, venue is appropriate in the District of South Carolina. All of the Debtor's secured creditors are located in North and South Carolina. All of the Debtor's unsecured creditors are located in South Carolina, except for one lone judgment creditor located in Houston, Texas. All of the Debtor's assets, business records, etc. are located in South Carolina. Therefore, for convenience of the parties and the witnesses, and proper and efficient administration of the estate, South Carolina is the appropriate forum.

23.    Because of the bad faith in filing the petition in an improper venue and the other indicia of bad faith indicated below, RBC Bank believes that the appropriate remedy in this case is dismissal, rather than transfer.

**B.    Debtor's Petition was filed in Bad Faith and, therefore, Must be Dismissed.**

24.    The Fifth Circuit has held that a showing of a bad-faith bankruptcy filing is an implicit "cause" to dismiss under Section 1112(b) of the Bankruptcy Code.  *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d 1068, 1071 (5th Cir. 1986); *accord Humble Place Joint Venture v. Fory* (*In re Humble Place Joint Venture*), 936 F.2d 814, 816-17 (5th Cir. 1991); *Carolina Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989); *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985); *Albany Partners, Ltd. v. Westbrook*, (*In re Albany Partners, Ltd.*), 749 F.2d 670, 674 (11th Cir. 1984).  A determination of bad-faith filing turns on an analysis of the totality of the circumstances, but courts have found bad-faith filings involving:   the persistent failure to comply with applicable court orders, rules, or procedures; use of the bankruptcy system simply to avoid the consequences of prior misconduct; the absence of any likelihood of rehabilitation or reorganization; and use of the bankruptcy process merely to frustrate the rights of creditors, particularly with respect to SARE cases.  *See Fid. Assurance Ass'n v. Sims*, 318 U.S. 608, 618 (1943); *Humble Place Joint Venture*, 936 F.2d at 814-15, 818; *First Nat'l Bank of Sioux City v. Kerr* (*In re Kerr*), 908 F.2d 400, 404 (8th Cir. 1990); *Furness v. Lilienfield*, 35 B.R. 1006, 1013 (D. Md. 1983); *In re Bowman*, 181 B.R. 836, 846 (Bankr. D. Md. 1995).

25.    In reviewing the facts of this case, the Court should consider the purpose behind bankruptcy.  The Fifth Circuit has noted, "[b]ankruptcy is an equitable remedy whereby a debtor is clothed with the protection of the automatic stay, preventing his creditors from taking action against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a 'fresh start' through the orderly disposition of assets to satisfy his creditors." *Little Creek*, 779 F.2d at 1071.  Requiring good faith prevents abuse of the bankruptcy

process by debtors who are only attempting to delay creditors. *Id.* at 1072. Likewise, a good faith

requirement is grounded in the debtor's right to file and to maintain a case, and in turn, to enjoy the

protections of the Bankruptcy Code. *See id.*

26.    The Fifth Circuit has identified the following non-exhaustive list of factors as

relevant to a finding of a lack of good-faith filing in a bankruptcy case:

(a)    the debtor has only one primary asset;

(b)    liens encumber the debtor's primary asset;

(c)    there are no employees, except for the principals;

(d)    the debtor has little or no cash flow to sustain a reorganization plan
or to make adequate-protection payments;

(e)    there are few unsecured creditors, whose claims are relatively small;

(f)    the debtor's primary asset was posted for foreclosure and the debtor
has been unsuccessful defending against foreclosure actions in state
court; and

(g)    bankruptcy offers the only possibility of forestalling loss of the
property.

*See id.* at 1072-73. A finding of a bad-faith filing is based on a fact-specific inquiry, and the facts

of this case satisfy virtually all of the elements of the Fifth Circuit's criteria.

27.    As demonstrated in RBC Bank's Motion for Designation of this case as a single

asset real estate entity, this case Debtor has only one single asset, an operating apartment complex

with 72 acres of undeveloped real property contiguous to the apartment complex.

28.    The Debtor has no employees.

29.    The only income producing portion of the Debtor's real property was in the process

of being foreclosed with only one final day remaining at the time of the filing of the Bankruptcy

Petition. The Bankruptcy Petition was filed on the eve of the expiration of the upset bid period

only one day before the sale was final, in an improper forum for the specific purpose of delaying and frustrating its largest secured creditor.

30.    The cash flow generated by the apartment complex is insufficient to fund a confirmable plan of reorganization.

31.    Upon information and belief, the Debtor has none or relatively few unsecured creditors because the property had been in the hands of a state court receiver for almost six months prior to the bankruptcy filing and all ongoing bills and expenses had been paid, including over $835,000 of past due property taxes paid by RBC Bank.

32.    All of these factors were used by the Fifth Circuit in *Little Creek*, when establishing the criteria to be examined in determining if a bankruptcy filing was made in bad faith.

33.    RBC Bank believes that this Debtor has no hope of a successful Plan of Reorganization and that the bankruptcy filing was only done to prevent RBC from the completion of its foreclosing procedure, which had been ongoing since September 2010.

RBC Bank therefore requests that this Court enter an order dismissing this case for improper venue pursuant to 28 U.S.C. §1408 and for bad faith filing.  RBC also requests such other and further relief to which it may show itself to be justly entitled.

This the 1st day of June, 2011.

**WINSTEAD PC**

By: /s/ Joseph G. Epstein
    Joseph G. Epstein
    Texas State Bar No. 06639320
    S.D. Texas No. 11733
    1100 JPMorgan Chase Tower
    600 Travis Street
    Houston, TX 77002
    Telephone: 713-650-2740
    Facsimile: 713-650-2400
    Email: jepstein@winstead.com

**JOHNSTON, ALLISON & HORD, P.A.**

By: /s/ Constance L. Young
    Constance L. Young,
    N.C. State Bar No. 16115
    Admitted *Pro Hac Vice*
    1065 East Morehead Street
    Charlotte, NC 28204
    Telephone: 704-332-1181
    Facsimile: 704-376-1628
    Email: cyoung@jahlaw.com

ATTORNEYS FOR RBC BANK (USA)

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2011, a copy of the foregoing **MOTION TO DISMISS FOR BAD FAITH FILING AND FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1406(a) and § 1408** was served via first class mail upon the parties shown below and on the attached mailing matrix by placing same in the United States Mail, postage prepaid in a properly addressed envelope.

| | |
|---|---|
| Magdalene Duchamp Conner<br>Matthew Scott Okin<br>Okin Adams & Kilmer LLP<br>1113 Vine Street, Suite 201<br>Houston, TX 77002<br>*Attorneys for Debtor* | Ellen Maresh Hickman<br>Office of the U.S. Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>*Attorney for U.S. Trustee* |

Additionally, notice of this document was electronically mailed on June 1, 2011 to the all parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

/s/ Joseph G. Epstein
Joseph G. Epstein

STATE OF SOUTH CAROLINA                )    IN THE COURT OF COMMON PLEAS
                                       )
COUNTY OF RICHLAND                      )
                                       )    Case No.: 2010-CP-40-6025
RBC Bank (USA),                         )
                                       )
            Plaintiff,                  )
                                       )    **Order Appointing Receiver**
                                       )
        v.                              )
                                       )
KT Spears Creek, LLC, KT Builders,      )
LTD., Kyle D. Tauch, and Hyco           )
Plumbing, Inc. ,                        )
                                       )
            Defendants.                 )

This matter came before the Court on the Plaintiff's motion for the appointment of a receiver and a Verified Complaint, making application for the appointment of a Receiver for the Property as identified in the Complaint. Due and proper notice of this hearing was served on all parties to the action and upon the property manager as will appear by reference to the hearing notice served by Plaintiff's counsel on October 29, 2010 and filed on November 1, 2010.  Appearing before the Court was counsel for the Plaintiff.  The Defendants KT Spears Creek, LLC and KT Builders, LTD are in default and did not appear.  The Defendant Kyle D. Tauch is being served by publication.  The Defendant Hyco Plumbing did not appear, but advised Plaintiff's counsel, that it did not oppose the appointment of the receiver.

This Court has the authority to appoint a Receiver of the Property pursuant to Section 15-65-10 of Code of Laws of South Carolina (1976) et seq.  Further, the Mortgage at issue in this case provides that Plaintiff is entitled to the appointment of a receiver upon default by the mortgagor (KT Spears Creek).  The well pleaded

1



allegations of the Complaint and its attachments incorporated into the Complaint are deemed admitted by those Defendants in default. Further, the Court notes that Judge Allison R. Lee has issued a Temporary Injunction in this case. In her Order, Judge Lee specifically found that the Plaintiff would suffer immediate and irreparable injury in the case if the injunction was not issued. That injunction provides, *inter alia*:

> the Enjoined Parties are ordered to collect and pay to RBC Bank (USA) all the income and profits from the Property in any such person's possession until further order of this Court. The Enjoined Parties are, however, permitted to pay the necessary operating expenses of the apartment complex such as utilities, maintenance, and routine repairs.

The Property identified in the Complaint is comprised of an apartment complex in Richland County, South Carolina, an assignment of leases, rents, and profits, and personal property of KT Spears Creek, LLC (herein "Property"). Plaintiff is entitled to protection of its Property during this proceeding.

IT IS THEREFORE ORDERED:

1.    Receivership.  The Property of KT Spears Creek, LLC ("Borrower") as identified in the Complaint is placed in receivership.

2.    Receiver.  Colliers International whose address is 1301 Gervais St., Suite 600, Columbia, South Carolina, Attention Mr. Woody Moore, is hereby appointed Receiver over the Property. All communication to the Receiver shall be directed to the Receiver at the above address. Confirmation of general insurance coverage as to the Receiver or a bond of Five Thousand and No/100 ($5,000.00) Dollars shall be filed with the court within seven business days of the date of this Order.

3.    Restrained.  Borrower (its agents, representatives and employees) are restrained from disposing of, transferring, conveying, or otherwise encumbering the

2

Property or books, files, records and accounts relating to the Property, and they and all other parties having Property in their possession or under their control are hereby directed to deliver the same to the said Receiver.

4.    _Cooperation._  Borrower, its agents, representatives and employees, are ordered to cooperate with the Receiver and appear at the Property, and at the Receiver's office, at such times as may be required to sign such legal documents as may be necessary and to furnish such records as the Receiver may require.  Failure of Borrower to cooperate with the Receiver or otherwise comply with terms of this order shall make Borrower liable for contempt of court upon application by the Receiver or his attorneys. The parties are hereby ordered to cooperate with the Receiver at all times during the pendency of this receivership.

5.    _Income._  Borrower, its respective agents and employees, and any other person receiving actual notice of the terms of this Order are hereby ordered and directed to immediately collect and pay to the below named Receiver all of the income and profits (both current and prepaid) from the Property in any such person's possession as of the date of this Order, regardless of when collected, pending adjudication of the parties' rights thereto and subject to such other orders of this Court as may be subsequently entered.   In addition, Borrower shall execute any and all documents necessary to substitute the Receiver for the current signatories on all of the bank accounts relating to the Property of Borrower.

6.    _Inventory and Reports._  The Receiver shall prepare and deliver to all parties appearing of record within thirty (30) days from the date of this Order a full and detailed inventory, under oath, of all the Property which comes into its possession and

3

thereafter it shall prepare and deliver to all parties appearing of record each thirty (30) days thereafter a full and complete report reporting all activities and changes in the Receivership estate and all claims against the estate that have arisen or have occurred during the period covered by the report.

7.    Possession of Property.  The Receiver shall take and have exclusive control, possession and custody of all the Property, monies, contracts, insurance policies, assets, files, papers, keys, accounts receivable, records, documents, licenses, permits, monies, securities, choses in action, books of account, bank accounts and all other property, real, personal, or mixed, which relate to the Property, and shall retain custody of the same until further order of this Court.  All Defendants and other persons or corporations now or hereafter in possession of the Property, or any part thereof, or any other of the items entrusted to the Receiver as set forth herein, shall forthwith surrender such possession to the Receiver.

8.    Operating Account.  The Receiver shall establish and/or maintain, at a banking or savings and loan institution located in South Carolina whose deposits are insured by the FDIC or the FSLIC, a separate operating account ("the Operating Account") into which the Receiver shall deposit all receipts from the Property and from which the Receiver shall disburse regularly and punctually (to the extent available), all amounts due and payable as are reasonable, necessary and proper operating expenses of the Property, subject to the terms of this Order.

9.    Costs.  The Receiver is hereby authorized, empowered and directed to pay from the Operating Account all reasonable expenses necessary for the preservation of the Property, including, but not limited to, the costs of all labor, insurance, equipment,

4

supplies, inventory, water, sewer, trash and garbage disposal, electricity, security and telephone expenses which are necessary to the operation and preservation of the Property, together with any expenditure authorized by Plaintiff.

10.   Operation.  The Receiver is hereby authorized, empowered and directed to contract with such individuals and entities as may be necessary to preserve, protect, supervise, operate and manage the Property.  The Receiver shall use its best efforts to operate the Property profitably, and to maintain the building, appurtenances and grounds of the Property in accordance with customary standards for a business of its type, including, without limitation, interior and exterior cleaning, painting and decoration, plumbing, carpentry, maintenance of air conditioners and elevators, and such other normal maintenance and repair work as may be appropriate, subject to the requirements and limits set forth herein.

11.   Collection of Rents and Profits.  The Receiver is hereby authorized, empowered and directed to enforce and collect all debts, accounts receivable, rents or other obligations due and owing to or from the operation of the Property.  Subject to its obligations to pay the costs of the Property and operate the Property, and consistent with Judge Lee's Temporary Injunction, the Receiver shall pay to RBC Bank (USA) all the income and profits from the Property.

12.   Insurance.  The Receiver is hereby authorized, empowered and directed to maintain all policies of insurance or similar contracts affecting the Property in full force and effect, and if none exists, to insure the Property for its current fair market value against personal injury, property damage and liability claims.  The Receiver shall maintain or purchase appropriate property insurance for the Property, public liability

insurance, workmen's compensation insurance, fire and extended coverage insurance, and burglary and theft insurance. The Plaintiff shall be listed as an insured and a loss payee on all such insurance policies. The Receiver shall promptly investigate and provide Plaintiff a full, prompt written report as to all serious and material accidents, claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof, and shall prepare any and all reports required by any insurance company in connection therewith. All existing insurance coverage purchased by the Borrower or by any other person, which is now in force for the protection of the Property, is hereby assigned to the Receiver.

13. <u>Actions Against Receiver</u>. All persons, funds, corporations, associations and all other parties are hereby enjoined and restrained from commencing, maintaining, or otherwise prosecuting any action at law or in equity against the Receiver without prior leave of this Court.

14. <u>Default</u>. Entry of this Order shall not constitute a breach or default of any contract relating to the Property unless the Receiver expressly cancels such contract.

15. <u>Employment of Professionals</u>. The Receiver may employ attorneys, accountants, or other professionals if reasonably required to discharge its duties herein and shall, if necessary, apply to this Court for instructions and advice if in doubt concerning its rights and responsibilities as Receiver.

16. <u>Leasing</u>. The Receiver shall have the authority to lease, rent or otherwise seek compensation for space at the Property in the ordinary course of business, at such

rates and on such terms as are customary in the business, provided that Plaintiff approves each such rental or lease agreement.

17.    <u>Other Tasks</u>.    The Receiver is hereby authorized, empowered, and directed to perform all other tasks reasonably necessary for the proper administration, conservation, maintenance, security and protection of the Property.

18.    <u>Fees</u>.  At the end of each month, the Receiver shall present to all parties who have appeared of record an invoice for services rendered to the Receivership and if no objections are received within ten (10) days, the Receiver shall pay such invoice from funds in the Operating Account.  In the event any party of record objects to the payment of any invoice presented or any charge contained therein, the Receiver may seek an order approving and directing such payment.  The compensation of the Receiver shall be at the discretion of the Court and shall be set by the Court upon further order.

19.    <u>Legal Actions</u>.    The Receiver is hereby authorized, empowered and directed to apply to this Court for instructions and authorization should it seem to be necessary or desirable to sue or defend any legal action or otherwise compromise or settle same.

20.    <u>Use and Maintenance of Property</u>.  The Receiver shall not permit the use of the Property for any purpose which will or might void any required policy of insurance, which might render any loss thereunder uncollectible, or which would be in violation of any law or government restriction.

21.    <u>Records</u>.  The Receiver shall maintain a comprehensive system of office records, books, and accounts concerning the operation of the Property.   At all

reasonable times, Plaintiff, Defendants, and their respective agents and other representatives shall have reasonable access to such records, accounts and books and to all vouchers, files, and all other material pertaining to the operation of the Property, all of which the Receiver agrees to keep safe, available and separate from any records not having to do with the operation of the Property.

22.    <u>Legal Requirements</u>.  The Receiver shall ensure that all aspects of the Property, and its operation and management, comply with any and all laws, regulations, orders or requirements affecting the Property issued by any federal, state, county or municipal authority having jurisdiction thereover.

23.    <u>Employment of Agents</u>.  The Receiver is hereby authorized to employ agents, servants and employees and to contract as necessary for the purpose of renting, operating, managing, preserving, protecting, and taking possession of the Property, and carrying out the terms of this Order.  The Receiver shall collect the rents, revenues, and profits from the Property, including those now due and unpaid, and hereafter to become due.

24.    <u>Licenses</u>.  All existing licenses relating to the operation of the Property issued in the name of the Borrower are hereby assigned to the Receiver.

25.    <u>Termination of Receivership</u>.  Plaintiff, or the successful bidder at any foreclosure sale of the Property, may apply to the Court upon the issuance of an Order of Sale, for entry of an order terminating the Receivership, discharging the Receiver, and putting the successful bidder at sale into possession of the Property, effective upon issuance of a deed to the Property.

8

26.    Retention of Jurisdiction.  The Court retains jurisdiction of this matter to enter such further orders as may be just and proper.

27.    Sheriff's Assistance.  The Receiver is authorized and empowered to obtain the assistance of the Sheriff's Department of the counties of this State in performing those duties and responsibilities enumerated herein.

AND IT IS SO ORDERED.

Joseph M. Strickland
Special Circuit Court Judge

Columbia, South Carolina

November 12, 2010.

9

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF RICHLAND )

RBC Bank (USA), )   Case No.: 2010-CP-40-6025

         Plaintiff, )

   v. )

KT Spears Creek, LLC, KT Builders, )   NOTICE OF HEARING
LTD., Kyle D. Tauch, and Hyco )
Plumbing, Inc. , )

        Defendants. )
_____ )

**TO ALL DEFENDANTS ABOVE NAMED:**

    THIS IS TO ADVISE YOU that a hearing on Plaintiff's Motion for Appointment of

Receiver in the above-captioned action will be held  before the Honorable Joseph M.

Strickland, Special Circuit Court Judge for Richland County, in his courtroom on

**November 12, 2010 at 11:45 a.m.**, at the Richland County Courthouse.


                                  Thomas W. Bunch, II
                                  Robinson, McFadden & Moore, P.C.
                                  Post Office Box 944
                                  Columbia, SC  29202
                                  (803) 779-8900

Columbia, South Carolina

October 29th, 2010

STATE OF SOUTH CAROLINA )
                                                   ) IN THE COURT OF COMMON PLEAS
COUNTY   OF   RICHLAND                 )
                                                   )
RBC Bank (USA),                               ) Case No.: 2010-CP-40-6025
                                                   )
                        Plaintiff,              )
                                                   )
            v.                                    )
                                                   )
                                                   ) CERTIFICATE OF SERVICE BY MAIL
KT Spears Creek, LLC, KT Builders, LTD.,  )
Kyle D. Tauch, and Hyco Plumbing, Inc. ,  )
                                                   )
                        Defendants.          )
_____)

This is to certify that I, Amy E. L. Horner, a Paralegal with the law firm of
Robinson, McFadden & Moore, P.C., have this day caused to be served upon the
person(s) named below the **NOTICE OF HEARING** in the foregoing matter by placing a
copy of same in the United States Mail, postage prepaid, in an envelope addressed as
follows:

        KT Spears Creek, LLC, at their designated office address of
        8910 Two Notch Road, Suite 302
        Columbia, SC 29223.

        George Lee, Registered Agent
        KT Builders, LTD
        325 Wood Duck Road
        Columbia, SC 29223

        N. Ward Lambert, Esquire
        Harper, Lambert & Brown
        Post Office Box 908
        Greenville, SC  29602
        (Attorneys for Hyco Plumbing, Inc.)

        Mr. Kyle Tauch
        5410 Piping Rock
        Houston, TX 77056

Dated at Columbia, South Carolina this 29th day of October, 2010.

                                        _____
                                        Amy E. L. Horner

STATE OF SOUTH CAROLINA          )
                                 )    IN THE COURT OF COMMON PLEAS
COUNTY OF RICHLAND               )
                                 )
RBC Bank (USA),                  )
                                 )    Case No.:  2010-CP-40-6025
         Plaintiff,              )
                                 )
                                 )
      v.                         )
                                 )    **Temporary Restraining
                                 )         Order**
KT Spears Creek, LLC, KT Builders, )
LTD., Kyle D. Tauch, and Hyco    )
Plumbing, Inc.,                  )
                                 )
         Defendants.             )
_____)

This matter is before the Court on Plaintiff's motion for a temporary restraining

order.  The Plaintiff has made the requisite showing under Rule 65(b) for such an *ex*

*parte* order. Based on the Verified Complaint and the affidavit submitted by Plaintiff, it

appears from specific facts alleged that Plaintiff will suffer immediate and irreparable

injury, loss or damage before notice can be served and a hearing had.

      The irreparable injury that Plaintiff will sustain is the probable diversion of its

rents and profits to a third party which is a foreign business (Texas) according to the

records of the South Carolina Secretary of State.  Once transferred, the rents and

profits may not be traceable or collectible.  Thus, a money judgment may very well be

nothing more than an empty purse.    Plaintiff has made a showing that it has been

assigned the rents and profits of the apartment complex, that it has a perfected interest

in the rents and profits, and is entitled to have them turned over to it.  Because of the

showing and the *prima facie* showing of Plaintiff's likelihood of success on the merits,

the Court will only require a nominal bond or cash deposit with the Clerk of Court in the



EXHIBIT
2

*al*

amount of $5,000.00. The Court believes this bond serves the purpose of Rule 65(c) for the payment of cost and damages as may be incurred by the restrained parties. The court is mindful of the strong likelihood of the validity of Plaintiff's loan documents, many of which have been filed with public agencies to protect and perfect Plaintiff's interests, in setting this bond. *Bond shall be posted with the Clerk of Court not later than 5:00 September 10, 2010.* Therefore,

IT IS ORDERED that all Defendants in this matter and all parties in active concert with them, including any managers of the Property[1] and all agents, representatives and employees of all of the foregoing ("the Enjoined Parties"), be restrained and enjoined from disposing of, transferring, conveying, or otherwise encumbering the Property.

IT IS FURTHER ORDERED that all of the Enjoined Parties are ordered to collect and pay to RBC Bank (USA) all the income and profits from the Property in any such person's possession as of the date of the temporary restraining order and continuing until further order of this Court.

IT IS FURTHER ORDERED that the Defendants appear before *the Court* *at the Richland County Courthouse* *Courtroom 3B at 9:30 am* on the *20th* day of September 2010 to show cause why the Court should not enter a Temporary Injunction in this matter. *This order remains in effect until September 20, 2010.*

Endorsed this *8th* day of September 2010 at *10:00* o'clock *a* m.

*Al Rene Lee*

Circuit Court Judge, Fifth Judicial Circuit

Columbia, South Carolina

CERTIFIED TRUE COPY
OF ORIGINAL FILED

*Jeanette D. McBride*
CLERK OF RBC MORTGAGE
SOUTH CAROLINA

*al #2*

---

[1] As used herein, the term Property includes all real property subject to the mortgage, any personal property subject to the mortgage and liens of RBC, and specifically includes the Rents and Profits as they are defined in the attachment to this Order.

Book 1195-2187
2006053652  08/16/2006 11:20:00:507
Fee:$17.00   County Tax: $0.00          State Tax:$0.00           Assgmt Lease Rent Profit

2006053652  John G. Norris                                    Richland County ROD

_____ Space Above Line for Processing Data _____

State of South Carolina                          County of Richland

# RBC Centura

**ASSIGNMENT OF LEASES, RENTS AND PROFITS**

THIS ASSIGNMENT OF LEASES, RENTS AND PROFITS ("Assignment", which includes all amendments, modifications, renewals, extensions, replacements and substitutions thereof and therefor), entered into as of the 25th day of _May_ , 2006, by KT SPEARS CREEK, LLC (whether one or more, "Assignor"), with a mailing address of 5410 Piping Rock, Houston, Texas 77056, to RBC CENTURA BANK ("Assignee"), with a business address of 134 N. Church Street, Rocky Mount, North Carolina 27804 and a mailing address of Post Office Box 1220, Rocky Mount, North Carolina 27802-1220, which mailing address is the place to which all notices and communications should be sent to Bank regarding this Assignment.

## WITNESSETH:

FOR VALUE RECEIVED, and as additional security for the obligations hereinafter mentioned, the Assignor hereby sells, transfers and assigns unto the Assignee, its successors and assigns, all of Assignor's presently existing right, title and interest and all of Assignor's right, title and interest which may arise in the future in and to the rents, issues, profits, revenues, royalties, rights and benefits (collectively, the "Rents and Profits") arising from or related to (1) the parcels of land described on **Exhibit A**, (2) the rights and benefits appurtenant to said parcels of land including all sales contracts for sale of the improvements to be constructed thereon, and (3) the buildings and other improvements (to include manufactured homes) now located thereon and thereunder and those which may be located thereon and thereunder in the future (collectively, the "Property"), together with all equipment, fixtures, standing timber (to include timber to be cut, but this inclusion does not permit cutting of timber unless Assignee agrees to such cutting in advance thereof), crops grown, growing and to be grown on the Property (to include crops that are produced on trees, vines and bushes and aquatic goods) and other farm products (to include livestock – born and unborn, supplies and products of crops and livestock), oil, gas and other minerals and as-extracted collateral (but inclusion of as-extracted collateral does not permit extraction unless Assignee agrees to such extraction in advance thereof), both that now owned by Assignor and on behalf of and for the benefit of Assignor and located in, on and under the Property and otherwise used in connection therewith, and that hereafter acquired and located as aforesaid and used in connection with the ownership, possession, operation and maintenance of the Property (collectively, the "Collateral").

AND, in furtherance of the foregoing assignment, but not in limitation thereof, Assignor does hereby sell, transfer and assign to Assignee, its successors and assigns, all of Assignor's presently existing right, title and interest and all Assignor's right, title and interest which may arise in the future in and to (1) the leases and rental agreements, if any, listed on **Exhibit A** and all other leases and rental agreements with respect to the Property and with respect to the

RALEIGH/355120 v.1:Assignment of Rents

Collateral now existing or hereafter made, executed and delivered (whether written, electronic or verbal), together with all present and future extensions, renewals, modifications and amendments thereof, and substitutions and replacements therefor (collectively, the "Leases"), (2) all Rents and Profits due and all Rents and Profits which become due under the Leases and (3) all security deposits now held or hereafter acquired and held in connection with any of the foregoing.

THIS ASSIGNMENT is subject to the following terms and conditions:

Section 1: <u>Absolute Assignment Given as Security</u>. This Assignment is absolute and is given as additional security for the payment and performance of the obligations described in and secured by that certain Mortgage ("Mortgage") identified on Exhibit A. The amounts collected hereunder shall be applied first to the costs and expenses incurred by Assignee and those incurred on behalf of Assignee under this Assignment in collecting and receiving Rents and Profits, or as otherwise provided herein, and then in reduction of the obligations from time to time outstanding and secured by the Mortgage, in the order provided in the Mortgage. The term of this Assignment shall be until the obligations secured by the Mortgage shall have been fully paid and satisfied and the cancellation of the Mortgage shall constitute a release hereof.

1.1. <u>Management and Collection of Rents and Profits</u>. Until release of this Assignment by Assignee as provided in Section 1 above, but subject to the revocable license granted by Assignee to Assignor as provided in Section 1.2 below, the sole right and authority to collect the Rents and Profits shall be with and shall lie with Assignee and such right, authority and power may be exercised by Assignee and may be exercised by either or both Assignee's designee or a receiver or other official appointed as provided in Section 2.4 below, from time to time and in such manner as Assignee deems necessary or appropriate, in its sole discretion; and, in connection with such right of collection, Assignor hereby directs each and all of the lessees and tenants of the Property and lessees and tenants of the Collateral and any other person obligated to pay Rents and Profits on account of the Property and on account of the Collateral to pay said Rents and Profits (as may now be due and as shall hereafter become due) to the Assignee, its designee or a receiver or other official appointed for such purpose, upon demand for payment thereof by the Assignee or such other person or persons from time to time and at anytime. Without limiting the foregoing, but in furtherance thereof, Assignee shall have the additional rights and powers set forth in Sections 1.1.1 through 1.1.3. below.

1.1.1. Assignee, at any time and from time to time, may give notice in writing of this Assignment to any and all of the lessees and tenants under the Leases and to any other persons in possession of the Property and in possession of the Collateral, and any parts of either and interests in either; and, Assignee, for the purpose of fully enforcing its rights and powers under this Assignment, may otherwise communicate with such lessees, tenants and other persons regarding this Assignment and Assignee's rights, authority and powers hereunder.

1.1.2. Assignee, at its option and at any time or times, shall have the right to enter and take possession of the Property and possession of the Collateral and to manage and operate the same, to let or re-let the Property, the Collateral and any part of either and interests in either, to cancel and modify the Leases, to grant rent concessions and other inducements, to evict lessees, tenants and other persons, to bring and defend any suits in connection with possession of the Property and possession of the Collateral in its own name or the Assignor's name, to make repairs as the Assignee deems appropriate, and to perform such other acts in connection with the management and operation of the Property as the Assignee, in its discretion, may deem proper, all at the cost and expense of Assignor.

1.1.3. Assignee shall have the right to hold and possess, and the Assignor shall turn over to the Assignee immediately upon demand of Assignee, the security deposits held by the Assignor, and those held by its employees and agents, under and pursuant to the Leases. Assignee shall hold and apply the security deposits received in connection with the Leases to the purposes specified in the Leases, in accordance with the terms and conditions thereof. Except to the extent required by law or otherwise required in the Leases, Assignee shall not be obligated for the payment of interest on security deposits delivered to it.

1.2. Revocable License Given to Assignor.

   1.2.1. Until the occurrence of an Event of Default, as defined in the Mortgage, or the breach of or default under this Assignment by Assignor, Assignor shall have a license and Assignee hereby grants to Assignor a revocable license to continue collecting the Rents and Profits in the normal and ordinary course of Assignor's business; provide, however, (1) Assignor shall not collect any rental installments under any Leases more than two months in advance of its scheduled payment date without the prior written consent of the Assignee – and if Assignor does so do in contravention hereof, Assignor shall promptly remit such advanced rental installments to Assignee for application by Assignee against the obligations secured hereby, such installments to be applied as provided in Section 1 of this Assignment, (2) Assignor shall pay to Assignee, upon receipt by Assignor and in the same form as received (with any necessary endorsements), (A) any award made hereafter in any court procedure involving any of the Leases in any bankruptcy, insolvency or reorganization proceedings in any state court and in any federal court and (B) any payments made and consideration given by tenants and lessees in lieu of rental payments under any of the Leases, or in settlement of or on account of a claim or dispute under or with respect to any Leases, and (3) Assignor shall promptly comply with such other directives as Assignee may from time to time give to Assignor regarding collection of the Rents and Profits.

   1.2.2. If Assignor should breach this Assignment or default hereunder, or if an Event of Default occurs under the Mortgage, Assignee may, at its option, terminate the privilege and license granted to Assignor by Assignee in Section 1.2.1 above and upon a determination by Assignee to terminate, the privilege and license granted to Assignor shall automatically terminate without any notice from Assignee to Assignor and without any further or additional acts on the part of Assignee, unless notice is required under the Mortgage or under applicable law, and then only such minimum notice as may be required. Upon such termination, Assignor shall cease all collection activities and shall pay over to Assignee all Rents and Profits received by it on and after such termination. All amounts which are received by Assignor from and after the termination of Assignor's license shall be received in trust for the benefit of Assignee, shall be segregated from other funds of Assignor and shall be immediately paid over to Assignee in the same form as received (with any necessary endorsements).

Section 2. Additional Provisions Relating to Collection of Rents and Profits.

   2.1. Limitation on Accountability of Assignee. The Assignee shall not be liable for laches and shall not be liable for the inability to collect the Rents and Profits. The Assignee is obligated to account only for such sums as are actually collected and shall not be obligated to perform and shall not be obligated to discharge any obligation to be performed or discharged by the Assignor under any of the Leases unless it has undertaken the cure of any default. The Assignor hereby agrees to indemnify the Assignee for, and to save it harmless from, any and all liability arising from the Leases and any and all liability arising from this Assignment. This Assignment shall not place responsibility for the control, care, management and repair of the Property and Collateral upon the Assignee, and shall not make the Assignee responsible or liable for any negligence in the management, operation, upkeep, repair and control of the Property and the Collateral resulting in loss or injury or death to any lessee, tenant, licensee, employee or stranger unless Assignee has taken possession of the Property.

   2.2. Consequences of Receipt of Rents and Profits. The receipt by the Assignee of any Rents and Profits pursuant to this Assignment after acceleration of the obligations secured hereby shall not cure any default nor shall the receipt thereof at any subsequent time cure any default, affect Assignee's right to institute foreclosure proceedings under the Mortgage or affect any sale pursuant thereto. Neither the existence of this Assignment nor the exercise of Assignee's privilege to collect the Rents and Profits, shall be construed as a waiver by the Assignee of the right to enforce payment of the obligations hereby secured in strict accordance with the terms and provisions of the Mortgage and any agreement evidencing any of the obligations secured by the Mortgage.

   2.3. Waiver of Rights by Assignor. If there is any case law, statute or regulation requiring Assignee to take actual possession of the Property and to take actual possession of the Collateral (or some action equivalent thereto, such as securing the appointment of a receiver) in order for Assignee to perfect or activate its rights and remedies as set forth herein, then Assignor waives the benefits of such law and agrees that such requirement of law may be satisfied solely by (1) Assignee sending Assignor written notice that Assignee intends to enforce, and is enforcing, its

rights in and to the Property, the Collateral and the Rents and Profits assigned herein and (2) Assignee sending written notice to any one or more of the lessees and tenants of the Property and lessees and tenants of the Collateral, and any other person in possession of all or part of either or both, to commence making payments directly to Assignee or its designee as provided herein.

2.4. Appointment of Receiver. Assignee shall have the absolute and unconditional right to apply for and to obtain the appointment of a receiver or similar official for any part of and for all of the Property and for any part of and for all of the Collateral, to, among other things, manage and operate the Property and to manage and operate the Collateral, and any part of and interest in either or both, and to collect and apply the Rents and Profits as provided above. In the event of such application, Assignor consents to the appointment of such receiver or similar official and agrees that such receiver or similar official may be appointed without notice to Assignor, without regard to the adequacy of any security for the obligations secured hereby and without regard to the solvency of Assignor and without regard to the solvency of any other person, firm or corporation who or which may be liable for the payment of the obligations secured hereby. All costs and expenses related to the appointment of a receiver or other similar official hereunder shall be the responsibility of Assignor, but if paid by Assignee, Assignor hereby agrees to pay to Assignee, immediately and without demand, all such expenses, together with interest thereon from the date of each payment by Assignee at the contract rate at which interest accrues from time to time on the obligations hereby secured, or if interest accrues at different contract rates, any one of the contract rates at which interest accrues as selected by Assignee, in its sole discretion, which rate may be fixed or variable (the "Contract Rate"). All sums so paid by Assignee, and the interest thereon, shall be added to and be secured by this Assignment.

2.5. Power of Attorney. Assignor does hereby irrevocably constitute and appoint Assignee its true and lawful attorney with full power of substitution, for it and in its name, place and stead, to execute, deliver, send and file such agreements, documents, notices, statements and records as Assignee, in its sole discretion, deems necessary and advisable to effect the terms and conditions of this Assignment and to otherwise realize Assignee's rights, authority and powers hereunder, and the benefits provided to Assignee herein, and in connection therewith, Assignee may appear in any action and collect any award or payments relating to the Property and Collateral (including, without limitation, the Leases and the Rents and Profits). The foregoing appointment is and the same shall be coupled with an interest in favor of Assignee. In furtherance of the foregoing appointment and grant of authority, but not in limitation thereof, Assignor irrevocably authorizes Assignee to file such financing statements as may be necessary to protect, in Assignee's opinion, Assignee's liens and security interests in the Property and Collateral (including, without limitation, the Leases and the Rents and Profits) and, to the extent Assignee deems necessary or appropriate, to sign Assignor's name with the same force and effect as if signed by Assignor and to make public in financing statements and other public filings such information regarding Assignor as Assignee deems necessary or appropriate, including, without limitation, federal tax identification numbers, social security numbers and other identifying information.

Section 3. Representations, Warranties and Covenants Regarding Leases.

3.1. Representations and Warranties. Assignor represents and warrants to Assignee that (1) it has full right, title and authority to assign to Assignee the Leases and the Rents and Profits due or to become due thereunder or with respect to the Property and the Collateral, (2) the terms of the Leases have not been amended, modified, replaced or changed from the terms in the copies of the Leases submitted to the Assignee for approval, which copies are true and exact copies of the Leases currently outstanding with respect to the Property and the Collateral, (3) no other assignment of any interest in the Leases has been made by Assignor or any other person to anyone other than Assignee, (4) there are no existing defaults under any of the Leases by any party thereto, and (5) there has been no anticipation or prepayment of any rental installments by any lessees or tenants occupying or possessing the Property and the Collateral or by any of the lessees or tenants in any of the Leases.

3.2. Covenants Regarding Leases.

3.2.1. The Assignor shall fully perform its obligations under the Leases in a timely manner and shall take such actions as may be reasonably necessary to ensure that all lessees and tenants under any of the Leases fully and timely perform their respective obligations thereunder, all at Assignor's sole cost and expense. The Assignor

shall provide to Assignee such information with respect to the Leases and the Rents and Profits therefrom or otherwise arising from or in connection with the Property and Collateral as Assignee may from time to time request; such information to be delivered to Assignee promptly by Assignor and in a form and medium directed by Assignee.

3.2.2.  The Assignor shall not hereafter, without the prior written consent of the Assignee: (1) cancel any of the Leases, surrender any of the Lease and terminate any of the Leases, (2) exercise any option which might lead to a cancellation, surrender or termination of any of the Leases, (3) change, amend, alter and modify any of the Leases, (4) consent to the release of any party liable under any of the Leases, and (5) consent to the assignment and subletting of the lessee's or tenant's interest in them.

3.2.3.  The Assignor shall maintain the security deposits made or to be made with respect to Leases of the Property and the Collateral in a separate bank account maintained by the Assignor with the Assignee, if so requested by Assignee, and designated as the account for the deposit of security deposits with respect to the Property and Collateral. The Assignor shall provide to the Assignee within thirty (30) days of the end of each of the Assignor's fiscal years, or more frequently if so requested by Assignee, a written verification of the amount of security deposits maintained in the account together with a list of the Leases with respect to which the deposits are maintained.

Section 4.  Miscellaneous.

4.1.  Incorporation of Exhibits.  All exhibits, schedules, addenda and other attachments to this Assignment are by this reference incorporated herein and made a part hereof as if fully set forth in the body of this Assignment.

4.2.  Maintenance of Records by Assignee.  Assignee is authorized to maintain, store and otherwise retain evidences of the obligations, this Assignment, any separate security agreements and other agreements executed and delivered and to be executed and delivered by Assignor and others on Assignor's behalf to Assignee in their original, inscribed tangible form or a record thereof in an electronic medium or other non-tangible medium which permits such record to be retrieved in a perceivable form.

4.3.  Credit Investigations; Sharing of Information; Control Agreements.  Assignee is irrevocably authorized by Assignor to make and have made such credit investigations as it deems appropriate to evaluate Assignor's credit, personal and financial standing, and employment.  Assignor authorizes Assignee to share with consumer reporting agencies and creditors its experiences with Assignor and other information in Assignee's possession relative to Assignor, the Property and the Collateral (including, without limitation, the Leases and the Rents and Profits); but Assignee shall not have (1) any obligation to provide information to third persons relative to any of the foregoing or otherwise, (2) any obligation to subordinate its liens and security interests in the Property and Collateral (including, without limitation, the Leases and the Rents and Profits) and (3) any obligation to enter into control agreements and other agreements relative thereto.

4.4.  Marshalling of Assets.  Assignor hereby waives, to the extent permitted by law, the benefit of all homestead, appraisement, valuation, stay, extension, reinstatement and redemption laws now in force and any which may in the future come to be in force and all rights of marshalling in the event of any collection hereunder of Rents and Profits or otherwise against the Property, the Collateral or any part or any interest in either or both.

4.5.  Waiver of Statutory Rights.  Assignor waives any right to require Assignee to bring any action against any other person or to require that resort be had to any security or to any balances of any deposit or other accounts or debts or credits on the books of Assignee in favor of any other person. Assignor also waives any and all right of subrogation, contribution, reimbursement and indemnity and any right of recourse to and with respect to the assets of any other person that is or may be security for the obligations secured hereby.

4.6.  Jury, Venue, Jurisdiction.  This Assignment shall be deemed to have been executed and delivered in South Carolina regardless of where the signatories may be located at the time of execution and shall be governed by and construed in accordance with the substantive laws of the State of South Carolina, excluding, however, the

conflict of law and choice of law provisions thereof. Assignor, to the extent permitted by law, waives any right to a trial by jury in any action arising from or related to this Assignment.

4.7. No Waiver; No Course of Dealing; No Invalidity. No delay or forbearance by Assignee in exercising any and all of its rights and remedies hereunder, and its rights and remedies otherwise afforded by law and in equity, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder or in the event of any subsequent default hereunder. Also, no act or inaction of Assignee under this Assignment shall be deemed to constitute or establish a "course of performance or dealing" that would require Assignee to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Assignment shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Assignment.

4.8. No Oral Change. Subject to the exercise by Assignee of its rights and remedies as set forth in this Assignment and without limiting any of such rights and remedies, this Assignment, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing, signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

4.9. Payment of Expenses. Without limiting any other provision of this Assignment relating to Assignor's payment of costs and expenses incurred by and on behalf of Assignee, but in addition thereto, Assignor shall pay to Assignee on demand any and all reasonable costs and expenses, including, without limitation, attorneys' fees, incurred by Assignee and those incurred on behalf of Assignee in protecting its interest in the Property and its interest in the Collateral and in collecting any amount payable hereunder and in enforcing its rights hereunder with respect to the Property and with respect to the Collateral (including, without limitation, commencing any collection action, and prosecuting and defending any legal and equitable proceeding), together with interest thereon at the Contract Rate from the date paid or incurred by or on behalf of Assignee until such costs and expenses are paid by Assignor. All sums so paid and expended by Assignee, and the interest thereon, shall be added to and be secured by this Assignment.

4.10. Documentary Stamp Taxes. To the extent not prohibited by applicable law and notwithstanding who is liable for payment of the taxes or fees, Assignor shall pay upon demand any stamp tax, documentary tax, intangible tax and other taxes, levies and charges of any jurisdiction with respect to the execution, delivery, registration, performance and enforcement of this Assignment.

4.11. Relationship of Parties; Successors and Assigns. The relationship of Assignee to Assignor is that of a creditor to an obligor or debtor; and in furtherance thereof and in explanation thereof, Assignee has no fiduciary, trust, guardian, representative, partnership, joint venturer or other similar relationship to and with Assignor and no such relationship shall be drawn or implied from this Assignment and any of Assignor's actions or inactions hereunder or with respect hereto -- and, Assignee has no obligation to Assignor and any other person relative to administration of the obligations secured by this Assignment, the Property, the Collateral and any part or parts of any of the foregoing. The covenants, terms and conditions herein contained shall bind, and the benefits and powers shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto, but nothing herein contained shall be deemed a consent to the sale, lease, demise, further encumbrance, transfer and other disposition by Assignor, either directly or indirectly, of all or any part of the Property, the Collateral and any interest, right and estate in either or both (including, without limitation, the Leases and the Rents and Profits), without Assignee's prior written consent, which may be withheld in Assignee's sole discretion. If two or more persons or entities have joined as Assignor, each of the persons and entities shall be jointly and severally obligated to perform the obligations herein contained. The term "Assignee" shall include any payee of the obligations hereby secured and any transferee and assignee thereof, whether by operation of law or otherwise, and Assignee may transfer, assign and negotiate all and any of the obligations secured by this Assignment from time to time without the consent of Assignor and without notice to Assignor and any transferee and assignee of Assignee, and any transferee and assignee of another may do the same without Assignor's consent and without notice to Assignor. Assignor waives and will not

assert against any transferee and waives and will not assert against any assignee of Assignee any claims, defenses, set-offs and rights of recoupment which Assignor could assert against Assignee, except defenses which Assignee cannot waive.

4.12. _Notices_. All notices, certificates and other communications hereunder shall be deemed given when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed to the addresses set forth above. Assignor and the Assignee may, by written notice given hereunder, designate a different address where communications should be sent and Assignee may direct, by notice to Assignor, for communications to be sent electronically or in some other non-tangible medium.

4.13. _Anti-Money Laundering and Anti-Terrorism_. Assignor represents, warrants and covenants to Assignee as follows: (1) Assignor (a) is not and shall not become a person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) does not engage in and shall not engage in any dealings or transactions prohibited by Section 2 of such executive order, and is not and shall not otherwise become associated with any such person in any manner violative of Section 2, (c) is not and shall not become a person on the list of Specially Designated Nationals and Blocked Persons, and (d) is not and shall not become subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order; (2) Assignor is and shall remain in compliance, in all material respects, with (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act of 2001); and (3) Assignor has not and shall not use all or any part of the proceeds of the obligations secured by the Mortgage or any or all of the Rents and Profits, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

4.14. _Use and Application of Terms_. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa; and as the context requires, the word "and" may have a joint meaning or a several meaning and the word "or" may have an inclusive meaning or an exclusive meaning. All references in this Assignment to "person" or "persons" shall include individuals and organizations and all terms used in this Assignment that are not defined in this Assignment, the Mortgage or in the obligations secured hereby, but are defined in the Uniform Commercial Code in effect in the State of South Carolina, shall have the meaning ascribed to such terms from time to time in said Uniform Commercial Code. Any reference contained in this Assignment to specific statutes or laws shall include any successor statutes or laws, as the case may be. This Assignment shall not be applied, interpreted and construed more strictly against a person because that person or that person's attorney drafted this Assignment.

The undersigned has executed this Assignment as of the day and year first above stated.

Signed, sealed and delivered in the presence of:

Witness:

Print Name: Michele Lee Reed

Witness:

Print Name: Carol M. By Ross

KT SPEARS CREEK, LLC

By:
Name: Kyle Tauch
Its: Member

STATE OF                )                    ACKNOWLEDGMENT

COUNTY OF               )

The foregoing instrument was acknowledged before me this <u>15</u> day of <u>June</u>, 2006, by
<u>Kyle Tauch</u>, as /Member of KT Spears Creek, LLC.

Notary Public for

My commission expires:  <u>9-12-06</u>

MICHELE LEE REED
Notary Public, State of Texas
My Commission Expires
September 12, 2006

EXHIBIT A
(Attached to Assignment of Leases, Rents and Profits)

1.    Description of Mortgage:  Mortgage, Assignment of Rents and Security Agreement from KT Spears Creek, LLC, to RBC Centura Bank of even date herewith.

2.    List of Leases and Rental Agreements:

3.    Description of Property:    See legal description attached.

## EXHIBIT A

### PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST, A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND) ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF 33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 81°49'37" WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00 FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37" EAST 34.85 FEET TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A CALCULATED POINT ; THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51 FEET TO A CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE OF 100.67 FEET TO A CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT; THENCE NORTH 61°03'52" WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH 14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR (FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF 69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W NORTH 72°00'37" EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W NORTH 71°54'05" EAST, A DISTANCE OF 5.80 FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF 104.64 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17" EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NPCOL1:841374.1-EX-(IMM) 039113-00000

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05 and 25900-04-04

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

## PHASE II PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE  NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59" EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND; THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03" EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY  ALONG SAID  R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE  SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING  ALONG SAID  R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

NPCOL1:841374.1-EX-(IMM) 039113-00000

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

Cause No. 2010-CP-40-6025

| RBC BANK (USA) | * | IN THE COURT OF |
| | | |
| VS. | * | COMMON PLEAS |
| | | |
| KT Spears Creek et al. | * | STATE OF CAROLINA |

## AFFIDAVIT OF JOHN F. KASPAR JR.

On this day, before me the undersigned authority, personally appeared **JOHN F. KASPAR JR.**, known to me to be the person whose name is subscribed hereto and under oath stated:

"My name is **JOHN F. KASPAR JR.** I am over the age of eighteen years, of sound mind, I am not a party to or interested in the outcome of the cause and I am a process server authorized by the Supreme Court of Texas through the T.R.C.P., to serve citations and other notices; that I have personal knowledge of every statement herein made and I am fully competent to testify as to matters stated herein. Furthermore, I am licensed by the State of Texas as a Private Investigator for my company, ESI Investigations.

I received copies for service of the Summons of Complain, Lis Pendens, Motion to Appoint Receiver, Motion for Temporary Restraining Order and the Temporary Restraining Order on September 9, 2010, to be served upon Kyle D. Tauch individually, as well as Kyle D. Tauch on behalf of KT Spears Creek, LLC.

Service was unsuccessfully attempted at Tauch's address located at 5410 Piping Rock, Harris County, Houston Texas, on the following dates:

    September 9, 2010; at 11:45 a.m., and 8:00 p.m.
    September 10, 2010; at 12:45 p.m., and 8:00 p.m.
    September 11, 2010; at 11:00 a.m. and 9:10 p.m.
    September 12, 2010; at 10:45 a.m., and 9:30 p.m.
    September 13, 2010; at 8:15 p.m.
    September 14, 2010; at 9:45 p.m.

During the times I attempted serve Tauch and KT Spears, it appeared Tauch had been out of town for an extended amount of time. I arrived at this conclusion because the grass in the back yard was well overgrown, and on several occasions the mail was over-flowing from the mailbox. It appears someone is picking up his mail every couple of days but no one appears to have been inside the residence on Piping Rock, nor has there ever been a car parked at the residence. It is my opinion that Tauch is out of town, out of state, or even out of the country.

I also performed a skip-trace search on Tauch and it does appear that the address at 5410 Piping Rock is his current address.

Further affiant sayeth not.

DEBRA KENNEDY
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
**JUNE 12, 2011**

_____
AFFIANT, JOHN KASPAR

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 15th DAY OF September, 2010.

_____
NOTARY PUBLIC STATE OF TX

**EXHIBIT
3**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

KT SPEARS CREEK, LLC,

      DEBTOR.

Case No. 11-33991-H3-11
Chapter 11

## ORDER GRANTING RBC (USA) BANK'S MOTION TO DISMISS FOR BAD FAITH FILING AND FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1408

The Court has considered the Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. § 1408 filed by RBC Bank (USA) (the "Motion"). The Court, having considered the Motion and all related pleadings, finds and concludes that: (a) the Court has jurisdiction over the Motion; (b) due notice of the Motion and the hearing on the Motion has been given to all parties entitled thereto, as evidenced by certificates of service filed with the Court; (c) the Debtor cannot establish that its principal place of business is located in the Southern District of Texas and the Debtor has no other basis to establish venue in the Southern District of Texas; and (d) the factors enunciated in *In re Little Creek Development Company*, 779 F.2d 1068 (5th Cir. 1986) were established by RBC Bank that the Debtor's bankruptcy filing was done in bad faith.

**IT IS THEREFORE ORDERED** that the Motion is hereby **GRANTED** so as to dismiss the Debtor's Bankruptcy Petition with prejudice to refiling for 180 days.

**Dated**: _____, 2011.

_____
LETITIA Z. PAUL
U.S. BANKRUPTCY JUDGE

HOUSTON_1\1111776v1
49590-25  06/01/2011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

KT SPEARS CREEK, LLC,

     DEBTOR.

Case No. 11-33991-H3-11
Chapter 11

## MOTION TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE CASE PURSUANT TO 11 U.S.C. § 101(51B)

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE LETITIA Z. PAUL, U.S. BANKRUPTCY JUDGE:

     RBC Bank (USA) ("RBC Bank"), by and through counsel, moves this Court to designate this case as a single asset real estate case ("SARE") pursuant to Section 101(51B) of the Bankruptcy Code ("Motion").

### Jurisdiction and Venue

     1.    This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334 and the standing order of reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue properly lies in the United States Bankruptcy Court for the District South Carolina rather than in this Court. The statutory predicates for relief are 11 U.S.C. §§ 101(51)(B), 105(a) and 362(d)(3).

Page 1

## Relief Requested

2.    RBC seeks the entry of an order determining that (A) the Real Estate (as defined below) securing RBC's claim falls within the definition of "single asset real estate" in section 101(51B) of the Bankruptcy Code, and (B) section 362(d)(3) of the Bankruptcy Code is applicable and the Debtor is required to comply with the provisions of that section no later than August 2, 2011, which is the date that is 90 days following the Petition Date.

## Factual Background

3.    KT Spears Creek, LLC ("Debtor" or "KT Spears") filed its voluntary petition for relief under Title 11 of the United States Code on May 4, 2011, in order to stop the completion of a judicial foreclosure of a multi-family apartment complex located in Richland County, South Carolina.

4.    On or about May 25, 2006, KT Spears executed and delivered to RBC Bank a written Promissory Note in the original principal amount of $19,700,000.00, as amended or modified by that certain Modification, Cross-Collateralization and Cross-Default Agreement dated May 25, 2006, and that certain Change In Terms Agreement dated May 23, 2008 (as may be amended from time to time including all renewals and modifications collectively "Note").

5.    To secure the indebtedness owed to RBC Bank under the Note, KT Spears executed and delivered to RBC Bank a written Mortgage, Assignment of Rents and Security Agreement dated May 25, 2006, and recorded with the Register of Deeds of Richland County, South Carolina on June 2, 2006 in Book 1190, Page 1008 ("Mortgage") encumbering certain real property located in Richland County, South Carolina ("Real Property") described therein.

6.    KT Spears also assigned all of KT Spears Creek's interest in and to all leases, rents and profits affecting the use, enjoyment or occupancy of all or any part of the Real Property, all as

more particularly set forth in the Assignment of Leases, Rents and Profits dated May 25, 2006, and recorded on June 16, 2006 in Book 1195, Page 2187 of the Richland County Registry ("Assignment of Leases").

      7.    KT Spears defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full at maturity. As of the date of the Petition Date, the outstanding balance owed to RBC Bank was as follows:

| | |
|---|---|
| Principal | $19,015,447.16 |
| Interest | $ 3,479,264.72 |
| Total | $22,494,711.88 |

The per diem at a default rate is $9,507.72. The principal includes $835,940.11 in advances made by RBC Bank to pay past due and unpaid property taxes for 2009 and 2010 to Richland County, South Carolina.

      8.    The Debtor's real and personal property, including the income generated therefrom, was and continues to be in the hands of a state-appointed receiver in Columbia, South Carolina, pursuant to the Order Appointing Receiver entered by the Special Circuit Court Judge in Richland County, South Carolina dated November 12, 2010. A true and correct copy of the Order Appointing Receiver is attached as **Exhibit 1**.

      9.    The Debtor's sole asset consists of one single contiguous piece of real property (the "Real Estate"). A true and correct depiction of a map designating the property owned by KT Spears is attached hereto as **Exhibit 2**. The Debtor's sole business purpose is to hold title to, develop and operate the Real Estate. The property outlined in blue/green on the map depicts the property that was being foreclosed upon by RBC Bank. The only structure on this property is the

apartment complex that is subject to RBC Bank's lien.  The only income being generated from the property is the rents from the apartment complex.[1]

10.     The Debtor's activities and filings in this Court further evidence the limited "single asset" nature of the Debtor's operations, despite the Debtor's failure to designate itself as a single asset real estate debtor on its Voluntary Petition.  The Real Estate constitutes the Debtor's single property and is the Debtor's sole source of income, and the Debtor conducts no substantial other business.

## Argument and Authorities

### A.     The Debtor is a "Single Asset Real Estate" Debtor

11.     To fall within the Bankruptcy Code's definition of "single asset real estate" ("SARE"), a Chapter 11 debtor must satisfy three conditions: (1) debtor must own real property constituting a single property or project; (2) which generates substantially all of the gross income of the debtor; and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto.  11 U.S.C. § 101(51B).  *See also In re Scotia Pacific Co.*, 508 F.3d 214 (5th Cir. 2007).

12.     The first two conditions set forth above are satisfied because the Real Estate consists of a single project, which is the sole source of income being generated--which RBC Bank claims the rents no longer belong to the Debtor--is being generated from the single project located on the real estate owned by the Debtor.

13.     The Debtor has no other business beyond the development, operation and/or sale of the Real Estate.  Numerous courts have designated debtors to be single asset real estate debtors under similar circumstances. *See, e.g., In re Philmont Dev. Co.*, 181 B.R. 220, 224 (E.D. Pa. 1995)

---

[1] RBC Bank maintains that because of the pre-petition Orders granted by the South Carolina circuit court, the rents from the property are not an asset of this estate. *See In Re Four Bucks, LLC*, WL 1857432 (Bankr. N.D. Tex. 2009).

(typical single asset real estate cases involve "an apartment building, office building, or 'strip' shopping center owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate"); *Kara Homes, Inc. v. National City Bank (In re Kara Homes, Inc.)*, 363 B.R. 399 (Bankr. D. N.J. 2007) (real property owned for development was single asset real estate and section 362(d)(3) applied); *In re Village Walk, LLC*, 2008 Bankr. Lexis 1873 (Bankr. D. Conn., May 29, 2008) (real property owned for residential and commercial purposes, and upon which a new office building was to be constructed, was single asset real estate because the debtor conducted no ongoing business operations other than those incidental to the development of the real property); *In re Rear Still Head Road, LLC*, 2007 WL 2935483 (Bankr. D. Conn., Oct. 5, 2007) (real estate owned for purpose of developing residential subdivisions was single asset real estate under section 101(51B)); *In re Syed*, 238 B.R. 133, 139-140 (Bankr. N.D. Ill. 1999) ("single asset real estate includes partially developed land generating no income as well as raw land").

14.    Upon information and belief, the Debtor claims that because the Real Estate is divided into separate parcels, with separate lenders and separate development plans, it is not a single asset real estate entity. In *In re Pioneer Austin East Development I, Ltd.*, 53 Bankr. Ct. Dec. 100, 2010 Bankr. LEXIS 2160 (Bankr. N.D. Tex. 2010), the Bankruptcy Court for the Northern District of Texas found that even though the debtor's development was comprised of several tracts of land, which were purchased separately, financed separately and described by metes and bounds, it still constituted a single asset real estate entity.

15.    Likewise in *In re Sergent Ranch, LLC,* 2010 Bankr. LEXIS 2607 (Bankr. S.D. Ca. 2010), the Bankruptcy Court for the Southern District of California overruled debtor's argument that 6400 acres of contiguous parcels was not a single asset real estate entity finding that "single asset real estate included raw, undeveloped land." *Id. at 5.* Furthermore the Court held that just

because the Debtor had separate plans for development of the property did not destroy its character

as a single asset real estate entity. The Court stated:

> However, intentions do not constitute projects. There is no disputing the fact that at
> the time the case was filed, as well as at the time of the hearing, every inch of every
> parcel of the Property, with the exception of a small portion being leased to third
> parties, is part of the same operation – namely waiting and planning for future
> development.

*Id.*

16.    In *In re Harmony Holdings, LLC,* 2008 Bankr. LEXIS 2106 (Bankr. D. S.C. 2008),

the Bankruptcy Court for the District of South Carolina held that the property was a single project

despite the fact that it was acquired as several tracts of land and had been partially developed. *Id.*

*at 3.*    In fact, in this case the Court found that it constituted a single asset real estate entity even

though it was owned by two entities. The South Carolina Bankruptcy Court found that acquiring

developable land, obtaining permits and zoning changes, designing and building improvements is

within the traditional scope of the SARE definition.

17.    The third condition of the SARE definition is also satisfied because the Debtor

conducts no substantial business, other than the business of operating the Real Estate and activities

incidental thereto. In the Fifth Circuit, the question at the heart of the SARE analysis is "whether

the real property is used in the operation of a business or whether it is simply held for income."

*Scotia Dev.*, 375 B.R. at 777.

18.    In conducting a SARE analysis, courts distinguish between debtors that "passively"

receive revenue from the real property versus debtors that operate "active" businesses. In order to

be a SARE debtor, the revenues received by the debtor must be passive in nature; the debtor must

not be conducting any active business, other than operating the real property and activities

incidental thereto. Passive types of activities include the mere receipt of rent and incidental

activities such as arranging for maintenance or marketing of the property. *Scotia Dev.*, 508 F.3d at

221, quoting *In re Club Golf Partners, L.P.*, 2007 WL 1176010 (Bankr. E.D. Tex., Feb. 15, 2007)

at *5 (internal quotations omitted).

19.    Here, the Debtor's activities are obviously passive and merely incidental to the

Debtor's ownership and operation of the Real Estate. Here, the Debtor has no employees and

conducts no business. In fact, the Apartment Complex has been managed by an independent third-

party for years and the Debtor passively collected rent. Since late last fall the only developed

portion of Debtor's property has been in the hands of a state court receiver in Richland County,

South Carolina. The Debtor alleges that it is seeking alternative financing and pursuing

development of the parcels. This activity, if supported by the evidence, does not destroy the single

asset real estate character of the Debtor. The Debtor's activities fit the essential SARE

characteristic that "the real property is . . . simply held for income." *Scotia Dev.*, 375 B.R. at 777.

Therefore, the Debtor should be classified as a SARE debtor and required to satisfy the

Bankruptcy Code's obligations accompanying such classification.

**B.    Section 362(d)(3) of the Bankruptcy Code Applies to This Case**

20.    Section 362(d)(3) of the Bankruptcy Code codifies a clear Congressional policy that

SARE cases should not obstruct actions by secured creditors against such real estate unless the

debtor strictly complies with the requirement of that section. Section 362(d) of the Bankruptcy

Code mandates that:

> ...the court shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying, or conditioning such stay---
> ...
>     (3) with respect to a stay of an act against single asset real estate under
> subsection (a), by a creditor whose claim is secured by an interest in such real
> estate, unless, not later than the date that is 90 days after the entry of the order for
> relief (or such later date as the court may determine for cause by order entered

within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later---

        (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

        (B) the debtor has commenced monthly payments that –

        (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

        (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

21.     The primary purpose of Section 362(d)(3) is to place SARE cases "on an expedited track." *In re Philmont Dev. Co.*, 181 B.R. 220, 223 (E.D. Pa. 1995); *In re KKEMKO, Inc.*, 181 B.R. 47, 49 (S.D. Ohio 1995); *In re Oceanside Mission Assoc.*, 192 B.R. 232, 235 (Bankr. S.D. Cal. 1996) (stating "Sections 101(51B) and 362(d)(3) are designed to require debtors with single asset real estate to act in an expedited fashion"). It is designed "to afford secured creditors a relatively easy way to obtain relief from stay: all they have to do is show that the debtor has failed to perform under 362(d)(3) rather than engaging an appraiser and fighting over value." *Id.* at 238.

22.     Not only does this case fit within the definition of a SARE case under Section 101(51B) and, thus, automatically qualify for Section 362(d)(3) expedited relief, but the circumstances of this case present the exact scenario that Congress intended to address by enacting amended Section 362(d)(3).

RBC Bank therefore requests that this Court enter an order designating the Debtor as a single asset real estate entity in accordance with 11 U.S.C. § 101(51B), and that 11 U.S.C. §

362(d)(3) is therefore applicable to this case.  RBC also requests such other and further relief to

which it may show itself to be justly entitled.

This the 1st day of June, 2011.

WINSTEAD PC

By: /s/ Joseph G. Epstein
    Joseph G. Epstein
    Texas State Bar No. 06639320
    S.D. Texas No. 11733
    1100 JPMorgan Chase Tower
    600 Travis Street
    Houston, TX 77002
    Telephone: 713-650-2740
    Facsimile:  713-650-2400
    Email:

JOHNSTON, ALLISON & HORD, P.A.

By: /s/  Constance L. Young
    Constance L. Young,
    N.C. State Bar No. 16115
    Admitted *Pro Hac Vice*
    1065 East Morehead Street
    Charlotte, NC  28204
    Telephone: 704.332-1181
    Facsimile:  704.376-1628
    Email: cyoung@jahlaw.com

ATTORNEYS FOR RBC BANK (USA)

## CERTIFICATE OF SERVICE

I hereby certify that on the June 1, 2011, a copy of the foregoing **MOTION TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE CASE PURSUANT TO 11 U.S.C. § 101(51B)** was served via first class mail upon the parties shown below and on the attached mailing matrix by placing same in the United States Mail, postage prepaid in a properly addressed envelope:

| | |
|---|---|
| Magdalene Duchamp Conner<br>Matthew Scott Okin<br>Okin Adams & Kilmer LLP<br>1113 Vine Street, Suite 201<br>Houston, TX 77002<br>*Attorneys for Debtor* | Ellen Maresh Hickman<br>Office of the U.S. Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>*Attorney for U.S. Trustee* |

Additionally, notice of this document was electronically mailed on June 1, 2011 to the all parties  registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

/s/ Joseph G. Epstein
Joseph G. Epstein

STATE OF SOUTH CAROLINA                )   IN THE COURT OF COMMON PLEAS
                                       )
COUNTY OF RICHLAND                     )
                                       )
RBC Bank (USA),                        )   Case No.: 2010-CP-40-6025
                                       )
            Plaintiff,                 )
                                       )
                                       )   **Order Appointing Receiver**
      v.                               )
                                       )
KT Spears Creek, LLC, KT Builders,     )
LTD., Kyle D. Tauch, and Hyco          )
Plumbing, Inc. ,                       )
                                       )
            Defendants.                )

2010 NOV 17  PM 1:22
JEANETTE W. McBRIDE
C.C.P. & G.S.
RICHLAND COUNTY
FILED

      This matter came before the Court on the Plaintiff's motion for the appointment of a receiver and a Verified Complaint, making application for the appointment of a Receiver for the Property as identified in the Complaint. Due and proper notice of this hearing was served on all parties to the action and upon the property manager as will appear by reference to the hearing notice served by Plaintiff's counsel on October 29, 2010 and filed on November 1, 2010.  Appearing before the Court was counsel for the Plaintiff.  The Defendants KT Spears Creek, LLC and KT Builders, LTD are in default and did not appear.  The Defendant Kyle D. Tauch is being served by publication.  The Defendant Hyco Plumbing did not appear, but advised Plaintiff's counsel, that it did not oppose the appointment of the receiver.

      This Court has the authority to appoint a Receiver of the Property pursuant to Section 15-65-10 of Code of Laws of South Carolina (1976) et seq.  Further, the Mortgage at issue in this case provides that Plaintiff is entitled to the appointment of a receiver upon default by the mortgagor (KT Spears Creek).  The well pleaded

1


EXHIBIT

allegations of the Complaint and its attachments incorporated into the Complaint are deemed admitted by those Defendants in default. Further, the Court notes that Judge Allison R. Lee has issued a Temporary Injunction in this case. In her Order, Judge Lee specifically found that the Plaintiff would suffer immediate and irreparable injury in the case if the injunction was not issued. That injunction provides, *inter alia*:

> the Enjoined Parties are ordered to collect and pay to RBC Bank (USA) all the income and profits from the Property in any such person's possession until further order of this Court. The Enjoined Parties are, however, permitted to pay the necessary operating expenses of the apartment complex such as utilities, maintenance, and routine repairs.

The Property identified in the Complaint is comprised of an apartment complex in Richland County, South Carolina, an assignment of leases, rents, and profits, and personal property of KT Spears Creek, LLC (herein "Property"). Plaintiff is entitled to protection of its Property during this proceeding.

IT IS THEREFORE ORDERED:

1.    <u>Receivership</u>. The Property of KT Spears Creek, LLC ("Borrower") as identified in the Complaint is placed in receivership.

2.    <u>Receiver</u>. Colliers International whose address is 1301 Gervais St., Suite 600, Columbia, South Carolina, Attention Mr. Woody Moore, is hereby appointed Receiver over the Property. All communication to the Receiver shall be directed to the Receiver at the above address. Confirmation of general insurance coverage as to the Receiver or a bond of Five Thousand and No/100 ($5,000.00) Dollars shall be filed with the court within seven business days of the date of this Order.

3.    <u>Restrained</u>. Borrower (its agents, representatives and employees) are restrained from disposing of, transferring, conveying, or otherwise encumbering the

2

Property or books, files, records and accounts relating to the Property, and they and all other parties having Property in their possession or under their control are hereby directed to deliver the same to the said Receiver.

4.    Cooperation.  Borrower, its agents, representatives and employees, are ordered to cooperate with the Receiver and appear at the Property, and at the Receiver's office, at such times as may be required to sign such legal documents as may be necessary and to furnish such records as the Receiver may require.  Failure of Borrower to cooperate with the Receiver or otherwise comply with terms of this order shall make Borrower liable for contempt of court upon application by the Receiver or his attorneys. The parties are hereby ordered to cooperate with the Receiver at all times during the pendency of this receivership.

5.    Income.  Borrower, its respective agents and employees, and any other person receiving actual notice of the terms of this Order are hereby ordered and directed to immediately collect and pay to the below named Receiver all of the income and profits (both current and prepaid) from the Property in any such person's possession as of the date of this Order, regardless of when collected, pending adjudication of the parties' rights thereto and subject to such other orders of this Court as may be subsequently entered.  In addition, Borrower shall execute any and all documents necessary to substitute the Receiver for the current signatories on all of the bank accounts relating to the Property of Borrower.

6.    Inventory and Reports.  The Receiver shall prepare and deliver to all parties appearing of record within thirty (30) days from the date of this Order a full and detailed inventory, under oath, of all the Property which comes into its possession and

3

thereafter it shall prepare and deliver to all parties appearing of record each thirty (30) days thereafter a full and complete report reporting all activities and changes in the Receivership estate and all claims against the estate that have arisen or have occurred during the period covered by the report.

7. <u>Possession of Property</u>. The Receiver shall take and have exclusive control, possession and custody of all the Property, monies, contracts, insurance policies, assets, files, papers, keys, accounts receivable, records, documents, licenses, permits, monies, securities, choses in action, books of account, bank accounts and all other property, real, personal, or mixed, which relate to the Property, and shall retain custody of the same until further order of this Court. All Defendants and other persons or corporations now or hereafter in possession of the Property, or any part thereof, or any other of the items entrusted to the Receiver as set forth herein, shall forthwith surrender such possession to the Receiver.

8. <u>Operating Account</u>. The Receiver shall establish and/or maintain, at a banking or savings and loan institution located in South Carolina whose deposits are insured by the FDIC or the FSLIC, a separate operating account ("the Operating Account") into which the Receiver shall deposit all receipts from the Property and from which the Receiver shall disburse regularly and punctually (to the extent available), all amounts due and payable as are reasonable, necessary and proper operating expenses of the Property, subject to the terms of this Order.

9. <u>Costs</u>. The Receiver is hereby authorized, empowered and directed to pay from the Operating Account all reasonable expenses necessary for the preservation of the Property, including, but not limited to, the costs of all labor, insurance, equipment,

4

supplies, inventory, water, sewer, trash and garbage disposal, electricity, security and telephone expenses which are necessary to the operation and preservation of the Property, together with any expenditure authorized by Plaintiff.

10. <u>Operation</u>. The Receiver is hereby authorized, empowered and directed to contract with such individuals and entities as may be necessary to preserve, protect, supervise, operate and manage the Property. The Receiver shall use its best efforts to operate the Property profitably, and to maintain the building, appurtenances and grounds of the Property in accordance with customary standards for a business of its type, including, without limitation, interior and exterior cleaning, painting and decoration, plumbing, carpentry, maintenance of air conditioners and elevators, and such other normal maintenance and repair work as may be appropriate, subject to the requirements and limits set forth herein.

11. <u>Collection of Rents and Profits</u>. The Receiver is hereby authorized, empowered and directed to enforce and collect all debts, accounts receivable, rents or other obligations due and owing to or from the operation of the Property. Subject to its obligations to pay the costs of the Property and operate the Property, and consistent with Judge Lee's Temporary Injunction, the Receiver shall pay to RBC Bank (USA) all the income and profits from the Property.

12. <u>Insurance</u>. The Receiver is hereby authorized, empowered and directed to maintain all policies of insurance or similar contracts affecting the Property in full force and effect, and if none exists, to insure the Property for its current fair market value against personal injury, property damage and liability claims. The Receiver shall maintain or purchase appropriate property insurance for the Property, public liability

5

insurance, workmen's compensation insurance, fire and extended coverage insurance, and burglary and theft insurance. The Plaintiff shall be listed as an insured and a loss payee on all such insurance policies. The Receiver shall promptly investigate and provide Plaintiff a full, prompt written report as to all serious and material accidents, claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof, and shall prepare any and all reports required by any insurance company in connection therewith. All existing insurance coverage purchased by the Borrower or by any other person, which is now in force for the protection of the Property, is hereby assigned to the Receiver.

13.  Actions Against Receiver.  All persons, funds, corporations, associations and all other parties are hereby enjoined and restrained from commencing, maintaining, or otherwise prosecuting any action at law or in equity against the Receiver without prior leave of this Court.

14.  Default.  Entry of this Order shall not constitute a breach or default of any contract relating to the Property unless the Receiver expressly cancels such contract.

15.  Employment of Professionals.  The Receiver may employ attorneys, accountants, or other professionals if reasonably required to discharge its duties herein and shall, if necessary, apply to this Court for instructions and advice if in doubt concerning its rights and responsibilities as Receiver.

16.  Leasing. The Receiver shall have the authority to lease, rent or otherwise seek compensation for space at the Property in the ordinary course of business, at such

6

rates and on such terms as are customary in the business, provided that Plaintiff approves each such rental or lease agreement.

17.    Other Tasks.    The Receiver is hereby authorized, empowered, and directed to perform all other tasks reasonably necessary for the proper administration, conservation, maintenance, security and protection of the Property.

18.    Fees.  At the end of each month, the Receiver shall present to all parties who have appeared of record an invoice for services rendered to the Receivership and if no objections are received within ten (10) days, the Receiver shall pay such invoice from funds in the Operating Account.  In the event any party of record objects to the payment of any invoice presented or any charge contained therein, the Receiver may seek an order approving and directing such payment.  The compensation of the Receiver shall be at the discretion of the Court and shall be set by the Court upon further order.

19.    Legal Actions.    The Receiver is hereby authorized, empowered and directed to apply to this Court for instructions and authorization should it seem to be necessary or desirable to sue or defend any legal action or otherwise compromise or settle same.

20.    Use and Maintenance of Property.  The Receiver shall not permit the use of the Property for any purpose which will or might void any required policy of insurance, which might render any loss thereunder uncollectible, or which would be in violation of any law or government restriction.

21.    Records.  The Receiver shall maintain a comprehensive system of office records, books, and accounts concerning the operation of the Property.    At all

7

reasonable times, Plaintiff, Defendants, and their respective agents and other representatives shall have reasonable access to such records, accounts and books and to all vouchers, files, and all other material pertaining to the operation of the Property, all of which the Receiver agrees to keep safe, available and separate from any records not having to do with the operation of the Property.

22. <u>Legal Requirements</u>.  The Receiver shall ensure that all aspects of the Property, and its operation and management, comply with any and all laws, regulations, orders or requirements affecting the Property issued by any federal, state, county or municipal authority having jurisdiction thereover.

23. <u>Employment of Agents</u>.  The Receiver is hereby authorized to employ agents, servants and employees and to contract as necessary for the purpose of renting, operating, managing, preserving, protecting, and taking possession of the Property, and carrying out the terms of this Order.  The Receiver shall collect the rents, revenues, and profits from the Property, including those now due and unpaid, and hereafter to become due.

24. <u>Licenses</u>.  All existing licenses relating to the operation of the Property issued in the name of the Borrower are hereby assigned to the Receiver.

25. <u>Termination of Receivership</u>.  Plaintiff, or the successful bidder at any foreclosure sale of the Property, may apply to the Court upon the issuance of an Order of Sale, for entry of an order terminating the Receivership, discharging the Receiver, and putting the successful bidder at sale into possession of the Property, effective upon issuance of a deed to the Property.

26.    <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction of this matter to enter such further orders as may be just and proper.

27.    <u>Sheriff's Assistance</u>.   The Receiver is authorized and empowered to obtain the assistance of the Sheriff's Department of the counties of this State in performing those duties and responsibilities enumerated herein.

AND IT IS SO ORDERED.

Joseph M. Strickland
Special Circuit Court Judge

Columbia, South Carolina

November 12, 2010.

9

STATE OF SOUTH CAROLINA        )    IN THE COURT OF COMMON PLEAS
                               )
COUNTY OF RICHLAND             )
                               )
RBC Bank (USA),                )    Case No.: 2010-CP-40-6025
                               )
                Plaintiff,     )
                               )
         v.                    )
                               )    NOTICE OF HEARING
KT Spears Creek, LLC, KT Builders, )
LTD., Kyle D. Tauch, and Hyco  )
Plumbing, Inc. ,               )
                               )
                Defendants.    )
_____)

TO ALL DEFENDANTS ABOVE NAMED:

THIS IS TO ADVISE YOU that a hearing on Plaintiff's Motion for Appointment of

Receiver in the above-captioned action will be held  before the Honorable Joseph M.

Strickland, Special Circuit Court Judge for Richland County, in his courtroom on

**November 12, 2010 at 11:45 a.m.**, at the Richland County Courthouse.


Thomas W. Bunch, II
Robinson, McFadden & Moore, P.C.
Post Office Box 944
Columbia, SC  29202
(803) 779-8900


Columbia, South Carolina

October 29th, 2010

STATE OF SOUTH CAROLINA  )
                         )  IN THE COURT OF COMMON PLEAS
COUNTY  OF  RICHLAND     )
                         )
RBC Bank (USA),          )       Case No.: 2010-CP-40-6025
                         )
           Plaintiff,    )
                         )
                         )
      v.                 )
                         )  CERTIFICATE OF SERVICE BY MAIL
KT Spears Creek, LLC, KT Builders, LTD., )
Kyle D. Tauch, and Hyco Plumbing, Inc. , )
                         )
           Defendants.   )
                         )

This is to certify that I, Amy E. L. Horner, a Paralegal with the law firm of Robinson, McFadden & Moore, P.C., have this day caused to be served upon the person(s) named below the **NOTICE OF HEARING** in the foregoing matter by placing a copy of same in the United States Mail, postage prepaid, in an envelope addressed as follows:

KT Spears Creek, LLC, at their designated office address of
8910 Two Notch Road, Suite 302
Columbia, SC 29223.

George Lee, Registered Agent
KT Builders, LTD
325 Wood Duck Road
Columbia, SC 29223

N. Ward Lambert, Esquire
Harper, Lambert & Brown
Post Office Box 908
Greenville, SC  29602
(Attorneys for Hyco Plumbing, Inc.)

Mr. Kyle Tauch
5410 Piping Rock
Houston, TX 77056

Dated at Columbia, South Carolina this 29th day of October, 2010.

_____
Amy E. L. Horner

KT SPEARS (Part 1)

KT SPEARS (Part 1)

* KT SPEARS' OWNER

* KT SPEARS' OWNER

5/10/2011

www3.richlandmaps.com/rcgeoportal/defaultPrint.htm

EXHIBIT
2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

KT SPEARS CREEK, LLC,

     DEBTOR.

Case No. 11-33991-H3-11
Chapter 11

## ORDER GRANTING RBC (USA) BANK'S MOTION TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE CASE PURSUANT TO 11 U.S.C. § 101(51B)

The Court has considered the Motion to Designate Case as Single Asset Real Estate filed by RBC Bank (USA) (the "Motion"). The Court, having considered the Motion and all related pleadings, finds and concludes that: (a) the Court has jurisdiction over the Motion; (b) due notice of the Motion and the hearing on the Motion has been given to all parties entitled thereto, as evidenced by certificates of service filed with the Court; (c) the Debtor's only asset is the Real Estate (as defined in the Motion), a single parcel of real property located in Richland County, South Carolina; and (d) the Debtor's sole business purpose is to hold title to, operate and potentially develop the Real Estate.

**IT IS THEREFORE ORDERED** that the Motion is hereby **GRANTED** so as to designate KT Spears Creek, LLC. as a single asset real estate debtor; it is further

**ORDERED** that the Real Estate meets the definition of "single asset real estate" in section 101(51B) of the Bankruptcy Code; it is further

**ORDERED** that section 362(d)(3) of the Bankruptcy Code is applicable to this case and the Debtor shall comply with the provisions of section 362(d)(3) of the Bankruptcy Code; it is further

**ORDERED** that, without prejudice to RBC Bank's right to seek adequate protection and/or obtain stay relief on any other grounds, the Debtor's failure to comply

Page 1

with the provisions of section 362(d)(3) shall serve as a basis for this Court to grant RBC

Bank relief from the automatic stay with respect to the Real Estate pursuant to section

362(d)(3) of the Bankruptcy Code.

**Dated**: _____, 2011.

 

 

_____

LETITIA Z. PAUL
U.S. BANKRUPTCY JUDGE



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |
| | § | |

### DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS <u>APPROVING USE OF CASH COLLATERAL</u>

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN <u>21 DAYS</u> OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE <u>LESS THAN 21 DAYS</u> TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), files this *Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral* (the "Cash Collateral Motion") and in support thereof would respectfully show as follows:

## I.  JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 361 and 363 and Bankruptcy Rules 2002, 4001, and 9014.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this Cash Collateral Motion, no official committee of unsecured creditors has been appointed.

## II.  FACTUAL BACKGROUND

### A.      The Debtor's Business and Real Property

5.      The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

2

6.    The Debtor's assets include, *inter alia*, three real estate holdings.  One of these real estate holdings includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

**B.    Secured Credit Facilities**

**RBC Bank**

7.    The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

8.    As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

9.    As of the Petition Date, the Debtor's obligation under the RBC Bank Note was approximately $22,646,397.88.

**First Savers**

10.    The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank ("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property.

11.    As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

**First Palmetto**

12.    The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in approximately 7 acres of undeveloped commercial real property.

13.    As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

**C.    The Receivership and Foreclosure Action**

14.    RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

15.    On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property").  The

4

Greenhill Apartments have been in receivership (the "<u>Receivership</u>") pursuant to the state court order and this Court's order permitting the Receiver to remain in place through May 31, 2011 [Docket No. 23] and are managed by GREP Atlantic, L.P. (the "<u>Property Manager</u>").

16.    On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "<u>Foreclosure Judgment</u>").  Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

### D.    <u>Factors Leading to Bankruptcy</u>

17.    As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection.  Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

### III.    RELIEF REQUESTED

18.    Pursuant to Bankruptcy Code §§ 361 and 363, the Debtor requests, *inter alia*, (a) interim authority to use cash collateral ("<u>Cash Collateral</u>") of the RBC Bank in accordance with the terms and conditions set forth herein, the Interim Budget,[1] and the proposed order attached hereto (the "<u>Interim Order</u>"); and, (b) authority to use Cash Collateral on a final basis following the conclusion of a final hearing on this Cash Collateral Motion.

### A.    <u>Immediate Need for Use of Cash Collateral</u>

19.    Bankruptcy Code § 363(c) provides, in relevant part:

(c)    (1)    If the business of the debtor is authorized to be operated under section 721, 1108, 1203, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of

---

[1] The Interim Budget shall be filed with this Court prior to the interim Cash Collateral hearing.

property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

> (2)    The trustee may not use, sell, or lease cash collateral under paragraph (1) of this section unless –

>> (A)    each entity that has an interest in such cash collateral consents; or

>> (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c).

20.    The Debtor has an immediate need to use Cash Collateral, including cash proceeds, to operate its business, including the Greenhill Apartments.  Without such funds, the Debtor will not be able to pay costs and expenses, including, but not limited to operating expenses that will arise in the administration of the Case.

21.    The Debtor requests interim authorization to use Cash Collateral as set forth in the Interim Budget to operate its business, including the Greenhill Apartments, until a final order granting use of Cash Collateral can be entered.  The Debtor is without sufficient funds, other than Cash Collateral, to operate for fourteen (14) or more days until a final hearing on this Cash Collateral Motion can be held.  The Debtor's inability to timely pay the costs and expenses set forth herein will result in immediate and irreparable harm to the estate and its creditors.  Because the Debtor's request for interim authorization seeks the use of only that amount of Cash Collateral necessary to avoid immediate and irreparable harm to the value of its estate pending a final hearing, its request complies with Rules 4001(b)(2) and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

22.    The Interim Budget itemizes the sources and uses of cash and provides a weekly projection of cash receipts and expenditures.  The Interim Budget includes a list of business

expenses that are reasonable and necessary and that must be paid until such time as a final

hearing on the Cash Collateral Motion can be held.  The Debtor proposes that any amounts listed

in the Interim Budget that are unused in any week may be carried over and used by the Debtor in

any subsequent week, on a line-item basis.

23.    The Debtor also requests that the Court authorize it to continue to use Cash

Collateral on a final basis as will be set forth in a supplemental budget (the "Final Budget") to be

submitted to the Court in connection with a final hearing on the Cash Collateral Motion.

**B.    Adequate Protection**

24.    Bankruptcy Code § 363(e) provides that "on request of an entity that has an

interest in property used . . . or proposed to be used . . . , the court . . . shall prohibit or condition

such use . . . as is necessary to provide adequate protection of such interest."  Bankruptcy Code §

361 sets forth a non-exclusive list of forms of adequate protection, which include periodic cash

payments, additional liens, replacement liens, and other forms of relief.  11 U.S.C § 361.  A

determination of adequate protection is decided on a case-by-case basis, involving a

consideration of the "nature of the creditor's interest in the property, the potential harm to the

creditor as a result of the property's decline in value and the method of protection."  *In re Braniff

Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986).  The purpose of adequate protection is to

ensure that a secured party's economic position is not worsened because of the filing of a

bankruptcy case.  *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006).

25.    The Debtor believes that RBC Bank is adequately protected in this Case.

Notably, RBC Bank is oversecured and holds an equity cushion in its alleged collateral.

However, to the extent the Court believes that RBC Bank is entitled to additional adequate

protection, the Debtor proposes to adequately protect the alleged interests of RBC Bank in its prepetition collateral in a number of ways.

26.    First, the Debtor intends to provide adequate protection by offering to maintain the going concern value of the alleged collateral by using the Cash Collateral to continue to operate the Debtor's business. *See In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987) (focusing on diminution in value of collateral). In the instant Case, the Cash Collateral will be utilized post-petition in the same manner it was utilized pre-petition—namely, to operate the Debtor's business, including the Greenhill Apartments.   Accordingly, the RBC Bank is adequately protected from the diminution in the value of its collateral because all expenses relating to the Greenhill Apartments are being incurred to support RBC Bank's alleged collateral. That is, the Cash Collateral is essentially being reinvested into the collateral to maintain its value for the benefit of RBC Bank.   In addition, the Debtor proposes to provide further adequate protection to RBC Bank in the form of payment of contractual interest at the non-default rate pursuant to the terms of the RBC Bank Note.   Thus, RBC Bank will undoubtedly be adequately protected in this Case.

27.    Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

## IV.    NOTICE

18.    Notice of this pleading will be served *via* the Court's Electronic Case Filing system and/or regular United States mail to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to

receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules.

## V.    REQUEST FOR IMMEDIATE AND EMERGENCY RELIEF

28.    Bankruptcy Rule 6003 prohibits the payment of prepetition claims, or other use of property outside the ordinary course of business, within the first twenty-one (21) days of this Case, except as necessary to prevent immediate and irreparable harm.  For the reasons stated previously herein, the Debtor submits that the relief requested is necessary to prevent immediate and irreparable harm to the Debtor's estate.

29.    Furthermore, to successfully implement the foregoing, the Debtor requests a waiver of the notice requirements of Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h) (to the extent applicable).  The exigent nature of the relief sought herein justifies immediate relief, which is necessary for the Debtor to be able to continue to operate its business and preserve the value of its estate.

19.    The Debtor requests emergency consideration of the Cash Collateral Motion to prevent immediate and irreparable harm to the Debtor's estate.  There exists an immediate need to allow the Debtor to continue to operate its business, including the Greenhill Apartments on an interim basis.  Emergency relief will avoid business interruption, which would harm the Debtor's estate and creditors.   Without the requested relief, the Debtor's estate and its creditors will suffer immediate and irreparable harm.  Therefore, the Debtor respectfully requests that this Court hear this Cash Collateral Motion on an emergency basis within the next five (5) days.

## VI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that this Court: (a) hear the Cash Collateral Motion on an emergency basis; (b) enter the Interim Order

and Supplemental Order authorizing, on an interim and final basis, respectively, the Debtor's use

of Cash Collateral and granting adequate protection to RBC Bank as more particularly set forth

herein and in the Interim and Supplemental Orders; and, (c) grant the Debtor such other legal or

equitable relief to which it may be justly entitled.

Dated:  June 1, 2011

                                        Respectfully submitted,

                                        **OKIN ADAMS & KILMER LLP**

                                        By:  */s/  Maggie D. Conner*
                                              Matthew S. Okin
                                              Texas Bar #00784695
                                              Maggie D. Conner
                                              Texas Bar. #24038439
                                              1113 Vine St., Suite 201
                                              Houston, TX  77002
                                              Tel:  713- 228-4100
                                              Fax:  888-865-2118
                                              mokin@oakllp.com
                                              mconner@oakllp.com

                                        **PROPOSED ATTORNEYS FOR THE
                                        DEBTOR**

### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that proposed counsel for the Debtor conferred with Counsel for RBC Bank on June 1, 2011 *via* telephone and was unable to reach an agreement regarding the relief requested in the Cash Collateral Motion.

                                        */s/  Maggie D. Conner*
                                        Maggie D. Conner

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system on the 1st day of June, 2011 and/or *via* regular United States mail on the 2nd day of June, 2011.

                                        */s/  Maggie D. Conner*
                                        Maggie D. Conner

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

**_Counsel for First Palmetto Bank_**

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |

## INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL
## AND GRANTING ADEQUATE PROTECTION
[Related to Docket. No. _____.]

On June __, 2011, the Court considered the *Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral* (the "Cash Collateral Motion")[1] filed by the above-referenced debtor and debtor in possession (the "Debtor").

## Final Cash Collateral Hearing

A final hearing on the Cash Collateral Motion shall be held on June __, 2011, at __:__ __.m. (the "Final Hearing"), before the Honorable Letitia Z. Paul, United States Bankruptcy Judge, at the United States Bankruptcy Court, 515 Rusk Avenue, Courtroom 401, Houston, Texas 77002. Objections to the relief requested in the Cash Usage Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the attached Service List so that any such objections are received on or before _____ p.m. (prevailing Central Time) on June __, 2011:

## Findings of Fact and Conclusions of Law

Having considered the Cash Collateral Motion, any evidence proffered or presented, and any arguments of counsel, the Court hereby finds and concludes as follows:

A.    The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Cash Collateral Motion.

1

the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court

has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

      B.     The Debtor is the borrower under that certain Commercial Promissory Note dated

as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC

Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC

Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May

25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default

Agreement, and the execution of a Change in Terms Agreement on May 23, 2008.  As of the

Petition Date, the Debtor's obligation under the RBC Bank Note is approximately

$22,646,397.88.  As security for the RBC Bank Note, the Debtor executed in favor of RBC a

Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering

certain real property.  The Mortgage, Assignment of Rents and Security Agreement was recorded

on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County,

South Carolina in Book 1190, at page 1008.

      C.     The Debtor requires the use of cash collateral (the "Cash Collateral") to pay costs

and expenses, including, but not limited to the expenses reasonable and necessary to operate the

Greenhill Apartments, to maintain and preserve the Debtor's business and asset value.

      D.     Nothing in this *Interim Order Authorizing Use of Cash Collateral and Granting*

*Adequate Protection* (the "Interim Order") shall constitute a determination of the existence,

validity, or priority of any pre-petition security interest or lien of RBC Bank or any other party in

interest, nor shall the positions of the Debtor reflected in this Interim Order be construed as

admissions of any factual or legal issues between such parties.  This Interim Order shall not affect

the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to

the Cash Collateral Motion's request for subsequent cash collateral orders.

       E.      The Debtor has authority to use Cash Collateral, on an interim basis, on the terms and conditions provided for herein, *nunc pro tunc,* commencing on the Petition Date and expiring at the conclusion of the Final Hearing (the "Interim Period").

       F.      Under the circumstances, notice of the Cash Collateral Motion was appropriate and sufficient to the parties listed above for the limited purpose of this Interim Order.

       G.      Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this is an Interim Order and will remain in effect pending entry of a final order on the Motion.

       H.      Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Collateral Motion is hereby approved.

## ORDER

     Accordingly, it is therefore **ORDERED:**

     1.      Pursuant to the terms of this Interim Order and as set forth in the Interim Budget attached hereto, the Debtor may Cash Collateral, including any Cash Collateral of RBC Bank, during the Interim Period. The Debtor's continued use of such funds thereafter shall be subject to further hearing or written agreement between RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court. Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtor in any subsequent week.

     2.      As adequate protection to RBC for the Debtor's use of Cash Collateral pursuant to Bankruptcy Code § 363(c), the Debtor shall maintain the going concern value of the alleged collateral by using the Cash Collateral to continue to operate the Debtor's business.

     3.      As additional adequate protection to RBC Bank, the Debtor shall make payments to RBC Bank of contractual interest at the non-default rate pursuant to the terms of the RBC

Bank Note.

       4.     The entry of this Interim Order shall not prejudice or limit the rights of RBC Bank or any other party in interest to seek additional relief with respect to use of Cash Collateral or for adequate protection. This Interim Order shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

SIGNED THIS ___ day of June, 2011.

                            _____

                            HONORABLE LETITIA Z. PAUL
                            UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

**EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed attorneys, hereby files this emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014, and for entry of an order authorizing the Debtor to, *inter alia*, (a) obtain post-petition financing of $100,000.00 in principal and (b) grant junior security interests. In support thereof, the Debtor would show as follows:

## I.  JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 362, 363, 364(c)(3), and 364(e) and Bankruptcy Rules 2002, 4001, and 9014.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this DIP Motion, no official committee of unsecured creditors has been appointed.

## II.  FACTUAL BACKGROUND

### A.      The Debtor's Business and Real Property

5.      The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and

resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

6.    The Debtor's assets include, *inter alia*, three real estate holdings.  One of these real estate holdings includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

**B.**    **Secured Credit Facilities**

**RBC Bank**

7.    The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

8.    As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

9.    As of the Petition Date, the Debtor's obligation under the RBC Bank Note was approximately $22,646,397.88.

### First Savers

10.     The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank ("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property located near Columbia, South Carolina.

11.     As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

### First Palmetto

12.     The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in approximately 7 acres of undeveloped commercial real property located near Pontiac, South Carolina.

13.     As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

### C.     The Receivership and Foreclosure Action

14.     RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

15.     On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property,

including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "Property Manager").

16.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment"). Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

**D.     Factors Leading to Bankruptcy**

17.     As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection. Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

**III. MATERIAL TERMS OF THE PROPOSED POST-PETITION FINANCING**

18.     The Debtor presently lacks sufficient liquidity to support its operations and reorganization efforts. The Debtor has thus concluded that it will require new post-petition financing to meet its ongoing working capital and general business needs while it seeks confirmation of a plan of reorganization. The Debtor, in consultation with its legal and advisors, has negotiated and entered into, subject to Court approval, a Debtor in Possession Loan Term Sheet (the "Term Sheet"), a true and correct copy of which is attached hereto as **Exhibit A**, and which is intended to outline the material terms of a debtor in possession loan (the "DIP Loan").[1]

---

[1] The emergency need for post-petition financing has necessitated the filing of this DIP Motion prior to the execution of definitive documentation relating to the DIP Loan (the "DIP Documents"). However, the Term Sheet outlines the material terms of the DIP Loan, and any DIP Documents will be consistent with the terms of the Term Sheet. The Debtors will supplement this DIP Motion by filing and/or making available for inspection, the applicable DIP Documents and DIP Budget once available.

The Debtor proposes to borrow funds pursuant to the DIP Loan to operate its business and to pre-develop its assets consistent with a DIP Budget to be filed with this Court.

19.    Bankruptcy Rule 4001 requires that motions requesting authority to incur post-petition financing begin with a concise statement of the relief requested, that summarizes the material terms and sets forth where the material terms can be found in the documents.  Such summary is set forth below.[2]  The Debtor believes that these terms will reasonably address its near-term financing requirements and constitute a favorable financing option given the circumstances of its business, its capital structure, and this Chapter 11 case.

(a)    **The DIP Loan Parties and Other General Terms.**  The extensions of credit under the DIP Loan will be made by JK Air Investment Group, LLC, as lender (the "Lender"), to the Debtor, as borrower.  (Term Sheet p. 1).

(b)    **Total Facility.**  The DIP Loan shall be in the total amount of $100,000.00.  The amount of $100,000.00 shall be available upon entry of an order by this Court approving the DIP Loan.  (Term Sheet p. 1).

(c)    **Security.**  Pursuant to Bankruptcy Code § 364(c)(3), the Lender shall be granted junior perfected liens on all property of the Debtor subject to existing valid, perfected, enforceable, and unavoidable liens on such property.

(d)    **Use of Proceeds.**  The DIP Loan is being entered into to fund the general working capital needs of the Debtor during the pendency of this Case.  The proceeds of the DIP Loan may be used to fund:  (i) the fees and expenses associated with the DIP Loan as agreed to by the Debtor including, but not limited to, the loan origination fee, and (ii) additional expenses of the Debtor during the course of its bankruptcy proceedings including, but not limited to, architectural renderings, surveying, appraisals, environmental reports, legal fees and other expenses that may be pre-approved by the Lender and the Court.  (Term Sheet p. 1).

(e)    **Term.**  The maturity date of the DIP Loan is the earlier of (i) June 1, 2012, (ii) one (1) year from the closing date of the DIP Loan; (iii) the conversion or dismissal of this bankruptcy case; or (iv) the effective date of a plan of reorganization for the Debtor (the "Term").  (Term Sheet p. 2).

(f)    **Interest Rate.**  The DIP Loan will bear interest at a rate of twelve percent (12%) per annum, compounded monthly (the "Interest Rate").  Interest shall be due and payable on the last day of the Term.  (Term Sheet p. 1).

---

[2] This summary is qualified in its entirety by reference to the provisions of the Term Sheet, the eventual DIP Documents, and any order of this Court relating to the proposed post-petition financing described herein.

(g)    **Fees.**  Debtor will pay Lender an origination fee equal to five percent (5%) of the aggregate principal amount of the DIP Loan (the "Commitment Fee").  The Commitment Fee shall be payable to the Lender on the effective date of the DIP Documents.  (Term Sheet p. 1).

(h)    **Representations and Warranties.**  The DIP Loan shall contain various representations and warranties by the Debtor (to the extent set forth therein), with respect to, *inter alia*, their organization and existence, ability to enter into the DIP Loan, and insurance.

(i)    **Covenants.**  The DIP Loan shall contain various covenants, relating to, *inter alia*: (a) the Debtor's corporate authority to enter into the DIP Loan; (b) the Debtor's ownership of and authority to operate its properties; (c) timely payment of obligations; (d) maintenance and insurance of the Debtor's properties; (e) the safe and legal operation of the Debtor's properties; and, (f) enacting certain cost savings measures.  (Term Sheet p. 2).

(j)    **Events of Default.**  Events of default pursuant to the DIP Loan include, *inter alia*: (a) failure to make payments when due under the DIP Loan; (b) non-compliance with covenants; (c) appointment of chapter 11 trustee, examiner with extended powers or conversion of Bankruptcy Case to chapter 7; (d) transfer of the chapter 11 Case from the Southern District of Texas, Houston Division, to any other bankruptcy court; and, (e) failure of the Debtor to file a plan of reorganization acceptable to the Lender by September 2, 2011, or to have a plan of reorganization acceptable to the Lender confirmed by November 30, 2011.  (Term Sheet p. 2).

(k)    **Remedies upon Default.**  Upon the occurrence of an event of default, the Lender may declare all principal and interest due and immediately payable.  The interim and final orders approving the DIP Loan shall provide that the automatic stay of section 362 of the Bankruptcy Code shall be modified to permit the Lender to exercise any and all remedies under the DIP Loan and applicable law, including setoff and foreclosure, upon written notice to the Debtor, the U.S. Trustee and any statutory committees appointed in this Case.  At the election of Lender, upon the occurrence of a default, Lender shall have the right to exercise any and all remedies under the DIP Documents and applicable law, including foreclosure, as provided above.

(l)    **Costs and Expenses.**  Debtor shall bear all reasonable costs and expenses arising in connection with the preparation, execution and delivery of the DIP Documents. Payment of such costs and expenses shall not be subject to approval by this Court, but if there is a dispute concerning the reasonableness of such fees, this Court shall have jurisdiction to resolve such disputes.

## IV.  RELIEF REQUESTED

20.    By this Motion, pursuant to Bankruptcy Code §§ 105, 362, 363, 364(c)(3), and 364(e) and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests:

(a)    authorization for the Debtor to borrow up to $100,000.00 in principal amount of post-petition financing (the "DIP Financing");

(b)    authorization for the Debtor's execution of the DIP Credit Agreement and any other necessary DIP Documents, to perform such other and further acts as may be necessary or appropriate in connection therewith, and to grant the liens and security interests to the Lender as provided herein;

(c)    authorization pursuant to Bankruptcy Code § 364(c)(3) to grant certain liens to the Lender to secure the Debtor's obligations under the DIP Loan;

(d)    authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Documents upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion; and

(e)    the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this DIP Motion to become effective pursuant to the Final Order.

## V.  BASIS FOR RELIEF

**Request for Approval of the DIP Facility and Related Actions**

21.    As described above, it is essential to the success of the Debtor's chapter 11 Case that the Debtor immediately obtain access to sufficient post-petition financing.  The preservation of estate assets, the Debtor's continuing viability, and its ability to timely reorganize successfully under a plan of reorganization (or maximize value under a liquidating plan of reorganization), all depend heavily upon the approval of the DIP Loan and the related actions requested herein.

22.    Bankruptcy Code § 364 distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business, and (c) obtaining credit with specialized priority or with security.  If a debtor in possession cannot obtain post-petition credit on an unsecured basis, pursuant to Bankruptcy Code § 364(c)(3), a court may authorize the obtaining of credit or the incurring of debt, repayment of which is secured by a junior lien on encumbered property.

23.    Because the Debtor proposes to obtain financing under a DIP Credit Agreement and related DIP Documents that is secured by junior liens with respect to certain of the Debtor's property, the approval of the DIP Loan is governed by Bankruptcy Code § 364(c)(3).

**Financing Under Bankruptcy Code § 364(c)**

24.    Pursuant to Bankruptcy Code § 364(c), a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit, and the proposed borrowing is in the best interests of its estate.  *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit Debtor in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co*., 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); *see also* 3 Collier Bankr. ¶ 364.03, at 364-7-18 (15th ed. rev.).

25.    The statutory requirement for obtaining post-petition credit under Bankruptcy Code § 364(c) is a finding, made after notice and hearing, that the debtor in possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense."  *See Ames Dep't Stores*, 115 B.R. at 37-39 (a debtor must show that it has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under Bankruptcy Code § 364(c) must prove that it was unable to obtain unsecured credit pursuant to Bankruptcy Code § 364(b)).

26.    Courts have articulated a three-part test to determine whether a debtor may obtain financing under Bankruptcy Code § 364(c):

- the debtor is unable to obtain unsecured credit solely under Bankruptcy Code § 364(b) (*i.e.*, by granting a lender administrative expense priority);

- the credit transaction is necessary to preserve the assets of the estate; and

- the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit acquired is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere"); *Ames Dep't Stores*, 115 B.R. at 37-39.

27.    To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Bankruptcy Code § 364(c).  *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986).  Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* at 1088.  Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing."  *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

28.    Based upon the Debtor's experience seeking financing and upon initial conversations with potential lenders, the Debtor has been unable to find a lender willing to extend credit on an unsecured basis.  Considering the foregoing, as well as the poor state of the credit markets, the Debtor strongly believes that it is unable to obtain unsecured financing from any capital source.

-10-

29.    The Debtor and the Lender have engaged in fair negotiations resulting in the financing proposal discussed in this DIP Motion and proposed for approval by the Court. Accordingly, the Debtor believes that the terms and conditions outlined in the Term Sheet and in this DIP Motion are reasonable and justified under the circumstances, in that this DIP Loan will enable the Debtor to have sufficient liquidity to continue with its operations and the plan process in a manner that will best serve all parties-in-interest herein.

**Protections Under Bankruptcy Code § 364(e)**

30.    The Debtor believes that the terms and conditions of the DIP Loan are the best possible under the circumstances of this Case and were negotiated in good faith.  Accordingly, the Lender should be provided with the benefit and protection of Bankruptcy Code § 364(e), such that if any of the provisions of any order granting this DIP Motion are later modified, vacated, stayed, or terminated by subsequent order of this or any other court, the Lender would be fully protected with respect to any amounts disbursed before such modification, vacation, stay, or termination.

**The DIP Loan is Necessary to Preserve the Assets of the Estates**

31.    It is essential that the Debtor obtains financing necessary to continue, *inter alia*, the orderly operation of the Debtor's business and this Case, and to otherwise satisfy its working capital requirements.  Without immediate access to new borrowing relief, the Debtor's business operations and this Case in general would be seriously impeded, which in turn would seriously jeopardize the value of the Debtor's assets.  The new liquidity offered by the proposed DIP Loan would ensure that the Debtor can maintain and pre-develop its assets and administer this Case through the next several months as the plan process ensues.  Thus, approval of borrowing under the DIP Loan is crucial to maximizing the value of the Debtor's estate.

**The Terms of the DIP Loan Are Fair, Reasonable, and Appropriate**

32.    The DIP Loan provides that the security interests granted to the DIP Lender is subject to the Carve-Out described above.  In *Ames Department Stores*, the bankruptcy court found that such "carve-outs" are not only reasonable but necessary to insure that debtors' estates are adequately assisted by counsel and other professionals.  *Ames*, 115 B.R. at 40.

33.    Likewise, the Debtor believes that the fees and other charges required by the Lender under the DIP Loan are reasonable and appropriate under the circumstances.  The proposed fees under the DIP Loan are within the parameters of market fee structures for similar post-petition financing.  Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Bankruptcy Code § 364.  *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) (approving a debtor in possession financing facility that included a lender "enhancement fee").

**Application of the Business Judgment Standard**

34.    As described above, after appropriate investigation and analysis, the Debtor's management and advisors have concluded that the DIP Loan provides the best alternative available under the circumstances of this chapter 11 Case.  Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.  *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility, and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors").  In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of

administration of the estate, and threaten the court's ability to control a case impartially.");

*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

35.    The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and has satisfied the legal prerequisites to incur debt under the DIP Loan.  Accordingly, the Court should grant the Debtor the authority to enter into DIP Loan and obtain funds from the Lender on the secured basis described above, pursuant to Bankruptcy Code § 364(c).

**Request for Modification of the Automatic Stay**

36.    Bankruptcy Code § 362 provides for an automatic stay upon the filing of a bankruptcy case.  As summarized above, the proposed DIP Loan contemplates a modification of the automatic stay to permit (a) the Debtor to grant certain liens under the DIP Documents and to perform the Debtor's liabilities and obligations to the Lender, and (b) the exercise of remedies by the Lender following an event of default.  Upon the occurrence of an event of default and during the continuance thereof, the Lender is entitled to exercise its rights and remedies under applicable law and as set forth herein and in the DIP Documents.

37.    The Debtor submits that, in the Debtor's business judgment, such provisions are reasonable under the present circumstances.  Accordingly, the Debtor respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth herein.

## VI. GROUNDS FOR EMERGENCY CONSIDERATION

38.    The Debtor hereby requests emergency consideration of the DIP Motion to prevent immediate and irreparable harm to the Debtor's estate.  There exists an immediate need to allow the Debtor to continue to operate its business on an interim basis.  Emergency relief will avoid business interruption, which would harm the Debtor's estate and creditors.   Without the

requested relief, the Debtor's estate and its creditors will suffer immediate and irreparable harm. Therefore, the Debtor respectfully requests that this Court hear this DIP Motion on an emergency basis within the next five (5) days.

## VII. INTERIM RELIEF

39.     Pending final approval of the DIP Loan, the Debtor requests that this Court authorize the Debtor to borrow under the DIP Loan on an interim basis, pursuant to Bankruptcy Rule 4001(c)(2), to the extent necessary to avoid immediate and irreparable harm to its business and to this chapter 11 Cases prior to any final approval thereof.  It is essential to the continued maintenance and pre-development of the Debtor's assets and this Case that the Court immediately authorize it to borrow up to $100,000.00.  The Debtor urgently needs funds to maintain and pre-develop its asset as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process.  Thus, the interim relief requested in this Motion, pending a final hearing, is necessary, appropriate, fully warranted, and essential to the Debtor's efforts to maximize the value of its estate in this chapter 11 Case for the benefit of all of its creditors and parties-in-interest.

40.     Accordingly, pending a final hearing on the Motion, the Debtor respectfully requests that the Court approve the terms of the DIP Loan on an interim basis pursuant to the terms of the proposed Interim Order.

## VIII. NOTICE

41.     Notice of this pleading will be served *via* the Court's Electronic Case Filing system and/or regular United States mail to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all

-14-

persons or entities that have formally appeared and requested service in this Case pursuant to

Rule 9010(b) of the Bankruptcy Rules.

WHEREFORE, premises considered, the Debtor request that this Court: (a) hear the DIP

Motion on an emergency basis; (b) enter an Interim Order authorizing the Debtor to obtain the

post-petition financing described herein on an interim basis and setting the DIP Motion for a

final hearing; and, (c) grant such other and further relief as the Court may deem just and proper.

Dated: June 1, 2011.

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: */s/ Maggie D. Conner*
       Matthew S. Okin
       Texas Bar #00784695
       Maggie D. Conner
       Texas Bar. #24038439
       1113 Vine St., Suite 201
       Houston, TX  77002
       Tel:  713- 228-4100
       Fax:  888-865-2118
       mokin@oakllp.com
       mconner@oakllp.com

       **PROPOSED ATTORNEYS FOR THE
       DEBTOR**


**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing was served
on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system on
the 1st day of June, 2011 and/or *via* regular United States mail on the 2nd day of June, 2011.

*/s/ Maggie D. Conner*
Maggie D. Conner

# Exhibit A

# JK AIR INVESTMENT GROUP, LLC
550 Westcott, Suite 235
Houston, TX 77007

May 20, 2011

KT Spears Creek, LLC
Attn: Kyle Tauch
22 Waugh Rd., Suite 270
Houston, TX  77007

RE:    **PROPOSAL FOR DIP LOAN**

      The purpose of this letter is to set forth certain general terms regarding a Debtor in Possession Loan (the "**Loan**") by JK Air Investment Group, LLC ("**JK Air**" or the "**Investor**") to KT Spears Creek, LLC ("**KT Spears**" and collectively the "**Parties**"). No portion of this letter is to be considered legally binding in any manner whatsoever, with the exception of Paragraphs 11 and 12 below, nor shall any of the provisions hereof constitute any form of representation or warranty from us to you. However, this letter sets forth our sincere interest in pursuing and consummating a deal with you on the following terms:

**1. Borrower:**                    KT Spears Creek, LLC (the "**Borrower**").

**2. Investment:**             A draw facility in the amount of $100,000 (the "**Loan Commitment**").The Loan Commitment shall be advanced at Closing to be used solely to pay for expenses of the Borrower during the course of its bankruptcy proceedings including, but not limited to, architectural renderings, surveying, appraisals, environmental reports, legal fees, loan origination fees and other expenses that may be pre-approved by JK Air and the bankruptcy court.

**3. Interest:**                  Interest on the JK Air Investment will accrue monthly at a rate of interest equal to twelve percent (12%) per annum, compounded monthly.

**4. Origination Fee:**      Five percent (5%) of the Loan Commitment. Such fee shall accrue to the balance of the Loan at Closing.

**5. Guarantee:**            There shall be no personal guaranty required, but all standard corporate guarantees from the Borrower will be required.

May 20, 2011
Page 2 of 3

| | |
|---|---|
| **6. Term:** | The Loan will mature one year after the Closing Date, but in no event later than June 1, 2012 or at the Effective Date of a Plan of Reorganization (the "Termination Date") |
| **7. Loan Covenants** | a.)   No Plan of Reorganization can be filed without the prior written approval of JK Air. |
| | b.)   A Plan of Reorganization must be filed with the court no later than September 2, 2011 and such Plan must be confirmed no later than November 30, 2011. |
| | c.)   The Debtor must actively take steps to enact certain cost saving measures with respect to operations of the apartments, which shall enhance value and maximize cash flow. Such cost savings measures are more specifically defined under Exhibit A to this agreement. |
| **8. Default:** | In the event of a Default, which shall include a violation of any of the Loan Covenants; failure by Borrowers to pay the Loan in full on or before the Termination Date; or a transfer of the bankruptcy proceedings out of the Southern District of Texas, Houston Division, JK Air shall immediately be entitled to two board seats on a three member board given full and exclusive control of the Borrowers, with the remaining seat occupied at the discretion of the equity holders. |
| **9. Prepayment:** | The Financing may be voluntarily prepaid at any time, subject to payment of all accrued and unpaid interest. |
| **10. Closing Date** | Closing shall occur on or before June 15, 2011 (the "Closing Date"). |
| **11. Confidentiality:** | The Parties agree to keep confidential the existence and terms of this LOI and all information exchanged pursuant to this LOI, except with respect to necessary disclosure to partners, employees, accountants, attorneys, lenders and consultants, each of which shall be advised as to the confidential nature of such information, or as required by law or court order. No public announcements or statements concerning this LOI or the transactions contemplated herein shall be made by any Investor without the written consent of all involved parties. |
| **12. Non-Binding Effect:** | Although this letter is intended to evidence the preliminary understandings which we have reached regarding the contemplated transaction and our mutual intent to negotiate to enter into the Definitive Agreement, it is understood and agreed that this is merely a letter of intent. It is further understood and agreed that this letter shall not be binding, with the exception of Paragraphs 11 and 12, on either party until the Definitive Agreements are executed by the parties. |

May 20, 2011
Page 3 of 3

If the foregoing is acceptable to you, please sign and return the enclosed copy of this letter prior to 12:00 pm CST on May 31, 2011, at which time this offer will expire.

KT Spears Creek, LLC

By: _____

Title: _____

The foregoing letter of intent is hereby acknowledged, consented and agreed to by a duly authorized officer or representative of the undersigned as of this 20th day of May, 2011.

JK Air Investment Group, LLC

By: _____

Title: _____

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

**_Counsel for First Palmetto Bank_**

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING
### (This Order relates to Docket No. ___.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the "Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

(a)     authorization for the Debtor to borrow up to $100,000.00 in principal amount of post-petition financing (the "DIP Financing");

(b)     authorization for the Debtor's execution of the DIP Credit Agreement and any other necessary DIP Documents, to perform such other and further acts as may be necessary or appropriate in connection therewith, and to grant the liens and security interests to the Lender as provided herein;

(c)     authorization pursuant to Bankruptcy Code § 364(c)(3) to grant certain liens to the Lender to secure the Debtor's obligations under the DIP Loan;

(d)     authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Documents upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion; and

(e)     the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this DIP Motion to become effective pursuant to the Final Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Final Hearing.*  A final hearing on the DIP Motion shall be held on June __, 2011, at __:___ __.m. before this Court, in Courtroom 401, at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.  Objections to the DIP Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before __:___ __.m. (prevailing Central Time) on June __, 2011.

2.      *Disposition/Jurisdiction.*  The DIP Motion is granted on an interim basis in accordance with the terms of this interim order (the "Interim Order").  Any objections to the DIP Motion with respect to entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Court has core jurisdiction over this Case commenced on May 3, 2011 (the "Petition Date"), the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.      *Notice.*  Notice of the DIP Motion, the relief requested herein and the Interim Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy

Rules., and no further notice of the relief sought at the Interim Hearing and the relief granted

herein is necessary or required.

       4.     *Findings Regarding the DIP Loan.*

       (a)    All findings of fact and conclusions of law as announced on the record by the Court at the Interim Hearing are hereby adopted and incorporated into this Interim Order.

       (b)    Good cause has been shown for entry of this Interim Order.

       (c)    The Debtor has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process.  The DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate

       (d)    The Debtor is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement and are unable to obtain adequate unsecured credit allowable under Bankruptcy Codes § 503(b)(1) as an administrative expense.

       (e)    Pursuant to the terms of this Interim Order, the provisions of the Term Sheet and the DIP Documents are found to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitutes reasonably equivalent value and fair consideration.

       (f)    The DIP Documents have been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to the DIP Documents, owing to the Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

       (g)    The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed.  Consummation of the DIP Loan in accordance with this Interim Order, the Term Sheet and the DIP Documents is in the best interest of the Debtor's estate.

       5.     *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

       (a)    The Debtor is hereby authorized to enter into the DIP Loan, DIP Credit Agreement, and DIP Documents to borrow thereunder up to an aggregate principal amount of $100,000.00, in accordance with the terms of this Interim Order.

(b)      In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts to execute and deliver all instruments and documents and to pay all fees and expenses reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loan, DIP Credit Agreement, and DIP Documents, including, without limitation, (i) the execution, delivery and performance of the DIP Credit Agreement and DIP Documents; (ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Credit Agreement and DIP Documents, in each case in such forms as the Debtor and Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Credit Agreement and DIP Documents (and any fees paid in connection therewith).

(c)      Upon execution and delivery of the DIP Credit Agreement and DIP Documents, the DIP Credit Agreement and DIP Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim Order and the DIP Credit Agreement and DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the DIP Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law.

6.      *DIP Lien.*  Pursuant to Bankruptcy Code § 364(c)(3), the Lender shall be granted junior perfected liens on all property of the Debtor subject to existing valid, perfected, enforceable and unavoidable liens on such property until the conclusion of the Final Hearing on the DIP Motion.

7.      *Use of DIP Loan Proceeds.*  The Debtor shall use the proceeds of the DIP Loan solely as provided by the DIP Credit Agreement, the DIP Documents, and this Interim Order, and also be subject to the budget attached hereto.

8.      *Retention of Jurisdiction.*  This Court shall retain jurisdiction to enforce the provisions of this Interim Order.

 SIGNED THIS ___ day of June, 2011.


_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**IN RE:** KT SPEARS CREEK, LLC                    **CASE NO.** 11-33991-H3-11
                    **DEBTOR:**

# NOTICE OF HEARING

<u>**NOTICE IS HEREBY GIVEN THAT**</u> a **HEARING** in said cause is **SCHEDULED** for <u>JUNE 23, 2011 at 10:45 A.M.</u> in **HOUSTON**, 515 Rusk, 4th Floor, Courtroom 401 to consider and act upon the following:

MOTION TO DISMISS FOR BAD FAITH FILING AND IMPROPER VENUE  (#25)

Said <u>MOTION</u> may be reviewed at the office of the Clerk of the Court, United States Courthouse,  Houston, Texas, during business hours.

PURSUANT TO BANKRUPTCY LOCAL RULE 2002(a), "MOVANT" SHALL SERVE NOTICE OF THIS HEARING TO ALL PARTIES IN INTEREST.

Dated:  JUNE 02, 2011                    BY: *Maria Rodriguez*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991-H3-11 |
| | § | (CHAPTER 11) |
| | § | |
| DEBTOR. | § | |

**NOTICE OF HEARING ON MOTION TO DISMISS FOR BAD FAITH FILING
AND FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1408**
[This instrument relates to Docket No. 25]

Please take notice that the Court has set a hearing on the Motion to Dismiss for Bad Faith

Filing and for Improper Venue pursuant to 28 U.S.C. § 1406(a) and § 1408 (Docket No. 25),

filed by RBC Bank (USA), a secured creditor and party in interest in the bankruptcy case

referenced above, for **June 23, 2011 at 10:45 a.m.** at the United States Federal Courthouse, 515

Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002.

**DATED:  June 2, 2011**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____ */s/ Sean B. Davis* _____
        Joseph G. Epstein
        Texas State Bar No. 06639320
        S.D. Texas No. 11733
        Sean B. Davis
        Texas State Bar No. 24069583
        S.D. Tex. No. 1048341

*AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____/s/ Constance L. Young_____
        Constance L. Young,
        N.C. State Bar No. 16115
        Admitted *Pro Hac Vice*
        1065 East Morehead Street
        Charlotte, NC  28204
        Telephone: 704.332-1181
        Facsimile:  704.376-1628
        Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

**Certificate of Service**

    I hereby certify that on June 2, 2011, a true and correct copy of this document was served on the persons listed below by U.S. First-Class Mail, postage prepaid, and electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding pursuant to the Electronic Filing Procedures in this District.

        _____/s/ Sean B. Davis_____
        One of Counsel

**Debtor's Counsel:**
Magdalene Duchamp Conner
Matthew Scott Okin
OKIN ADAMS & KILMER LLP
1113 Vine Street, Suite 201
Houston, TX 77002

**U.S. Trustee:**
Ellen Maresh Hickman
OFFICE OF THE U.S. TRUSTEE
515 Rusk St., Suite 3516
Houston, Texas 77002
Facsimile: (713) 718- 4570

HOUSTON_1\1112006v1
49590-25   06/02/2011

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

### EMERGENCY MOTION FOR TURNOVER OF
### PROPERTY AND REQUEST FOR ACCOUNTING

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), by and

through its undersigned proposed attorneys, hereby files this Emergency Motion for Turnover of

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

### ORDER GRANTING EMERGENCY MOTION FOR TURNOVER
### OF PROPERTY AND REQUEST FOR ACCOUNTING
#### (This Order Relates to Docket No. ___)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the "Debtor")[1] Emergency Motion for Turnover of Property and Request for Accounting (the "Turnover Motion") for an order, pursuant to Bankruptcy Code §§ 105, 541, and 543 and Bankruptcy Rule 6002 seeking:

(a)    turnover of all property of the estate held by the Receiver; and

(b)    an accounting of the funds and assets held by the Receiver to be turned over to the Debtor as well as any and all amounts paid by the Receiver as necessary to preserve the Debtor's property during the pendency of this Case.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Disposition/Jurisdiction.*  The Turnover Motion is **GRANTED** in all respects. Any objections to the Turnover Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Court has core jurisdiction over this Case commenced on May 3, 2011 (the "Petition Date"), the Turnover Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b)(2)(E) and

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Turnover Motion.

1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 541, and 543 of the Bankruptcy Code and Bankruptcy Rule 6002.

2.    *Notice*.  Notice of the Turnover Motion and the relief requested herein was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

3.    *Turnover.*  Henry W. Moore of Colliers International (the "Receiver") is hereby ordered to turnover the all Property including any proceeds, product, offspring, rents or profits thereof held in his possession to the Debtor immediately pursuant to Bankruptcy Code § 543. The Receiver is strictly forbidden from turning over any Property or any proceeds, product, offspring, rents or profits thereof to RBC Bank.

4.    *Accounting*.  The Receiver is further ordered to provide an accounting of all Property including the proceeds, product, offspring, rents or profits thereof held in his possession as well as any amounts paid as necessary to preserve the Debtor's proper during the pendency of this Case pursuant to Bankruptcy Code § 543(b)(2) to the Debtor and United States trustee as required by Bankruptcy Rule 6002.

Dated: _____.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

Property and Request for Accounting (the "Turnover Motion").  In support thereof, the Debtor

would show as follows:

## I. JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C.

§§ 157(b)(2)(E) and 1334.  This is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2)(E).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).  The

statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 541 and 543 and

Bankruptcy Rule 6002.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business

as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this Turnover Motion, no official committee of unsecured

creditors has been appointed.

5.      On May 18, 2011, the Debtor filed its Emergency Motion for Entry of Stipulation

and Order Regarding Receivership [Doc. No. 18].  On May 24, 2011, the Court signed a

Stipulation and Order Regarding Receivership (the "Stipulated Order"), which permitted Henry

W. Moore of Colliers International (the "Receiver") to continue operating certain property

including the Greenhill Apartments (defined below) and rents and profits therefrom (collectively,

the "Property") on an interim basis through May 31, 2011 to avoid business interruption and

maintain the value of the estate.

## II.  FACTUAL BACKGROUND

### A.       The Debtor's Business and Real Property

6.       The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

7.       The Debtor's assets include, *inter alia*, three real estate holdings.  One of these real estate holding includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

### B.       Secured Credit Facilities

### RBC Bank

8.       The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

9.       As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and

Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register

of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

10.     As of the Petition Date, the Debtor's obligation under the RBC Bank Note was

approximately $22,646,397.88.

**First Savers**

11.     The Debtor is also the borrower under that certain Loan Agreement dated as of

December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank

("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of

$6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment,

Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately

65 acres of undeveloped commercial real property.

12.     As of the Petition Date, the Debtor's obligation under the First Savers Loan

Agreement was approximately $6,300,000.00.

**First Palmetto**

13.     The Debtor is also the borrower under a loan agreement between the Debtor and

First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in

approximately 7 acres of undeveloped commercial real property.

14.     As of the Petition Date, the Debtor's obligation to First Palmetto was

approximately $870,000.00.

**C.     The Receivership and Foreclosure Action**

15.     RBC Bank filed a lawsuit against the Debtor and additional defendants in the

Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas")

styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

16.      On November 12, 2010, the Court of Common Pleas entered an order appointing the Receiver over the Property.  The Greenhill Apartments have been in receivership (the "Receivership") pursuant to the state court order and this Court's Stipulated Order and are managed by GREP Atlantic, L.P. (the "Property Manager").

17.      On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment").  Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

**D.      Factors Leading to Bankruptcy**

18.      As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection.  Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

**III.  RELIEF REQUESTED**

19.      By this Turnover Motion, pursuant to Bankruptcy Code §§ 105, 541, and 543 the Debtor requests:

(a)      turnover of all property of the estate held by the Receiver; and

(b)      an accounting of the funds and assets held by the Receiver to be turned over to the Debtor as well as any and all amounts paid by the Receiver as necessary to preserve the Debtor's property during the pendency of this Case.

## IV.  BASIS FOR RELIEF

### A.  Request for Turnover of Property of the Estate

20.      Bankruptcy Code § 543 provides that

A custodian shall—(1) deliver to the trustee any property of the debtor held by or
transferred to such custodian, or proceeds, product, offspring, rents, or profits of
such property, that is in such custodian's possession, custody, or control on the
date that such custodian acquires knowledge of the commencement of the case.

11 U.S.C. § 543(b).  The Bankruptcy Code defines "custodian" to include receivers.  11 U.S.C. §

101(11)(A).  Further, Bankruptcy Code § 541 defines property of the estate as "all the following

property, wherever located and by whomever held: . . . all legal or equitable interests of the

debtor in property as of the commencement of the case . . . any interest in property that the

trustee recovers under section . . . 543 . . . of this title."  Numerous courts have upheld the

turnover of property of the estate held by a third party, even when the third party holds funds

subject to competing claims or claims an interest in funds.  *Great W. Coal, Inc. v. Brown (In re*

*Great W. Coal, Inc.)*, 146 B.R. 702, 706 (Bankr. S.D. Tex. 1992) (citing *Ga. Pac. Corp. v. Sigma*

*Serv. Corp.*, 712 F.2d 962 (5th Cir. 1983); *In re Quality Holstein, Inc.*, 752 F.2d 1009 (5th Cir.

1985); *In re Samuels*, 526 F.2d 1238 (5th Cir. 1976)).

21.      The Debtor hereby requests that the Court enter an order requiring the Receiver to

turnover the Property, including the proceeds, product, offspring, rents or profits thereof to the

Debtor.  The Debtor holds title to the Property and it is unquestionably property of the estate as

defined by Bankruptcy Code § 541.  The Stipulated Order has expired.  The Debtor issued a

demand for the return of the Property to the Receiver on June 1, 2011 with a  twenty-four hour

(24) deadline to respond and the Debtor has not received any response.  The Debtor is entitled to

immediate possession of the Property including the proceeds, product, offspring, rents or profits

thereof pursuant to Bankruptcy Code § 543.  Turnover of the Property will benefit the estate

because the estate will save the $2,500 monthly fee of the Receiver.  Further, the Debtor requests

that the Receiver be enjoined from turning over the Property including the proceeds, product,

offspring, rents or profits thereof to RBC Bank.  Immediate turnover of the Property is critical to

allow the Debtor to continue to operate and manage the Greenhill Apartments without

interruption for the benefit of the estate and its creditors.

22.    Accordingly, pursuant to Bankruptcy Code § 543, this Court should order the

Receiver to deliver and turnover the Property including the proceeds, product, offspring, rents or

profits thereof to the Debtor.

**B.  Request for an Accounting**

23.    Bankruptcy Code § 543(b) provides that "[a] custodian shall–(2) file an

accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such

property, that, at any time, came into the possession, custody or control of such custodian."

Bankruptcy Rule 6002 provides that "[a]ny custodian required by the Code to deliver property in

the custodian's possession or control to the trustee [or debtor] shall promptly file and transmit to

the United States trustee a report and account with respect to the property of the estate and

administration thereof."  Pursuant to Bankruptcy Code § 543(b)(2) and Bankruptcy Rule 6002,

the Debtor requests that the Receiver provide an accounting regarding the Property including the

proceeds, product, offspring, rents or profits thereof held by the Receiver as such Property

constitutes property of the estate.

24.    The Debtor needs the requested accounting to identify and track the funds and

Property, to verify the existing balances of any and all accounts, and to provide critical

information to the U.S. Trustee.  The Debtor anticipates that a full accounting will allow the

Debtor to ascertain what assets are available to be used for the benefit of the estate's creditors.

Therefore, this Court should compel the Receiver to provide an accounting of all Property including the proceeds, product, offspring, rents or profits thereof held in his possession pursuant to Bankruptcy Code § 543(b)(2) to the Debtor and U.S. Trustee as required by Bankruptcy Rule 6002.

## V. GROUNDS FOR EMERGENCY CONSIDERATION

25.     The Debtor hereby requests emergency consideration of the Turnover Motion to prevent immediate and irreparable harm to the Debtor's estate. There exists an immediate need to allow the Debtor to continue to operate its business including the Greenhill Apartments. Emergency relief will avoid business interruption, which would harm the Debtor's estate and creditors. Without the requested relief, the Debtor's estate and its creditors will suffer immediate and irreparable harm. Therefore, the Debtor respectfully requests that this Court hear this Turnover Motion on an emergency basis within the next five (5) days.

## VI. NOTICE

26.     Notice of this pleading has been provided by United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules.

WHEREFORE, premises considered, the Debtor requests that this Court: (a) enter an order compelling the Receiver to turnover the Property and provide an accounting as requested herein; and (b) grant such other and further relief as the Court may deem just and proper.

Dated: June 2, 2011.

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: _/s/  Maggie D. Conner_____
        Matthew S. Okin
        Texas Bar #00784695
        Maggie D. Conner
        Texas Bar. #24038439
        1113 Vine St., Suite 201
        Houston, TX  77002
        Tel:  713- 228-4100
        Fax:  888-865-2118
        mokin@oakllp.com
        mconner@oakllp.com

        **PROPOSED ATTORNEYS FOR THE
        DEBTOR**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List _via_ regular United States mail, e-mail and/or the Court's Electronic Case Filing system on the 2nd day of June, 2011.

                                       _/s/  Maggie D. Conner_____
                                         Maggie D. Conner

Service List

***United States Trustee:***

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

***IRS:***

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

***Counsel for RBC:***

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

***Receiver:***

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

***Property Manager:***

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

***Counsel for First Palmetto Bank***

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

## NOTICE OF HEARING
### (RELATES TO DOCKET NOS. 27, 28 AND 31)

**PLEASE TAKE NOTICE** that a hearing will be held on the following motions filed by

KT Spears Creek, LLC on **Tuesday, June 7, 2011 at 9:30 a.m.** (CDT) in the courtroom for the

Honorable Letitia Z. Paul, located at 515 Rusk Avenue, Courtroom 401, Houston, Texas 77002:

- Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral [Doc. No. 27];

- Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (i) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (ii) Granting Security Interests and (iii) Scheduling a Final Hearing [Doc. No. 28]; and

- Emergency Motion for Turnover of Property and Request for Accounting [Doc. No. 31].

**Dated**: June 2, 2011

**OKIN ADAMS & KILMER LLP**

By: */s/ Maggie D. Conner*
  Matthew S. Okin
  Texas Bar #00784695
  Maggie D. Conner
  Texas Bar. #24038439
  1113 Vine St., Suite 201
  Houston, TX  77002
  Tel:  713- 228-4100
  Fax:  888-865-2118
  mokin@oakllp.com
  mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail, e-mail and/or the Court's Electronic Case Filing system on the 2nd day of June, 2011.

*/s/ Maggie D. Conner*
  Maggie D. Conner

Service List

_**United States Trustee:**_

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

_**IRS:**_

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

_**Counsel for RBC:**_

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

_**Receiver:**_

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

_**Property Manager:**_

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

_**Counsel for First Palmetto Bank**_

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter11) |
| DEBTOR | § | |

## NOTICE OF APPEARANCE AND REQUEST FOR NOTICES

Pursuant to 11 U.S.C. §1109(b) and Bankruptcy Rules 2002(g) and 9010(b), First Savers

Bank, a creditor and party in interest herein, hereby gives notice of its appearance in said case by

and through his counsel, and requests copies of all notices and/or pleadings issued or filed in the

above-referenced bankruptcy case.  All such notices should be sent to this creditor in care of:

> David S. Elder
> Gardere Wynne Sewell LLP
> 1000 Louisiana, Suite 3400
> Houston, Texas 77002-5011
> delder@gardere.com (*email address*); and
>
> Clinton R. Snow
> Gardere Wynne Sewell LLP
> 1000 Louisiana, Suite 3400
> Houston, Texas 77002-5011
> csnow@gardere.com (*email address*)

DATED:  June 3, 2011.

> Respectfully submitted,
>
> */s/* David S. Elder
> _____
> David S. Elder
> State Bar No. 06507700
> Gardere Wynne Sewell LLP
> 1000 Louisiana, Suite 3400
> Houston, Texas 77002-5011
> 713-276-5750 (*direct dial*)
> 713-276-6750 (*direct fax*)
> delder@gardere.com (*email*)
>
> *ATTORNEY-IN-CHARGE FOR*
> *FIRST SAVERS BANK*

CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing Notice of Appearance and Request for Notices was mailed by first class mail to all parties named in the attached Service List on this 3rd day of June, 2011.


                                       /s/ David S. Elder
                                       David S. Elder

**Service List**

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

**Debtors:**
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

**Debtors' Attorney:**
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX  77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**U.S. Trustee:**
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Fax:713-718-4670

*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

**Internal Revenue Service:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

**Counsel for RBC:**
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC  28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**Receiver:**
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC  29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

***Property Manager:***
Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

***20 Largest Creditors:***
Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

***Parties Requesting Notice:***
Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

HOUSTON 1114681v.2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**06/03/2011**

```
                         )
IN RE                    )
                         )
KT SPEARS CREEK, LLC,    )    CASE NO. 11-33991-H3-11
                         )
         Debtor,         )
```

ORDER SETTING AND RESETTING HEARINGS

   The court has previously set an evidentiary hearing for
June 7, 2011, at 9:30 a.m., in Courtroom 401, 515 Rusk, Houston,
Texas, on the "Debtor's Emergency Motion for Interim and Final
Orders Approving Use of Cash Collateral" (Docket No. 27) and the
"Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364
And Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the
Debtor To Obtain Post-petition Secured Financing, (II) Granting
Security Interests, and (III) Scheduling Final Hearing" (Docket
No. 28).

   As to the motions at Docket Nos. 27 and 28, any party
seeking to present evidence (including the Debtor) shall file, on
or before June 6, 2011 at 2:00 p.m., a witness list and an
exhibit list.  The witness list shall set forth the name of each
witness, the nature of the testimony the witness is anticipated
to give, and a time estimate.  The exhibit list shall identify
any exhibits of which the party is seeking admission.  The
parties are limited to 30 minutes per side for their case in
chief.

The "Emergency Motion for Turnover of Property and Request for Accounting" (Docket No. 31) filed by the Debtor, and the "Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. § 101(51B)" (Docket No. 26) filed by RBC Bank (USA) are set for an evidentiary hearing on June 13, 2011, at 10:15 a.m., in Courtroom 401, 515 Rusk, Houston, Texas.

The evidentiary hearing on the "Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408" (Docket No. 25) is reset to June 13, 2011, at 10:15 a.m., in Courtroom 401, 515 Rusk, Houston, Texas.

The evidence will be heard simultaneously as to the motions set for hearing on June 13, 2011. The parties are limited to one hour per side for their case in chief. Any party seeking to present evidence (including the Debtor) shall file, on or before June 10, 2011 at 2:00 p.m., a witness list and an exhibit list. The witness list shall set forth the name of each witness, the nature of the testimony the witness is anticipated to give, and a time estimate. The exhibit list shall identify any exhibits of which the party is seeking admission.

SO ORDERED.

Signed at Houston, Texas on June 3, 2011.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991-H3-11** |
| | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

**NOTICE OF HEARING ON MOTION TO DESIGNATE CASE AS SINGLE
ASSET REAL ESTATE CASE PURSUANT TO 11 U.S.C. § 101(51B)**
[This instrument relates to Docket No. 26]

Please take notice that the Court has set a hearing on the Motion to Designate Case as

Single Asset Real Estate Case pursuant to 11 U.S.C. § 101(51B) (Docket No. 26), filed by RBC

Bank (USA), a secured creditor and party in interest in the bankruptcy case referenced above, for

**June 13, 2011 at 10:15 a.m.** at the United States Federal Courthouse, 515 Rusk Avenue,

Courtroom 401, 4th Floor, Houston, Texas 77002.

**DATED:  June 3, 2011**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____*/s/ Sean B. Davis*_____
        Joseph G. Epstein
        Texas State Bar No. 06639320
        S.D. Texas No. 11733
        Sean B. Davis
        Texas State Bar No. 24069583
        S.D. Tex. No. 1048341

*AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____ */s/ Constance L. Young* _____
        Constance L. Young,
        N.C. State Bar No. 16115
        Admitted *Pro Hac Vice*
        1065 East Morehead Street
        Charlotte, NC  28204
        Telephone: 704.332-1181
        Facsimile:  704.376-1628
        Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

**Certificate of Service**

I hereby certify that on June 3, 2011, a true and correct copy of this document was served on the persons listed below by U.S. First-Class Mail, postage prepaid, and electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding pursuant to the Electronic Filing Procedures in this District.

_____ */s/ Sean B. Davis* _____
        One of Counsel

**Debtor's Counsel:**
Magdalene Duchamp Conner
Matthew Scott Okin
OKIN ADAMS & KILMER LLP
1113 Vine Street, Suite 201
Houston, TX 77002

**U.S. Trustee:**
Ellen Maresh Hickman
OFFICE OF THE U.S. TRUSTEE
515 Rusk St., Suite 3516
Houston, Texas 77002
Facsimile: (713) 718- 4570

HOUSTON_1\1112265v1
49590-25   06/03/2011

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991-H3-11** |
| | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

## NOTICE OF HEARING ON MOTION TO DISMISS FOR BAD FAITH FILING AND FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1408
### [This instrument relates to Docket No. 25]

Please take notice that the Court has re-set the hearing on the Motion to Dismiss for Bad Faith Filing and for Improper Venue pursuant to 28 U.S.C. § 1406(a) and § 1408 (Docket No. 25), filed by RBC Bank (USA), a secured creditor and party in interest in the bankruptcy case referenced above, for **June 13, 2011 at 10:15 a.m.** at the United States Federal Courthouse, 515 Rusk Avenue, Courtroom 401, 4th Floor, Houston, Texas 77002.

**DATED:  June 3, 2011**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____*/s/ Sean B. Davis*_____
        Joseph G. Epstein
        Texas State Bar No. 06639320
        S.D. Texas No. 11733
        Sean B. Davis
        Texas State Bar No. 24069583
        S.D. Tex. No. 1048341

*AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____*/s/ Constance L. Young*_____
       Constance L. Young,
       N.C. State Bar No. 16115
       Admitted *Pro Hac Vice*
       1065 East Morehead Street
       Charlotte, NC  28204
       Telephone: 704.332-1181
       Facsimile:  704.376-1628
       Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

**Certificate of Service**

      I hereby certify that on June 3, 2011, a true and correct copy of this document was served on the persons listed below by U.S. First-Class Mail, postage prepaid, and electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding pursuant to the Electronic Filing Procedures in this District.

          _____*/s/ Sean B. Davis*_____
             One of Counsel

**Debtor's Counsel:**
Magdalene Duchamp Conner
Matthew Scott Okin
OKIN ADAMS & KILMER LLP
1113 Vine Street, Suite 201
Houston, TX 77002

**U.S. Trustee:**
Ellen Maresh Hickman
OFFICE OF THE U.S. TRUSTEE
515 Rusk St., Suite 3516
Houston, Texas 77002
Facsimile: (713) 718- 4570

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**IN RE:** KT SPEARS CREEK, LLC       **CASE NO.** 11-33991-H3-11
       **DEBTOR:**

# NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN THAT** a **HEARING** in said cause is **SCHEDULED** for <u>JUNE 23, 2011 at 10:45 A.M.</u> in **HOUSTON**, 515 Rusk, 4th Floor, Courtroom 401 to consider and act upon the following:

MOTION TO DISMISS FOR BAD FAITH FILING AND IMPROPER VENUE  (#25)

Said <u>MOTION</u> may be reviewed at the office of the Clerk of the Court, United States Courthouse,  Houston, Texas, during business hours.

PURSUANT TO BANKRUPTCY LOCAL RULE 2002(a), "MOVANT" SHALL SERVE NOTICE OF THIS HEARING TO ALL PARTIES IN INTEREST.

Dated:  JUNE 02, 2011           BY: *Maria Rodriguez*

United States Bankruptcy Court
Southern District of Texas

In re:                                                              Case No. 11-33991-lzp
KT Spears Creek, LLC                                                Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod              Page 1 of 1          Date Rcvd: Jun 02, 2011
                              Form ID: pdf002         Total Noticed: 2

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 04, 2011.
db          +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
cr          +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                           TOTAL: 0

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
intp          RBC Bank (USA)
                                                                 TOTALS: 1, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 04, 2011**                    **Signature:**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**06/03/2011**

| | )  | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| KT SPEARS CREEK, LLC, | ) | CASE NO. 11-33991-H3-11 |
| | ) | |
| Debtor, | ) | |

<u>ORDER SETTING AND RESETTING HEARINGS</u>

The court has previously set an evidentiary hearing for
June 7, 2011, at 9:30 a.m., in Courtroom 401, 515 Rusk, Houston,
Texas, on the "Debtor's Emergency Motion for Interim and Final
Orders Approving Use of Cash Collateral" (Docket No. 27) and the
"Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364
And Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the
Debtor To Obtain Post-petition Secured Financing, (II) Granting
Security Interests, and (III) Scheduling Final Hearing" (Docket
No. 28).

As to the motions at Docket Nos. 27 and 28, any party
seeking to present evidence (including the Debtor) shall file, on
or before June 6, 2011 at 2:00 p.m., a witness list and an
exhibit list.  The witness list shall set forth the name of each
witness, the nature of the testimony the witness is anticipated
to give, and a time estimate.  The exhibit list shall identify
any exhibits of which the party is seeking admission.  The
parties are limited to 30 minutes per side for their case in
chief.

The "Emergency Motion for Turnover of Property and Request for Accounting" (Docket No. 31) filed by the Debtor, and the "Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. § 101(51B)" (Docket No. 26) filed by RBC Bank (USA) are set for an evidentiary hearing on June 13, 2011, at 10:15 a.m., in Courtroom 401, 515 Rusk, Houston, Texas.

The evidentiary hearing on the "Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408" (Docket No. 25) is reset to June 13, 2011, at 10:15 a.m., in Courtroom 401, 515 Rusk, Houston, Texas.

The evidence will be heard simultaneously as to the motions set for hearing on June 13, 2011. The parties are limited to one hour per side for their case in chief. Any party seeking to present evidence (including the Debtor) shall file, on or before June 10, 2011 at 2:00 p.m., a witness list and an exhibit list. The witness list shall set forth the name of each witness, the nature of the testimony the witness is anticipated to give, and a time estimate. The exhibit list shall identify any exhibits of which the party is seeking admission.

SO ORDERED.

Signed at Houston, Texas on June 3, 2011.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court
Southern District of Texas

In re:                                                                Case No. 11-33991-lzp
KT Spears Creek, LLC                                                  Chapter 11
         Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: aboy              Page 1 of 1              Date Rcvd: Jun 03, 2011
                              Form ID: pdf002         Total Noticed: 2

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 05, 2011.
db          +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
cr          +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                          TOTAL: 0

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr          First Savers Bank
intp        RBC Bank (USA)
                                                                      TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 05, 2011**                    **Signature:**    _Joseph Speetjens_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |
| | § | |

**EMERGENCY MOTION TO CONTINUE HEARINGS ON
DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING USE OF CASH COLLATERAL
AND
DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND
364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE
DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING**
(Relates to Docket Nos. 27 and 28.)

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU
MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE
WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT
FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
ATTEND THE HEARING. UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT
CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU
WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO
THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE**

**EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), files this Emergency Motion to Continue (the "Continuance Motion") Hearings on the Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral [Docket No. 27] (the "Cash Collateral Motion") and the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing [Docket No. 28] (the "DIP Motion") and would respectfully show the Court as follows:

## I.    BRIEF BACKGROUND

1.    On June 1, 2011, the Debtor filed the Cash Collateral Motion [Docket No. 27] and the DIP Motion [Docket No. 28].

2.    Evidentiary hearings on the Cash Collateral and the DIP Motion were set for June 7, 2011 at 9:30 a.m. before this Court.

3.    Hearings on several additional motions filed by the Debtor and by creditor RBC Centura Bank ("RBC Bank") are currently set for June 13, 2011 at 10:15 a.m. before this Court.

## II.    RELIEF REQUESTED

4.    The Debtor has agreed with RBC Bank to seek to continue the hearings on the Cash Collateral Motion and the DIP Motion to June 13, 2011 at 10:15 a.m.  Such a continuance would, *inter alia*, (a) allow the Debtor and RBC Bank an opportunity to negotiate a potential agreement regarding the motions currently pending in this bankruptcy case; and, (b) conserve

time and resources by holding the hearings on the various pending motions contemporaneously. No parties will be injured by the requested relief. Accordingly, the Debtor requests that this Court continue the hearings on the Cash Collateral Motion and the DIP Motion from June 7, 2011 at 9:30 a.m. to June 13, 2011 at 10:15 a.m.

### III.    <u>NOTICE</u>

5.    Notice of this pleading will be served *via* the Court's Electronic Case Filing system and/or regular United States mail to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules.

### IV.    <u>REQUEST FOR EMERGENCY RELIEF</u>

6.    The Debtor requests emergency consideration of this Continuance Motion today prior to the currently scheduled hearings tomorrow to allow the Debtor and RBC Bank an opportunity to negotiate a potential agreement regarding the motions currently pending in this bankruptcy case and to conserve time and resources by holding the hearings on the various pending motions contemporaneously.

### V.    <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that this Court: (a) decide the Continuance Motion on an emergency basis; (b) enter an order continuing the hearings on the Cash Collateral Motion and the DIP Motion from June 7, 2011 at 9:30 a.m. to

June 13, 2011 at 10:15 a.m.; and, (c) grant the Debtor such other legal or equitable relief to

which it may be justly entitled.

Dated:  June 6, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118
      mokin@oakllp.com
      mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that proposed counsel for the Debtor conferred with counsel for RBC Bank on June 6, 2011 *via* telephone and achieved an agreement with RBC Bank to continue the hearings on the Cash Collateral Motion and the DIP Motion to June 13, 2011.

*/s/  Maggie D. Conner*
Maggie D. Conner

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system and/or regular United States mail on the 6th day of June, 2011.

*/s/  Maggie D. Conner*
Maggie D. Conner

4

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

**_Counsel for First Palmetto Bank_**

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |
| | § | |

---

**ORDER CONTINUING HEARINGS ON
DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING USE OF CASH COLLATERAL
AND
DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND
364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE
DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING**
(Relates to Docket Nos. 27, 28, 34, and ___.)

Came on for consideration KT Spears Creek, LLC's (the "Debtor") Emergency Motion to Continue (the "Continuance Motion") Hearings on the Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral [Docket No. 27] (the "Cash Collateral Motion") and the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing [Docket No. 28] (the "DIP Motion").   The Court, after considering the Continuance Motion, any responses thereto and arguments of counsel, hereby finds that the hearings on the Cash Collateral Motion and the DIP Motion should be continued June 13, 2011 at 10:15 a.m.; therefore it is

**ORDERED** that the hearings on the Cash Collateral Motion and the DIP Motion are hereby **continued** from June 7, 2011 at 9:30 a.m. **to June 13, 2011 at 10:15 a.m.;** and, it is further

**ORDERED** that any party seeking to present evidence shall file on or before June 10, 2011 at 2:00 p.m., a witness list and an exhibit list.  The witness list shall set forth the name of each witness, the nature of the testimony the witness is anticipated to give, and a time estimate. The exhibit list shall identify any exhibits of which the party is seeking admission; and, it is further

**ORDERED** that the Debtor shall file a notice of the continued hearings on the Cash Collateral Motion and the DIP Motion, as well as of the deadline to file witness lists and exhibit lists set forth above, to notify all parties identified on the attached Service List.

Dated: _____.


                             _____
                             THE HONORABLE LETITIA Z. PAUL
                             UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                                          §
                                                §          CASE NO. 11-33991-H3-11
KT SPEARS CREEK, LLC                            §
                                                §
 DEBTOR(S)                                      §


UNITED STATES TRUSTEE'S REPORT OF
INABILITY TO APPOINT A CREDITORS' COMMITTEE

TO THE HONORABLE JUDGE MARVIN ISGUR:


COMES NOW the United States Trustee for the Southern District of Texas, by and through
the undersigned, and respectfully reports as follows:


1.  The United States Trustee is responsible for appointing a committee of creditors holding
unsecured claims pursuant to 11 U.S.C. §1102(a)(1).


2.      The United States Trustee has not been able to appoint a committee of unsecured
creditors as contemplated by 11 U.S.C. §1102 as there are not three (3) eligible unsecured creditors.


Dated:  June 6, 2011


                          JUDY A. ROBBINS
                          UNITED STATES TRUSTEE

                          By:     /s/ *Ellen M. Hickman*
                                  Ellen M. Hickman
                                  Attorney for the United States Trustee
                                  State Bar No. 12975800
                                  515 Rusk, Ste. 3516
                                  Houston, TX 77002
                                  (713) 718-4650
                                  (713) 718-4680 FAX

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing <u>Statement of the United States Trustee As To Why No Committee of Unsecured Creditors Has Been Appointed</u> was served upon the parties on the attached list via ECF transmission or by, United States regular mail, first class, postage paid, to those persons listed below at the addresses listed below, on the 6th day of June, 2011.

/s/ *Ellen M. Hickman*
Ellen M. Hickman,
Attorney for the United States Trustee
515 Rusk, Ste. 3516
Houston, TX 77002
(713) 718-4650
(713) 718-4680 FAX

<u>Debtor:</u>

KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

<u>Debtor's Counsel:</u>

Magdalene Duchamp Conner
Okin Adams & Kilmer LLP
1113 Vine St., Ste 201
Houston, TX 77002

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**06/06/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |
| | § | |

## ORDER CONTINUING HEARINGS ON
## DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
## APPROVING USE OF CASH COLLATERAL
## AND
## DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING

(Relates to Docket Nos. 27, 28, 34, and 39 .)

Came on for consideration KT Spears Creek, LLC's (the "Debtor") Emergency Motion to Continue (the "Continuance Motion") Hearings on the Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral [Docket No. 27] (the "Cash Collateral Motion") and the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing [Docket No. 28] (the "DIP Motion").   The Court, after considering the Continuance Motion, any responses thereto and arguments of counsel, hereby finds that the hearings on the Cash Collateral Motion and the DIP Motion should be continued June 13, 2011 at 10:15 a.m.; therefore it is

**ORDERED** that the hearings on the Cash Collateral Motion and the DIP Motion are hereby **continued** from June 7, 2011 at 9:30 a.m. **to June 13, 2011 at 10:15 a.m.;** and, it is further

**ORDERED** that any party seeking to present evidence shall file on or before June 10, 2011 at 2:00 p.m., a witness list and an exhibit list.  The witness list shall set forth the name of each witness, the nature of the testimony the witness is anticipated to give, and a time estimate. The exhibit list shall identify any exhibits of which the party is seeking admission; and, it is further

**ORDERED** that the Debtor shall file a notice of the continued hearings on the Cash Collateral Motion and the DIP Motion, as well as of the deadline to file witness lists and exhibit lists set forth above, to notify all parties identified on the Service List attached to the motion.


DATED:  June 6, 2011

_____

UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**NOTICE OF HEARING**
(RELATES TO DOCKET NOS. 27, 28 AND 31)

**PLEASE TAKE NOTICE** that hearings will be held on the following motions filed by KT Spears Creek, LLC on **Monday, June 13, 2011 at 10:15 a.m.** (CT) in the courtroom for the Honorable Letitia Z. Paul, located at 515 Rusk Avenue, Courtroom 401, Houston, Texas 77002:

- Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral [Doc. No. 27] (the "Cash Collateral Motion");

- Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (i) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (ii) Granting Security Interests and (iii) Scheduling a Final Hearing [Doc. No. 28] (the "DIP Motion"); and

- Emergency Motion for Turnover of Property and Request for Accounting [Doc. No. 31] (the "Turnover Motion").

The hearings on the Cash Collateral Motion and the DIP Motion have been continued from June 7, 2011 at 9:30 a.m. to **June 13, 2011 at 10:15 a.m.**

Any party seeking to present evidence at the **June 13, 2011, 10:15 a.m.** hearing regarding the Cash Collateral Motion, the DIP Motion, and/or the Turnover Motion shall file on or before **June 10, 2011 at 2:00 p.m.**, a witness list and an exhibit list. The witness list shall set forth the name of each witness, the nature of the testimony the witness is anticipated to give, and a time estimate. The exhibit list shall identify any exhibits of which the party is seeking admission.

**Dated**:  June 6, 2011

<div align="center">

**OKIN ADAMS & KILMER LLP**

</div>

By: */s/  Maggie D. Conner*
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118
      mokin@oakllp.com
      mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

      The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail and/or the Court's Electronic Case Filing system on the 6th day of June, 2011.

                      */s/  Maggie D. Conner*
                      Maggie D. Conner

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

**_Counsel for First Palmetto Bank_**

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | Case No. 11-33991 |
| | § | |
| KT SPEARS CREEK, LLC, | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

**OBJECTION OF FIRST PALMETTO SAVINGS BANK, FSB TO DEBTOR'S
EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE
DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING**
(Ref. Dkt. No. 28)

First Palmetto Savings Bank, FSB ("First Palmetto") files this objection (the "Objection")
to the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and
Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-Petition
Secured Financing, and (II) Granting Security Interests, and (III) Scheduling Final Hearing (the
"Motion").  In support of the Objection, First Palmetto respectfully states as follows:

I.
BACKGROUND

1.    On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for
relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 *et seq.* (the
"Bankruptcy Code").

2.    The Debtor continues in possession of its property and is operating its business as
a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.    On or about June 1, 2011, the Debtor filed the Motion [Docket No. 28].

4.    As of the date of this Objection, no official committee of unsecured creditors has
been appointed.

## II.
## <u>OBJECTION</u>

5.       By its Motion, the Debtor seeks authorization to, among other things, (i) immediately borrow up to $100,000.00 in principal amount of postpetition financing (the "<u>DIP Financing</u>"), or the full draw facility contemplated under the DIP Loan[1]; (ii) execute the DIP Credit Agreement and other necessary DIP Documents and perform such other and further acts as may be necessary or appropriate in connection therewith; (iii) grant certain liens to the Lender to secure the Debtor's obligations under the DIP Loan; and (iv) accelerate the maturity of the DIP Loan and terminate commitments under the DIP Documents upon occurrence and continuation of an event of default.  The debtor has not demonstrated that it cannot operate without the proposed financing.  On information and belief, the day to day business expenses are being paid by either the receiver or by the property manager.  In addition, the debtor may be providing debt service to RBC. Thus, there is no business justification for the DIP financing.

6.       Not only was the Motion filed on three (3) business days notice, but also no DIP Credit Agreement or other necessary DIP Documents, including without limitation, a DIP budget, was submitted to the Court or provided to creditors and other parties in interest, including First Palmetto.  Instead, the Debtor submits a mere non-binding letter of intent (the "<u>Non-Binding Letter of Intent</u>") in support of its Motion.  *See* Motion Ex. A Non-Binding Letter of Intent § 12 ("[I]t is understood and agreed that this is merely a letter of intent.  It is further understood and agreed that this letter shall not be binding, with the exception of Paragraphs 11 and 12, on either party until the Definitive Agreements are executed by the parties.").

7.       The Debtor states that the emergency need for postpetition financing has necessitated the filing of the Motion prior to definitive DIP Documents and that the Debtor will

---

[1]       Capitalized but undefined terms herein shall have the same meaning as ascribed to them in the Motion.

supplement the Motion by filing and/or making available for inspection, the applicable DIP Documents and DIP budget once available. Motion ¶ 18 n.1. The Debtor does not state when such documents might be available. *Id.* However urgent the Debtor's need for postpetition financing may be, neither this Court nor First Palmetto can fully analyze the terms of the DIP Loan without first reviewing the definitive DIP Documents, including DIP Credit Agreement and DIP budget.[2] Therefore, the Debtor should, at a minimum, be required to file and/or make available for inspection the definitive DIP Documents so that this Court and the Debtor's creditors and other parties in interests have a full and fair opportunity to adequately review and analyze the terms of the DIP Loan. Until these documents are filed an/or made available, the relief sought by the Debtor in its Motion should be denied.

8.      Of the limited, non-binding terms and conditions set forth in the Motion and Non-Binding Letter of Intent, First Palmetto objects on the following grounds:

a.      <u>Loan Covenants</u>. The Non-Binding Letter of Intent states that "No Plan of Reorganization can be filed without the prior written approval of [Lender]" and that certain cost savings measures, as "more specifically defined under Exhibit A to this [Non-Binding Letter of Intent]" must be enacted by the Debtor. Motion Ex. A Non-Binding Letter of Intent § 7. First Palmetto objects to the requirement that written approval of the Lender be obtained by the Debtor prior to filing a plan because such covenant effectively transfers control of the plan process to the Lender and could potentially jeopardize the Debtor's reorganization efforts to the detriment of its creditors. In addition, the cost savings measures to be implemented by the

---

[2]      In its Motion, the Debtor states that the Non-Binding Letter of Intent outlines the material terms of the DIP Loan, and that any DIP Documents will be consistent with the terms of the Non-Binding Letter of Intent. However, the Non-Binding Letter of Intent is not legally binding and only evidences "the preliminary understandings which [Lender] ha[s] reached regarding the contemplated transaction and [Lender's] mutual intent to negotiate to enter into the Definitive Agreement . . . ." Motion Ex. A Non-Binding Letter of Intent § 12. Thus, the Non-Binding Letter of Intent merely evinces a non-binding agreement to negotiate and the terms set forth therein may differ from those later agreed to in the definitive DIP Documents, including DIP Credit Agreement and DIP budget. Accordingly, this Court cannot rely on the terms and conditions set forth in the Non-Binding Letter of Intent.

Debtor in connection with the DIP Loan are not attached to the Non-Binding Letter of Intent so it is impossible to know what these measures would entail and what effect(s), if any, they may have on the Debtor, its estate and its creditors and other parties in interest.[3]

        b.     Finally, there are only three loan covenants set forth in the Non-Binding Letter of Intent and it is unknown what, if any, additional loan covenants may be required by the Lender after negotiation of the definitive DIP Documents. As set forth in more detail below, violation of a loan covenant is an event of default and could have dramatic consequences that would adversely effect the Debtor, its estate and its creditors. For this and the reasons set forth herein, the DIP Loan cannot be approved until all loan covenants, as contained in the definitive DIP Documents, are made known and carefully considered by this Court.

        c.     <u>Default</u>. The Non-Binding Letter of Intent provides that "[i]n the event of a Default, which shall include a violation of the Loan Covenants; . . . [Lender] shall immediately be entitled to two board seats on a three member board given full and exclusive control of the Borrowers, with the remaining seat occupied at the discretion of the equity holders." Motion Ex. A Non-Binding Letter of Intent § 8. This provision is perhaps most troubling. First, any violation of the Loan Covenants, the extent of which are unknown at this time, triggers an event of default. Second, and remarkably, upon an event of default, control of the Debtor would effectively be transferred to the Lender by giving it control over the Debtor's board. *See id.* The Debtor's loss of control could have devastating consequences on its ability to reorganize and be detrimental to the Debtor's estate and its creditors. Moreover, a financing condition that contemplates a delegation or compromise of the debtor's fiduciary duties is especially troublesome and should not be approved by the Court. Even a cursory review of the terms

---

[3]     At the section 341 meeting of creditors, the Debtor's representative, Kyle Tauch, testified that he had not even seen Exhibit A to the Non-binding Letter of Intent. Exhibit A allegedly identifies these so-called "cost of savings measures."

proposed in the Non-Binding Letter of Intent reveals that the Lender is unfairly and inequitably extracting significant concessions from the Debtor to the detriment of Debtor's estate and its creditors. As such terms are overreaching and excessively favorable to the Lender, the Motion should be denied.

        d. <u>Carve-Out</u>. The Motion states that the security interests granted to the Lender "is subject to the Carve-Out described above." Motion ¶ 32. However, "Carve-Out" is neither defined nor described in the Motion or Non-Binding Letter of Intent.

        WHEREFORE, PREMISES CONSIDERED, First Palmetto respectfully requests that the Court (i) sustain its objections to the Motion and (ii) grant First Palmetto such other and further relief to which it has shown just entitlement.

Dated: June 6, 2011               Respectfully Submitted,

                        By:   */s/ Shari L. Heyen*          
                               Shari L. Heyen
                               State Bar No. 09564750
                               HeyenS@gtlaw.com
                               1000 Louisiana St., Ste. 1700
                               Houston, TX 77002
                               Telephone: (713) 374-3699
                               Facsimile: (713) 374-3505

                        *Counsel for First Palmetto Savings Bank, FSB*

<u>**CERTIFICATE OF SERVICE**</u>

        The undersigned hereby certifies that on June 6, 2011, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States Bankruptcy Court for the Southern District of Texas, and was served via the Court's electronic notification system to those who receive such notice.

                          */s/ Shari L. Heyen*         
                          Shari L. Heyen

Case 11-34941-j39Doc Document Filed 47/05/led in ExteredoO7/05/11 18:Page51 dDesc Main
Document    Page 313 of 824
Case 11-33991   Document 13-1   Filed in TXSB on 05/12/11   Page 1 of 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**06/08/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| KT SPEARS CREEK, LLC, | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

<u>**ORDER GRANTING MOTION TO SUBSTITUTE COUNSEL**</u>

On this day came on to be heard the Motion to Substitute Counsel, filed by Creditor, RBC Bank (USA).  After reviewing such motion and all other matters properly before it, the Court is of the opinion that such motion should be granted.  It is, therefore,

ORDERED that David A. Zdunkewicz and Joseph P. Rovira are hereby permitted to withdraw as attorneys-of-record for RBC Bank (USA), and that Joseph G. Epstein of the law firm of Winstead PC is hereby substituted in their place.  It is further

ORDERED that all parties and their counsel of record shall henceforth serve notices, pleadings, motions, responses, correspondence and other filings required to be served on RBC Bank (USA) through its new counsel of record, as follows:

Joseph G. Epstein
Winstead PC
600 Travis Street, Suite 1100
Houston, Texas  77002
Telephone:  (713) 650-8400
Telecopy:  (713) 650-2400
jepstein@winstead.com

SIGNED this ____ day of **JUN 0 7 2011**, 2011.

LETITIA Z. PAUL
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter11) |
| DEBTOR | § | |

## FIRST SAVERS BANK'S JOINDER IN
## OBJECTION TO PROPOSED DIP FINANCING

First Savers Bank, a division of Plantation Federal Bank (the "Bank"), a creditor in this case, files this Joinder to the *Objection of First Palmetto Savings Bank, FSB to Debtor's Emergency Motion Pursuant to 11 USC §§105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014(I) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (ii) Granting Security Interests, and (III) Scheduling Final Hearing* [Docket No. 43], and would respectfully show the Court the following:

1.      The Bank objects to the proposed debtor-in-possession financing requested by the Debtor in its DIP Motion [Docket Nos. 27 and 28].  The DIP Motion and the non-binding letter of intent attached thereto simply have insufficient information to allow creditors to determine whether such financing is appropriate.  In addition, the proposed DIP financing, if approved, would allow the DIP lender to take control of the Debtor in the event of a default.  Such a remedy is clearly inappropriate.

2.      In addition to the reasons set forth in the Objection filed by First Palmetto, the DIP motion fails to disclose the close business relationship between (i) Kyle Tauch,

the principal of the Debtor, and (ii) Jay Krasoff, the president of J. K. Air Investment Group, LLC, the prospective DIP lender.  A review of the Texas Secretary of State's records reflect that Mr. Tauch and Mr. Krasoff are officers and/or members of several of the same limited liability companies.[1]  The full extent of this business relationship should be disclosed, prior to the DIP loan being approved.  In light of this relationship, the proposed debtor-in-possession financing does not appear to represent an arms-length negotiation.

3.    Based upon the foregoing, First Savers Bank respectfully requests that the proposed debtor-in-possession financing be denied.

DATED:  June 8, 2011.

Respectfully submitted,


*/s/* David S. Elder
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com (*email*)

*ATTORNEY-IN-CHARGE FOR*
*FIRST SAVERS BANK*

---

1  These affiliated companies include KT Foods, LLC, KT Foods Real Estate, LLC, KT Payroll, LLC, KT Energy Holdings, LLC and KT Energy I, LLC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Joinder in Proposed DIP Financing was forwarded either by the Court's ECF System or was mailed by first class mail to all parties named in the attached Service List on this 8th day of June, 2011.

<u>/s/ David S. Elder</u>
David S. Elder

**Service List**

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

*Debtors:*
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

*Debtors' Attorney:*
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX  77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

*U.S. Trustee:*
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Fax:713-718-4670

---

*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

---

*Internal Revenue Service:*
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

*Counsel for RBC:*
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC  28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

*Receiver:*
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC  29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

**Property Manager:**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

**20 Largest Creditors:**

Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

**Parties Requesting Notice:**

Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

HOUSTON 1114681v.2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter11) |
| DEBTOR | § | |

## FIRST SAVERS BANK'S JOINDER
## IN MOTION TO DISMISS OR TRANSFER VENUE

First Savers Bank, a division of Plantation Federal Bank (the "Bank"), a creditor in this case, files this Joinder with respect to the *Motion to Dismiss for Bad Faith Filing and for Improper Venue* [Docket No. 25] filed by RBC Bank (USA), and would respectfully show the Court the following:

1. The facts outlined in RBC's motion provide ample reasons for this Court to either (i) dismiss this case, or (ii) transfer venue of this case to the bankruptcy court in South Carolina. In addition to RBC's pending foreclosure on its collateral, the Bank has also been attempting – for more than a year – to foreclose its lien on a 65-acre tract of land pledged to secure the Bank's $6 million loan.

2. The Debtor has made no payments to the Bank for more than a year, nor has the Debtor paid any property taxes on the 65-acre tract for the past two years. Prior to the filing of this case, a judicial foreclosure hearing had been scheduled for August 8, 2011 in South Carolina. In addition to making no payments to the Bank (or the taxing authorities) in more than a year, the Debtor has made no effort to develop the 65-acre tract. It is obvious that the Debtor simply wants to speculate on this tract, hoping that

real estate values will rebound, but refusing to make any payments for interest, taxes, or

development costs.  Real estate speculation is not a valid reason for filing Chapter 11:

> "It is important to draw a distinction here. On the one hand, there is nothing inimical to the purposes of the Bankruptcy Code in the shrewd identification of the net present value and hidden potential for successful rehabilitation of a struggling business. On the other hand, **a debtor shows bad faith when it uses bankruptcy protection for risk-free speculation in the single asset**. A court must vigilantly protect the integrity of the judicial process and the interests of secured creditors to ensure that reorganization is being sought and that the debtor is not simply gambling with the creditor's money." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 759 (Bankr. SDNY 1997) [emphasis added].

3.     Based on the foregoing, the Bank respectfully requests that this bankruptcy

case be dismissed; in the alternative, the Bank requests that venue of this case be

transferred to the Bankruptcy Court in South Carolina.


      DATED:  June 8, 2011.


                              Respectfully submitted,


                              */s/ David S. Elder*_____
                              David S. Elder
                              State Bar No. 06507700
                              Gardere Wynne Sewell LLP
                              1000 Louisiana, Suite 3400
                              Houston, Texas 77002-5011
                              713-276-5750 (*direct dial*)
                              713-276-6750 (*direct fax*)
                              delder@gardere.com (*email*)

                              *ATTORNEY-IN-CHARGE FOR*
                              *FIRST SAVERS BANK*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing *Joinder in Motion to Dismiss or Transfer Venue* was forwarded either by the Court's ECF System or was mailed by first class mail to all parties named in the attached Service List on this 8th day of June, 2011.

                                      */s/ David S. Elder*               
                                        David S. Elder

## Service List

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

**Debtors:**
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

**Debtors' Attorney:**
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX  77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**U.S. Trustee:**
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Fax:713-718-4670

---

*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

---

**Internal Revenue Service:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

**Counsel for RBC:**
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC  28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**Receiver:**
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC  29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

*Property Manager:*
Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

*20 Largest Creditors:*
Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

*Parties Requesting Notice:*
Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

Page 2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| **KT SPEARS CREEK, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

## MOTION TO ALLOW CONSTANCE L. YOUNG TO APPEAR BY TELEPHONE
### [This instrument relates to Docket Nos. 25, 26, 27, 28, 31, & 34]

RBC Bank (USA) ("RBC"), a secured creditor and party in interest in the bankruptcy case referenced above, files this Motion to Allow Constance L. Young to Appear by Telephone (the "Motion") and respectfully states as follows:

1.      RBC is a secured creditor and party in interest in the above referenced bankruptcy case.

2.      Pursuant to the Court's Order Setting and Resetting Hearings (Docket No. 34), a hearing on RBC's Motion to Dismiss for Bad Faith Filing and Improper Venue pursuant to 28 U.S.C. § 1406(a) and § 1408 (Docket No. 25), RBC's Motion to Designate Case as Single Asset Real Estate Case pursuant to 11 U.S.C. § 101(51B) (Docket No. 26), the Emergency Motion of KT Spears Creek, LLC (the "Debtor") for Interim and Final Orders Approving Use of Cash Collateral (Docket No. 27), the Debtor's Emergency Motion pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing (Docket No. 28), and the Debtor's Emergency Motion for Turnover of Property and Request for Accounting (Docket No. 31), has been set for June 13, 2011 at 10:15 a.m. (the "Hearing").

3.      Constance L. Young is RBC's lead counsel of record in this bankruptcy case and has been admitted *pro hac vice* to practice before this Court (Docket No. 9).

4.      By this Motion, RBC seeks permission for Ms. Young to appear at the Hearing by telephone pursuant to this Court's procedures for telephonic appearances.

5.      Ms. Young offices in North Carolina and will incur substantial costs and expenses to appear at the Hearing in person.  RBC will also have local counsel physically present at the Hearing.

### Prayer

RBC respectfully requests this Court grant the relief requested in this Motion, and enter an order allowing Constance L. Young to appear by telephone on RBC's behalf at the Hearing. RBC also requests such other and further relief to which it may be justly entitled, both at law and in equity.

**DATED: June 8, 2011**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____*/s/ Sean B. Davis*_____
            Joseph G. Epstein
            State Bar No. 06639320
            S.D. Tex. No. 11733
            Sean B. Davis
            State Bar No. 24069583
            S.D. Tex. No. 1048341

*AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____ */s/ Constance L. Young* _____
       Constance L. Young,
       N.C. State Bar No. 16115
       Admitted *Pro Hac Vice*
       1065 East Morehead Street
       Charlotte, NC  28204
       Telephone: 704.332-1181
       Facsimile:  704.376-1628
       Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

**<u>Certificate of Service</u>**

    I hereby certify that on June 8, 2011, the foregoing Motion was electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District.

        _____ */s/ Sean B. Davis* _____
        One of Counsel

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| **KT SPEARS CREEK, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

## ORDER ALLOWING CONSTANCE L. YOUNG TO APPEAR BY TELEPHONE
### [This instrument relates to Docket No. _____]

The Court has considered the Motion to Allow Constance L. Young to Appear by Telephone (Docket No. _____) (the "Motion") filed by RBC Bank (USA) ("RBC"), a secured creditor and party in interest in the bankruptcy case referenced above, and finds that the Motion is meritorious and establishes cause to grant the relief requested therein.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.     The Motion is **GRANTED**.

2.     Constance L. Young shall be permitted to appear by telephone on behalf of RBC at the hearing on RBC's Motion to Dismiss for Bad Faith Filing and Improper Venue pursuant to 28 U.S.C. § 1406(a) and § 1408 (Docket No. 25), RBC's Motion to Designate Case as Single Asset Real Estate Case pursuant to 11 U.S.C. § 101(51B) (Docket No. 26), the Emergency Motion of KT Spears Creek, LLC (the "Debtor") for Interim and Final Orders Approving Use of Cash Collateral (Docket No. 27), the Debtor's Emergency Motion pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing (Docket No. 28), and the Debtor's Emergency Motion for Turnover of Property and Request for Accounting (Docket No. 31) before this Court on June 13, 2011 at 10:15 a.m.

3.      Constance L. Young shall be permitted to attend any continued hearing(s) on any

of the matters set forth in paragraph 2 of this Order without further permission of this Court.


**SIGNED this _____ day of _____, 2011**



_____

**THE HONORABLE LETITIA Z. PAUL**
**UNITED STATES BANKRUPTCY JUDGE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
06/06/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |
| | § | |

**ORDER CONTINUING HEARINGS ON
DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
APPROVING USE OF CASH COLLATERAL
AND
DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND
364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE
DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING**
(Relates to Docket Nos. 27, 28, 34, and 39 .)

Came on for consideration KT Spears Creek, LLC's (the "Debtor") Emergency Motion to
Continue (the "Continuance Motion") Hearings on the Debtor's Emergency Motion for Interim
and Final Orders Approving Use of Cash Collateral [Docket No. 27] (the "Cash Collateral
Motion") and the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364
and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition
Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing [Docket
No. 28] (the "DIP Motion"). The Court, after considering the Continuance Motion, any
responses thereto and arguments of counsel, hereby finds that the hearings on the Cash Collateral
Motion and the DIP Motion should be continued June 13, 2011 at 10:15 a.m.; therefore it is

**ORDERED** that the hearings on the Cash Collateral Motion and the DIP Motion are
hereby **continued** from June 7, 2011 at 9:30 a.m. **to June 13, 2011 at 10:15 a.m.**; and, it is
further

**ORDERED** that any party seeking to present evidence shall file on or before June 10, 2011 at 2:00 p.m., a witness list and an exhibit list.  The witness list shall set forth the name of each witness, the nature of the testimony the witness is anticipated to give, and a time estimate. The exhibit list shall identify any exhibits of which the party is seeking admission; and, it is further

**ORDERED** that the Debtor shall file a notice of the continued hearings on the Cash Collateral Motion and the DIP Motion, as well as of the deadline to file witness lists and exhibit lists set forth above, to notify all parties identified on the Service List attached to the motion.


DATED:  June 6, 2011

UNITED STATES BANKRUPTCY JUDGE

2

United States Bankruptcy Court
Southern District of Texas

In re:                                                              Case No. 11-33991-lzp
KT Spears Creek, LLC                                                Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod          Page 1 of 1          Date Rcvd: Jun 06, 2011
                              Form ID: pdf002     Total Noticed: 2

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 08, 2011.
db           +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
cr           +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
              1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                            TOTAL: 0

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr            First Savers Bank
intp          RBC Bank (USA)
                                                                    TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 08, 2011**                    **Signature:**    _Joseph Speetjens_

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:                              §
                                    §              CASE NO. 11-33991-H3-11
KT SPEARS CREEK, LLC,               §              (CHAPTER 11)
                                    §
DEBTOR.                             §

### RBC BANK (USA)'S OBJECTION TO DEBTOR'S EMERGENCY MOTION
### FOR TURNOVER OF PROPERTY AND REQUEST FOR ACCOUNTING
[This instrument relates to Docket No. 31]

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES RBC Bank (USA) ("**RBC Bank**"), creditor herein, by and through its undersigned counsel, and objects to the Emergency Motion for Turnover of Property and Request for Accounting (Docket No. 31) (the "**Turnover Motion**") filed by KT Spears Creek, LLC (the "**Debtor**") and, in support thereof, shows the Court as follows:

### OVERVIEW OF OBJECTION

1.      RBC Bank objects to the Turnover Motion, in which the Debtor requests turnover of its Real Property (defined hereafter) and Rents (defined hereafter) generated from the same, as well as an accounting of the Rents, because the rents are no longer property of the Debtor's estate under 11 U.S.C. § 541 given that: (1) the rents were absolutely assigned to RBC Bank in the Assignment of Rents; and (2) any residual right the Debtor may have held in the rents after the execution of the Assignment of Rents was stripped from the Debtor in the order appointing the state court receiver.  As such, the Rents cannot be subject to a motion to turnover property and for accounting pursuant to 11 U.S.C. § 542 or § 543.

### RULE 8 RESPONSES

2.      RBC Bank denies that venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  RBC Bank admits all other statements in paragraph one.

3.      RBC Bank admits the statements in paragraph two.

4.      RBC Bank denies the statements in paragraph three.

5.      RBC Bank admits the statements in paragraphs four through 10.

6.      RBC Bank lacks sufficient information or knowledge to admit or deny the statements in paragraphs 11-14.

7.      RBC Bank admits the statements in paragraphs 15-18.

8.      RBC Bank submits that paragraph 19 is simply a statement of the grounds for the relief requested in the Turnover Motion, to which no response is required.

9.      RBC Bank submits that paragraph 20 is simply a recitation of the law, to which no response is required.

10.     RBC Bank denies the second, fifth, sixth, and eighth sentences of paragraph 21. RBC Bank admits all other statements in paragraph 21, but denies that the Court should grant the relief requested in the Turnover Motion.

11.     RBC Bank denies the statements in paragraph 22.

12.     RBC Bank submits that the first and second sentences of paragraph 23 are simply recitations of the law, to which no response is required.  RBC Bank denies the statements in the third sentence of paragraph 23.

13.     RBC Bank denies the statements in paragraph 24.

14.     RBC Bank denies the statements in the second, third, and fourth sentences of paragraph 25.  RBC Bank admits all other statements in paragraph 25, but denies that the relief requested in the Turnover Motion is necessary to prevent immediate and irreparable harm to the Debtor's estate.

15.    RBC Bank lacks sufficient information or knowledge to admit or deny the statements in paragraph 26.

**FACTUAL BACKGROUND**

16.    On May 4, 2011 (the "**Petition Date**"), which was the day before RBC Bank's judicial foreclosure sale of the Real Property (as hereinafter defined), the Debtor filed its voluntary petition ("**Voluntary Petition**") for relief under Title 11 of the United States Code. The Debtor *is not* in possession of its property and management of its business, as a receiver has been appointed.  No Trustee has been appointed in this case.

17.    On or about May 25, 2006, the Debtor executed and delivered to RBC Bank a written Promissory Note in the original principal amount of $19,700,000.00, as amended or modified by that certain Modification, Cross-Collateralization and Cross-Default Agreement dated May 25, 2006, and that certain Change In Terms Agreement dated May 23, 2008 (as may be amended from time to time, including all renewals and modifications, collectively the "**Note**").

18.    To secure the indebtedness owed to RBC Bank under the Note, the Debtor executed and delivered to RBC Bank a written Mortgage, Assignment of Rents and Security Agreement dated May 25, 2006, and recorded with the Register of Deeds of Richland County, South Carolina on June 2, 2006 in Book 1190, Page 1008 (the "**Mortgage**") encumbering certain real property located in Richland County, South Carolina (the "**Real Property**") described therein.

19.    The Debtor also assigned all of its interest in and to all leases, rents and profits affecting the use, enjoyment or occupancy of all or any part of the Real Property (collectively, the "**Rents**"), all as more particularly set forth in the Assignment of Leases, Rents and Profits

3

dated May 25, 2006, and recorded on June 16, 2006 in Book 1195, Page 2187 of the Richland County Registry (the "**Assignment of Leases**").  The Note, the Mortgage, the Assignment of Leases, as well as all other agreements and documents associated with the Note are collectively referred to herein as the "**Loan Documents**."  A true and correct copy of the Assignment of Leases is attached hereto as **Exhibit 1**.

20.    The Debtor defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full at maturity.

21.    The Debtor's real and personal property, including the income generated therefrom, was and continues to be in the hands of a state-appointed receiver in Columbia, South Carolina, pursuant to the Order Appointing Receiver entered by the Special Circuit Court Judge in Richland County, South Carolina dated November 12, 2010.  A true and correct copy of the Order Appointing Receiver is attached as **Exhibit 2**.

22.    The Mortgage is duly perfected and, upon information and belief, the Debtor has only one pre-petition unsecured creditor because the property had been in the hands of a state court receiver for almost six months prior to the bankruptcy filing and all ongoing bills and expenses had been paid by the Receiver.  Additionally, RBC Bank advanced over $800,000 of past due property taxes.  Therefore, this is a single asset real estate case. *See RBC Bank's Motion to Designate Case as a Single Asset Real Estate Case* (Docket No. 26).

### OBJECTION

23.    The Rents are not property of Debtor's estate pursuant to 11 U.S.C. § 541 and therefore are inappropriate for use as cash collateral.  "A precondition of a debtor in bankruptcy being permitted to use cash collateral pursuant to 11 U.S.C. § 363 is that the estate have an interest in the case such that it meet the definition of cash collateral." *In re Four Bucks, LLC,*

2009 Bankr. LEXIS 1720 (Bankr. N.D. Tex. June 29, 2009) (quotes omitted).  "Property interests are created and defined by state law." *Laughlin v. Nouveau Body & Tan, L.L.C.* (*In re Laughlin*), 602 F.3d 417, 422 (5th Cir. 2010) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)).

24.    South Carolina statutes provide:

> The recording of a written document containing an assignment of leases, rents, issues, or profits arising from real property is valid and enforceable from the time of recording to pass the interest granted, pledged assigned, or transferred as against the assignor, and is perfected from the time of recording against subsequent assignees, lien creditors, and purchasers for a valuable consideration from the assignor.

S.C. Code Ann. § 29-3-100.

25.    The Assignment of Leases specifically provides: (i) that the assignment is absolute, *Assignment of Leases*, § 1; (ii) that the Debtor transferred "all of [the Debtor's] presently existing right, title and interest in all of [the Debtor's] right, title and interest which may arise in the future in and to the rents, issues, profits, revenues, royalties, rights and benefits" arising from the Real Property, *Assignment of Leases*, ¶ 2; and, (iii) that Debtor only had a revocable license to use the Rents until an event of default occurred, *Assignment of Leases*, § 1.2. Accordingly, the Debtor has no property interest in the Rents pursuant to South Carolina law because it had transferred all of its right, title and interest in the Rents to RBC Bank pre-petition. *See also Felder v. Am. Gen. Fin., Inc.* (*In re Felder*), 2000 Bankr. LEXIS 1257 (Bankr. D.S.C. July 7, 2000) (holding that the property subject to an unequivocal pre-petition assignment was not property of the bankruptcy estate); *In re Four Bucks, LLC*, 2009 Bankr. LEXIS 1720, at *8-9 (holding that "[b]ecause the rents have been absolutely assigned to the Lender prior to the Petition Date, Debtor did not have an interest in the rents as of the Petition Date" and were therefore not available as cash collateral).

26.    Furthermore, the Order Appointing Receiver divested the Debtor of the Rents and specifically granted possession of the Rents to the receiver. *See Order Appointing Receiver*, ¶ 7. The Receiver's possession is to continue until the successful completion of foreclosure, at which time possession will pass to the bidder. *See Order Appointing Receiver*, ¶ 25.

27.    Because the Debtor has been divested of any interest in the Rents pursuant to South Carolina statute, South Carolina case law, and the Order Appointing Receiver, the Rents are not part of the Debtor's estate and the Debtor is not entitled to turnover or an accounting of the same pursuant to § 542 or § 543 of the Bankruptcy Code.

28.    Further, since the entry of a Temporary Restraining Order by the Richland County Court of Common Pleas on September 3, 2010, all of the Debtor's excess income has been turned over to RBC Bank after payment of normal and customary operating expenses.  A true and correct copy of the Temporary Restraining Order is attached hereto as **Exhibit 3**.  Kyle Tauch, the controlling principal of Debtor, has been an absentee owner at least since such time, and has been specifically prohibited by the Richland County Court of Common Please from making any decisions for or having any control over the Debtor from and after November 17, 2010—the date of the Order Appointing Receiver.[1]  In RBC Bank's foreclosure proceeding, Mr. Tauch and the Debtor didn't even make an appearance or file answers until November 12, 2010, after RBC Bank had gone to great lengths to notice the same, even to the extent of service by publication, because Mr. Tauch was apparently avoiding service in the South Carolina foreclosure action.[2]

---

[1] The day-to-day operations of the Debtor have been conducted by Greystar Real Estate Partners for the past several years.

[2] The process server tried on six consecutive days to obtain service on Mr. Tauch and stated that although someone appeared to be picking up the mail, there was no sign of Mr. Tauch.

29.    Accordingly, Mr. Tauch's and the Debtor's own actions manifest that the Debtor no longer has an interest in the Rents, and the Debtor should be estopped from asserting otherwise.  As such, the Court should deny the Debtor's Turnover Motion.

### PRAYER

WHEREFORE, RBC Bank requests that this Court deny the Debtor's Turnover Motion, that the Rents from the Real Property, in excess of operating expenses, be turned over to RBC Bank, and that the court appointed receiver remain in possession and control of the Real Property.  RBC Bank also requests such other and further relief to which it may be justly entitled, both at law and in equity.

**DATED: June 9, 2011**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____ */s/ Joseph G. Epstein* _____
        Joseph G. Epstein
        State Bar No. 06639320
        S.D. Tex. No. 11733
        Sean B. Davis
        State Bar No. 24069583
        S.D. Tex. No. 1048341

           *AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____ */s/ Constance L. Young* _____
        Constance L. Young,
        N.C. State Bar No. 16115
        Admitted *Pro Hac Vice*
        1065 East Morehead Street
        Charlotte, NC  28204
        Telephone: 704.332-1181
        Facsimile:  704.376-1628
        Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

**Certificate of Service**

I hereby certify that on June 9, 2011, the foregoing instrument was served via first class U.S. Mail to the parties listed below.  Additionally, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District.

    */s/ Joseph G. Epstein* _____
    One of Counsel

8

**Debtor's Counsel:**
Magdalene Duchamp Conner
Matthew Scott Okin
OKIN ADAMS & KILMER LLP
1113 Vine Street, Suite 201
Houston, TX 77002

**U.S. Trustee:**
Ellen Maresh Hickman
OFFICE OF THE U.S. TRUSTEE
515 Rusk St., Suite 3516
Houston, Texas 77002
Facsimile: (713) 718- 4570

HOUSTON_1\1113187v1
49590-25  06/09/2011



Book 1185-2187
2006053852 08/08/2006 11:20:00.597          Asgmt Lease Rent Profit
Fee:$17.00   County Tax:$0.00              State Tax:$0.00

2006053852 John G. Norris              Richland County ROD

_____ Space Above Line for Processing Data _____

State of South Carolina                                    County of Richland

# RBC Centura                          ### ASSIGNMENT OF LEASES, RENTS AND
                                            PROFITS

THIS ASSIGNMENT OF LEASES, RENTS AND PROFITS ("Assignment", which includes all amendments,
modifications, renewals, extensions, replacements and substitutions thereof and therefor), entered into as of the
25th day of MAY , 2006, by KT SPEARS CREEK, LLC (whether one or more, "Assignor"), with a
mailing address of 5410 Piping Rock, Houston, Texas 77056, to RBC CENTURA BANK ("Assignee"), with a
business address of 134 N. Church Street, Rocky Mount, North Carolina 27804 and a mailing address of Post Office
Box 1220, Rocky Mount, North Carolina 27802-1220, which mailing address is the place to which all notices and
communications should be sent to Bank regarding this Assignment.

<u>WITNESSETH:</u>

FOR VALUE RECEIVED, and as additional security for the obligations hereinafter mentioned, the Assignor hereby
sells, transfers and assigns unto the Assignee, its successors and assigns, all of Assignor's presently existing right,
title and interest and all of Assignor's right, title and interest which may arise in the future in and to the rents, issues,
profits, revenues, royalties, rights and benefits (collectively, the "Rents and Profits") arising from or related to (1) the
parcels of land described on Exhibit A, (2) the rights and benefits appurtenant to said parcels of land including all
sales contracts for sale of the improvements to be constructed thereon, and (3) the buildings and other improvements
(to include manufactured homes) now located thereon and thereunder and those which may be located thereon and
thereunder in the future (collectively, the "Property"),  together with all equipment, fixtures, standing timber (to
include timber to be cut, but this inclusion does not permit cutting of timber unless Assignee agrees to such cutting in
advance thereof), crops grown, growing and to be grown on the Property (to include crops that are produced on
trees, vines and bushes and aquatic goods) and other farm products (to include livestock – born and unborn, supplies
and products of crops and livestock), oil, gas and other minerals and as-extracted collateral (but inclusion of as-
extracted collateral does not permit extraction unless Assignee agrees to such extraction in advance thereof), both
that now owned by Assignor and on behalf of and for the benefit of Assignor and located in, on and under the
Property and otherwise used in connection therewith, and that hereafter acquired and located as aforesaid and used in
connection with the ownership, possession, operation and maintenance of the Property (collectively, the
"Collateral").

AND, in furtherance of the foregoing assignment, but not in limitation thereof, Assignor does hereby sell, transfer
and assign to Assignee, its successors and assigns, all of Assignor's presently existing right, title and interest and all
Assignor's right, title and interest which may arise in the future in and to (1) the leases and rental agreements, if any,
listed on Exhibit A and all other leases and rental agreements with respect to the Property and with respect to the

<u>EXHIBIT</u>

tabbies

1

Collateral now existing or hereafter made, executed and delivered (whether written, electronic or verbal), together with all present and future extensions, renewals, modifications and amendments thereof, and substitutions and replacements therefor (collectively, the "Leases"), (2) all Rents and Profits due and all Rents and Profits which become due under the Leases and (3) all security deposits now held or hereafter acquired and held in connection with any of the foregoing.

THIS ASSIGNMENT is subject to the following terms and conditions:

Section 1:  Absolute Assignment Given as Security.  This Assignment is absolute and is given as additional security for the payment and performance of the obligations described in and secured by that certain Mortgage ("Mortgage") identified on Exhibit A. The amounts collected hereunder shall be applied first to the costs and expenses incurred by Assignee and those incurred on behalf of Assignee under this Assignment in collecting and receiving Rents and Profits, or as otherwise provided herein, and then in reduction of the obligations from time to time outstanding and secured by the Mortgage, in the order provided in the Mortgage. The term of this Assignment shall be until the obligations secured by the Mortgage shall have been fully paid and satisfied and the cancellation of the Mortgage shall constitute a release hereof.

1.1.  Management and Collection of Rents and Profits.  Until release of this Assignment by Assignee as provided in Section 1 above, but subject to the revocable license granted by Assignee to Assignor as provided in Section 1.2 below, the sole right and authority to collect the Rents and Profits shall be with and shall lie with Assignee and such right, authority and power may be exercised by Assignee and may be exercised by either or both Assignee's designee or a receiver or other official appointed as provided in Section 2.4 below, from time to time and in such manner as Assignee deems necessary or appropriate, in its sole discretion; and, in connection with such right of collection, Assignor hereby directs each and all of the lessees and tenants of the Property and lessees and tenants of the Collateral and any other person obligated to pay Rents and Profits on account of the Property and on account of the Collateral to pay said Rents and Profits (as may now be due and as shall hereafter become due) to the Assignee, its designee or a receiver or other official appointed for such purpose, upon demand for payment thereof by the Assignee or such other person or persons from time to time and at anytime.  Without limiting the foregoing, but in furtherance thereof, Assignee shall have the additional rights and powers set forth in Sections 1.1.1 through 1.1.3, below.

1.1.1.  Assignee, at any time and from time to time, may give notice in writing of this Assignment to any and all of the lessees and tenants under the Leases and to any other persons in possession of the Property and in possession of the Collateral, and any parts of either and interests in either; and, Assignee, for the purpose of fully enforcing its rights and powers under this Assignment, may otherwise communicate with such lessees, tenants and other persons regarding this Assignment and Assignee's rights, authority and powers hereunder.

1.1.2.  Assignee, at its option and at any time or times, shall have the right to enter and take possession of the Property and possession of the Collateral and to manage and operate the same, to let or re-let the Property, the Collateral and any part of either and interests in either, to cancel and modify the Leases, to grant rent concessions and other inducements, to evict lessees, tenants and other persons, to bring and defend any suits in connection with possession of the Property and possession of the Collateral in its own name or the Assignor's name, to make repairs as the Assignee deems appropriate, and to perform such other acts in connection with the management and operation of the Property as the Assignee, in its discretion, may deem proper, all at the cost and expense of Assignor.

1.1.3.  Assignee shall have the right to hold and possess, and the Assignor shall turn over to the Assignee immediately upon demand of Assignee, the security deposits held by the Assignor, and those held by its employees and agents, under and pursuant to the Leases.  Assignee shall hold and apply the security deposits received in connection with the Leases to the purposes specified in the Leases, in accordance with the terms and conditions thereof.  Except to the extent required by law or otherwise required in the Leases, Assignee shall not be obligated for the payment of interest on security deposits delivered to it.

1.2. <u>Revocable License Given to Assignor</u>.

    1.2.1. Until the occurrence of an Event of Default, as defined in the Mortgage, or the breach of or default under this Assignment by Assignor, Assignor shall have a license and Assignee hereby grants to Assignor a revocable license to continue collecting the Rents and Profits in the normal and ordinary course of Assignor's business; provide, however, (1) Assignor shall not collect any rental installments under any Leases more than two months in advance of its scheduled payment date without the prior written consent of the Assignee – and if Assignor does so do in contravention hereof, Assignor shall promptly remit such advanced rental installments to Assignee for application by Assignee against the obligations secured hereby, such installments to be applied as provided in Section 1 of this Assignment, (2) Assignor shall pay to Assignee, upon receipt by Assignor and in the same form as received (with any necessary endorsements), (A) any award made hereafter in any court procedure involving any of the Leases in any bankruptcy, insolvency or reorganization proceedings in any state court and in any federal court and (B) any payments made and consideration given by tenants and lessees in lieu of rental payments under any of the Leases, or in settlement of or on account of a claim or dispute under or with respect to any Leases, and (3) Assignor shall promptly comply with such other directives as Assignee may from time to time give to Assignor regarding collection of the Rents and Profits.

    1.2.2. If Assignor should breach this Assignment or default hereunder, or if an Event of Default occurs under the Mortgage, Assignee may, at its option, terminate the privilege and license granted to Assignor by Assignee in Section 1.2.1 above and upon a determination by Assignee to terminate, the privilege and license granted to Assignor shall automatically terminate without any notice from Assignee to Assignor and without any further or additional acts on the part of Assignee, unless notice is required under the Mortgage or under applicable law, and then only such minimum notice as may be required. Upon such termination, Assignor shall cease all collection activities and shall pay over to Assignee all Rents and Profits received by it on and after such termination. All amounts which are received by Assignor from and after the termination of Assignor's license shall be received in trust for the benefit of Assignee, shall be segregated from other funds of Assignor and shall be immediately paid over to Assignee in the same form as received (with any necessary endorsements).

Section 2. <u>Additional Provisions Relating to Collection of Rents and Profits</u>.

    2.1. <u>Limitation on Accountability of Assignee</u>. The Assignee shall not be liable for laches and shall not be liable for the inability to collect the Rents and Profits. The Assignee is obligated to account only for such sums as are actually collected and shall not be obligated to perform and shall not be obligated to discharge any obligation to be performed or discharged by the Assignor under any of the Leases unless it has undertaken the cure of any default. The Assignor hereby agrees to indemnify the Assignee for, and to save it harmless from, any and all liability arising from the Leases and any and all liability arising from this Assignment. This Assignment shall not place responsibility for the control, care, management and repair of the Property and Collateral upon the Assignee, and shall not make the Assignee responsible or liable for any negligence in the management, operation, upkeep, repair and control of the Property and the Collateral resulting in loss or injury or death to any lessee, tenant, licensee, employee or stranger unless Assignee has taken possession of the Property.

    2.2. <u>Consequences of Receipt of Rents and Profits</u>. The receipt by the Assignee of any Rents and Profits pursuant to this Assignment after acceleration of the obligations secured hereby shall not cure any default nor shall the receipt thereof at any subsequent time cure any default, affect Assignee's right to institute foreclosure proceedings under the Mortgage or affect any sale pursuant thereto. Neither the existence of this Assignment nor the exercise of Assignee's privilege to collect the Rents and Profits, shall be construed as a waiver by the Assignee of the right to enforce payment of the obligations hereby secured in strict accordance with the terms and provisions of the Mortgage and any agreement evidencing any of the obligations secured by the Mortgage.

    2.3. <u>Waiver of Rights by Assignor</u>. If there is any case law, statute or regulation requiring Assignee to take actual possession of the Property and to take actual possession of the Collateral (or some action equivalent thereto, such as securing the appointment of a receiver) in order for Assignee to perfect or activate its rights and remedies as set forth herein, then Assignor waives the benefits of such law and agrees that such requirement of law may be satisfied solely by (1) Assignee sending Assignor written notice that Assignee intends to enforce, and is enforcing, its

rights in and to the Property, the Collateral and the Rents and Profits assigned herein and (2) Assignee sending written notice to any one or more of the lessees and tenants of the Property and lessees and tenants of the Collateral, and any other person in possession of all or part of either or both, to commence making payments directly to Assignee or its designee as provided herein.

2.4. Appointment of Receiver. Assignee shall have the absolute and unconditional right to apply for and to obtain the appointment of a receiver or similar official for any part of and for all of the Property and for any part of and for all of the Collateral, to, among other things, manage and operate the Property and to manage and operate the Collateral, and any part of and interest in either or both, and to collect and apply the Rents and Profits as provided above. In the event of such application, Assignor consents to the appointment of such receiver or similar official and agrees that such receiver or similar official may be appointed without notice to Assignor, without regard to the adequacy of any security for the obligations secured hereby and without regard to the solvency of Assignor and without regard to the solvency of any other person, firm or corporation who or which may be liable for the payment of the obligations secured hereby. All costs and expenses related to the appointment of a receiver or other similar official hereunder shall be the responsibility of Assignor, but if paid by Assignee, Assignor hereby agrees to pay to Assignee, immediately and without demand, all such expenses, together with interest thereon from the date of each payment by Assignee at the contract rate at which interest accrues from time to time on the obligations hereby secured, or if interest accrues at different contract rates, any one of the contract rates at which interest accrues as selected by Assignee, in its sole discretion, which rate may be fixed or variable (the "Contract Rate"). All sums so paid by Assignee, and the interest thereon, shall be added to and be secured by this Assignment.

2.5. Power of Attorney. Assignor does hereby irrevocably constitute and appoint Assignee its true and lawful attorney with full power of substitution, for it and in its name, place and stead, to execute, deliver, send and file such agreements, documents, notices, statements and records as Assignee, in its sole discretion, deems necessary and advisable to effect the terms and conditions of this Assignment and to otherwise realize Assignee's rights, authority and powers hereunder, and the benefits provided to Assignee herein, and in connection therewith, Assignee may appear in any action and collect any award or payments relating to the Property and Collateral (including, without limitation, the Leases and the Rents and Profits). The foregoing appointment is and the same shall be coupled with an interest in favor of Assignee. In furtherance of the foregoing appointment and grant of authority, but not in limitation thereof, Assignor irrevocably authorizes Assignee to file such financing statements as may be necessary to protect, in Assignee's opinion, Assignee's liens and security interests in the Property and Collateral (including, without limitation, the Leases and the Rents and Profits) and, to the extent Assignee deems necessary or appropriate, to sign Assignor's name with the same force and effect as if signed by Assignor and to make public in financing statements and other public filings such information regarding Assignor as Assignee deems necessary or appropriate, including, without limitation, federal tax identification numbers, social security numbers and other identifying information.

Section 3. Representations, Warranties and Covenants Regarding Leases.

3.1. Representations and Warranties. Assignor represents and warrants to Assignee that (1) it has full right, title and authority to assign to Assignee the Leases and the Rents and Profits due or to become due thereunder or with respect to the Property and the Collateral, (2) the terms of the Leases have not been amended, modified, replaced or changed from the terms in the copies of the Leases submitted to the Assignee for approval, which copies are true and exact copies of the Leases currently outstanding with respect to the Property and the Collateral, (3) no other assignment of any interest in the Leases has been made by Assignor or any other person to anyone other than Assignee, (4) there are no existing defaults under any of the Leases by any party thereto, and (5) there has been no anticipation or prepayment of any rental installments by any lessees or tenants occupying or possessing the Property and the Collateral or by any of the lessees or tenants in any of the Leases.

3.2. Covenants Regarding Leases.

3.2.1. The Assignor shall fully perform its obligations under the Leases in a timely manner and shall take such actions as may be reasonably necessary to ensure that all lessees and tenants under any of the Leases fully and timely perform their respective obligations thereunder, all at Assignor's sole cost and expense. The Assignor

shall provide to Assignee such information with respect to the Leases and the Rents and Profits therefrom or otherwise arising from or in connection with the Property and Collateral as Assignee may from time to time request; such information to be delivered to Assignee promptly by Assignor and in a form and medium directed by Assignee.

3.2.2.  The Assignor shall not hereafter, without the prior written consent of the Assignee: (1) cancel any of the Leases, surrender any of the Lease and terminate any of the Leases, (2) exercise any option which might lead to a cancellation, surrender or termination of any of the Leases, (3) change, amend, alter and modify any of the Leases, (4) consent to the release of any party liable under any of the Leases, and (5) consent to the assignment and subletting of the lessee's or tenant's interest in them.

3.2.3.  The Assignor shall maintain the security deposits made or to be made with respect to Leases of the Property and the Collateral in a separate bank account maintained by the Assignor with the Assignee, if so requested by Assignee, and designated as the account for the deposit of security deposits with respect to the Property and Collateral. The Assignor shall provide to the Assignee within thirty (30) days of the end of each of the Assignor's fiscal years, or more frequently if so requested by Assignee, a written verification of the amount of security deposits maintained in the account together with a list of the Leases with respect to which the deposits are maintained.

Section 4.  Miscellaneous.

4.1.  Incorporation of Exhibits.  All exhibits, schedules, addenda and other attachments to this Assignment are by this reference incorporated herein and made a part hereof as if fully set forth in the body of this Assignment.

4.2.  Maintenance of Records by Assignee.  Assignee is authorized to maintain, store and otherwise retain evidences of the obligations, this Assignment, any separate security agreements and other agreements executed and delivered and to be executed and delivered by Assignor and others on Assignor's behalf to Assignee in their original, inscribed tangible form or a record thereof in an electronic medium or other non-tangible medium which permits such record to be retrieved in a perceivable form.

4.3.  Credit Investigations; Sharing of Information; Control Agreements.  Assignee is irrevocably authorized by Assignor to make and have made such credit investigations as it deems appropriate to evaluate Assignor's credit, personal and financial standing, and employment.  Assignor authorizes Assignee to share with consumer reporting agencies and creditors its experiences with Assignor and other information in Assignee's possession relative to Assignor, the Property and the Collateral (including, without limitation, the Leases and the Rents and Profits); but Assignee shall not have (1) any obligation to provide information to third persons relative to any of the foregoing or otherwise, (2) any obligation to subordinate its liens and security interests in the Property and Collateral (including, without limitation, the Leases and the Rents and Profits) and (3) any obligation to enter into control agreements and other agreements relative thereto.

4.4.  Marshalling of Assets.  Assignor hereby waives, to the extent permitted by law, the benefit of all homestead, appraisement, valuation, stay, extension, reinstatement and redemption laws now in force and any which may in the future come to be in force and all rights of marshalling in the event of any collection hereunder of Rents and Profits or otherwise against the Property, the Collateral or any part or any interest in either or both.

4.5.  Waiver of Statutory Rights.  Assignor waives any right to require Assignee to bring any action against any other person or to require that resort be had to any security or to any balances of any deposit or other accounts or debts or credits on the books of Assignee in favor of any other person.  Assignor also waives any and all right of subrogation, contribution, reimbursement and indemnity and any right of recourse to and with respect to the assets of any other person that is or may be security for the obligations secured hereby.

4.6.  Jury, Venue, Jurisdiction.  This Assignment shall be deemed to have been executed and delivered in South Carolina regardless of where the signatories may be located at the time of execution and shall be governed by and construed in accordance with the substantive laws of the State of South Carolina, excluding, however, the

conflict of law and choice of law provisions thereof. Assignor, to the extent permitted by law, waives any right to a trial by jury in any action arising from or related to this Assignment.

4.7. No Waiver; No Course of Dealing; No Invalidity. No delay or forbearance by Assignee in exercising any and all of its rights and remedies hereunder, and its rights and remedies otherwise afforded by law and in equity, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder or in the event of any subsequent default hereunder. Also, no act or inaction of Assignee under this Assignment shall be deemed to constitute or establish a "course of performance or dealing" that would require Assignee to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Assignment shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Assignment.

4.8. No Oral Change. Subject to the exercise by Assignee of its rights and remedies as set forth in this Assignment and without limiting any of such rights and remedies, this Assignment, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing, signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

4.9. Payment of Expenses. Without limiting any other provision of this Assignment relating to Assignor's payment of costs and expenses incurred by and on behalf of Assignee, but in addition thereto, Assignor shall pay to Assignee on demand any and all reasonable costs and expenses, including, without limitation, attorneys' fees, incurred by Assignee and those incurred on behalf of Assignee in protecting its interest in the Property and its interest in the Collateral and in collecting any amount payable hereunder and in enforcing its rights hereunder with respect to the Property and with respect to the Collateral (including, without limitation, commencing any collection action, and prosecuting and defending any legal and equitable proceeding), together with interest thereon at the Contract Rate from the date paid or incurred by or on behalf of Assignee until such costs and expenses are paid by Assignor. All sums so paid and expended by Assignee, and the interest thereon, shall be added to and be secured by this Assignment.

4.10. Documentary Stamp Taxes. To the extent not prohibited by applicable law and notwithstanding who is liable for payment of the taxes or fees, Assignor shall pay upon demand any stamp tax, documentary tax, intangible tax and other taxes, levies and charges of any jurisdiction with respect to the execution, delivery, registration, performance and enforcement of this Assignment.

4.11. Relationship of Parties; Successors and Assigns. The relationship of Assignee to Assignor is that of a creditor to an obligor or debtor; and in furtherance thereof and in explanation thereof, Assignee has no fiduciary, trust, guardian, representative, partnership, joint venturer or other similar relationship to and with Assignor and no such relationship shall be drawn or implied from this Assignment and any of Assignor's actions or inactions hereunder or with respect hereto – and, Assignee has no obligation to Assignor and any other person relative to administration of the obligations secured by this Assignment, the Property, the Collateral and any part or parts of any of the foregoing. The covenants, terms and conditions herein contained shall bind, and the benefits and powers shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto, but nothing herein contained shall be deemed a consent to the sale, lease, demise, further encumbrance, transfer and other disposition by Assignor, either directly or indirectly, of all or any part of the Property, the Collateral and any interest, right and estate in either or both (including, without limitation, the Leases and the Rents and Profits), without Assignee's prior written consent, which may be withheld in Assignee's sole discretion. If two or more persons or entities have joined as Assignor, each of the persons and entities shall be jointly and severally obligated to perform the obligations herein contained. The term "Assignee" shall include any payee of the obligations hereby secured and any transferee and assignee thereof, whether by operation of law or otherwise, and Assignee may transfer, assign and negotiate all and any of the obligations secured by this Assignment from time to time without the consent of Assignor and without notice to Assignor and any transferee and assignee of Assignee, and any transferee and assignee of another may do the same without Assignor's consent and without notice to Assignor. Assignor waives and will not

assert against any transferee and waives and will not assert against any assignee of Assignee any claims, defenses, set-offs and rights of recoupment which Assignor could assert against Assignee, except defenses which Assignee cannot waive.

4.12. <u>Notices</u>. All notices, certificates and other communications hereunder shall be deemed given when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed to the addresses set forth above. Assignor and the Assignee may, by written notice given hereunder, designate a different address where communications should be sent and Assignee may direct, by notice to Assignor, for communications to be sent electronically or in some other non-tangible medium.

4.13. <u>Anti-Money Laundering and Anti-Terrorism</u>. Assignor represents, warrants and covenants to Assignee as follows: (1) Assignor (a) is not and shall not become a person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) does not engage in and shall not engage in any dealings or transactions prohibited by Section 2 of such executive order, and is not and shall not otherwise become associated with any such person in any manner violative of Section 2, (c) is not and shall not become a person on the list of Specially Designated Nationals and Blocked Persons, and (d) is not and shall not become subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order; (2) Assignor is and shall remain in compliance, in all material respects, with (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act of 2001); and (3) Assignor has not and shall not use all or any part of the proceeds of the obligations secured by the Mortgage or any or all of the Rents and Profits, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

4.14. <u>Use and Application of Terms</u>. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa; and as the context requires, the word "and" may have a joint meaning or a several meaning and the word "or" may have an inclusive meaning or an exclusive meaning. All references in this Assignment to "person" or "persons" shall include individuals and organizations and all terms used in this Assignment that are not defined in this Assignment, the Mortgage or in the obligations secured hereby, but are defined in the Uniform Commercial Code in effect in the State of South Carolina, shall have the meaning ascribed to such terms from time to time in said Uniform Commercial Code. Any reference contained in this Assignment to specific statutes or laws shall include any successor statutes or laws, as the case may be. This Assignment shall not be applied, interpreted and construed more strictly against a person because that person or that person's attorney drafted this Assignment.

The undersigned has executed this Assignment as of the day and year first above stated.

Signed, sealed and delivered in the presence of:

KT SPEARS CREEK, LLC

By: _____

Name: _____

Its: Member

Witness: _____

Print Name: _Michele Lee Reed_

Witness: _____

Print Name: _____

STATE OF                    )                    ACKNOWLEDGMENT

COUNTY OF                   )

The foregoing instrument was acknowledged before me this _15_ day of _June_, 2006, by
_Kyle Tauch_____, as /Member of KT Spears Creek, LLC.

_Michele Lee Reed_____
Notary Public for

My commission expires: _9-12-06_____

MICHELE LEE REED
Notary Public, State of Texas
My Commission Expires
September 12, 2006

EXHIBIT A
(Attached to Assignment of Leases, Rents and Profits)

1.      Description of Mortgage:  Mortgage, Assignment of Rents and Security Agreement from KT Spears Creek, LLC, to RBC Centura Bank of even date herewith.

2.      List of Leases and Rental Agreements:

3.      Description of Property:    See legal description attached.

EXHIBIT A

PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL
HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST,
A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND)
ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY
DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY
SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF
33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W
HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC
LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO
A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 81°49'37"
WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING
ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00
FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37"
EAST 34.85 FEET TO A #5 REBAR (SET);THENCE CONTINUING ALONG SAID R/W
SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL
DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A
CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A CALCULATED POINT ;
THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A
CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51
FEET TO A CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE
OF 100.67 FEET TO A CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A
DISTANCE OF 25.51 FEET TO A CALCULATED POINT; THENCE NORTH 61°03'52"
WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH
14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT;
THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR
(FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF
69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE
OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A
DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A
#5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W NORTH 72°00'37"
EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W NORTH 71°54'05" EAST, A DISTANCE OF 5.80
FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF
104.64 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A
DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17"
EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH
75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05 and 25900-04-04

Derivation: Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

### PHASE II PROPERTY  DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL  LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE  NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59", EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03"  EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY  ALONG SAID  R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE  SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING  ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

NPCOL1:841374.1-EX-(IMM) 039113-00000

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.


TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581.

NPCOL1:841374.1-EX-(IMM) 039113-00000



STATE OF SOUTH CAROLINA )   IN THE COURT OF COMMON PLEAS
                         )
COUNTY OF RICHLAND       )
                         )   Case No.: 2010-CP-40-6025
RBC Bank (USA),          )
                         )
          Plaintiff,     )
                         )   Order Appointing Receiver
                         )
     v.                  )
                         )
KT Spears Creek, LLC, KT Builders, )
LTD., Kyle D. Tauch, and Hyco )
Plumbing, Inc., )
                         )
          Defendants.    )

This matter came before the Court on the Plaintiff's motion for the appointment of a receiver and a Verified Complaint, making application for the appointment of a Receiver for the Property as identified in the Complaint. Due and proper notice of this hearing was served on all parties to the action and upon the property manager as will appear by reference to the hearing notice served by Plaintiff's counsel on October 29, 2010 and filed on November 1, 2010. Appearing before the Court was counsel for the Plaintiff. The Defendants KT Spears Creek, LLC and KT Builders, LTD are in default and did not appear. The Defendant Kyle D. Tauch is being served by publication. The Defendant Hyco Plumbing did not appear, but advised Plaintiff's counsel, that it did not oppose the appointment of the receiver.

This Court has the authority to appoint a Receiver of the Property pursuant to Section 15-65-10 of Code of Laws of South Carolina (1976) et seq. Further, the Mortgage at issue in this case provides that Plaintiff is entitled to the appointment of a receiver upon default by the mortgagor (KT Spears Creek). The well pleaded

1



EXHIBIT

2

allegations of the Complaint and its attachments incorporated into the Complaint are deemed admitted by those Defendants in default. Further, the Court notes that Judge Allison R. Lee has issued a Temporary Injunction in this case. In her Order, Judge Lee specifically found that the Plaintiff would suffer immediate and irreparable injury in the case if the injunction was not issued. That injunction provides, *inter alia*:

the Enjoined Parties are ordered to collect and pay to RBC Bank (USA) all the income and profits from the Property in any such person's possession until further order of this Court. The Enjoined Parties are, however, permitted to pay the necessary operating expenses of the apartment complex such as utilities, maintenance, and routine repairs.

The Property identified in the Complaint is comprised of an apartment complex in Richland County, South Carolina, an assignment of leases, rents, and profits, and personal property of KT Spears Creek, LLC (herein "Property"). Plaintiff is entitled to protection of its Property during this proceeding.

IT IS THEREFORE ORDERED:

1.    Receivership.  The Property of KT Spears Creek, LLC ("Borrower") as identified in the Complaint is placed in receivership.

2.    Receiver.  Colliers International whose address is 1301 Gervais St., Suite 600, Columbia, South Carolina, Attention Mr. Woody Moore, is hereby appointed Receiver over the Property. All communication to the Receiver shall be directed to the Receiver at the above address. Confirmation of general insurance coverage as to the Receiver or a bond of Five Thousand and No/100 ($5,000.00) Dollars shall be filed with the court within seven business days of the date of this Order.

3.    Restrained.  Borrower (its agents, representatives and employees) are restrained from disposing of, transferring, conveying, or otherwise encumbering the

Property or books, files, records and accounts relating to the Property, and they and all other parties having Property in their possession or under their control are hereby directed to deliver the same to the said Receiver.

4.    Cooperation.  Borrower, its agents, representatives and employees, are ordered to cooperate with the Receiver and appear at the Property, and at the Receiver's office, at such times as may be required to sign such legal documents as may be necessary and to furnish such records as the Receiver may require.  Failure of Borrower to cooperate with the Receiver or otherwise comply with terms of this order shall make Borrower liable for contempt of court upon application by the Receiver or his attorneys. The parties are hereby ordered to cooperate with the Receiver at all times during the pendency of this receivership.

5.    Income.  Borrower, its respective agents and employees, and any other person receiving actual notice of the terms of this Order are hereby ordered and directed to immediately collect and pay to the below named Receiver all of the income and profits (both current and prepaid) from the Property in any such person's possession as of the date of this Order, regardless of when collected, pending adjudication of the parties' rights thereto and subject to such other orders of this Court as may be subsequently entered.  In addition, Borrower shall execute any and all documents necessary to substitute the Receiver for the current signatories on all of the bank accounts relating to the Property of Borrower.

6.    Inventory and Reports.  The Receiver shall prepare and deliver to all parties appearing of record within thirty (30) days from the date of this Order a full and detailed inventory, under oath, of all the Property which comes into its possession and

3

thereafter it shall prepare and deliver to all parties appearing of record each thirty (30) days thereafter a full and complete report reporting all activities and changes in the Receivership estate and all claims against the estate that have arisen or have occurred during the period covered by the report.

7.    <u>Possession of Property</u>.  The Receiver shall take and have exclusive control, possession and custody of all the Property, monies, contracts, insurance policies, assets, files, papers, keys, accounts receivable, records, documents, licenses, permits, monies, securities, choses in action, books of account, bank accounts and all other property, real, personal, or mixed, which relate to the Property, and shall retain custody of the same until further order of this Court.  All Defendants and other persons or corporations now or hereafter in possession of the Property, or any part thereof, or any other of the items entrusted to the Receiver as set forth herein, shall forthwith surrender such possession to the Receiver.

8.    <u>Operating Account</u>.  The Receiver shall establish and/or maintain, at a banking or savings and loan institution located in South Carolina whose deposits are insured by the FDIC or the FSLIC, a separate operating account ("the Operating Account") into which the Receiver shall deposit all receipts from the Property and from which the Receiver shall disburse regularly and punctually (to the extent available), all amounts due and payable as are reasonable, necessary and proper operating expenses of the Property, subject to the terms of this Order.

9.    <u>Costs</u>.  The Receiver is hereby authorized, empowered and directed to pay from the Operating Account all reasonable expenses necessary for the preservation of the Property, including, but not limited to, the costs of all labor, insurance, equipment,

4

supplies, inventory, water, sewer, trash and garbage disposal, electricity, security and telephone expenses which are necessary to the operation and preservation of the Property, together with any expenditure authorized by Plaintiff.

10.    Operation.  The Receiver is hereby authorized, empowered and directed to contract with such individuals and entities as may be necessary to preserve, protect, supervise, operate and manage the Property.  The Receiver shall use its best efforts to operate the Property profitably, and to maintain the building, appurtenances and grounds of the Property in accordance with customary standards for a business of its type, including, without limitation, interior and exterior cleaning, painting and decoration, plumbing, carpentry, maintenance of air conditioners and elevators, and such other normal maintenance and repair work as may be appropriate, subject to the requirements and limits set forth herein.

11.    Collection of Rents and Profits.  The Receiver is hereby authorized, empowered and directed to enforce and collect all debts, accounts receivable, rents or other obligations due and owing to or from the operation of the Property.  Subject to its obligations to pay the costs of the Property and operate the Property, and consistent with Judge Lee's Temporary Injunction, the Receiver shall pay to RBC Bank (USA) all the income and profits from the Property.

12.    Insurance.  The Receiver is hereby authorized, empowered and directed to maintain all policies of insurance or similar contracts affecting the Property in full force and effect, and if none exists, to insure the Property for its current fair market value against personal injury, property damage and liability claims.  The Receiver shall maintain or purchase appropriate property insurance for the Property, public liability

insurance, workmen's compensation insurance, fire and extended coverage insurance, and burglary and theft insurance. The Plaintiff shall be listed as an insured and a loss payee on all such insurance policies. The Receiver shall promptly investigate and provide Plaintiff a full, prompt written report as to all serious and material accidents, claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof, and shall prepare any and all reports required by any insurance company in connection therewith. All existing insurance coverage purchased by the Borrower or by any other person, which is now in force for the protection of the Property, is hereby assigned to the Receiver.

13. <u>Actions Against Receiver</u>. All persons, funds, corporations, associations and all other parties are hereby enjoined and restrained from commencing, maintaining, or otherwise prosecuting any action at law or in equity against the Receiver without prior leave of this Court.

14. <u>Default</u>. Entry of this Order shall not constitute a breach or default of any contract relating to the Property unless the Receiver expressly cancels such contract.

15. <u>Employment of Professionals</u>. The Receiver may employ attorneys, accountants, or other professionals if reasonably required to discharge its duties herein and shall, if necessary, apply to this Court for instructions and advice if in doubt concerning its rights and responsibilities as Receiver.

16. <u>Leasing</u>. The Receiver shall have the authority to lease, rent or otherwise seek compensation for space at the Property in the ordinary course of business, at such

6

rates and on such terms as are customary in the business, provided that Plaintiff approves each such rental or lease agreement.

17.    Other Tasks.    The Receiver is hereby authorized, empowered, and directed to perform all other tasks reasonably necessary for the proper administration, conservation, maintenance, security and protection of the Property.

18.    Fees. At the end of each month, the Receiver shall present to all parties who have appeared of record an invoice for services rendered to the Receivership and if no objections are received within ten (10) days, the Receiver shall pay such invoice from funds in the Operating Account. In the event any party of record objects to the payment of any invoice presented or any charge contained therein, the Receiver may seek an order approving and directing such payment. The compensation of the Receiver shall be at the discretion of the Court and shall be set by the Court upon further order.

19.    Legal Actions.    The Receiver is hereby authorized, empowered and directed to apply to this Court for instructions and authorization should it seem to be necessary or desirable to sue or defend any legal action or otherwise compromise or settle same.

20.    Use and Maintenance of Property.    The Receiver shall not permit the use of the Property for any purpose which will or might void any required policy of insurance, which might render any loss thereunder uncollectible, or which would be in violation of any law or government restriction.

21.    Records.    The Receiver shall maintain a comprehensive system of office records, books, and accounts concerning the operation of the Property.    At all

7

reasonable times, Plaintiff, Defendants, and their respective agents and other representatives shall have reasonable access to such records, accounts and books and to all vouchers, files, and all other material pertaining to the operation of the Property, all of which the Receiver agrees to keep safe, available and separate from any records not having to do with the operation of the Property.

22.     Legal Requirements.  The Receiver shall ensure that all aspects of the Property, and its operation and management, comply with any and all laws, regulations, orders or requirements affecting the Property issued by any federal, state, county or municipal authority having jurisdiction thereover.

23.     Employment of Agents.  The Receiver is hereby authorized to employ agents, servants and employees and to contract as necessary for the purpose of renting, operating, managing, preserving, protecting, and taking possession of the Property, and carrying out the terms of this Order.  The Receiver shall collect the rents, revenues, and profits from the Property, including those now due and unpaid, and hereafter to become due.

24.     Licenses.  All existing licenses relating to the operation of the Property issued in the name of the Borrower are hereby assigned to the Receiver.

25.     Termination of Receivership.  Plaintiff, or the successful bidder at any foreclosure sale of the Property, may apply to the Court upon the issuance of an Order of Sale, for entry of an order terminating the Receivership, discharging the Receiver, and putting the successful bidder at sale into possession of the Property, effective upon issuance of a deed to the Property.

26.    Retention of Jurisdiction.  The Court retains jurisdiction of this matter to
enter such further orders as may be just and proper.

27.    Sheriff's Assistance.  The Receiver is authorized and empowered to
obtain the assistance of the Sheriff's Department of the counties of this State in
performing those duties and responsibilities enumerated herein.

AND IT IS SO ORDERED.

Joseph M. Strickland
Special Circuit Court Judge

Columbia, South Carolina

November 12, 2010.

9



STATE OF SOUTH CAROLINA        )
                               )   IN THE COURT OF COMMON PLEAS
COUNTY OF RICHLAND             )
                               )
RBC Bank (USA),                )      Case No.:  2010-CP-40-6025
                               )
          Plaintiff,           )
                               )
      v.                       )
                               )      **Temporary Restraining**
KT Spears Creek, LLC, KT Builders,  )      **Order**
LTD., Kyle D. Tauch, and Hyco  )
Plumbing, Inc.,                )
                               )
          Defendants.          )
                               )

This matter is before the Court on Plaintiff's motion for a temporary restraining order.  The Plaintiff has made the requisite showing under Rule 65(b) for such an *ex parte* order. Based on the Verified Complaint and the affidavit submitted by Plaintiff, it appears from specific facts alleged that Plaintiff will suffer immediate and irreparable injury, loss or damage before notice can be served and a hearing had.

The irreparable injury that Plaintiff will sustain is the probable diversion of its rents and profits to a third party which is a foreign business (Texas) according to the records of the South Carolina Secretary of State.  Once transferred, the rents and profits may not be traceable or collectible.  Thus, a money judgment may very well be nothing more than an empty purse.  Plaintiff has made a showing that it has been assigned the rents and profits of the apartment complex, that it has a perfected interest in the rents and profits, and is entitled to have them turned over to it.  Because of the showing and the *prima facie* showing of Plaintiff's likelihood of success on the merits, the Court will only require a nominal bond or cash deposit with the Clerk of Court in the





**EXHIBIT**

tabbies®

3

*ail*

amount of $5,000.00. The Court believes this bond serves the purpose of Rule 65(c) for the payment of cost and damages as may be incurred by the restrained parties. The court is mindful of the strong likelihood of the validity of Plaintiff's loan documents, many of which have been filed with public agencies to protect and perfect Plaintiff's interests, in setting this bond. Therefore, *Bond shall be posted with the Clerk of Court not later than 5:00 September 10, 2010.*

IT IS ORDERED that all Defendants in this matter and all parties in active concert with them, including any managers of the Property[1] and all agents, representatives and employees of all of the foregoing ("the Enjoined Parties"), be restrained and enjoined from disposing of, transferring, conveying, or otherwise encumbering the Property.

IT IS FURTHER ORDERED that all of the Enjoined Parties are ordered to collect and pay to RBC Bank (USA) all the income and profits from the Property in any such person's possession as of the date of the temporary restraining order and continuing until further order of this Court.

IT IS FURTHER ORDERED that the Defendants appear before *the Court at the Richland County Courthouse Courtroom 3B at 9:30am* on the *20th* day of September 2010 to show cause why the Court should not enter a Temporary Injunction in this matter. *This order remains in effect until September 20, 2010.* Endorsed this *8th* day of September 2010 at *10:00* o'clock *a.* m.

_____
Circuit Court Judge, Fifth Judicial Circuit

Columbia, South Carolina

CERTIFIED TRUE COPY
OF ORIGINAL FILED

RICHLAND COUNTY
SOUTH CAROLINA

*ail #2*

---

[1] As used herein, the term Property includes all real property subject to RBC's mortgage, any personal property subject to the mortgage and liens of RBC, and specifically includes the Rents and Profits as they are defined in the attachment to this Order.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| **KT SPEARS CREEK, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

### RBC BANK (USA)'S OBJECTION TO DEBTOR'S EMERGENCY MOTION
### FOR INTERIM AND FINAL ORDERS APPROVING USE OF CASH COLLATERAL
### [This instrument relates to Docket No. 27]

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES RBC Bank (USA) ("**RBC Bank**"), creditor herein, by and through its undersigned counsel, and objects to the Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral (Docket No. 27) (the "**Cash Collateral Motion**") filed by KT Spears Creek, LLC (the "**Debtor**") and, in support thereof, shows the Court as follows:

### OVERVIEW OF OBJECTION

1.      RBC Bank objects to the Cash Collateral Motion, in which the Debtor requests to use the rents from its real property as cash collateral, because the rents are no longer property of the Debtor's estate under 11 U.S.C. § 541 given that: (1) the rents were absolutely assigned to RBC Bank in the Assignment of Rents; and (2) any residual right the Debtor may have held in the rents after the execution of the Assignment of Rents was stripped from the Debtor in the order appointing the state court receiver.

### RULE 8 RESPONSES

2.      RBC Bank denies that venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. RBC Bank admits all other statements in paragraph one.

3.      RBC Bank admits the statements in paragraph two.

4.      RBC Bank denies the statements in paragraph three.

5.      RBC Bank admits the statements in paragraphs four through nine.

6.      RBC Bank lacks sufficient information or knowledge to admit or deny the statements in paragraphs 10-13.

7.      RBC Bank admits the statements in paragraphs 14-17.

8.      RBC Bank submits that paragraph 18 is simply a statement of the grounds for the relief requested in the Cash Collateral Motion, to which no response is required.

9.      RBC Bank submits that paragraph 19 is simply a recitation of the law, to which no response is required.

10.     RBC Bank admits the statements in paragraphs 20-23, but denies that the Debtor is entitled to use Cash Collateral (as defined in the Cash Collateral Motion) pursuant to 11 U.S.C. § 363(c) because the Cash Collateral is not property of the Debtor's estate.

11.     RBC Bank submits that paragraph 24 is simply a recitation of statutory and case law, to which no response is required.

12.     RBC Bank denies the statements in the first sentence of paragraph 25.  RBC Bank admits all other statements in paragraph 25.

13.     RBC Bank denies the statements in the third, fourth, and sixth sentences of paragraph 26.  RBC Bank admits all other statements in paragraph 26.

14.     RBC Bank denies the statements in paragraph 27.

15.     RBC Bank submits that paragraph 28 was improperly numbered as paragraph 18. With this caveat, RBC Bank lacks adequate information or knowledge to admit or deny the statements in paragraph 28.

16.    RBC Bank submits that paragraph 29 was improperly numbered as paragraph 28. With this caveat, RBC Bank submits that the first sentence of paragraph 28 is simply a recitation of law, to which no response is required.  RBC Bank denies the statements in the second sentence of paragraph 28.

17.    RBC Bank submits that paragraph 30 was improperly numbered as paragraph 29. With this caveat, RBC Bank submits that the first sentence of paragraph 30 is simply a statement of the relief requested in the Cash Collateral Motion, to which no response is required.  RBC Bank denies the statements in the second sentence of paragraph 30.

18.    RBC Bank submits that paragraph 31 was improperly numbered as paragraph 19. With this caveat, RBC Bank submits that the first and fifth sentences of paragraph 31 are simply statements of the relief requested in the Cash Collateral Motion, to which no response is required.  RBC denies the statements in the second, third, and fourth sentences of paragraph 31.

## FACTUAL BACKGROUND

19.    On May 4, 2011 (the "**Petition Date**"), which was the day before RBC Bank's judicial foreclosure sale of the Real Property (as hereinafter defined), the Debtor filed its voluntary petition ("**Voluntary Petition**") for relief under Title 11 of the United States Code. The Debtor *is not* in possession of its property and management of its business, as a receiver has been appointed.  No Trustee has been appointed in this case.

20.    On or about May 25, 2006, the Debtor executed and delivered to RBC Bank a written Promissory Note in the original principal amount of $19,700,000.00, as amended or modified by that certain Modification, Cross-Collateralization and Cross-Default Agreement dated May 25, 2006, and that certain Change In Terms Agreement dated May 23, 2008 (as may

be amended from time to time, including all renewals and modifications, collectively the "**Note**").

21.    To secure the indebtedness owed to RBC Bank under the Note, the Debtor executed and delivered to RBC Bank a written Mortgage, Assignment of Rents and Security Agreement dated May 25, 2006, and recorded with the Register of Deeds of Richland County, South Carolina on June 2, 2006 in Book 1190, Page 1008 (the "**Mortgage**") encumbering certain real property located in Richland County, South Carolina (the "**Real Property**") described therein.

22.    The Debtor also assigned all of its interest in and to all leases, rents and profits affecting the use, enjoyment or occupancy of all or any part of the Real Property (collectively, the "**Rents**"), all as more particularly set forth in the Assignment of Leases, Rents and Profits dated May 25, 2006, and recorded on June 16, 2006 in Book 1195, Page 2187 of the Richland County Registry (the "**Assignment of Leases**").  The Note, the Mortgage, the Assignment of Leases, as well as all other agreements and documents associated with the Note are collectively referred to herein as the "**Loan Documents**."  A true and correct copy of the Assignment of Leases is attached hereto as **Exhibit 1**.

23.    The Debtor defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full at maturity.

24.    The Debtor's real and personal property, including the income generated therefrom, was and continues to be in the hands of a state-appointed receiver in Columbia, South Carolina, pursuant to the Order Appointing Receiver entered by the Special Circuit Court Judge in Richland County, South Carolina dated November 12, 2010.  A true and correct copy of the Order Appointing Receiver is attached as **Exhibit 2.**

25.    The Mortgage is duly perfected and, upon information and belief, the Debtor has only one pre-petition unsecured creditor because the property had been in the hands of a state court receiver for almost six months prior to the bankruptcy filing and all ongoing bills and expenses had been paid by the Receiver.  Additionally, RBC Bank advanced over $800,000 of past due property taxes.  Therefore, this is a single asset real estate case. *See RBC Bank's Motion to Designate Case as a Single Asset Real Estate Case* (Docket No. 26).

## OBJECTION

26.    The Rents are not property of Debtor's estate pursuant to 11 U.S.C. § 541 and therefore are inappropriate for use as cash collateral.  "A precondition of a debtor in bankruptcy being permitted to use cash collateral pursuant to 11 U.S.C. § 363 is that the estate have an interest in the case such that it meet the definition of cash collateral." *In re Four Bucks, LLC*, 2009 Bankr. LEXIS 1720 (Bankr. N.D. Tex. June 29, 2009) (quotes omitted).  "Property interests are created and defined by state law." *Laughlin v. Nouveau Body & Tan, L.L.C.* (*In re Laughlin*), 602 F.3d 417, 422 (5th Cir. 2010) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)).

27.    South Carolina statutes provide:

> The recording of a written document containing an assignment of leases, rents, issues, or profits arising from real property is valid and enforceable from the time of recording to pass the interest granted, pledged assigned, or transferred as against the assignor, and is perfected from the time of recording against subsequent assignees, lien creditors, and purchasers for a valuable consideration from the assignor.

S.C. Code Ann. § 29-3-100.

28.    The Assignment of Leases specifically provides: (i) that the assignment is absolute, *Assignment of Leases*, § 1; (ii) that the Debtor transferred "all of [the Debtor's] presently existing right, title and interest in all of [the Debtor's] right, title and interest which

may arise in the future in and to the rents, issues, profits, revenues, royalties, rights and benefits"

arising from the Real Property, *Assignment of Leases*, ¶ 2; and, (iii) that Debtor only had a

revocable license to use the Rents until an event of default occurred, *Assignment of Leases*, § 1.2.

Accordingly, the Debtor has no property interest in the Rents pursuant to South Carolina law

because it had transferred all of its right, title and interest in the Rents to RBC Bank pre-petition.

*See also Felder v. Am. Gen. Fin., Inc.* (*In re Felder*), 2000 Bankr. LEXIS 1257 (Bankr. D.S.C.

July 7, 2000) (holding that the property subject to an unequivocal pre-petition assignment was

not property of the bankruptcy estate); *In re Four Bucks, LLC*, 2009 Bankr. LEXIS 1720, at *8-9

(holding that "[b]ecause the rents have been absolutely assigned to the Lender prior to the

Petition Date, Debtor did not have an interest in the rents as of the Petition Date" and were

therefore not available as cash collateral).

29.     Furthermore, the Order Appointing Receiver divested the Debtor of the Rents and

specifically granted possession of the Rents to the receiver. *See Order Appointing Receiver*, ¶ 7.

The Receiver's possession is to continue until the successful completion of foreclosure, at which

time possession will pass to the bidder. *See Order Appointing Receiver*, ¶ 25.

30.     Because the Debtor has been divested of any interest in the Rents pursuant to

South Carolina statute, South Carolina case law, and the Order Appointing Receiver, the Rents

are not part of the Debtor's estate and the Debtor is not entitled to make use of the same pursuant

to section 363(c) of the Bankruptcy Code.  As such, the Debtor's Cash Collateral Motion should

be denied.

## **PRAYER**

WHEREFORE, RBC Bank requests that this Court deny the Debtor's Cash Collateral

Motion, and that the Rents from the Real Property, in excess of operating expenses, be turned

over to RBC Bank.  RBC Bank also requests such other and further relief to which it may be justly entitled, both at law and in equity.

**DATED: June 9, 2011**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____*/s/ Joseph G. Epstein*_____
         Joseph G. Epstein
         State Bar No. 06639320
         S.D. Tex. No. 11733
         Sean B. Davis
         State Bar No. 24069583
         S.D. Tex. No. 1048341

         *AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____*/s/ Constance L. Young*_____
         Constance L. Young,
         N.C. State Bar No. 16115
         Admitted *Pro Hac Vice*
         1065 East Morehead Street
         Charlotte, NC  28204
         Telephone: 704.332-1181
         Facsimile:  704.376-1628
         Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

# Certificate of Service

I hereby certify that on June 9, 2011, the foregoing instrument was served via first class U.S. Mail to the parties listed below.  Additionally, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District.

_/s/ Joseph G. Epstein_
One of Counsel

**Debtor's Counsel:**
Magdalene Duchamp Conner
Matthew Scott Okin
OKIN ADAMS & KILMER LLP
1113 Vine Street, Suite 201
Houston, TX 77002

**U.S. Trustee:**
Ellen Maresh Hickman
OFFICE OF THE U.S. TRUSTEE
515 Rusk St., Suite 3516
Houston, Texas 77002
Facsimile: (713) 718- 4570

Book 1185-2187
2006053552  08/16/2006 11:20:00 597
Fee:$17.00   County Tax:$0.00

Asgmt Lease Rent Profit
State Tax:$0.00

2006053652  John G. Norris              Richland County ROD

_____ Space Above Line for Processing Data _____

State of South Carolina                                    County of Richland

# RBC Centura                          ASSIGNMENT OF LEASES, RENTS AND
                                                PROFITS

THIS ASSIGNMENT OF LEASES, RENTS AND PROFITS ("Assignment", which includes all amendments, modifications, renewals, extensions, replacements and substitutions thereof and therefor), entered into as of the 25th day of May, 2006, by KT SPEARS CREEK, LLC (whether one or more, "Assignor"), with a mailing address of 5410 Piping Rock, Houston, Texas 77056, to RBC CENTURA BANK ("Assignee"), with a business address of 134 N. Church Street, Rocky Mount, North Carolina 27804 and a mailing address of Post Office Box 1220, Rocky Mount, North Carolina 27802-1220, which mailing address is the place to which all notices and communications should be sent to Bank regarding this Assignment.

<u>WITNESSETH:</u>

FOR VALUE RECEIVED, and as additional security for the obligations hereinafter mentioned, the Assignor hereby sells, transfers and assigns unto the Assignee, its successors and assigns, all of Assignor's presently existing right, title and interest and all of Assignor's right, title and interest which may arise in the future in and to the rents, issues, profits, revenues, royalties, rights and benefits (collectively, the "Rents and Profits") arising from or related to (1) the parcels of land described on Exhibit A, (2) the rights and benefits appurtenant to said parcels of land including all sales contracts for sale of the improvements to be constructed thereon, and (3) the buildings and other improvements (to include manufactured homes) now located thereon and thereunder and those which may be located thereon and thereunder in the future (collectively, the "Property"), together with all equipment, fixtures, standing timber (to include timber to be cut, but this inclusion does not permit cutting of timber unless Assignee agrees to such cutting in advance thereof), crops grown, growing and to be grown on the Property (to include crops that are produced on trees, vines and bushes and aquatic goods) and other farm products (to include livestock – born and unborn, supplies and products of crops and livestock), oil, gas and other minerals and as-extracted collateral (but inclusion of as-extracted collateral does not permit extraction unless Assignee agrees to such extraction in advance thereof), both that now owned by Assignor and on behalf of and for the benefit of Assignor and located in, on and under the Property and otherwise used in connection therewith, and that hereafter acquired and located as aforesaid and used in connection with the ownership, possession, operation and maintenance of the Property (collectively, the "Collateral").

AND, in furtherance of the foregoing assignment, but not in limitation thereof, Assignor does hereby sell, transfer and assign to Assignee, its successors and assigns, all of Assignor's presently existing right, title and interest and all Assignor's right, title and interest which may arise in the future in and to (1) the leases and rental agreements, if any, listed on Exhibit A and all other leases and rental agreements with respect to the Property and with respect to the

**EXHIBIT**

tabbies®

1

Collateral now existing or hereafter made, executed and delivered (whether written, electronic or verbal), together with all present and future extensions, renewals, modifications and amendments thereof, and substitutions and replacements therefor (collectively, the "Leases"), (2) all Rents and Profits due and all Rents and Profits which become due under the Leases and (3) all security deposits now held or hereafter acquired and held in connection with any of the foregoing.

THIS ASSIGNMENT is subject to the following terms and conditions:

Section 1: <u>Absolute Assignment Given as Security</u>. This Assignment is absolute and is given as additional security for the payment and performance of the obligations described in and secured by that certain Mortgage ("Mortgage") identified on Exhibit A. The amounts collected hereunder shall be applied first to the costs and expenses incurred by Assignee and those incurred on behalf of Assignee under this Assignment in collecting and receiving Rents and Profits, or as otherwise provided herein, and then in reduction of the obligations from time to time outstanding and secured by the Mortgage, in the order provided in the Mortgage. The term of this Assignment shall be until the obligations secured by the Mortgage shall have been fully paid and satisfied and the cancellation of the Mortgage shall constitute a release hereof.

1.1. <u>Management and Collection of Rents and Profits</u>. Until release of this Assignment by Assignee as provided in **Section 1** above, but subject to the revocable license granted by Assignee to Assignor as provided in Section 1.2 below, the sole right and authority to collect the Rents and Profits shall be with and shall lie with Assignee and such right, authority and power may be exercised by Assignee and may be exercised by either or both Assignee's designee or a receiver or other official appointed as provided in **Section 2.4** below, from time to time and in such manner as Assignee deems necessary or appropriate, in its sole discretion; and, in connection with such right of collection, Assignor hereby directs each and all of the lessees and tenants of the Property and lessees and tenants of the Collateral and any other person obligated to pay Rents and Profits on account of the Property and on account of the Collateral to pay said Rents and Profits (as may now be due and as shall hereafter become due) to the Assignee, its designee or a receiver or other official appointed for such purpose, upon demand for payment thereof by the Assignee or such other person or persons from time to time and at anytime. Without limiting the foregoing, but in furtherance thereof, Assignee shall have the additional rights and powers set forth in Sections **1.1.1** through **1.1.3.** below.

1.1.1. Assignee, at any time and from time to time, may give notice in writing of this Assignment to any and all of the lessees and tenants under the Leases and to any other persons in possession of the Property and in possession of the Collateral, and any parts of either and interests in either; and, Assignee, for the purpose of fully enforcing its rights and powers under this Assignment, may otherwise communicate with such lessees, tenants and other persons regarding this Assignment and Assignee's rights, authority and powers hereunder.

1.1.2. Assignee, at its option and at any time or times, shall have the right to enter and take possession of the Property and possession of the Collateral and to manage and operate the same, to let or re-let the Property, the Collateral and any part of either and interests in either, to cancel and modify the Leases, to grant rent concessions and other inducements, to evict lessees, tenants and other persons, to bring and defend any suits in connection with possession of the Property and possession of the Collateral in its own name or the Assignor's name, to make repairs as the Assignee deems appropriate, and to perform such other acts in connection with the management and operation of the Property as the Assignee, in its discretion, may deem proper, all at the cost and expense of Assignor.

1.1.3. Assignee shall have the right to hold and possess, and the Assignor shall turn over to the Assignee immediately upon demand of Assignee, the security deposits held by the Assignor, and those held by its employees and agents, under and pursuant to the Leases. Assignee shall hold and apply the security deposits received in connection with the Leases to the purposes specified in the Leases, in accordance with the terms and conditions thereof. Except to the extent required by law or otherwise required in the Leases, Assignee shall not be obligated for the payment of interest on security deposits delivered to it.

1.2. Revocable License Given to Assignor.

1.2.1. Until the occurrence of an Event of Default, as defined in the Mortgage, or the breach of or default under this Assignment by Assignor, Assignor shall have a license and Assignee hereby grants to Assignor a revocable license to continue collecting the Rents and Profits in the normal and ordinary course of Assignor's business; provide, however, (1) Assignor shall not collect any rental installments under any Leases more than two months in advance of its scheduled payment date without the prior written consent of the Assignee – and if Assignor does so do in contravention hereof, Assignor shall promptly remit such advanced rental installments to Assignee for application by Assignee against the obligations secured hereby, such installments to be applied as provided in Section 1 of this Assignment, (2) Assignor shall pay to Assignee, upon receipt by Assignor and in the same form as received (with any necessary endorsements), (A) any award made hereafter in any court procedure involving any of the Leases in any bankruptcy, insolvency or reorganization proceedings in any state court and in any federal court and (B) any payments made and consideration given by tenants and lessees in lieu of rental payments under any of the Leases, or in settlement of or on account of a claim or dispute under or with respect to any Leases, and (3) Assignor shall promptly comply with such other directives as Assignee may from time to time give to Assignor regarding collection of the Rents and Profits.

1.2.2. If Assignor should breach this Assignment or default hereunder, or if an Event of Default occurs under the Mortgage, Assignee may, at its option, terminate the privilege and license granted to Assignor by Assignee in Section 1.2.1 above and upon a determination by Assignee to terminate, the privilege and license granted to Assignor shall automatically terminate without any notice from Assignee to Assignor and without any further or additional acts on the part of Assignee, unless notice is required under the Mortgage or under applicable law, and then only such minimum notice as may be required. Upon such termination, Assignor shall cease all collection activities and shall pay over to Assignee all Rents and Profits received by it on and after such termination. All amounts which are received by Assignor from and after the termination of Assignor's license shall be received in trust for the benefit of Assignee, shall be segregated from other funds of Assignor and shall be immediately paid over to Assignee in the same form as received (with any necessary endorsements).

Section 2. Additional Provisions Relating to Collection of Rents and Profits.

2.1. Limitation on Accountability of Assignee. The Assignee shall not be liable for laches and shall not be liable for the inability to collect the Rents and Profits. The Assignee is obligated to account only for such sums as are actually collected and shall not be obligated to perform and shall not be obligated to discharge any obligation to be performed or discharged by the Assignor under any of the Leases unless it has undertaken the cure of any default. The Assignor hereby agrees to indemnify the Assignee for, and to save it harmless from, any and all liability arising from the Leases and any and all liability arising from this Assignment. This Assignment shall not place responsibility for the control, care, management and repair of the Property and Collateral upon the Assignee, and shall not make the Assignee responsible or liable for any negligence in the management, operation, upkeep, repair and control of the Property and the Collateral resulting in loss or injury or death to any lessee, tenant, licensee, employee or stranger unless Assignee has taken possession of the Property.

2.2. Consequences of Receipt of Rents and Profits. The receipt by the Assignee of any Rents and Profits pursuant to this Assignment after acceleration of the obligations secured hereby shall not cure any default nor shall the receipt thereof at any subsequent time cure any default, affect Assignee's right to institute foreclosure proceedings under the Mortgage or affect any sale pursuant thereto. Neither the existence of this Assignment nor the exercise of Assignee's privilege to collect the Rents and Profits, shall be construed as a waiver by the Assignee of the right to enforce payment of the obligations hereby secured in strict accordance with the terms and provisions of the Mortgage and any agreement evidencing any of the obligations secured by the Mortgage.

2.3. Waiver of Rights by Assignor. If there is any case law, statute or regulation requiring Assignee to take actual possession of the Property and to take actual possession of the Collateral (or some action equivalent thereto, such as securing the appointment of a receiver) in order for Assignee to perfect or activate its rights and remedies as set forth herein, then Assignor waives the benefits of such law and agrees that such requirement of law may be satisfied solely by (1) Assignee sending Assignor written notice that Assignee intends to enforce, and is enforcing, its

rights in and to the Property, the Collateral and the Rents and Profits assigned herein and (2) Assignee sending written notice to any one or more of the lessees and tenants of the Property and lessees and tenants of the Collateral, and any other person in possession of all or part of either or both, to commence making payments directly to Assignee or its designee as provided herein.

2.4. Appointment of Receiver. Assignee shall have the absolute and unconditional right to apply for and to obtain the appointment of a receiver or similar official for any part of and for all of the Property and for any part of and for all of the Collateral, to, among other things, manage and operate the Property and to manage and operate the Collateral, and any part of and interest in either or both, and to collect and apply the Rents and Profits as provided above. In the event of such application, Assignor consents to the appointment of such receiver or similar official and agrees that such receiver or similar official may be appointed without notice to Assignor, without regard to the adequacy of any security for the obligations secured hereby and without regard to the solvency of Assignor and without regard to the solvency of any other person, firm or corporation who or which may be liable for the payment of the obligations secured hereby. All costs and expenses related to the appointment of a receiver or other similar official hereunder shall be the responsibility of Assignor, but if paid by Assignee, Assignor hereby agrees to pay to Assignee, immediately and without demand, all such expenses, together with interest thereon from the date of each payment by Assignee at the contract rate at which interest accrues from time to time on the obligations hereby secured, or if interest accrues at different contract rates, any one of the contract rates at which interest accrues as selected by Assignee, in its sole discretion, which rate may be fixed or variable (the "Contract Rate"). All sums so paid by Assignee, and the interest thereon, shall be added to and be secured by this Assignment.

2.5. Power of Attorney. Assignor does hereby irrevocably constitute and appoint Assignee its true and lawful attorney with full power of substitution, for it and in its name, place and stead, to execute, deliver, send and file such agreements, documents, notices, statements and records as Assignee, in its sole discretion, deems necessary and advisable to effect the terms and conditions of this Assignment and to otherwise realize Assignee's rights, authority and powers hereunder, and the benefits provided to Assignee herein, and in connection therewith, Assignee may appear in any action and collect any award or payments relating to the Property and Collateral (including, without limitation, the Leases and the Rents and Profits). The foregoing appointment is and the same shall be coupled with an interest in favor of Assignee. In furtherance of the foregoing appointment and grant of authority, but not in limitation thereof, Assignor irrevocably authorizes Assignee to file such financing statements as may be necessary to protect, in Assignee's opinion, Assignee's liens and security interests in the Property and Collateral (including, without limitation, the Leases and the Rents and Profits) and, to the extent Assignee deems necessary or appropriate, to sign Assignor's name with the same force and effect as if signed by Assignor and to make public in financing statements and other public filings such information regarding Assignor as Assignee deems necessary or appropriate, including, without limitation, federal tax identification numbers, social security numbers and other identifying information.

Section 3. Representations, Warranties and Covenants Regarding Leases.

3.1. Representations and Warranties. Assignor represents and warrants to Assignee that (1) it has full right, title and authority to assign to Assignee the Leases and the Rents and Profits due or to become due thereunder or with respect to the Property and the Collateral, (2) the terms of the Leases have not been amended, modified, replaced or changed from the terms in the copies of the Leases submitted to the Assignee for approval, which copies are true and exact copies of the Leases currently outstanding with respect to the Property and the Collateral, (3) no other assignment of any interest in the Leases has been made by Assignor or any other person to anyone other than Assignee, (4) there are no existing defaults under any of the Leases by any party thereto, and (5) there has been no anticipation or prepayment of any rental installments by any lessees or tenants occupying or possessing the Property and the Collateral or by any of the lessees or tenants in any of the Leases.

3.2. Covenants Regarding Leases.

3.2.1. The Assignor shall fully perform its obligations under the Leases in a timely manner and shall take such actions as may be reasonably necessary to ensure that all lessees and tenants under any of the Leases fully and timely perform their respective obligations thereunder, all at Assignor's sole cost and expense. The Assignor

shall provide to Assignee such information with respect to the Leases and the Rents and Profits therefrom or otherwise arising from or in connection with the Property and Collateral as Assignee may from time to time request; such information to be delivered to Assignee promptly by Assignor and in a form and medium directed by Assignee.

    3.2.2.  The Assignor shall not hereafter, without the prior written consent of the Assignee: (1) cancel any of the Leases, surrender any of the Lease and terminate any of the Leases, (2) exercise any option which might lead to a cancellation, surrender or termination of any of the Leases, (3) change, amend, alter and modify any of the Leases, (4) consent to the release of any party liable under any of the Leases, and (5) consent to the assignment and subletting of the lessee's or tenant's interest in them.

    3.2.3.  The Assignor shall maintain the security deposits made or to be made with respect to Leases of the Property and the Collateral in a separate bank account maintained by the Assignor with the Assignee, if so requested by Assignee, and designated as the account for the deposit of security deposits with respect to the Property and Collateral. The Assignor shall provide to the Assignee within thirty (30) days of the end of each of the Assignor's fiscal years, or more frequently if so requested by Assignee, a written verification of the amount of security deposits maintained in the account together with a list of the Leases with respect to which the deposits are maintained.

Section 4.  Miscellaneous.

    4.1.  Incorporation of Exhibits.  All exhibits, schedules, addenda and other attachments to this Assignment are by this reference incorporated herein and made a part hereof as if fully set forth in the body of this Assignment.

    4.2.  Maintenance of Records by Assignee.  Assignee is authorized to maintain, store and otherwise retain evidences of the obligations, this Assignment, any separate security agreements and other agreements executed and delivered and to be executed and delivered by Assignor and others on Assignor's behalf to Assignee in their original, inscribed tangible form or a record thereof in an electronic medium or other non-tangible medium which permits such record to be retrieved in a perceivable form.

    4.3.  Credit Investigations; Sharing of Information; Control Agreements.  Assignee is irrevocably authorized by Assignor to make and have made such credit investigations as it deems appropriate to evaluate Assignor's credit, personal and financial standing, and employment.  Assignor authorizes Assignee to share with consumer reporting agencies and creditors its experiences with Assignor and other information in Assignee's possession relative to Assignor, the Property and the Collateral (including, without limitation, the Leases and the Rents and Profits); but Assignee shall not have (1) any obligation to provide information to third persons relative to any of the foregoing or otherwise, (2) any obligation to subordinate its liens and security interests in the Property and Collateral (including, without limitation, the Leases and the Rents and Profits) and (3) any obligation to enter into control agreements and other agreements relative thereto.

    4.4.  Marshalling of Assets.  Assignor hereby waives, to the extent permitted by law, the benefit of all homestead, appraisement, valuation, stay, extension, reinstatement and redemption laws now in force and any which may in the future come to be in force and all rights of marshalling in the event of any collection hereunder of Rents and Profits or otherwise against the Property, the Collateral or any part or any interest in either or both.

    4.5.  Waiver of Statutory Rights.  Assignor waives any right to require Assignee to bring any action against any other person or to require that resort be had to any security or to any balances of any deposit or other accounts or debts or credits on the books of Assignee in favor of any other person. Assignor also waives any and all right of subrogation, contribution, reimbursement and indemnity and any right of recourse to and with respect to the assets of any other person that is or may be security for the obligations secured hereby.

    4.6.  Jury, Venue, Jurisdiction.  This Assignment shall be deemed to have been executed and delivered in South Carolina regardless of where the signatories may be located at the time of execution and shall be governed by and construed in accordance with the substantive laws of the State of South Carolina, excluding, however, the

conflict of law and choice of law provisions thereof. Assignor, to the extent permitted by law, waives any right to a trial by jury in any action arising from or related to this Assignment.

4.7. No Waiver; No Course of Dealing; No Invalidity. No delay or forbearance by Assignee in exercising any and all of its rights and remedies hereunder, and its rights and remedies otherwise afforded by law and in equity, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder or in the event of any subsequent default hereunder. Also, no act or inaction of Assignee under this Assignment shall be deemed to constitute or establish a "course of performance or dealing" that would require Assignee to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Assignment shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Assignment.

4.8. No Oral Change. Subject to the exercise by Assignee of its rights and remedies as set forth in this Assignment and without limiting any of such rights and remedies, this Assignment, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing, signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

4.9. Payment of Expenses. Without limiting any other provision of this Assignment relating to Assignor's payment of costs and expenses incurred by and on behalf of Assignee, but in addition thereto, Assignor shall pay to Assignee on demand any and all reasonable costs and expenses, including, without limitation, attorneys' fees, incurred by Assignee and those incurred on behalf of Assignee in protecting its interest in the Property and its interest in the Collateral and in collecting any amount payable hereunder and in enforcing its rights hereunder with respect to the Property and with respect to the Collateral (including, without limitation, commencing any collection action, and prosecuting and defending any legal and equitable proceeding), together with interest thereon at the Contract Rate from the date paid or incurred by or on behalf of Assignee until such costs and expenses are paid by Assignor. All sums so paid and expended by Assignee, and the interest thereon, shall be added to and be secured by this Assignment.

4.10. Documentary Stamp Taxes. To the extent not prohibited by applicable law and notwithstanding who is liable for payment of the taxes or fees, Assignor shall pay upon demand any stamp tax, documentary tax, intangible tax and other taxes, levies and charges of any jurisdiction with respect to the execution, delivery, registration, performance and enforcement of this Assignment.

4.11. Relationship of Parties; Successors and Assigns. The relationship of Assignee to Assignor is that of a creditor to an obligor or debtor; and in furtherance thereof and in explanation thereof, Assignee has no fiduciary, trust, guardian, representative, partnership, joint venturer or other similar relationship to and with Assignor and no such relationship shall be drawn or implied from this Assignment and any of Assignor's actions or inactions hereunder or with respect hereto -- and, Assignee has no obligation to Assignor and any other person relative to administration of the obligations secured by this Assignment, the Property, the Collateral and any part or parts of any of the foregoing. The covenants, terms and conditions herein contained shall bind, and the benefits and powers shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto, but nothing herein contained shall be deemed a consent to the sale, lease, demise, further encumbrance, transfer and other disposition by Assignor, either directly or indirectly, of all or any part of the Property, the Collateral and any interest, right and estate in either or both (including, without limitation, the Leases and the Rents and Profits), without Assignee's prior written consent, which may be withheld in Assignee's sole discretion. If two or more persons or entities have joined as Assignor, each of the persons and entities shall be jointly and severally obligated to perform the obligations herein contained. The term "Assignee" shall include any payee of the obligations hereby secured and any transferee and assignee thereof, whether by operation of law or otherwise, and Assignee may transfer, assign and negotiate all and any of the obligations secured by this Assignment from time to time without the consent of Assignor and without notice to Assignor and any transferee and assignee of Assignee, and any transferee and assignee of another may do the same without Assignor's consent and without notice to Assignor. Assignor waives and will not

assert against any transferee and waives and will not assert against any assignee of Assignee any claims, defenses, set-offs and rights of recoupment which Assignor could assert against Assignee, except defenses which Assignee cannot waive.

4.12. <u>Notices.</u>  All notices, certificates and other communications hereunder shall be deemed given when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed to the addresses set forth above.  Assignor and the Assignee may, by written notice given hereunder, designate a different address where communications should be sent and Assignee may direct, by notice to Assignor, for communications to be sent electronically or in some other non-tangible medium.

4.13. <u>Anti-Money Laundering and Anti-Terrorism.</u>  Assignor represents, warrants and covenants to Assignee as follows: (1) Assignor (a) is not and shall not become a person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) does not engage in and shall not engage in any dealings or transactions prohibited by Section 2 of such executive order, and is not and shall not otherwise become associated with any such person in any manner violative of Section 2, (c) is not and shall not become a person on the list of Specially Designated Nationals and Blocked Persons, and (d) is not and shall not become subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order; (2) Assignor is and shall remain in compliance, in all material respects, with (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act of 2001); and (3) Assignor has not and shall not use all or any part of the proceeds of the obligations secured by the Mortgage or any or all of the Rents and Profits, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

4.14. <u>Use and Application of Terms.</u>  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa; and as the context requires, the word "and" may have a joint meaning or a several meaning and the word "or" may have an inclusive meaning or an exclusive meaning. All references in this Assignment to "person" or "persons" shall include individuals and organizations and all terms used in this Assignment that are not defined in this Assignment, the Mortgage or in the obligations secured hereby, but are defined in the Uniform Commercial Code in effect in the State of South Carolina, shall have the meaning ascribed to such terms from time to time in said Uniform Commercial Code.  Any reference contained in this Assignment to specific statutes or laws shall include any successor statutes or laws, as the case may be.  This Assignment shall not be applied, interpreted and construed more strictly against a person because that person or that person's attorney drafted this Assignment.

The undersigned has executed this Assignment as of the day and year first above stated.

Signed, sealed and delivered in the presence of:

Witness:

Print Name: _Michele Lee Reed_

Witness:

Print Name: _Greg M. Byars_

KT SPEARS CREEK, LLC

By: _____

Name: _Kyle Tauch_

Its: Member

STATE OF          )             ACKNOWLEDGMENT

COUNTY OF       )

The foregoing instrument was acknowledged before me this _15_ day of _June_, 2006, by
_Kyle Tauch_____, as /Member of KT Spears Creek, LLC.

Notary Public for

My commission expires: _9-12-06_

MICHELE LEE REED
Notary Public, State of Texas
My Commission Expires
September 12, 2006

EXHIBIT A
(Attached to Assignment of Leases, Rents and Profits)

1.     Description of Mortgage:   Mortgage, Assignment of Rents and Security Agreement from KT Spears Creek, LLC, to RBC Centura Bank of even date herewith.

2.     List of Leases and Rental Agreements:

3.     Description of Property:    See legal description attached.

EXHIBIT A

PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL
HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST,
A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND)
ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY
DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY
SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF
33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W
HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC
LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO
A #4 REBAR (FOUND); THENCE  CONTINUING ALONG SAID R/W SOUTH 81°49'37"
WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING
ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00
FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37"
EAST 34.85 FEET TO A #5 REBAR (SET);THENCE CONTINUING ALONG SAID  R/W
SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID  R/W HAVING A CURVE WITH AN RADIAL
DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A
CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A  CALCULATED POINT ;
THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A
CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51
FEET TO A  CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE
OF 100.67 FEET TO A  CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A
DISTANCE OF 25.51 FEET TO A  CALCULATED POINT; THENCE NORTH 61°03'52"
WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH
14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A  CALCULATED POINT;
THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR
(FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF
69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE
OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A
DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A
#5 REBAR (SET); THENCE CONTINUING ALONG SAID  R/W  NORTH 72°00'37"
EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID  R/W  NORTH 71°54'05" EAST, A DISTANCE OF 5.80
FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF
104.64 FEET TO A  CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A
DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17"
EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH
75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05 and 25900-04-04

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

### PHASE II PROPERTY  DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL  LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE  NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59", EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03" EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY  ALONG SAID  R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE  SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING  ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

NPCOL1:841374.1-EX-(IMM) 039113-00000

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581.



STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF RICHLAND )
) Case No.: 2010-CP-40-6025
RBC Bank (USA), )
)
     Plaintiff, )
) **Order Appointing Receiver**
)
   v. )
)
KT Spears Creek, LLC, KT Builders, )
LTD., Kyle D. Tauch, and Hyco )
Plumbing, Inc. , )
)
     Defendants. )

This matter came before the Court on the Plaintiff's motion for the appointment of a receiver and a Verified Complaint, making application for the appointment of a Receiver for the Property as identified in the Complaint. Due and proper notice of this hearing was served on all parties to the action and upon the property manager as will appear by reference to the hearing notice served by Plaintiff's counsel on October 29, 2010 and filed on November 1, 2010. Appearing before the Court was counsel for the Plaintiff. The Defendants KT Spears Creek, LLC and KT Builders, LTD are in default and did not appear. The Defendant Kyle D. Tauch is being served by publication. The Defendant Hyco Plumbing did not appear, but advised Plaintiff's counsel, that it did not oppose the appointment of the receiver.

This Court has the authority to appoint a Receiver of the Property pursuant to Section 15-65-10 of Code of Laws of South Carolina (1976) et seq. Further, the Mortgage at issue in this case provides that Plaintiff is entitled to the appointment of a receiver upon default by the mortgagor (KT Spears Creek). The well pleaded

1



EXHIBIT

2

allegations of the Complaint and its attachments incorporated into the Complaint are deemed admitted by those Defendants in default. Further, the Court notes that Judge Allison R. Lee has issued a Temporary Injunction in this case. In her Order, Judge Lee specifically found that the Plaintiff would suffer immediate and irreparable injury in the case if the injunction was not issued. That injunction provides, *inter alia*:

> the Enjoined Parties are ordered to collect and pay to RBC Bank (USA) all the income and profits from the Property in any such person's possession until further order of this Court. The Enjoined Parties are, however, permitted to pay the necessary operating expenses of the apartment complex such as utilities, maintenance, and routine repairs.

The Property identified in the Complaint is comprised of an apartment complex in Richland County, South Carolina, an assignment of leases, rents, and profits, and personal property of KT Spears Creek, LLC (herein "Property"). Plaintiff is entitled to protection of its Property during this proceeding.

IT IS THEREFORE ORDERED:

1.    Receivership. The Property of KT Spears Creek, LLC ("Borrower") as identified in the Complaint is placed in receivership.

2.    Receiver. Colliers International whose address is 1301 Gervais St., Suite 600, Columbia, South Carolina, Attention Mr. Woody Moore, is hereby appointed Receiver over the Property. All communication to the Receiver shall be directed to the Receiver at the above address. Confirmation of general insurance coverage as to the Receiver or a bond of Five Thousand and No/100 ($5,000.00) Dollars shall be filed with the court within seven business days of the date of this Order.

3.    Restrained. Borrower (its agents, representatives and employees) are restrained from disposing of, transferring, conveying, or otherwise encumbering the

2

Property or books, files, records and accounts relating to the Property, and they and all other parties having Property in their possession or under their control are hereby directed to deliver the same to the said Receiver.

4.    Cooperation.  Borrower, its agents, representatives and employees, are ordered to cooperate with the Receiver and appear at the Property, and at the Receiver's office, at such times as may be required to sign such legal documents as may be necessary and to furnish such records as the Receiver may require.  Failure of Borrower to cooperate with the Receiver or otherwise comply with terms of this order shall make Borrower liable for contempt of court upon application by the Receiver or his attorneys. The parties are hereby ordered to cooperate with the Receiver at all times during the pendency of this receivership.

5.    Income.  Borrower, its respective agents and employees, and any other person receiving actual notice of the terms of this Order are hereby ordered and directed to immediately collect and pay to the below named Receiver all of the income and profits (both current and prepaid) from the Property in any such person's possession as of the date of this Order, regardless of when collected, pending adjudication of the parties' rights thereto and subject to such other orders of this Court as may be subsequently entered.   In addition, Borrower shall execute any and all documents necessary to substitute the Receiver for the current signatories on all of the bank accounts relating to the Property of Borrower.

6.    Inventory and Reports.  The Receiver shall prepare and deliver to all parties appearing of record within thirty (30) days from the date of this Order a full and detailed inventory, under oath, of all the Property which comes into its possession and

3

thereafter it shall prepare and deliver to all parties appearing of record each thirty (30) days thereafter a full and complete report reporting all activities and changes in the Receivership estate and all claims against the estate that have arisen or have occurred during the period covered by the report.

       7.    <u>Possession of Property</u>.  The Receiver shall take and have exclusive control, possession and custody of all the Property, monies, contracts, insurance policies, assets, files, papers, keys, accounts receivable, records, documents, licenses, permits, monies, securities, choses in action, books of account, bank accounts and all other property, real, personal, or mixed, which relate to the Property, and shall retain custody of the same until further order of this Court.  All Defendants and other persons or corporations now or hereafter in possession of the Property, or any part thereof, or any other of the items entrusted to the Receiver as set forth herein, shall forthwith surrender such possession to the Receiver.

       8.    <u>Operating Account</u>.  The Receiver shall establish and/or maintain, at a banking or savings and loan institution located in South Carolina whose deposits are insured by the FDIC or the FSLIC, a separate operating account ("the Operating Account") into which the Receiver shall deposit all receipts from the Property and from which the Receiver shall disburse regularly and punctually (to the extent available), all amounts due and payable as are reasonable, necessary and proper operating expenses of the Property, subject to the terms of this Order.

       9.    <u>Costs</u>.  The Receiver is hereby authorized, empowered and directed to pay from the Operating Account all reasonable expenses necessary for the preservation of the Property, including, but not limited to, the costs of all labor, insurance, equipment,

<div align="center">4</div>

supplies, inventory, water, sewer, trash and garbage disposal, electricity, security and telephone expenses which are necessary to the operation and preservation of the Property, together with any expenditure authorized by Plaintiff.

10.    Operation.  The Receiver is hereby authorized, empowered and directed to contract with such individuals and entities as may be necessary to preserve, protect, supervise, operate and manage the Property.  The Receiver shall use its best efforts to operate the Property profitably, and to maintain the building, appurtenances and grounds of the Property in accordance with customary standards for a business of its type, including, without limitation, interior and exterior cleaning, painting and decoration, plumbing, carpentry, maintenance of air conditioners and elevators, and such other normal maintenance and repair work as may be appropriate, subject to the requirements and limits set forth herein.

11.    Collection of Rents and Profits.  The Receiver is hereby authorized, empowered and directed to enforce and collect all debts, accounts receivable, rents or other obligations due and owing to or from the operation of the Property.  Subject to its obligations to pay the costs of the Property and operate the Property, and consistent with Judge Lee's Temporary Injunction, the Receiver shall pay to RBC Bank (USA) all the income and profits from the Property.

12.    Insurance.  The Receiver is hereby authorized, empowered and directed to maintain all policies of insurance or similar contracts affecting the Property in full force and effect, and if none exists, to insure the Property for its current fair market value against personal injury, property damage and liability claims.  The Receiver shall maintain or purchase appropriate property insurance for the Property, public liability

5

insurance, workmen's compensation insurance, fire and extended coverage insurance, and burglary and theft insurance. The Plaintiff shall be listed as an insured and a loss payee on all such insurance policies. The Receiver shall promptly investigate and provide Plaintiff a full, prompt written report as to all serious and material accidents, claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof, and shall prepare any and all reports required by any insurance company in connection therewith. All existing insurance coverage purchased by the Borrower or by any other person, which is now in force for the protection of the Property, is hereby assigned to the Receiver.

13.    Actions Against Receiver. All persons, funds, corporations, associations and all other parties are hereby enjoined and restrained from commencing, maintaining, or otherwise prosecuting any action at law or in equity against the Receiver without prior leave of this Court.

14.    Default. Entry of this Order shall not constitute a breach or default of any contract relating to the Property unless the Receiver expressly cancels such contract.

15.    Employment of Professionals. The Receiver may employ attorneys, accountants, or other professionals if reasonably required to discharge its duties herein and shall, if necessary, apply to this Court for instructions and advice if in doubt concerning its rights and responsibilities as Receiver.

16.    Leasing. The Receiver shall have the authority to lease, rent or otherwise seek compensation for space at the Property in the ordinary course of business, at such

6

rates and on such terms as are customary in the business, provided that Plaintiff approves each such rental or lease agreement.

17.    Other Tasks.    The Receiver is hereby authorized, empowered, and directed to perform all other tasks reasonably necessary for the proper administration, conservation, maintenance, security and protection of the Property.

18.    Fees.  At the end of each month, the Receiver shall present to all parties who have appeared of record an invoice for services rendered to the Receivership and if no objections are received within ten (10) days, the Receiver shall pay such invoice from funds in the Operating Account.  In the event any party of record objects to the payment of any invoice presented or any charge contained therein, the Receiver may seek an order approving and directing such payment.   The compensation of the Receiver shall be at the discretion of the Court and shall be set by the Court upon further order.

19.    Legal Actions.    The Receiver is hereby authorized, empowered and directed to apply to this Court for instructions and authorization should it seem to be necessary or desirable to sue or defend any legal action or otherwise compromise or settle same.

20.    Use and Maintenance of Property.  The Receiver shall not permit the use of the Property for any purpose which will or might void any required policy of insurance, which might render any loss thereunder uncollectible, or which would be in violation of any law or government restriction.

21.    Records.  The Receiver shall maintain a comprehensive system of office records, books, and accounts concerning the operation of the Property.    At all

7

reasonable times, Plaintiff, Defendants, and their respective agents and other representatives shall have reasonable access to such records, accounts and books and to all vouchers, files, and all other material pertaining to the operation of the Property, all of which the Receiver agrees to keep safe, available and separate from any records not having to do with the operation of the Property.

22. _Legal Requirements_. The Receiver shall ensure that all aspects of the Property, and its operation and management, comply with any and all laws, regulations, orders or requirements affecting the Property issued by any federal, state, county or municipal authority having jurisdiction thereover.

23. _Employment of Agents_. The Receiver is hereby authorized to employ agents, servants and employees and to contract as necessary for the purpose of renting, operating, managing, preserving, protecting, and taking possession of the Property, and carrying out the terms of this Order. The Receiver shall collect the rents, revenues, and profits from the Property, including those now due and unpaid, and hereafter to become due.

24. _Licenses_. All existing licenses relating to the operation of the Property issued in the name of the Borrower are hereby assigned to the Receiver.

25. _Termination of Receivership_. Plaintiff, or the successful bidder at any foreclosure sale of the Property, may apply to the Court upon the issuance of an Order of Sale, for entry of an order terminating the Receivership, discharging the Receiver, and putting the successful bidder at sale into possession of the Property, effective upon issuance of a deed to the Property.

26.   _Retention of Jurisdiction._   The Court retains jurisdiction of this matter to enter such further orders as may be just and proper.

27.   _Sheriff's Assistance._   The Receiver is authorized and empowered to obtain the assistance of the Sheriff's Department of the counties of this State in performing those duties and responsibilities enumerated herein.

AND IT IS SO ORDERED.

Joseph M. Strickland
Special Circuit Court Judge

Columbia, South Carolina

November 12, 2010.

9

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED
06/09/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 11-33991-H3-11** |
| **KT SPEARS CREEK, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

## ORDER ALLOWING CONSTANCE L. YOUNG TO APPEAR BY TELEPHONE
### [This instrument relates to Docket No. _47_ ]

The Court has considered the Motion to Allow Constance L. Young to Appear by Telephone (Docket No. _47_ ) (the "Motion") filed by RBC Bank (USA) ("RBC"), a secured creditor and party in interest in the bankruptcy case referenced above, and finds that the Motion is meritorious and establishes cause to grant the relief requested therein.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.      The Motion is **GRANTED** as provided herein.

2.      Constance L. Young shall be permitted to appear by telephone on behalf of RBC at the hearing on RBC's Motion to Dismiss for Bad Faith Filing and Improper Venue pursuant to 28 U.S.C. § 1406(a) and § 1408 (Docket No. 25), RBC's Motion to Designate Case as Single Asset Real Estate Case pursuant to 11 U.S.C. § 101(51B) (Docket No. 26), the Emergency Motion of KT Spears Creek, LLC (the "Debtor") for Interim and Final Orders Approving Use of Cash Collateral (Docket No. 27), the Debtor's Emergency Motion pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing (Docket No. 28), and the Debtor's Emergency Motion for Turnover of Property and Request for Accounting (Docket No. 31) before this Court on June 13, 2011 at 10:15 a.m.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**NOTICE OF FILING**
(**Relates to Docket Nos. 27 and 28.**)

**PLEASE TAKE NOTICE** of the filing of the following attached documents, which

relate to the Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash

Collateral [Doc. No. 27] and the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362,

363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (i) Authorizing the Debtor to Obtain

Post-Petition Secured Financing, (ii) Granting Security Interests and (iii) Scheduling a Final

Hearing [Doc. No. 28]:

- Debtor-in-Possession Credit Agreement;
- Cash Collateral Budget; and
- DIP Budget.

**Dated**: June 6, 2011

Respectfully submitted,


**OKIN ADAMS & KILMER LLP**

By:  */s/ Maggie D. Conner*
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118
      mokin@oakllp.com
      mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail and/or the Court's Electronic Case Filing system on the 9th day of June, 2011.

      */s/ Maggie D. Conner*
      Maggie D. Conner

3.    Constance L. Young may not present evidence, including the examination of

witnesses present in the courtroom, by telephone.


DATED: June 9, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

### NOTICE OF FILING
#### (Relates to Docket Nos. 27 and 28.)

**PLEASE TAKE NOTICE** of the filing of the following attached documents, which relate to the Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral [Doc. No. 27] and the Debtor's Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (i) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (ii) Granting Security Interests and (iii) Scheduling a Final Hearing [Doc. No. 28]:

- Debtor-in-Possession Credit Agreement;
- Cash Collateral Budget; and
- DIP Budget.

**Dated**: June 6, 2011

Respectfully submitted,


**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*                        
     Matthew S. Okin
     Texas Bar #00784695
     Maggie D. Conner
     Texas Bar. #24038439
     1113 Vine St., Suite 201
     Houston, TX  77002
     Tel:  713- 228-4100
     Fax:  888-865-2118
     mokin@oakllp.com
     mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**



<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail and/or the Court's Electronic Case Filing system on the 9th day of June, 2011.

                                    */s/  Maggie D. Conner*                  
                                      Maggie D. Conner

Service List

<div style="display:flex">
<div>

***United States Trustee:***

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

***IRS:***

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

***Counsel for RBC:***

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

***Counsel for First Savers Bank***

David S. Elder
Clinton R. Snow
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
deleder@gardere.com
csnow@gardere.com

</div>
<div>

***Receiver:***

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

***Property Manager:***

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

***Counsel for First Palmetto Bank***

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

</div>
</div>

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

## DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS DEBTOR-IN-POSSESSION CREDIT AGREEMENT dated as of June 9, 2011, is entered into by and among KT Spears Creek, LLC (the "Borrower"), and JK Air Investment Group, LLC (the "Lender").

## R E C I T A L S

A.    The Borrower previously filed a voluntary petition for relief as a debtor and debtor-in-possession under Title 11 of the United States Bankruptcy Code (as amended from time to time, the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") under Case number 11-33991 (the "Chapter 11 Case").

B.    Borrower is continuing to operate its business and manage its property as a debtor-in-possession under the Bankruptcy Code.

C.    The Borrower has requested that the Lender provide postpetition financing to the Borrower in the form of an unsecured debtor-in-possession loan facility with a maximum aggregate commitment for the Lender of $100,000.00.

D.    The Lender has agreed to make such debtor-in-possession loan and extension of credit subject to the terms and conditions of this Agreement.

E.    In consideration of the mutual covenants and agreements herein contained and of the loans, extensions of credit and commitments hereinafter referred to, the parties hereto agree as follows:

## ARTICLE I
## Definitions and Accounting Matters

Section 1.01    Terms Defined Above.  As used in this Agreement, each term defined above has the meaning indicated above.

Section 1.02    Certain Defined Terms.  As used in this Agreement, the following terms have the meanings specified below:

"Affiliate" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Agreement" means this Debtor-In-Possession Credit Agreement, as the same may from time to time be amended, modified, supplemented or restated.

"Availability Period" means the period from and including the Effective Date to but excluding the Termination Date.

"Board" means the Board of Governors of the Federal Reserve System of the United States of America or any successor Governmental Authority.

"Borrowing" means a borrowing by the Borrower under this Agreement.

"Borrowing Request" means a request by the Borrower for a Borrowing under this Agreement.

"Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banks in Houston, Texas are authorized or required by law to remain closed.

"Capital Leases" means, in respect of any Person, all leases which shall have been, or should have been, in accordance with GAAP, recorded as capital leases on the balance sheet of the Person liable (whether contingent or otherwise) for the payment of rent thereunder.

"Carve Out" has the meaning assigned such term in the Interim Order.

"Cash Collateral" has the meaning assigned such term in the Interim Order.

"Casualty Event" means any loss, casualty or other insured damage to any Property of the Borrower in an amount greater than $25,000, or any nationalization, taking under power of eminent domain or by condemnation or similar proceeding of, any Property of the Borrower having a fair market value in excess of $25,000.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute.

"Commitment" means, with respect to the Lender, the commitment of such Lender to make Loans hereunder in an amount up to $100,000.00.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  For the purposes of this definition, and without limiting the generality of the foregoing, any Person that owns directly or indirectly 10% or more of the Equity Interests having ordinary voting power for the election of the directors or other governing body of a Person (other than as a limited partner of such other Person) will be deemed to "control" such other Person.  "Controlling" and "Controlled" have meanings correlative thereto.

"Debt" means, for any Person, without duplication and on a consolidated basis, the sum of the following (without duplication): (a) all obligations of such Person for borrowed money or evidenced by bonds, bankers' acceptances, debentures, notes or other similar instruments; (b) all obligations of such Person (whether contingent or otherwise) in respect of letters of credit, surety or other bonds and similar instruments; (c) all accounts payable and other accrued expenses, liabilities or other obligations of such Person; (d) all obligations of such Person under Capital Leases; (e) all obligations of such Person under Synthetic Leases; (f) all Debt (as defined in the other clauses of this definition) of others secured by a Lien on any property of such Person, whether or not such Debt is assumed by such Person; and (g) all Debt (as defined in the other clauses of this definition) of others guaranteed by such Person or in which such Person otherwise

assures a creditor against loss of the Debt (howsoever such assurance shall be made) to the extent of the lesser of the amount of such Debt and the maximum stated amount of such guarantee or assurance against loss.

"DIP Liens" has the meaning assigned such term in Section 2.06.

"Effective Date" means the date on which the conditions specified in Section 5.01 are satisfied (or waived by Lender).

"Environmental Laws" means any and all Governmental Requirements pertaining in any way to public health and safety, the environment, the preservation or reclamation of natural resources, or the management, release or threatened release of any Hazardous Materials, in effect in any and all jurisdictions in which the Borrower is conducting, or at any time has conducted, business, or where any property or assets of the Borrower are located.

"Environmental Permit" means any permit, registration, license, notice, approval, consent, exemption, variance, or other authorization required under or issued pursuant to applicable Environmental Laws.

"Equity Interests" means shares of capital stock, partnership interests, membership interests in a limited liability company, beneficial interests in a trust or other equity ownership interests in a Person, and any warrants, options or other rights entitling the holder thereof to purchase or acquire any such Equity Interest.

"Event of Default" has the meaning assigned such term in Section 9.01.

"Excepted Liens" means:  (a) Liens for Taxes, assessments or other governmental charges or levies which are not delinquent or which are being contested in good faith by appropriate action; (b) Liens in connection with workers' compensation, unemployment insurance or other social security, old age pension or public liability obligations which are not delinquent or which are being contested in good faith by appropriate action; (c) statutory landlord's liens, operators', vendors', carriers', warehousemen's, repairmen's, mechanics', suppliers', workers', materialmen's, construction or other like Liens arising by operation of law in the ordinary course of business; (d) easements, restrictions, servitudes, permits, conditions, covenants, exceptions or reservations applicable to the Property; and (e) Liens securing Pre-Petition Debt.

"Existing Credit Agreements" means (i) that certain Commercial Promissory Note dated as of May 25, 2006, between Borrower and RBC Centura Bank in the original principal amount of $19,700,000.00, as modified or amended from time to time (the "RBC Bank Note"), and secured by a mortgage on the Excluded Property, (ii) that certain Loan Agreement dated as of December 21, 2007, among the Borrower, First Savers Bank, a division of Plantation Federal Bank, and Kyle D. Tauch in the amount of $6,000,000.00, and secured by a mortgage on all or a portion of the Property; and (iii) that certain loan agreement between the Borrower and First Palmetto Savings Bank entered into in 2006 and by a mortgage on all or a portion of the Property.

"Final Order" means the final order of the Bankruptcy Court that is entered by the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), which is (i) satisfactory in form and substance to the Borrower and the Lender, adopting and/or leaving undisturbed its finding in the Interim Order, including that credit extended by the Lender under this Agreement and the other Loan Documents will be extended in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code and approving this Agreement and the Transactions (including the granting of the Liens and priority position to be provided in connection therewith), and (ii) not be subject to vacatur, amendment, modification, reversal, or stay.

"GAAP" means generally accepted accounting principles in the United States of America as in effect from time to time subject to the terms and conditions set forth in Section 1.04.

"Governmental Authority" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government over the Borrower, any Subsidiary, any of their properties, or the Lender.

"Governmental Requirement" means any law, statute, code, ordinance, order, determination, rule, regulation, judgment, decree, injunction, franchise, permit, certificate, license, authorization or other directive or requirement (whether or not having the force of law), whether now or hereinafter in effect.

"Hazardous Material" means any substance regulated or as to which liability might arise under any applicable Environmental Law and including without limitation: (a) any chemical, compound, material, product, byproduct, substance or waste defined as or included in the definition or meaning of "hazardous substance," "hazardous material," "hazardous waste," "solid waste," "toxic waste," "extremely hazardous substance," "toxic substance," "contaminant," "pollutant," or words of similar meaning or import found in any applicable Environmental Law; and (b) radioactive materials, explosives, asbestos or asbestos containing materials, polychlorinated biphenyls, radon, infectious or medical wastes.

"Highest Lawful Rate" means the maximum nonusurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the Note or on other Indebtedness under applicable law.

"Indebtedness" means any and all amounts owing or to be owing by the Borrower, absolute or contingent, due or to become due, now existing or hereafter arising: (a) to the Lender under any Loan Document; and (b) all renewals, extensions and/or rearrangements thereof.

"Interest Rate" means twelve percent (12%) per annum, compounded monthly.

"Interim Order" means the interim order which is entered by the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), which is in form and substance satisfactory to the Borrower and the Lender in all respects, and which authorizes

4

the incurrence by the Borrower of secured and superpriority indebtedness in accordance with the Loan Documents.

"Investment" means the acquisition (whether for cash, property, services or securities or otherwise) of Equity Interests of any other Person, the contribution of capital to any other Person, or any agreement to make any such acquisition or capital contribution.

"Lien" means any interest in property securing an obligation owed to, or a claim by, a Person other than the owner of the property, whether such interest is based on the common law, statute or contract, and whether such obligation or claim is fixed or contingent.

"Loan Documents" means this Agreement and the Note.

"Loans" has the meaning assigned such term in Section 2.01.

"Material Adverse Effect" means a material adverse change in, or material adverse effect on (a) the business, operations, property or financial condition of the Borrower and its Subsidiaries taken as a whole, (b) the ability of Borrower to perform any of its obligations under any Loan Document, (c) the validity or enforceability of any Loan Document or (d) the rights and remedies of or benefits available to the Lender under any Loan Document.

"Maximum Credit Amount" means, as to the Lender, the amount of $100,000.00, or such higher amount as Lender may agree from time to time.

"Note" means the promissory note of the Borrower described in Section 2.02 and being substantially in the form of Exhibit A, together with all amendments, modifications, replacements, extensions and rearrangements thereof.

"Organizational Documents" means, with respect to any Person, (a) in the case of any corporation, the certificate of incorporation or formation and by-laws (or similar documents) of such Person, (b) in the case of any limited liability company, the certificate of formation and limited liability company agreement (or similar documents) of such Person, (c) in the case of any limited partnership, the certificate of formation and limited partnership agreement (or similar documents) of such Person, (d) in the case of any general partnership, the partnership agreement (or similar document) of such Person and (e) in any other case, the functional equivalent of the foregoing.

"Permitted Asset Sales" means sales of assets of the Borrower where the consideration received from all of such sales does not exceed $50,000 in the aggregate.

"Permitted Tax Distributions" means tax distributions to the members of the Borrower in an amount equal to (a) the sum of the highest marginal United States federal income tax rate applicable to individuals on ordinary income, multiplied by (b) the Borrower's federal taxable income. Permitted Tax Distributions may be made quarterly, based on the Borrower's estimated taxable income for each applicable quarterly period, and annually, based on the Borrower's annual federal income tax filing.

"<u>Person</u>" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.

"<u>Pre-Petition Debt</u>" means Debt incurred by the Borrower pursuant to the Existing Credit Agreements.

"<u>Pre-Petition Lenders</u>" means the lenders under the Existing Credit Agreements.

"<u>Property</u>" means all real property owned by the Borrower, wherever located, including, without limitation, the real property described in <u>Exhibit B</u>; but excluding the Excluded Property.

"<u>Redemption</u>" means with respect to any Debt, the repurchase, redemption, prepayment, repayment, defeasance or any other acquisition or retirement for value (or the segregation of funds with respect to any of the foregoing) of such Debt. "<u>Redeem</u>" has the correlative meaning thereto.

"<u>Related Parties</u>" means, with respect to any specified Person, such Person's Affiliates and the respective directors, officers, employees, agents and advisors (including attorneys, accountants and experts) of such Person and such Person's Affiliates.

"<u>Reorganization Plan</u>" means a joint plan of reorganization proposed by the Borrower or any other Person in the Chapter 11 Cases.

"<u>Restricted Payment</u>" means any dividend or other distribution (whether in cash, securities or other Property) with respect to any Equity Interests in the Borrower, or any payment (whether in cash, securities or other Property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any such Equity Interests in the Borrower, or any option, warrant or other right to acquire any such Equity Interests in the Borrower.

"<u>SEC</u>" means the U.S. Securities and Exchange Commission or any successor Governmental Authority.

"<u>S&P</u>" means Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies, Inc., and any successor thereto that is a nationally recognized rating agency.

"<u>Subsidiary</u>" means: (a) any Person of which at least a majority of the outstanding Equity Interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or managers or other governing body of such Person is at the time directly or indirectly owned or controlled by the Borrower, and (b) any partnership of which the Borrower is a general partner.

"<u>Taxes</u>" means any and all present or future taxes, levies, imposts, duties, deductions, charges or withholdings imposed by any Governmental Authority.

"<u>Termination Date</u>" means the earlier to occur of (i) June 1, 2012; (ii) the date which is the effective date of any Reorganization Plan; or (iii) the date of the conversion of the Chapter 11

Case to a Chapter 7 Case under the Bankruptcy Code, or (iv) the date of the dismissal of the Chapter 11 Case.

"Transactions" means the execution, delivery and performance by the Borrower of this Agreement and each other Loan Document to which it is a party, the borrowing of the Loans, the use of the proceeds thereof, and the grant of Liens to the Lender by the Borrower on the Collateral.

Section 1.03    Terms Generally; Rules of Construction.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "or" shall mean "and/or".  Unless the context requires otherwise (a) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (b) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including" and (c) any reference herein to Articles, Sections, Annexes, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Annexes, Exhibits and Schedules to, this Agreement.

Section 1.04    Accounting Terms and Determinations; GAAP.    Unless otherwise specified herein, all accounting terms used herein shall be interpreted, all determinations with respect to accounting matters hereunder shall be made, and all financial statements and certificates and reports as to financial matters required to be furnished to the Lender hereunder shall be prepared, in accordance with GAAP, applied on a consistent basis.

## ARTICLE II
## The Credits

Section 2.01    Commitment.  Subject to the terms and conditions set forth herein, the Lender agrees to make revolving loans (each a "Loan") to the Borrower during the Availability Period in an aggregate principal amount up to $100,000.00 (the "Commitment").  Within the foregoing limits and subject to the terms and conditions set forth herein, the Borrower may borrow, repay and reborrow the Loans.

Section 2.02    Note.  The Loans made by the Lender shall be evidenced by a single Note of the Borrower in substantially the form of Exhibit A, dated as of the date of this Agreement.

Section 2.03    Requests for Borrowings.  To request a Borrowing, the Borrower shall notify the Lender of such request by telephone at least one Business Day before the proposed Borrowing.  Each such telephonic and written Borrowing Request shall specify the following information: (i) the aggregate amount of the requested Borrowing; (ii) the date of such Borrowing, which shall be a Business Day; and (iii) the location and number of the applicable Borrower's account to which funds are to be disbursed.

Section 2.04    Funding of Borrowings.  The Lender shall make each Loan to be made by it hereunder on the funding date in the Borrowing Request by wire transfer of immediately available funds to the account of the Borrower specified in the Borrowing Request.

Section 2.05   <u>Termination</u>.   The Commitment of the Lender to make the Loans described herein shall terminate on the Termination Date.

(a)   <u>Grant of Security Interest; Superpriority Administrative Claim</u>.   As security for the prompt payment in full of the Indebtedness, the Borrower hereby pledges and grants to the Lender, a Lien and security interest (subject only to Excepted Liens) in, to and on all of the Collateral (the "<u>DIP Liens</u>").   The Indebtedness shall be a superpriority administrative expense in the Chapter 11 Case as set forth in the Interim Order and Final Order.

## ARTICLE III
### Payments of Principal and Interest; Prepayments; Fees

Section 3.01   <u>Repayment of Loans</u>.   The Borrower hereby unconditionally promises to pay to the Lender the then unpaid interest, fees and principal amount of the Loans in full in cash on the Termination Date.

Section 3.02   <u>Interest</u>.

(a)   <u>Rate</u>.   The Loans shall bear interest at the Interest Rate, but in no event to exceed the Highest Lawful Rate.

(b)   <u>Interest Payment Date</u>.   All accrued and unpaid interest shall be due and payable in full on the Termination Date.

(c)   <u>Interest Rate Computations</u>.   All interest hereunder shall be computed on the basis of a year of 360 days, unless such computation would exceed the Highest Lawful Rate, in which case interest shall be computed on the basis of a year of 365 days (or 366 days in a leap year).

Section 3.03   <u>Prepayments</u>.

(a)   <u>Optional Prepayments</u>.   The Borrower shall have the right at any time and from time to time, to prepay any Borrowing in whole or in part, subject to payment of all accrued and unpaid interest.

(b)   <u>Mandatory Prepayments</u>.   During an Event of Default, the Borrower shall prepay the Borrowings with all net cash proceeds received from sales and other dispositions of any assets of Borrower, subject to payment of all accrued and unpaid interest.

(c)   <u>No Premium or Penalty</u>.   Prepayments permitted or required under this Section 3.03 shall be without premium or penalty.

Section 3.04   <u>Origination Fee</u>.   The Borrower agrees to pay to the Lender an origination fee equal to five percent (5%) of the Commitment, with such fee being accrued to the balance of the Loans as of the Effective Date, and being due and payable in full on the Termination Date.

## ARTICLE IV
## Payments

Section 4.01    Payments Generally.  The Borrower shall make each payment required to be made by them hereunder prior to 5:00 pm, Houston time, on the date when due, in immediately available funds, without defense, deduction, recoupment, set-off or counterclaim.  Fees, once paid, shall be fully earned and shall not be refundable under any circumstances absent manifest error.  All such payments shall be made to the Lender at such place and in such manner as the Lender determines.  If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension.  All payments hereunder shall be made in dollars.

Section 4.02    Application of Insufficient Payments.  If at any time insufficient funds are received by and available to the Lender to pay fully all amounts of principal, interest and fees then due hereunder and allowable under the Interim Order, the Final Order and/or any other order of the Bankruptcy Court, such funds shall be applied (i) first, towards payment of interest and fees then due hereunder, and (ii) second, towards payment of principal then due hereunder.

## ARTICLE V
## Conditions Precedent

Section 5.01    Effective Date.  The obligations of the Lender to make Loans hereunder hall not become effective until the date on which each of the following conditions is satisfied (or waived by Lender):

(a)    After appropriate notice and opportunity for a hearing, entry by the Bankruptcy Court of the Interim Order finding that all credit extended by the Lender under the Loan Documents will be extended in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code, approving this Agreement and the Transactions, and granting the superpriority claim and Priming Liens described herein, and granting the protections to be afforded to the Lender, as described herein, in form and substance reasonably satisfactory to the Lender and the Borrower and approved by the Bankruptcy Court, which shall not have been vacated, modified, amended, reversed or stayed.

(b)    All corporate and judicial proceedings and all instruments and agreements in connection with the Transactions shall be reasonably satisfactory in form and substance to the Lender.

(c)    The Lender and Borrower shall have received from each party hereto counterparts of this Agreement signed on behalf of such party.

(d)    The Lender shall have received a duly executed Note payable to the order of the Lender in a principal amount equal to the Commitment.

(e)    The Lender shall be satisfied that there is no litigation seeking to enjoin or prevent the financing contemplated hereby.

9

Section 5.02    <u>Each Credit Event</u>.  The obligation of each Lender to make a Loan on the occasion of any Borrowing (including the initial funding), is subject to the satisfaction of the following conditions:

(a)    The Final Order shall be in full force and effect, and shall not have been reversed, modified, amended or stayed, except for such modifications or amendments as may be reasonably acceptable to the Lender.

(b)    At the time of and immediately after giving effect to such Borrowing no Event of Default shall have occurred and be continuing.

(c)    The representations and warranties of the Borrower set forth in this Agreement and in the other Loan Documents shall be true and correct in all material respects on and as of the date of such Borrowing except to the extent any such representations and warranties are expressly limited to an earlier date.

(d)    Subject to the terms of the Interim Order, Final Order and/or any other order of the Bankruptcy Court, the Borrower shall have paid the balance of all fees and expenses then payable to the Lender, provided that the Loans shall as necessary be used for this purpose and this condition shall thereupon be satisfied upon the making of such payment from the Loans.

(e)    The receipt by the Lender of a Borrowing Request.

**ARTICLE VI**
**Representations and Warranties**

The Borrower represents and warrants to the Lender that:

Section 6.01    <u>Organization; Powers</u>.  The Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, has all requisite power and authority, and has all material governmental licenses, authorizations, consents and approvals necessary, to own its assets and to carry on its business as now conducted, and is qualified to do business in, and is in good standing in, every jurisdiction where such qualification is required, except where failure to have such power, authority, licenses, authorizations, consents, approvals and qualifications could not reasonably be expected to have a Material Adverse Effect.

Section 6.02    <u>Authority; Enforceability</u>.  The Transactions have been duly authorized by all necessary limited liability company action of Borrower.  Each Loan Document to which the Borrower is a party has been duly executed and delivered by the Borrower and constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

Section 6.03    <u>Approvals; No Conflicts</u>.  The Transactions (a) do not require any consent or approval of, registration or filing with, or any other action by, any Governmental Authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any Loan Document or the consummation of the

10

transactions contemplated thereby, except such as have been obtained or made and are in full force and effect other than those third party approvals or consents which, if not made or obtained, could not reasonably be expected to have a Material Adverse Effect or do not have an adverse effect on the enforceability of the Loan Documents, (b) will not violate any applicable law or regulation or any Organizational Document of the Borrower or any order of any Governmental Authority, (c) will not violate or result in a default under any indenture, agreement or other instrument binding upon the Borrower, or give rise to a right thereunder to require any payment to be made by the Borrower, and (d) will not result in the creation or imposition of any Lien on any property of the Borrower (other than the Liens created by the Loan Documents).

Section 6.04    Compliance with the Laws and Agreements; No Defaults.  The Borrower is in compliance with all Governmental Requirements applicable to it or its property and all agreements and other instruments binding upon it or its property, and possesses all licenses, permits, franchises, exemptions, approvals and other authorizations granted by Governmental Authorities necessary for the ownership of its property and the conduct of its business, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

Section 6.05    Insurance.  The Borrower has (a) all insurance policies sufficient for compliance with all material Governmental Requirements and all material agreements and (b) insurance coverage in at least amounts and against such risk (including, without limitation, public liability) that are usually insured against by companies similarly situated and engaged in the same or a similar business for the assets and operations of the Borrower.  The Lender has been named as an additional insured and loss payee in respect of such insurance policies.

Section 6.06    Subsidiaries.  The Borrower has no Subsidiaries.

Section 6.07    Properties; Titles, Etc.

(a)    The Borrower has good and defensible title to the Property and its other assets and properties, in each case, free and clear of all Liens except Liens permitted by Section 8.02.

(b)    The rights and properties presently owned, leased or licensed by the Borrower include all rights necessary to permit the Borrower to conduct its business in all material respects in the same manner as its business has been conducted prior to the date hereof.

Section 6.08    No Brokers.  No Person is entitled to any brokerage fee or finder's fee or similar fee or commission in connection with arranging the Loans contemplated by this Agreement as of the Effective Date.

## ARTICLE VII
## Affirmative Covenants

Until the Commitment has terminated and the principal of and interest on each Loan and all fees payable hereunder and all other amounts payable under the Loan Documents shall have been paid in full, the Borrower covenants and agrees with the Lender that:

11

Section 7.01    Use of Loan Proceeds.  The Borrower will use the proceeds of the Loans solely to pay for expenses of Borrower during the course of the Chapter 11 Case including, without limitation, for architectural renderings, surveying, appraisals, environmental reports, legal fees, loan origination fees, and other expenses approved by the Lender.

Section 7.02    Requested Information.  Promptly following any request therefore from the Lender, the Borrower will provide to Lender such information regarding the operations, business affairs and financial condition of the Borrower as the Lender may reasonably request.

Section 7.03    Notices of Material Events.  The Borrower will furnish to the Lender prompt written notice of the following:

(a)    the occurrence of any Event of Default;

(b)    the filing or commencement of, or the threat in writing of, any action, suit, proceeding, investigation or arbitration by or before any arbitrator or Governmental Authority against the Borrower not previously disclosed in writing to the Lender or any material adverse development in any action, suit, proceeding, investigation or arbitration (whether or not previously disclosed to the Lender) that, in either case, if adversely determined, could reasonably be expected to result in a Material Adverse Effect;

(c)    the Borrower's receipt of any demand letter.

Section 7.04    Existence; Conduct of Business.  The Borrower will do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the rights, licenses, permits, privileges and franchises material to the conduct of its business and maintain, if necessary, its qualification to do business in each jurisdiction in which its real property assets are located or the ownership of its properties requires such qualification, except where the failure to so qualify could not reasonably be expected to have a Material Adverse Effect.

Section 7.05    Operation and Maintenance of Properties.  The Borrower will:

(a)    operate its properties and assets in accordance with the practices of the Borrower's industry and in compliance with all applicable contracts and agreements and in compliance with all Governmental Requirements, including, without limitation, applicable Environmental Laws, except, in each case, where the failure to comply could not reasonably be expected to have a Material Adverse Effect;

(b)    keep, preserve and maintain all property material to the conduct of its business in good working order and condition, ordinary wear and tear excepted;

Section 7.06    Insurance.  The Borrower will maintain, with financially sound and reputable insurance companies, insurance in such amounts and against such risks as are customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations.

12

Section 7.07    <u>Books and Records; Inspection Rights</u>.  The Borrower will keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and activities.   The Borrower will permit any representatives designated by the Lender, upon reasonable prior notice, to visit and inspect its properties, to examine and make extracts from its books and records, and to discuss its affairs, finances and condition with its officers and independent accountants, all at such reasonable times during normal business hours and as often as reasonably requested.

Section 7.08    <u>Compliance with Laws</u>.  The Borrower will comply with all laws, rules, regulations and orders of any Governmental Authority applicable to it or its property (including Environmental Laws), except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

Section 7.09    <u>Further Assurances</u>.  The Borrower will promptly execute and deliver to the Lender all such other documents, agreements and instruments reasonably requested by the Lender to comply with, cure any defects or accomplish the conditions precedent, covenants and agreements of the Borrower in the Loan Documents, or to correct any defect, error or inaccuracy in this Agreement, or to make any recordings, file any notices or obtain any consents, all as may be reasonably necessary or appropriate, in the reasonable discretion of the Lender, in connection therewith.

Section 7.10    <u>Subsidiaries</u>.  In the event that Borrower forms or acquires any Subsidiary, Borrower shall promptly cause such Subsidiary to guarantee the Indebtedness.  In connection with any such guaranty, such Borrower shall, or shall cause such Subsidiary to, (a) execute and deliver a guaranty agreement satisfactory to the Lender, (b) pledge all of the Equity Interests of such new Subsidiary, and (c) execute and deliver such other additional closing documents and certificates as shall reasonably be requested by the Lender.

## ARTICLE VIII
## Negative Covenants

Until the Commitment has terminated and the principal of and interest on each Loan and all fees payable hereunder and all other amounts payable under the Loan Documents have been paid in full, the Borrower covenants and agrees with the Lender that:

Section 8.01    <u>Debt</u>.  The Borrower will not incur, create, assume or suffer to exist any Debt, except:

(a)    the Note or other Indebtedness arising under the Loan Documents;

(b)    endorsements of negotiable instruments for collection in the ordinary course of business;

(c)    Debt under Capital Leases not to exceed $100,000.00 in aggregate principal amount at any time outstanding; and

(d)    Pre-Petition Debt.

Section 8.02    Liens.  The Borrower will not create, incur, assume or permit to exist any Lien on any of its properties (now owned or hereafter acquired), except:

(a)    DIP Liens securing the payment of the Indebtedness;

(b)    Excepted Liens;

(c)    Liens securing Capital Leases permitted by Section 8.01(c);

(d)    Valid, existing Liens of creditors other than the Lender and the Pre-Petition Lenders, but only to the extent determined by the Bankruptcy Court; and

(e)    Liens securing the Carve Out.

Section 8.03    Dividends, Distributions and Redemptions.  The Borrower will not declare, pay or make, or agree to pay or make, directly or indirectly, any Restricted Payment, or return any capital or make any distribution of its property or assets to its Equity Interest holders, except Borrower may declare and pay Permitted Tax Distributions.

Section 8.04    Investments, Loans and Advances.  The Borrower will not make any Investments in or to any Person.

Section 8.05    Nature of Business.  The Borrower will not allow any material change to be made in the character of its business.

Section 8.06    Mergers, Etc.  Borrower will not merge into or with or consolidate with any other Person, or permit any other Person to merge into or consolidate with it, or sell, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its property to any other Person (whether now owned or hereafter acquired) (any such transaction, a "consolidation"), or liquidate or dissolve.

Section 8.07    Sale of Properties.  Without the prior written consent of the Lender, the Borrower will not sell, assign, convey or otherwise transfer any property or assets except for Permitted Asset Sales.

Section 8.08    Subsidiaries.  The Borrower will not create or acquire any Subsidiary unless the Borrower gives prior written notice to the Lender of such creation or acquisition and complies with the terms of this Agreement regarding Subsidiaries.  The Borrower shall not sell, assign or otherwise dispose of any Equity Interests in any Subsidiary.

Section 8.09    Negative Pledge Agreements; Dividend Restrictions.  Borrower will not create, incur, assume or suffer to exist any contract, agreement or understanding (other than this Agreement, or Capital Leases creating Liens permitted by Section 8.02(c), or the Pre-Petition Credit Agreements) which in any way prohibits or restricts the granting, conveying, creation or imposition of any Lien on any of its property in favor of the Lender, or which requires the consent of or notice to other Persons in connection therewith.

14

Section 8.10    Plan of Reorganization.  Borrower will not file any Plan of Reorganization that has not been previously approved by the Lender in writing.

<div align="center">

**ARTICLE IX**
**Events of Default; Remedies**

</div>

Section 9.01    Events of Default.  One or more of the following events shall constitute an "Event of Default":

(a)    the Borrower shall fail to pay any interest on or principal of any Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof, by acceleration or otherwise.

(b)    any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with any Loan Document shall prove to have been incorrect when made or deemed made.

(c)    the Borrower shall fail to observe or perform any covenant, condition or agreement contained in this Agreement or any other Loan Document, and such failure shall continue unremedied for a period of ten (10) days after notice thereof from the Lender to the Borrower.

(d)    (i) the Chapter 11 Case of Borrower shall be dismissed or converted to a Chapter 7 case, (ii) a Chapter 11 Trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of Borrower shall be appointed in the Chapter 11 Case and the order appointing such Person shall not be reversed or vacated within five (5) Business Days after the entry thereof, (iii) any other superpriority claim which is *pari passu* with or senior to the claims of the Lender shall be granted; or (iv) the Chapter 11 Case shall be moved from the Southern Division of Texas, Houston Division, to any other bankruptcy court including, without limitation, to the United States Bankruptcy Court for the District of South Carolina.

(e)    the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest other than the Lender.

(f)    an order shall be entered reversing, amending, supplementing, staying for a period in excess of five (5) Business Days, vacating or otherwise modifying the Interim Order or the Final Order without the consent of the Lender.

(g)    (i) one or more judgments as to any post-petition obligation shall be rendered against either Borrower and the enforcement thereof shall not be stayed (by court ordered stay or by consent of the party litigants) or (ii) any one or more non-monetary judgments that have, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, shall be rendered against Borrower.

(h)    the Loan Documents after delivery thereof shall for any reason, except to the extent permitted by the terms thereof, cease to be in full force and effect and valid, binding and enforceable in accordance with their terms against the Borrower.

<div align="center">15</div>

(i)     Failure of the Borrower to file a Plan of Reorganization acceptable to Lender by September 2, 2011, or to have a Plan of Reorganization acceptable to Lender confirmed by November 30, 2011.

(j)     the filing and/or pursuing confirmation of any Plan of Reorganization that has not been approved by the Lender.

(k)     the filing of any pleading by Borrower, or support of any pleading by Borrower that, unless otherwise waived by the Lender, would deny the Lender the ability to credit bid, as permitted under Bankruptcy Code §363(k).

Section 9.02     Remedies.

(a)     At any time during the continuance of an Event of Default, the Lender may, by notice to the Borrower, take any or all of the following actions, at the same or different times: (i) terminate the Commitment, and thereupon the Commitment shall terminate immediately, or (ii) declare the Note and the Loans then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable), and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrower accrued hereunder and under the Note and the other Loan Documents, shall become due and payable immediately, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, all of which are hereby waived by the Borrower, or (iii) exercise all remedies of a secured party against the property and assets securing the Indebtedness as provided herein, and in the Interim Order, in the Final Order, and under applicable law. In addition to (and not in lieu of) the foregoing remedies, at any time during the continuance of an Event of Default until the Indebtedness has been paid in full, the Lender shall have the right to designate a majority of the managers or directors of the Borrower resulting in the Lender having full and complete control over the Borrower during such period. The holder of the Equity Interest in Borrower agrees to vote all such Equity Interests held by them to appoint the managers or directors so designated by the Lender.

(b)     In the case of the occurrence and continuance of an Event of Default, the Lender will have all other rights and remedies available at law and equity.

(c)     All proceeds realized from the liquidation or other disposition of collateral or otherwise received after maturity of the Note, whether by acceleration or otherwise, shall be applied:

(i)     *first*, to payment or reimbursement of that portion of the Indebtedness constituting fees, expenses and indemnities payable to the Lender;

(ii)     *second,* to payment of accrued interest on the Loans;

(iii)     *third*, payment of principal outstanding on the Loans;

(iv)     *fourth*, to any other Indebtedness; and

16

(v)    *fifth*, any excess, after all of the Indebtedness shall have been indefeasibly paid in full in cash, shall be paid to the Borrower or as otherwise required by any Governmental Requirement.

## ARTICLE X
## Miscellaneous

Section 10.01    Notices.

(a)    Except in the case of notices and other communications expressly permitted to be given by telephone (and subject to Section 10.01(b)), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, or mailed by certified or registered mail, as follows:

(i)    if to the Borrower, to it at 22 Waugh Rd., Suite 270, Houston, Texas 77007.

(ii)    if to the Lender, to it at 550 Westcott, Suite 235, Houston, Texas 77007.

(b)    The Lender or the Borrower may, in their discretion, agree to accept notices and other communications hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.

(c)    Any party hereto may change its address for notices and other communications hereunder by notice to the other party hereto.   All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt.

Section 10.02    Waivers; Amendments.

(a)    No failure on the part of the Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power or privilege, or any abandonment or discontinuance of steps to enforce such right, power or privilege, under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under any of the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power or privilege.   The rights and remedies of the Lender hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.   Without limiting the generality of the foregoing, the making of a Loan shall not be construed as a waiver of any Event of Default, regardless of whether the Lender may have had notice or knowledge of such Event of Default at the time.

(b)    This Agreement may only be amended by written agreement of the Borrower and the Lender.

17

Section 10.03    Expenses.    The Borrower shall pay (i) all reasonable out-of-pocket expenses incurred by the Lender in the preparation, negotiation, execution, delivery and administration of this Agreement and the other Loan Documents and any amendments, modifications or waivers of or consents related to the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), (ii) all costs, expenses, Taxes, assessments and other charges incurred by the Lender in connection with any filing, registration, recording or perfection of any security interest contemplated by this Agreement, (iii) all out of pocket expenses incurred by the Lender, including the fees, charges and disbursements of any counsel for the Lender, in connection with the enforcement or protection of its rights in connection with this Agreement or any other Loan Document, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans; provided, however, that attorney fees and expenses may only be paid as approved by the Bankruptcy Court or the terms of any order of the Bankruptcy Court.

Section 10.04    Successors and Assigns.

(a)    The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Lender (and any attempted assignment or transfer by the Borrower without such consent shall be null and void).  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)    The Lender may assign to one or more assignees or participants all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans at the time owing to it) with the prior written consent (such consent not to be unreasonably withheld) of the Borrower, provided that no consent of the Borrower shall be required for an assignment made during the continuation of an Event of Default.

(c)    The Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, and this Section 10.04(c) shall not apply to any such pledge or assignment of a security interest; provided that no such pledge or assignment of a security interest shall release the Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.

(d)    Notwithstanding any other provisions of this Section 10.04, no transfer or assignment of the interests or obligations of the Lender or any grant of participations therein shall be permitted if such transfer, assignment or grant would require the Borrower to file a registration statement with the SEC or to qualify the Loans under the "Blue Sky" laws of any state.

Section 10.05    Survival; Revival; Reinstatement.

(a)    All covenants, agreements, representations and warranties made by the Borrower herein and in the other Loan Documents shall be considered to have been relied upon by the Lender and shall survive the execution and delivery of this Agreement and the making of any Loans, regardless of any investigation made by the Lender or on its behalf.

(b)    To the extent that any payments on the Indebtedness or proceeds of any collateral are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver or other Person under any bankruptcy law, common law or equitable cause, then to such extent, the Indebtedness so satisfied shall be revived and continue as if such payment or proceeds had not been received and the Lender's Liens, security interests, rights, powers and remedies under this Agreement, the Interim Order, the Final Order, and each Loan Document shall continue in full force and effect. In such event, each Loan Document shall be automatically reinstated and the Borrower shall take such action as may be reasonably requested by the Lender to effect such reinstatement.

Section 10.06    Counterparts; Integration; Effectiveness.

(a)    This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.

(b)    This Agreement and the other Loan Documents constitute the entire contract among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. **THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND THERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(c)    Delivery of an executed counterpart of a signature page of this Agreement or any other Loan Document by telecopy, pdf or other electronic transmission shall be effective as delivery of a manually executed counterpart thereof.

Section 10.07    Severability.    Any provision of this Agreement or any other Loan Document held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof or thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

Section 10.08    GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS.

(a)    THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS. CHAPTER 346 OF THE TEXAS FINANCE CODE (WHICH REGULATES CERTAIN

REVOLVING CREDIT LOAN ACCOUNTS AND REVOLVING TRI-PARTY ACCOUNTS) SHALL NOT APPLY TO THIS AGREEMENT OR THE NOTES.

(b)     ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THE LOAN DOCUMENTS SHALL BE BROUGHT IN THE BANKRUPTCY COURT SO LONG AS THE BANKRUPTCY CASE IS PENDING AND THEREAFTER, IN THE COURTS OF THE STATE OF TEXAS OR OF THE UNITED STATES OF AMERICA LOCATED IN HARRIS COUNTY, TEXAS, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HEREBY ACCEPTS FOR ITSELF AND (TO THE EXTENT PERMITTED BY LAW) IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.     EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING, WITHOUT LIMITATION, ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.     THIS SUBMISSION TO JURISDICTION IS NON-EXCLUSIVE AND DOES NOT PRECLUDE A PARTY FROM OBTAINING JURISDICTION OVER ANOTHER PARTY IN ANY COURT OTHERWISE HAVING JURISDICTION.

(c)     EACH PARTY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT THE ADDRESS SPECIFIED IN SECTION 10.01 OR SUCH OTHER ADDRESS AS IS SPECIFIED PURSUANT TO SECTION 10.01, SUCH SERVICE TO BECOME EFFECTIVE THIRTY (30) DAYS AFTER SUCH MAILING.  NOTHING HEREIN SHALL AFFECT THE RIGHT OF A PARTY OR ANY HOLDER OF A NOTE TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST ANOTHER PARTY IN ANY OTHER JURISDICTION.

(d)     EACH     PARTY     HEREBY     (i)     IRREVOCABLY     AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN; (ii) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES; AND (iii) CERTIFIES THAT NO PARTY HERETO NOR ANY REPRESENTATIVE, AGENT OR COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS.

Section 10.09  Headings.  Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

Section 10.10    <u>Interest Rate Limitation</u>.  It is the intention of the parties hereto that the Lender shall conform strictly to usury laws applicable to it.  Accordingly, if the transactions contemplated hereby would be usurious as to the Lender under laws applicable to it (including the laws of the United States of America and the State of Texas or any other jurisdiction whose laws may be mandatorily applicable to such Lender notwithstanding the other provisions of this Agreement), then, in that event, notwithstanding anything to the contrary in any of the Loan Documents, it is agreed as follows:  (a) the aggregate of all consideration which constitutes interest under law applicable to the Lender that is contracted for, taken, reserved, charged or received by the Lender under any of the Loan Documents or agreements or otherwise in connection with the Note shall under no circumstances exceed the maximum amount allowed by such applicable law, and any excess shall be canceled automatically and if theretofore paid shall be credited by the Lender on the principal amount of the Indebtedness (or, to the extent that the principal amount of the Indebtedness shall have been or would thereby be paid in full, refunded by the Lender to the Borrower); and (b) in the event that the maturity of the Note is accelerated by reason of an election of the holder thereof resulting from any Event of Default under this Agreement or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest under law applicable to the Lender may never include more than the maximum amount allowed by such applicable law, and excess interest, if any, provided for in this Agreement or otherwise shall be canceled automatically by the Lender as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited by the Lender on the principal amount of the Indebtedness (or, to the extent that the principal amount of the Indebtedness shall have been or would thereby be paid in full, refunded by the Lender to the Borrower).  All sums paid or agreed to be paid to the Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by law applicable to the Lender, be amortized, prorated, allocated and spread throughout the stated term of the Loans evidenced by the Note until payment in full so that the rate or amount of interest on account of any Loans hereunder does not exceed the maximum amount allowed by such applicable law.  To the extent that Chapter 303 of the Texas Finance Code is relevant for the purpose of determining the Highest Lawful Rate applicable to the Lender, the Lender elects to determine the applicable rate ceiling under such Chapter by the weekly ceiling from time to time in effect.  Chapter 346 of the Texas Finance Code does not apply to the Borrower's obligations hereunder.

[SIGNATURE PAGE FOLLOWS]

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.


BORROWER:                        **KT SPEARS CREEK, LLC**


                                 By:_____
                                 Name:_____
                                 Title:_____


LENDER:                          **JK AIR INVESTMENT GROUP, LLC**


                                 By:_____
                                 Name:_____
                                 Title:_____

# EXHIBIT A
# PROMISSORY NOTE

$100,000.00                                                  _____, 2011

     FOR VALUE RECEIVED, KT Spears Creek, LLC, a South Carolina limited liability company (the "Borrower") hereby promises to pay to JK Air Investment Group, LLC (the "Lender"), or its registered assigns, at the place and in the manner designated by the Lender, the principal sum of up to One Hundred Thousand Dollars ($100,000.00) or such lesser amount as shall equal the aggregate unpaid principal amount of the Loans made by the Lender to the Borrower under the Credit Agreement, as hereinafter defined), in lawful money of the United States of America and in immediately available funds, on the date provided in the Credit Agreement, and to pay interest on the unpaid principal amount of each such Loan, at such office, in like money and funds, for the period commencing on the date of such Loan until such Loan shall be paid in full, at the rates per annum and on the dates provided in the Credit Agreement.

     This Note is the Note referred to in the Debtor-In-Possession Credit Agreement dated as of _____, 2011, between the Borrower and the Lender (as the same may be amended, supplemented or restated from time to time, the "Credit Agreement"), and evidences Loans made by the Lender thereunder.  Capitalized terms used in this Note have the respective meanings assigned to them in the Credit Agreement.

     This Note is a registered Note and, as provided in the Credit Agreement, upon surrender of this Note for registration of transfer or exchange (and in the case of a surrender for registration of transfer, duly endorsed or accompanied by a written instrument of transfer duly executed by the registered holder of this Note or such holder's attorney duly authorized in writing), a new Note for a like aggregate principal amount will be issued to, and registered in the name of, the transferee.  Prior to the due presentment for registration and transfer, the Borrower may treat the Person in whose name this Note is registered as the holder and the owner of this Note for the purpose of receiving payment and for all other purposes of this Note and the Credit Agreement. Notwithstanding anything to the contrary herein, the right to receive payments of interest and principal under this Note shall be transferable only upon surrender for cancellation of this Note, and the issuance of a new Note registered in the name of the transferee.

     This Note is issued pursuant to, and is subject to the terms and conditions set forth in, the Credit Agreement and is entitled to the benefits provided for in the Credit Agreement and the other Loan Documents.  The Credit Agreement provides for the acceleration of the maturity of this Note upon the occurrence of certain events, for prepayments of Loans upon the terms and conditions specified therein and other provisions relevant to this Note.  THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS.

               **KT SPEARS CREEK, LLC**

               By:_____
               Name:_____
               Title:_____

*Signature Page to Credit Agreement*

<table>
<tr><th colspan="16">KT Spears Creek DIP Loan Budget</th></tr>
<tr><th colspan="16"><em>Wednesday, June 01, 2011</em></th></tr>
<tr><th></th><th>6-Jun</th><th>13-Jun</th><th>20-Jun</th><th>27-Jun</th><th>4-Jul</th><th>11-Jul</th><th>18-Jul</th><th>25-Jul</th><th>1-Aug</th><th>8-Aug</th><th>15-Aug</th><th>22-Aug</th><th>29-Aug</th><th></th><th>Total</th></tr>
<tr><td><strong>Revenue</strong></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>Chiron Equities DIP Loan</td><td>10,000</td><td>-</td><td>-</td><td>25,000</td><td>-</td><td>20,000</td><td>15,000</td><td>-</td><td>20,000</td><td>-</td><td>5,000</td><td>-</td><td>-</td><td></td><td>95,000</td></tr>
<tr><td><strong>Total Revenue</strong></td><td><strong>10,000</strong></td><td><strong>-</strong></td><td><strong>-</strong></td><td><strong>25,000</strong></td><td><strong>-</strong></td><td><strong>20,000</strong></td><td><strong>15,000</strong></td><td><strong>-</strong></td><td><strong>20,000</strong></td><td><strong>-</strong></td><td><strong>5,000</strong></td><td><strong>-</strong></td><td><strong>-</strong></td><td></td><td><strong>95,000</strong></td></tr>
<tr><td><strong>Expenses</strong></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>Legal Fees (Okin, Adams, Kilmer)</td><td>-</td><td>-</td><td>-</td><td>15,000</td><td>-</td><td>-</td><td>-</td><td>-</td><td>20,000</td><td>-</td><td>-</td><td>-</td><td>-</td><td></td><td>35,000</td></tr>
<tr><td>Sales Marketing/Advertising/Brokerage Fees</td><td>-</td><td>-</td><td>6,000</td><td>-</td><td>-</td><td>-</td><td>6,000</td><td>-</td><td>-</td><td>-</td><td>6,000</td><td>-</td><td>-</td><td></td><td>18,000</td></tr>
<tr><td>General & Administrative Expenses</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td>100</td><td></td><td>1,300</td></tr>
<tr><td>Travel Costs</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>2,000</td><td>-</td><td>-</td><td>800</td><td>-</td><td>-</td><td>-</td><td>-</td><td></td><td>2,800</td></tr>
<tr><td>Professional Reports</td><td>-</td><td>-</td><td>-</td><td>4,000</td><td>-</td><td>-</td><td>8,000</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td></td><td>12,000</td></tr>
<tr><td>Anticipated Loan Due Diligence Fee</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>20,000</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td></td><td>20,000</td></tr>
<tr><td>Quarterly Trustee Fees</td><td>-</td><td>-</td><td>-</td><td>4,750</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td>-</td><td></td><td>4,750</td></tr>
<tr><td><strong>Total Expenses</strong></td><td><strong>100</strong></td><td><strong>100</strong></td><td><strong>6,100</strong></td><td><strong>23,850</strong></td><td><strong>100</strong></td><td><strong>22,100</strong></td><td><strong>14,100</strong></td><td><strong>100</strong></td><td><strong>20,900</strong></td><td><strong>100</strong></td><td><strong>6,100</strong></td><td><strong>100</strong></td><td><strong>100</strong></td><td></td><td><strong>93,850</strong></td></tr>
<tr><td><strong>Net Cash Remaining</strong></td><td><strong>9,900</strong></td><td><strong>9,800</strong></td><td><strong>3,700</strong></td><td><strong>4,850</strong></td><td><strong>4,750</strong></td><td><strong>2,650</strong></td><td><strong>3,550</strong></td><td><strong>3,450</strong></td><td><strong>2,550</strong></td><td><strong>2,450</strong></td><td><strong>1,350</strong></td><td><strong>1,250</strong></td><td><strong>1,150</strong></td><td></td><td></td></tr>
</table>

**KT Spears Creek, LLC - Greenhill Parish Crossing (Columbia, SC)**
**Pro Forma Operating Budget**
*Period June, 2011 - December, 2011*

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | |
| **Rental Income** | | | | | | | |
| Market Rent | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 |
| Loss to Lease | -631.67 | -631.67 | -631.67 | -631.67 | -631.67 | -631.67 | -631.67 |
| **Potential Rent** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** |
| | | | | | | | |
| **Other Rental Income** | | | | | | | |
| One-Time Concessions | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 |
| Renewal Concessions | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 |
| Recurring Concessions | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 |
| Preferred Employer Discount | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 |
| Vacancy Loss | -21,000.00 | -21,000.00 | -20,000.00 | -22,000.00 | -22,000.00 | -21,000.00 | -24,000.00 |
| Employee Units | -224.00 | -224.00 | -224.00 | -224.00 | -224.00 | -224.00 | -224.00 |
| Model & Storage Units | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 |
| Guest Suite | -935.00 | -935.00 | -935.00 | -935.00 | -935.00 | -200.00 | 0.00 |
| Bad Debt - Rent | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 |
| Bad Debt Recovery - Rent | 581.64 | 581.64 | 581.64 | 581.64 | 581.64 | 581.64 | 581.64 |
| **Total Rental Income** | **168,263.79** | **168,263.79** | **169,263.79** | **167,263.79** | **167,263.79** | **168,998.79** | **166,198.79** |
| | | | | | | | |
| **Other Income** | | | | | | | |
| Access Gate Remote Income | 73.33 | 73.33 | 73.77 | 72.90 | 72.90 | 73.65 | 72.43 |
| Administrative Fees | 2,116.67 | 2,116.67 | 2,129.25 | 2,104.09 | 2,104.09 | 2,125.91 | 2,090.69 |
| Application Fees | 450.00 | 450.00 | 452.67 | 447.33 | 447.33 | 451.97 | 444.48 |
| Cable TV Commissions | 420.25 | 420.25 | 422.75 | 417.75 | 417.75 | 422.09 | 415.09 |
| Club Room Rental Fees | 171.67 | 171.67 | 172.69 | 170.65 | 170.65 | 172.42 | 169.56 |
| Damages | 772.10 | 772.10 | 776.69 | 767.51 | 767.51 | 775.47 | 762.62 |
| Eviction Fees | 93.33 | 93.33 | 93.89 | 92.78 | 92.78 | 93.74 | 92.19 |
| Garage Income | 4,804.38 | 4,804.38 | 4,832.93 | 4,775.82 | 4,775.82 | 4,825.36 | 4,745.42 |
| Late Charge Fees | 1,869.00 | 1,869.00 | 1,880.11 | 1,857.89 | 1,857.89 | 1,877.16 | 1,846.06 |
| Locks / Key Income | 46.67 | 46.67 | 46.94 | 46.39 | 46.39 | 46.87 | 46.09 |
| Month-to-Month Premiums | 33.33 | 33.33 | 33.53 | 33.14 | 33.14 | 33.48 | 32.92 |
| NSF Fees | 30.00 | 30.00 | 30.18 | 29.82 | 29.82 | 30.13 | 29.63 |
| Pet Fees - Non-Refundable | 716.67 | 716.67 | 720.93 | 712.41 | 712.41 | 719.80 | 707.87 |
| Pet Rent | 16.67 | 16.67 | 16.77 | 16.57 | 16.57 | 16.74 | 16.46 |
| Short Term Premiums | 13.33 | 13.33 | 13.41 | 13.25 | 13.25 | 13.39 | 13.17 |
| Storage Rent | 180.43 | 180.43 | 181.51 | 179.36 | 179.36 | 181.22 | 178.22 |
| Transfer Fee | 416.67 | 416.67 | 419.14 | 414.19 | 414.19 | 418.49 | 411.55 |
| Vending Income | 35.99 | 35.99 | 36.20 | 35.78 | 35.78 | 36.15 | 35.55 |
| Washer / Dryer Rental Income | 113.33 | 113.33 | 114.01 | 112.66 | 112.66 | 113.83 | 111.94 |
| **Total Other Income** | **12,373.81** | **12,373.81** | **12,447.35** | **12,300.28** | **12,300.28** | **12,427.86** | **12,221.96** |
| **Total Rental and Other Income** | **180,637.61** | **180,637.61** | **181,711.14** | **179,564.07** | **179,564.07** | **181,426.66** | **178,420.75** |
| | | | | | | | |
| **EXPENSES** | | | | | | | |
| **Operating Expenses** | | | | | | | |
| | | | | | | | |
| **Payroll & Benefits** | | | | | | | |
| Management - Salaries | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 |
| Assistant Management - Salaries | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 |
| Leasing - Salaries | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 |
| Bonuses | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 |
| Quarterly Bonuses | 0.00 | 1,218.00 | 0.00 | 0.00 | 1,218.00 | 0.00 | 0.00 |
| Maintenance - Salaries | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 |
| Assistant Maintenance - Salaries | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 |
| Payroll Taxes | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 |
| 401k Contributions | 146.07 | 146.07 | 146.07 | 146.07 | 146.07 | 146.07 | 146.07 |
| Employee Burden | 894.84 | 894.84 | 894.84 | 894.84 | 894.84 | 894.84 | 894.84 |
| Group Insurance | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 |
| **Total Payroll & Benefits** | **20,071.11** | **21,289.11** | **20,071.11** | **20,071.11** | **21,289.11** | **20,071.11** | **20,071.11** |

## KT Spears Creek, LLC - Greenhill Parish Crossing (Columbia, SC)
## Pro Forma Operating Budget
*Period June, 2011 - December, 2011*

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **Repairs & Maintenance** | | | | | | | |
| Access Gate Expense | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 |
| Appliance Repairs | 155.53 | 155.53 | 155.53 | 155.53 | 155.53 | 155.53 | 155.53 |
| Building - Interior | 23.91 | 23.91 | 23.91 | 23.91 | 23.91 | 23.91 | 23.91 |
| Common Area Repairs | 29.48 | 29.48 | 29.48 | 29.48 | 29.48 | 29.48 | 29.48 |
| HVAC Supplies / Repairs | 104.29 | 104.29 | 104.29 | 104.29 | 104.29 | 104.29 | 104.29 |
| Lighting Supplies / Repairs | 93.50 | 93.50 | 93.50 | 93.50 | 93.50 | 93.50 | 93.50 |
| Locks & Keys | 10.64 | 10.64 | 10.64 | 10.64 | 10.64 | 10.64 | 10.64 |
| Maintenance Supplies | 108.71 | 108.71 | 108.71 | 108.71 | 108.71 | 108.71 | 108.71 |
| Plumbing Supplies / Repairs | 61.23 | 61.23 | 61.23 | 61.23 | 61.23 | 61.23 | 61.23 |
| Safety & Fire Supplies / Maint | 12.69 | 12.69 | 12.69 | 12.69 | 12.69 | 12.69 | 12.69 |
| Signage Supplies / Repairs | 49.92 | 49.92 | 49.92 | 49.92 | 49.92 | 49.92 | 49.92 |
| Small Tools & Equipment | 140.82 | 140.82 | 140.82 | 140.82 | 140.82 | 140.82 | 140.82 |
| **Total Repairs & Maintenance** | **815.72** | **815.72** | **815.72** | **815.72** | **815.72** | **815.72** | **815.72** |
| | | | | | | | |
| **Make - Ready / Redecorating** | | | | | | | |
| Blinds / Drapes Repair | 50.76 | 50.76 | 50.76 | 50.76 | 50.76 | 50.76 | 50.76 |
| Carpet Cleaning / Repair - Vacant | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 |
| Cleaning Supplies | 40.22 | 40.22 | 40.22 | 40.22 | 40.22 | 40.22 | 40.22 |
| Maid / Cleaning Service | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 |
| Paint Contractor | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 |
| Painting Supplies | 176.90 | 176.90 | 176.90 | 176.90 | 176.90 | 176.90 | 176.90 |
| Vinyl / Tile Repair - Vacant | 17.96 | 17.96 | 17.96 | 17.96 | 17.96 | 17.96 | 17.96 |
| **Total Make - Ready / Redecorating** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** |
| | | | | | | | |
| **Recreational Amenities** | | | | | | | |
| Business Center | 14.26 | 14.26 | 14.26 | 14.26 | 14.26 | 14.26 | 14.26 |
| Club Room | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 |
| Pool Supplies / Maint | 52.74 | 52.74 | 52.74 | 52.74 | 52.74 | 52.74 | 52.74 |
| Other Recreational Amenities | 174.80 | 174.80 | 174.80 | 174.80 | 174.80 | 174.80 | 174.80 |
| **Total Recreational Amenities** | **337.04** | **337.04** | **337.04** | **337.04** | **337.04** | **337.04** | **337.04** |
| | | | | | | | |
| **Contract Services** | | | | | | | |
| Fire Alarm Contract | 31.17 | 31.17 | 31.17 | 31.17 | 31.17 | 31.17 | 31.17 |
| Intrusion Alarm Contract | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 |
| Janitorial Contract | 446.67 | 446.67 | 446.67 | 446.67 | 446.67 | 446.67 | 446.67 |
| Lake Maintenance Contract | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Landscape Maintenance Contract | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 |
| Patrol / Courtesy Officer Contract | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Pest Control Contract | 276.00 | 276.00 | 276.00 | 276.00 | 276.00 | 276.00 | 276.00 |
| Termite Contract | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,000.00 | 0.00 |
| Trash Removal Contract | 716.33 | 716.33 | 720.58 | 712.07 | 712.07 | 719.46 | 707.54 |
| Trash Removal Rebill | -781.33 | -781.33 | -785.98 | -776.69 | -776.69 | -784.75 | -771.74 |
| Washer / Dryer Rental Contract | 2,309.75 | 2,309.75 | 2,323.48 | 2,296.03 | 2,296.03 | 2,319.84 | 2,281.41 |
| **Total Contract Services** | **5,782.58** | **5,782.58** | **5,795.92** | **5,769.24** | **5,769.24** | **8,792.39** | **5,755.03** |
| **Total Operating Expenses** | **31,405.62** | **32,623.62** | **31,418.96** | **31,392.28** | **32,610.28** | **34,415.43** | **31,378.07** |

### Selling, General & Administrative

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **Advertising / Marketing / Promotions** | | | | | | | |
| Advertising - Internet | 660.75 | 660.75 | 660.75 | 660.75 | 660.75 | 660.75 | 660.75 |
| Advertising - Other Sources | 143.65 | 143.65 | 143.65 | 143.65 | 143.65 | 143.65 | 143.65 |
| Advertising - Trade Publications | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 |
| Call Center Service | 573.50 | 573.50 | 573.50 | 573.50 | 573.50 | 573.50 | 573.50 |
| Locator Fees | 96.33 | 96.33 | 96.33 | 96.33 | 96.33 | 96.33 | 96.33 |
| Marketing / Promotions | 106.73 | 106.73 | 106.73 | 106.73 | 106.73 | 106.73 | 106.73 |
| Marketing - Printing Expenses | 155.12 | 155.12 | 155.12 | 155.12 | 155.12 | 155.12 | 155.12 |
| Model Expense | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 |
| Prospect Refreshments | 43.97 | 43.97 | 43.97 | 43.97 | 43.97 | 43.97 | 43.97 |
| Resident Activities | 6.81 | 6.81 | 6.81 | 6.81 | 6.81 | 6.81 | 6.81 |
| Resident Referral Fees | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Resident Retention | 63.80 | 63.80 | 63.80 | 63.80 | 63.80 | 63.80 | 63.80 |
| Shopping Reports | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 |
| Signage | 28.06 | 28.06 | 28.06 | 28.06 | 28.06 | 28.06 | 28.06 |
| **Total Advertising / Marketing / Promotions** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** |

**KT Spears Creek, LLC - Greenhill Parish Crossing (Columbia, SC)**
**Pro Forma Operating Budget**
*Period June, 2011 - December, 2011*

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **Office Expenses** | | | | | | | |
| Answering / On-hold Service | 89.00 | 89.00 | 89.00 | 89.00 | 89.00 | 89.00 | 89.00 |
| Copy Machine Contract | 314.00 | 314.00 | 314.00 | 314.00 | 314.00 | 314.00 | 314.00 |
| Forms | 76.59 | 76.59 | 76.59 | 76.59 | 76.59 | 76.59 | 76.59 |
| Office Equipment - Rental / Repair | 44.95 | 44.95 | 44.95 | 44.95 | 44.95 | 44.95 | 44.95 |
| Office Supplies | 15.26 | 15.26 | 15.26 | 15.26 | 15.26 | 15.26 | 15.26 |
| Pagers / Cellular Phones | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| Postage & Delivery | 156.36 | 156.36 | 156.36 | 156.36 | 156.36 | 156.36 | 156.36 |
| Printing Expense | 48.66 | 48.66 | 48.66 | 48.66 | 48.66 | 48.66 | 48.66 |
| Resident Screening | 177.92 | 177.92 | 177.92 | 177.92 | 177.92 | 177.92 | 177.92 |
| Telephone Expense | 945.30 | 945.30 | 945.30 | 945.30 | 945.30 | 945.30 | 945.30 |
| **Total Office Expenses** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** |
| | | | | | | | |
| **Other General & Administrative** | | | | | | | |
| Assoc. Fees / Membership Dues | 162.33 | 162.33 | 162.33 | 162.33 | 162.33 | 162.33 | 162.33 |
| Bank Charges | 157.61 | 157.61 | 157.61 | 157.61 | 157.61 | 157.61 | 157.61 |
| Computer Expense | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Employee Recruitment | 82.87 | 82.87 | 82.87 | 82.87 | 82.87 | 82.87 | 82.87 |
| Eviction Fees | 321.39 | 321.39 | 321.39 | 321.39 | 321.39 | 321.39 | 321.39 |
| Legal Fees | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 |
| Licenses / Fees / Permits | 958.56 | 958.56 | 958.56 | 958.56 | 958.56 | 958.56 | 958.56 |
| Mileage Expense | 116.39 | 116.39 | 116.39 | 116.39 | 116.39 | 116.39 | 116.39 |
| Training / Seminars | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Travel Expense | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Uniform Rental / Purchase | 6.37 | 6.37 | 6.37 | 6.37 | 6.37 | 6.37 | 6.37 |
| **Total Other General & Administrative** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** |
| | | | | | | | |
| **Utilities** | | | | | | | |
| Electric - Common Areas | 4,207.82 | 4,207.82 | 4,232.83 | 4,182.82 | 4,182.82 | 4,226.20 | 4,156.18 |
| Electric - Models | 139.63 | 139.63 | 140.46 | 138.80 | 138.80 | 140.24 | 137.91 |
| Electric - Vacant Units | 2,590.82 | 2,590.82 | 2,606.21 | 2,575.42 | 2,575.42 | 2,602.13 | 2,559.02 |
| Utility Rebill Service Fees | 1,463.15 | 1,463.15 | 1,471.84 | 1,454.45 | 1,454.45 | 1,469.54 | 1,445.19 |
| Water / Sewer | 10,223.96 | 10,223.96 | 10,284.72 | 10,163.20 | 10,163.20 | 10,268.62 | 10,098.49 |
| Water / Sewer Rebill | -11,259.11 | -11,259.11 | -11,326.02 | -11,192.20 | -11,192.20 | -11,308.29 | -11,120.93 |
| **Total Utilities** | **7,366.27** | **7,366.27** | **7,410.04** | **7,322.49** | **7,322.49** | **7,398.44** | **7,275.86** |
| | | | | | | | |
| **Management Fees** | | | | | | | |
| Management Fees | 5,747.95 | 5,747.95 | 5,782.11 | 5,713.79 | 5,713.79 | 5,773.05 | 5,677.41 |
| **Total Management Fees** | **5,747.95** | **5,747.95** | **5,782.11** | **5,713.79** | **5,713.79** | **5,773.05** | **5,677.41** |
| | | | | | | | |
| **Taxes** | | | | | | | |
| Ad Valorem Property Taxes | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 |
| Personal Property Taxes | 481.25 | 481.25 | 481.25 | 481.25 | 481.25 | 481.25 | 481.25 |
| **Total Taxes** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** |
| | | | | | | | |
| **Insurance** | | | | | | | |
| Property Insurance | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 |
| General Liability Insurance | 656.74 | 656.74 | 656.74 | 656.74 | 656.74 | 656.74 | 656.74 |
| Umbrella Liability Insurance | 182.78 | 182.78 | 182.78 | 182.78 | 182.78 | 182.78 | 182.78 |
| Boiler Insurance | 35.60 | 35.60 | 35.60 | 35.60 | 35.60 | 35.60 | 35.60 |
| Builder's Risk Insurance | 310.67 | 310.67 | 310.67 | 310.67 | 310.67 | 310.67 | 310.67 |
| Other Insurance | 5.55 | 5.55 | 5.55 | 5.55 | 5.55 | 5.55 | 5.55 |
| **Total Insurance** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** |
| **Total Selling, General & Administrative** | **49,861.63** | **49,861.63** | **49,939.57** | **49,783.69** | **49,783.69** | **49,918.92** | **49,700.69** |
| | | | | | | | |
| **Total Expenses** | **81,267.26** | **82,485.26** | **81,358.54** | **81,175.98** | **82,393.98** | **84,334.35** | **81,078.77** |
| | | | | | | | |
| **Net Operating Income** | **99,370.35** | **98,152.35** | **100,352.61** | **98,388.09** | **97,170.09** | **97,092.31** | **97,341.98** |
| | | | | | | | |
| **Routine Capitalized Expenses** | | | | | | | |
| Appliances - Dishwashers | 0.00 | 275.00 | 0.00 | 0.00 | 0.00 | 275.00 | 0.00 |
| Appliances - Refrigerators | 0.00 | 0.00 | 600.00 | 0.00 | 0.00 | 600.00 | 0.00 |
| Appliances - Stove / Microwaves / Range Hoods | 200.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 200.00 |
| Carpet | 933.28 | 933.28 | 933.28 | 933.28 | 933.28 | 933.28 | 933.28 |
| Ceiling Fans / Fixtures | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 |
| Landscape Upgrades | 0.00 | 0.00 | 0.00 | 2,150.00 | 0.00 | 0.00 | 0.00 |
| Countertops | 0.00 | 50.00 | 0.00 | 0.00 | 50.00 | 0.00 | 0.00 |
| Mini-Blinds / Drapes | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 40.00 | 0.00 |
| **Total Routine Capitalized Expenses** | **1,195.78** | **1,320.78** | **1,635.78** | **3,345.78** | **1,045.78** | **1,910.78** | **1,195.78** |
| | | | | | | | |
| **CASH FLOW** | **98,174.57** | **96,831.57** | **98,716.83** | **95,042.31** | **96,124.31** | **95,181.53** | **96,146.20** |

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In Re:  KT Spears Creek, LLC          )
                                                        )
                                                        )        Bankruptcy Case No: 11-33991
                              Debtor.             )
_____)

**FIRST PALMETTO SAVINGS BANK, RESPONSE IN SUPPORT OF THE
MOTION TO DESIGNATE AS A SINGLE ASSET REAL ESTATE CASE**
**(Ref. Dkt. No. 26)**

First Palmetto Savings Bank, FSB ("FPSB"), joins in and adopts Creditor RBC Bank

(USA)'s ("RBC") Motion to Designate as Single Asset Real Estate Case (Dkt. No. 26).

1.        Rather than restate all of the legitimate reasons to and authorities for designating this

case as a single asset real estate case, FPSB hereby incorporates and adopts the arguments set forth in

RBC's motion.

2.        FPSB is a secured creditor of the Debtor by virtue of that certain promissory note

dated June 22, 2010 in the principal amount of Eight Hundred Eighty-Five Thousand Seven Hundred

Nineteen and 46/100s ($885,719.46) dollars with interest at a rate of six and 00/100ths (6.00%)

percent per annum and that certain mortgage ("Mortgage") dated March 16, 2009 and recorded on

March 17, 2009 in the Office of the Register of Deeds for Richland County, South Carolina.  **See**

**Exhibit A and B** attached hereto and incorporated by reference.

3.        The Debtor agrees that the Mortgage is a valid first priority lien on undeveloped real

property located in South Carolina and more particularly described on the attached **Exhibit C**

("Subject Property").  The Subject Property is contiguous to the real property subject to RBC's

Mortgage and part of the same project of the Debtor.

1

4.      The Subject Property is immediately adjacent and contiguous to the real property

encumbered by RBC's mortgage dated May 25, 2006, and recorded on June 2, 2006 in the office of

the Register of Deeds for Richland County.

5.      FPSB is informed and believes that all of the parcels of real property which are

subject to the liens of the secured creditors in this bankruptcy case are part of a common real estate

project, and it is the sole source of income of the Debtor.

6.      FPSB is further informed and believes that no other substantial business is being

conducted by the Debtor other than common real estate project referenced in RBC's motion.

FOR THESE REASONS, based upon the arguments set forth in RBC's motion, those set

forth herein and such other arguments as may be advanced at the hearing on this motion, it is

appropriate for this Court to designate the above-captioned matter as single asset real estate case.

Respectfully submitted,

GREENBERG TRAURIG, LLP

/s/ Shari L. Heyen
Shari L. Heyen
HeyenS@gtlaw.com
Texas State Bar No. 09564750
Fed. ID. No. 13664
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone (713)374-3500
Facsimile (713)374-3505

*Attorney for First Palmetto Savings Bank, FSB*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 10, 2011, a true and correct copy of the
foregoing was electronically filed with the Clerk of the United States Bankruptcy Court for the
Southern District of Texas, and was served via the Court's electronic notification system to those
who receive such notice.

/s/ Shari L. Heyen
Shari L. Heyen

# EXHIBIT A

# Note

HOU 407310003v1

| | | |
|---|---|---|
| K T SPEARS CREEK, LLC<br>5410 PIPING ROCK<br>HOUSTON, TX 77056 | FIRST PALMETTO SAVINGS BANK, FSB<br>1636 HWY 17 NORTH<br>MT PLEASANT, SC 29464 | Loan Number 770858704<br>Date 06-22-2010<br>Maturity Date 06-22-2011<br>Loan Amount $ 885,719.46<br>Renewal Of 77-0858704 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of EIGHT HUNDRED EIGHTY FIVE THOUSAND SEVEN HUNDRED NINETEEN AND 46/100 _____ Dollars $ 885,719.46

☒ **Single Advance:** I will receive all of this principal sum on 06-22-2010 _____ . No additional advances are contemplated under this note

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note  On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated
Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time  This feature is subject to all other conditions and expires on _____
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions)

**INTEREST:** I agree to pay interest on the outstanding principal balance from 06-22-2010 _____ at the rate of 6.000% per year until 06-22-2011 _____ .

☐ **Variable Rate:** This rate may then change as stated below
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index  It will be entirely in your control
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
     A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ % The rate may not change more than _____ % each _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments
  ☐ The amount of each scheduled payment will change     ☐ The amount of the final payment will change
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below.
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above)
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is not made within 10 _____ days after it is due, I agree to pay a late charge of 5.000% OF THE PAYMENT AMOUNT _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which  ☐ are  ☐ are not  included in the principal amount above _____

**PAYMENTS:** I agree to pay this note as follows
11 MONTHLY INTEREST PAYMENTS RANGING FROM $4133.36 TO $4576.22 BEGINNING 07-22-2010 AND 1 PAYMENT OF $890,295.68 ON 06-22-2011

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date) MORTGAGE DATED 03-16-2009

(This section is for your internal use  Failure to list a separate security document does not mean the agreement will not secure this note )

Signature for Lender

_David C Ryan_
**DAVID C RYAN, VICE-PRESIDENT**

**PURPOSE:** The purpose of this loan is RENEWAL WITH $50K PRINCIPAL REDUCTION _____

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date**
K T SPEARS CREEK, LLC

_Kyle Tauch_
**KYLE TAUCH, MANAGING MEMBER**

**DEFINITIONS:** As used on page 1, "X" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us") "You" or "your" means the Lender and its successors and assigns

**APPLICABLE LAW:** The law of the state of South Carolina will govern this note Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement No modification of this agreement may be made without your express written consent Time is of the essence in this agreement

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal The remainder of each payment will then reduce the unpaid principal, and then unpaid principal If you and I agree to a different application of payments, we will describe our agreement on this note I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary)

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity) If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me

**INDEX RATE.** The index will serve only as a device for setting the rate on this note You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note For the purpose of interest calculation, the accrual method will determine the number of days in a "year" If an accrual method is stated, then you may use any reasonable accrual method for calculating interest

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier

**SINGLE ADVANCE LOANS.** If this is a single advance loan, you and I expect that you will make only one advance of principal However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal If this is closed end credit, repaying a part of the principal will not entitle me to additional credit

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you "Right to receive money from you" means
(1) any deposit account balance I have with you,
(2) any money owed to me on an item presented to you or in your possession for collection or exchange, and
(3) any repurchase agreement or other nondeposit obligation
"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off This total includes any balance the due date for which you properly accelerate under this note
If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account
You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default

and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein

**DEFAULT:** I will be in default if any one or more of the following occur
(1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required, (3) I fail to pay, or keep any promise, on any debt or agreement I have with you, (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings, (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due), (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided, (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you, (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority, (9) I change my name or assume an additional name without first notifying you before making such a change, (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops, (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C F R Part 1940, Subpart G, Exhibit M

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges)
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me
(5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other of similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law) To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code

**WAIVER:** I give up my rights to require you to do certain things I will not require you to.
(1) demand payment of amounts due (presentment),
(2) obtain official certification of nonpayment (protest), or
(3) give notice that amounts due have not been paid (notice of dishonor)
I waive any defenses I have based on suretyship or impairment of collateral

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note You may without notice release any party to this agreement without releasing any other party If you give up any of your rights, with or without notice, it will not affect my duty to pay this note Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full ) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note I will not assign my obligation under this agreement without your prior written approval. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address My current address is on page 1. I agree to inform you in writing of any change in my address I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated

---

**WAIVER OF HEARING PRIOR TO IMMEDIATE POSSESSION:** If this loan is for a business purpose I agree to waive the right to five days' notice and a preseizure hearing prior to seizure of any personal property which may secure this loan.

---

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |



Experts © 1994, 1991 Bankers Systems, Inc., St Cloud, MN Form UN-SC 2/7/2002

# EXHIBIT B

# Mortgage

This document was prepared by (name, address, phone):
NEXSEN PRUET, LLC
1230 MAIN STREET, STE 700
COLUMBIA, SC 29201
1-803-253-8226

Book 1503-3141                                    Mortgage
2009018007  03/17/2009 16 27 10 100    State Tax $0 00
Fee-$16 00   County Tax $0.00

2009018007  Richard W Rodden          Richland County R O D

——— State of South Carolina ———————————— Space Above This Line For Recording Data ———

# REAL ESTATE MORTGAGE
## (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage is <u>03-16-2009</u> and the parties and their addresses are as follows:

   MORTGAGOR·   K T SPEARS CREEK, LLC, FEE SIMPLE
   5410 PIPING ROCK
   HOUSTON, TX 77056

   ☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors.

   LENDER:   FIRST PALMETTO SAVINGS BANK, FSB
   ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA
   1636 HWY 17 NORTH
   MT PLEASANT, SC 29464

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

   SEE EXHIBIT A ATTACHED HERETO

The property is located in <u>RICHLAND</u> at <u>TWO NOTCH ROAD</u>
                                      (County)

_____ , <u>ELGIN</u> _____ , South Carolina _____
        (Address)              (City)                                    (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

SOUTH CAROLINA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FMHA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)    (page 1 of 8)

Expere$ ©1994, 2001 Bankers Systems, Inc , St Cloud, MN Form AGCO-RESI-SC 1/21/2003

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed $ 935,719.46 _____ . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage. Interest under the Note will be deferred, accrued or capitalized, however, Mortgagee shall not be required to defer, accrue or capitalize any interest except as provided in the Note. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, interest rate, maturity date)*.

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt.
   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

*(page 2 of 8)*

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:

   A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.

   B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.

   C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive

*(page 5 of 8)*

any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development

16. **DEFAULT.** Mortgagor will be in default if any of the following occur.
   A. Any party obligated on the Secured Debt fails to make payment when due,
   B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has

characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**20. CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**21. INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A. Mortgagor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

*(page 6 of 8)*

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guaranteed, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

27. **WAIVER OF HOMESTEAD.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage:

☐ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits** Mortgagor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

*(page 6 of 8)*

Exper☺® ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-SC 1/21/2003

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

29. **OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☐ **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may, within thirty days after the sale of the mortgaged property, apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:**    By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____

Entity Name    K T SPEARS CREEK, LLC

_____ (Seal)        _____ (Seal)
(Signature) KYLE TAUCH, MANAGING MEMBER    (Date)        (Signature)        (Date)

Signed, Sealed and delivered in the presence of:

_____        _____
(Witness) #1        (Witness) #2

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgments.

Expero    ©1994, 2001 Bankers Systems, Inc., St Cloud, MN Form AGCO-FESI-SC 1/21/2003        (page 7 of 8)

## EXHIBIT "A"

### LEGAL DESCRIPTION

**PARCEL 1:**

ALL that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28-2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland. State of South Carolina containing 6 28 acres, more or less, and shown on boundary survey prepared for K. T. Spears Creek LLC. prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079, at page 572   Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 6 28 acres.

ALSO shown on that certain Final Plat prepared for KT Spears Creek, LLC and Final Plat of Greenhill Parish Crossing, Phase I & II, prepared by WK Dickson dated May 9, 2006 and recorded in said Office in Book 1362, at page 585.

LESS AND EXCEPTING "Released Parcel" shown in cross-hatch on Exhibit A-1 attached hereto.

DERIVATION. Deed to KT Spears, LLC, a South Carolina limited liability company, from G P. Monroe, Jr. and Virginia R. Monroe dated August 1, 2005 and recorded August 1, 2005 in the Office of the Register of deeds for Richland County in Record Book 1081, at page 827

TMS No ·  25900-07-01

**PARCEL 2:**

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E F Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43, at page 812. Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

DERIVATION: Deed to KT Spears Creek, LLC, a South Carolina limited liability company. from Dorothy W Hudson dated January 15. 2008 and recorded January 15, 2008 in the Office of the Register of Deeds for Richland County, South Carolina in Record Book 1392, at page 2537

TMS NO.· 25800-03-04

RELEASED PARCEL
SHOWN IN CROSS-HATCH

U.S. HIGHWAY #1 (120' R/W)

N/F
KT SPEARS CREEK, LLC
DB 1001-027
PLAT 1070-572
TMS #25000-04-04

N/F
KT SPEARS CREEK, LLC
DB 1001-027
PLAT 1070-572
TMS #25000-04-04

N/F
DOROTHY W HUDSON
DB R0348-1216
PLAT 43-812
TMS #25000-03-04

AREA
PHASE I
743,022 SQ. FT.
17.06 ACRES

| CURVE | RADIUS | LENGTH | DELTA | CHORD | BEARING |
|-------|--------|--------|-------|-------|---------|
| C1 | 742.00' | 1'30.67 | 47'05'44" | 1'13.70' | N06'16'40"L |
| C2 | 641.00' | 54.85' | 7'30'12" | 54.75' | N41'17'42"L |
| C3 | 611.00' | 185.50' | 17'24'41" | 184.80' | S57'05'11"W |
| C4 | 611.00' | 347.50' | 2'03'20" | 345.04' | S45'04'45"W |
| C5 | 60.00' | 119.03' | 47'44'21" | 73.34' | S10'37'20"W |

# EXHIBIT C

# Subject Property

HOU 407310003v1

PARCEL 1:

All that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28- 2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland, State of South Carolina containing 6.28 acres, more or less, and shown on boundary survey prepared for K.T. Spears Creek, LLC, prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S. No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079 at Page 572.  Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 6.28 acres.

Also shown on that certain Final Plat prepared for K.T. Spears Creek, LLC and Final Plat of Greenhill Parish Crossing, Phase I & II, prepared by WK Dickson dated May 9, 2006 and recorded in said Office of the Register of Deeds for Richland County in Book 1362 at Page 585.

LESS AND EXCEPTING a portion of the subject property identified as the "Released Parcel" as shown in cross-hatch on a Plat identified and attached as "Exhibit A-1" to the Mortgage dated March 16, 2009 and recorded March 17, 2009 in the Office of the Register of Deeds for Richland County in Book 1503 at Page 3141.  The same "Released Parcel" is also identified as the "driveway" on a certain Boundary Survey prepared for K.T. Spears Creek, LLC, prepared by Daniel Riddick & Associates, Inc. dated July 12, 2005 and recorded in the Office of the Register of Deeds for Richland County in Book 1079 at Page 572.

This being the same property conveyed to K T Spears Creek, LLC, a South Carolina limited liability company, by deed from G. P. Monroe, Jr. and Virginia R. Monroe dated August 1, 2005 and recorded August 1, 2005 in the Office of the Register of Deeds for Richland County in Book 1081 at Page 827.

TMS #:  25900-07-01

PARCEL 2:

All that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E F Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43 at Page 812.  Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

This being the same property conveyed to K T Spears Creek, LLC, a South Carolina limited liability company, by deed from Dorothy W. Hudson dated January 15, 2008 and recorded January 15, 2008 in the Office of the Register of Deeds

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In Re:  KT Spears Creek, LLC | ) | |
| | ) | Bankruptcy Case No: 11-33991 |
| Debtor. | ) | |
| | ) | |

**FIRST PALMETTO SAVINGS BANK, RESPONSE IN SUPPORT OF THE
MOTION TO DISMISS FOR BAD FAITH FILING AND FOR IMPROPER VENUE**
(Ref. Dkt. No. #25)

First Palmetto Savings Bank, FSB ("FPSB"), joins in and adopts Creditor RBC Bank (USA)'s ("RBC") Motion to Dismiss for Bad Faith Filing and for Improper Filing (Dkt. No. 25), and moves as follows:

1.      Rather than restate all of the legitimate reasons to and authorities for dismissal of this case, FPSB hereby incorporates and adopts the arguments set forth in RBC's motion.

2.      FPSB is a secured creditor of the Debtor by virtue of that certain promissory note dated June 22, 2010 in the principal amount of Eight Hundred Eighty-Five Thousand Seven Hundred Nineteen and 46/100s ($885,719.46) dollars with interest at a rate of six and 00/100ths (6.00%) percent per annum and that certain mortgage ("Mortgage") dated March 16, 2009 and recorded on March 17, 2009 in the Office of the Register of Deeds for Richland County, South Carolina.  **See Exhibits A and B** attached hereto and incorporated by reference.

3.      The Debtor agrees that the Mortgage is a valid first priority lien on undeveloped real property located in South Carolina and more particularly described on the attached **Exhibit C**.  This undeveloped real property is contiguous to the real property subject to RBC's Mortgage and part of the same project of the Debtor.

1

4.       Based upon the arguments set forth in RBC's motion, those set forth herein, and such

other arguments as may be advanced at the hearing on this motion, it is appropriate for this Court to

dismiss this bankruptcy case because it was filed in bad faith.  Moreover, venue is improper in this

Court.  Alternatively, FPSB respectfully submits that this matter be transferred to the United States

Bankruptcy Court for the District of South Carolina, Columbia Division, where the Debtor's assets

and operations are singularly located.

FOR THESE REASONS, FPSB respectfully submits that this case be dismissed or

alternatively, that it be transferred to the United States Bankruptcy Court for the District of South

Carolina, Columbia Division, and for such other relief to which FPSB has demonstrated just

entitlement.

Respectfully submitted,

GREENBERG TRAURIG, LLP

/s/ Shari L. Heyen
Shari L. Heyen
HeyenS@gtlaw.com
Texas State Bar No. 09564750
Fed. ID. No.  13664
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone (713)374-3500
Facsimile (713)374-3505

*Attorney for First Palmetto Savings Bank, FSB*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 10, 2011, a true and correct copy of the
foregoing was electronically filed with the Clerk of the United States Bankruptcy Court for the
Southern District of Texas, and was served via the Court's electronic notification system to those
who receive such notice.

/s/ Shari L. Heyen

# EXHIBIT A

## Note

| | | |
|---|---|---|
| K T SPEARS CREEK, LLC<br>5410 PIPING ROCK<br>HOUSTON, TX 77056 | FIRST PALMETTO SAVINGS BANK, FSB<br>1636 HWY 17 NORTH<br>MT PLEASANT, SC 29464 | Loan Number 770858704<br>Date 06-22-2010<br>Maturity Date 06-22-2011<br>Loan Amount $ 885,719.46<br>Renewal Of 77-0858704 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of EIGHT HUNDRED EIGHTY FIVE THOUSAND SEVEN HUNDRED NINETEEN AND 46/100 _____ Dollars $ 885,719.46

☒ **Single Advance:** I will receive all of this principal sum on 06-22-2010 _____ . No additional advances are contemplated under this note

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are _____
_____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions)

**INTEREST:** I agree to pay interest on the outstanding principal balance from 06-22-2010 _____ at the rate of _____ 6.000%
per year until 06-22-2011 _____ .

☐ **Variable Rate:** This rate may then change as stated below
  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
_____
_____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control
  ☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
    A change in the interest rate will take effect _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ % The rate may not change more than _____ % each _____
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments
  ☐ The amount of each scheduled payment will change    ☐ The amount of the final payment will change
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below.
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above)
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is not made within 10 _____ days after it is due, I agree to pay a late charge of 5.000% OF THE PAYMENT AMOUNT _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above _____

**PAYMENTS:** I agree to pay this note as follows
11 MONTHLY INTEREST PAYMENTS RANGING FROM $4133.36 TO $4576.22 BEGINNING 07-22-2010 AND 1 PAYMENT OF $890,295.88 ON 06-22-2011

**ADDITIONAL TERMS:**

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date) MORTGAGE DATED 03-16-2009<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)<br><br>Signature for Lender<br><br>_David C Ryan_ signature<br>**DAVID C RYAN, VICE-PRESIDENT** | **PURPOSE:** The purpose of this loan is RENEWAL WITH $50K PRINCIPAL REDUCTION<br><br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date**<br>K T SPEARS CREEK, LLC  _signature_<br><br>**KYLE TAUCH, MANAGING MEMBER** |

SOUTH CAROLINA - UNIVERSAL NOTE
Exper̄i® ©1994, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-SC 3/7/2002

R 77-0 85 8704

(page 1 of 2)

**DEFINITIONS:** As used on page 1, "X" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of South Carolina will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not agree to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you,
(2) any money owed to me on an item presented to you or in your possession for collection or exchange, and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default

and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C F R Part 1940, Subpart G, Exhibit M

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies.
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges)
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other cost allowed by law if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code

**WAIVER:** I give up my rights to require you to do certain things I will not require you to.
(1) demand payment of amounts due (presentment),
(2) obtain official certification of nonpayment (protest), or
(3) give notice that amounts due have not been paid (notice of dishonor)

I waive any defenses I have based on suretyship or impairment of collateral

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party if you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated

---

**WAIVER OF HEARING PRIOR TO IMMEDIATE POSSESSION:** If this loan is for a business purpose I agree to waive the right to five days' notice and a preseizure hearing prior to seizure of any personal property which may secure this loan.

---

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experi, © 1994, 1991 Bankers Systems, Inc., St Cloud, MN Form UN-SC 3/7/2002

# EXHIBIT B

## Mortgage

This document was prepared by (name, address, phone):
NEXSEN PRUET, LLC
1230 MAIN STREET, STE 700
COLUMBIA, SC 29201
1-803-253-8226

Book 1503-3141                                      Mortgage
2009016007  03/17/2009 16 27 10 100      State Tax $0 00
Fee-$16 00   County Tax $0.00

2009016007  Richard W Rodden                Richland County R O D

——————— State of South Carolina ———————            ———— Space Above This Line For Recording Data ————

# REAL ESTATE MORTGAGE
## (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage is <u>03-16-2009</u> _____ and the parties and their addresses
   are as follows:

   MORTGAGOR·  K T SPEARS CREEK, LLC, FEE SIMPLE
               5410 PIPING ROCK
               HOUSTON, TX 77056

               ☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors.

   LENDER:     FIRST PALMETTO SAVINGS BANK, FSB
               ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA
               1636 HWY 17 NORTH
               MT PLEASANT, SC 29464

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure
   the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following
   described property:

   SEE EXHIBIT A ATTACHED HERETO

   The property is located in <u>RICHLAND</u> _____ at <u>TWO NOTCH ROAD</u> _____
                                            (County)
   _____ , <u>ELGIN</u> _____ , South Carolina _____
                (Address)                    (City)                                        (Zip Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all
   diversion payments or third party payments made to crop producers, and all existing and future improvements,
   structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described
   above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells,
   water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated
   with the Property, however established.

SOUTH CAROLINA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FMHA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)        (page 1 of 8)

Expere¤ ©1994, 2001 Bankers Systems, Inc , St Cloud, MN Form AGCO-RESI-SC 1/21/2003

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed $ 935,719 46 . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage. Interest under the Note will be deferred, accrued or capitalized, however, Mortgagee shall not be required to defer, accrue or capitalize any interest except as provided in the Note. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, interest rate, maturity date).*

   B All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt.
   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.

   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

*(page 2 of 8)*

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
   B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).
   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive

*(page 3 of 8)*

any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development

16. **DEFAULT.** Mortgagor will be in default if any of the following occur.
   A. Any party obligated on the Secured Debt fails to make payment when due,
   B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents  All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has

Experº ©1994, 2001 Bankers Systems, Inc., St Cloud, MN Form AGCO-RESI-SC 1/21/2003

characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.
D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.
I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.
J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.
K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.
L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A. Mortgagor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Exßereß ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-SC 1/21/2003

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guaranteed, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

27. **WAIVER OF HOMESTEAD.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage:

☐ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits** Mortgagor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

*(page 6 of 8)*

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

**29. OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☐ **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may, within thirty days after the sale of the mortgaged property, apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____

Entity Name    K T SPEARS CREEK, LLC

_____ (Seal)    _____ (Seal)
(Signature) KYLE TAUCH, MANAGING MEMBER    (Date)    (Signature)    (Date)

Signed, Sealed and delivered in the presence of:

_____    _____
(Witness) #1    (Witness) #2

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgments.

Experº © 1994, 2001 Bankers Systems, Inc., St Cloud, MN Form AGCO-FESI-SC 1/21/2003    (page 7 of 8)

### EXHIBIT "A"

### LEGAL DESCRIPTION

PARCEL 1:

ALL that certain piece, parcel or tract of land, with improvements thereon. fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28-2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland. State of South Carolina containing 6 28 acres, more or less, and shown on boundary survey prepared for K. T. Spears Creek LLC. prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079, at page 572   Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 6 28 acres.

ALSO shown on that certain Final Plat prepared for KT Spears Creek, LLC and Final Plat of Greenhill Parish Crossing, Phase I & II, prepared by WK Dickson dated May 9, 2006 and recorded in said Office in Book 1362, at page 585.

LESS AND EXCEPTING "Released Parcel" shown in cross-hatch on Exhibit A-1 attached hereto.

DERIVATION. Deed to KT Spears, LLC, a South Carolina limited liability company, from G  P. Monroe, Jr. and Virginia R. Monroe dated August 1. 2005 and recorded August 1, 2005 in the Office of the Register of deeds for Richland County in Record Book 1081, at page 827

TMS No ·  25900-07-01

PARCEL 2:

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E  F  Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in  the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43, at page 812. Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

DERIVATION: Deed to KT Spears Creek, LLC, a South Carolina limited liability company. from Dorothy W Hudson dated January 15. 2008 and recorded January 15, 2008 in the Office of the Register of Deeds for Richland County, South Carolina in Record Book 1392, at page 2537

TMS NO.· 25800-03-04

# EXHIBIT C

## Subject Property

PARCEL 1:

All that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28- 2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland, State of South Carolina containing 6.28 acres, more or less, and shown on boundary survey prepared for K.T. Spears Creek, LLC, prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S. No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079 at Page 572.  Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 6.28 acres.

Also shown on that certain Final Plat prepared for K.T. Spears Creek, LLC and Final Plat of Greenhill Parish Crossing, Phase I & II, prepared by WK Dickson dated May 9, 2006 and recorded in said Office of the Register of Deeds for Richland County in Book 1362 at Page 585.

LESS AND EXCEPTING a portion of the subject property identified as the  "Released Parcel" as shown in cross-hatch on a Plat identified and attached as "Exhibit A-1" to the Mortgage dated March 16, 2009 and recorded March 17, 2009 in the Office of the Register of Deeds for Richland County in Book 1503 at Page 3141.  The same "Released Parcel" is also identified as the "driveway" on a certain Boundary Survey prepared for K.T. Spears Creek, LLC, prepared by Daniel Riddick & Associates, Inc. dated July 12, 2005 and recorded in the Office of the Register of Deeds for Richland County in Book 1079 at Page 572.

This being the same property conveyed to K T Spears Creek, LLC, a South Carolina limited liability company, by deed from G. P. Monroe, Jr. and Virginia R. Monroe dated August 1, 2005 and recorded August 1, 2005 in the Office of the Register of Deeds for Richland County in Book 1081 at Page 827.

TMS #:  25900-07-01

PARCEL 2:

All that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E F Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43 at Page 812.  Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

This being the same property conveyed to K T Spears Creek, LLC, a South Carolina limited liability company, by deed from Dorothy W. Hudson dated January 15, 2008 and recorded January 15, 2008 in the Office of the Register of Deeds

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CASE NO. 11-33991-H3-11** | § | **DEBTOR: KT SPEARS CREEK, LLC** |
| | § | **JUDGE: LETITIA Z. PAUL** |
| **WITNESSES:** | § | **ATTY'S NAME: Joseph G. Epstein** |
| **Designated Representative(s) of the Debtor** | § | **ATTY'S PHONE: (713) 650-8400** |
| **Any witness called by the Debtor** | § | **STATE BAR NO.: 06639320** |
| **Any rebuttal or impeachment witness** | § | **DATE: June 13, 2011 at 10:15 a.m.** |
| | § | **NATURE OF PROCEEDING: Motion to** |
| | § | **Designate Case as Single Asset Real Estate,** |
| | § | **Case, Motion to Dismiss Case for Bad** |
| | § | **Faith and Improper Venue, Motion for** |
| | § | **Turnover of Property and Accounting,** |
| | § | **Motion for Interim and Final Order** |
| | § | **Approving Use of Cash Collateral, Motion** |
| | § | **to Approve Post-petition Secured** |
| | § | **Financing** |

**RBC BANK (USA)'S EXHIBIT INDEX**

| EX. NO. | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | DISPOSITION | AFTER TRIAL |
|---|---|---|---|---|---|---|---|---|
| 1. | Proof of Claim and all Exhibits | | | | | | | |
| 2. | Assignment of Leases and Rents | | | | | | | |
| 3. | Complaint for foreclosure filed in Richland County, South Carolina | | | | | | | |
| 4. | Temporary Restraining Order issued by the Court of Common Please in Richland County, South Carolina | | | | | | | |

| EX. NO. | DESCRIPTION | M A R K E D | O F F E R E D | O B J E C T | A D M I T | D A T E | D I S P O S I T I O N | A F T E R   T R I A L |
|---|---|---|---|---|---|---|---|---|
| 5. | Order Appointing Receiver | | | | | | | |
| 6. | Affidavit of Process Server | | | | | | | |
| 7. | Master's Order and Judgment of Foreclosure and Sale | | | | | | | |
| 8. | Map of Property owned by Debtor | | | | | | | |
| 9. | Debtor's Schedules of Assets and Liabilities (Docket No. 14) | | | | | | | |
| 10. | Debtor's Statement of Financial Affairs (Docket No. 15) | | | | | | | |
| | Any exhibits designated by any other parties in interest | | | | | | | |
| | Any pleadings, reports, exhibits, transcripts, or other documents filed in the debtor's bankruptcy case | | | | | | | |
| | Any impeachment or rebuttal exhibits | | | | | | | |

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____*/s/ Sean B. Davis*_____
        Joseph G. Epstein
        Texas State Bar No. 06639320
        S.D. Texas No. 11733
        Sean B. Davis
        State Bar No. 24069583
        S.D. Tex. No. 1048341

                *AND*

**JOHNSTON, ALLISON & HORD, P.A.**

By: _____*/s/ Constance L. Young*_____
        Constance L. Young,
        N.C. State Bar No. 16115
        Admitted *Pro Hac Vice*
        1065 East Morehead Street
        Charlotte, NC  28204
        Telephone: 704.332-1181
        Facsimile:  704.376-1628
        Email: cyoung@jahlaw.com

**ATTORNEYS FOR RBC BANK (USA)**

### Certificate of Service

This is to certify that on June 10, 2011, a true and correct copy of the above and foregoing was served by electronic transmission to all registered ECF users appearing in this case.

                */s/ Sean B. Davis*
                One of Counsel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |
| | § | |

| | |
|---|---|
| § | Hearing Date:  June 13, 2011, 10:15 a.m. |
| § | |
| § | Judge:  The Honorable Letitia Z. Paul |
| § | |
| § | Attorneys:  Matthew S. Okin |
| § |                Maggie D. Conner |

### WITNESS & EXHIBIT LIST FOR
### HEARING ON JUNE 13, 2011 AT 10:15 A.M. CT

**WITNESS:**

| Ws No. | Name | Title | Nature of Testimony | Time Estimate |
|---|---|---|---|---|
| 1 | Kyle D. Tauch | Debtor's Sole Member | Mr. Tauch will testify regarding matters including, but not limited to, the Debtor's (a) business operations; (b) budgets; and, (c) immediate need for use of cash collateral, DIP financing, and turnover of estate property. | 12 Minutes |

**EXHIBITS:**

| Ex. No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Real Property Description No. 1 | | | | |
| 2 | Real Property Description No. 2 | | | | |
| 3 | Real Property Description No. 3 | | | | |
| 4 | Map of Debtor's Real Property - Color | | | | |
| 5 | Map of Debtor's Real Property – Lender Delineations | | | | |

| Ex. No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---------|-------------|---------|-----------|------------------------|-------------|
| 6 | KT Spears Creek DIP Credit Agreement | | | | |
| 7 | KT Spears Creek DIP Loan Budget | | | | |
| 8 | KT Spears Creek Cash Collateral Budget | | | | |
| 9 | Proposed Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection | | | | |
| 10 | Proposed Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-Petition Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing | | | | |
| 11 | Proposed Order Granting Emergency Motion for Turnover of Property and Request for Accounting | | | | |
| 12 | Proposed Order Denying Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 29 U.S.C. § 1406(a) and § 1408 | | | | |
| 13 | Proposed Order Denying Motion to Designate Case as Single Assets Real Estate Case Pursuant to 11 U.S.C. § 101(51b) | | | | |

Debtor, KT Spears Creek, LLC, reserves the right to (i) admit any exhibits designated by any other party; (ii) to call any witnesses designated by any other party; and (iii) to amend or supplement this Witness and Exhibit List any time before the June 13, 2011 Hearing.

Dated:  June 10, 2011

2

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118
      mokin@oakllp.com
      mconner@oakllp.com

      **PROPOSED ATTORNEYS FOR THE
      DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system, regular United States mail, and/or hand delivery on the 10th day of June, 2011.

      */s/  Maggie D. Conner*
      Maggie D. Conner

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 1

Description:               Approximately 30 acres, including apartment homes.
Greenhill Parish Crossing Apartment Homes
10682 Two North Road
Elgin, South Carolina  29045
See attached Schedule A-1

Date of Purchase/Loan:     May 25, 2006

Lender:                RBC Centura Bank

Value:                 Unknown

Alleged Secured Claim:    $22,646,397.88

Case 10-04241-dd99 Doc 1 Document 507/05/11 Filed in TXSB on 07/05/10 18:12:16 Page 2 Desc Main
Case 11-33991 Document 121 Filed in TXSB on 05/17/11 Page 4 of 32
Document Page 469 of 824

# SCHEDULE A-1

## PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST, A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND) ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF 33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 81°49'37" WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00 FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37" EAST 34.85 FEET TO A #5 REBAR (SET);THENCE CONTINUING ALONG SAID R/W SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A CALCULATED POINT ; THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51 FEET TO A CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE OF 100.67 FEET TO A CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT; THENCE NORTH 61°03'52" WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH 14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR (FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF 69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A #5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W NORTH 72°00'37" EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W NORTH 71°54'05" EAST, A DISTANCE OF 5.80 FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF 104.64 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17" EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#: A portion of 25800-03-05 and 25900-04-04

Derivation: Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

## PHASE II PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59" EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND; THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03" EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.


TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| Debtor. | § | **(Chapter 11)** |
| | § | |

**REAL PROPERTY DESCRIPTION NO. 2**

Description:            Approximately 65 acres, undeveloped
                       See attached Schedule A-2

Date of Purchase/Loan:   December 21, 2007

Lender:                First Savers Bank

Value:                 $11,000,000.00

Alleged Secured Claim:  $6,300,000.00

# SCHEDULE A-2

## LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION:  Deed from DAK I, LLC to K T Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.:  25800-03-40 (portion)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| Debtor. | § | **(Chapter 11)** |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 3

Description:                          Approximately 7 acres, undeveloped
See attached Schedule A-3

Date of Purchase/Loan:    2006

Lender:                            First Palmetto Savings Bank

Value:                               $1,800,000.00

Alleged Secured Claim:   $870,000.00

# SCHEDULE A-3

6.28

EXHIBIT A

LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28-2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland, State of South Carolina containing 6.28 acres, more or less, and shown on boundary survey prepared for K. T. Spears Creek LLC, prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S. No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079, at page 572, and having the following metes and bounds to wit: BEGINNING at a point located at the intersection of U. S. Highway No 1 and Old National Highway and running in a southeasterly direction along Old National Highway S 50°27'26" a distance of 426.96 feet to a point; thence turning and running in a southwesterly direction S81°04'18"W a distance of 242.18 feet to a point; thence S78°40'38"W a distance of 809.15 feet to a point; thence turning and running in a northwesterly direction N11°19'22"W a distance of 268.21 feet to a point; thence turning and running in a northeasterly direction N74°48'34"E a distance of 783.43 feet to the point and place of Beginning.

DERIVATION: An undivided one-half interest to Virginia R. Monroe from G. P. Monroe, Jr. by deed dated December 29, 1997 and recorded December 30, 1997 in the Office of the Register of Deeds for Richland County in Deed Book 1425, at page 688; and Deed to G. P. Monroe, Jr. from J. L. Rogers dated April 26, 1960 and recorded April 28, 1960 in the Office of the Clerk of Court (n/k/a Register of Deeds) for Richland County in Volume 273, at page 374.

TMS No.: Portion of 25900-04-04

NPCOL1:787401.1-DE-(IMM) 035873-00001

**EXHIBIT "A"**     1.08

**LEGAL DESCRIPTION**

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E. F. Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43, at page 812. Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

DERIVATION: Quitclaim Deed to Dorothy W. Hudson from Joe Q. Hudson dated September 14, 1999 and recorded September 28, 1999 in the Office of the Register of Deeds for Richland County, South Carolina in Record Book 348, at page 1216.

TMS NO.: 25800-03-04

NPCOL1:1272286.1-DE-(IMM) 035873-00002

Richland County Map

From richlandmaps.com

# Richland County Map



From richlandmaps.com

# DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS DEBTOR-IN-POSSESSION CREDIT AGREEMENT dated as of June 9, 2011, is entered into by and among KT Spears Creek, LLC (the "Borrower"), and JK Air Investment Group, LLC (the "Lender").

## R E C I T A L S

A.    The Borrower previously filed a voluntary petition for relief as a debtor and debtor-in-possession under Title 11 of the United States Bankruptcy Code (as amended from time to time, the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") under Case number 11-33991 (the "Chapter 11 Case").

B.    Borrower is continuing to operate its business and manage its property as a debtor-in-possession under the Bankruptcy Code.

C.    The Borrower has requested that the Lender provide postpetition financing to the Borrower in the form of an unsecured debtor-in-possession loan facility with a maximum aggregate commitment for the Lender of $100,000.00.

D.    The Lender has agreed to make such debtor-in-possession loan and extension of credit subject to the terms and conditions of this Agreement.

E.    In consideration of the mutual covenants and agreements herein contained and of the loans, extensions of credit and commitments hereinafter referred to, the parties hereto agree as follows:

## ARTICLE I
## Definitions and Accounting Matters

Section 1.01    Terms Defined Above.  As used in this Agreement, each term defined above has the meaning indicated above.

Section 1.02    Certain Defined Terms.  As used in this Agreement, the following terms have the meanings specified below:

"Affiliate" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Agreement" means this Debtor-In-Possession Credit Agreement, as the same may from time to time be amended, modified, supplemented or restated.

"Availability Period" means the period from and including the Effective Date to but excluding the Termination Date.

"Board" means the Board of Governors of the Federal Reserve System of the United States of America or any successor Governmental Authority.

"Borrowing" means a borrowing by the Borrower under this Agreement.

"Borrowing Request" means a request by the Borrower for a Borrowing under this Agreement.

"Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banks in Houston, Texas are authorized or required by law to remain closed.

"Capital Leases" means, in respect of any Person, all leases which shall have been, or should have been, in accordance with GAAP, recorded as capital leases on the balance sheet of the Person liable (whether contingent or otherwise) for the payment of rent thereunder.

"Carve Out" has the meaning assigned such term in the Interim Order.

"Cash Collateral" has the meaning assigned such term in the Interim Order.

"Casualty Event" means any loss, casualty or other insured damage to any Property of the Borrower in an amount greater than $25,000, or any nationalization, taking under power of eminent domain or by condemnation or similar proceeding of, any Property of the Borrower having a fair market value in excess of $25,000.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute.

"Commitment" means, with respect to the Lender, the commitment of such Lender to make Loans hereunder in an amount up to $100,000.00.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. For the purposes of this definition, and without limiting the generality of the foregoing, any Person that owns directly or indirectly 10% or more of the Equity Interests having ordinary voting power for the election of the directors or other governing body of a Person (other than as a limited partner of such other Person) will be deemed to "control" such other Person. "Controlling" and "Controlled" have meanings correlative thereto.

"Debt" means, for any Person, without duplication and on a consolidated basis, the sum of the following (without duplication): (a) all obligations of such Person for borrowed money or evidenced by bonds, bankers' acceptances, debentures, notes or other similar instruments; (b) all obligations of such Person (whether contingent or otherwise) in respect of letters of credit, surety or other bonds and similar instruments; (c) all accounts payable and other accrued expenses, liabilities or other obligations of such Person; (d) all obligations of such Person under Capital Leases; (e) all obligations of such Person under Synthetic Leases; (f) all Debt (as defined in the other clauses of this definition) of others secured by a Lien on any property of such Person, whether or not such Debt is assumed by such Person; and (g) all Debt (as defined in the other clauses of this definition) of others guaranteed by such Person or in which such Person otherwise

2

assures a creditor against loss of the Debt (howsoever such assurance shall be made) to the extent of the lesser of the amount of such Debt and the maximum stated amount of such guarantee or assurance against loss.

"DIP Liens" has the meaning assigned such term in Section 2.06.

"Effective Date" means the date on which the conditions specified in Section 5.01 are satisfied (or waived by Lender).

"Environmental Laws" means any and all Governmental Requirements pertaining in any way to public health and safety, the environment, the preservation or reclamation of natural resources, or the management, release or threatened release of any Hazardous Materials, in effect in any and all jurisdictions in which the Borrower is conducting, or at any time has conducted, business, or where any property or assets of the Borrower are located.

"Environmental Permit" means any permit, registration, license, notice, approval, consent, exemption, variance, or other authorization required under or issued pursuant to applicable Environmental Laws.

"Equity Interests" means shares of capital stock, partnership interests, membership interests in a limited liability company, beneficial interests in a trust or other equity ownership interests in a Person, and any warrants, options or other rights entitling the holder thereof to purchase or acquire any such Equity Interest.

"Event of Default" has the meaning assigned such term in Section 9.01.

"Excepted Liens" means:  (a) Liens for Taxes, assessments or other governmental charges or levies which are not delinquent or which are being contested in good faith by appropriate action; (b) Liens in connection with workers' compensation, unemployment insurance or other social security, old age pension or public liability obligations which are not delinquent or which are being contested in good faith by appropriate action; (c) statutory landlord's liens, operators', vendors', carriers', warehousemen's, repairmen's, mechanics', suppliers', workers', materialmen's, construction or other like Liens arising by operation of law in the ordinary course of business; (d) easements, restrictions, servitudes, permits, conditions, covenants, exceptions or reservations applicable to the Property; and (e) Liens securing Pre-Petition Debt.

"Existing Credit Agreements" means (i) that certain Commercial Promissory Note dated as of May 25, 2006, between Borrower and RBC Centura Bank in the original principal amount of $19,700,000.00, as modified or amended from time to time (the "RBC Bank Note"), and secured by a mortgage on the Excluded Property, (ii) that certain Loan Agreement dated as of December 21, 2007, among the Borrower, First Savers Bank, a division of Plantation Federal Bank, and Kyle D. Tauch in the amount of $6,000,000.00, and secured by a mortgage on all or a portion of the Property; and (iii) that certain loan agreement between the Borrower and First Palmetto Savings Bank entered into in 2006 and by a mortgage on all or a portion of the Property.

"Final Order" means the final order of the Bankruptcy Court that is entered by the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), which is (i) satisfactory in form and substance to the Borrower and the Lender, adopting and/or leaving undisturbed its finding in the Interim Order, including that credit extended by the Lender under this Agreement and the other Loan Documents will be extended in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code and approving this Agreement and the Transactions (including the granting of the Liens and priority position to be provided in connection therewith), and (ii) not be subject to vacatur, amendment, modification, reversal, or stay.

"GAAP" means generally accepted accounting principles in the United States of America as in effect from time to time subject to the terms and conditions set forth in Section 1.04.

"Governmental Authority" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government over the Borrower, any Subsidiary, any of their properties, or the Lender.

"Governmental Requirement" means any law, statute, code, ordinance, order, determination, rule, regulation, judgment, decree, injunction, franchise, permit, certificate, license, authorization or other directive or requirement (whether or not having the force of law), whether now or hereinafter in effect.

"Hazardous Material" means any substance regulated or as to which liability might arise under any applicable Environmental Law and including without limitation: (a) any chemical, compound, material, product, byproduct, substance or waste defined as or included in the definition or meaning of "hazardous substance," "hazardous material," "hazardous waste," "solid waste," "toxic waste," "extremely hazardous substance," "toxic substance," "contaminant," "pollutant," or words of similar meaning or import found in any applicable Environmental Law; and (b) radioactive materials, explosives, asbestos or asbestos containing materials, polychlorinated biphenyls, radon, infectious or medical wastes.

"Highest Lawful Rate" means the maximum nonusurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the Note or on other Indebtedness under applicable law.

"Indebtedness" means any and all amounts owing or to be owing by the Borrower, absolute or contingent, due or to become due, now existing or hereafter arising: (a) to the Lender under any Loan Document; and (b) all renewals, extensions and/or rearrangements thereof.

"Interest Rate" means twelve percent (12%) per annum, compounded monthly.

"Interim Order" means the interim order which is entered by the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), which is in form and substance satisfactory to the Borrower and the Lender in all respects, and which authorizes

the incurrence by the Borrower of secured and superpriority indebtedness in accordance with the Loan Documents.

"Investment" means the acquisition (whether for cash, property, services or securities or otherwise) of Equity Interests of any other Person, the contribution of capital to any other Person, or any agreement to make any such acquisition or capital contribution.

"Lien" means any interest in property securing an obligation owed to, or a claim by, a Person other than the owner of the property, whether such interest is based on the common law, statute or contract, and whether such obligation or claim is fixed or contingent.

"Loan Documents" means this Agreement and the Note.

"Loans" has the meaning assigned such term in Section 2.01.

"Material Adverse Effect" means a material adverse change in, or material adverse effect on (a) the business, operations, property or financial condition of the Borrower and its Subsidiaries taken as a whole, (b) the ability of Borrower to perform any of its obligations under any Loan Document, (c) the validity or enforceability of any Loan Document or (d) the rights and remedies of or benefits available to the Lender under any Loan Document.

"Maximum Credit Amount" means, as to the Lender, the amount of $100,000.00, or such higher amount as Lender may agree from time to time.

"Note" means the promissory note of the Borrower described in Section 2.02 and being substantially in the form of Exhibit A, together with all amendments, modifications, replacements, extensions and rearrangements thereof.

"Organizational Documents" means, with respect to any Person, (a) in the case of any corporation, the certificate of incorporation or formation and by-laws (or similar documents) of such Person, (b) in the case of any limited liability company, the certificate of formation and limited liability company agreement (or similar documents) of such Person, (c) in the case of any limited partnership, the certificate of formation and limited partnership agreement (or similar documents) of such Person, (d) in the case of any general partnership, the partnership agreement (or similar document) of such Person and (e) in any other case, the functional equivalent of the foregoing.

"Permitted Asset Sales" means sales of assets of the Borrower where the consideration received from all of such sales does not exceed $50,000 in the aggregate.

"Permitted Tax Distributions" means tax distributions to the members of the Borrower in an amount equal to (a) the sum of the highest marginal United States federal income tax rate applicable to individuals on ordinary income, multiplied by (b) the Borrower's federal taxable income.  Permitted Tax Distributions may be made quarterly, based on the Borrower's estimated taxable income for each applicable quarterly period, and annually, based on the Borrower's annual federal income tax filing.

"Person" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.

"Pre-Petition Debt" means Debt incurred by the Borrower pursuant to the Existing Credit Agreements.

"Pre-Petition Lenders" means the lenders under the Existing Credit Agreements.

"Property" means all real property owned by the Borrower, wherever located, including, without limitation, the real property described in Exhibit B; but excluding the Excluded Property.

"Redemption" means with respect to any Debt, the repurchase, redemption, prepayment, repayment, defeasance or any other acquisition or retirement for value (or the segregation of funds with respect to any of the foregoing) of such Debt. "Redeem" has the correlative meaning thereto.

"Related Parties" means, with respect to any specified Person, such Person's Affiliates and the respective directors, officers, employees, agents and advisors (including attorneys, accountants and experts) of such Person and such Person's Affiliates.

"Reorganization Plan" means a joint plan of reorganization proposed by the Borrower or any other Person in the Chapter 11 Cases.

"Restricted Payment" means any dividend or other distribution (whether in cash, securities or other Property) with respect to any Equity Interests in the Borrower, or any payment (whether in cash, securities or other Property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any such Equity Interests in the Borrower, or any option, warrant or other right to acquire any such Equity Interests in the Borrower.

"SEC" means the U.S. Securities and Exchange Commission or any successor Governmental Authority.

"S&P" means Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies, Inc., and any successor thereto that is a nationally recognized rating agency.

"Subsidiary" means: (a) any Person of which at least a majority of the outstanding Equity Interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or managers or other governing body of such Person is at the time directly or indirectly owned or controlled by the Borrower, and (b) any partnership of which the Borrower is a general partner.

"Taxes" means any and all present or future taxes, levies, imposts, duties, deductions, charges or withholdings imposed by any Governmental Authority.

"Termination Date" means the earlier to occur of (i) June 1, 2012; (ii) the date which is the effective date of any Reorganization Plan; or (iii) the date of the conversion of the Chapter 11

Case to a Chapter 7 Case under the Bankruptcy Code, or (iv) the date of the dismissal of the Chapter 11 Case.

"Transactions" means the execution, delivery and performance by the Borrower of this Agreement and each other Loan Document to which it is a party, the borrowing of the Loans, the use of the proceeds thereof, and the grant of Liens to the Lender by the Borrower on the Collateral.

Section 1.03    Terms Generally; Rules of Construction.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "or" shall mean "and/or".  Unless the context requires otherwise (a) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (b) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including" and (c) any reference herein to Articles, Sections, Annexes, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Annexes, Exhibits and Schedules to, this Agreement.

Section 1.04    Accounting Terms and Determinations; GAAP.    Unless otherwise specified herein, all accounting terms used herein shall be interpreted, all determinations with respect to accounting matters hereunder shall be made, and all financial statements and certificates and reports as to financial matters required to be furnished to the Lender hereunder shall be prepared, in accordance with GAAP, applied on a consistent basis.

## ARTICLE II
## The Credits

Section 2.01    Commitment.  Subject to the terms and conditions set forth herein, the Lender agrees to make revolving loans (each a "Loan") to the Borrower during the Availability Period in an aggregate principal amount up to $100,000.00 (the "Commitment").  Within the foregoing limits and subject to the terms and conditions set forth herein, the Borrower may borrow, repay and reborrow the Loans.

Section 2.02    Note.  The Loans made by the Lender shall be evidenced by a single Note of the Borrower in substantially the form of Exhibit A, dated as of the date of this Agreement.

Section 2.03    Requests for Borrowings.  To request a Borrowing, the Borrower shall notify the Lender of such request by telephone at least one Business Day before the proposed Borrowing.  Each such telephonic and written Borrowing Request shall specify the following information: (i) the aggregate amount of the requested Borrowing; (ii) the date of such Borrowing, which shall be a Business Day; and (iii) the location and number of the applicable Borrower's account to which funds are to be disbursed.

Section 2.04    Funding of Borrowings. The Lender shall make each Loan to be made by it hereunder on the funding date in the Borrowing Request by wire transfer of immediately available funds to the account of the Borrower specified in the Borrowing Request.

Section 2.05   <u>Termination</u>.   The Commitment of the Lender to make the Loans described herein shall terminate on the Termination Date.

(a)   <u>Grant of Security Interest; Superpriority Administrative Claim</u>.   As security for the prompt payment in full of the Indebtedness, the Borrower hereby pledges and grants to Lender, a Lien and security interest (subject only to Excepted Liens) in, to and on all of the Collateral (the "<u>DIP Liens</u>").  The Indebtedness shall be a superpriority administrative expense in the Chapter 11 Case as set forth in the Interim Order and Final Order.

## ARTICLE III
## Payments of Principal and Interest; Prepayments; Fees

Section 3.01   <u>Repayment of Loans</u>.  The Borrower hereby unconditionally promises to pay to the Lender the then unpaid interest, fees and principal amount of the Loans in full in cash on the Termination Date.

Section 3.02   <u>Interest</u>.

(a)   <u>Rate</u>.  The Loans shall bear interest at the Interest Rate, but in no event to exceed the Highest Lawful Rate.

(b)   <u>Interest Payment Date</u>.  All accrued and unpaid interest shall be due and payable in full on the Termination Date.

(c)   <u>Interest Rate Computations</u>.  All interest hereunder shall be computed on the basis of a year of 360 days, unless such computation would exceed the Highest Lawful Rate, in which case interest shall be computed on the basis of a year of 365 days (or 366 days in a leap year).

Section 3.03   <u>Prepayments</u>.

(a)   <u>Optional Prepayments</u>.  The Borrower shall have the right at any time and from time to time, to prepay any Borrowing in whole or in part, subject to payment of all accrued and unpaid interest.

(b)   <u>Mandatory Prepayments</u>.  During an Event of Default, the Borrower shall prepay the Borrowings with all net cash proceeds received from sales and other dispositions of any assets of Borrower, subject to payment of all accrued and unpaid interest.

(c)   <u>No Premium or Penalty</u>.  Prepayments permitted or required under this Section 3.03 shall be without premium or penalty.

Section 3.04   <u>Origination Fee</u>.  The Borrower agrees to pay to the Lender an origination fee equal to five percent (5%) of the Commitment, with such fee being accrued to the balance of the Loans as of the Effective Date, and being due and payable in full on the Termination Date.

## ARTICLE IV
### Payments

Section 4.01    <u>Payments Generally</u>.  The Borrower shall make each payment required to be made by them hereunder prior to 5:00 pm, Houston time, on the date when due, in immediately available funds, without defense, deduction, recoupment, set-off or counterclaim.  Fees, once paid, shall be fully earned and shall not be refundable under any circumstances absent manifest error.  All such payments shall be made to the Lender at such place and in such manner as the Lender determines.  If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension.  All payments hereunder shall be made in dollars.

Section 4.02    <u>Application of Insufficient Payments</u>.  If at any time insufficient funds are received by and available to the Lender to pay fully all amounts of principal, interest and fees then due hereunder and allowable under the Interim Order, the Final Order and/or any other order of the Bankruptcy Court, such funds shall be applied (i) first, towards payment of interest and fees then due hereunder, and (ii) second, towards payment of principal then due hereunder.

## ARTICLE V
### Conditions Precedent

Section 5.01    <u>Effective Date</u>.  The obligations of the Lender to make Loans hereunder hall not become effective until the date on which each of the following conditions is satisfied (or waived by Lender):

(a)    After appropriate notice and opportunity for a hearing, entry by the Bankruptcy Court of the Interim Order finding that all credit extended by the Lender under the Loan Documents will be extended in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code, approving this Agreement and the Transactions, and granting the superpriority claim and Priming Liens described herein, and granting the protections to be afforded to the Lender, as described herein, in form and substance reasonably satisfactory to the Lender and the Borrower and approved by the Bankruptcy Court, which shall not have been vacated, modified, amended, reversed or stayed.

(b)    All corporate and judicial proceedings and all instruments and agreements in connection with the Transactions shall be reasonably satisfactory in form and substance to the Lender.

(c)    The Lender and Borrower shall have received from each party hereto counterparts of this Agreement signed on behalf of such party.

(d)    The Lender shall have received a duly executed Note payable to the order of the Lender in a principal amount equal to the Commitment.

(e)    The Lender shall be satisfied that there is no litigation seeking to enjoin or prevent the financing contemplated hereby.

Section 5.02    Each Credit Event. The obligation of each Lender to make a Loan on the occasion of any Borrowing (including the initial funding), is subject to the satisfaction of the following conditions:

(a)    The Final Order shall be in full force and effect, and shall not have been reversed, modified, amended or stayed, except for such modifications or amendments as may be reasonably acceptable to the Lender.

(b)    At the time of and immediately after giving effect to such Borrowing no Event of Default shall have occurred and be continuing.

(c)    The representations and warranties of the Borrower set forth in this Agreement and in the other Loan Documents shall be true and correct in all material respects on and as of the date of such Borrowing except to the extent any such representations and warranties are expressly limited to an earlier date.

(d)    Subject to the terms of the Interim Order, Final Order and/or any other order of the Bankruptcy Court, the Borrower shall have paid the balance of all fees and expenses then payable to the Lender, provided that the Loans shall as necessary be used for this purpose and this condition shall thereupon be satisfied upon the making of such payment from the Loans.

(e)    The receipt by the Lender of a Borrowing Request.

**ARTICLE VI**
**Representations and Warranties**

The Borrower represents and warrants to the Lender that:

Section 6.01    Organization; Powers. The Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, has all requisite power and authority, and has all material governmental licenses, authorizations, consents and approvals necessary, to own its assets and to carry on its business as now conducted, and is qualified to do business in, and is in good standing in, every jurisdiction where such qualification is required, except where failure to have such power, authority, licenses, authorizations, consents, approvals and qualifications could not reasonably be expected to have a Material Adverse Effect.

Section 6.02    Authority; Enforceability. The Transactions have been duly authorized by all necessary limited liability company action of Borrower. Each Loan Document to which the Borrower is a party has been duly executed and delivered by the Borrower and constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

Section 6.03    Approvals; No Conflicts. The Transactions (a) do not require any consent or approval of, registration or filing with, or any other action by, any Governmental Authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any Loan Document or the consummation of the

transactions contemplated thereby, except such as have been obtained or made and are in full force and effect other than those third party approvals or consents which, if not made or obtained, could not reasonably be expected to have a Material Adverse Effect or do not have an adverse effect on the enforceability of the Loan Documents, (b) will not violate any applicable law or regulation or any Organizational Document of the Borrower or any order of any Governmental Authority, (c) will not violate or result in a default under any indenture, agreement or other instrument binding upon the Borrower, or give rise to a right thereunder to require any payment to be made by the Borrower, and (d) will not result in the creation or imposition of any Lien on any property of the Borrower (other than the Liens created by the Loan Documents).

Section 6.04    Compliance with the Laws and Agreements; No Defaults.  The Borrower is in compliance with all Governmental Requirements applicable to it or its property and all agreements and other instruments binding upon it or its property, and possesses all licenses, permits, franchises, exemptions, approvals and other authorizations granted by Governmental Authorities necessary for the ownership of its property and the conduct of its business, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

Section 6.05    Insurance.  The Borrower has (a) all insurance policies sufficient for compliance with all material Governmental Requirements and all material agreements and (b) insurance coverage in at least amounts and against such risk (including, without limitation, public liability) that are usually insured against by companies similarly situated and engaged in the same or a similar business for the assets and operations of the Borrower.  The Lender has been named as an additional insured and loss payee in respect of such insurance policies.

Section 6.06    Subsidiaries.  The Borrower has no Subsidiaries.

Section 6.07    Properties; Titles, Etc.

(a)    The Borrower has good and defensible title to the Property and its other assets and properties, in each case, free and clear of all Liens except Liens permitted by Section 8.02.

(b)    The rights and properties presently owned, leased or licensed by the Borrower include all rights necessary to permit the Borrower to conduct its business in all material respects in the same manner as its business has been conducted prior to the date hereof.

Section 6.08    No Brokers.  No Person is entitled to any brokerage fee or finder's fee or similar fee or commission in connection with arranging the Loans contemplated by this Agreement as of the Effective Date.

## ARTICLE VII
## Affirmative Covenants

Until the Commitment has terminated and the principal of and interest on each Loan and all fees payable hereunder and all other amounts payable under the Loan Documents shall have been paid in full, the Borrower covenants and agrees with the Lender that:

11

Section 7.01    Use of Loan Proceeds.  The Borrower will use the proceeds of the Loans solely to pay for expenses of Borrower during the course of the Chapter 11 Case including, without limitation, for architectural renderings, surveying, appraisals, environmental reports, legal fees, loan origination fees, and other expenses approved by the Lender.

Section 7.02    Requested Information.  Promptly following any request therefore from the Lender, the Borrower will provide to Lender such information regarding the operations, business affairs and financial condition of the Borrower as the Lender may reasonably request.

Section 7.03    Notices of Material Events.  The Borrower will furnish to the Lender prompt written notice of the following:

> (a)    the occurrence of any Event of Default;

> (b)    the filing or commencement of, or the threat in writing of, any action, suit, proceeding, investigation or arbitration by or before any arbitrator or Governmental Authority against the Borrower not previously disclosed in writing to the Lender or any material adverse development in any action, suit, proceeding, investigation or arbitration (whether or not previously disclosed to the Lender) that, in either case, if adversely determined, could reasonably be expected to result in a Material Adverse Effect;

> (c)    the Borrower's receipt of any demand letter.

Section 7.04    Existence; Conduct of Business.  The Borrower will do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the rights, licenses, permits, privileges and franchises material to the conduct of its business and maintain, if necessary, its qualification to do business in each jurisdiction in which its real property assets are located or the ownership of its properties requires such qualification, except where the failure to so qualify could not reasonably be expected to have a Material Adverse Effect.

Section 7.05    Operation and Maintenance of Properties.  The Borrower will:

> (a)    operate its properties and assets in accordance with the practices of the Borrower's industry and in compliance with all applicable contracts and agreements and in compliance with all Governmental Requirements, including, without limitation, applicable Environmental Laws, except, in each case, where the failure to comply could not reasonably be expected to have a Material Adverse Effect;

> (b)    keep, preserve and maintain all property material to the conduct of its business in good working order and condition, ordinary wear and tear excepted;

Section 7.06    Insurance.  The Borrower will maintain, with financially sound and reputable insurance companies, insurance in such amounts and against such risks as are customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations.

Section 7.07    <u>Books and Records; Inspection Rights</u>.  The Borrower will keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and activities.  The Borrower will permit any representatives designated by the Lender, upon reasonable prior notice, to visit and inspect its properties, to examine and make extracts from its books and records, and to discuss its affairs, finances and condition with its officers and independent accountants, all at such reasonable times during normal business hours and as often as reasonably requested.

Section 7.08    <u>Compliance with Laws</u>.  The Borrower will comply with all laws, rules, regulations and orders of any Governmental Authority applicable to it or its property (including Environmental Laws), except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

Section 7.09    <u>Further Assurances</u>.  The Borrower will promptly execute and deliver to the Lender all such other documents, agreements and instruments reasonably requested by the Lender to comply with, cure any defects or accomplish the conditions precedent, covenants and agreements of the Borrower in the Loan Documents, or to correct any defect, error or inaccuracy in this Agreement, or to make any recordings, file any notices or obtain any consents, all as may be reasonably necessary or appropriate, in the reasonable discretion of the Lender, in connection therewith.

Section 7.10    <u>Subsidiaries</u>.  In the event that Borrower forms or acquires any Subsidiary, Borrower shall promptly cause such Subsidiary to guarantee the Indebtedness.  In connection with any such guaranty, such Borrower shall, or shall cause such Subsidiary to, (a) execute and deliver a guaranty agreement satisfactory to the Lender, (b) pledge all of the Equity Interests of such new Subsidiary, and (c) execute and deliver such other additional closing documents and certificates as shall reasonably be requested by the Lender.

## ARTICLE VIII
## Negative Covenants

Until the Commitment has terminated and the principal of and interest on each Loan and all fees payable hereunder and all other amounts payable under the Loan Documents have been paid in full, the Borrower covenants and agrees with the Lender that:

Section 8.01    <u>Debt</u>.  The Borrower will not incur, create, assume or suffer to exist any Debt, except:

(a)    the Note or other Indebtedness arising under the Loan Documents;

(b)    endorsements of negotiable instruments for collection in the ordinary course of business;

(c)    Debt under Capital Leases not to exceed $100,000.00 in aggregate principal amount at any time outstanding; and

(d)    Pre-Petition Debt.

13

Section 8.02    Liens.  The Borrower will not create, incur, assume or permit to exist any Lien on any of its properties (now owned or hereafter acquired), except:

(a)    DIP Liens securing the payment of the Indebtedness;

(b)    Excepted Liens;

(c)    Liens securing Capital Leases permitted by Section 8.01(c);

(d)    Valid, existing Liens of creditors other than the Lender and the Pre-Petition Lenders, but only to the extent determined by the Bankruptcy Court; and

(e)    Liens securing the Carve Out.

Section 8.03    Dividends, Distributions and Redemptions.  The Borrower will not declare, pay or make, or agree to pay or make, directly or indirectly, any Restricted Payment, or return any capital or make any distribution of its property or assets to its Equity Interest holders, except Borrower may declare and pay Permitted Tax Distributions.

Section 8.04    Investments, Loans and Advances.  The Borrower will not make any Investments in or to any Person.

Section 8.05    Nature of Business.  The Borrower will not allow any material change to be made in the character of its business.

Section 8.06    Mergers, Etc.  Borrower will not merge into or with or consolidate with any other Person, or permit any other Person to merge into or consolidate with it, or sell, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its property to any other Person (whether now owned or hereafter acquired) (any such transaction, a "consolidation"), or liquidate or dissolve.

Section 8.07    Sale of Properties.  Without the prior written consent of the Lender, the Borrower will not sell, assign, convey or otherwise transfer any property or assets except for Permitted Asset Sales.

Section 8.08    Subsidiaries.  The Borrower will not create or acquire any Subsidiary unless the Borrower gives prior written notice to the Lender of such creation or acquisition and complies with the terms of this Agreement regarding Subsidiaries.  The Borrower shall not sell, assign or otherwise dispose of any Equity Interests in any Subsidiary.

Section 8.09    Negative Pledge Agreements; Dividend Restrictions.  Borrower will not create, incur, assume or suffer to exist any contract, agreement or understanding (other than this Agreement, or Capital Leases creating Liens permitted by Section 8.02(c), or the Pre-Petition Credit Agreements) which in any way prohibits or restricts the granting, conveying, creation or imposition of any Lien on any of its property in favor of the Lender, or which requires the consent of or notice to other Persons in connection therewith.

14

Section 8.10    Plan of Reorganization.  Borrower will not file any Plan of Reorganization that has not been previously approved by the Lender in writing.

## ARTICLE IX
## Events of Default; Remedies

Section 9.01    Events of Default.  One or more of the following events shall constitute an "Event of Default":

(a)    the Borrower shall fail to pay any interest on or principal of any Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof, by acceleration or otherwise.

(b)    any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with any Loan Document shall prove to have been incorrect when made or deemed made.

(c)    the Borrower shall fail to observe or perform any covenant, condition or agreement contained in this Agreement or any other Loan Document, and such failure shall continue unremedied for a period of ten (10) days after notice thereof from the Lender to the Borrower.

(d)    (i) the Chapter 11 Case of Borrower shall be dismissed or converted to a Chapter 7 case, (ii) a Chapter 11 Trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of Borrower shall be appointed in the Chapter 11 Case and the order appointing such Person shall not be reversed or vacated within five (5) Business Days after the entry thereof, (iii) any other superpriority claim which is *pari passu* with or senior to the claims of the Lender shall be granted; or (iv) the Chapter 11 Case shall be moved from the Southern Division of Texas, Houston Division, to any other bankruptcy court including, without limitation, to the United States Bankruptcy Court for the District of South Carolina.

(e)    the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest other than the Lender.

(f)    an order shall be entered reversing, amending, supplementing, staying for a period in excess of five (5) Business Days, vacating or otherwise modifying the Interim Order or the Final Order without the consent of the Lender.

(g)    (i) one or more judgments as to any post-petition obligation shall be rendered against either Borrower and the enforcement thereof shall not be stayed (by court ordered stay or by consent of the party litigants) or (ii) any one or more non-monetary judgments that have, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, shall be rendered against Borrower.

(h)    the Loan Documents after delivery thereof shall for any reason, except to the extent permitted by the terms thereof, cease to be in full force and effect and valid, binding and enforceable in accordance with their terms against the Borrower.

15

(i)    Failure of the Borrower to file a Plan of Reorganization acceptable to Lender by September 2, 2011, or to have a Plan of Reorganization acceptable to Lender confirmed by November 30, 2011.

(j)    the filing and/or pursuing confirmation of any Plan of Reorganization that has not been approved by the Lender.

(k)    the filing of any pleading by Borrower, or support of any pleading by Borrower that, unless otherwise waived by the Lender, would deny the Lender the ability to credit bid, as permitted under Bankruptcy Code §363(k).

Section 9.02    Remedies.

(a)    At any time during the continuance of an Event of Default, the Lender may, by notice to the Borrower, take any or all of the following actions, at the same or different times: (i) terminate the Commitment, and thereupon the Commitment shall terminate immediately, or (ii) declare the Note and the Loans then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable), and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrower accrued hereunder and under the Note and the other Loan Documents, shall become due and payable immediately, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, all of which are hereby waived by the Borrower, or (iii) exercise all remedies of a secured party against the property and assets securing the Indebtedness as provided herein, and in the Interim Order, in the Final Order, and under applicable law. In addition to (and not in lieu of) the foregoing remedies, at any time during the continuance of an Event of Default until the Indebtedness has been paid in full, the Lender shall have the right to designate a majority of the managers or directors of the Borrower resulting in the Lender having full and complete control over the Borrower during such period.  The holder of the Equity Interest in Borrower agrees to vote all such Equity Interests held by them to appoint the managers or directors so designated by the Lender.

(b)    In the case of the occurrence and continuance of an Event of Default, the Lender will have all other rights and remedies available at law and equity.

(c)    All proceeds realized from the liquidation or other disposition of collateral or otherwise received after maturity of the Note, whether by acceleration or otherwise, shall be applied:

(i)    *first*, to payment or reimbursement of that portion of the Indebtedness constituting fees, expenses and indemnities payable to the Lender;

(ii)    *second,* to payment of accrued interest on the Loans;

(iii)    *third*, payment of principal outstanding on the Loans;

(iv)    *fourth*, to any other Indebtedness; and

16

(v)    *fifth*, any excess, after all of the Indebtedness shall have been indefeasibly paid in full in cash, shall be paid to the Borrower or as otherwise required by any Governmental Requirement.

## ARTICLE X
## Miscellaneous

Section 10.01    Notices.

(a)    Except in the case of notices and other communications expressly permitted to be given by telephone (and subject to Section 10.01(b)), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, or mailed by certified or registered mail, as follows:

(i)    if to the Borrower, to it at 22 Waugh Rd., Suite 270, Houston, Texas 77007.

(ii)    if to the Lender, to it at 550 Westcott, Suite 235, Houston, Texas 77007.

(b)    The Lender or the Borrower may, in their discretion, agree to accept notices and other communications hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.

(c)    Any party hereto may change its address for notices and other communications hereunder by notice to the other party hereto.  All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt.

Section 10.02    Waivers; Amendments.

(a)    No failure on the part of the Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power or privilege, or any abandonment or discontinuance of steps to enforce such right, power or privilege, under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under any of the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies of the Lender hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  Without limiting the generality of the foregoing, the making of a Loan shall not be construed as a waiver of any Event of Default, regardless of whether the Lender may have had notice or knowledge of such Event of Default at the time.

(b)    This Agreement may only be amended by written agreement of the Borrower and the Lender.

Section 10.03    Expenses.    The Borrower shall pay (i) all reasonable out-of-pocket expenses incurred by the Lender in the preparation, negotiation, execution, delivery and administration of this Agreement and the other Loan Documents and any amendments, modifications or waivers of or consents related to the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), (ii) all costs, expenses, Taxes, assessments and other charges incurred by the Lender in connection with any filing, registration, recording or perfection of any security interest contemplated by this Agreement, (iii) all out of pocket expenses incurred by the Lender, including the fees, charges and disbursements of any counsel for the Lender, in connection with the enforcement or protection of its rights in connection with this Agreement or any other Loan Document, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans; provided, however, that attorney fees and expenses may only be paid as approved by the Bankruptcy Court or the terms of any order of the Bankruptcy Court.

Section 10.04    Successors and Assigns.

(a)    The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Lender (and any attempted assignment or transfer by the Borrower without such consent shall be null and void).  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)    The Lender may assign to one or more assignees or participants all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans at the time owing to it) with the prior written consent (such consent not to be unreasonably withheld) of the Borrower, provided that no consent of the Borrower shall be required for an assignment made during the continuation of an Event of Default.

(c)    The Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, and this Section 10.04(c) shall not apply to any such pledge or assignment of a security interest; provided that no such pledge or assignment of a security interest shall release the Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.

(d)    Notwithstanding any other provisions of this Section 10.04, no transfer or assignment of the interests or obligations of the Lender or any grant of participations therein shall be permitted if such transfer, assignment or grant would require the Borrower to file a registration statement with the SEC or to qualify the Loans under the "Blue Sky" laws of any state.

Section 10.05    Survival; Revival; Reinstatement.

(a)    All covenants, agreements, representations and warranties made by the Borrower herein and in the other Loan Documents shall be considered to have been relied upon by the Lender and shall survive the execution and delivery of this Agreement and the making of any Loans, regardless of any investigation made by the Lender or on its behalf.

(b)    To the extent that any payments on the Indebtedness or proceeds of any collateral are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver or other Person under any bankruptcy law, common law or equitable cause, then to such extent, the Indebtedness so satisfied shall be revived and continue as if such payment or proceeds had not been received and the Lender's Liens, security interests, rights, powers and remedies under this Agreement, the Interim Order, the Final Order, and each Loan Document shall continue in full force and effect. In such event, each Loan Document shall be automatically reinstated and the Borrower shall take such action as may be reasonably requested by the Lender to effect such reinstatement.

Section 10.06    Counterparts; Integration; Effectiveness.

(a)    This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.

(b)    This Agreement and the other Loan Documents constitute the entire contract among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. **THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND THERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(c)    Delivery of an executed counterpart of a signature page of this Agreement or any other Loan Document by telecopy, pdf or other electronic transmission shall be effective as delivery of a manually executed counterpart thereof.

Section 10.07    Severability.    Any provision of this Agreement or any other Loan Document held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof or thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

Section 10.08    GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS.

(a)    THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS. CHAPTER 346 OF THE TEXAS FINANCE CODE (WHICH REGULATES CERTAIN

REVOLVING CREDIT LOAN ACCOUNTS AND REVOLVING TRI-PARTY ACCOUNTS)
SHALL NOT APPLY TO THIS AGREEMENT OR THE NOTES.

(b)    ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THE
LOAN DOCUMENTS SHALL BE BROUGHT IN THE BANKRUPTCY COURT SO LONG
AS THE BANKRUPTCY CASE IS PENDING AND THEREAFTER, IN THE COURTS OF
THE STATE OF TEXAS OR OF THE UNITED STATES OF AMERICA LOCATED IN
HARRIS COUNTY, TEXAS, AND, BY EXECUTION AND DELIVERY OF THIS
AGREEMENT, EACH PARTY HEREBY ACCEPTS FOR ITSELF AND (TO THE EXTENT
PERMITTED BY LAW) IN RESPECT OF ITS PROPERTY, GENERALLY AND
UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.  EACH
PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING, WITHOUT
LIMITATION, ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE
GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER
HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH
RESPECTIVE JURISDICTIONS.   THIS SUBMISSION TO JURISDICTION IS NON-
EXCLUSIVE AND DOES NOT PRECLUDE A PARTY FROM OBTAINING JURISDICTION
OVER ANOTHER PARTY IN ANY COURT OTHERWISE HAVING JURISDICTION.

(c)    EACH PARTY IRREVOCABLY CONSENTS TO THE SERVICE OF
PROCESS OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH ACTION OR
PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR
CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT THE ADDRESS SPECIFIED IN
SECTION 10.01 OR SUCH OTHER ADDRESS AS IS SPECIFIED PURSUANT TO
SECTION 10.01, SUCH SERVICE TO BECOME EFFECTIVE THIRTY (30) DAYS AFTER
SUCH MAILING.  NOTHING HEREIN SHALL AFFECT THE RIGHT OF A PARTY OR
ANY HOLDER OF A NOTE TO SERVE PROCESS IN ANY OTHER MANNER
PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE
PROCEED AGAINST ANOTHER PARTY IN ANY OTHER JURISDICTION.

(d)    EACH    PARTY    HEREBY    (i)    IRREVOCABLY    AND
UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW,
TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS
AGREEMENT OR ANY OTHER LOAN DOCUMENT AND FOR ANY COUNTERCLAIM
THEREIN; (ii) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT
PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY
SUCH LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL
DAMAGES, OR DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES;
AND (iii) CERTIFIES THAT NO PARTY HERETO NOR ANY REPRESENTATIVE, AGENT
OR COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR
OTHERWISE, OR IMPLIED THAT SUCH PARTY WOULD NOT, IN THE EVENT OF
LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS.

Section 10.09  Headings.  Article and Section headings and the Table of Contents used
herein are for convenience of reference only, are not part of this Agreement and shall not affect
the construction of, or be taken into consideration in interpreting, this Agreement.

Section 10.10    Interest Rate Limitation.  It is the intention of the parties hereto that the Lender shall conform strictly to usury laws applicable to it.  Accordingly, if the transactions contemplated hereby would be usurious as to the Lender under laws applicable to it (including the laws of the United States of America and the State of Texas or any other jurisdiction whose laws may be mandatorily applicable to such Lender notwithstanding the other provisions of this Agreement), then, in that event, notwithstanding anything to the contrary in any of the Loan Documents, it is agreed as follows:  (a) the aggregate of all consideration which constitutes interest under law applicable to the Lender that is contracted for, taken, reserved, charged or received by the Lender under any of the Loan Documents or agreements or otherwise in connection with the Note shall under no circumstances exceed the maximum amount allowed by such applicable law, and any excess shall be canceled automatically and if theretofore paid shall be credited by the Lender on the principal amount of the Indebtedness (or, to the extent that the principal amount of the Indebtedness shall have been or would thereby be paid in full, refunded by the Lender to the Borrower); and (b) in the event that the maturity of the Note is accelerated by reason of an election of the holder thereof resulting from any Event of Default under this Agreement or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest under law applicable to the Lender may never include more than the maximum amount allowed by such applicable law, and excess interest, if any, provided for in this Agreement or otherwise shall be canceled automatically by the Lender as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited by the Lender on the principal amount of the Indebtedness (or, to the extent that the principal amount of the Indebtedness shall have been or would thereby be paid in full, refunded by the Lender to the Borrower).  All sums paid or agreed to be paid to the Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by law applicable to the Lender, be amortized, prorated, allocated and spread throughout the stated term of the Loans evidenced by the Note until payment in full so that the rate or amount of interest on account of any Loans hereunder does not exceed the maximum amount allowed by such applicable law.  To the extent that Chapter 303 of the Texas Finance Code is relevant for the purpose of determining the Highest Lawful Rate applicable to the Lender, the Lender elects to determine the applicable rate ceiling under such Chapter by the weekly ceiling from time to time in effect.  Chapter 346 of the Texas Finance Code does not apply to the Borrower's obligations hereunder.

[SIGNATURE PAGE FOLLOWS]

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

BORROWER:                          **KT SPEARS CREEK, LLC**

                                   By:_____
                                   Name:_____
                                   Title:_____

LENDER:                            **JK AIR INVESTMENT GROUP, LLC**

                                   By:_____
                                   Name:_____
                                   Title:_____

# EXHIBIT A
## PROMISSORY NOTE

$100,000.00                                                    _____, 2011

FOR VALUE RECEIVED, KT Spears Creek, LLC, a South Carolina limited liability company (the "Borrower") hereby promises to pay to JK Air Investment Group, LLC (the "Lender"), or its registered assigns, at the place and in the manner designated by the Lender, the principal sum of up to One Hundred Thousand Dollars ($100,000.00) or such lesser amount as shall equal the aggregate unpaid principal amount of the Loans made by the Lender to the Borrower under the Credit Agreement, as hereinafter defined), in lawful money of the United States of America and in immediately available funds, on the date provided in the Credit Agreement, and to pay interest on the unpaid principal amount of each such Loan, at such office, in like money and funds, for the period commencing on the date of such Loan until such Loan shall be paid in full, at the rates per annum and on the dates provided in the Credit Agreement.

This Note is the Note referred to in the Debtor-In-Possession Credit Agreement dated as of _____, 2011, between the Borrower and the Lender (as the same may be amended, supplemented or restated from time to time, the "Credit Agreement"), and evidences Loans made by the Lender thereunder.  Capitalized terms used in this Note have the respective meanings assigned to them in the Credit Agreement.

This Note is a registered Note and, as provided in the Credit Agreement, upon surrender of this Note for registration of transfer or exchange (and in the case of a surrender for registration of transfer, duly endorsed or accompanied by a written instrument of transfer duly executed by the registered holder of this Note or such holder's attorney duly authorized in writing), a new Note for a like aggregate principal amount will be issued to, and registered in the name of, the transferee.  Prior to the due presentment for registration and transfer, the Borrower may treat the Person in whose name this Note is registered as the holder and the owner of this Note for the purpose of receiving payment and for all other purposes of this Note and the Credit Agreement. Notwithstanding anything to the contrary herein, the right to receive payments of interest and principal under this Note shall be transferable only upon surrender for cancellation of this Note, and the issuance of a new Note registered in the name of the transferee.

This Note is issued pursuant to, and is subject to the terms and conditions set forth in, the Credit Agreement and is entitled to the benefits provided for in the Credit Agreement and the other Loan Documents.  The Credit Agreement provides for the acceleration of the maturity of this Note upon the occurrence of certain events, for prepayments of Loans upon the terms and conditions specified therein and other provisions relevant to this Note.  THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS.

**KT SPEARS CREEK, LLC**

By:_____
Name:_____
Title:_____

*Signature Page to Credit Agreement*

**KT Spears Creek DIP Loan Budget**

*Wednesday, June 01, 2011*

| | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | | |
| Chiron Equities DIP Loan | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | | 95,000 |
| **Total Revenue** | **10,000** | **-** | **-** | **25,000** | **-** | **20,000** | **15,000** | **-** | **20,000** | **-** | **5,000** | **-** | **-** | | **95,000** |
| | | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | | |
| Legal Fees (Okin, Adams, Kilmer) | - | - | - | 15,000 | - | - | - | - | 20,000 | - | - | - | - | | 35,000 |
| Sales Marketing/Advertising/Brokerage Fees | - | - | 6,000 | - | - | - | 6,000 | - | - | - | 6,000 | - | - | | 18,000 |
| General & Administrative Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | | 1,300 |
| Travel Costs | - | - | - | - | - | 2,000 | - | - | 800 | - | - | - | - | | 2,800 |
| Professional Reports | - | - | - | 4,000 | - | - | 8,000 | - | - | - | - | - | - | | 12,000 |
| Anticipated Loan Due Diligence Fee | - | - | - | - | - | 20,000 | - | - | - | - | - | - | - | | 20,000 |
| Quarterly Trustee Fees | - | - | - | 4,750 | - | - | - | - | - | - | - | - | - | | 4,750 |
| **Total Expenses** | **100** | **100** | **6,100** | **23,850** | **100** | **22,100** | **14,100** | **100** | **20,900** | **100** | **6,100** | **100** | **100** | | **93,850** |
| | | | | | | | | | | | | | | | |
| **Net Cash Remaining** | **9,900** | **9,800** | **3,700** | **4,850** | **4,750** | **2,650** | **3,550** | **3,450** | **2,550** | **2,450** | **1,350** | **1,250** | **1,150** | | |

**KT Spears Creek, LLC - Greenhill Parish Crossing (Columbia, SC)**
**Pro Forma Operating Budget**
*Period June, 2011 - December, 2011*

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | |
| | | | | | | | |
| **Rental Income** | | | | | | | |
| Market Rent | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 | 226,100.00 |
| Loss to Lease | -631.67 | -631.67 | -631.67 | -631.67 | -631.67 | -631.67 | -631.67 |
| **Potential Rent** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** | **225,468.33** |
| | | | | | | | |
| **Other Rental Income** | | | | | | | |
| One-Time Concessions | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 | -3,600.00 |
| Renewal Concessions | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 | -1,500.00 |
| Recurring Concessions | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 | -23,916.10 |
| Preferred Employer Discount | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 | -1,576.08 |
| Vacancy Loss | -21,000.00 | -21,000.00 | -20,000.00 | -22,000.00 | -22,000.00 | -21,000.00 | -24,000.00 |
| Employee Units | -224.00 | -224.00 | -224.00 | -224.00 | -224.00 | -224.00 | -224.00 |
| Model & Storage Units | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 | -1,035.00 |
| Guest Suite | -935.00 | -935.00 | -935.00 | -935.00 | -935.00 | -200.00 | 0.00 |
| Bad Debt - Rent | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 | -4,000.00 |
| Bad Debt Recovery - Rent | 581.64 | 581.64 | 581.64 | 581.64 | 581.64 | 581.64 | 581.64 |
| **Total Rental Income** | **168,263.79** | **168,263.79** | **169,263.79** | **167,263.79** | **167,263.79** | **168,998.79** | **166,198.79** |
| | | | | | | | |
| **Other Income** | | | | | | | |
| Access Gate Remote Income | 73.33 | 73.33 | 73.77 | 72.90 | 72.90 | 73.65 | 72.43 |
| Administrative Fees | 2,116.67 | 2,116.67 | 2,129.25 | 2,104.09 | 2,104.09 | 2,125.91 | 2,090.69 |
| Application Fees | 450.00 | 450.00 | 452.67 | 447.33 | 447.33 | 451.97 | 444.48 |
| Cable TV Commissions | 420.25 | 420.25 | 422.75 | 417.75 | 417.75 | 422.09 | 415.09 |
| Club Room Rental Fees | 171.67 | 171.67 | 172.69 | 170.65 | 170.65 | 172.42 | 169.56 |
| Damages | 772.10 | 772.10 | 776.69 | 767.51 | 767.51 | 775.47 | 762.62 |
| Eviction Fees | 93.33 | 93.33 | 93.89 | 92.78 | 92.78 | 93.74 | 92.19 |
| Garage Income | 4,804.38 | 4,804.38 | 4,832.93 | 4,775.82 | 4,775.82 | 4,825.36 | 4,745.42 |
| Late Charge Fees | 1,869.00 | 1,869.00 | 1,880.11 | 1,857.89 | 1,857.89 | 1,877.16 | 1,846.06 |
| Locks / Key Income | 46.67 | 46.67 | 46.94 | 46.39 | 46.39 | 46.87 | 46.09 |
| Month-to-Month Premiums | 33.33 | 33.33 | 33.53 | 33.14 | 33.14 | 33.48 | 32.92 |
| NSF Fees | 30.00 | 30.00 | 30.18 | 29.82 | 29.82 | 30.13 | 29.63 |
| Pet Fees - Non-Refundable | 716.67 | 716.67 | 720.93 | 712.41 | 712.41 | 719.80 | 707.87 |
| Pet Rent | 16.67 | 16.67 | 16.77 | 16.57 | 16.57 | 16.74 | 16.46 |
| Short Term Premiums | 13.33 | 13.33 | 13.41 | 13.25 | 13.25 | 13.39 | 13.17 |
| Storage Rent | 180.43 | 180.43 | 181.51 | 179.36 | 179.36 | 181.22 | 178.22 |
| Transfer Fee | 416.67 | 416.67 | 419.14 | 414.19 | 414.19 | 418.49 | 411.55 |
| Vending Income | 35.99 | 35.99 | 36.20 | 35.78 | 35.78 | 36.15 | 35.55 |
| Washer / Dryer Rental Income | 113.33 | 113.33 | 114.01 | 112.66 | 112.66 | 113.83 | 111.94 |
| **Total Other Income** | **12,373.81** | **12,373.81** | **12,447.35** | **12,300.28** | **12,300.28** | **12,427.86** | **12,221.96** |
| **Total Rental and Other Income** | **180,637.61** | **180,637.61** | **181,711.14** | **179,564.07** | **179,564.07** | **181,426.66** | **178,420.75** |
| | | | | | | | |
| **EXPENSES** | | | | | | | |
| | | | | | | | |
| **Operating Expenses** | | | | | | | |
| | | | | | | | |
| **Payroll & Benefits** | | | | | | | |
| Management - Salaries | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 | 4,379.84 |
| Assistant Management - Salaries | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 | 2,255.43 |
| Leasing - Salaries | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 | 1,976.99 |
| Bonuses | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 | 1,045.67 |
| Quarterly Bonuses | 0.00 | 1,218.00 | 0.00 | 0.00 | 1,218.00 | 0.00 | 0.00 |
| Maintenance - Salaries | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 | 3,649.44 |
| Assistant Maintenance - Salaries | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 | 2,101.49 |
| Payroll Taxes | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 | 2,136.33 |
| 401k Contributions | 146.07 | 146.07 | 146.07 | 146.07 | 146.07 | 146.07 | 146.07 |
| Employee Burden | 894.84 | 894.84 | 894.84 | 894.84 | 894.84 | 894.84 | 894.84 |
| Group Insurance | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 | 1,485.00 |
| **Total Payroll & Benefits** | **20,071.11** | **21,289.11** | **20,071.11** | **20,071.11** | **21,289.11** | **20,071.11** | **20,071.11** |

**KT Spears Creek, LLC - Greenhill Parish Crossing (Columbia, SC)**
**Pro Forma Operating Budget**
*Period June, 2011 - December, 2011*

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **Repairs & Maintenance** | | | | | | | |
| Access Gate Expense | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 |
| Appliance Repairs | 155.53 | 155.53 | 155.53 | 155.53 | 155.53 | 155.53 | 155.53 |
| Building - Interior | 23.91 | 23.91 | 23.91 | 23.91 | 23.91 | 23.91 | 23.91 |
| Common Area Repairs | 29.48 | 29.48 | 29.48 | 29.48 | 29.48 | 29.48 | 29.48 |
| HVAC Supplies / Repairs | 104.29 | 104.29 | 104.29 | 104.29 | 104.29 | 104.29 | 104.29 |
| Lighting Supplies / Repairs | 93.50 | 93.50 | 93.50 | 93.50 | 93.50 | 93.50 | 93.50 |
| Locks & Keys | 10.64 | 10.64 | 10.64 | 10.64 | 10.64 | 10.64 | 10.64 |
| Maintenance Supplies | 108.71 | 108.71 | 108.71 | 108.71 | 108.71 | 108.71 | 108.71 |
| Plumbing Supplies / Repairs | 61.23 | 61.23 | 61.23 | 61.23 | 61.23 | 61.23 | 61.23 |
| Safety & Fire Supplies / Maint | 12.69 | 12.69 | 12.69 | 12.69 | 12.69 | 12.69 | 12.69 |
| Signage Supplies / Repairs | 49.92 | 49.92 | 49.92 | 49.92 | 49.92 | 49.92 | 49.92 |
| Small Tools & Equipment | 140.82 | 140.82 | 140.82 | 140.82 | 140.82 | 140.82 | 140.82 |
| **Total Repairs & Maintenance** | **815.72** | **815.72** | **815.72** | **815.72** | **815.72** | **815.72** | **815.72** |
| | | | | | | | |
| **Make - Ready / Redecorating** | | | | | | | |
| Blinds / Drapes Repair | 50.76 | 50.76 | 50.76 | 50.76 | 50.76 | 50.76 | 50.76 |
| Carpet Cleaning / Repair - Vacant | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 | 1,158.33 |
| Cleaning Supplies | 40.22 | 40.22 | 40.22 | 40.22 | 40.22 | 40.22 | 40.22 |
| Maid / Cleaning Service | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 | 935.00 |
| Paint Contractor | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 | 2,020.00 |
| Painting Supplies | 176.90 | 176.90 | 176.90 | 176.90 | 176.90 | 176.90 | 176.90 |
| Vinyl / Tile Repair - Vacant | 17.96 | 17.96 | 17.96 | 17.96 | 17.96 | 17.96 | 17.96 |
| **Total Make - Ready / Redecorating** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** | **4,399.18** |
| | | | | | | | |
| **Recreational Amenities** | | | | | | | |
| Business Center | 14.26 | 14.26 | 14.26 | 14.26 | 14.26 | 14.26 | 14.26 |
| Club Room | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 |
| Pool Supplies / Maint | 52.74 | 52.74 | 52.74 | 52.74 | 52.74 | 52.74 | 52.74 |
| Other Recreational Amenities | 174.80 | 174.80 | 174.80 | 174.80 | 174.80 | 174.80 | 174.80 |
| **Total Recreational Amenities** | **337.04** | **337.04** | **337.04** | **337.04** | **337.04** | **337.04** | **337.04** |
| | | | | | | | |
| **Contract Services** | | | | | | | |
| Fire Alarm Contract | 31.17 | 31.17 | 31.17 | 31.17 | 31.17 | 31.17 | 31.17 |
| Intrusion Alarm Contract | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 | 19.00 |
| Janitorial Contract | 446.67 | 446.67 | 446.67 | 446.67 | 446.67 | 446.67 | 446.67 |
| Lake Maintenance Contract | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Landscape Maintenance Contract | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 | 2,325.00 |
| Patrol / Courtesy Officer Contract | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Pest Control Contract | 276.00 | 276.00 | 276.00 | 276.00 | 276.00 | 276.00 | 276.00 |
| Termite Contract | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,000.00 | 0.00 |
| Trash Removal Contract | 716.33 | 716.33 | 720.58 | 712.07 | 712.07 | 719.46 | 707.54 |
| Trash Removal Rebill | -781.33 | -781.33 | -785.98 | -776.69 | -776.69 | -784.75 | -771.74 |
| Washer / Dryer Rental Contract | 2,309.75 | 2,309.75 | 2,323.48 | 2,296.03 | 2,296.03 | 2,319.84 | 2,281.41 |
| **Total Contract Services** | **5,782.58** | **5,782.58** | **5,795.92** | **5,769.24** | **5,769.24** | **8,792.39** | **5,755.03** |
| **Total Operating Expenses** | **31,405.62** | **32,623.62** | **31,418.96** | **31,392.28** | **32,610.28** | **34,415.43** | **31,378.07** |

**Selling, General & Administrative**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Advertising / Marketing / Promotions** | | | | | | | |
| Advertising - Internet | 660.75 | 660.75 | 660.75 | 660.75 | 660.75 | 660.75 | 660.75 |
| Advertising - Other Sources | 143.65 | 143.65 | 143.65 | 143.65 | 143.65 | 143.65 | 143.65 |
| Advertising - Trade Publications | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 | 1,565.25 |
| Call Center Service | 573.50 | 573.50 | 573.50 | 573.50 | 573.50 | 573.50 | 573.50 |
| Locator Fees | 96.33 | 96.33 | 96.33 | 96.33 | 96.33 | 96.33 | 96.33 |
| Marketing / Promotions | 106.73 | 106.73 | 106.73 | 106.73 | 106.73 | 106.73 | 106.73 |
| Marketing - Printing Expenses | 155.12 | 155.12 | 155.12 | 155.12 | 155.12 | 155.12 | 155.12 |
| Model Expense | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 | 95.23 |
| Prospect Refreshments | 43.97 | 43.97 | 43.97 | 43.97 | 43.97 | 43.97 | 43.97 |
| Resident Activities | 6.81 | 6.81 | 6.81 | 6.81 | 6.81 | 6.81 | 6.81 |
| Resident Referral Fees | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Resident Retention | 63.80 | 63.80 | 63.80 | 63.80 | 63.80 | 63.80 | 63.80 |
| Shopping Reports | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 |
| Signage | 28.06 | 28.06 | 28.06 | 28.06 | 28.06 | 28.06 | 28.06 |
| **Total Advertising / Marketing / Promotions** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** | **3,974.20** |

**KT Spears Creek, LLC - Greenhill Parish Crossing (Columbia, SC)**
**Pro Forma Operating Budget**
*Period June, 2011 - December, 2011*

| | June-11 | July-11 | August-11 | September-11 | October-11 | November-11 | December-11 |
|---|---|---|---|---|---|---|---|
| **Office Expenses** | | | | | | | |
| Answering / On-hold Service | 89.00 | 89.00 | 89.00 | 89.00 | 89.00 | 89.00 | 89.00 |
| Copy Machine Contract | 314.00 | 314.00 | 314.00 | 314.00 | 314.00 | 314.00 | 314.00 |
| Forms | 76.59 | 76.59 | 76.59 | 76.59 | 76.59 | 76.59 | 76.59 |
| Office Equipment - Rental / Repair | 44.95 | 44.95 | 44.95 | 44.95 | 44.95 | 44.95 | 44.95 |
| Office Supplies | 15.26 | 15.26 | 15.26 | 15.26 | 15.26 | 15.26 | 15.26 |
| Pagers / Cellular Phones | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| Postage & Delivery | 156.36 | 156.36 | 156.36 | 156.36 | 156.36 | 156.36 | 156.36 |
| Printing Expense | 48.66 | 48.66 | 48.66 | 48.66 | 48.66 | 48.66 | 48.66 |
| Resident Screening | 177.92 | 177.92 | 177.92 | 177.92 | 177.92 | 177.92 | 177.92 |
| Telephone Expense | 945.30 | 945.30 | 945.30 | 945.30 | 945.30 | 945.30 | 945.30 |
| **Total Office Expenses** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** | **1,898.05** |
| | | | | | | | |
| **Other General & Administrative** | | | | | | | |
| Assoc. Fees / Membership Dues | 162.33 | 162.33 | 162.33 | 162.33 | 162.33 | 162.33 | 162.33 |
| Bank Charges | 157.61 | 157.61 | 157.61 | 157.61 | 157.61 | 157.61 | 157.61 |
| Computer Expense | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Employee Recruitment | 82.87 | 82.87 | 82.87 | 82.87 | 82.87 | 82.87 | 82.87 |
| Eviction Fees | 321.39 | 321.39 | 321.39 | 321.39 | 321.39 | 321.39 | 321.39 |
| Legal Fees | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 |
| Licenses / Fees / Permits | 958.56 | 958.56 | 958.56 | 958.56 | 958.56 | 958.56 | 958.56 |
| Mileage Expense | 116.39 | 116.39 | 116.39 | 116.39 | 116.39 | 116.39 | 116.39 |
| Training / Seminars | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Travel Expense | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Uniform Rental / Purchase | 6.37 | 6.37 | 6.37 | 6.37 | 6.37 | 6.37 | 6.37 |
| **Total Other General & Administrative** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** | **2,943.53** |
| | | | | | | | |
| **Utilities** | | | | | | | |
| Electric - Common Areas | 4,207.82 | 4,207.82 | 4,232.83 | 4,182.82 | 4,182.82 | 4,226.20 | 4,156.18 |
| Electric - Models | 139.63 | 139.63 | 140.46 | 138.80 | 138.80 | 140.24 | 137.91 |
| Electric - Vacant Units | 2,590.82 | 2,590.82 | 2,606.21 | 2,575.42 | 2,575.42 | 2,602.13 | 2,559.02 |
| Utility Rebill Service Fees | 1,463.15 | 1,463.15 | 1,471.84 | 1,454.45 | 1,454.45 | 1,469.54 | 1,445.19 |
| Water / Sewer | 10,223.96 | 10,223.96 | 10,284.72 | 10,163.20 | 10,163.20 | 10,268.62 | 10,098.49 |
| Water / Sewer Rebill | -11,259.11 | -11,259.11 | -11,326.02 | -11,192.20 | -11,192.20 | -11,308.29 | -11,120.93 |
| **Total Utilities** | **7,366.27** | **7,366.27** | **7,410.04** | **7,322.49** | **7,322.49** | **7,398.44** | **7,275.86** |
| | | | | | | | |
| **Management Fees** | | | | | | | |
| Management Fees | 5,747.95 | 5,747.95 | 5,782.11 | 5,713.79 | 5,713.79 | 5,773.05 | 5,677.41 |
| **Total Management Fees** | **5,747.95** | **5,747.95** | **5,782.11** | **5,713.79** | **5,713.79** | **5,773.05** | **5,677.41** |
| | | | | | | | |
| **Taxes** | | | | | | | |
| Ad Valorem Property Taxes | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 | 24,150.00 |
| Personal Property Taxes | 481.25 | 481.25 | 481.25 | 481.25 | 481.25 | 481.25 | 481.25 |
| **Total Taxes** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** | **24,631.25** |
| | | | | | | | |
| **Insurance** | | | | | | | |
| Property Insurance | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 | 2,109.05 |
| General Liability Insurance | 656.74 | 656.74 | 656.74 | 656.74 | 656.74 | 656.74 | 656.74 |
| Umbrella Liability Insurance | 182.78 | 182.78 | 182.78 | 182.78 | 182.78 | 182.78 | 182.78 |
| Boiler Insurance | 35.60 | 35.60 | 35.60 | 35.60 | 35.60 | 35.60 | 35.60 |
| Builder's Risk Insurance | 310.67 | 310.67 | 310.67 | 310.67 | 310.67 | 310.67 | 310.67 |
| Other Insurance | 5.55 | 5.55 | 5.55 | 5.55 | 5.55 | 5.55 | 5.55 |
| **Total Insurance** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** | **3,300.39** |
| **Total Selling, General & Administrative** | **49,861.63** | **49,861.63** | **49,939.57** | **49,783.69** | **49,783.69** | **49,918.92** | **49,700.69** |
| | | | | | | | |
| **Total Expenses** | **81,267.26** | **82,485.26** | **81,358.54** | **81,175.98** | **82,393.98** | **84,334.35** | **81,078.77** |
| | | | | | | | |
| **Net Operating Income** | **99,370.35** | **98,152.35** | **100,352.61** | **98,388.09** | **97,170.09** | **97,092.31** | **97,341.98** |
| | | | | | | | |
| **Routine Capitalized Expenses** | | | | | | | |
| Appliances - Dishwashers | 0.00 | 275.00 | 0.00 | 0.00 | 0.00 | 275.00 | 0.00 |
| Appliances - Refrigerators | 0.00 | 0.00 | 600.00 | 0.00 | 0.00 | 600.00 | 0.00 |
| Appliances - Stove / Microwaves / Range Hoods | 200.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 200.00 |
| Carpet | 933.28 | 933.28 | 933.28 | 933.28 | 933.28 | 933.28 | 933.28 |
| Ceiling Fans / Fixtures | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 |
| Landscape Upgrades | 0.00 | 0.00 | 0.00 | 2,150.00 | 0.00 | 0.00 | 0.00 |
| Countertops | 0.00 | 50.00 | 0.00 | 0.00 | 50.00 | 0.00 | 0.00 |
| Mini-Blinds / Drapes | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 40.00 | 0.00 |
| **Total Routine Capitalized Expenses** | **1,195.78** | **1,320.78** | **1,635.78** | **3,345.78** | **1,045.78** | **1,910.78** | **1,195.78** |
| | | | | | | | |
| **CASH FLOW** | **98,174.57** | **96,831.57** | **98,716.83** | **95,042.31** | **96,124.31** | **95,181.53** | **96,146.20** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | (Chapter 11) |

**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**
**AND GRANTING ADEQUATE PROTECTION**
[Related to Docket. No. _____.]

On June __, 2011, the Court considered the *Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral* (the "Cash Collateral Motion")[1] filed by the above-referenced debtor and debtor in possession (the "Debtor").

**Final Cash Collateral Hearing**

A final hearing on the Cash Collateral Motion shall be held on June __, 2011, at __:__ __.m. (the "Final Hearing"), before the Honorable Letitia Z. Paul, United States Bankruptcy Judge, at the United States Bankruptcy Court, 515 Rusk Avenue, Courtroom 401, Houston, Texas 77002. Objections to the relief requested in the Cash Usage Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the attached Service List so that any such objections are received on or before _____ p.m. (prevailing Central Time) on June __, 2011:

**Findings of Fact and Conclusions of Law**

Having considered the Cash Collateral Motion, any evidence proffered or presented, and any arguments of counsel, the Court hereby finds and concludes as follows:

A.     The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Cash Collateral Motion.

1

the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

        B.      The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and the execution of a Change in Terms Agreement on May 23, 2008.  As of the Petition Date, the Debtor's obligation under the RBC Bank Note is approximately $22,646,397.88.  As security for the RBC Bank Note, the Debtor executed in favor of RBC a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain real property.  The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

        C.      The Debtor requires the use of cash collateral (the "Cash Collateral") to pay costs and expenses, including, but not limited to the expenses reasonable and necessary to operate the Greenhill Apartments, to maintain and preserve the Debtor's business and asset value.

        D.      Nothing in this *Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection* (the "Interim Order") shall constitute a determination of the existence, validity, or priority of any pre-petition security interest or lien of RBC Bank or any other party in interest, nor shall the positions of the Debtor reflected in this Interim Order be construed as admissions of any factual or legal issues between such parties.  This Interim Order shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to

the Cash Collateral Motion's request for subsequent cash collateral orders.

E.     The Debtor has authority to use Cash Collateral, on an interim basis, on the terms and conditions provided for herein, *nunc pro tunc,* commencing on the Petition Date and expiring at the conclusion of the Final Hearing (the "Interim Period").

F.     Under the circumstances, notice of the Cash Collateral Motion was appropriate and sufficient to the parties listed above for the limited purpose of this Interim Order.

G.     Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this is an Interim Order and will remain in effect pending entry of a final order on the Motion.

H.     Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Collateral Motion is hereby approved.

## ORDER

Accordingly, it is therefore **ORDERED:**

1.     Pursuant to the terms of this Interim Order and as set forth in the Interim Budget attached hereto, the Debtor may Cash Collateral, including any Cash Collateral of RBC Bank, during the Interim Period. The Debtor's continued use of such funds thereafter shall be subject to further hearing or written agreement between RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court. Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtor in any subsequent week.

2.     As adequate protection to RBC for the Debtor's use of Cash Collateral pursuant to Bankruptcy Code § 363(c), the Debtor shall maintain the going concern value of the alleged collateral by using the Cash Collateral to continue to operate the Debtor's business.

3.     As additional adequate protection to RBC Bank, the Debtor shall make payments to RBC Bank of contractual interest at the non-default rate pursuant to the terms of the RBC

Bank Note.

   4.  The entry of this Interim Order shall not prejudice or limit the rights of RBC

Bank or any other party in interest to seek additional relief with respect to use of Cash Collateral

or for adequate protection. This Interim Order shall not limit or otherwise alter the rights of the

Debtor or other parties in interest, except to the limited extent specifically provided for herein.


SIGNED THIS ___ day of June, 2011.


             _____

             HONORABLE LETITIA Z. PAUL
             UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

---

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |

---

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR
TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING**
(This Order relates to Docket No. ____.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the

"Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§

105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

(a)    authorization for the Debtor to borrow up to $100,000.00 in principal
amount of post-petition financing (the "DIP Financing");

(b)    authorization for the Debtor's execution of the DIP Credit Agreement and
any other necessary DIP Documents, to perform such other and further acts as may be necessary
or appropriate in connection therewith, and to grant the liens and security interests to the Lender
as provided herein;

(c)    authorization pursuant to Bankruptcy Code § 364(c)(3) to grant certain
liens to the Lender to secure the Debtor's obligations under the DIP Loan;

(d)    authorization for the Lender to accelerate the maturity of the DIP Loan
and terminate the commitments under and in accordance with the DIP Documents upon the
occurrence and continuance of an event of default, subject to the provisions of this DIP Motion
and any order granting this DIP Motion; and

(e)    the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing
(the "Final Hearing") for this Court to consider entry of a final order (the "Final Order")
authorizing and approving the relief requested in this DIP Motion to become effective pursuant
to the Final Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Final Hearing.*  A final hearing on the DIP Motion shall be held on June __, 2011, at __:___ __.m. before this Court, in Courtroom 401, at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.  Objections to the DIP Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before __:___ __.m. (prevailing Central Time) on June __, 2011.

2.      *Disposition/Jurisdiction.*  The DIP Motion is granted on an interim basis in accordance with the terms of this interim order (the "Interim Order").  Any objections to the DIP Motion with respect to entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Court has core jurisdiction over this Case commenced on May 3, 2011 (the "Petition Date"), the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.      *Notice.*  Notice of the DIP Motion, the relief requested herein and the Interim Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy

Rules., and no further notice of the relief sought at the Interim Hearing and the relief granted

herein is necessary or required.

      4.    *Findings Regarding the DIP Loan.*

      (a)    All findings of fact and conclusions of law as announced on the record by the Court at the Interim Hearing are hereby adopted and incorporated into this Interim Order.

      (b)    Good cause has been shown for entry of this Interim Order.

      (c)    The Debtor has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process.  The DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate

      (d)    The Debtor is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement and are unable to obtain adequate unsecured credit allowable under Bankruptcy Codes § 503(b)(1) as an administrative expense.

      (e)    Pursuant to the terms of this Interim Order, the provisions of the Term Sheet and the DIP Documents are found to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitutes reasonably equivalent value and fair consideration.

      (f)    The DIP Documents have been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to the DIP Documents, owing to the Lender (collectively, the "<u>DIP Obligations</u>"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

      (g)    The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed.  Consummation of the DIP Loan in accordance with this Interim Order, the Term Sheet and the DIP Documents is in the best interest of the Debtor's estate.

      5.    *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

      (a)    The Debtor is hereby authorized to enter into the DIP Loan, DIP Credit Agreement, and DIP Documents to borrow thereunder up to an aggregate principal amount of $100,000.00, in accordance with the terms of this Interim Order.

-3-

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts to execute and deliver all instruments and documents and to pay all fees and expenses reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loan, DIP Credit Agreement, and DIP Documents, including, without limitation, (i) the execution, delivery and performance of the DIP Credit Agreement and DIP Documents; (ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Credit Agreement and DIP Documents, in each case in such forms as the Debtor and Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Credit Agreement and DIP Documents (and any fees paid in connection therewith).

(c)    Upon execution and delivery of the DIP Credit Agreement and DIP Documents, the DIP Credit Agreement and DIP Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim Order and the DIP Credit Agreement and DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the DIP Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law.

6.    *DIP Lien.*  Pursuant to Bankruptcy Code § 364(c)(3), the Lender shall be granted junior perfected liens on all property of the Debtor subject to existing valid, perfected, enforceable and unavoidable liens on such property until the conclusion of the Final Hearing on the DIP Motion.

7.    *Use of DIP Loan Proceeds.*  The Debtor shall use the proceeds of the DIP Loan solely as provided by the DIP Credit Agreement, the DIP Documents, and this Interim Order, and also be subject to the budget attached hereto.

8.    *Retention of Jurisdiction.*  This Court shall retain jurisdiction to enforce the provisions of this Interim Order.

SIGNED THIS ___ day of June, 2011.

_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

-4-

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |

**PROPOSED ORDER DENYING
MOTION TO DISMISS FOR BAD FAITH FILING AND FOR
<u>IMPROPER VENUE PURSUANT TO 29 U.S.C. § 1406(A) AND § 1408</u>
(This Order Relates to Docket No. 25.)**

Came on for consideration RBC Bank (USA)'s Motion to Dismiss for Bad Faith Filing
and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408 [Docket No. 25] (the
"<u>Motion to Dismiss</u>").  The Court, after considering the Motion to Dismiss, the joinder and
response thereto, and any arguments, hereby finds that the Motion to Dismiss should be denied;
therefore, it is

**ORDERED** that the Motion to Dismiss is **DENIED** in its entirety.

Dated: _____, 2011.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |

**PROPOSED ORDER DENYING**
**MOTION TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE**
<u>**CASE PURSUANT TO 11 U.S.C. § 101(51B)**</u>

**(This Order Relates to Docket No. 26.)**

Came on for consideration RBC Bank (USA)'s Motion to Designate Case as Single Asset

Real Estate Case Pursuant to 11 U.S.C. § 10151(B) [Docket No. 26] (the "<u>Motion to</u>

<u>Designate</u>"). The Court, after considering the Motion to Designate, the response thereto, and any

arguments, hereby finds that the Motion to Designate should be denied; therefore, it is

**ORDERED** that the Motion to Designate is **DENIED** in its entirety.

Dated: _____, 2011.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | § | **CASE NO. 11-33991** |
| | § | **CHAPTER 11** |
| **KT SPEARS CREEK, LLC,** | § | |
| | § | **Hearing Date: June 13, 2011** |
| Debtor. | § | **Hearing Time: 10:15 a.m.** |

## WITNESS AND EXHIBIT LIST

TO THE HONORABLE LETICIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

First Palmetto Savings Bank, FSB ("FPSB") hereby submits its Witness and Exhibit List in connection with the June 13, 2011 hearings on the following:

*Motion to Dismiss for Bad Faith Filing and For Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408* (Dkt. No. 25);

*Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. § 101(51B)* (Dkt. No. 26);

*Debtor's Emergency Motion for Interim and Final Order Approving Use of Cash Collateral* (Dkt. No. 27);

*Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing* (Dkt. No. 28); and

*Emergency Motion for Turnover of Property and Request For Accounting* (Dkt. No. 31)

## WITNESSES

Any witness designated by any other party.

## EXHIBITS

FPSB reserves the right to use any exhibits presented by any other party and the right to use exhibits not listed here for impeachment or rebuttal purposes at the hearing.

FPSB reserves the right to amend or supplement this Witness and Exhibit List.

Respectfully submitted this 10th day of June, 2011.

Dated: June 10, 2011                    Respectfully Submitted,

                                        GREENBERG TRAURIG, LLP

                                        By: /s/ Shari L. Heyen
                                            Shari L. Heyen
                                            State Bar No. 09564750
                                            HeyenS@gtlaw.com
                                            1000 Louisiana St., Ste. 1700
                                            Houston, TX 77002
                                            Telephone: (713) 374-3699
                                            Facsimile: (713) 374-3505

                                        *Counsel for First Palmetto Savings Bank, FSB*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Witness and Exhibit List has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on June 10, 2011.


                                        /s/ Shari L. Heyen
                                        Shari L. Heyen

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter 11) |
| DEBTOR | § | |
| _____ | § | |
| FIRST SAVERS BANK | § | |
| | § | |
| Movant | § | |
| | § | |
| VS. | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | |
| | § | |
| Respondent | § | |

### MOTION OF FIRST SAVERS BANK
### FOR RELIEF FROM THE AUTOMATIC STAY

---

This is a motion for relief from the automatic stay. If it is granted, the movants may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least two days before the hearing. If you file your response less than 5 days before the hearing, you must send a copy to the movants by facsimile, by hand, or by electronic delivery. If you cannot settle, you must attend the hearing. Evidence may be offered at the court and court may rule.

Represented parties should act through their attorney.

There will be a preliminary hearing on this matter in the U.S. Bankruptcy Court, Courtroom No. 404, 515 Rusk Ave., 4th Floor, Houston, Texas 77002, on **Wednesday, July 6, 2011 at 10:00am.**

---

First Savers Bank, a division of Plantation Federal Bank (the "Bank"), files this *Motion for Relief from Stay* (the "Motion"), pursuant to 11 U.S.C. § 362(d), seeking relief from the automatic stay to permit the Bank to foreclose on a 65.94-acre tract of unimproved land in Richland County, South Carolina, owned by KT Spears Creek, LLC (the "Debtor").

I.
JURISDICTION AND VENUE

1.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§1334

and 157.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).  Venue is proper

before this Court pursuant to 28 USC §§1408 and 1409.

II.
BACKGROUND

2.     On December 21, 2007, the Debtor borrowed $6,000,000 from the Bank, secured

by a 65.94-acre tract of unimproved land in Richland County, South Carolina (the "Property").

The loan is evidenced by the Debtor's promissory note (the "Note") in the original amount of

$6,000,000.  The Note is secured by a first lien Mortgage (the "Mortgage") recorded in the real

property records of Richland County, South Carolina.  The loan was renewed and extended, most

recently on January 26, 2010.

3.     The Debtor has failed to make any payments on the Note in more than a year.  As

a result, the Bank filed suit in Richland County, South Carolina on September 9, 2010, seeking a

judicial foreclosure of its lien on the Property; a copy of that Complaint is attached as Exhibit 1

(and copies of the applicable Notes and Mortgage are attached to the Complaint).  Pursuant to

this proceeding, a foreclosure sale has been scheduled for August 8, 2011.

4.     The Debtor has also failed to pay the property taxes owing on the Property.  As a

result, a tax foreclosure sale was noticed and held on December 6, 2010, with the Property being

sold to a third party.  Attached as Exhibit 2 is a copy of the Execution Notice from Richland

County, reflecting that the unpaid taxes due were $359,675.32 (as of 2010).  The final date to

redeem the Property is December 7, 2011.

5.     In addition to the Property, the Debtor owns an apartment project adjacent to the

Property, financed by a secured loan from RBC Bank.  As of the Petition Date, the Debtor owes

approximately $19 million to RBC Bank. According to the attorney for RBC Bank, the Debtor has agreed to pay RBC Bank in full by December 1, 2011, or else allow the lien on the apartment project to be foreclosed.

6.      Due to the well-publicized problems in the housing market, the Property is now worth far less than what it was worth in 2007. The Debtor cannot (or will not) adequately protect the Bank's interest in the Property. The Debtor is not paying any interest or property taxes. The Debtor has made no effort to develop the Property, or to market the Property for sale. There is no possibility of the Debtor successfully reorganizing in Chapter 11. Consequently, the stay should be lifted to allow the Bank to foreclose its lien on the Property.

III.
RELIEF REQUESTED

7.      By this Motion, the Bank requests entry of an Order, substantially in the form of the proposed order filed contemporaneously herewith, modifying the automatic stay allowing the Bank to foreclose its lien on the Property and (if necessary) to redeem the Property with respect to the tax sale, and waiving the ten-day stay imposed by FED. R. BANKR. P. 4001(a)(3).

IV.
BASIS FOR RELIEF REQUESTED

8.      The Bank is entitled to relief from the stay because of a lack of adequate protection. 11 U.S.C. §362(d)(1). In addition to not paying any interest or property taxes, the Debtor has agreed to pay RBC Bank [its other secured creditor] in full. The Property does not generate any revenue, and the Debtor has no income with which to pay interest, property taxes, or development costs. In light of that, there is not even a remote possibility that the Debtor could successfully reorganize. As such, the stay should be modified to permit The Bank to foreclose its lien on the Property.

3

9.      Bankruptcy Rule 4001(a)(3) imposes a ten-day stay on all orders granting relief from the automatic stay imposed by 11 USC § 362, unless the Court orders otherwise.  FED. R. BANKR. P. 4001(a)(3).  The Bank avers that, as shown above, cause exists for the Court to waive the ten-day stay imposed by Bankruptcy Rule 4001.

10.     For the foregoing reasons, the Bank respectfully requests that the Court enter an Order (a) modifying the automatic stay to allow the Bank to foreclose its lien and (if necessary) to redeem the Property with respect to the tax sale, (b) waiving the ten-day stay imposed by Bankruptcy Rule 4001(a)(3); and (c) granting such other relief as may be just or appropriate.

Dated: June 10, 2011.

Respectfully submitted,

/s/ David S. Elder
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com (*email*)

ATTORNEY-IN-CHARGE FOR
FIRST SAVERS BANK

CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he has conferred with Maggie Conner and Matt Okin, counsel for the Debtor, and the Debtor is opposed to the relief requested.  The parties were unable to reach an agreement on the relief requested.

/s/ David S. Elder
David S. Elder

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2011, a true and correct copy of the foregoing Motion was served (i) electronically, via the Court's ECF system, upon Debtor's counsel, the Office of the U.S. Trustee, parties who have filed notices of appearance in this case, and all other parties receiving ECF notifications in this case, and (ii) by first class U.S. mail, postage prepaid on the parties listed on the Master Service List attached.


*/s/ David S. Elder*
David S. Elder

COUNTY OF RICHLAND            )

Plantation Federal Bank and First Savers )           **CIVIL ACTION COVERSHEET**
Bank, a division of Plantation Federal Bank,
              **Plaintiff(s)** )

               )          2010-CP 40-010221

            **vs.**       )

KT Spears Creek, LLC; Kyle D. Tauch, )
Individually; Greenhill Parish Community
Association, a/k/a The Greenhill Parish
Community Association, Inc.; and RBC Centura
Bank,
            **Defendant(s)** )

(Please Print)
**Submitted By:** Amy L. B. Hill, Esquire      **SC Bar #:**   68541
**Address:**  Sowell Gray Stepp & Laffitte, LLC   **Telephone #:**  (803) 929-1400
        **1310 Gadsden Street (29201)**     **Fax #:**      (803) 929-0336
        Post Office Box 11449         **Other:**
        Columbia, South Carolina 29211    **E-mail:**  ahill@sowellgray.com

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
***If Action is Judgment/Settlement do not complete***

☐ **JURY TRIAL** demanded in complaint.     ☒ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☒ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20___ -CP-____ -_____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured | ☐ Other (899) | ☐ Worker's Comp (960) |
| |    Settlement Payment Rights | | ☐ Zoning Board (970) |
| |    Application (760) | | |
| | ☐ Other (799) | | ☐ Administrative Law Judge (980) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | ☐ Public Service Commission (990) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Employment Security Comm (991) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | | ☐ Other (999) |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in | | |
| |    an Out-of-County Action (660) | | |
| | ☐ Sexual Predator (510) | | |

Submitting Party Signature

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

Allendale, Anderson, Beaufort, ... Florence, Greenville,
Hampton, Horry, Jasper, Lexington, Pickens (Family Court Only), and Richland

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | IN THE FIFTH JUDICIAL CIRCUIT |
| | ) | |
| Plantation Federal Bank and First Savers | ) | Civil Action No. |
| Bank, a division of Plantation Federal | ) | |
| Bank, | ) | |
| | ) | **SUMMONS** |
| Plaintiffs, | ) | **Foreclosure/Collection on Guaranty** |
| | ) | **Deficiency Demand** |
| | ) | **Non-Jury** |
| vs. | ) | |
| | ) | |
| KT Spears Creek, LLC; Kyle D. Tauch, | ) | |
| Individually; Greenhill Parish Community | ) | |
| Association, Inc., a/k/a The Greenhill | ) | |
| Parish Community Association, Inc.; and | ) | |
| RBC Centura Bank, | ) | |
| | ) | |
| Defendants. | ) | |

**TO:   THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint in the above captioned action, a copy of which is herewith served upon you, and to serve a copy of your Response on the subscribers located at 1310 Gadsden Street, Post Office Box 11449, Columbia, South Carolina 29211, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

TO MINOR(S) OVER FOURTEEN YEARS OF AGE, AND/OR TO MINOR(S) UNDER FOURTEEN YEARS OF AGE AND THE PERSON WITH WHOM THE MINOR(S) RESIDES, AND/OR TO PERSONS UNDER SOME LEGAL DISABILITY:

YOU ARE FURTHER SUMMONED AND NOTIFIED to apply for the appointment of a guardian ad litem within thirty (30) days after the service of this Summons and Notice upon you. If you fail to do so, application for such appointment will be made by the Mortgagee

immediately and separately and such application will be deemed absolute and total in the absence of your application for such an appointment within thirty (30) days after the service of the Summons and Complaint upon you.

YOU WILL ALSO TAKE NOTICE that under the provisions of South Carolina Code §29-3-100, effective June 16, 1993, any collateral assignment of rents contained in the mortgage identified in the Complaint is hereby perfected and Plaintiffs hereby give further notice that all rents shall be payable directly to it by delivery of the same to its undersigned attorneys from the date of default forward. In the alternative, the Plaintiffs will move a Judge of this Circuit Court on the tenth (10th) day after service hereof, or as soon as counsel for Plaintiffs may be heard, for an Order enforcing the assignment of rents, if any, and/or profits, if any, compelling payments of all such funds covered by the mortgage and/or by statute and/or by common law directly to the undersigned attorneys for the Plaintiffs, which Motion is based upon the original Note and Mortgage identified in the Complaint herein and attached hereto as well as any applicable laws, statutes or regulations.

2

YOU WILL ALSO TAKE NOTICE that should you fail to Answer the foregoing

Summons, the Plaintiffs will move for an Order of Reference of this cause to the Master-In-

Equity or Special Referee in/for this County, which Order shall, pursuant to Rule 53 of the South

Carolina Rules of Civil Procedure, specifically provide that the said Master-In-Equity or Special

Referee is authorized and empowered to enter a final judgment in this cause with appeal only to

the South Carolina Court of Appeals pursuant to Rule 203 (d)(1) of the SCAR, effective June 1,

1999.

SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By: _____
Amy K. B. Hill
1310 Gadsden Street
Post Office Box 11449
Columbia, South Carolina 29211

Attorneys for Plaintiffs

Columbia, South Carolina
September ____, 2010

3

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF RICHLAND ) IN THE FIFTH JUDICIAL CIRCUIT
)
Plantation Federal Bank and First Savers ) Civil Action No.:
Bank, a division of Plantation Federal )
Bank, )
)
Plaintiffs, ) **NOTICE OF LIS PENDENS**
)
)
vs. )
)
KT Spears Creek, LLC; Kyle D. Tauch, )
Individually; Greenhill Parish )
Community Association, Inc., a/k/a G-P- )
C-A, Inc.; and RBC Centura Bank, )
)
Defendants. )
)

NOTICE IS HEREBY GIVEN that an action has been commenced or will be commenced within 20 days in the Court of Common Pleas for Richland County upon a Complaint of the above-named Plaintiffs against the above-named Defendants for foreclosure of a certain Mortgage given by **KT Spears Creek, LLC,** to **First Savers Bank** dated December 21, 2007 and recorded on December 27, 2007 at 12:34 p.m. in the records of Richland County, South Carolina in Book 1387 at page 1944.

At the time of the filing of this notice, the premises affected by the said action were situated in the County of Richland, State of South Carolina, and are described in said Mortgage as follows:

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION: Deed from DAK I, LLC to KT Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland ·County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By: _____
    Amy L.B. Hill
    1310 Gadsden Street
    Post Office Box 11449
    Columbia, South Carolina 29211
    (803) 929-1400

Attorneys for Plaintiffs

Columbia, South Carolina
September 9, 2010

2

STATE OF SOUTH CAROLINA     )    IN THE COURT OF COMMON PLEAS
     )
COUNTY OF RICHLAND     )    IN THE FIFTH JUDICIAL CIRCUIT
     )
Plantation Federal Bank and First Savers     )    Civil Action No.:
Bank, a division of Plantation Federal     )
Bank,     )
     )
     Plaintiffs,     )
     )
vs.     )    **VERIFICATION**
     )
K.T. Spears Creek, LLC; Kyle D. Tauch,     )
Individually; Greenhill Parish     )
Community Association, Inc.; and RBC     )
Centura Bank,     )
     )
     Defendants.     )

| | |
|---|---|
| Current Principal Balance: | $5,939,503.69 |
| Interest Amount Due: | $ 185,923.14 |
| Fees: | $ 13,946.34 |
| **Total Due:** | **$6,139,373.17** |

PERSONALLY APPEARED BEFORE ME the undersigned, who being first duly sworn,

deposes and says:  That the above information is a true and correct statement of the account for

K.T. Spears Creek, LLC, and that no part of the sum due has been paid by discount, set-off or

otherwise, and he has authority to verify this account.

        FIRST SAVERS BANK

        By: _____

        Its: __VICE PRESIDENT__

SWORN TO AND SUBSCRIBED
Before me this _3rd_ day of September, 2010.

_____
Notary Public for South Carolina
My Commission expires ___My Commission Expires
        April 15, 2015

STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
 )
COUNTY OF RICHLAND )  IN THE FIFTH JUDICIAL CIRCUIT

Plantation Federal Bank and First Savers )  Civil Action No.:
Bank, a division of Plantation Federal )
Bank, )
 )
                              Plaintiffs, )  **VERIFIED COMPLAINT**
 )  **Foreclosure/Collection on Guaranty**
 )  **Deficiency Demand**
              vs. )  **Non-Jury**
 )
KT Spears Creek, LLC; Kyle D. Tauch, )
Individually; Greenhill Parish )
Community Association, Inc., a/k/a The )
Greenhill Parish Community )
Association, Inc.; and RBC Centura )
Bank, )
 )
                              Defendants. )

Plaintiffs complaining of the above-named Defendants, would respectfully allege the following:

1.      This is an action to foreclose a mortgage on real property located in Richland County, South Carolina and the Plaintiffs seek a deficiency judgment if the sale of the subject property does not cover the amounts owed.

2.      Pursuant to the South Carolina Supreme Court's Administrative Order filed on May 22, 2009, the mortgage loan identified herein is a commercial mortgage loan which is not owned, securitized or guaranteed by Fannie Mae or Freddie Mac nor is any servicer of the loan participating in the Home Affordable Modification Program (HMP), as referenced in the above Administrative Order. As such, the HMP is not applicable to the loan and mortgage identified herein.

3.    Plaintiffs Plantation Federal Bank and First Savers Bank, a division of Plantation Federal Bank (collectively "Bank") are banking corporations organized and existing under the laws of the United States.

4.    Defendant KT Spears Creek, LLC ("Borrower") is a limited-liability company organized pursuant to the laws of South Carolina and the owner of record of the subject property.

5.    Defendant Kyle D. Tauch ("Guarantor") is, upon information and belief, a citizen and resident of Houston County, Texas.

6.    Defendant Greenhill Parish Community Association, Inc., a/k/a G-P-C-A, Inc., is a corporation organized pursuant to the laws of South Carolina and upon information and belief, its office is located in Richland County, South Carolina.

7.    Upon information and belief, Defendant RBC Centura Bank ("RBC")is a corporation organized pursuant to the laws of North Carolina with an office located in Richland County, South Carolina

8.    This Court has jurisdiction over this matter.

9.    The real property which is the subject of the within Mortgage foreclosure action is located in Richland County, South Carolina.

### FOR A FIRST CAUSE OF ACTION
#### (Foreclosure)

10.    Each of the allegations in the above-numbered paragraphs are repeated herein as if stated verbatim.

11.    On or about December 21, 2007, the Bank made a loan to Borrower in the principal sum of Six Million and no/100 Dollars ($6,000,000.00) (the "Loan").

12.    On or about December 21, 2007, in consideration of the Loan, Borrower made, executed and delivered to First Savers Bank, its successors and assigns, a Promissory Note (as

2

amended, renewed and modified, referred to herein as the "Note") whereby it promised to pay to

the order of First Savers the principal sum of $6,000,000.00, together with interest at a fixed rate

of 7%.

13. A true and authentic copy of the Note is incorporated herein by reference and

attached hereto as **Exhibit A.**

14. On December 21, 2007, in order to secure the indebtedness represented by the

Note, the Borrower executed and delivered to the Bank, its successors and assigns, a Mortgage

(as amended, referred to herein as the "Mortgage") encumbering the real property located in

Richland County, South Carolina ("Premises") which is described as follows:

> ALL that certain piece, parcel or tract of land, with any improvements thereon,
> situate, lying and being near Columbia, in the County of Richland, State of South
> Carolina, containing 65.94 acres and being more particularly shown and
> delineated on a plat prepared for KT Spears Creek, LLC, prepared by United
> Design Services, Inc. dated August 13, 2007 and recorded in the Office of the
> Register of Deeds for Richland County, South Carolina in Plat Book 1366, at
> page 3582. Reference is hereby craved to said plat for a more complete and
> accurate metes and bounds description of said 65.94 acres.

> DERIVATION: Deed from DAK I, LLC to K. T. Spears Creek, LLC dated
> December 3, 2004 and recorded December 6, 2004 in the Office of the Register of
> Deeds for Richland County in Record Book 1003, at page 1581.

> TMS NO.: 25800-03-40 (portion)

15. The Mortgage was recorded on December 27, 2007 at 12:34 p.m. in the records of

Richland County, South Carolina in Book 1387 at page 1944.

16. A true and correct copy of the Mortgage is attached hereto and incorporated by

reference as **Exhibit B.**

17. The Mortgage constitutes a first priority mortgage on the Premises encumbered

by the Mortgage.

18.    Subsequent to December 21, 2007 but prior to January 26, 2010, Plantation Federal Bank became the successor to First Savers Bank and First Savers Bank became a division of Plantation Federal Bank.

19.    Therefore, Plantation Federal Bank became the owner and holder of the Note, Renewal Note (as herein after defined), the Mortgage, and the 2007 Guaranty (as also herein after defined).

20.    On or about January 26, 2010, the Note was renewed in the principal amount of $5,950,000.00.

21.    That renewal of the Note is evidenced by a Promissory Note dated January 26, 2010, which was executed and delivered to Plantation Federal Bank by Borrower in the amount of $5,950,000.00 (the "Renewal Note").

22.    The Renewal Note required 11 payments of $46,487.98 and a "balloon payment" of the unpaid balance and interest due on January 26, 2011.

23.    A true and authentic copy of the Renewal Note is incorporated herein by referenced and attached hereto as **Exhibit C**.

24.    The Borrower is in default under the terms of the Renewal Note by reason of its failure to pay the periodic payments due and owing under the Renewal Note, despite demand for payment having been made.

25.    The Renewal Note and Mortgage provided, among other things, that on failure to pay any installment of either principal or interest, or any portion thereof when due, the Bank shall have the right to declare the entire amount of the principal of the debt immediately due, and to proceed to enforce the collection of the same, together with interest, attorney's fees and all other amounts secured thereby.

4

26.    The Renewal Note, together with the Mortgage, is therefore in default and Plaintiff has and does hereby declare the entire balance of principal and interest to be immediately due and payable at once.

27.    Plaintiffs may be forced to pay sums for taxes and insurance and costs for securing the property, which sums according to the terms of the mortgage, should be added to the amount of the debt.

28.    The 2010 Renewal Note is expressly secured by the Mortgage.

29.    Plaintiffs have provided the Borrower with all notices of default, if any, required under the Renewal Note and Mortgage.

30.    As a result of the defaults set forth above, Plaintiffs have placed the Renewal Note and the Mortgage and other loan documents in the hands of its attorneys for collection by foreclosure.

31.    The amount due under the Renewal Note (exclusive of attorney's fees and costs of collection) as of September 3, 2010, was as follows:

| | |
|---|---|
| Principal | $5,939,503.69 |
| Interest | $  185,923.14 |
| Late Charges | $    13,946.34 |
| **TOTAL DEBT** | **$6,139,373.17** |

32.    Plaintiffs are entitled to judgment of foreclosure and sale of the Premises.

33.    The hereinafter named Defendants may have some interest in or lien upon the premises covered by the Mortgage set forth above, or some part thereof, but such interests or liens are junior and subsequent to the lien of Plaintiffs' Mortgage or, if specified below, have been paid in full and either should be satisfied of record or the lien released from the subject real

5

estate.  Said liens or interests are of record in the Office of the ROD or Clerk of Court of the aforesaid county and are described as follows:

      a.    As will be described in this paragraph, Defendant RBC Centura Bank has a mortgage on a large tract of land totaling 95.90 acres, including the 65.94 acres that are the subject of this litigation.  Plaintiffs are informed and believe that monies were paid to RBC Centura Bank in exchange for an agreement by said Defendant that its mortgage on the 65.94 acres would be released and that any assignment of rents or leases or any UCC filing impacting the 65.94 acres that are the subject of this litigation would be released. The mortgage held RBC Centura Bank was given by KT Spears Creek, LLC to secure the sum of $5,500,000.00 is dated December 2, 2004 and was recorded on December 6, 2004 in Book 1003 at page 1587 ("RBC 2004 Mortgage").  The 95.90 acre property covered by the RBC 2004 Mortgage:

> ALL that certain piece, parcel or tract of land, with all improvements thereon, situate, lying and being near Pontiac, in the County of Richland, State of South Carolina, containing 95.90 Acres and being more particularly shown and delineated on a plat entitled "Plat prepared for DAK I, LLC" and prepared by United Design Services, Inc., William M, Brasington, PLS No. 9312, dated July 26, 2002 and revised July 26, 2002 and recorded in the Office of the Register of Deeds for Richland County in Record Book 687, at page 3506. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 95.90 acres.
>
> DERIVATION: Deed from Baker and Baker Real Estate Developers, LLC, A. M. Lourie, Isadore E. Lourie and Marvin L. McCrory to DAK I, LLC dated January 13, 2000 and recorded January 14, 2000 in the Office of the Register of Deeds for Richland County in Record Book 376, at page 2717.
>
> TMS NO.: 25800-03-05 (portion)

KT Spears Creek, LLC also gave a mortgage to RBC Centura Bank in the amount of $17,700,000 dated May 25, 2006 and recorded on June 2, 2006 on property that was a

portion of the property covered by the mortgage described above but excluding the property which is subject to this lawsuit. (KT Spears Creek, LLC agreed to subordinate the December 2004 mortgage to the June 2006 mortgage.) (KT Spears Creek, LLC also agreed to cross-collateralize the June 2006 mortgage with the property that is the subject of this lawsuit.) Plaintiffs are informed and believe that the RBC 2004 Mortgage was partially paid in the amount of $3,000,000 in exchange for an agreement by RBC Centura Bank to release from the RBC 2004 Mortgage the property which is the subject of this action. Plaintiffs seek an order of this Court so releasing the property that is the subject of this action from the lien of the RBC 2004 Mortgage. Plaintiffs also seek an order of this Court releasing the premises from an RBC Centura Bank Assignment of Leases and Rents and any other UCC filings relating to the property that is the subject of this lawsuit.

      b.     Greenhill Parish Community Association, Inc., a/k/a The Greenhill Parish Community Association, Inc. by virtue of covenants, conditions and restrictions filed in the office of ROD for Richland County on May 8, 2001 in Book 515 at page 1703; as amended; to include, but not limited to, the right to claim a lien against the Premises for any unpaid assessments levied thereon.

    34.    Plaintiffs do not waive, but specifically demand a deficiency judgment against the Borrower and Guarantor, jointly and severally, for any amount outstanding after application of the proceeds of sale including but not limited to interest, the costs of collection and attorneys fees.

### FOR A SECOND CAUSE OF ACTION
#### (Collection on Guaranty)

    35.    Each and every allegation in the above-numbered paragraphs is repeated herein as if verbatim.

36.    On December 21, 2007, in order to better secure the Note, Defendant Kyle D. Tauch ("Guarantor") executed a Guaranty ("Guaranty") by which he individually and unconditionally guaranteed the payment of all indebtedness evidenced by the Note, including all renewals, extensions and/or modifications thereof, to include but not limited to the Renewal Note, plus costs and reasonable attorneys' fees of the Lender.

37.    A true and authentic copy of the Guaranty is attached hereto and incorporated by reference as **Exhibit D**.

38.    On January 26, 2010, in order to better secure the Renewal Note, Defendant Tauch executed a Continuing Unlimited Guaranty (the "2010 Guaranty") by which he unconditionally guaranteed the payment of all indebtedness of the Borrower to Plantation Federal Bank, including the indebtedness evidenced by the Renewal Note.

39.    A true and authentic copy of the 2010 Guaranty is incorporated herein by reference and attached hereto as **Exhibit E**.

40.    Plaintiffs have declared the entire balance of the Renewal Note and Guaranty due and payable and hereby demand payment of the same, but said Defendant Guarantor has refused to pay, and therefore is in default under the terms of the Guaranty.

41.    Plaintiffs expressly reserve the right to enter a deficiency judgment against the Defendants KT Spears Creek, LLC and Kyle D. Tauch after the sale of the mortgage property.

WHEREFORE, having fully set forth its Complaint, Plaintiffs pray that the Court inquire to the matters set forth herein and:

a.    That the amount due upon the Renewal Note, together with the attorneys' fees and the costs of collection, be ascertained and determined under the direction of the Court;

b.    That the Mortgage be declared a first mortgage on the Premises;

8

c.    That Plaintiffs have judgment of foreclosure for the amount so found to be due and owing under the Renewal Note;

d.    That the Premises be sold free and clear of all liens and interests; that the equity of redemption be barred, and the proceeds of the sale be applied as follows:

FIRST, to the costs and expenses of the within action and sale;

SECOND, to the payment and discharge of the amount due Plaintiffs upon the Renewal Note, together with costs and fees awarded by the court;

THIRD, the surplus, if any, be distributed according to law;

e.    For an Order directing and empowering the Sheriff of Richland County, South Carolina, to place the successful purchaser(s) at such foreclosure sale in possession of the Premises should the same become necessary;

f.    That the Court enter a deficiency judgment against Borrower and Guarantor, jointly and severally, for any amount due and owing to Plaintiffs after application of the proceeds of sale; and,

g.    For such other and further relief as this Court deems just and proper.

SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By: _____
Amy L.B. Hill
1310 Gadsden Street
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400

Attorneys for Plaintiffs

Columbia, South Carolina
September 9, 2010

9

# EXHIBIT A

X 8800023481 101

# PROMISSORY NOTE

$6,000,000.00

December *21st*, 2007

FOR VALUE RECEIVED, the undersigned KT SPEARS CREEK, LLC, a South Carolina limited liability company ("Borrower"), hereby promises to pay to the order of FIRST SAVERS BANK, a banking institution, located at 501 Roper Mountain Road, Greenville, South Carolina 29615, ("Lender"), or at such other place or to such other party or parties as the holder of this Note may from time to time designate, without offset, the principal sum of SIX MILLION and No/100 ($6,000,000.00) DOLLARS, or so much thereof as may be advanced, with interest thereon computed from date of each advance at the rate set forth below.

Section 1: Payment Schedule and Maturity Date. Prior to maturity, accrued and unpaid interest for each calendar month shall be due and payable in arrears on the fifth (5th) day of each month, commencing on January 5, 2008. The entire principal balance of this Note then unpaid, together with all accrued or unpaid interest and all other amounts payable hereunder and under the other Loan Documents (as hereinafter defined), shall be due and payable in full on December 31, 2009 (the "Maturity Date"), as the final maturity of this Note.

Section 2: Security; Loan Documents. The security for this Note includes a Mortgage, Assignment, Security Agreement, and Fixture Filing (as the same may from time to time be amended, restated, modified, or supplemented, the "Mortgage") of even date herewith from Borrower to Lender, conveying and encumbering certain real and personal property more particularly described therein (the "Property"). This Note, the Mortgage, the Loan Agreement between Borrower and Lender of even date herewith (as the same may from time to time be amended, restated, modified or supplemented, the "Loan Agreement") and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the "Loan"), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a "Loan Document" and together the "Loan Documents."

Section 3: Interest Rate. The unpaid principal balance of this Note from day to day outstanding which is not past due, shall bear interest at a fixed rate equal to Seven Percent (7%) *per annum*. If any amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at Eighteen Percent (18%) *per annum* or the highest amount permitted by applicable Law.

Section 4: Prepayment. Borrower shall be subject to a prepayment penalty in the amount of One Percent (1%) of the amount prepaid at any point prior to ninety (90) days before the Maturity Date. Such penalty shall not apply if Borrower refinances the current Loan with the proceeds of an alternate loan issued by Lender, prior to the Maturity Date.

Section 5: Late Charges. If Borrower shall fail to make any payment under the terms of this Note (other than the payment due at maturity) within fifteen (15) days after the date such payment is due, Borrower shall pay to Lender on demand a late charge equal to five percent (5%) of the amount of such

payment. Such fifteen (15) day period shall not be construed as in any way extending the due date of any payment. The late charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other amount that Lender may be entitled to receive or action that Lender may be authorized to take as a result of such late payment.

Section 6: Certain Provisions Regarding Payments. All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Lender under the Loan Documents, in such manner and order as Lender may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 p.m. shall be deemed to be received on, and shall be posted as of, the following Business Day. Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

Section 7: Events of Default. The occurrence of any one or more of the following shall constitute an "Event of Default" under this Note:

(a)     Borrower fails to pay when and as due and payable any amounts payable by Borrower to Lender under the terms of this Note.

(b)     Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period.

(c)     An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note (subject to any applicable grace or cure period).

Section 8: Remedies. Upon the occurrence of an Event of Default, Lender may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a)     Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

(b)     Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

2

(c)    Lender may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9: Remedies Cumulative.  All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies.  No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time.  No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10: Costs and Expenses of Enforcement.  Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with bankruptcy, insolvency or appeal.

Section 11: Heirs, Successors and Assigns.  The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties.  The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted under the Loan Documents.

Section 12: General Provisions. Time is of the essence with respect to Borrower's obligations under this Note.  If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby.  Borrower and each party executing this Note as Borrower hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any extensions or postponements of time of payment of this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinate to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full.  A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.  This Note may not be amended except in a writing specifically intended for such purpose and executed by the party

3

against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. This Note and its validity, enforcement and interpretation shall be governed by the laws of the state in which payment of this Note is to be made (without regard to any principles of conflicts of laws) and applicable United States federal law. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made. The term "Business Day" shall mean a day on which Lender is open for the conduct of substantially all of its banking business at its office in the city in which this Note is payable (excluding Saturdays and Sundays). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement. The words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 13: Notices. Any notice, request, or demand to or upon Borrower or Lender shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 14: No Usury. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note and all other indebtedness secured by the Mortgage, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

4

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first above written.

BORROWER:

KT SPEARS CREEK, LLC     [SEAL]

By: _____

Kyle Tauch
Its: Authorized Signatory

5

# EXHIBIT B

**Prepared By/Return To:**

First Savers Bank
501 Roper Mtn. Rd.
Greenville, SC 29615
Attn: Jeff McGehee



Book 1387-1944                                          Mortgage
2007113122  12/27/2007 12:34:04:997          State Tax: $0.00
Fee:$24.00   County Tax: $0.00

2007113122  Richard W. Rodden        Richland County ROD

*THE COLLATERAL SUBJECT TO THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND FIXTURE FILING INCLUDES GOODS THAT ARE OR ARE TO BECOME FIXTURES.*

*THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND FIXTURE FILING IS TO BE FILED IN THE REAL PROPERTY RECORDS FOR GREENVILLE COUNTY, AND SHALL SERVE AS A FIXTURE FILING FINANCING STATEMENT.*

MORTGAGE, ASSIGNMENT,
SECURITY AGREEMENT AND
FIXTURE FILING

by

KT Spears Creek, LLC,
a South Carolina limited liability company,
as Mortgagor,

to and in favor of

First Savers Bank,
as Mortgagee

Mortgage, Assignment, Security Agreement and Fixture Filing

This Mortgage, Assignment, Security Agreement and Fixture Filing is made as of the 21st day of December, 2007, by KT Spears Creek, LLC, a South Carolina limited liability company (herein referred to as "Mortgagor"), whose address is 5410 Piping Rock, Houston, TX 77056, to First Savers Bank ("Lender"), whose address is 501 Roper Mountain Rd., Greenville, SC 29615.

Recitals

Mortgagor has requested that Lender make the Loan (as hereinafter defined) to Mortgagor. As a condition precedent to making the Loan, Lender has required that Mortgagor execute and deliver this Mortgage, Assignment, Security Agreement and Fixture Filing to Lender.

Grants and Agreements

Now, therefore, in order to induce Lender to make the Loan to Mortgagor, Mortgagor agrees as follows:

Article I
Definitions.

As used in this Mortgage, the terms defined in the Preamble hereto shall have the respective meanings specified therein, and the following additional terms shall have the meanings specified:

"Accessories" means all fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies and other articles of personal property, of every kind and character, tangible and intangible (including software embedded therein), now owned or hereafter acquired by Mortgagor, which are now or hereafter attached to or situated in, on or about the Land or Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or Improvements, and all Additions to the foregoing, all of which are hereby declared to be permanent accessions to the Land.

"Accounts" means all accounts of Mortgagor within the meaning of the Uniform Commercial Code of the State, derived from or arising out of the use, occupancy or enjoyment of the Property or for services rendered therein or thereon.

"Additions" means any and all alterations, additions, accessions and improvements to property, substitutions therefor, and renewals and replacements thereof.

"Claim" means any liability, suit, action, claim, demand, loss, expense, penalty, fine, judgment or other cost of any kind or nature whatsoever, including fees, costs and expenses of attorneys, consultants, contractors and experts.

"Condemnation" means any taking of title to, use of, or any other interest in the Property under the exercise of the power of condemnation or eminent domain, whether temporarily or permanently, by any Governmental Authority or by any other Person acting under or for the benefit of a Governmental Authority.

"Condemnation Awards" means any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

"Default" means an event or circumstance which, with the giving of Notice or lapse of time, or both, would constitute an Event of Default under the provisions of this Mortgage.

"Encumbrance" means any Lien, easement, right of way, roadway (public or private), condition, covenant or restriction, Lease or other matter of any nature that would affect title to the Property.

"Event of Default" means an event or circumstance specified in Article VI and the continuance of such event or circumstance beyond the applicable grace and/or cure periods therefor, if any, set forth in Article VI.

"Expenses" means all fees, charges, costs and expenses of any nature whatsoever incurred at any time and from time to time (whether before or after an Event of Default) by Lender in making, funding, administering or modifying the Loan, in negotiating or entering into any "workout" of the Loan, or in exercising or enforcing any rights, powers and remedies provided in this Mortgage or any of the other Loan Documents, including attorneys' fees, court costs, receiver's fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of, or selling, the Property.

"Governmental Authority" means any governmental or quasi-governmental entity, including any court, department, commission, board, bureau, agency, administration, service, district or other instrumentality of any governmental entity.

"Guarantor" means Kyle Tauch, his heirs, personal representatives, successors and assigns.

"Guaranty" means the Guaranty Agreement of even date herewith executed by Guarantor for the benefit of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Improvements" means all buildings, structures and other improvements now or hereafter existing, erected or placed on the Land, together with any on-site improvements and off-site improvements in any way used or to be used in connection with the use, enjoyment, occupancy or operation of the Land.

"Insurance Proceeds" means the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to such Property, in each case whether now or hereafter existing or arising.

"Land" means the real property described in Exhibit A attached hereto and made a part hereof.

"Laws" means all federal, state and local laws, statutes, rules, ordinances, regulations, codes, licenses, authorizations, decisions, injunctions, interpretations, orders or decrees of any court or other Governmental Authority having jurisdiction as may be in effect from time to time.

"Leases" means all leases, license agreements and other occupancy or use agreements (whether oral or written), now or hereafter existing, which cover or relate to the Property or any part thereof, together with all options therefor, amendments thereto and renewals, modifications and guaranties thereof, including any cash or security deposited under the Leases to secure performance by the tenants of their obligations under the Leases, whether such cash or security is to be held until the expiration of the terms of the Leases or applied to one or more of the installments of rent coming due thereunder.

"Lender" means Lender and its successors and assigns.

"Lien" means any mortgage, Mortgage, pledge, security interest, assignment, judgment, lien or charge of any kind, including any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction.

"Loan" means the loan from Lender to Mortgagor, the repayment obligations in connection with which are evidenced by the Note.

"Loan Agreement" means the Loan Agreement of even date herewith between Mortgagor and Lender which sets forth, among other things, the terms and conditions upon which the proceeds of the Loan will be disbursed, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Loan Documents" means this Mortgage, the Note, the Guaranty, the Loan Agreement, and any and all other documents which Mortgagor, Guarantor or any other party or parties have executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Mortgage" means this Mortgage, Assignment, Security Agreement and Fixture Filing, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Note" means the Promissory Note of even date herewith in the original principal amount of Six Million and No/100 Dollars ($6,000,000.00) made by Mortgagor to the order of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Notice" means a notice, request, consent, demand or other communication given in accordance with the provisions of Section 8.8 of this Mortgage.

"Obligations" means all present and future debts, obligations and liabilities of Mortgagor to Lender arising pursuant to, and/or on account of, the provisions of this Mortgage, the Note or any of the other Loan Documents, including the obligations: (a) to pay all principal, interest, late charges, prepayment premiums (if any) and other amounts due at any time under the Note; (b) to pay all Expenses, indemnification payments, fees and other amounts due at any time under this Mortgage or any of the other Loan Documents, together with interest thereon as herein or therein provided; (c) to perform, observe and comply with all of the other terms, covenants and conditions, expressed or implied, which Mortgagor is required to perform, observe or comply with pursuant to this Mortgage or any of the other Loan Documents; and (d) in accordance with Section 29-3-50, as amended, Code of Laws of South Carolina 1976, to pay and perform all future advances, readvances and other obligations that Mortgagor or any successor in ownership of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender, when a writing evidences the parties' agreement that the advance, readvance or obligation be secured by this Mortgage; provided, however, that nothing contained herein shall create an obligation on the part of Lender to make future advances or readvances to Mortgagor. The maximum amount of all indebtedness outstanding at any one time secured hereby shall not exceed twice the face amount of the Note, plus interest thereon, all charges and expenses of collection incurred by Lender, including court costs, and reasonable attorneys' fees.

"Permitted Encumbrances" means (a) any matters set forth in any policy of title insurance issued to Lender and insuring Lender's interest in the Property which are acceptable to Lender as of the date hereof, (b) the Liens and interests of this Mortgage, and (c) any other Encumbrance that Lender shall expressly approve in its sole and absolute discretion, as evidenced by a "marked-up" commitment for title insurance initialed on behalf of Lender.

"Person" means an individual, a corporation, a partnership, a joint venture, a limited liability company, a trust, an unincorporated association, any Governmental Authority or any other entity.

"Personalty" means all personal property of any kind or nature whatsoever, whether tangible or intangible and whether now owned or hereafter acquired, in which Mortgagor now has or hereafter acquires an interest and which is used in the construction of, or is placed upon, or is derived from or used in connection with the maintenance, use, occupancy or enjoyment of, the Property, including (a) the

Accessories; (b) the Accounts; (c) all franchise, license, management or other agreements with respect to the operation of the Real Property or the business conducted therein (provided all of such agreements shall be subordinate to this Mortgage, and Lender shall have no responsibility for the performance of Mortgagor's obligations thereunder) and all general intangibles (including payment intangibles, trademarks, trade names, goodwill, software and symbols) related to the Real Property or the operation thereof; (d) all sewer and water taps, appurtenant water stock or water rights, allocations and agreements for utilities, bonds, letters of credit, permits, certificates, licenses, guaranties, warranties, causes of action, judgments, Claims, profits, security deposits, utility deposits, and all rebates or refunds of fees, Taxes, assessments, charges or deposits paid to any Governmental Authority related to the Real Property or the operation thereof; (e) all insurance policies held by Mortgagor with respect to the Property or Mortgagor's operation thereof; and (f) all money, instruments and documents (whether tangible or electronic) arising from or by virtue of any transactions related to the Property, and all deposits and deposit accounts of Mortgagor with Lender related to the Property, including any such deposit account from which Mortgagor may from time to time authorize Lender to debit and/or credit payments due with respect to the Loan; together with all Additions to and Proceeds of all of the foregoing.

"Proceeds," when used with respect to any of the Property, means all proceeds of such Property, including all Insurance Proceeds and all other proceeds within the meaning of that term as defined in the Uniform Commercial Code of the State.

"Property" means the Real Property and the Personalty and all other rights, interests and benefits of every kind and character which Mortgagor now has or hereafter acquires in, to or for the benefit of the Real Property and/or the Personalty and all other property and rights used or useful in connection therewith, including all Leases, all Rents, all Condemnation Awards, and all Proceeds.

"Property Assessments" means all Taxes, payments in lieu of taxes, water rents, sewer rents, assessments, condominium and owner's association assessments and charges, maintenance charges and other governmental or municipal or public or private dues, charges and levies and any Liens (including federal tax liens) which are or may be levied, imposed or assessed upon the Property or any part thereof, or upon any Leases or any Rents, whether levied directly or indirectly or as excise taxes, as income taxes, or otherwise.

"Real Property" means the Land and Improvements, together with (a) all estates, title interests, title reversion rights, remainders, increases, issues, profits, rights of way or uses, additions, accretions, servitudes, strips, gaps, gores, liberties, privileges, water rights, water courses, alleys, passages, ways, vaults, licenses, tenements, franchises, hereditaments, appurtenances, easements, rights-of-way, rights of ingress or egress, parking rights, timber, crops, mineral interests and other rights, now or hereafter owned by Mortgagor and belonging or appertaining to the Land or Improvements; (b) all Claims whatsoever of Mortgagor with respect to the Land or Improvements, either in law or in equity, in possession or in expectancy; (c) all estate, right, title and interest of Mortgagor in and to all streets, roads and public places, opened or proposed, now or hereafter adjoining or appertaining to the Land or Improvements; and (d) all options to purchase the Land or Improvements, or any portion thereof or interest therein, and any greater estate in the Land or Improvements, and all Additions to and Proceeds of the foregoing.

"Rents" means all of the rents, royalties, issues, profits, revenues, earnings, income and other benefits of the Property, or arising from the use or enjoyment of the Property, including all such amounts paid under or arising from any of the Leases and all fees, charges, accounts or other payments for the use or occupancy of rooms or other public facilities within the Real Property.

"State" means South Carolina.

"Taxes" means all taxes and assessments, whether general or special, ordinary or extraordinary, or foreseen or unforeseen, which at any time may be assessed, levied, confirmed or imposed by any Governmental Authority or any community facilities or other private district on Mortgagor or on any of

its properties or assets or any part thereof or in respect of any of its franchises, businesses, income or profits.

"Transfer" means any direct or indirect sale, assignment, conveyance or transfer, including any Contract of Sale and any other contract or agreement to sell, assign, convey or transfer, whether made voluntarily or by operation of Law or otherwise, and whether made with or without consideration.

Article II
Granting Clauses; Condition of Grant.

Section 2.1     Conveyances and Security Interests.

In order to secure the prompt payment and performance of the Obligations, Mortgagor (a) grants, bargains, sells and conveys the Real Property unto Lender, to have and to hold the Real Property in fee simple forever; provided that Mortgagor may retain possession of the Real Property until the occurrence of an Event of Default; (b) grants to Lender a security interest in the Personalty; and (c) assigns to Lender, and grants to Lender a security interest in, all Condemnation Awards and all Insurance Proceeds.  All Persons who may have or acquire an interest in all or any part of the Property will be deemed to have notice of, and will be bound by, the terms of the Obligations and each other agreement or instrument made or entered into in connection with each of the Obligations.  Such terms include any provisions in the Note or the Loan Agreement which provide that the interest rate on one or more of the Obligations may vary from time to time.

Section 2.2     Absolute Assignment of Leases and Rents.

In consideration of the making of the Loan by Lender to Mortgagor, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor absolutely and unconditionally assigns the Leases and Rents to Lender.  This assignment is, and is intended to be, an unconditional, absolute and present assignment from Mortgagor to Lender of all of Mortgagor's right, title and interest in and to the Leases and the Rents and not an assignment in the nature of a pledge of the Leases and Rents or the mere grant of a security interest therein.  So long as no Event of Default shall exist, however, and so long as Mortgagor is not in default in the performance of any obligation, covenant or agreement contained in the Leases, Mortgagor shall have a license (which license shall terminate automatically and without notice upon the occurrence of an Event of Default or a default by Mortgagor under the Leases) to collect, but not prior to accrual, all Rents.  Mortgagor agrees to collect and hold all Rents in trust for Lender and to use the Rents for the payment of the cost of operating and maintaining the Property and for the payment of the other Obligations before using the Rents for any other purpose.

Section 2.3     Security Agreement, Fixture Filing and Financing Statement.

This Mortgage creates a security interest in the Personalty, and, to the extent the Personalty is not real property, this Mortgage constitutes a security agreement from Mortgagor to Lender under the Uniform Commercial Code of the State.  In addition to all of its other rights under this Mortgage and otherwise, Lender shall have all of the rights of a secured party under the Uniform Commercial Code of the State, as in effect from time to time, or under the Uniform Commercial Code in force from time to time in any other state to the extent the same is applicable Law.  This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real estate records of each county where any part of the Property (including such fixtures) is situated.  This Mortgage shall also be effective as a financing statement with respect to any other Property as to which a security interest may be perfected by the filing of a financing statement and may be filed as such in any appropriate filing or recording office.  The respective mailing addresses of Mortgagor and Lender are set forth in the opening paragraph of this Mortgage.  A carbon, photographic or other reproduction of this Mortgage or any other financing statement relating to this Mortgage shall be sufficient as a financing statement for any of the purposes referred to in this Section.  Mortgagor hereby

irrevocably authorizes Lender at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements as authorized by applicable Law, reasonably required by Lender to establish or maintain the validity, perfection and priority of the security interests granted in this Mortgage. The foregoing authorization includes Mortgagor's irrevocable authorization for Lender at any time and from time to time to file any initial financing statements and amendments thereto that indicate the Personalty (a) as "all assets" of Mortgagor or words of similar effect, regardless of whether any particular asset comprised in the Personalty falls within the scope of the Uniform Commercial Code of the State or the jurisdiction where the initial financing statement or amendment is filed, or (b) as being of an equal or lesser scope or with greater detail.

Section 2.4    Release of Mortgage and Termination of Assignments and Financing Statements.

If and when Mortgagor has paid and performed all of the Obligations, and no further advances are to be made under the Loan Agreement, Lender will provide a release of the Property from the lien of this Mortgage and termination statements for filed financing statements, if any, to Mortgagor. Mortgagor shall be responsible for the recordation of such release and the payment of any recording and filing costs. Upon the recording of such release and the filing of such termination statements, the absolute assignments set forth in Section 2.2 shall automatically terminate and become null and void.

Article III
Representations and Warranties.

Mortgagor makes the following representations and warranties to Lender:

Section 3.1    Title to Real Property.

Mortgagor (a) owns fee simple title to the Real Property, (b) owns all of the beneficial and equitable interest in and to the Real Property, and (c) is lawfully seized and possessed of the Real Property. Mortgagor has the right and authority to convey the Real Property and does hereby convey the Real Property. The Real Property is subject to no Encumbrances other than the Permitted Encumbrances.

Section 3.2    Title to Other Property.

Mortgagor has good title to the Personalty, and the Personalty is not subject to any Encumbrance other than the Permitted Encumbrances. None of the Leases or Rents are subject to any Encumbrance other than the Permitted Encumbrances.

Section 3.3    Property Assessments.

The Real Property is assessed for purposes of Property Assessments as a separate and distinct parcel from any other property, such that the Real Property shall never become subject to the Lien of any Property Assessments levied or assessed against any property other than the Real Property.

Section 3.4    Independence of the Real Property.

No buildings or other improvements on property not covered by this Mortgage rely on the Real Property or any interest therein to fulfill any requirement of any Governmental Authority for the existence of such property, building or improvements; and none of the Real Property relies, or will rely, on any property not covered by this Mortgage or any interest therein to fulfill any requirement of any Governmental Authority. The Real Property has been properly subdivided from all other property in accordance with the requirements of any applicable Governmental Authorities.

Section 3.5    Existing Improvements.

The existing Improvements, if any, were constructed, and are being used and maintained, in accordance with all applicable Laws, including zoning Laws.

Section 3.6    Leases and Tenants.

The Leases are valid and are in full force and effect, and Mortgagor is not in default under any of the terms thereof. Except as expressly permitted in the Loan Agreement, Mortgagor has not accepted any Rents in advance of the time the same became due under the Leases and has not forgiven, compromised or discounted any of the Rents. Mortgagor has title to and the right to assign the Leases and Rents to Lender, and no other assignment of the Leases or Rents has been granted. To the best of Mortgagor's knowledge and belief, no tenant or tenants occupying, individually or in the aggregate, more than five percent (5%) of the net rentable area of the Improvements are in default under their Lease(s) or are the subject of any bankruptcy, insolvency or similar proceeding.

Article IV
Affirmative Covenants.

Section 4.1    Obligations.

Mortgagor agrees to promptly pay and perform all of the Obligations, time being of the essence in each case.

Section 4.2    Property Assessments; Documentary Taxes.

Mortgagor (a) will promptly pay in full and discharge all Property Assessments, and (b) will furnish to Lender, upon demand, the receipted bills for such Property Assessments prior to the day upon which the same shall become delinquent. Property Assessments shall be considered delinquent as of the first day any interest or penalty commences to accrue thereon. Mortgagor will promptly pay all stamp, documentary, recordation, transfer and intangible taxes and all other taxes that may from time to time be required to be paid with respect to the Loan, the Note, this Mortgage or any of the other Loan Documents.

Section 4.3    Permitted Contests.

Mortgagor shall not be required to pay any of the Property Assessments, or to comply with any Law, so long as Mortgagor shall in good faith, and at its cost and expense, contest the amount or validity thereof, or take other appropriate action with respect thereto, in good faith and in an appropriate manner or by appropriate proceedings; provided that (a) such proceedings operate to prevent the collection of, or other realization upon, such Property Assessments or enforcement of the Law so contested, (b) there will be no sale, forfeiture or loss of the Property during the contest, (c) Lender is not subjected to any Claim as a result of such contest, and (d) Mortgagor provides assurances satisfactory to Lender (including the establishment of an appropriate reserve account with Lender) of its ability to pay such Property Assessments or comply with such Law in the event Mortgagor is unsuccessful in its contest. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Mortgagor shall indemnify and save Lender harmless against all Claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Mortgagor shall comply with such Law and/or pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

Section 4.4    Compliance with Laws.

Mortgagor will comply with and not violate, and cause to be complied with and not violated, all present and future Laws applicable to the Property and its use and operation.

Section 4.5    Maintenance and Repair of the Property.

Mortgagor, at Mortgagor's sole expense, will (a) keep and maintain Improvements and Accessories in good condition, working order and repair, and (b) make all necessary or appropriate repairs and Additions to Improvements and Accessories, so that each part of the Improvements and all of the Accessories shall at all times be in good condition and fit and proper for the respective purposes for which they were originally intended, erected, or installed.

Section 4.6    Additions to Security.

All right, title and interest of Mortgagor in and to all Improvements and Additions hereafter constructed or placed on the Property and in and to any Accessories hereafter acquired shall, without any further Mortgage, conveyance, assignment or other act by Mortgagor, become subject to the Lien of this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described in the granting clauses hereof. Mortgagor agrees, however, to execute and deliver to Lender such further documents as may be required by the terms of the Loan Agreement and the other Loan Documents.

Section 4.7    Subrogation.

To the extent permitted by Law, Lender shall be subrogated, notwithstanding its release of record, to any Lien now or hereafter existing on the Property to the extent that such Lien is paid or discharged by Lender whether or not from the proceeds of the Loan. This Section shall not be deemed or construed, however, to obligate Lender to pay or discharge any Lien.

Section 4.8    Leases.

(a)    Except as expressly permitted in the Loan Agreement, Mortgagor shall not enter into any Lease with respect to all or any portion of the Property without the prior written consent of Lender.

(b)    Lender shall not be obligated to perform or discharge any obligation of Mortgagor under any Lease. The assignment of Leases provided for in this Mortgage in no manner places on Lender any responsibility for (i) the control, care, management or repair of the Property, (ii) the carrying out of any of the terms and conditions of the Leases, (iii) any waste committed on the Property, or (iv) any dangerous or defective condition on the Property (whether known or unknown).

(c)    No approval of any Lease by Lender shall be for any purpose other than to protect Lender's security and to preserve Lender's rights under the Loan Documents, and no such approval shall result in a waiver of a Default or Event of Default.

Article V
Negative Covenants.

Section 5.1    Encumbrances.

Except as otherwise provided below, Mortgagor will not permit any of the Property to become subject to any Encumbrance other than the Permitted Encumbrances. Within thirty (30) days after the filing of any mechanic's lien or other Lien or Encumbrance against the Property, Mortgagor will promptly discharge the same by payment or filing a bond or otherwise as permitted by Law. So long as Lender's security has been protected by the filing of a bond or otherwise in a manner satisfactory to Lender in its sole and absolute discretion, Mortgagor shall have the right to contest in good faith any Claim, Lien or Encumbrance, provided that Mortgagor does so diligently and without prejudice to Lender or delay in completing construction of the Improvements. Mortgagor shall give Lender Notice of any default under any Lien and Notice of any foreclosure or threat of foreclosure with respect to any of the Property.

Section 5.2    Transfer of the Property.

Mortgagor will not Transfer, or contract to Transfer, all or any part of the Property or any legal or beneficial interest therein (except for certain Transfers of the Accessories expressly permitted in this Mortgage). The Transfer of more than 10% of the membership interests in Mortgagor (whether in one or more transactions during the term of the Loan) shall be deemed to be a prohibited Transfer of the Property.

Section 5.3    Removal, Demolition or Alteration of Accessories and Improvements.

Except to the extent permitted by the following sentence, no Improvements or Accessories shall be removed, demolished or materially altered without the prior written consent of Lender. Mortgagor may remove and dispose of, free from the Lien of this Mortgage, such Accessories as from time to time become worn out or obsolete, provided that, either (a) at the time of, or prior to, such removal, any such Accessories are replaced with other Accessories which are free from Liens other than Permitted Encumbrances and have a value at least equal to that of the replaced Accessories (and by such removal and replacement Mortgagor shall be deemed to have subjected such Accessories to the Lien of this Mortgage), or (b) so long as a prepayment may be made without the imposition of any premium pursuant to the Note, such Accessories are sold at fair market value for cash and the net cash proceeds received from such disposition are paid over promptly to Lender to be applied to the prepayment of the principal of the Loan.

Section 5.4    Additional Improvements.

Mortgagor will not construct any Improvements other than those presently on the Land and those described in the Loan Agreement without the prior written consent of Lender. Mortgagor will complete and pay for, within a reasonable time, any Improvements which Mortgagor is permitted to construct on the Land. Mortgagor will construct and erect any permitted Improvements (a) strictly in accordance with all applicable Laws and any private restrictive covenants, (b) entirely on lots or parcels of the Land, (c) so as not to encroach upon any easement or right of way or upon the land of others, and (d) wholly within any building restriction and setback lines applicable to the Land.

Section 5.5    Restrictive Covenants, Zoning, etc.

Without the prior written consent of Lender, Mortgagor will not initiate, join in, or consent to any change in, any restrictive covenant, easement, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Property. Mortgagor (a) will promptly perform and observe, and cause to be performed and observed, all of the terms and conditions of all agreements affecting the Property, and (b) will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor of, or constituting any portion of, the Property.

Article VI
Events of Default.

The occurrence or happening, from time to time, of any one or more of the following shall constitute an Event of Default under this Mortgage:

Section 6.1    Payment Obligations.

Mortgagor fails to pay any of the Obligations when due (after lapse of notice or applicable cure periods), whether on the scheduled due date or upon acceleration, maturity or otherwise.

Section 6.2    Transfers.

Mortgagor Transfers, or contracts to Transfer, all or any part of the Property or any legal or beneficial interest therein (except for Transfers of the Accessories expressly permitted under this Mortgage). The Transfer of more than 10% of the membership interests in Mortgagor (whether in one or more transactions during the term of the Loan) shall be deemed to be a prohibited Transfer of the Property constituting an Event of Default.

Section 6.3    Other Obligations.

Mortgagor fails to promptly perform or comply with any of the Obligations set forth in this Mortgage (other than those expressly described in other Sections of this Article VI), and such failure

... ..

continues uncured for a period of thirty (30) days after Notice from Lender to Mortgagor, unless (a) such failure, by its nature, is not capable of being cured within such period, and (b) within such period, Mortgagor commences to cure such failure and thereafter diligently prosecutes the cure thereof, and (c) Mortgagor causes such failure to be cured no later than ninety (90) days after the date of such Notice from Lender.

Section 6.4    Event of Default Under Other Loan Documents.

An Event of Default (as defined therein) occurs under the Note or the Loan Agreement, or Borrower or Guarantor fails to promptly pay, perform, observe or comply with any obligation or agreement contained in any of the other Loan Documents (within any applicable grace or cure period).

Section 6.5    Change in Zoning or Public Restriction.

Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Loan Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

Section 6.6    Default Under Leases.

Mortgagor fails duly to perform its obligations under any Lease, and such failure is not cured within the grace period, if any, provided in the Lease.

Section 6.7    Default Under Other Lien Documents.

A default occurs under any other mortgage or security agreement covering the Property, including any Permitted Encumbrances, and the same is not cured within thirty (30) days.

Section 6.8    Execution; Attachment.

Any execution or attachment is levied against any of the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

## Article VII
### Rights and Remedies.

Upon the happening of any Event of Default, Lender shall have the right, in addition to any other rights or remedies available to Lender under any of the Loan Documents or applicable Law, to exercise any one or more of the following rights, powers or remedies:

Section 7.1    Acceleration.

Lender may accelerate all Obligations under the Loan Documents whereupon such Obligations shall become immediately due and payable, without notice of default, notice of acceleration or intention to accelerate, presentment or demand for payment, protest, notice of protest, notice of nonpayment or dishonor, or notices or demands of any kind or character (all of which are hereby waived by Mortgagor).

Section 7.2    Foreclosure.

Upon failure to pay the Obligations in full at any stated or accelerated maturity, the Lender may foreclose the lien of this Mortgage and sell, as an entirety or in separate lots or parcels, the Property, under the judgment or decree of a court or courts of competent jurisdiction. Lender shall take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, or both, as the Lender may determine. Lender, at its option, is authorized to foreclose this Mortgage subject to the rights of any tenants of the Property and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted by Mortgagor to be, a defense to any proceedings instituted by Lender to collect the sums secured hereby or to collect any deficiency remaining unpaid after the foreclosure sale of the Property.

Upon any such foreclosure sale, Lender may bid for and purchase the Property and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such Property in its own absolute right without further accountability. Upon any such foreclosure sale, Lender may, if permitted by law, after allowing for the proportion of the total purchase price required to be paid in cash and for the costs and expenses of the sale, compensation and other charges, in paying the purchase price apply any portion of or all sums due to Lender under the Note, this Mortgage or any other instrument securing the Note, in lieu of cash, to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon.

Section 7.3    Enforcement of Assignment of Rents; Entry on Property.

In addition to the rights of Lender under Article 3 hereof, prior or subsequent to taking possession of any portion of the Property or taking any action with respect to such possession, Lender may: (1) collect and/or sue for the Rents in Lender's own name, give receipts and releases therefor, and after deducting all expenses of collection, including attorneys' fees and expenses, apply the net proceeds thereof to the Obligations in such manner and order as Lender may elect and/or to the operation and management of the Property, including the payment of management, brokerage and attorney's fees and expenses; and (2) require Mortgagor to transfer all security deposits and records thereof to Lender together with original counterparts of the Leases. Additionally, Lender is authorized, prior or subsequent to the institution of any foreclosure proceedings, to the fullest extent permitted by applicable law, to enter upon the Property, or any part thereof, and to take possession of the Property and all books and records, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics relating thereto, and to exercise without interference from Mortgagor any and all rights which Mortgagor has with respect to the management, possession, operation, protection or preservation of the Property. Lender shall not be deemed to have taken possession of the Property or any part thereof except upon the exercise of its right to do so, and then only to the extent evidenced by its demand and overt act specifically for such purpose. All costs, expenses and liabilities of every character incurred by Lender in managing, operating, maintaining, protecting or preserving the Property shall constitute a demand obligation of Mortgagor (which obligation Mortgagor hereby promises to pay) to Lender pursuant to this Mortgage. If necessary to obtain the possession provided for above, Lender may invoke any and all legal remedies to dispossess Mortgagor. In connection with any action taken by Lender pursuant to this Section, Lender shall not be liable for any loss sustained by Mortgagor resulting from any failure to let the Property or any part thereof, or from any act or omission of Lender in managing the Property unless such loss is caused by the willful misconduct and bad faith of Lender, nor shall Lender be obligated to perform or discharge any obligation, duty or liability of Mortgagor arising under any lease or other agreement relating to the Property or arising under any Permitted Encumbrance or otherwise arising. Mortgagor hereby assents to, ratifies and confirms any and all actions of Lender with respect to the Property taken under this Section 7.3.

Section 7.4    Taking Possession or Control of the Property.

As a matter of right without regard to the adequacy of the security, and to the extent permitted by Law without notice to Mortgagor, Lender shall be entitled, upon application to a court of competent jurisdiction, to the immediate appointment of a receiver for all or any part of the Property and the Rents, whether such receivership may be incidental to a proposed sale of the Property or otherwise, and Mortgagor hereby consents to the appointment of such a receiver, waives notice of such appointment, of any request therefore or hearing in connection therewith, and any and all defenses to such appointment, and agrees that such receiver shall have all of the rights and powers granted to Lender pursuant to <u>Section 7.3</u>. Nothing herein is to be construed to deprive Lender of any other right, remedy or privilege it may have under the law to have a receiver appointed. Any money advanced by Lender in connection with any such receivership shall be a demand obligation (which obligation Mortgagor hereby promises to pay) owing by Mortgagor to Lender pursuant to this Mortgage.

Section 7.5    <u>Management of the Property</u>.

Upon obtaining possession of the Property or upon the appointment of a receiver as described in <u>Section 7.3</u>, Lender, or the receiver, as the case may be, may, at its sole option, (a) make all necessary or proper repairs and Additions to or upon the Property, (b) operate, maintain, control, make secure and preserve the Property, and (c) complete the construction of any unfinished Improvements on the Property and, in connection therewith, continue any and all outstanding contracts for the erection and completion of such Improvements and make and enter into any further contracts which may be necessary, either in their or its own name or in the name of Mortgagor (the costs of completing such Improvements shall be Expenses secured by this Mortgage and shall accrue interest as provided in the Loan Agreement and the other Loan Documents). Lender or such receiver shall be under no liability for, or by reason of, any such taking of possession, entry, holding, removal, maintaining, operation or management, except for gross negligence or willful misconduct. The exercise of the remedies provided in this Section shall not cure or waive any Event of Default, and the enforcement of such remedies, once commenced, shall continue for so long as Lender shall elect, notwithstanding the fact that the exercise of such remedies may have, for a time, cured the original Event of Default.

Section 7.6    <u>Uniform Commercial Code</u>.

Lender may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. Upon the occurrence of any Event of Default, Mortgagor shall assemble all of the Accessories and make the same available within the Improvements. Any notification required by the Uniform Commercial Code shall be deemed reasonably and properly given if sent in accordance with the Notice provisions of this Mortgage at least ten (10) days before any sale or other disposition of the Personalty. Disposition of the Personalty shall be deemed commercially reasonable if made pursuant to a public sale advertised at least twice in a newspaper of general circulation in the community where the Property is located. It shall be deemed commercially reasonable for the Lender to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

Section 7.7    <u>Application of Proceeds</u>.

Unless otherwise provided by applicable Law, all proceeds from the sale of the Property or any part thereof pursuant to the rights and remedies set forth in this <u>Article VII</u> and any other proceeds received by Lender from the exercise of any of its other rights and remedies hereunder or under the other Loan Documents shall be applied first to pay all Expenses and next in reduction of the other Obligations, in such manner and order as Lender may elect.

Section 7.8    <u>Other Remedies</u>.

Lender shall have the right from time to time to protect, exercise and enforce any legal or equitable remedy against Mortgagor provided under the Loan Documents or by applicable Laws.

Article VIII
Miscellaneous.

Section 8.1    Rights, Powers and Remedies Cumulative.

Each right, power and remedy of Lender as provided for in this Mortgage, or in any of the other Loan Documents or now or hereafter existing by Law, shall be cumulative and concurrent and shall be in addition to every other right, power or remedy provided for in this Mortgage, or in any of the other Loan Documents or now or hereafter existing by Law, and the exercise or beginning of the exercise by Lender of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights, powers or remedies.

Section 8.2    No Waiver by Lender.

No course of dealing or conduct by or between Lender and Mortgagor shall be effective to amend, modify or change any provisions of this Mortgage or the other Loan Documents.  No failure or delay by Lender to insist upon the strict performance of any term, covenant or agreement of this Mortgage or of any of the other Loan Documents, or to exercise any right, power or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, covenant or agreement or of any such breach, or preclude Lender from exercising any such right, power or remedy at any later time or times.  By accepting payment after the due date of any of the Obligations, Lender shall not be deemed to waive the right either to require prompt payment when due of all other Obligations, or to declare an Event of Default for failure to make prompt payment of any such other Obligations.  Neither Mortgagor nor any other Person now or hereafter obligated for the payment of the whole or any part of the Obligations shall be relieved of such liability by reason of (a) the failure of Lender to comply with any request of Mortgagor or of any other Person to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage, or (b) any agreement or stipulation between any subsequent owner or owners of the Property and Lender, or (c) Lender's extending the time of payment or modifying the terms of this Mortgage or any of the other Loan Documents without first having obtained the consent of Mortgagor or such other Person.  Regardless of consideration, and without the necessity for any notice to or consent by the Lender of any subordinate Lien on the Property, Lender may release any Person at any time liable for any of the Obligations or any part of the security for the Obligations and may extend the time of payment or otherwise modify the terms of this Mortgage or any of the other Loan Documents without in any way impairing or affecting the Lien of this Mortgage or the priority of this Mortgage over any subordinate Lien.  The Mortgagor shall not agree to or allow the Lender of any subordinate Lien to terminate any Lease regardless of whether or not such Lease is subordinate to this Mortgage.  Lender may resort to the security or collateral described in this Mortgage or any of the other Loan Documents in such order and manner as Lender may elect in its sole discretion.

Section 8.3    Waivers and Agreements Regarding Remedies.

To the full extent Mortgagor may do so, Mortgagor hereby:

(a)    agrees that it will not at any time plead, claim or take advantage of any Laws now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and waives and releases all rights of redemption, valuation, appraisement, stay of execution, extension and notice of election to accelerate the Obligations;

(b)    waives all rights to a marshalling of the assets of Mortgagor, including the Property, or to a sale in the inverse order of alienation in the event of a foreclosure of the Property, and agrees not to assert any right under any Law pertaining to the marshalling of assets, the sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatsoever to defeat, reduce or affect the right of Lender under the terms of this Mortgage to a sale of the Property without any prior or different resort for collection, or the right of Lender to the

payment of the Obligations out of the proceeds of sale of the Property in preference to every other claimant whatsoever;

(c)     waives any right to bring or utilize any defense, counterclaim or setoff, other than one which denies the existence or sufficiency of the facts upon which any foreclosure action is grounded. If any defense, counterclaim or setoff, other than one permitted by the preceding clause, is timely raised in a foreclosure action, such defense, counterclaim or setoff shall be dismissed.  If such defense, counterclaim or setoff is based on a Claim which could be tried in an action for money damages, such Claim may be brought in a separate action which shall not thereafter be consolidated with the foreclosure action.  The bringing of such separate action for money damages shall not be deemed to afford any grounds for staying the foreclosure action; and

(d)     waives and relinquishes any and all rights and remedies which Mortgagor may have or be able to assert by reason of the provisions of any Laws pertaining to the rights and remedies of sureties.

Section 8.4     Successors and Assigns.

All of the grants, covenants, terms, provisions and conditions of this Mortgage shall run with the Land and shall apply to and bind the successors and assigns of Mortgagor (including any permitted subsequent owner of the Property), and inure to the benefit of Lender, its successors and assigns.

Section 8.5     No Warranty by Lender.

By inspecting the Property or by accepting or approving anything required to be observed, performed or fulfilled by Mortgagor or to be given to Lender pursuant to this Mortgage or any of the other Loan Documents, Lender shall not be deemed to have warranted or represented the condition, sufficiency, legality, effectiveness or legal effect of the same, and such acceptance or approval shall not constitute any warranty or representation with respect thereto by Lender.

Section 8.6     Amendments.

This Mortgage may not be modified or amended except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

Section 8.7     Severability.

In the event any one or more of the provisions of this Mortgage or any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any other respect, or in the event any one or more of the provisions of the Loan Documents operates or would prospectively operate to invalidate this Mortgage or any of the other Loan Documents, then and in either of those events, at the option of Lender, such provision or provisions only shall be deemed null and void and shall not affect the validity of the remaining Obligations, and the remaining provisions of the Loan Documents shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

Section 8.8     Notices.

All Notices required or which any party desires to give hereunder or under any other Loan Document shall be in writing and, unless otherwise specifically provided in such other Loan Document, shall be deemed sufficiently given or furnished if delivered by personal delivery, by nationally recognized overnight courier service or by certified United States mail, postage prepaid, addressed to the party to whom directed at the applicable address specified in the Preamble to this Mortgage (unless changed by similar notice in writing given by the particular party whose address is to be changed) or by facsimile. Any Notice shall be deemed to have been given either at the time of personal delivery or, in the case of courier or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile, upon receipt; provided that service of a Notice required by any applicable

statute shall be considered complete when the requirements of that statute are met. Notwithstanding the foregoing, no notice of change of address shall be effective except upon actual receipt. This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in this Mortgage or in any other Loan Document or to require giving of notice or demand to or upon any Person in any situation or for any reason.

Section 8.9    Joint and Several Liability.

[Intentionally omitted.]

Section 8.10    Rules of Construction.

The words "hereof," "herein," "hereunder," "hereto," and other words of similar import refer to this Mortgage in its entirety. The terms "agree" and "agreements" mean and include "covenant" and "covenants." The words "include" and "including" shall be interpreted as if followed by the words "without limitation." The headings of this Mortgage are for convenience of reference only and shall not be considered a part hereof and are not in any way intended to define, limit or enlarge the terms hereof. All references (a) made in the neuter, masculine or feminine gender shall be deemed to have been made in all such genders, (b) made in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well, (c) to the Loan Documents are to the same as extended, amended, restated, supplemented or otherwise modified from time to time unless expressly indicated otherwise, (d) to the Land, Improvements, Personalty, Real Property or Property shall mean all or any portion of each of the foregoing, respectively, and (e) to Articles or Sections are to the respective Articles or Sections contained in this Mortgage unless expressly indicated otherwise. Any term used or defined in the Uniform Commercial Code of the State, as in effect from time to time, which is not defined in this Mortgage shall have the meaning ascribed to that term in the Uniform Commercial Code of the State. If a term is defined in Article 9 of the Uniform Commercial Code of the State differently than in another Article of the Uniform Commercial Code of the State, the term shall have the meaning specified in Article 9.

Section 8.11    Governing Law.

This Mortgage shall be construed, governed and enforced in accordance with the Laws in effect from time to time in the State.

Section 8.12    Entire Agreement.

The Loan Documents constitute the entire understanding and agreement between Mortgagor and Lender with respect to the transactions arising in connection with the Loan, and supersede all prior written or oral understandings and agreements between Mortgagor and Lender with respect to the matters addressed in the Loan Documents. In particular, and without limitation, the terms of any commitment by Lender to make the Loan are merged into the Loan Documents. Except as incorporated in writing into the Loan Documents, there are no representations, understandings, stipulations, agreements or promises, oral or written, with respect to the matters addressed in the Loan Documents.

[continued on following page]

Section 8.13   Waiver of Appraisal Rights.

The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the Property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE MORTGAGOR HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE PROPERTY.

    IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be executed under seal as of the day and year first written above.

WITNESSES:

_____
Witness

_____
Notary Public

KT SPEARS CREEK, LLC

By: _____
Kyle Taubh
Its: _____  Mgr.

***************************

STATE OF _Texas_            )
                            )    ACKNOWLEDGEMENT
COUNTY OF _Harris County_   )

I, the undersigned, a Notary Public, do hereby certify that KT SPEARS CREEK, LLC, a South Carolina limited liability company, by its authorized signatory personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and seal
this _21_ day of December, 2007.

_____ (SEAL)
Notary Public for South Carolina Texas
My commission expires: _9-10-2010_

MICHELE LEE REED
Notary Public, State of Texas
My Commission Expires
September 12, 2010

Exhibit A

**LEGAL DESCRIPTION**

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION: Deed from DAK I, LLC to K T Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

PLEASE RETURN TO:
NEXSEN PRUET JACOBS & POLLARD
P. O. BOX DRAWER 2426
COLUMBIA, SC 29202
ATTENTION: ILA CAULK

Prepared By/Return To:

First Savers Bank
501 Roper Mtn. Rd.
Greenville, SC 29615
Attn: Jeff McGehee

Book 1387-1944
2007113122  12/27/2007 12:34:04:997        Mortgage
Fee:$24.00  County Tax: $0.00        State Tax: $0.00

2007113122  Richard W. Rodden        Richland County ROD

*THE COLLATERAL SUBJECT TO THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND
FIXTURE FILING INCLUDES GOODS THAT ARE OR ARE TO BECOME FIXTURES.*

*THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND FIXTURE FILING IS TO BE
FILED IN THE REAL PROPERTY RECORDS FOR GREENVILLE COUNTY, AND SHALL SERVE AS A
FIXTURE FILING FINANCING STATEMENT.*

## MORTGAGE, ASSIGNMENT,
## SECURITY AGREEMENT AND
## FIXTURE FILING

by

KT Spears Creek, LLC,
a South Carolina limited liability company,
as Mortgagor,

to and in favor of

First Savers Bank,
as Mortgagee

# EXHIBIT C

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 301 | KT Spears Creek LLC | 8800023481 | 01/26/10 | JJM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $5,950,000.00 | Not Applicable | 7.000% | 01/26/11 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial - Single Advance)
RENEWAL NOTE

**DATE AND PARTIES.** The date of this Promissory Note (Note) is January 26, 2010. The parties and their addresses are:

LENDER:
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
501 Roper Mountain Road
Greenville, SC 29615
Telephone: (864) 477-2560

BORROWER:
KT SPEARS CREEK LLC
a South Carolina Limited Liability Company
5410 Piping Rock
Houston, TX 77056

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 21, 2007 | # 8800023481 - 301 | $6,000,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $5,950,000.00.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $5,950,000.00 (Principal) plus interest from January 26, 2010 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.000 percent (Interest Rate).

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the South Carolina usury laws under S.C. Code Ann. §§ 37-3-605, 37-3-105 and 37-10-101 et. seq.

D. **Accrual.** Interest accrues using an Actual/360 days counting method.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Note in 12 payments. This Note is amortized over 240 payments. I will make 11 payments of $46,487.98 beginning on February 26, 2010, and on the 26th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due January 26, 2011.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** This is a business-purpose loan transaction.

**10. SECURITY.** The Loan is secured by previously executed, separate security instruments described as follows:

| Description | Date |
|---|---|
| Mortgage, Assignment, Security Agreement & Fixture Filing | December 21, 2007 |

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A.** Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B.** No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**14. APPLICABLE LAW.** This Note is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**22. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**23. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

KT Spears Creek LLC

By_____ (Seal)
Kyle D Tauch, Member

# EXHIBIT D

# UNCONDITIONAL GUARANTY

December _21st_, 2007

BORROWER:           KT SPEARS CREEK, LLC
                    5410 Piping Rock
                    Houston, TX 77056

GUARANTOR:          Kyle Tauch, Individually
                    5410 Piping Rock
                    Houston, TX 77056

LENDER:             First Savers Bank
                    501 Roper Mountain Road
                    Greenville, South Carolina  29615

WHEREAS, the above Borrower has borrowed or shall borrow sums of money under a Promissory Note in the sum of Six Million and No/100 ($6,000,000.00) Dollars (the "Note") from **FIRST SAVERS BANK** (hereinafter termed "Lender") pursuant to a Loan Agreement (the "Agreement") from Borrower to Lender dated of even date herewith, and,

WHEREAS, Lender is unwilling to make the loan to Borrower evidenced by the Note unless it receives an unconditioned and continuing guaranty from the above-named Guarantor (hereinafter "Guarantor"), covering all Obligations of Borrower as hereinafter defined.

NOW, THEREFORE, in consideration of the promises and covenants contained herein and of other good and valuable consideration, and in order to induce Lender to lend money to Borrower as evidenced by the Note, Guarantor hereby absolutely and unconditionally guarantees to Lender and its successors and assigns, the due and punctual payment of the Note as and when the same shall become due and payable (whether by acceleration or otherwise), in accordance with the terms of the Note, and including all renewals, extensions and/or modifications thereof, plus all interest, costs and reasonable attorney's fees of Lender and any indebtedness or obligations of Borrower under the Note and the Agreement as defined in the Mortgage (all liabilities and obligations of the Borrower to Lender, including all of the foregoing, being hereinafter collectively termed "Obligations of Borrower").

Further, whether or not suit is brought by Lender to acquire possession of collateral or to enforce collection of any unpaid balance(s) hereunder, Guarantor expressly hereby agrees to pay all legal expenses and the reasonable attorneys' fees incurred by Lender with respect to this Guaranty.

Without limiting the foregoing provisions of this Guaranty, Guarantor absolutely and unconditionally guarantees the payment and performance of all obligations of Borrower under Articles 2, 4, 5, and 8 of the Mortgage from Borrower to Lender (the "Mortgage") securing the Note.

So long as any default by Borrower shall have been cured by Guarantor, Guarantor shall have the right to receive any undisbursed portion of the loan, subject to the terms and conditions contained in the Agreement in order to enable Guarantor to perform their obligations for completion. Guarantor agrees that his obligations hereunder will be performed strictly in accordance with the terms of the Agreement and any other Loan Documents as defined therein and that such obligations shall be absolute and unconditional.

In order to implement the foregoing and as additional inducements to Lender, Guarantor further covenants and agrees:

1.      This Guaranty is and shall remain an unconditional and continuing guaranty of payment and not of collection, shall remain in full force and effect irrespective of any interruptions in the business or other dealings and relations of Borrower with Lender and shall apply to and guarantee the due and punctual payment of all Obligations of Borrower due by Borrower to Lender. To that end, Guarantor hereby expressly waives any right to require Lender to bring any action against Borrower or any other person or to require that resort be had to any security or to any balances of any deposit or other accounts or debts or creditors on the books of Lender in favor of Borrower or any other person. Guarantor acknowledges that his liabilities and obligations hereunder are primary rather than secondary, recognizing that Borrower is identified as "BORROWER" and the undersigned is identified as "GUARANTOR" solely for convenience in identification of the parties involved in this Guaranty Agreement and in the obligation being secured hereby. To that end and without limiting the generality of the foregoing, the undersigned Guarantor expressly waives any rights he otherwise might have under provisions of South Carolina or other applicable law to require Lender to attempt to recover against Borrower and/or to realize upon any securities or collateral security which Lender holds for the obligation evidenced or secured hereby.

2.      TIME IS OF THE ESSENCE HEREOF. Any notices to Guarantor shall be sufficiently given if mailed to the address of Guarantor shown above.

3.      This Guaranty Agreement constitutes the entire agreement between the parties, and no waivers or modifications shall be valid unless they are reduced to writing,

2

duly executed by the party to be charged thereby, and expressly approved in writing by an officer of Lender actually involved in the transaction being guaranteed hereby.

4.    If any process is issued or ordered to be served upon Lender, seeking to seize Borrower's and/or Guarantor's rights and/or interests in any bank accounts maintained with Lender, the balances in any such accounts shall immediately be deemed to have been and shall be set off against any and all Obligations of Borrower and/or all obligations and liabilities of Guarantor hereunder, as of the time of the issuance of any such writ or process, whether or not Borrower, Guarantor and/or Lender shall then have been served therewith.

5.    All moneys available to and/or received by Lender for application toward payment of (or reduction of) the Obligations of Borrower may be applied by Lender to such Obligations of Borrower in such manner, and apportioned in such amounts and at such times, as Lender, in its sole discretion, may deem suitable or desirable.

6.    As security for any and all liabilities of Guarantor hereunder, now existing or hereafter arising, Guarantor hereby grants Lender the right to retain a security interest in any and all moneys or other property (i.e., goods and merchandise, as well as all documents relative thereto; also, funds, investment securities, chooses in action and any and all other forms of property, whether real, personal or mixed, and any right, title or interest of Guarantor therein or thereto) and/or the proceeds thereof, which have been or may hereafter be deposited or left with Lender (or with any agent or other third party acting on Lender's behalf) by or for the account or credit of the undersigned Guarantor, including (without limitation of the foregoing) any property in which Guarantor may have any interest.  Further, where any money is due Lender hereunder, Lender is herewith authorized to exercise its right of set-off or "Bank Lien" as to any moneys deposited in demand, checking, time, savings, or other accounts of any nature maintained in and with it by any of the undersigned, without advance notice.  Said right of set-off shall also be applicable and exercised by Lender, in its sole discretion, where Lender is indebted to Guarantor by reason of any Certificates of Deposit, Bonds, Notes or otherwise.

7.    Guarantor agrees that his liability hereunder shall not be diminished by any failure on the part of Lender to perfect (by filing, recording or otherwise) any security interests he may have in any property securing this Guaranty Agreement and/or the Obligations of Borrower secured hereby and hereunder.

8.    Guarantor further hereby consents and agrees that Lender may at any time, or from time to time, in its sole discretion: (i) extend or change the time of payment, and/or the manner, place or terms of payment of any or all of the Obligations of Borrower, upon reasonable notice to Guarantor; (ii) exchange, release and/or surrender all or any of any collateral security, or any parts thereof, by whomsoever deposited, which is or may hereafter be held by it in connection with all or any of the Obligations of Borrower and/or any liabilities or obligations of Guarantor hereunder; (iii) sell or otherwise dispose of and/or purchase all or any of any such collateral at public or private

3

sale, or to or through any investment securities broker, and after deducting all costs and expenses of every kind for collection, preparation for sale, sale or delivery, the net proceeds of any such sales or other disposition may be applied by Lender upon all or any of the Obligations of Borrower; and, (iv) settle or compromise with the Borrower, any insurance carrier and/or any other persons liable thereon, any and all of the Obligations of Borrower, and/or subordinate the payment of all or any part of same, to the payment of any other debts or claims, which may at any time be due or owing to Lender and/or any other persons; all in such manner and upon such terms as Lender may deem proper and/or desirable, and without notice to or further assent from Guarantor, it being agreed that Guarantor shall be and remain bound upon this Guaranty Agreement, irrespective of the existence, value or condition of any collateral, and notwithstanding any such change, exchange, settlement, compromise, surrender, release, sale or other disposition, application, renewal or extension and notwithstanding also that the Obligations of Borrower may at any time exceed the aggregate principal sum of the Note. Further, this Guaranty shall not be construed to impose any obligation on Lender to extend or continue to extend credit or otherwise to deal with Borrower at any time.

9.    If Borrower is an organization, this Guaranty covers all Obligations of Borrower purporting to be created or undertaken on behalf of such organization by any officer, partner, manager or agent of such organization, without regard to the actual authority of any such officer, partner, manager or agent, whether or not corporate resolutions, proper or otherwise, are given by any corporate Borrower to Lender, and/or whether or not such purported organizations are legally chartered or organized.

10.    In consideration of Lender's extension of credit to Borrower in Lender's sole discretion, Guarantor hereby agrees:

(a)    To subordinate, and by this Agreement does subordinate debts now or hereafter owed by Borrower to Guarantor to any and all debts of Borrower to Lender now or hereafter existing while this Agreement is in effect.

(b)    Every note evidencing any part of the subordinated debt and every ledger page relating thereto will bear a legend which will indicate this subordination.

(c)    Guarantor will not request or accept payment of or any security for any part of the subordinated debt, and if all or any part of it should be paid to Guarantor, through error or otherwise, Guarantor will immediately forward every such payment to Lender in the form received, properly endorsed to the order of Lender, to apply on any debt then owing to Lender by the Borrower. This subordination shall continue in full force and effect as long as this Agreement is in effect.

11.    This Guaranty Agreement shall be binding upon Guarantor, his heirs, personal representatives, successors and assigns; and it shall inure to the benefit of, and be enforceable by, Lender, and its successors, transferees and assigns. It further shall be deemed to have been made under and shall be governed by the Laws of the State of South Carolina in all respects, including matters of construction, validity and performance.

4

12.    Further, all terms or expressions contained herein which are defined in the South Carolina Uniform Commercial Code shall have the same meaning herein as in said Code.

13.    No waiver by Lender of any defaults by Guarantor or Borrower shall operate as a waiver of any other default or of the same default on a future occasion. Further, use of the masculine or neuter pronoun herein shall include the masculine, feminine and neuter, and also the plural. Lender, or any other holder hereof, may correct patent errors in this Agreement.

14.    Guarantor hereby waives: (i) notice of acceptance of this Guaranty; (ii) notices of extensions of the Note and/or continuations of the Note to Borrower by Lender; (iii) notices of entering into and engaging in business transactions and/or contractual relationships and any other dealings between Borrower and Lender; (iv) presentment and/or demand for payment of any of the Obligations of Borrower; (v) protest or notice of dishonor or default to Guarantor or to any other person with respect to any of the Obligations of Borrower; (vi) any demand for payment under this Guaranty; and, (vii) the benefit of any homestead or other exemption and (viii) any appraisal rights to reduce a deficiency judgment against either the Guarantor or the Borrower.

15.    Anything contained herein to the contrary notwithstanding, if for any reason the effective rate of interest on any of the Obligations of Borrower should exceed the maximum lawful rate, the effective rate of such obligations shall be deemed reduced to and shall be such maximum lawful rate, and any sums of interest which have been collected in excess of such maximum lawful rate shall be applied as a credit against the unpaid principal balance due.

16.    Guarantor acknowledges and represents that he has relied upon his own due diligence in making his own independent appraisal of Borrower and its business affairs and financial condition, will continue to be responsible for making his own independent appraisal of such matters and has not relied upon and will not hereafter rely upon Lender for information for such appraisal or other assessment or review and, further, will not rely upon any such information which may now or hereafter be prepared by or for Lender for any appraisals regarding the Borrower.

17.    Any provision hereof to the contrary notwithstanding, to the extent Guarantor is determined to be an "insider" as such term is used in the United States Bankruptcy Code or cases thereunder, Guarantor waives any right (whether established by contract or statute or otherwise available at law or in equity) to reimbursement, indemnity, subrogation, contribution or other such claim against Borrower or any other person primarily or secondarily liable for any obligations of Borrower or any other person primarily or secondarily liable for any obligations of Borrower with respect to any disbursement or payment made by Guarantor under or in connection with this Guarantee or otherwise.

5

18.    In the event any payment made by Guarantor to Lender is determined to be a preferential transfer under any bankruptcy or similar law and Lender is required to return such payment to a trustee in bankruptcy, to a receiver, to the Guarantor, or to another person or entity, Guarantor's obligations under this Guaranty shall not be discharged with respect to such preferential payment notwithstanding any satisfaction of the Note guaranteed hereby or the return of this Guaranty. Furthermore, Guarantor shall be liable to Lender for the amount of any such preferential payment and in any interest expenses or other expenses, including but not limited to reasonable attorney's fees, incurred by Lender related in any way to such preferential payment, and Guarantor agrees to reinstate any collateral given to Lender as security for the obligations under this Guaranty notwithstanding the fact that such collateral may have been released by Lender.

19.    Guarantor acknowledges that Guarantor has previously submitted financial statements and tax returns to Lender for the purpose of inducing Lender to extend credit to Borrower. Guarantor agrees to update such financial statements and provide tax returns from time to time as reasonably requested by Lender. Guarantor further agrees to immediately notify Lender in writing of any material adverse change in the financial position of Guarantor.

20.    EVENTS OF DEFAULT.    Guarantor shall be in default under this Guaranty Agreement upon the happening of any of the following events, circumstances or conditions, namely:

(a)    Default in the payment or performance of any of the obligations or of any covenant, warranty or liability contained or referred to herein, or contained in any other contract or agreement of Borrower or Guarantor with Lender, whether now existing or hereafter arising; or,

(b)    Any warranty, representation or statement made or furnished to Lender by or on behalf of Borrower or Guarantor in connection with this Guaranty Agreement or to induce Lender to extend credit or otherwise deal with either Borrower or Guarantor proving to have been false in any material respect when made or furnished; or,

(c)    Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any state or federal bankruptcy or insolvency laws by or against Guarantor or Borrower; or,

(d)    Failure of a corporate Borrower or Guarantor to maintain its corporate existence in good standing; or,

(e)    The assertion or making or any seizure, vesting or intervention by or under authority of any government by which the management of Borrower or Guarantor is displaced or their authority in the conduct or their businesses is curtailed; or,

6

(f)     The entry of any monetary judgment or the assessment and/or filing of any tax lien against either Borrower or Guarantor or upon the issuance of any writ of garnishment or attachment against any property of, debts due or rights of Borrower or Guarantor, to specifically include the commencement of any action or proceeding to seize moneys of either Borrower or Guarantor on deposit in any bank account with Lender, which is not contested or appealed in good faith or dismissed, discharged or bonded within thirty (30) days.

Notwithstanding the foregoing, the death of an individual Guarantor shall not be an Event of Default if, within sixty (60) days thereafter, the Primary Obligor or estate of the deceased guarantor furnishes a substitute guarantor or makes other arrangements, either of which must be acceptable to Lender in its sole discretion.

21.     REMEDIES ON DEFAULT.     Upon the occurrence of any of the foregoing events, circumstances, or conditions of default, all of the obligations, evidenced herein and secured or guaranteed hereby shall immediately be due and payable without notice. Further, Lender shall then have all of the rights and remedies granted hereunder, and all of the rights and remedies of a Secured Party and/or Holder-in-Due-Course under the South Carolina Uniform Commercial Code and/or under other laws of South Carolina.

22.     Guarantor and Lender submit to the jurisdiction of any court of competent jurisdiction within the State of South Carolina.  Guarantor and Lender agree that any action concerning this Guaranty or the debts guaranteed hereby, whether initiated by Lender, Borrower, Guarantor or any other party, shall be tried only in a court of competent jurisdiction within the State of South Carolina, and Guarantor and Lender agree that venue shall be only in Richland County, South Carolina, or in the U.S. District Court in Columbia, South Carolina.  All matters arising hereunder shall be determined in accordance with the law and practice of such South Carolina court.  Guarantor further agrees to comply with all requirements necessary to give such court in personam jurisdiction and agree that service of process may be accomplished by, in addition to any other lawful means, certified mail, return receipt requested, to the Guarantor at Guarantor's address set forth above or any new address of which Lender has been notified by Guarantor in writing.

**REMAINDER     OF     PAGE     INTENTIONALLY     BLANK**

7

The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the Premises apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE PREMISES.

WITNESS the Hands and Seals of the undersigned, this Guaranty Agreement being executed and delivered on the date first above written.

WITNESSES:

GUARANTOR:

Kyle Tauch, Individually

8

# EXHIBIT E

## GUARANTY
(Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is January 26, 2010. The parties and their addresses are:

**LENDER:**
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
501 Roper Mountain Road
Greenville, SC 29615
Telephone: (864) 477-2560

**BORROWER:**
KT SPEARS CREEK LLC
a South Carolina Limited Liability Company
5410 Piping Rock
Houston, TX 77056

**GUARANTOR:**
KYLE D TAUCH
701 N Post Oak Rd. Apt 300
Houston, TX 77024

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 301, dated January 26, 2010, from KT Spears Creek LLC (Borrower) to you, in the amount of $5,950,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

A. **Future Advances.** I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference against the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive

Kyle D Tauch
South Carolina Guaranty
SC/4Xdbailey0011880000663201401261oY          Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™          Page 1

possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon any strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

---

Kyle D Tauch
South Carolina Guaranty
SC/4Xdbailey00118800006632014012610Y

Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™

Page 2

**F. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain this Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

**21. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**22. SIGNATURES.** By signing under seal, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR: _____ (Seal)
Kyle D Tauch
Individually

# EXECUTION NOTICE

**RICHLAND COUNTY TREASURER**
P.O. BOX 11947
COLUMBIA SC 29211-1947

REAL ESTATE

**THESE TAXES ARE PAST DUE! PAY NOW TO AVOID ADVERTISEMENT AND SALE OF PROPERTY**

| YEAR | BILL NUMBER | TAX MAP # | DIST. |
|---|---|---|---|
| R-2009 | 091378 | 25800-03-40 | 2DP |

PROPERTY DESCRIPTION
10682 TWO NOTCH RD

| LEVY YEAR | ASSESSMENT VALUE | TOTAL |
|---|---|---|
| 2009 | 707,800 | 359,595.32 |

18035 1 MB 0.382
K T SPEARS CREEK LLC         018035
%KYLE TAUCH                   18035
5410 PIPING ROCK LN              76
HOUSTON TX 77056-4916

R

| | | |
|---|---|---|
| AMOUNT DUE BY | 5/19/2010 | 359,595.32 |
| EXECUTION COST | | 80.00 |
| AMOUNT DUE AFTER | 5/19/2010 | 359,675.32 |

IF THESE TAXES, ASSESSMENTS, PENALTIES AND COSTS ARE NOT PAID BY 12/03/2010 . THE PROPERTY MUST BE DULY ADVERTISED AND SOLD FOR DELINQUENT PROPERTY TAXES, ASSESSMENTS, PENALTIES AND COSTS.

258000340

## ADVERTISING OF PROPERTY WILL BEGIN THE WEEK OF NOVEMBER 14, 2010

**IF YOU DO NOT PAY THE AMOUNT DUE, THE FOLLOWING ACTIONS WILL BE TAKEN:**

1. AN "OFFICIAL NOTICE OF LEVY" WILL BE MAILED TO YOU.
2. A SIGN MAY BE PLACED ON YOUR PROPERTY ANNOUNCING THAT THE PROPERTY IS TO BE SOLD FOR NON-PAYMENT OF TAXES.
3. YOUR NAME AND PROPERTY WILL BE ADVERTISED IN A LOCAL NEWSPAPER.
4. YOUR PROPERTY WILL BE SOLD AT A PUBLIC AUCTION.

## SEE IMPORTANT PHONE NUMBERS ON BACK

IF THIS BILL IS INCORRECT PLEASE CALL (803) 576-2250

▼ TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT ▼

*** CREDIT CARD PAYMENT FOR LEVY YEAR 2009 ONLY ***

BILL NUMBER:    R-2009-091378      YOU CAN PAY BY CREDIT CARD AT WWW.RCGOV.US
                                   OR CALL 803-576-2262. THERE WILL BE A PROCESSING FEE.

TAX MAP #:      25800-03-40

| AMOUNT DUE | 359,595.32 |
|---|---|

AMOUNT DUE AFTER  5/19/2010    359,675.32

K T SPEARS CREEK LLC
%KYLE TAUCH

5410 PIPING ROCK
HOUSTON          TX 77056

MAKE PAYMENTS TO:

**RICHLAND COUNTY TREASURER**
PO Box 11947
Columbia SC 29211-1947

R

April 16, 2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter 11) |
| DEBTOR | § | |
| | § | |
| _____ | § | |
| FIRST SAVERS BANK | § | |
| | § | |
| Movant | § | |
| | § | |
| VS. | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | |
| | § | |
| Respondent | § | |

## ORDER FOR RELIEF FROM STAY

On this day came on to be heard the Motion for Relief from Stay filed herein by First Savers Bank (the "Bank"). The Court finds good cause to grant the relief requested.

It is hereby ORDERED that the automatic stay is terminated to allow the Bank to foreclose its lien on the 65.94-acre tract described in the *Motion for Relief From the Automatic Stay* and (if necessary) to redeem the Property with respect to the tax sale.

The ten-day stay imposed by FED. R. BANKR. P.4001(a)(3) is waived.

SIGNED: _____.


_____
UNITED STATES BANKRUPTCY JUDGE

APPROVED:


*/s/ David S. Elder*
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas  77002
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com

*ATTORNEY-IN-CHARGE FOR*
*FIRST SAVERS BANK*

## Service List

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

**Debtors:**
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

**Debtors' Attorney:**
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX  77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**U.S. Trustee:**
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Fax:713-718-4670

---

*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

---

**Internal Revenue Service:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

**Counsel for RBC:**
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC  28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**Receiver:**
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC  29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

*Property Manager:*
Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

*20 Largest Creditors:*
Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

*Parties Requesting Notice:*
Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

Page 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |
| | § | |

**JOINT MOTION FOR ENTRY OF STIPULATION
AND AGREED ORDER REGARDING RELIEF FROM THE
<u>AUTOMATIC STAY PURSUANT TO BANKRUPTCY RULE 4001(D)</u>
(Relates to Docket Nos. 25, 26 and 31)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU
MUST FILE AND SERVE YOUR RESPONSE WITHIN <u>14 DAYS</u> OF THE
DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE
WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT
FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
ATTEND THE HEARING. UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
ATTORNEY.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC ("<u>Debtor</u>") and RBC Bank (USA) ("<u>RBC</u>") file this Joint Motion

for Entry of Stipulation and Agreed Order Regarding Relief from the Automatic Stay Pursuant to

Bankruptcy Rule 4001(d) (the "<u>Joint Motion</u>") and would respectfully show the Court as

follows:

1

## I.  JURISDICTION AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  The

statutory predicates for the relief requested herein are Bankruptcy Code §§ 105 and 362 and

Bankruptcy Rules 2002, 4001(d), and 9014.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

commencing the Debtor's above-styled case (the "Case").

3.      As of the date of this Joint Motion, no official committee of unsecured creditors

has been appointed.

## II.  FACTUAL BACKGROUND

### A.      The Debtor's Business and Real Property

4.      The Debtor is a South Carolina limited liability company.  Kyle D. Tauch is the

sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on

September 14, 2004 and is in the business of real estate investment and development.

5.      The Debtor's assets include real estate, including an operating apartment

complex.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the

"Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The

Debtor's remaining two (2) real estate holdings are comprised of undeveloped commercial land.

### B.      Secured Credit Facilities

### RBC Bank

6.      The Debtor is the borrower under that certain Commercial Promissory Note dated

as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC

Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

7.      As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments. The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

## C.    The Receivership and Foreclosure Action

8.      RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

9.      On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "Property Manager").

10.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment"). Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

### D.    **Factors Leading to Bankruptcy**

11.    As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection.  Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

### E.    **Procedural History**

12.    On May 18, 2011, the Debtor filed its Emergency Motion for Entry of Stipulation and Order Regarding Receivership [Doc. No. 18].   On May 24, 2011, the Court signed a Stipulation and Order Regarding Receivership (the "Stipulated Order"), which permitted the Receiver to continue operating certain property including the Greenhill Apartments and rents and profits therefrom on an interim basis through May 31, 2011 to avoid business interruption and maintain the value of the estate.

13.    On June 1, 2011, RBC Bank filed its Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. §101(51B) ("Motion to Designate") and Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. §1406(a) and §1408 ("Motion to Dismiss") (Docket Nos. 25 and 26).   On June 2, 2011, the Debtor filed its Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001 and 9014 (i) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (ii) Granting Security Interest, and (iii) Scheduling Final Hearing (the "DIP Motion"), Debtor's Emergency Motion For Interim and Final Orders Approving use of Cash Collateral (the "Cash Collateral Motion"), and Emergency Motion for Turnover of Property and Request for Accounting (the "Turnover Motion")  (Docket Nos. 27, 28 and 31).

14.    The Debtor and RBC Bank now file this Joint Motion.

4

### III.RELIEF REQUESTED

15.      Attached hereto is a Stipulation and Agreed Order that will resolve several of the disputes between RBC Bank and the Debtor.  The Stipulation and Agreed Order provides that the automatic stay is terminated, pursuant to 11 U.S.C. § 362(d)(1) as it relates to the interests of RBC Bank in the Property, and all personal property situated therein, and rights related thereto (the "Collateral"), for purposes of allowing RBC Bank to exercise all of its rights and remedies provided under the Loan Documents and applicable law, including, but not limited to, the completion of the judicial foreclosure of its liens on the Property and/or Collateral as provided by applicable South Carolina law.  Pursuant to the Stipulation and Agreed Order, RBC Bank will forebear from exercising the afore-mentioned rights and remedies until after December 1, 2011, and only in the event that the Debtor fails to indefeasibly pay to RBC Bank all amounts due and owing under the Loan Documents by the December 1, 2011 deadline.

16.      Further, the Stipulation and Agreed Order provides that RBC Bank will withdraw and will not re-file during the term of this Joint Motion the Motion to Designate and the Motion to Dismiss.  Further, the Debtor will withdraw its Turnover Motion.  Also, pending entry of the Stipulation and Agreed Order, the parties agree to abate all hearings on the Motion to Designate, the Motion to Dismiss and Turnover Motion.  Contemporaneous with the filing of the Joint Motion, the Debtor shall file pleadings seeking an extension through December 1, 2011 of the relief provided under the May 24, 2011 Stipulated Order (Docket No. 23).  The parties further agree that the Debtor will not grant any post-petition liens on the RBC Collateral.

### IV.NOTICE

17.      Notice of this pleading will be served *via* the Court's Electronic Case Filing system and/or regular United States mail to: (a) the U.S. Trustee; (b) the Debtor's secured

creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest

unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to

receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all

persons or entities that have formally appeared and requested service in this Case pursuant to

Rule 9010(b) of the Bankruptcy Rules.

<div align="center">

**PRAYER**

</div>

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that this

Court: (a) enter the Stipulation and Agreed Order; and, (b) grant the Debtor such other legal or

equitable relief to which it may be justly entitled.

Dated:  June 10, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*
     Matthew S. Okin
     Texas Bar #00784695
     Maggie D. Conner
     Texas Bar. #24038439
     1113 Vine St., Suite 201
     Houston, TX  77002
     Tel:  713- 228-4100
     Fax:  888-865-2118
     mokin@oakllp.com
     mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR**

-and-

By: */s/  Joseph G. Epstein*                                   

Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorganChaseTower
600TravisStreet
Houston, Texas 77002
Tel:713.650.2740
Fax:713.650.2400
jepstein@winstead.com

**COUNSEL FOR RBC**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system and/or regular United States mail on the 10th day of June, 2011.

*/s/  Maggie D. Conner*                          
Maggie D. Conner

Service List

***United States Trustee:***

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

***IRS:***

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

***Counsel for RBC:***

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

***Counsel for First Savers Bank***

David S. Elder
Clinton R. Snow
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
deleder@gardere.com
csnow@gardere.com

***Receiver:***

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

***Property Manager:***

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

***Counsel for First Palmetto Bank***

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:

**KT SPEARS CREEK, LLC,**

      **DEBTOR.**

**Case No. 11-33991-H3-11**
**Chapter 11**

## STIPULATION AND AGREED ORDER REGARDING THE AUTOMATIC STAY
### [This instrument relates to Docket No. __]

This matter comes before the Court on the Joint Motion of KT Spears Creek, LLC ("Debtor") and RBC Bank (USA) ("RBC") for entry of Stipulation and Agreed Order Regarding Relief from the Automatic Stay Pursuant to Bankruptcy Rule 4001(d) (Docket No. __) (the "Joint Motion").  The parties have entered into the following stipulations regarding relief from the automatic stay:

### STIPULATIONS

1.     Debtor filed its voluntary petition for relief under Title 11 of the United States Code on May 3, 2011, in order to stop the completion of a judicial foreclosure of a multi-family apartment complex commonly known as the Greenhill Apartments located in Richland County, South Carolina.

2.     On or about May 25, 2006, KT Spears executed and delivered to RBC a written Promissory Note in the original principal amount of $19,700,000.00, as amended or modified by that certain Modification, Cross-Collateralization and Cross-Default Agreement dated May 25, 2006, and that certain Change In Terms Agreement dated May 23, 2008 (as may be amended from time to time including all renewals and modifications collectively " Note").

3.      To secure the indebtedness owed to RBC under the Note, KT Spears executed and delivered to RBC a written Mortgage, Assignment of Rents and Security Agreement dated May 25, 2006, and recorded with the Register of Deeds of Richland County, South Carolina on June 2, 2006 in Book 1190, Page 1008 ("Mortgage") encumbering certain real property located in Richland County, South Carolina ("Real Property") described therein.

4.      KT Spears defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full at maturity.  Pursuant to the Loan Documents, the per diem at a default rate is $9,507.72.  RBC filed its Proof of Claim in the amount of $22,448,165.54 on June 2, 2011 (Claim Registry No. 2).

5.      The Debtor's interest in the Greenhill Apartments and personal property, including the income generated therefrom, was and continues to be in the hands of Henry W. Moore of Colliers International, as state-appointed receiver (the "Receiver") in Columbia, South Carolina, pursuant to the Order Appointing Receiver entered by the Special Circuit Court Judge Joseph M. Strickland dated November 12, 2010 in the matter styled:  *RBC Bank (USA) v. KT Spears Creek, LLC, KT Builders, LTD, Kyle D. Tauch and Hyco Plumbing, Inc.*, Case No. 2010-CP-40-6025, in the Court of Common Pleas of Richland County, South Carolina (the "Receivership Action").  Since his appointment, the Receiver has collected all rents and paid all operating expenses for the Greenhill Apartments and paid the Net Operating Income (being the funds remaining in the hand of the Receiver after payment of operating expenses) to RBC which has been applied against the RBC Indebtedness (as defined below).

6.      Pursuant to the pre-petition Assignment of Rents and the actions of the Receiver, none of the rents generated by the Greenhill Apartments post-petition constitute property of the Debtor's bankruptcy estate.  As further provided in the May 24, 2011 Stipulation and Order

Regarding Receivership (Docket No. 23) and subsequent order(s) extending such order that are entered in this bankruptcy case, the Receiver shall remain in possession of the Greenhill Apartments and the rents and profits generated thereby, subject to (A) the Receiver's collection of all rents and profits and payment of operating expenses for the Greenhill Apartments and payment of all Net Operating Income to RBC during this bankruptcy case (which shall be applied as a credit on the RBC Indebtedness to the  extent of all Net Operating Income paid to RBC), and (B) the Receiver's serving operating reports and related information for the Greenhill Apartments on the Debtor, RBC and the US Trustee.

7.      Upon the entry of this Stipulation and Agreed Order, RBC agrees that it will withdraw and will not re-file during the term of this Joint Motion and  Stipulation and Agreed Order thereon its Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. §101(51B) and Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. §1406(a) and §1408 (Docket Nos. 25 and 26) and the Debtor agrees that it will withdraw its Emergency Motion for Turnover of Property and Request for Accounting (Docket No. 31).   Pending entry of this Agreed Order and Stipulation, the parties agree to abate all hearings on the foregoing matters.  Contemporaneous with the filing of the Joint Motion, the Debtor shall file pleadings seeking an extension through December 1, 2011 of the relief provided under the May 24, 2011 Stipulation and Order Regarding Receivership (Docket No. 23).

8.      The parties further agree that the Debtor will not grant any post-petition liens on the RBC Collateral.

9.      The parties agree that the terms of this Stipulation and Agreed Order are nonseverable and mutually dependent on the terms of an order extending the relief under the May 24, 2011 Stipulation and Order Regarding Receivership (Docket No. 23).

The Court, having reviewed the Joint Motion and any responses, as well as the stipulation and agreement of the parties, finds that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O); and, (c) notices of the Joint Motion and the hearing before the Court were sufficient under the circumstances.  Having considered the Joint Motion, any responses, and the agreement between the Debtor and RBC, as evidenced by the terms of this Stipulation and Agreed Order and the signatures of counsel, the Court is of the opinion that the Joint Motion is meritorious and establishes sufficient grounds for the relief requested therein, subject to the stipulations set forth herein and terms and conditions set forth below.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.     The Joint Motion is **GRANTED**.

2.     The automatic stay is terminated, pursuant to 11 U.S.C. § 362(d)(1) as it relates to the interests of RBC in the real property, easements, and rights-of-way described in **Exhibit A** (the "Property"), and all personal property situated therein, and rights related thereto (the "Collateral"),[1] for purposes of allowing RBC to exercise all of its rights and remedies provided under the Loan Documents and applicable law, including, but not limited to, the completion of the judicial foreclosure of its liens on the Property and/or Collateral as provided by applicable South Carolina law.  Notwithstanding the foregoing, RBC agrees to forbear from the exercise of its rights and remedies subject to the conditions set forth below.  RBC and the Debtor stipulate that time is of the essence and the Deadline (defined hereafter) must be timely satisfied. However, in the event the Deadline is not fully or timely satisfied, including the indefeasible payment of RBC's Indebtedness (defined hereafter) under the Loan Documents as set forth

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Joint Motion, unless otherwise defined in this Stipulation and Agreed Order.

herein, then, without further order of the Bankruptcy Court, RBC shall be authorized to immediately exercise all of its rights and remedies regarding the Property and/or Collateral, as provided under the Loan Documents and applicable law, including, but not limited to, completion of the judicial foreclosure of its liens on the Property and/or Collateral.

3.     RBC shall forbear from taking action to collect upon its judgment dated February 18, 2011 in Case No. 2010-CP-40-6025; in the Court of Common Please, Richland County, South Carolina against any defendant or to complete the judicial foreclosure of the Property only if the Debtor fails to indefeasibly pay to RBC, by 5:00 p.m. (CDT) on Thursday, December 1, 2011 (the "Deadline"), all amounts due and owing under the Loan Documents, including the amount listed on RBC's Proof of Claim (Claim Registry No. 2), plus interest at the non-default rate, plus RBC's post-bankruptcy attorneys' fees, in a reasonable amount to be agreed upon by the parties, less all payments and credits attributable to the Receiver's payment of Net Operating Income to RBC during the bankruptcy case ("RBC's Indebtedness"), then RBC shall be authorized to commence any and all actions necessary to complete the judicial foreclose of its liens on the Property and/or Collateral, or exercise any other rights and remedies regarding the Property and/or Collateral, including, but not limited to, any action to realize the value of the Property and/or Collateral, dispose of the Property and/or Collateral, or otherwise, as provided under the Loan Documents and/or applicable law.  Upon tendering full payment, the receivership shall immediately end and rents and any other property held by the Receiver or RBC shall be immediately returned to the Debtor.

4.     The Debtor waives any right to change through a reorganization plan or otherwise contest the terms and provisions of this Stipulation and Agreed Order at a later date, and further agrees that no action shall be taken by or on behalf of the Debtor to stop or otherwise interfere

with RBC's enforcement or exercise of its rights as provided in this Stipulation and Agreed Order, including, but not limited to, seeking any temporary restraining order or an injunction against RBC or its agent(s) in any state or federal court.

5.    The fourteen-day stay provided under Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not apply.

6.    This Court shall retain exclusive jurisdiction to enforce the terms of this Stipulation and Agreed Order.

7.    This Stipulation and Agreed Order is a Final Order within the meaning of 28 U.S.C. § 158(a)(1) and is effective immediately upon entry.

**SIGNED this _____ day of _____, 2011**

_____
**THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE**

APPROVED AND ENTRY REQUESTED:

By:*/s/ Joseph G. Epstein*
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorganChaseTower
600TravisStreet
Houston, Texas 77002
Tel:713.650.2740
Fax:713.650.2400
jepstein@winstead.com

**COUNSEL FOR RBC BANK**

By:*/s/ Maggie D. Conner*
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713- 228-4100
Fax:  888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

**EXHIBIT A**
**Legal Description**

Phase I Property Description:

All that certain piece, parcel or lot of land, lying and being in Richland County, State of South Carolina, being located at the northwest corner of the intersection of Greenhill Parish Parkway and Old National Highway and being more fully shown and designated as Phase I on a boundary survey of Greenhill Parish Crossing Phase 1 & 2, by W.K. Dickson & Co., Inc. dated May 9, 2006 and last revised May 23, 2006.

Commencing at the center line intersection of Old National Highway and Greenhill Parish Parkway, thence north 77°48'09" west, a distance of 79.44 feet to the point of beginning a #4 rebar (found) on the R/W of Old National Road; thence running in a westerly direction along the northern R/W of Greenhill Parish Parkway south 09°07'22" east, a distance of 52.50 feet to a #4 rebar (found); thence continuing along said R/W south 34°58'49" west, a distance of 33.82 feet to a #4 rebar (found) thence continuing along said R/W having a curve with an radial distance of 242.00 feet, having an arc length of 198.85 feet and a cord of north 58°16'35" east 193.30 feet to a #4 rebar (found); thence continuing along said R/W south 81°49'37" west, a distance of 252.92 feet to a #5 rebar (set); thence continuing along said R/W having a curve with an radial distance of 767.00 feet, having an arc length of 34.85 feet and a cord of north 83°08'37" east 34.85 feet to a #5 rebar (set); thence continuing along said R/W south 84°27'01" west, a distance of 431.81 feet to a #4 rebar (found); thence continuing along said R/W having a curve with an radial distance of 833.00 feet, having an arc length of 185.25 feet and a cord of north 78°36'11" east 184.87 feet to a calculated point; thence north 61°03'52" west, a distance of 74.35 feet to a calculated point; thence south 76°19'38" west, a distance of 33.51 feet to a calculated point; thence north 60°34'03" west, a distance of 100.67 feet to a calculated point; thence north 02°17'29" west, a distance of 25.51 feet to a calculated point; thence north 61°03'52" west, a distance of 80.41 feet to a calculated point; thence north 14°07'26" west, a distance of 431.86 feet to a calculated point; thence north 75°52'26" east, a distance of 104.75 feet to a #4 rebar (found); thence continue easterly along said line, a distance of 69.19 feet to a #5 rebar (set); thence north 14°07'38" west, a distance of 156.88 feet to a #5 rebar (set): thence north 18°27'37" west, a distance of 102.41 feet to the southern R/W of U.S. Highway #1 to a #5 rebar (set); thence continuing along said R/W north 72°00'37" east, a distance of 69.21 feet to a #4 rebar (found); thence continuing along said R/W north 71°54'05" east, a distance of 5.80 feet to a #5 rebar (set): thence south 18°27'37" east, a distance of 104.64 feet to a calculated point; thence south 14°07'38" east, a distance of 159.72 feet to a #5 rebar (set); thence north 75°52'17" east, a distance of 4.11 feet to a #4 rebar (found); thence north 75°53'05" east, a distance of 143.52 feet to a #4 rebar (found); thence north 75°52'07" east, a distance of 195.04 feet to a #4 rebar (found); thence north 78°15'21" east, a

distance of 242.09 feet to the western R/W of Old National Highway to a #4 rebar (found); thence continuing along said R/W south 53°18'52" east, a distance of 765.28 feet to the point of beginning a #4 rebar (found). Containing 743,026 square feet or 17.06 acres, more or less.

TMS#: A portion of 25800-03-05 and 25900-04-04

Derivation: Deed to KT Spears Creek, LLC from DAK I, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581, and Deed to KT Spears Creek, LLC from G. P. Monroe, Jr. and Virginia R. Monroe dated August 1, 2005 and recorded August 1, 2005 in said Office in Record Book 1081, at page 827.

Phase II Property Description:

All that certain piece, parcel or lot of land, lying and being in Richland County, State of South Carolina, being located at the northeast corner of the intersection of Greenhill Parish Parkway and Upland Hill Lane and being more fully shown and designated as Phase II on a boundary survey of Greenhill Parish Crossing Phase 1 & 2, by W.K. Dickson & Co., Inc. dated May 9, 2006 and last revised May 23, 2006.

Commencing at the center line intersection of Upland Hill Lane and Greenhill Parish Parkway, thence north 34°00'00" west, a distance of 81.37 feet to a PK nail (set), said point being the point of beginning; thence north 40°37'37" west, a distance of 583.87 feet to a #5 rebar (set); thence north 15°29'49" west, a distance of 349.95 feet to a #5 rebar (set); thence north 74°54'59" east, a distance of 91.31 feet to a #4 rebar (found); thence north 75°51'40" east, a distance of 464.91 feet to a #4 rebar (found); thence north 75°52'26" east, a distance of 217.50 feet to a calculated point; thence south 41°07'26" east, a distance of 431.86 feet to a calculated point; thence south 61°03'52" east, a distance of 80.41 feet to a calculated point; thence south 02°17'29" east, a distance of 25.51 feet to a calculated point; thence south 60°34'03" east, a distance of 100.67 feet to a calculated point; thence north 76°19'38" east, a distance of 33.51 feet to a calculated point; thence south 61°03'52" east, a distance of 74.35 feet to a calculated point on the northern R/W of Greenhill Parish Parkway, thence continuing westerly along said R/W having a curve with an radial distance of 833.00 feet, having an arc length of 347.55 feet and a cord of south 60°16'46" west 345.04 feet to a #4 rebar (found); thence south 48°19'06" west, a distance of 350.35 feet to a #4 rebar (found) thence continuing along said R/W having a curve with an radial distance of 80.00 feet, having an arc length of 80.62 feet and a cord of south 85°32'08" west 77.25 feet to a PK nail (set) being the point of beginning. Containing 582,527 square feet or 13.37 acres, more or less.

TMS#: A portion of 25800-03-05

Derivation:  Deed to KT Spears Creek, LLC from DAK I, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

### NOTICE OF FILING
**(Relates to Docket No. 18.)**

**PLEASE TAKE NOTICE** of the filing of the attached proposed Second Stipulation and Order Regarding Receivership relating to the Debtor's Emergency Motion for Entry of Stipulation and Order Regarding Receivership [Docket No. 18].

**Dated**: June 10, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: */s/ Maggie D. Conner* _____
    Matthew S. Okin
    Texas Bar #00784695
    Maggie D. Conner
    Texas Bar. #24038439
    1113 Vine St., Suite 201
    Houston, TX  77002
    Tel:  713- 228-4100
    Fax:  888-865-2118
    mokin@oakllp.com
    mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail and/or the Court's Electronic Case Filing system on the 10th day of June, 2011.

                                      */s/ Maggie D. Conner*
                                      Maggie D. Conner

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:                          §
                                §
KT SPEARS CREEK, LLC            §          CASE NO. 11-33991
                                §
                                §
Debtor.                         §          Chapter 11

### SECOND STIPULATION AND ORDER
### REGARDING RECEIVERSHIP
[This Interim Order relates to Docket. Nos. 18 and 23]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank") (collectively, the "Parties") stipulate as follows:

1.      The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

2.      The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.  As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate.  As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill

Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008

3.      RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025, which sought to foreclose its mortgage and security interest and obtain a deficiency judgment.

4.      On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of the Court of Common Pleas of Richland County, South Carolina and are managed by GREP Atlantic, L.P. (the "Property Manager").

5.      On May 18, 2011, the Debtor filed an Emergency Motion for Entry of Stipulation and Order Regarding Receivership ("Cash Usage Motion") [Docket No. 18]. In connection with the Cash Usage Motion, the Debtor and RBC entered into a Stipulation and Order Regarding Receivership ("Cash Usage Stipulation") wherein RBC agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011, but specifically reserved its right to pursue those claims for relief and others after May 31, 2011. In exchange, the Debtor agreed, among other relief, not to pursue turnover in accordance with Bankruptcy Code § 543 and to allow the Receiver to collect rents and pay operating expenses for the Greenhill Apartments . The Court entered the Cash Usage Stipulation on May 24, 2011 [Docket No. 23].

6.    The Parties have agreed to extend the Cash Usage Stipulation and maintain the cash usage as provided by the Cash Usage Stipulation (the "Second Cash Usage Stipulation"). The Parties agree, however, that entry of this Second Cash Usage Stipulation shall be mutually dependent and non severable from the proposed the Stipulation and Agreed Order Regarding Relief from the Automatic Stay [Docket No. __].

7.    As part of this Second Cash Usage Stipulation, RBC has agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue through December 1, 2011, but specifically reserves its right to pursue these claims for relief and others after December 1, 2011 and further reserves the right to pursue such matters in the event that the Stipulation and Agreed Order Regarding Relief from the Automatic Stay is not entered by the Court.  In exchange, the Debtor has agreed not to pursue turnover in accordance with Bankruptcy Code § 543.  The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of receiver through December 1, 2011.

8.    Specifically, the Parties agree that the Second Cash Usage Stipulation shall be in effect through and including December 1, 2011.

9.    The Debtor and RBC agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

10.    RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

11.    The Debtor agrees that RBC will continue to receive all Net Operating Income

(being the amount of rents collected less the operating expenses for the Greenhill Apartments) generated through December 1, 2011, or an earlier date pursuant to which RBC's Indebtedness has been indefeasibly paid.

12.    RBC Bank agrees not to seek dismissal of this Case, relief from the automatic stay or transfer of venue through the period ending December 1, 2011 and specifically reserves its right to pursue these forms of relief following the expiration of such date.

13.    The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543 through the period ending December 1, 2011 and specifically reserves its right to do so following the expiration of such date.

14.    Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on the terms and conditions provided for in this Second Cash Usage Stipulation, *nunc pro tunc*, commencing on the Petition Date through and including December 1, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court, or written agreement among RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court.

15.    In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Second Cash Usage Stipulation and any and all related orders entered by this Court.  All of the banks at which the Bank Accounts are maintained, including but not limited to,

RBC (the "<u>Cash Management Banks</u>"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

16.     Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

17.     Under the circumstances, notice of the Cash Usage Motion was appropriate and sufficient for the limited purpose of this Second Cash Usage Stipulation.

18.     Nothing in this Second Cash Usage Stipulation shall constitute a determination of the existence, validity, or priority of any prepetition security interest or lien of RBC, any other secured creditor, or any other party in interest, nor shall the positions of the Debtor reflected in this Second Cash Usage Stipulation be construed as admissions of any factual or legal issues between such parties.  This Second Cash Usage Stipulation shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Cash Usage Motion's request for subsequent orders.

19.     The entry of this Second Cash Usage Stipulation shall not prejudice or limit the rights of the Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash Usage or for adequate protection. This Second Cash Usage Stipulation shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

---

[1] The following bank accounts (the "<u>Bank Accounts</u>") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393  (Held by the Property Manager)

APPROVED AND ENTRY REQUESTED:


By:/s/ Joseph G. Epstein                          By:/s/ Maggie D. Conner
Constance L. Young                                Matthew S. Okin
**JOHNSTON, ALLISON & HORD, PA**                  Texas Bar #00784695
1065 East Morehead Street                         Maggie D. Conner
Charlotte, North Carolina  28204                  Texas Bar. #24038439
Tel:  704.998.2259                                **OKIN ADAMS & KILMER LLP**
Fax:  704.376.1628                                1113 Vine St., Suite 201
                                                  Houston, TX  77002
                                                  Tel:  713- 228-4100
Joseph G. Epstein                                 Fax:  888-865-2118
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002                              **PROPOSED ATTORNEYS FOR THE**
Tel:  713.650.2740 Direct                         **DEBTOR IN POSSESSION**
Fax:  713.650.2400 Fax


**COUNSEL FOR RBC**



        The above *Second Stipulation and Order Authorizing Interim Cash Usage* is approved

and its terms are so ORDERED.


        Signed this _____ day of _____ 2011.



                                    _____
                                    HONORABLE LETITIA Z. PAUL
                                    UNITED STATES BANKRUPTCY JUDGE

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

**_Counsel for First Savers Bank_**

David S. Elder
Clinton R. Snow
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
deleder@gardere.com
csnow@gardere.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

**_Counsel for First Palmetto Bank_**

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

Case 11-34241-jw39DocDocumentFiled 07/05/edinErxeec00705/071 8:Page51 Desc Main
Document    Page 624 of 824
Case 11-33991   Document 13-1   Filed in TXSB on 05/12/11   Page 1 of 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/08/2011

IN RE:                              §
                                    §
                                    §   CASE NO. 11-33991-H3-11
KT SPEARS CREEK, LLC,               §   (Chapter 11)
                                    §
Debtor.                             §

## ORDER GRANTING MOTION TO SUBSTITUTE COUNSEL

On this day came on to be heard the Motion to Substitute Counsel, filed by Creditor, RBC Bank (USA).  After reviewing such motion and all other matters properly before it, the Court is of the opinion that such motion should be granted.  It is, therefore,

ORDERED that David A. Zdunkewicz and Joseph P. Rovira are hereby permitted to withdraw as attorneys-of-record for RBC Bank (USA), and that Joseph G. Epstein of the law firm of Winstead PC is hereby substituted in their place.  It is further

ORDERED that all parties and their counsel of record shall henceforth serve notices, pleadings, motions, responses, correspondence and other filings required to be served on RBC Bank (USA) through its new counsel of record, as follows:

> Joseph G. Epstein
> Winstead PC
> 600 Travis Street, Suite 1100
> Houston, Texas 77002
> Telephone:  (713) 650-8400
> Telecopy:  (713) 650-2400
> jepstein@winstead.com

SIGNED this _____ day of ___JUN 0 7 2011___, 2011.

LETITIA Z. PAUL
U.S. BANKRUPTCY JUDGE

HOUSTON_1 \1109377 v1  05/11/2011

United States Bankruptcy Court
Southern District of Texas

In re:                                                                Case No. 11-33991-lzp
KT Spears Creek, LLC                                                  Chapter 11
          Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: kchudo              Page 1 of 1              Date Rcvd: Jun 08, 2011
                              Form ID: pdf002          Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 10, 2011.
db          +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
aty         +Joseph G. Epstein,   Winstead PC,   JPMorgan Chase Tower,   600 Travis Street,   Suite 1100,
             Houston, TX 77002-3030
cr          +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                        TOTAL: 0

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr           First Savers Bank
intp         RBC Bank (USA)
                                                                                  TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 10, 2011**                      **Signature:**        _Joseph Speetjens_

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**06/09/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 11-33991-H3-11 |
| KT SPEARS CREEK, LLC, | § | (CHAPTER 11) |
| | § | |
| DEBTOR. | § | |

## ORDER ALLOWING CONSTANCE L. YOUNG TO APPEAR BY TELEPHONE
### [This instrument relates to Docket No. _47_ ]

The Court has considered the Motion to Allow Constance L. Young to Appear by Telephone (Docket No. _47_ ) (the "Motion") filed by RBC Bank (USA) ("RBC"), a secured creditor and party in interest in the bankruptcy case referenced above, and finds that the Motion is meritorious and establishes cause to grant the relief requested therein.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.    The Motion is **GRANTED** as provided herein.

2.    Constance L. Young shall be permitted to appear by telephone on behalf of RBC at the hearing on RBC's Motion to Dismiss for Bad Faith Filing and Improper Venue pursuant to 28 U.S.C. § 1406(a) and § 1408 (Docket No. 25), RBC's Motion to Designate Case as Single Asset Real Estate Case pursuant to 11 U.S.C. § 101(51B) (Docket No. 26), the Emergency Motion of KT Spears Creek, LLC (the "Debtor") for Interim and Final Orders Approving Use of Cash Collateral (Docket No. 27), the Debtor's Emergency Motion pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing (Docket No. 28), and the Debtor's Emergency Motion for Turnover of Property and Request for Accounting (Docket No. 31) before this Court on June 13, 2011 at 10:15 a.m.

3.    Constance L. Young may not present evidence, including the examination of

witnesses present in the courtroom, by telephone.


DATED:  June 9, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court
Southern District of Texas

In re:                                                                                    Case No. 11-33991-lzp
KT Spears Creek, LLC                                                                      Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0541-4            User: amal               Page 1 of 1              Date Rcvd: Jun 09, 2011
                               Form ID: pdf002          Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 11, 2011.
db              +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
aty             +Joseph G. Epstein,  Winstead PC,   JPMorgan Chase Tower,   600 Travis Street,   Suite 1100,
                 Houston, TX 77002-3030
cr              +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
                 1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                          TOTAL: 0

               ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr              First Savers Bank
intp            RBC Bank (USA)
                                                                              TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 11, 2011**              **Signature:**   _Joseph Speetjens_

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## SECOND STIPULATION AND ORDER
## REGARDING RECEIVERSHIP
[This Interim Order relates to Docket. Nos. 18 and 23.]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank"), (collectively, the "Parties") stipulate as follows:

1.       The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date").

2.       The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.  As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate.  As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill Apartments").  The Mortgage, Assignment of Rents and Security Agreement was recorded on

June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South

Carolina in Book 1190, at page 1008.

    3.    RBC Bank filed a lawsuit against the Debtor and additional defendants in the

Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas")

styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-

6025, seeking to foreclose its mortgage and security interest and obtain a deficiency judgment.

    4.    On November 12, 2010, the Court of Common Pleas entered an order appointing

Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property,

including the Greenhill Apartments and rents and profits therefrom (the "Property").   The

Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of

the Court of Common Pleas of Richland County, South Carolina and are managed by GREP

Atlantic, L.P. (the "Property Manager").

    5.    On May 18, 2011, the Debtor filed an Emergency Motion for Entry of Stipulation

and Order Regarding Receivership ("Cash Usage Motion") [Docket No. 18].  In connection with

the Cash Usage Motion, the Debtor and RBC entered into a Stipulation and Order Regarding

Receivership ("Cash Usage Stipulation") wherein RBC agreed not to seek dismissal of this Case,

relief from the automatic stay or transfer of venue during May 2011, but specifically reserved its

right to pursue those claims for relief and others after May 31, 2011.  In exchange, the Debtor

agreed not to pursue turnover in accordance with Bankruptcy Code § 543.  The Court entered the

Cash Usage Stipulation on May 24, 2011 [Docket No. 23].

    6.    The Parties have agreed to extend the Cash Usage Stipulation and allow further

cash usage (the "Second Cash Usage Stipulation").

7.      As part of the Second Cash Usage Stipulation, the Parties have agreed to extend the Cash Usage Stipulation until the hearing set in this Case on June 28, 2011 beginning at 11:30 a.m. The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of the Receiver through and including June 28, 2011 (the "Interim Period").

8.      The Parties agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

9.      RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

10.     The Parties agree that during the Interim Period, RBC will continue to receive all excess proceeds generated through June 28, 2011 by the property after the payment of normal operating expenses.

11.     The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543 until the hearing in this Case on June 28, 2011 beginning at 11:30 a.m.

12.     Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on an interim basis, on the terms and conditions provided for in this Second Cash Usage Stipulation, *nunc pro tunc*, commencing on the Petition Date through and including June 28, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court.

13.    In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Second Cash Usage Stipulation and any and all related orders entered by this Court. All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

14.    Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

15.    Notice is appropriate for this Second Cash Usage Stipulation.

16.    Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this Second Cash Usage Stipulation is an Interim Order and will remain in effect pending the hearing set in this Case on June 28, 2011 beginning at 11:30 a.m.

17.    Nothing in this Second Cash Usage Stipulation shall preclude RBC Bank, First Savers Bank ("First Savers"), First Palmetto Savings Bank ("First Palmetto") or the U.S. Trustee from (i) seeking to transfer venue of this Case, and/or (ii) asserting that rents and profits from the Greenhill Apartments are not property of the estate, after the expiration of the Interim Period.

18.    Nothing in this Second Cash Usage Stipulation shall preclude the Debtor from (i) seeking turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543, and/or (ii) seeking

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393 (Held by the Property Manager)

termination of the Receivership, following the termination of the Interim Period.

19.    Nothing in this Second Cash Usage Stipulation shall constitute a determination of the existence, validity, or priority of any prepetition security interest or lien of RBC, First Savers or First Palmetto, or any other party in interest, nor shall the positions of the Debtor reflected in this Second Cash Usage Stipulation be construed as admissions of any factual or legal issues between such parties.  This Second Cash Usage Stipulation shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Cash Usage Motion's request for subsequent cash usage orders.

20.    The entry of this Second Cash Usage Stipulation shall not prejudice or limit the rights of the Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash Usage or for adequate protection. This Second Cash Usage Stipulation shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

APPROVED AND ENTRY REQUESTED:

By:/s/ Joseph G. Epstein _____
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740
Fax:  713.650.2400

**COUNSEL FOR RBC BANK**

By:/s/ Maggie D. Conner _____
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713.228.4100
Fax:  888.865.2118

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

APPROVED AS TO FORM:

By:*/s/ David S. Elder*_____    By:*/s/ Shari L. Heyen*_____
David S. Elder    Shari L. Heyen
Clinton R. Snow    **GREENBERG TRAURIG, LLP**
**GARDERE WYNNE SEWELL LLP**    1000 Louisiana, Suite 1700
1000 Louisiana, Suite 3400    Houston, Texas 77002
Houston, Texas 77002-5011    Tel: 713.374.3500
Tel: 713.276.5750    Fax: 713.374.3505
Fax: 713.276.6750    **COUNSEL FOR FIRST PALMETTO**
**COUNSEL FOR FIRST SAVERS BANK**    **SAVINGS BANK, FSB**


By:*/s/ Ellen M. Hickman*_____
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Tel: 713.718.4650
Fax:713.718.4670

**COUNSEL FOR THE U.S. TRUSTEE**


      The above *Second Stipulation and Order Authorizing Interim Cash Usage* is approved

and its terms are so ORDERED.


      Signed this _____ day of _____, 2011.


                            _____
                            HONORABLE LETITIA Z. PAUL
                            UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
### AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING
### THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING,
### AND (II) SCHEDULING FINAL HEARING
### (This Order relates to Docket No. 28.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the "Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

(a)    authorization for the Debtor to borrow up to $100,000.00 (but only up to $20,000.00 in the Interim Period (defined below)) in principal amount of post-petition financing (the "DIP Financing");

(b)    authorization for the Debtor's execution of the DIP Credit Agreement, to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)    authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Credit Agreement upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion; and

(d)    the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this DIP Motion to become effective pursuant to the Final Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Final Hearing.*  A final hearing on the DIP Motion shall be held on June 28, 2011, at 11:30 a.m. before this Court, in Courtroom 401, at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.  Objections to the DIP Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before __:___ __.m. (prevailing Central Time) on June __, 2011.

2.      *Disposition/Jurisdiction.*  The DIP Motion is granted on an interim basis but only in accordance with the terms of this interim order (the "Interim Order").  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.      *Notice.*  Notice of the DIP Motion, the relief requested herein and the Interim Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4.      *Findings Regarding the DIP Loan.*  These findings of fact are made on an interim basis and are without prejudice to any party in interest to object to these findings of fact, the DIP Financing and/or the DIP Credit Agreement on a final basis.

(a)        Sufficient cause has been shown for entry of this Interim Order.

(b)        The Debtor asserts that it has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process.  The Debtor asserts that the DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate

(c)        The Debtor asserts that it is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement.

(d)        The Debtor asserts that the DIP Credit Agreement has been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to DIP Credit Agreement, owing to the Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

(e)        The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the relief sought by this Interim Order, the Debtor asserts that the Debtor's estate will be immediately and irreparably harmed, and thus, consummation of the DIP Loan in accordance with this Interim Order is in the best interest of the Debtor's estate.

5.    *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

(a)        The Debtor is hereby authorized to borrow on an interim basis up to an aggregate principal amount of $20,000.00, in accordance with the terms of this Interim Order.

(b)        This will be an unsecured advance to the Debtor by the DIP Lender.

(c)        Upon execution and delivery of the DIP Credit Agreement, the DIP Credit Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor, but only in accordance with the terms of this Interim Order.

6.    *Use of DIP Loan Proceeds.*  The Debtor shall use the proceeds of the DIP Loan solely as provided by the DIP Credit Agreement and this Interim Order and in accordance with the attached budget.

7.    *Retention of Jurisdiction.*  This Court shall retain jurisdiction to enforce the provisions of this Interim Order.

8.    Entry of this Order is without prejudice to the rights of any secured party, including but not limited to First Palmetto Savings Bank, FSB, First Savers Bank, and RBC Bank (USA); any objections of any party to the proposed DIP Financing and DIP Credit Agreement are not waived and are hereby expressly preserved.

APPROVED AND ENTRY REQUESTED:

By:*/s/ Joseph G. Epstein*
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740
Fax:  713.650.2400

**COUNSEL FOR RBC BANK**

By:*/s/ Maggie D. Conner*
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713.228.4100
Fax:  888.865.2118

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

APPROVED AS TO FORM:


By:*/s/ David S. Elder*
David S. Elder
Clinton R. Snow
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
Tel: 713.276.5750
Fax: 713.276.6750

**COUNSEL FOR FIRST SAVERS BANK**

By:*/s/ Shari L. Heyen*
Shari L. Heyen
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505

**COUNSEL FOR FIRST PALMETTO
SAVINGS BANK, FSB**


By:*/s/ Ellen M. Hickman*
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Tel: 713.718.4650
Fax:713.718.4670

**COUNSEL FOR THE U.S. TRUSTEE**


SIGNED THIS ___ day of June, 2011.


_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

**KT Spears Creek DIP Loan Budget**

*Wednesday, June 01, 2011*

| | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | | |
| Chiron Equities DIP Loan | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | | 95,000 |
| **Total Revenue** | **10,000** | **-** | **-** | **25,000** | **-** | **20,000** | **15,000** | **-** | **20,000** | **-** | **5,000** | **-** | **-** | | **95,000** |
| | | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | | |
| Legal Fees (Okin, Adams, Kilmer) | - | - | - | 15,000 | - | - | - | - | 20,000 | - | - | - | - | | 35,000 |
| Sales Marketing/Advertising/Brokerage Fees | - | - | 6,000 | - | - | - | 6,000 | - | - | - | 6,000 | - | - | | 18,000 |
| General & Administrative Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | | 1,300 |
| Travel Costs | - | - | - | - | - | 2,000 | - | - | 800 | - | - | - | - | | 2,800 |
| Professional Reports | - | - | - | 4,000 | - | - | 8,000 | - | - | - | - | - | - | | 12,000 |
| Anticipated Loan Due Diligence Fee | - | - | - | - | - | 20,000 | - | - | - | - | - | - | - | | 20,000 |
| Quarterly Trustee Fees | - | - | - | 4,750 | - | - | - | - | - | - | - | - | - | | 4,750 |
| **Total Expenses** | **100** | **100** | **6,100** | **23,850** | **100** | **22,100** | **14,100** | **100** | **20,900** | **100** | **6,100** | **100** | **100** | | **93,850** |
| | | | | | | | | | | | | | | | |
| **Net Cash Remaining** | **9,900** | **9,800** | **3,700** | **4,850** | **4,750** | **2,650** | **3,550** | **3,450** | **2,550** | **2,450** | **1,350** | **1,250** | **1,150** | | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

### NOTICE OF DISTRIBUTION OF RETAINER
### UNDER LOCAL BANKRUPTCY RULE 2016(b)

**IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING, AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE. IF NO OBJECTION IS TIMELY FILED, DISBURSEMENT WILL BE MADE FROM RETAINER IN ACCORDANCE WITH LBR 2016(b). NOTWITHSTANDING ANY SUCH DISBURSEMENTS, A FINAL APPLICATION SHALL BE FILED AT THE CONCLUSION OF THIS CASE IN ACCORDANCE WITH FBRP 2016.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Okin Adams & Kilmer LLP ("OAK" or the "Applicant"), proposed counsel for KT Spears Creek, LLC, debtor and debtor in possession (the "Debtor"), files this *Notice of Distribution of Retainer Under Local Bankruptcy Rule 2016(b)* (the "Distribution Notice") seeking authority to distribute $15,018.56 of the retainer of the bankruptcy estate of the Debtor for professional services rendered and expenses incurred during the period running from May 3, 2011 through May 31, 2011, and in support thereof would respectfully show as follows:

1.     On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

2.      Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

3.      As of the date of this Distribution Notice, no official committee of unsecured creditors has been appointed.

4.      The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

5.      The Debtor's assets include, *inter alia*, three real estate holdings.  One of these real estate holdings includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes located in Elgin, South Carolina is substantially occupied. The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

6.      On May 17, 2011, OAK filed its application to be employed as Debtor's counsel. [Docket No. 17.]  This application is currently pending before the Court.

7.      OAK holds $15,018.56 of retainer in a trust account, paid by Mr. Tauch, individually, and intends to draw such funds for payment against professional fees and expenses accrued in this Case.

8.      During the time period running from May 3, 2011 through May 31, 2011, OAK earned fees in the total amount of $32,690.50.  In addition, OAK incurred reimbursable expenses associated with this Csae in the amount of $707.40.  Attached as **Exhibit A** hereto is a true and correct copy of OAK's June 6, 2011 invoice for post-petition fees and expenses incurred during

May of 2011, totaling $33,397.90, and describing in detail the services rendered, time spent, hourly rates charged, and the name of the professional or para-professional performing the work.

9.    The majority of the work during this time period involved filing of the schedules and statement of financial affairs, preparation and attendance at the initial debtor's conference and creditors' meeting, and the negotiation and preparation of the motion regarding the receivership and cash usage.

10.    Pursuant to Local Bankruptcy Rule 2016-1(c), if no objection to this Distribution Notice is filed, OAK will draw $15,018.56 of retainer for payment against professional fees and expenses accrued in this Case on or after July 7, 2011.

WHEREFORE, OAK prays that if an objection or request for hearing is timely filed in this matter, the Court will grant an order that authorizes OAK to draw from the retainer in accordance with this Distribution Notice, and grant such other and further relief as is just and proper.

**Dated**: June 16, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: */s/ Maggie D. Conner*
        Matthew S. Okin
        Texas Bar #00784695
        Maggie D. Conner
        Texas Bar. #24038439
        1113 Vine St., Suite 201
        Houston, TX  77002
        Tel:  713- 228-4100
        Fax:  888-865-2118
        mokin@oakllp.com
        mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* United States mail and/or the Court's Electronic Case Filing system on the 16th day of June, 2011.

*/s/ Maggie D. Conner*
Maggie D. Conner

# OKIN · ADAMS
# & KILMER LLP

Please remit payment to:

Okin Adams & Kilmer LLP
1113 Vine St., Suite 201
Houston, TX 77002
Fx.888.865.2118

Tax ID# 26-0640161

June  6, 2011

KT Spears Creek LLC
attn: Kyle Tauch
701 North Post Oak Road, Suite
300
Houston, TX 77024

Regarding: KT Spears Creek/Bankruptcy
Invoice No:01890

### *Services Rendered*

| Date | Staff | Description | Hours | Charges |
|---|---|---|---|---|
| 5/03/2011 | DKD | Work on schedules | 2.00 | $250.00 |
| 5/03/2011 | MDC | Revise and finalize suggestions of bankruptcy; conference with S. Keith regarding filing and service thereof; correspond with K. Tauch, M. Okin, J. Krasoff and Greystar regarding filing of petition and outstanding documents and information; prepare correspondence to Greystar providing notice of bankruptcy and request for information | 5.90 | $1,622.50 |
| 5/03/2011 | MSO | Follow-up with K. Tauch regarding court assignment and next steps in bankruptcy case (.5); discuss schedules and use of cash collateral with M. Conner and review Greystar letter (.5); review initial drafts of various pleadings (.5) | 1.50 | $562.50 |
| 5/03/2011 | SMK | Telephone call with court clerk regarding mailing documents for filing (.1); conferences with M. Conner regarding filing suggestions of bankruptcy and reviewing documents for certificates of service (.2); prepare transmittal letter to Richland court (.4); review documents to update certificate of service in suggestion of bankruptcy (.6); revise and finalize suggestions of bankruptcy and supervise mailing of suggestions of bankruptcy with cover letters (.4); prepare transmittal letter to Judge Strickland of courtesy copy of suggestions of bankruptcy and submit to M. Conner for review (.4); telephone call with Judge Strickland's chambers regarding correct address for letter (.1) | 2.30 | $494.50 |
| 5/04/2011 | DKD | Numerous emails and conference calls to/from M. Conner regarding schedules and SOFAs and update schedules and SOFAs regarding same. | 3.20 | $400.00 |
| 5/04/2011 | MDC | Collect additional information and update schedules, SOFA, and matrix; conference with C. Young and W. Moore regarding cash collateral and production of information; conference with and review research from S. Keith regarding assignment of rents | 4.90 | $1,347.50 |
| 5/04/2011 | MSO | Review financial information from property manager and discuss with M. Conner (.4); telephone conference with client regarding offer to RBC and plans for proceeding (.5) | 0.90 | $337.50 |
| 5/04/2011 | SMK | Conference with M. Conner regarding assignment of rent research (.1); conduct research on assignment of rents in South Carolina (1.3) | 1.40 | $301.00 |
| 5/05/2011 | DKD | Upload and file creditors matrix (.2); numerous emails to/from M. Conner regarding client information (.3); continue working on schedules and statement of financial affairs (1.5) | 2.00 | $250.00 |
| 5/05/2011 | MDC | File creditor matrix; correspond with E. Hickman regarding matrix and top twenty creditors list; conference and correspond throughout the day with M. Okin, K. Tauch, J. Krasoff, C. Young, W. Moore, D. Drake and S. Keith regarding cash collateral, updating matrix, schedules and SOFA, and potential first day motions; review and download notice of | 3.40 | $935.00 |

# OA&K

| | | appearance and motion for admission pro hac vice for RBC's counsel | | |
|---|---|---|---|---|
| 5/05/2011 | MSO | Review budget documents and discuss with client | 1.00 | $375.00 |
| 5/06/2011 | DKD | Numerous emails to/from M. Conner regarding updated schedule information from client (.4); continue updating schedules regarding same (.5); finalize and file 20 Largest Unsecured Creditors (.3); prepare creditor mailing matrix (.2) | 1.40 | $175.00 |
| 5/06/2011 | MDC | Finalize list of top twenty unsecured creditors; conference and correspond with D. Drake and M. Okin regarding same; review correspondence and information from receiver; call C. Young regarding cash collateral | 0.50 | $137.50 |
| 5/09/2011 | DKD | Attention to email containing remainder vendors for schedules (.1); add additional vendors to schedules and prepare an Amended Matrix (.7) | 0.80 | $100.00 |
| 5/09/2011 | MDC | Conference with M. Okin and C. Young regarding cash collateral, venue and turnover; correspond with K. Tauch, C. Byars, J. Krasoff and M. Okin regarding same; review correspondence and information received from W. Moore; update top 20 list and matrix with D. Drake | 2.30 | $632.50 |
| 5/09/2011 | MSO | Conference with M. Conner to discuss status of RBC discussions and plans for operations (.3); telephone conference with C. Young to discuss RBC position (.3) | 0.60 | $225.00 |
| 5/09/2011 | SMK | Calendar 341 meeting, initial debtor conference and other relevant case deadlines | 0.20 | $43.00 |
| 5/10/2011 | DKD | Finalize, file and update amended creditor matrix with court. | 0.50 | $62.50 |
| 5/10/2011 | MDC | Conference and correspond with C. Young, M. Okin, K. Tauch, C. Byar and J. Krasoff regarding cash collateral, venue and turnover; attention to updating and filing amended matrix; prepare motion to use cash collateral and turnover demand; review and revise schedules and SOFA | 5.90 | $1,622.50 |
| 5/10/2011 | MSO | Review RBC response to settlement proposal and set up conference call to discuss next steps; review additional correspondence from RBC and receiver | 0.70 | $262.50 |
| 5/11/2011 | DKD | Review schedules and statement of financial affairs. | 0.60 | $75.00 |
| 5/11/2011 | MDC | Conference and correspond with C. Young, K. Tauch, J. Krasoff and M. Okin regarding cash collateral and related issues; attention to providing notice of creditors' meeting to parties on the amended matrix; review, update and circulate schedules and SOFA; prepare, file and serve certificate of supplemental service of creditors meeting | 3.70 | $1,017.50 |
| 5/11/2011 | MSO | Telephone conference with Chiron to discuss status of case and negotiations with RBC (.5); review correspondence with RBC and respond (.3) | 0.80 | $300.00 |
| 5/12/2011 | MDC | Prepare motion for authorization of cash usage and interim order granting same; conference with C. Young regarding same; research regarding assignment of rents; review update schedules and SOFA | 3.40 | $935.00 |
| 5/13/2011 | MDC | Prepare motion for authorization of cash usage and interim order granting same | 3.50 | $962.50 |
| 5/13/2011 | MSO | Review status of schedules and SOFA with M. Conner | 0.50 | $187.50 |
| 5/14/2011 | MDC | Review reports received from K. Tauch; research regarding assignment of rents; update schedules and SOFA; prepare motion for cash usage | 2.10 | $577.50 |
| 5/14/2011 | MDC | Prepare application to retain OAK as debtor's counsel, affidavit and proposed order | 1.90 | $522.50 |
| 5/15/2011 | MDC | Prepare motion for cash usage and proposed interim order; correspond with C. Young regarding same | 2.80 | $770.00 |
| 5/16/2011 | MDC | Revise application to employ OAK, affidavit and proposed order; correspond with K. Tauch, M. Okin, C. Byars and J. Krasoff regarding | 2.90 | $797.50 |

OA&K

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| | | same | | |
| 5/16/2011 | MDC | Revise motion for entry of stipulation for interim cash usage and usage of existing bank accounts, interim order and exhibits thereto; revise schedules and SOFA; conference and correspond with K. Tauch, M. Okin, J. Krasoff and C. Byars regarding same | 6.80 | $1,870.00 |
| 5/16/2011 | MSO | Review draft of stipulation with RBC and comment (.4); telephone conference with client and financial advisor regarding funding case going forward and future plans for agreement with RBC (.6); additional discussion with M. Conner in preparation for deal with RBC (.3) | 1.30 | $487.50 |
| 5/16/2011 | MSO | Review application to employ and supporting affidavit | 0.30 | $112.50 |
| 5/16/2011 | MSO | Review drafts of schedules and SOFA and comment | 0.60 | $225.00 |
| 5/16/2011 | SMK | Finalize and revise schedules and SOFA and all exhibits thereto and forward to M. Conner (2.5); multiple conferences with M. Conner regarding same (.2); conference with M. Okin regarding exhibit 3(b) (.1) | 2.90 | $623.50 |
| 5/17/2011 | MDC | Finalize schedules and SOFA; finalize stipulation regarding cash usage; conference with M. Okin and correspond with C. Young regarding same; revise motion for cash usage; prepare service list; correspond with K. Tauch regarding filings; conference with S. Keith regarding motion for emergency hearing | 3.30 | $907.50 |
| 5/17/2011 | MDC | Finalize, file and serve application to retain OAK, affidavit and proposed order | 1.20 | $330.00 |
| 5/17/2011 | MSO | Review draft stipulation with RBC; comment and discuss with M. Conner | 0.50 | $187.50 |
| 5/17/2011 | SMK | Revise and finalize schedules, SOFA and list of equity security holders for filing (1.3); conference with M. Okin regarding revising same (.1); file schedules, SOFA and list of equity holders (.1) | 1.50 | $322.50 |
| 5/17/2011 | SMK | Prepare motion and proposed order regarding emergency consideration of cash collateral motion | 0.70 | $150.50 |
| 5/18/2011 | MDC | Finalize, file and serve motion to approve stipulation, proposed order, motion for emergency consideration, and proposed order; conference and correspond with C. Young, J. Epstein, M. Okin, K. Tauch, C. Byars, J. Krassoff and S. Keith regarding same, hearing thereon and schedules, statement of financial affairs, equity holder list | 3.60 | $990.00 |
| 5/18/2011 | MSO | Discuss status of agreement with RBC with M. Conner and review RBC comments to stipulation | 0.50 | $187.50 |
| 5/18/2011 | SMK | Telephone call with case manager regarding setting hearing | 0.10 | $21.50 |
| 5/19/2011 | MDC | Conference with E. Hickman, M. Rodriguez, J. Epstein, and C. Young regarding motion for entry of stipulation regarding receiver and hearing thereon; meet with J. Krassoff, E. Israel and M. Okin regarding DIP financing and case strategy; review Greenhill Apartments expense control report; prepare DIP motion | 2.80 | $770.00 |
| 5/19/2011 | MSO | Conference with E. Israel and J. Krassoff regarding potential financing for DIP (1.2); review follow up information regarding cost savings at apartment complex (.4) | 1.60 | $600.00 |
| 5/19/2011 | SMK | Prepare notice of hearing on stipulation regarding use of cash | 0.20 | $43.00 |
| 5/20/2011 | MDC | Attention to notice of hearing on motion to approve stipulation; conference with M. Okin regarding hearing; review DIP loan term sheet and correspond with G. Young regarding same; correspond with E. Hickman to provide requested information | 1.00 | $275.00 |
| 5/20/2011 | MSO | Review term sheet for DIP Loan | 0.30 | $112.50 |
| 5/20/2011 | SMK | Prepare transmittal letter of declaration of electronic filing to court clerk and have same couriered to court | 0.10 | $21.50 |

# OA & K

Regarding:   KT Spears Creek/Bankruptcy
Invoice No:   01890

| Date | Staff | Description | Hours | Amount |
|---|---|---|---|---|
| 5/20/2011 | SMK | Finalize, file and e-mail serve notice of hearing on motion for stipulation regarding use of cash and calendar same | 0.30 | $64.50 |
| 5/23/2011 | GY | Work on draft of DIP Credit Agreement | 2.50 | $875.00 |
| 5/23/2011 | MDC | Prepare for hearing on motion to approve stipulation; conference with E. Hickman and K. Tauch regarding same | 3.70 | $1,017.50 |
| 5/23/2011 | MSO | Conference with M. Conner to discuss preparation for hearing on stipulation | 0.50 | $187.50 |
| 5/24/2011 | GY | Continue working on raft of DIP Credit Agreement | 3.30 | $1,155.00 |
| 5/24/2011 | MDC | Prepare for and appear at hearing on motion for approval of stipulation regarding receiver; conference with K. Tauch and M. Okin regarding DIP financing; conference with parties in receipt of notice of bankruptcy filing | 3.20 | $880.00 |
| 5/24/2011 | MSO | Prepare for and participate in hearing on approval of stipulation with RBC | 1.50 | $562.50 |
| 5/25/2011 | GY | Finish initial draft of DIP Credit Agreement and Note | 1.70 | $595.00 |
| 5/25/2011 | MDC | Conference with G. Young and M. Okin regarding DIP loan agreement and motion | 0.30 | $82.50 |
| 5/25/2011 | MDC | Review correspondence from US Trustee regarding initial debtor conference and report; correspond with K. Tauch regarding same; prepare initial report | 0.70 | $192.50 |
| 5/26/2011 | MDC | Prepare initial report binder for US trustee | 0.80 | $220.00 |
| 5/27/2011 | MSO | Conference with J. Epstein regarding further use of cash and lifting of stay | 0.50 | $187.50 |
| 5/31/2011 | MDC | Prepare DIP motion; review DIP credit agreement; participate in initial debtor's conference | 6.60 | $1,815.00 |
| 5/31/2011 | MSO | Conference with M. Conner to prepare for initial debtor conference with the UST | 0.40 | $150.00 |
| 5/31/2011 | MSO | Review draft loan documents for DIP loan | 0.50 | $187.50 |

Total Fees   $32,690.50

## Staff Summary

| Name | Hours | Rate | Fees |
|---|---|---|---|
| Dana K. Drake | 10.50 | $125.00 | $1,312.50 |
| Gregory A Young | 7.50 | $350.00 | $2,625.00 |
| Maggie D. Conner | 77.20 | $275.00 | $21,230.00 |
| Matthew S Okin | 14.50 | $375.00 | $5,437.50 |
| Sara Mya Keith | 9.70 | $215.00 | $2,085.50 |

## Expenses

| Date | Description | Charges |
|---|---|---|
| 5/03/2011 | U.S. Mail | $13.65 |
| 5/03/2011 | Documents Shipped | $32.01 |
| 5/03/2011 | Documents Shipped | $43.01 |
| 5/10/2011 | Filing Fee - Amended Creditor Matrix | $26.00 |
| 5/14/2011 | Conference Calls - April 2011 | $65.62 |
| 5/14/2011 | Conference Calls - May 2011 | $65.62 |
| 5/17/2011 | U.S. Mail | $10.88 |
| 5/18/2011 | U.S. Mail | $10.88 |
| 5/20/2011 | U.S. Mail | $7.48 |
| 5/26/2011 | Park | $6.00 |
| 5/31/2011 | PACER Monthly Statement - 5/1/11 thru 5/31/11 | $9.36 |

OA&K

Regarding: KT Spears Creek/Bankruptcy
Invoice No: 01890

| | | |
|---|---|---|
| 5/31/2011 | In-House Copying Charges - May 2011 | $144.70 |
| 5/31/2011 | Westlaw Charges - May 2011 | $272.19 |
| | Total Expenses | $707.40 |

**Trust and Payment Summary**

Total New Charges     $33,397.90

Previous Balance     $0.00

Balance Due     $33,397.90

THANK YOU FOR YOUR BUSINESS
www.oakllp.com
Dallas Houston Austin

Service List

*__United States Trustee:__*

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

*__IRS:__*

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

*__Counsel for RBC:__*

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

*__Counsel for First Savers Bank__*

David S. Elder
Clinton R. Snow
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
deleder@gardere.com
csnow@gardere.com

*__Receiver:__*

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

*__Property Manager:__*

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

*__Counsel for First Palmetto Bank__*

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
06/21/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

**SECOND STIPULATION AND ORDER
REGARDING RECEIVERSHIP**
[This Interim Order relates to Docket. Nos. 18 and 23.]

      KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank"), (collectively, the "Parties") stipulate as follows:

      1.      The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date").

      2.      The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008. As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate. As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on

June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South
Carolina in Book 1190, at page 1008.

      3.      RBC Bank filed a lawsuit against the Debtor and additional defendants in the
Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas")
styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-
6025, seeking to foreclose its mortgage and security interest and obtain a deficiency judgment.

      4.      On November 12, 2010, the Court of Common Pleas entered an order appointing
Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property,
including the Greenhill Apartments and rents and profits therefrom (the "Property"). The
Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of
the Court of Common Pleas of Richland County, South Carolina and are managed by GREP
Atlantic, L.P. (the "Property Manager").

      5.      On May 18, 2011, the Debtor filed an Emergency Motion for Entry of Stipulation
and Order Regarding Receivership ("Cash Usage Motion") [Docket No. 18]. In connection with
the Cash Usage Motion, the Debtor and RBC entered into a Stipulation and Order Regarding
Receivership ("Cash Usage Stipulation") wherein RBC agreed not to seek dismissal of this Case,
relief from the automatic stay or transfer of venue during May 2011, but specifically reserved its
right to pursue those claims for relief and others after May 31, 2011. In exchange, the Debtor
agreed not to pursue turnover in accordance with Bankruptcy Code § 543. The Court entered the
Cash Usage Stipulation on May 24, 2011 [Docket No. 23].

      6.      The Parties have agreed to extend the Cash Usage Stipulation and allow further
cash usage (the "Second Cash Usage Stipulation").

Case 11-33991 Document 64 Filed in TXSB on 07/05/11 18:Page 3 Desc Main
Document    Page 654 of 824
Case 11-33991   Document 64   Filed in TXSB on 06/14/11   Page 3 of 6

7.      As part of the Second Cash Usage Stipulation, the Parties have agreed to extend the Cash Usage Stipulation until the hearing set in this Case on June 28, 2011 beginning at 11:30 a.m. The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of the Receiver through and including June 28, 2011 (the "Interim Period").

8.      The Parties agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

9.      RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

10.     The Parties agree that during the Interim Period, RBC will continue to receive all excess proceeds generated through June 28, 2011 by the property after the payment of normal operating expenses.

11.     The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia,* Bankruptcy Code § 543 until the hearing in this Case on June 28, 2011 beginning at 11:30 a.m.

12.     Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on an interim basis, on the terms and conditions provided for in this Second Cash Usage Stipulation, *nunc pro tunc,* commencing on the Petition Date through and including June 28, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court.

Case 11-34241-jw39 Doc Document Filed 07/05/11 in Entered 07/05/11 18:12:54 Desc Main
Document    Page 655 of 824
Case 11-33991   Document 64   Filed in TXSB on 06/14/11   Page 4 of 6

13.     In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Second Cash Usage Stipulation and any and all related orders entered by this Court. All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

14.     Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

15.     Notice is appropriate for this Second Cash Usage Stipulation.

16.     Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this Second Cash Usage Stipulation is an Interim Order and will remain in effect pending the hearing set in this Case on June 28, 2011 beginning at 11:30 a.m.

17.     Nothing in this Second Cash Usage Stipulation shall preclude RBC Bank, First Savers Bank ("First Savers"), First Palmetto Savings Bank ("First Palmetto") or the U.S. Trustee from (i) seeking to transfer venue of this Case, and/or (ii) asserting that rents and profits from the Greenhill Apartments are not property of the estate, after the expiration of the Interim Period.

18.     Nothing in this Second Cash Usage Stipulation shall preclude the Debtor from (i) seeking turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543, and/or (ii) seeking

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393 (Held by the Property Manager)

termination of the Receivership, following the termination of the Interim Period.

19.    Nothing in this Second Cash Usage Stipulation shall constitute a determination of the existence, validity, or priority of any prepetition security interest or lien of RBC, First Savers or First Palmetto, or any other party in interest, nor shall the positions of the Debtor reflected in this Second Cash Usage Stipulation be construed as admissions of any factual or legal issues between such parties. This Second Cash Usage Stipulation shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Cash Usage Motion's request for subsequent cash usage orders.

20.    The entry of this Second Cash Usage Stipulation shall not prejudice or limit the rights of the Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash Usage or for adequate protection. This Second Cash Usage Stipulation shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

APPROVED AND ENTRY REQUESTED:

By: /s/ Joseph G. Epstein
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740
Fax:  713.650.2400

**COUNSEL FOR RBC BANK**

By: /s/ Maggie D. Conner
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713.228.4100
Fax:  888.865.2118

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

Case 11-34241-jw39Doc Document Filed 07/05/11 in Entered 07/05/11 18:Page 6 Desc Main
Document    Page 657 of 824
Case 11-33991   Document 64   Filed in TXSB on 06/14/11   Page 6 of 6

APPROVED AS TO FORM:

By: */s/ David S. Elder*_____
David S. Elder
Clinton R. Snow
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
Tel: 713.276.5750
Fax: 713.276.6750

**COUNSEL FOR FIRST SAVERS BANK**

By: */s/ Shari L. Heyen*_____
Shari L. Heyen
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505

**COUNSEL FOR FIRST PALMETTO
SAVINGS BANK, FSB**

By: */s/ Ellen M. Hickman*_____
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Tel: 713.718.4650
Fax: 713.718.4670

**COUNSEL FOR THE U.S. TRUSTEE**

The above *Second Stipulation and Order Authorizing Interim Cash Usage* is approved

and its terms are so ORDERED.

JUN 2 1 2011

Signed this _____ day of _____, 2011.

_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

Case 11-34241-jw39Doc Document Filed 07/05/ed in Entee 07/05/11 18:Page51 deesc Main
Document    Page 658 of 824
Case 11-33991   Document 65   Filed in TXSB on 06/14/11   Page 1 of 5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**06/21/2011**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
### AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING
### THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING,
### AND (II) SCHEDULING FINAL HEARING
(This Order relates to Docket No. 28.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the

"Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§

105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

(a)    authorization for the Debtor to borrow up to $100,000.00 (but only up to
$20,000.00 in the Interim Period (defined below)) in principal amount of post-petition financing
(the "DIP Financing");

(b)    authorization for the Debtor's execution of the DIP Credit Agreement, to
perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)    authorization for the Lender to accelerate the maturity of the DIP Loan
and terminate the commitments under and in accordance with the DIP Credit Agreement upon
the occurrence and continuance of an event of default, subject to the provisions of this DIP
Motion and any order granting this DIP Motion; and

(d)    the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing
(the "Final Hearing") for this Court to consider entry of a final order (the "Final Order")
authorizing and approving the relief requested in this DIP Motion to become effective pursuant
to the Final Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

Case 11-34241-jw839Doc Documeried 67/05/led in EntEeed o07/05/11 18:Page52 dEsc Main
Document    Page 659 of 824
Case 11-33991   Document 65   Filed in TXSB on 06/14/11   Page 2 of 5

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Final Hearing.*  A final hearing on the DIP Motion shall be held on June 28, 2011, at 11:30 a.m. before this Court, in Courtroom 401, at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.  Objections to the DIP Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before 5 : 00 P .m. (prevailing Central Time) on June 24, 2011.

2.     *Disposition/Jurisdiction.*  The DIP Motion is granted on an interim basis but only in accordance with the terms of this interim order (the "Interim Order").  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.     *Notice.*  Notice of the DIP Motion, the relief requested herein and the Interim Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4.     *Findings Regarding the DIP Loan.*  These findings of fact are made on an interim basis and are without prejudice to any party in interest to object to these findings of fact, the DIP Financing and/or the DIP Credit Agreement on a final basis.

-2-

(a)   Sufficient cause has been shown for entry of this Interim Order.

(b)   The Debtor asserts that it has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process. The Debtor asserts that the DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate

(c)   The Debtor asserts that it is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement.

(d)   The Debtor asserts that the DIP Credit Agreement has been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to DIP Credit Agreement, owing to the Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

(e)   The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). Absent granting the relief sought by this Interim Order, the Debtor asserts that the Debtor's estate will be immediately and irreparably harmed, and thus, consummation of the DIP Loan in accordance with this Interim Order is in the best interest of the Debtor's estate.

5.   *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

(a)   The Debtor is hereby authorized to borrow on an interim basis up to an aggregate principal amount of $20,000.00, in accordance with the terms of this Interim Order.

(b)   This will be an unsecured advance to the Debtor by the DIP Lender.

(c)   Upon execution and delivery of the DIP Credit Agreement, the DIP Credit Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor, but only in accordance with the terms of this Interim Order.

Case 11-34241-jw39Doc DocumFied 07/05/tdd inEnteB co07065/11 18:Page54 dDesc Main
Document   Page 661 of 824
Case 11-33991   Document 65   Filed in TXSB on 06/14/11   Page 4 of 5

6.      *Use of DIP Loan Proceeds.*  The Debtor shall use the proceeds of the DIP Loan

solely as provided by the DIP Credit Agreement and this Interim Order and in accordance with

the attached budget.

7.      *Retention of Jurisdiction.*   This Court shall retain jurisdiction to enforce the

provisions of this Interim Order.

8.      Entry of this Order is without prejudice to the rights of any secured party,

including but not limited to First Palmetto Savings Bank, FSB, First Savers Bank, and RBC

Bank (USA); any objections of any party to the proposed DIP Financing and DIP Credit

Agreement are not waived and are hereby expressly preserved.

APPROVED AND ENTRY REQUESTED:

By:*/s/ Joseph G. Epstein*
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740
Fax:  713.650.2400

**COUNSEL FOR RBC BANK**

By:*/s/ Maggie D. Conner*
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713.228.4100
Fax:  888.865.2118

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

-4-

APPROVED AS TO FORM:


By:/s/ David S. Elder
David S. Elder
Clinton R. Snow
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
Tel: 713.276.5750
Fax: 713.276.6750

**COUNSEL FOR FIRST SAVERS BANK**

By:/s/ Shari L. Heyen
Shari L. Heyen
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505

**COUNSEL FOR FIRST PALMETTO
SAVINGS BANK, FSB**


By:/s/ Ellen M. Hickman
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Tel: 713.718.4650
Fax:713.718.4670

**COUNSEL FOR THE U.S. TRUSTEE**



SIGNED THIS ___ day of June, 2011.

JUN 2 1 2011

_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

-5-

Case 11-33991 Document 68-3 Filed in TXSB on 06/09/11 Page 1 of 1
Case 11-33991-jw39Doc Document Filed 07/05/11 in Entered 07/05/11 18:P2g456 Desc Main
Document    Page 663 of 824

## KT Spears Creek DIP Loan Budget
### Wednesday, June 01, 2011

| | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | |
| Chiron Equities DIP Loan | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | 95,000 |
| **Total Revenue** | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | 95,000 |
| | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | |
| Legal Fees (Okin, Adams, Kilmer) | - | - | - | 15,000 | - | - | - | - | 20,000 | - | - | - | - | 35,000 |
| Sales Marketing/Advertising/Brokerage Fees | - | - | 6,000 | - | - | - | 6,000 | - | - | - | 6,000 | - | - | 18,000 |
| General & Administrative Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,300 |
| Travel Costs | - | - | - | - | - | 2,000 | - | - | 800 | - | - | - | - | 2,800 |
| Professional Reports | - | - | - | 4,000 | - | - | 8,000 | - | - | - | - | - | - | 12,000 |
| Anticipated Loan Due Diligence Fee | - | - | - | - | - | 20,000 | - | - | - | - | - | - | - | 20,000 |
| Quarterly Trustee Fees | - | - | - | 4,750 | - | - | - | - | - | - | - | - | - | 4,750 |
| **Total Expenses** | 100 | 100 | 6,100 | 23,850 | 100 | 22,100 | 14,100 | 100 | 20,900 | 100 | 6,100 | 100 | 100 | 93,850 |
| | | | | | | | | | | | | | | |
| **Net Cash Remaining** | 9,900 | 9,800 | 3,700 | 4,850 | 4,750 | 2,650 | 3,550 | 3,450 | 2,550 | 2,450 | 1,350 | 1,250 | 1,150 | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## MOTION FOR ADMINISTRATIVE ORDER UNDER 11 U.S.C. §§ 105(a) AND 331 ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), filing this Motion for Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Motion") and in support hereof, respectfully states as follows:

## I.  JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C.
§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue is
proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the
relief requested herein are Bankruptcy Code §§ 105, 361 and 363 and Bankruptcy Rules 2002,
4001, and 9014.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for
relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),
commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business
as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this Motion, no official committee of unsecured creditors has
been appointed.

## II.  FACTUAL BACKGROUND

### A.      The Debtor's Business and Real Property

5.      The Debtor is a South Carolina limited liability company with its principal place
of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and
resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business
of real estate investment and development.

6.      The Debtor's assets include, *inter alia*, three real estate holdings.  One of these
real estate holdings includes an operating apartment complex and an additional area on which a
second apartment complex may be constructed.  The operating apartment complex, Greenhill
Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South

Carolina is substantially occupied. The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

**B.**    **Secured Credit Facilities**

**RBC Bank**

7.    The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

8.    As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments. The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

9.    As of the Petition Date, the Debtor's obligation under the RBC Bank Note was approximately $22,646,397.88.

First Savers

10.    The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank ("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00. The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property.

11.     As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

   First Palmetto

12.     The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in approximately 7 acres of undeveloped commercial real property.

13.     As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

## C.     The Receivership and Foreclosure Action

14.     RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

15.     On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property").   The Greenhill Apartments have been in receivership (the "Receivership") pursuant to the state court order and this Court's order permitting the Receiver to remain in place through May 31, 2011 [Docket No. 23] and are managed by GREP Atlantic, L.P. (the "Property Manager").

16.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment").  Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

## D.    <u>Factors Leading to Bankruptcy</u>

17.    As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection.  Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

## <u>III. RELIEF REQUESTED</u>

18.    By this Motion, the Debtor requests the entry of an order authorizing and establishing procedures for compensating and reimbursing court-approved professionals ("<u>Professionals</u>") on a monthly basis, comparable to those procedures established in other chapter 11 cases filed in this district.  Such an order will enable the Court, the Debtor, and all other parties to more effectively monitor the professional fees and expenses generated in this case as they are incurred.

### *Monthly Interim Compensation and Reimbursement*

19.    The Debtor proposes that the payment of compensation and reimbursement of Professionals on a monthly basis be structured as follows:

(a)    No later than the 20th day of each calendar month following the month for which compensation and/or reimbursement is sought (the "<u>Statement Due Date</u>"), each Professional (other than those subject to separate Court order) retained in this case pursuant to §§ 327 and 1103 of the Bankruptcy Code seeking the interim payment of fees and reimbursement of expenses may:

(i)    submit an itemized monthly fee and expense statement ("<u>Monthly Statement</u>") in compliance with the provisions of subparagraph 19(b) below setting forth the fees and expenses for which payment is sought for the preceding month, with supporting detail; and

(ii)    serve a copy of such Monthly Statement on the Debtor, bankruptcy counsel for the Debtor, if a committee of unsecured creditors is appointed, on counsel for the committee, counsel for the Debtor's secured lenders who request that they receive copies, and the United States Trustee (collectively, the "<u>Fee Parties</u>").

(b)    Each Monthly Statement shall include, as an exhibit, time records that itemize services.  Monthly Statements must be actually received by the Fee Parties on or before the Statement Due Date.  Any Monthly Statement received after the Statement Due Date shall be deemed served on the Statement Due Date the following month.

(c)    The Fee Parties shall have ten (10) days from actual receipt to review each Monthly Statement.  Any objections shall be served on the Fee Parties and the affected Professional no later than ten (10) days after receipt of a Monthly Statement; provided however, that all objections must be received by the Debtor's bankruptcy counsel by the close of business on the 10th day after receipt of a Monthly Statement (the "Objection Deadline").  After such review, and except as provided in subparagraph 19(d) below, the Debtor shall pay in the ordinary course of business (typically, within ten (10) days from the Objection Deadline), or to the extent the Professional is in possession of a retainer, the Professional may apply any remaining retainer to pay:

    (i)    eighty percent (80%) of the fees requested by a Professional; and

    (ii)   one hundred percent (100%) of the expenses requested by a Professional.

(d)    In the event that there are objections to any Monthly Statement submitted by a Professional, the objecting Fee Party shall, on or before the Objection Deadline, notify the Fee Parties and the affected Professional in writing of such objection.  The objection shall specify in detail the nature and basis of the objection.  Pending resolution of such objection, the Debtor shall promptly pay to the Professional or the Professional may apply any remaining retainer, as to fees, the amount requested in the particular Monthly Statement less the greater of (i) the amount in dispute or (ii) the twenty percent holdback provided in subparagraph 19(c)(i) above and, as to expenses, the amount requested less the amount in dispute.  The Professional and the objecting Fee Party shall endeavor to amicably resolve any objection within five (5) days after the Objection Deadline.  If a resolution cannot be reached in that period, the Professional may request that the Court resolve the dispute at the next regularly scheduled fee application hearing.  The failure of any Fee Party (or other interested party with standing to object) to object to the payment of any Monthly Statement within the ten (10) day period set forth above shall not be deemed to constitute a waiver of that party's right to object to any interim or final fee application filed by any Professional or preclude any disgorgement of any fees paid.

(e)    The initial Monthly Statement shall be submitted and served in accordance with this paragraph on or before July 20, 2011, and shall cover the period

from May 3, 2011 through June 30, 2011.[1]  Thereafter, each Monthly Statement shall be submitted and served in accordance with the terms set out above.

## IV. AUTHORITY FOR RELIEF

20.    Section 331 of the Bankruptcy Code provides in relevant part:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the Court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.

11 U.S.C. § 331.

21.    Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

22.    The proposed procedures for compensating and reimbursing court-approved professionals are consistent with those established in other chapter 11 cases in this district.  The proposed procedures comply with the United States Trustee's Guidelines as stated in 28 C.F.R. Part 58, Appendix.  Such procedures are needed to avoid having professionals fund the reorganization proceeding.  *In re Int'l Horizons, Inc.*, 10 B.R. 895 (Bankr. N.D. Ga. 1981) (establishing procedures for monthly interim compensation).  Appropriate factors to consider include "the size of [the] reorganization cases, the complexity of the issues involved, and the time required on the part of the attorneys for the debtors in providing services necessary to

---

[1] In the event that the Court has not ruled on this Motion by the date that the initial Monthly Statement is due, Professionals seeking payment on an interim basis for fees and expenses incurred during this initial period shall provisionally follow the procedures outlined herein.  The Debtor, however, will not make any payment to Professionals, nor shall a Professional apply a retainer to outstanding fees or expenses until the Court enters an order approving the proposed procedure.

achieve a successful reorganization of the debtors." *Id*. at 897-98.  The Debtor submits that the procedures sought herein are appropriate in consideration of these factors.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtor requests this Court enter an order establishing procedures for interim compensation and reimbursement of expenses of professionals and grant such other and further relief as the Court may deem just and proper.

Dated:  June 21, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*
     Matthew S. Okin
     Texas Bar #00784695
     Maggie D. Conner
     Texas Bar. #24038439
     1113 Vine St., Suite 201
     Houston, TX  77002
     Tel:  713- 228-4100
     Fax:  888-865-2118
     mokin@oakllp.com
     mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system and/or *via* regular United States mail on the 21st day of June, 2011.

     */s/  Maggie D. Conner*
     Maggie D. Conner

Service List

**_United States Trustee:_**

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

**_IRS:_**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**_Counsel for RBC:_**

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

**_Counsel for First Savers Bank_**

David S. Elder
Clinton R. Snow
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
deleder@gardere.com
csnow@gardere.com

**_Receiver:_**

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

**_Property Manager:_**

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

**_Counsel for First Palmetto Bank_**

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

ORDER APPROVING PROCEDURES FOR THE INTERIM
COMPENSATION AND REIMBURSEMENT
OF EXPENSES OF PROFESSIONALS
(Relates to Docket No. ___)

Came on to be heard the Motion for Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Motion")[1], filed by KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"); the Court having reviewed the Motion and any objections thereto; it appearing to the Court that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, and 1334 and (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); the Court finding that notice of the Motion was sufficient, and having determined the requested procedures are consistent with the United States Trustee Guidelines (28 C.F.R. Part 58, Appendix) and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is **GRANTED**.

2.    The Debtor is authorized to pay Professionals on an interim basis for fees and expenses incurred during the case according to the following procedures:

---

[1] All terms not defined herein shall have the same meaning ascribed to them in the Motion.

(a)  No later than the 20th day of each calendar month following the month for which compensation and/or reimbursement is sought (the "Statement Due Date"), each Professional (other than those subject to separate Court order) retained in this case pursuant to §§ 327 and 1103 of the Bankruptcy Code seeking the interim payment of fees and reimbursement of expenses shall:

  (i)  submit an itemized monthly fee and expense statement ("Monthly Statement") in compliance with the provisions of subparagraph 2(b) below setting forth the fees and expenses for which payment is sought for the preceding month, with supporting detail; and

  (ii)  serve a copy of such Monthly Statement on the Debtor, bankruptcy counsel for the Debtor, if a committee of unsecured creditors is appointed, counsel for the committee, counsel for the Debtor's secured lenders who request that they receive copies, and the United States Trustee (collectively, the "Fee Parties").

(b)  Each Monthly Statement shall include, as an exhibit, time records that itemize services.  Monthly Statements must be actually received by the Fee Parties on or before the Statement Due Date.  Any Monthly Statement received after the Statement Due Date shall be deemed served on the Statement Due Date the following month.

(c)  The Fee Parties shall have ten (10) days from actual receipt to review each Monthly Statement.  Any objections shall be served on the Fee Parties and the affected Professional no later than ten (10) days after receipt of a Monthly Statement; provided however, that all objections must be received by the Debtor's bankruptcy counsel by the close of business on the 10th day after receipt of a Monthly Statement (the "Objection Deadline").  After such review, and except as provided in subparagraph 2(d) below, the Debtor shall pay in the ordinary course of business (typically, within ten (10) days from the Objection Deadline), or to the extent the Professional is in possession of a retainer, the Professional may apply any remaining retainer to pay:

  (i)  eighty percent (80%) of the fees requested by a Professional; and

  (ii)  one hundred percent (100%) of the expenses requested by a Professional.

(d)  In the event that there are objections to any Monthly Statement submitted by a Professional, the objecting Fee Party shall, on or before the Objection Deadline, notify the Fee Parties and the affected Professional in writing of such objection.  The objection shall specify in detail the nature and basis of the objection.  Pending resolution of such objection, the Debtor shall promptly pay to the Professional or the Professional may apply any remaining retainer, as to fees, the amount requested in the particular Monthly Statement less the greater of (i) the amount in dispute or (ii) the twenty percent holdback

provided in subparagraph 2(c)(i) above and, as to expenses, the amount requested less the amount in dispute. The Professional and the objecting Fee Party shall endeavor to amicably resolve any objection within five (5) days after the Objection Deadline. If a resolution cannot be reached in that period, the Professional may request that the Court resolve the dispute at the next regularly scheduled fee application hearing. The failure of any Fee Party (or other interested party with standing to object) to object to the payment of any Monthly Statement within the twenty (20) day period set forth above shall not be deemed to constitute a waiver of that party's right to object to any interim or final fee application filed by any Professional or preclude any disgorgement of any fees paid.

(e)     The initial Monthly Statement shall be submitted and served in accordance with this paragraph on or before July 20, 2011, and shall cover the period from May 3, 2011 through June 30, 2011.[2] Thereafter, each Monthly Statement shall be submitted and served in accordance with the terms set out above.

3.      Payments authorized pursuant to the procedure approved herein may be made by the Debtor only to the extent it has sufficient unencumbered cash and/or cash collateral budgeted for professional fees and expenses pursuant to applicable cash collateral agreements or orders of this Court.

Dated: _____, 2011

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[2] In the event that the Court has not ruled on this Motion by the date that the initial Monthly Statement is due, Professionals seeking payment on an interim basis for fees and expenses incurred during this initial period may provisionally follow the procedures outlined herein. Upon the entry of this Order, the Debtor may make payment to Professionals, and the Professionals may apply any retainers to outstanding fees or expenses in a manner consistent with the terms of this Order.

Case 11-03241-jw3991Doc Document 7407/05/let inEnterco07/05/21 18:Pagel d9Desc Main
Document     Page 677 of 824
Case 11-33991   Document 17-3   Filed in TXSB on 05/17/11   Page 1 of 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**06/22/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **CASE NO. 11-33991** |
| | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF OKIN ADAMS & KILMER LLP AS BANKRUPTCY COUNSEL TO THE DEBTOR

CAME ON FOR CONSIDERATION the Debtor's[1] Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Okin Adams & Kilmer LLP ("OAK") as Counsel for Debtor (the "Application") and the Affidavit of Matthew S. Okin submitted in support of the Application (the "Affidavit"); the Court hereby finds that based upon the representations made in the Application and the Affidavit: (i) OAK represents no interests adverse to the Debtor's estate or its creditors with respect to the matter upon which it is to be engaged; (ii) OAK is a "disinterested person" as that term is defined under § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code and as provided and disclosed in the Application and the Affidavit; and (iii) the employment of OAK is necessary and is in the best interests of the Debtor's estate; it is therefore hereby

ORDERED that the Application is **GRANTED**; and it is further

ORDERED that, in accordance with § 327(a) of the Bankruptcy Code, the Debtor is authorized to retain OAK to represent the Debtor in this case under chapter 11 of the Bankruptcy Code, effective *nunc pro tunc* as of May 3, 2011.

Dated: _____ **JUN 2 2 2011**

_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

_____
[1] All terms not defined herein shall have the same meaning ascribed in the Application.

Case 11-34241-jw39D0c Doc Document Filed 07/05/11 in Entered 07/05/11 18:Page1 of D7sc Main
Document Page 678 of 824
Case 11-33991 Document 64 Filed in TXSB on 06/14/11 Page 1 of 6

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/21/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

**SECOND STIPULATION AND ORDER**
**REGARDING RECEIVERSHIP**
[This Interim Order relates to Docket Nos. 18 and 23.]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Centura Bank ("RBC Bank"), (collectively, the "Parties") stipulate as follows:

1.  The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date").

2.  The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008. As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate. As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on

June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

3.      RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025, seeking to foreclose its mortgage and security interest and obtain a deficiency judgment.

4.      On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property").   The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to the Order of the Court of Common Pleas of Richland County, South Carolina and are managed by GREP Atlantic, L.P. (the "Property Manager").

5.      On May 18, 2011, the Debtor filed an Emergency Motion for Entry of Stipulation and Order Regarding Receivership ("Cash Usage Motion") [Docket No. 18].  In connection with the Cash Usage Motion, the Debtor and RBC entered into a Stipulation and Order Regarding Receivership ("Cash Usage Stipulation") wherein RBC agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011, but specifically reserved its right to pursue those claims for relief and others after May 31, 2011.  In exchange, the Debtor agreed not to pursue turnover in accordance with Bankruptcy Code § 543.  The Court entered the Cash Usage Stipulation on May 24, 2011 [Docket No. 23].

6.      The Parties have agreed to extend the Cash Usage Stipulation and allow further cash usage (the "Second Cash Usage Stipulation").

Case 11-03411-jw39Doc Document 07/05/ed in Entered700523/118:Page53 orc Main
Document   Page 680 of 824
Case 11-33991   Document 64   Filed in TXSB on 06/14/11   Page 3 of 6

7.      As part of the Second Cash Usage Stipulation, the Parties have agreed to extend the Cash Usage Stipulation until the hearing set in this Case on June 28, 2011 beginning at 11:30 a.m. The goal is to maintain status quo in order to preserve, protect and maintain collateral in the hands of the Receiver through and including June 28, 2011 (the "Interim Period").

8.      The Parties agree to allow the Receiver to remain in place and to continue to operate the Greenhill Apartments and to collect and distribute rents and profits therefrom pursuant to the Order entered by the Court of Common Pleas in Richland County, South Carolina and subject to an accounting by the Receiver served on the Debtor and RBC Bank.

9.      RBC agrees to cooperate in continuing to facilitate provision of information relevant to this Case to the Debtor.

10.     The Parties agree that during the Interim Period, RBC will continue to receive all excess proceeds generated through June 28, 2011 by the property after the payment of normal operating expenses.

11.     The Debtor agrees not to pursue turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543 until the hearing in this Case on June 28, 2011 beginning at 11:30 a.m.

12.     Accordingly, the Receiver has authority to use funds in which RBC Bank holds an first priority security interest ("Cash Usage"), on an interim basis, on the terms and conditions provided for in this Second Cash Usage Stipulation, *nunc pro tunc*, commencing on the Petition Date through and including June 28, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court.

Case 11-03241 jw839Doc DDocumFiled 07/05/4ed in ExtsecoO7065/311 18:P2ge54 oD7sc Main
Document   Page 681 of 824
Case 11-33991   Document 64   Filed in TXSB on 06/14/11   Page 4 of 6

13.      In addition, the Receiver and the Property Manager have authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Second Cash Usage Stipulation and any and all related orders entered by this Court. All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

14.      Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

15.      Notice is appropriate for this Second Cash Usage Stipulation.

16.      Pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, this Second Cash Usage Stipulation is an Interim Order and will remain in effect pending the hearing set in this Case on June 28, 2011 beginning at 11:30 a.m.

17.      Nothing in this Second Cash Usage Stipulation shall preclude RBC Bank, First Savers Bank ("First Savers"), First Palmetto Savings Bank ("First Palmetto") or the U.S. Trustee from (i) seeking to transfer venue of this Case, and/or (ii) asserting that rents and profits from the Greenhill Apartments are not property of the estate, after the expiration of the Interim Period.

18.      Nothing in this Second Cash Usage Stipulation shall preclude the Debtor from (i) seeking turnover of assets pursuant to, *inter alia*, Bankruptcy Code § 543, and/or (ii) seeking

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393 (Held by the Property Manager)

termination of the Receivership, following the termination of the Interim Period.

19.    Nothing in this Second Cash Usage Stipulation shall constitute a determination of the existence, validity, or priority of any prepetition security interest or lien of RBC, First Savers or First Palmetto, or any other party in interest, nor shall the positions of the Debtor reflected in this Second Cash Usage Stipulation be construed as admissions of any factual or legal issues between such parties.  This Second Cash Usage Stipulation shall not affect the rights of any party under applicable bankruptcy or nonbankruptcy law as such may relate to the Cash Usage Motion's request for subsequent cash usage orders.

20.    The entry of this Second Cash Usage Stipulation shall not prejudice or limit the rights of the Debtor, RBC Bank or any other party in interest to seek additional relief with respect to Cash Usage or for adequate protection. This Second Cash Usage Stipulation shall not limit or otherwise alter the rights of the Debtor or other parties in interest, except to the limited extent specifically provided for herein.

APPROVED AND ENTRY REQUESTED:

By: /s/ Joseph G. Epstein
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740
Fax:  713.650.2400

**COUNSEL FOR RBC BANK**

By: /s/ Maggie D. Conner
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713.228.4100
Fax:  888.865.2118

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

Case 11-34241-jw39 9Doc Document  Filed 07/05/11 in Entered 07/06/53/11 18:Page56 oDesc Main
Document   Page 683 of 824
Case 11-33991   Document 64   Filed in TXSB on 06/14/11   Page 6 of 6

APPROVED AS TO FORM:

By: /s/ David S. Elder                          By: /s/ Shari L. Heyen
David S. Elder                                  Shari L. Heyen
Clinton R. Snow                                 **GREENBERG TRAURIG, LLP**
**GARDERE WYNNE SEWELL LLP**                    1000 Louisiana, Suite 1700
1000 Louisiana, Suite 3400                      Houston, Texas 77002
Houston, Texas 77002-5011                       Tel: 713.374.3500
Tel: 713.276.5750                               Fax: 713.374.3505
Fax: 713.276.6750
                                                **COUNSEL FOR FIRST PALMETTO**
**COUNSEL FOR FIRST SAVERS BANK**               **SAVINGS BANK, FSB**


By: /s/ Ellen M. Hickman
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Tel: 713.718.4650
Fax:713.718.4670

**COUNSEL FOR THE U.S. TRUSTEE**


The above *Second Stipulation and Order Authorizing Interim Cash Usage* is approved

and its terms are so ORDERED.

### JUN 2 1 2011

Signed this _____ day of _____, 2011.

HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court
Southern District of Texas

In re:                                                                    Case No. 11-33991-lzp
KT Spears Creek, LLC                                                       Chapter 11
          Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod              Page 1 of 1          Date Rcvd: Jun 21, 2011
                             Form ID: pdf002         Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 23, 2011.
db          +KT Spears Creek, LLC,    5410 Piping Rock,    Houston, TX 77056-4916
aty         +Joseph G. Epstein,   Winstead PC,   JPMorgan Chase Tower,    600 Travis Street,    Suite 1100,
             Houston, TX 77002-3030
cr          +First Palmetto Savings Bank, F.S.B.,    c/o Shari L. Heyen,    Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,    Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                  TOTAL: 0

              ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr            First Savers Bank
intp          RBC Bank (USA)
                                                                          TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jun 23, 2011                    Signature:    _Joseph Speetjens_

Case 11-34241-jw39Doc Document Filed 07/05/11 in Entered 07/05/31 18:12:51 Desc Main
Document Page 685 of 824
Case 11-33991 Document 65 Filed in TXSB on 06/14/11 Page 1 of 5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**06/21/2011**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING
THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING,
AND (II) SCHEDULING FINAL HEARING**
(This Order relates to Docket No. 28.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the

"Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§

105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

      (a)      authorization for the Debtor to borrow up to $100,000.00 (but only up to $20,000.00 in the Interim Period (defined below)) in principal amount of post-petition financing (the "DIP Financing");

      (b)      authorization for the Debtor's execution of the DIP Credit Agreement, to perform such other and further acts as may be necessary or appropriate in connection therewith;

      (c)      authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Credit Agreement upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion; and

      (d)      the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this DIP Motion to become effective pursuant to the Final Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

Case 11-33411-jw39Doc Ddocumfiled 07/05/ed inEnt6rec 07/05/31 18:P2g452 dDesc Main
Document Page 686 of 824
Case 11-33991 Document 65 Filed in TXSB on 06/14/11 Page 2 of 5

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Final Hearing.*  A final hearing on the DIP Motion shall be held on June 28, 2011, at 11:30 a.m. before this Court, in Courtroom 401, at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.  Objections to the DIP Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before 5 : 00 P .m. (prevailing Central Time) on June 24, 2011.

2.    *Disposition/Jurisdiction.*  The DIP Motion is granted on an interim basis but only in accordance with the terms of this interim order (the "Interim Order").  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.    *Notice.*  Notice of the DIP Motion, the relief requested herein and the Interim Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4.    *Findings Regarding the DIP Loan.*  These findings of fact are made on an interim basis and are without prejudice to any party in interest to object to these findings of fact, the DIP Financing and/or the DIP Credit Agreement on a final basis.

-2-

(a)    Sufficient cause has been shown for entry of this Interim Order.

(b)    The Debtor asserts that it has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process.  The Debtor asserts that the DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate

(c)    The Debtor asserts that it is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement.

(d)    The Debtor asserts that the DIP Credit Agreement has been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to DIP Credit Agreement, owing to the Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

(e)    The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the relief sought by this Interim Order, the Debtor asserts that the Debtor's estate will be immediately and irreparably harmed, and thus, consummation of the DIP Loan in accordance with this Interim Order is in the best interest of the Debtor's estate.

5.    *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

(a)    The Debtor is hereby authorized to borrow on an interim basis up to an aggregate principal amount of $20,000.00, in accordance with the terms of this Interim Order.

(b)    This will be an unsecured advance to the Debtor by the DIP Lender.

(c)    Upon execution and delivery of the DIP Credit Agreement, the DIP Credit Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor, but only in accordance with the terms of this Interim Order.

-3-

Case 11-03241 j-839D oc Document 72/05/11 in Entered 07/05/11 18:P2g 54 0 Desc Main
Document Page 688 of 824
Case 11-33991 Document 65 Filed in TXSB on 06/14/11 Page 4 of 5

6.     *Use of DIP Loan Proceeds.*  The Debtor shall use the proceeds of the DIP Loan

solely as provided by the DIP Credit Agreement and this Interim Order and in accordance with

the attached budget.

7.     *Retention of Jurisdiction.*  This Court shall retain jurisdiction to enforce the

provisions of this Interim Order.

8.     Entry of this Order is without prejudice to the rights of any secured party,

including but not limited to First Palmetto Savings Bank, FSB, First Savers Bank, and RBC

Bank (USA); any objections of any party to the proposed DIP Financing and DIP Credit

Agreement are not waived and are hereby expressly preserved.

APPROVED AND ENTRY REQUESTED:

By:*/s/ Joseph G. Epstein*
Constance L. Young
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628

Joseph G. Epstein
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740
Fax:  713.650.2400

**COUNSEL FOR RBC BANK**

By:*/s/ Maggie D. Conner*
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
**OKIN ADAMS & KILMER LLP**
1113 Vine St., Suite 201
Houston, TX  77002
Tel:  713.228.4100
Fax:  888.865.2118

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

Case 11-34241-jw39D0c Document 77/05/ed in Extecd 07/05/31 18:Page55 Desc Main
Document   Page 689 of 824
Case 11-33991   Document 65   Filed in TXSB on 06/14/11   Page 5 of 5

APPROVED AS TO FORM:


By:/s/ David S. Elder
David S. Elder
Clinton R. Snow
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
Tel: 713.276.5750
Fax: 713.276.6750

**COUNSEL FOR FIRST SAVERS BANK**


By:/s/ Shari L. Heyen
Shari L. Heyen
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505

**COUNSEL FOR FIRST PALMETTO
SAVINGS BANK, FSB**


By:/s/ Ellen M. Hickman
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Tel: 713.718.4650
Fax:713.718.4670

**COUNSEL FOR THE U.S. TRUSTEE**



SIGNED THIS ___ day of June, 2011.

**JUN 2 1 2011**

HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

## KT Spears Creek DIP Loan Budget
### Wednesday, June 01, 2011

| | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | |
| Chiron Equities DIP Loan | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | 95,000 |
| **Total Revenue** | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | 95,000 |
| | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | |
| Legal Fees (Okin, Adams, Kilmer) | - | - | - | 15,000 | - | - | - | - | 20,000 | - | - | - | - | 35,000 |
| Sales Marketing/Advertising/Brokerage Fees | - | - | 6,000 | - | - | - | 6,000 | - | - | - | 6,000 | - | - | 18,000 |
| General & Administrative Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,300 |
| Travel Costs | - | - | - | - | - | 2,000 | - | - | 800 | - | - | - | - | 2,800 |
| Professional Reports | - | - | - | 4,000 | - | - | 8,000 | - | - | - | - | - | - | 12,000 |
| Anticipated Loan Due Diligence Fee | - | - | - | - | - | 20,000 | - | - | - | - | - | - | - | 20,000 |
| Quarterly Trustee Fees | - | - | - | 4,750 | - | - | - | - | - | - | - | - | - | 4,750 |
| **Total Expenses** | 100 | 100 | 6,100 | 23,850 | 100 | 22,100 | 14,100 | 100 | 20,900 | 100 | 6,100 | 100 | 100 | 93,850 |
| | | | | | | | | | | | | | | |
| Net Cash Remaining | 9,900 | 9,800 | 3,700 | 4,850 | 4,750 | 2,650 | 3,550 | 3,450 | 2,550 | 2,450 | 1,350 | 1,250 | 1,150 | 1,150 |

United States Bankruptcy Court
Southern District of Texas

In re:                                                                    Case No. 11-33991-lzp
KT Spears Creek, LLC                                                      Chapter 11
            Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod              Page 1 of 1          Date Rcvd: Jun 21, 2011
                              Form ID: pdf002         Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 23, 2011.
db           +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
aty          +Joseph G. Epstein,   Winstead PC,   JPMorgan Chase Tower,   600 Travis Street,   Suite 1100,
              Houston, TX 77002-3030
cr           +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
              1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                              TOTAL: 0

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr            First Savers Bank
intp          RBC Bank (USA)
                                                                         TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 23, 2011**                          **Signature:**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |

### DEBTOR'S RESPONSE TO MOTION TO DISMISS FOR BAD FAITH FILING AND FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1406(a) AND § 1408

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed attorneys, hereby files this Debtor's Response (the "Response") to Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408 (the "Motion"), and, in support thereof, would respectfully show this Court as follows:

### I.  JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.     This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 362, 363, 364(c)(3), and 364(e) and Bankruptcy Rules 2002, 4001, and 9014.

2.     On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this Response, no official committee of unsecured creditors has been appointed.

5.      On June 1, 2011, RBC Centura Bank ("RBC Bank") filed the Motion seeking to dismiss this Case.  [Docket No. 25.]  On June 8, 2011, First Savers Bank ("First Savers") filed a joinder, and on June 10, 2011, First Palmetto Savings Bank ("First Palmetto") filed a response (collectively, the "Joinders").  [Docket Nos. 46 and 54.]

## II.  FACTUAL BACKGROUND

### A.      The Debtor's Business and Real Property

6.      The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

7.      The Debtor's assets include, *inter alia*, three real estate holdings (the "Projects"). One of these real estate holdings includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

### B.      Secured Credit Facilities

### RBC Bank

8.      The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Bank in the original

-2-

principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

9.      As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

10.      As of the Petition Date, the Debtor's obligation under the RBC Bank Note was approximately $22,646,397.88.

**First Savers**

11.      The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers, a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property located near Columbia, South Carolina.

12.      As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

**First Palmetto**

13.      The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto entered into in 2006 and secured by interests in approximately 7 acres of

-3-

undeveloped commercial real property located near Pontiac, South Carolina.

14.     As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

## C.     The Receivership and Foreclosure Action

15.     RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

16.     On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "Property Manager").

17.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment"). Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

## D.     Factors Leading to Bankruptcy

18.     As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection. Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

## III. ARGUMENT AND AUTHORITIES

**A.**     **Because Venue Is Proper in the Southern District of Texas, RBC's Motion to Dismiss Should Be Denied.**

19.     Pursuant to 28 U.S.C. § 1408(1), the Southern District of Texas, Houston Division is unequivocally a proper venue for this Case.  Section 1408(1) provides that venue is proper in any district:

> . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for one hundred and eighty-days immediately preceding such commencement . . . .

28 U.S.C. § 1408(1).

20.     Because the Debtor's **principle place of business** has been located in Houston, Texas for approximately seven (7) years, according to section 1408(1), the Southern District of Texas constitutes a proper venue for this Case.  All of the Debtor's key business operations and decisions are based in Houston, Texas, including pre-developing and developing the various projects, marketing the various properties to potential tenants, interviewing real estate brokers, and seeking financing.  In addition, the Debtor's sole member, Kyle D. Tauch, resides in Houston, Texas.  As the Debtor's sole member, Mr. Tauch's participation in this Case, including appearing and testifying at the initial debtor's conference, the section 341 meeting and all hearings to date, is essential. Requiring Mr. Tauch to travel to another venue would not only be impractical and burdensome but would also impose significant and unnecessary expense on the estate.  Adjudicating this Case here in the Southern District of Texas minimizes costs and burden on the estate.  Furthermore, the Debtor has an active unsecured creditor located within this venue that deserves a local, cost-effective forum.   Indeed, both counsel for and a business representative of local creditor IES Residential, Inc. have begun actively participating in this Case by attending the meeting of the creditors.

21.    RBC attempts to show that the Southern District of Texas is not a proper venue because the Greenhill Apartments have been in receivership and Mr. Tauch has not been in control of the Debtor's operations.  This argument fails for multiple reasons.  First, the Debtor was not placed into receivership; instead, only one of the Debtors several projects was placed into receivership.  Second, Mr. Tauch operates the Debtor's business here in Houston, Texas, including pre-developing and developing the various projects, marketing the various properties to potential tenants, interviewing real estate brokers, and seeking financing.  In addition, the Debtor's books and records are located in Houston, Texas.  In sum, all of the Debtor's key management decisions and business activities are based in Houston, Texas.

22.    Notably, RBC did not file a motion to transfer venue.  Rather, RBC filed a motion to dismiss based upon grounds including improper venue.  Accordingly, the question before this Court is whether the Southern District of Texas constitutes a proper venue for this Case and not whether the Southern District of Texas is more or less convenient than any other potential venue is not before this Court.  To the extent the Motion or the Joinders suggest the alternative relief of transferring the Case, the burden rest upon the proponents to establish "good cause" and transfer is wholly unwarranted.  *Longhorn Partners Pipeline, L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 98-99 (Bankr. S.D. Tex. 2009).

> To prevail, "[t]he party seeking transfer . . . must establish not merely that the existing forum is inconvenient, but that the balance of convenience weighs clearly and substantially in favor of the proposed transfer." *In re Amer. Int'l Airways, Inc.*, 66 B.R. 642, 644 (Bankr. E.D. Pa. 1986).  "Where a transfer would merely shift the inconvenience from one party to the other or where after balancing all factors, the equities lean but slightly in favor of the movant, the  . . . choice of forum should not be disturbed." *Id.*

*Askanase v. Fatjo*, Case No. 91-3140, 1993 WL 2086882, at *5 (S.D. Tex. Apr. 22, 1993).  Based upon, *inter alia*, the location of the Debtor's principal and witness, books and records, and active unsecured creditor, transfer would be inefficient and would inflict substantial expense and

-6-

burden on the estate.  For all of these reasons, Houston, Texas is a convenient, efficient and proper venue for this Case.

**B.**     **Because the Debtor Filed Its Bankruptcy Petition in Good Faith, RBC's Motion to Dismiss Should Be Denied**

23.     The Debtor filed the petition commencing this chapter 11 Case based upon factors, including, *inter alia*, the tightening of credit markets and the Foreclosure Judgment. There are two main goals of bankruptcy: (1) a respite and fresh start for the debtor, and (2) the satisfaction of valid claims.  *In re T–H New Orleans Ltd. P'ship*, 188 B.R. 799, 807 (E.D.La.1995), *aff'd*, 116 F.3d 790 (5th Cir.1997).  In this Case, the Debtor sought bankruptcy protection to facilitate reorganization and to maximize the value of its assets through pre-development and development of its multiple real estate holdings for the benefit of its creditors.

24.     In considering whether a debtor has filed a case in good faith, courts have examined the following non-exhaustive factors:

   a.   the debtor has only one primary asset;

   b.   liens encumber the debtor's primary asset;

   c.   there are no employees, except for the principals;

   d.   the debtor has little or no cash flow to sustain a reorganization plan or to make adequate-protection payments;

   e.   there are few unsecured creditors, whose claims are relatively small;

   f.   the debtor's primary asset was posted for foreclosure and the debtor has been unsuccessful defending against foreclosure actions in state court; and

   g.   bankruptcy offers the only possibility of forestalling loss of the property.

*See, e.g., Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986).  In addition to considering these factors, "determining

-7-

whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id*. at 1072. A number of courts have employed a "valid bankruptcy purpose" test to evaluate good faith. *See, e.g., In re Mirant Corp.*, Case NO. 03-46590-DML-11, 2005 WL 2148362 at *3 (Bankr. N.D. Tex. Jan. 26, 2005).

25.     The first factor—whether the debtor has only one primary asset—weighs in favor of good faith. The Debtor owns five (5) separate tracts of land that comprise three (3) separate real estate holdings (the "Projects"). Each of these three (3) Projects was purchased at different times and financed by different secured lenders. Further, each of the Debtor's three (3) Projects constitute different types of property, including those for varied residential and commercial purposes. Accordingly, the Debtor's multiple, varied Projects support a finding of good faith.

26.     The second factor also weighs in favor of good faith. There exists significant equity in the Debtor's Projects. This supports a finding of good faith.

27.     Although the Debtor presently has no employees, this fact cannot overcome the Debtor's good faith filing. As the Debtor pre-develops and develops the Projects, it will be necessary to engage the services of various persons.

28.     The Debtor's cash flow and ability to provide adequate protection support a finding of good faith. The secured lenders in this case are adequately protected by, *inter alia*, the equity in the Debtor's Projects. In addition, the Greenhill Apartments produce revenue that is more than sufficient to service RBC Bank's debt. Further, subject to final approval, the Debtor has obtained DIP financing to cover business costs and costs of this Case. Proceeds of the Debtor's assets will not be reduced by this Case. Accordingly, a finding of good faith is appropriate.

29.     Although the Debtor has a relatively small number of unsecured creditors, the creditors actively participating in this Case are located within and/or have counsel in the Southern District of Texas.  Therefore, this factor weighs in favor of good faith.

30.     Regarding the next factor, only some and not all of the Debtor's properties have been subject to foreclosure proceedings.  In fact, there exists substantial equity in the Debtor's real estate holdings.   This favors the Debtor's bankruptcy filing for the purpose of pre-developing and developing its real estate holdings to maximize the value of these assets.

31.     Considering the last factor, filing this Case was necessary to prevent the Debtor's loss of a key, partially-developed, profit-generating property.   Retaining the Greenhill Apartments and developing the second phase of apartments as planned will unlock value already invested in this project.  In developing the Greenhill Apartments, the Debtor invested in common assets, including the office and club house, which will be shared by the second phase of apartments.   Developing the second phase of apartments and utilizing the existing common assets will increase the value realized from the Debtor's current investment in this project.  The Debtor's bankruptcy filing to allow reorganization and further development of its properties was the result of a good faith business decision.

32.     As set forth above, these factors support a finding that the Debtor filed this Case in good faith. Moreover, it is clear that the Debtor has a "valid bankruptcy purpose" of reorganizing and maximizing the value of its assets through pre-development and development of its multiple real estate holdings for the benefit of its creditors.

WHEREFORE, premises considered, the Debtor requests that this Court: (a) deny the Motion and the Joinders in their entirety; and, (b) grant such other and further relief as the Court may deem just and proper.

Dated:  June 24, 2011.

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*_____
   Matthew S. Okin
   Texas Bar #00784695
   Maggie D. Conner
   Texas Bar. #24038439
   1113 Vine St., Suite 201
   Houston, TX  77002
   Tel:  713- 228-4100
   Fax:  888-865-2118
   mokin@oakllp.com
   mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system and/or *via* regular United States mail on the 24th day of June, 2011.

*/s/  Maggie D. Conner*_____
Maggie D. Conner

Service List

***United States Trustee:***

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

***IRS:***

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

***Counsel for RBC:***

Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

***Counsel for First Savers Bank***

David S. Elder
Clinton R. Snow
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
deleder@gardere.com
csnow@gardere.com

***Receiver:***

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

***Property Manager:***

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

***Counsel for First Palmetto Bank***

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

## PROPOSED ORDER DENYING
## MOTION TO DISMISS FOR BAD FAITH FILING AND FOR
## <u>IMPROPER VENUE PURSUANT TO 29 U.S.C. § 1406(A) AND § 1408</u>
### (This Order Relates to Docket No. 25.)

Came on for consideration RBC Bank (USA)'s Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408 [Docket No. 25] (the "<u>Motion to Dismiss</u>").  The Court, after considering the Motion to Dismiss, the joinder and response thereto, and any arguments, hereby finds that the Motion to Dismiss should be denied; therefore, it is

**ORDERED** that the Motion to Dismiss is **DENIED** in its entirety.

Dated: _____, 2011.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

Case 11-34241-jw9399oc DocumeFiled 07/05/led in ExteeoO 7/05/4/118:Pagk51 dDesc Main
Document    Page 705 of 824
Case 11-33991   Document 17-3   Filed in TXSB on 05/17/11   Page 1 of 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**06/22/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

### ORDER AUTHORIZING THE RETENTION AND
### EMPLOYMENT OF OKIN ADAMS & KILMER LLP AS
### BANKRUPTCY COUNSEL TO THE DEBTOR

CAME ON FOR CONSIDERATION the Debtor's[1] Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Okin Adams & Kilmer LLP ("OAK") as Counsel for Debtor (the "Application") and the Affidavit of Matthew S. Okin submitted in support of the Application (the "Affidavit"); the Court hereby finds that based upon the representations made in the Application and the Affidavit: (i) OAK represents no interests adverse to the Debtor's estate or its creditors with respect to the matter upon which it is to be engaged; (ii) OAK is a "disinterested person" as that term is defined under § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code and as provided and disclosed in the Application and the Affidavit; and (iii) the employment of OAK is necessary and is in the best interests of the Debtor's estate; it is therefore hereby

ORDERED that the Application is **GRANTED**; and it is further

ORDERED that, in accordance with § 327(a) of the Bankruptcy Code, the Debtor is authorized to retain OAK to represent the Debtor in this case under chapter 11 of the Bankruptcy Code, effective *nunc pro tunc* as of May 3, 2011.

Dated: _____ **JUN 2 2 2011** .

HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[1] All terms not defined herein shall have the same meaning ascribed in the Application.

United States Bankruptcy Court
Southern District of Texas

In re:                                                              Case No. 11-33991-lzp
KT Spears Creek, LLC                                                Chapter 11
         Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod           Page 1 of 1          Date Rcvd: Jun 22, 2011
                             Form ID: pdf002       Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 24, 2011.
db           +KT Spears Creek, LLC,    5410 Piping Rock,    Houston, TX 77056-4916
aty          +Joseph G. Epstein,   Winstead PC,   JPMorgan Chase Tower,    600 Travis Street,    Suite 1100,
              Houston, TX 77002-3030
cr           +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,    Greenberg Traurig, LLP,
              1000 Louisiana Street, Suite 1700,    Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                         TOTAL: 0

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr            First Savers Bank
intp          RBC Bank (USA)
                                                                     TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 24, 2011**                    **Signature:**    _Joseph Speetjens_

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

### DEBTOR'S RESPONSE TO MOTION TO DESIGNATE CASE AS
### SIGNLE ASSET REAL ESTATE CASE PURSUANT TO 11 U.S.C. § 101(51B)
#### (Relates to Doc. No. 26)

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), by and through its undersigned attorneys, hereby files this Debtor's Response to Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11. U.S.C. § 101(51B) (the "Response"), and, in support thereof, would respectfully show this Court as follows:

### I.  JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this Response, no official committee of unsecured creditors has been appointed.

## II.  FACTUAL BACKGROUND

### A.    The Debtor's Business and Real Property

5.    The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas.  Kyle D. Tauch is the sole member of the Debtor and resides in Houston, Texas.  The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

6.    The Debtor's assets include, *inter alia*, three (3) real estate holdings (the "Projects").  One of these real estate holdings includes an operating apartment complex and an additional area on which a second apartment complex may be constructed.  The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied.  The Debtor's remaining two (2) real estate holdings are comprised of undeveloped commercial land.

### B.    Secured Credit Facilities

### RBC Bank

7.    The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum.  The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

8.    As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments.  The Mortgage, Assignment of Rents and

Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register

of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

9.      As of the Petition Date, the Debtor's obligation under the RBC Bank Note was

approximately $22,646,397.88.

**First Savers**

10.      The Debtor is also the borrower under that certain Loan Agreement dated as of

December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank

("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of

$6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment,

Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately

65 acres of undeveloped commercial real property located near Columbia, South Carolina.

11.      As of the Petition Date, the Debtor's obligation under the First Savers Loan

Agreement was approximately $6,300,000.00.

**First Palmetto**

12.      The Debtor is also the borrower under a loan agreement between the Debtor and

First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in

approximately 7 acres of undeveloped commercial real property located near Pontiac, South

Carolina.

13.      As of the Petition Date, the Debtor's obligation to First Palmetto was

approximately $870,000.00.

**C.      The Receivership and Foreclosure Action**

14.      RBC Bank filed a lawsuit against the Debtor and additional defendants in the

Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas")

-3-

styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

15.     On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "Property Manager").

16.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment"). Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

**D.     Factors Leading to Bankruptcy**

17.     As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection. Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

**E.     Procedural History**

18.     On June 1, 2011, RBC Bank filed its Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. §101(51B) ("Motion to Designate") (Docket No. 26).

19.     On June 10, 2011, First Palmetto filed its First Palmetto Savings Bank, Response In Support of the Motion to Designate as a Single Asset Real estate Case (the "Supporting Response") (Docket No. 53).

20.     The Debtor now files this Reponse to the Motion to Designate, and in turn, the Supporting Response.

### III.  RESPONSE

21.     Section 101(51B) of the Bankruptcy Code provides:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

22.     To be considered a "single asset real estate" debtor, all three (3) of the following requirements must be met:

> a.    The debtor must have real property constituting a single property or project (other than residential property with fewer than 4 residential units),
>
> b.    Which generates substantially all of the gross income of the debtor, and
>
> c.    On which no substantial business is being conducted other than the business of operating the real property and activities incidental.

*In re Scotia Pac. Co., LLC*, 508 F.3d 214, 220 (5th Cir. 2007).

23.     In this Case, the Debtor cannot qualify as a single asset real estate debtor because it holds multiple properties and projects for varied purposes.   The Debtor owns five (5) separate tracts of land that comprise three (3) separate real estate holdings (the "Projects").[1]   Each of these three (3) Projects was purchased at different times and financed by different secured lenders.  Further, each of the Debtor's three (3) Projects constitute different types of property, including those for varied residential and commercial purposes.  To constitute a single project, a debtor's multiple properties must share a common purpose, such as a row of semi-detached house.  *See In re The McGreals*, 201 B.R. 736, 742 (Bankr. E.D. Pa. 1996); *In re Philmont Dev.*

---

[1] See Exhibits 1 through 5 describing the Debtor's three (3) projects and five (5) properties.

*Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995).  Here, two (2) of the Debtor's properties share a common plan for two (2) related apartment buildings that will share community spaces, including a club house.  The remaining three (3) properties comprise two (2) separate Projects for different types of commercial use.

24.     In addition, the Debtor cannot qualify as a single asset real estate debtor because substantially all of its gross income is derived from the entrepreneurial efforts of its sole member and not from a single passive property.  Furthermore, substantial business is being conducted other than the business of operating the real property and activities incidental.  To be a single asset real estate Debtor, "the revenues received by the [debtor] must be passive in nature; the [debtor] must not be conducting any active business, other than merely operating the real property and activities incidental thereto."  *Ad Hoc Group of Timber Noteholders v. The Pac. Lumber Co., et al.* (*In re Scotia Pac. Co.*), 508 F.3d 214, 221 (5th Cir. 2007).  In the instant Case, the Debtor's business activities include more than simply the passive collection of rents from the Greenhill Apartments.  Rather, the Debtor's business operations include, *inter alia*, pre-developing and developing the various Projects for distinct residential and commercial purposes, marketing the various properties to potential tenants, interviewing real estate brokers, and seeking financing.

25.     Because the Debtor holds five (5) properties comprising at least three (3) separate Projects with distinct purposes; derives income from the entrepreneurial efforts of its sole member and not simply the passive collection of rents; and engages in multifaceted business operations, it cannot qualify as a single asset real estate debtor.

-6-

WHEREFORE, premises considered, the Debtor request that this Court: (a) deny the

Motion to Designate and the Supporting Response in their entirety; and, (b) grant such other and

further relief as the Court may deem just and proper.

Dated: June 25, 2011.

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**


By: */s/  Maggie D. Conner*
      Matthew S. Okin
      Texas Bar #00784695
      Maggie D. Conner
      Texas Bar. #24038439
      1113 Vine St., Suite 201
      Houston, TX  77002
      Tel:  713- 228-4100
      Fax:  888-865-2118
      mokin@oakllp.com
      mconner@oakllp.com

**ATTORNEYS FOR THE DEBTOR**


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system on the 25th day of June, 2011 and/or *via* regular United States mail on the 27th day of June, 2011.

*/s/  Maggie D. Conner*
Maggie D. Conner

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 1

Description:                    Approximately 30 acres, including apartment homes.
                               Greenhill Parish Crossing Apartment Homes
                               10682 Two North Road
                               Elgin, South Carolina  29045
                               See attached Schedule A-1

Date of Purchase/Loan:         May 25, 2006

Lender:                        RBC Centura Bank

Value:                         Unknown

Alleged Secured Claim:         $22,646,397.88

# SCHEDULE A-1

# PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL
HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST,
A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND)
ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY
DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY
SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF
33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W
HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC
LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO
A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 81°49'37"
WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING
ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00
FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37"
EAST 34.85 FEET TO A #5 REBAR (SET);THENCE CONTINUING ALONG SAID R/W
SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL
DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A
CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A CALCULATED POINT ;
THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A
CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51
FEET TO A CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE
OF 100.67 FEET TO A CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A
DISTANCE OF 25.51 FEET TO A CALCULATED POINT; THENCE NORTH 61°03'52"
WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH
14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT;
THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR
(FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF
69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE
OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A
DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A
#5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W NORTH 72°00'37"
EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W NORTH 71°54'05" EAST, A DISTANCE OF 5.80
FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF
104.64 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A
DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17"
EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH
75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#: A portion of 25800-03-05 and 25900-04-04

Derivation: Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

## PHASE II PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59" EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND; THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03" EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 2

Description:            Approximately 65 acres, undeveloped
                       See attached Schedule A-2

Date of Purchase/Loan:  December 21, 2007

Lender:                First Savers Bank

Value:                 $11,000,000.00

Alleged Secured Claim:  $6,300,000.00

Case 10-04241-lbr99 Doc 1 Document 797-5 Filed in TXSB 07/05/11 18:12:15 Page 2 Desc Main
Case 11-33991 Document 121 Filed in TXSB on 05/17/11 Page 8 of 32
Document Page 720 of 824

# SCHEDULE A-2

## LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION: Deed from DAK I, LLC to K T Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| Debtor. | § | **(Chapter 11)** |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 3

Description:            Approximately 7 acres, undeveloped
                       See attached Schedule A-3

Date of Purchase/Loan:  2006

Lender:                First Palmetto Savings Bank

Value:                 $1,800,000.00

Alleged Secured Claim:  $870,000.00

# SCHEDULE A-3

Case 10-04241-jw99 Doc 1 Document Filed 07/05/11d in Entered 07/05/11 18:12:16 3 Desc Main
Case 11-33991 Document 14 Filed in TXSB on 06/17/11 Page 11 of 32
Document Page 724 of 824

6.28

EXHIBIT A

LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28-2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland, State of South Carolina containing 6.28 acres, more or less, and shown on boundary survey prepared for K. T. Spears Creek LLC, prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S. No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079, at page 572, and having the following metes and bounds to wit: BEGINNING at a point located at the intersection of U. S. Highway No 1 and Old National Highway and running in a southeasterly direction along Old National Highway S 50°27'26" a distance of 426.96 feet to a point; thence turning and running in a southwesterly direction S81°04'18"W a distance of 242.18 feet to a point; thence S78°40'38"W a distance of 809.15 feet to a point; thence turning and running in a northwesterly direction N11°19'22"W a distance of 268.21 feet to a point; thence turning and running in a northeasterly direction N74°48'34"E a distance of 783.43 feet to the point and place of Beginning.

DERIVATION: An undivided one-half interest to Virginia R. Monroe from G. P. Monroe, Jr. by deed dated December 29, 1997 and recorded December 30, 1997 in the Office of the Register of Deeds for Richland County in Deed Book 1425, at page 688; and Deed to G. P. Monroe, Jr. from J. L. Rogers dated April 26, 1960 and recorded April 28, 1960 in the Office of the Clerk of Court (n/k/a Register of Deeds) for Richland County in Volume 273, at page 374.

TMS No.: Portion of 25900-04-04

NPCOL1:787401.1-DE-(IMM) 035873-00001

**EXHIBIT "A"**    1,08

**LEGAL DESCRIPTION**

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E. F. Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43, at page 812. Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

DERIVATION: Quitclaim Deed to Dorothy W. Hudson from Joe Q. Hudson dated September 14, 1999 and recorded September 28, 1999 in the Office of the Register of Deeds for Richland County, South Carolina in Record Book 348, at page 1216.

TMS NO.: 25800-03-04

NPCOL1:1272286.1-DE-(IMM) 035873-00002

Richland County Map

From richlandmaps.com

# Richland County Map



From richland maps. com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |

**PROPOSED ORDER DENYING
MOTION TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE
CASE PURSUANT TO 11 U.S.C. § 101(51B)**

**(This Order Relates to Docket No. 26.)**

Came on for consideration RBC Bank (USA)'s Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. § 10151(B) [Docket No. 26] (the "Motion").  The Court, after considering the Motion, the response thereto, and any arguments, hereby finds that the Motion should be denied; therefore, it is

**ORDERED** that the Motion is **DENIED** in its entirety.

Dated: _____, 2011.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**06/27/2011**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| KT SPEARS CREEK, LLC, | ) | CASE NO. 11-33991-H3-11 |
| | ) | |
| Debtor, | ) | |

<u>ORDER SETTING AND RESETTING HEARINGS</u>

The court has previously set a hearing for June 28, 2011, at 11:30 a.m., in Courtroom 401, 515 Rusk, Houston, Texas, on the "Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408" (Docket No. 25) filed by RBC Bank, the "Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. § 101(51B)" (Docket No. 26) filed by RBC Bank, "Debtor's Emergency Motion for Interim and Final Orders Approving Use of Cash Collateral" (Docket No. 27), the "Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 And Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor To Obtain Post-petition Secured Financing, (II) Granting Security Interests, and (III) Scheduling Final Hearing" (Docket No. 28) filed by Debtor, and the "Emergency Motion for Turnover of Property and Request for Accounting" (Docket No. 31) filed by Debtor.  First Savers Bank and First Palmetto Savings Bank have joined in the motion to dismiss, or alternatively seek transfer of venue.

The parties having advised that they anticipate that the hearing on the instant motions may be lengthy, the hearing set on June 28, 2011 at 11:30 a.m. is limited to the issues relating to venue.  The remainder of the issues will be set for hearing on either June 29, 2011 or June 30, 2011, subject to this court's determination as to venue.

SO ORDERED.

Signed at Houston, Texas on June 27, 2011.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| Debtor. | § | **(Chapter 11)** |
| | § | |

| | |
|---|---|
| § | **Hearing Date:   June 28, 2011, 11:30 a.m.** |
| § | |
| § | **Judge:   The Honorable Letitia Z. Paul** |
| § | |
| § | **Attorneys:  Matthew S. Okin** |
| § | **Maggie D. Conner** |

## WITNESS & EXHIBIT LIST FOR
## HEARING ON JUNE 28, 2011 AT 11:30 A.M. CT

**WITNESS:**

| Ws No. | Name | Title | Nature of Testimony | Time Estimate |
|---|---|---|---|---|
| 1 | Kyle D. Tauch | Debtor's Sole Member | Mr. Tauch will testify regarding matters including, but not limited to, the Debtor's (a) business operations; (b) budgets; and, (c) need for use of cash collateral and DIP financing. | 15 Minutes |

**EXHIBITS:**

| Ex. No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Real Property Description No. 1 | | | | |
| 2 | Real Property Description No. 2 | | | | |
| 3 | Real Property Description No. 3 | | | | |
| 4 | Map of Debtor's Real Property - Color | | | | |
| 5 | Map of Debtor's Real Property – Lender Delineations | | | | |
| 6 | KT Spears Creek DIP Credit Agreement | | | | |

| Ex. No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---------|-------------|---------|-----------|------------------------|-------------|
| 7 | Proposed Final Stipulation and Order Regarding Cash Usage by Debtor and Cash Collateral Budget | | | | |
| 8 | Proposed Stipulation and Agreed Order Regarding the Automatic Stay | | | | |
| 9 | Proposed Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 Authorizing the Debtor to Obtain Post-Petition Financing and DIP Loan Budget | | | | |
| 10 | Proposed Order Denying Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 29 U.S.C. § 1406(a) and § 1408 | | | | |
| 11 | Proposed Order Denying Motion to Designate Case as Single Assets Real Estate Case Pursuant to 11 U.S.C. § 101(51B) | | | | |

Debtor, KT Spears Creek, LLC, reserves the right to (i) admit any exhibits designated by any other party; (ii) to call any witnesses designated by any other party; and (iii) to amend or supplement this Witness and Exhibit List any time before the June 2, 2011 Hearing.

Dated:  June 27, 2011

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By:  */s/  Maggie D. Conner*
   Matthew S. Okin
   Texas Bar #00784695
   Maggie D. Conner
   Texas Bar. #24038439
   1113 Vine St., Suite 201
   Houston, TX  77002
   Tel:  713- 228-4100
   Fax:  888-865-2118
   mokin@oakllp.com
   mconner@oakllp.com

**ATTORNEYS FOR THE DEBTOR**

**<u>CERTIFICATE OF SERVICE</u>**

   The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the following parties *via* the Court's Electronic Case Filing system on the 27th day of June, 2011.

| | |
|---|---|
| Office of the U.S. Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>Fax:713-718-4670 | David S. Elder<br>Gardere Wynne Sewell LLP<br>1000 Louisiana, Suite 3400<br>Houston, Texas 77002-5011<br>deleder@gardere.com |
| Joseph G. Epstein<br>Winstead PC<br>1100 JPMorgan Chase Tower<br>600 Travis Street<br>Houston, Texas 77002<br>Tel:  713.650.2740 Direct<br>Fax:  713.650.2400 Fax<br>jepstein@winstead.com | Shari L. Heyen<br>Greenberg Traurig, LLP<br>1000 Louisiana, Suite 1700<br>Houston, Texas 77002<br>Tel: 713.374.3500<br>Fax: 713.374.3505<br>heyens@gtlaw.com |

     */s/  Maggie D. Conner*
     Maggie D. Conner

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |
| | § | |

**REAL PROPERTY DESCRIPTION NO. 1**

Description:                    Approximately 30 acres, including apartment homes.
                               Greenhill Parish Crossing Apartment Homes
                               10682 Two North Road
                               Elgin, South Carolina  29045
                               See attached Schedule A-1

Date of Purchase/Loan:         May 25, 2006

Lender:                        RBC Centura Bank

Value:                         Unknown

Alleged Secured Claim:         $22,646,397.88

Case 10-04241-hb99 Doc Document 07/05/11ed in Entesed 07/05/11 18:12t5 2 Desc Main
Case 11-33991 Document Filed Page 735 of 824 5/17/11 Page 4 of 32
Document Page 735 of 824

# SCHEDULE A-1

## PHASE I PROPERTY DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHWEST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND OLD NATIONAL HIGHWAY AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE I ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF OLD NATIONAL
HIGHWAY AND GREENHILL PARISH PARKWAY, THENCE NORTH 77°48'09" WEST,
A DISTANCE OF 79.44 FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND)
ON THE R/W OF OLD NATIONAL ROAD; THENCE RUNNING IN A WESTERLY
DIRECTION ALONG THE NORTHERN R/W OF GREENHILL PARISH PARKWAY
SOUTH 09°07'22" EAST, A DISTANCE OF 52.50 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W SOUTH 34°58'49" WEST, A DISTANCE OF
33.82 FEET TO A #4 REBAR (FOUND) THENCE CONTINUING ALONG SAID R/W
HAVING A CURVE WITH AN RADIAL DISTANCE OF 242.00 FEET, HAVING AN ARC
LENGTH OF 198.85 FEET AND A CORD OF NORTH 58°16'35" EAST 193.30 FEET TO
A #4 REBAR (FOUND); THENCE CONTINUING ALONG SAID R/W SOUTH 81°49'37"
WEST, A DISTANCE OF 252.92 FEET TO A #5 REBAR (SET); THENCE CONTINUING
ALONG SAID R/W HAVING A CURVE WITH AN RADIAL DISTANCE OF 767.00
FEET, HAVING AN ARC LENGTH OF 34.85 FEET AND A CORD OF NORTH 83°08'37"
EAST 34.85 FEET TO A #5 REBAR (SET);THENCE CONTINUING ALONG SAID R/W
SOUTH 84°27'01" WEST, A DISTANCE OF 431.81 FEET TO A #4 REBAR (FOUND);
THENCE CONTINUING ALONG SAID R/W HAVING A CURVE WITH AN RADIAL
DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH OF 185.25 FEET AND A
CORD OF NORTH 78°36'11" EAST 184.87 FEET TO A CALCULATED POINT ;
THENCE NORTH 61°03'52" WEST, A DISTANCE OF 74.35 FEET TO A
CALCULATED POINT; THENCE SOUTH 76°19'38" WEST, A DISTANCE OF 33.51
FEET TO A CALCULATED POINT; THENCE NORTH 60°34'03" WEST, A DISTANCE
OF 100.67 FEET TO A CALCULATED POINT; THENCE NORTH 02°17'29" WEST, A
DISTANCE OF 25.51 FEET TO A CALCULATED POINT; THENCE NORTH 61°03'52"
WEST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE NORTH
14°07'26" WEST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT;
THENCE NORTH 75°52'26" EAST, A DISTANCE OF 104.75 FEET TO A #4 REBAR
(FOUND); THENCE CONTINUE EASTERLY ALONG SAID LINE, A DISTANCE OF
69.19 FEET TO A #5 REBAR (SET); THENCE NORTH 14°07'38" WEST, A DISTANCE
OF 156.88 FEET TO A #5 REBAR (SET); THENCE NORTH 18°27'37" WEST, A
DISTANCE OF 102.41 FEET TO THE SOUTHERN R/W OF U.S. HIGHWAY #1 TO A
#5 REBAR (SET); THENCE CONTINUING ALONG SAID R/W NORTH 72°00'37"
EAST, A DISTANCE OF 69.21 FEET TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W NORTH 71°54'05" EAST, A DISTANCE OF 5.80
FEET TO A #5 REBAR (SET); THENCE SOUTH 18°27'37" EAST, A DISTANCE OF
104.64 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'38" EAST, A
DISTANCE OF 159.72 FEET TO A #5 REBAR (SET); THENCE NORTH 75°52'17"
EAST, A DISTANCE OF 4.11 FEET TO A #4 REBAR (FOUND); THENCE NORTH
75°53'05" EAST, A DISTANCE OF 143.52 FEET TO A #4 REBAR (FOUND); THENCE

NORTH 75°52'07" EAST, A DISTANCE OF 195.04 FEET TO A #4 REBAR (FOUND);;
THENCE NORTH 78°15'21" EAST, A DISTANCE OF 242.09 FEET TO THE WESTERN
R/W OF OLD NATIONAL HIGHWAY TO A #4 REBAR (FOUND); THENCE
CONTINUING ALONG SAID R/W SOUTH 53°18'52" EAST, A DISTANCE OF 765.28
FEET TO THE POINT OF BEGINNING A #4 REBAR (FOUND).
CONTAINING 743,026 SQUARE FEET OR 17.06 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05 and 25900-04-04

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004
and recorded December 6, 2004 in the Office of the Register of Deeds for Richland
County in Record Book 1003, at page 1581 and Deed from G. P. Monroe, Jr. and
Virginia R. Monroe to K T Spears Creek, LLC dated August 1, 2005 and recorded
August 1, 2005 in the Office of the Register of Deeds for Richland County in Record
Book 1081, at Page 827.

## PHASE II PROPERTY  DESCRIPTION

ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, LYING AND BEING IN
RICHLAND COUNTY, STATE OF SOUTH CAROLINA, BEING LOCATED AT THE
NORTHEAST CORNER OF THE INTERSECTION OF GREENHILL PARISH
PARKWAY AND UPLAND HILL  LANE AND BEING MORE FULLY SHOWN AND
DESIGNATED AS PHASE II  ON A BOUNDARY SURVEY OF GREENHILL PARISH
CROSSING PHASE I & 2, BY W.K. DICKSON & CO., INC. DATED MAY 9, 2006 AND
LAST REVISED MAY 23, 2006.

COMMENCING AT THE CENTER LINE INTERSECTION OF UPLAND HILL LANE AND
GREENHILL PARISH PARKWAY, THENCE  NORTH 34°00'00" WEST, A DISTANCE
OF 81.37 FEET TO A PK NAIL (SET), SAID POINT BEING THE POINT OF
BEGINNING; THENCE NORTH 40°37'37" WEST, A DISTANCE OF 583.87 FEET TO A
#5 REBAR (SET); THENCE NORTH 15°29'49" WEST, A DISTANCE OF 349.95 FEET
TO A #5 REBAR (SET); THENCE NORTH 74°54'59" EAST, A DISTANCE OF 91.31
FEET TO A #4 REBAR (FOUND); THENCE NORTH 75°51'40" EAST, A DISTANCE OF
464.91 FEET TO A #4 REBAR (FOUND; THENCE NORTH 75°52'26" EAST, A
DISTANCE OF 217.50 FEET TO A CALCULATED POINT; THENCE SOUTH 14°07'26"
EAST, A DISTANCE OF 431.86 FEET TO A CALCULATED POINT; THENCE SOUTH
61°03'52" EAST, A DISTANCE OF 80.41 FEET TO A CALCULATED POINT; THENCE
SOUTH 02°17'29" EAST, A DISTANCE OF 25.51 FEET TO A CALCULATED POINT;
THENCE SOUTH 60°34'03" EAST, A DISTANCE OF 100.67 FEET TO A CALCULATED
POINT; THENCE NORTH 76°19'38" EAST, A DISTANCE OF 33.51 FEET TO A
CALCULATED POINT; THENCE SOUTH 61°03'52" EAST, A DISTANCE OF 74.35
FEET TO A CALCULATED POINT ON THE NORTHERN R/W OF GREENHILL PARISH
PARKWAY, THENCE CONTINUING WESTERLY ALONG SAID  R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 833.00 FEET, HAVING AN ARC LENGTH
OF 347.55 FEET AND A CORD OF SOUTH 60°16'46"WEST 345.04 FEET TO A #4
REBAR (FOUND); THENCE SOUTH 48°19'06" WEST, A DISTANCE OF 350.35 FEET
TO A #4 REBAR (FOUND) THENCE CONTINUING  ALONG SAID  R/W HAVING A
CURVE WITH AN RADIAL DISTANCE OF 80.00 FEET, HAVING AN ARC LENGTH OF
80.62 FEET AND A CORD OF SOUTH 85°32'08"WEST 77.25 FEET TO A PK NAIL
(SET) BEING THE POINT OF BEGINNING.

CONTAINING 582,527 SQUARE FEET OR 13.37 ACRES, MORE OR LESS.

TMS#:  A portion of 25800-03-05

Derivation:  Deed from DAK I, LLC to K T Spears Creek LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| Debtor. | § | **(Chapter 11)** |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 2

Description:            Approximately 65 acres, undeveloped
                       See attached Schedule A-2

Date of Purchase/Loan:  December 21, 2007

Lender:                First Savers Bank

Value:                 $11,000,000.00

Alleged Secured Claim:  $6,300,000.00

SCHEDULE A-2

## LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION:  Deed from DAK I, LLC to K T Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |
| | § | |

## REAL PROPERTY DESCRIPTION NO. 3

Description:                Approximately 7 acres, undeveloped
                           See attached Schedule A-3

Date of Purchase/Loan:     2006

Lender:                    First Palmetto Savings Bank

Value:                     $1,800,000.00

Alleged Secured Claim:     $870,000.00

# SCHEDULE A-3

6.28

EXHIBIT A

LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with improvements thereon, fronting on U.S. Highway No. 1 (50 foot right-of-way) and Old National Highway (Rd. S-28-2127 - a 66 foot right-of-way) and located near Pontiac, County of Richland, State of South Carolina containing 6.28 acres, more or less, and shown on boundary survey prepared for K. T. Spears Creek LLC, prepared by Daniel Riddick & Associates, Daniel D. Riddick, P.S. No. 33228, dated July 12, 2005 and recorded July 27, 2005 in the Office of the Register of Deeds for Richland County in Record Book 1079, at page 572, and having the following metes and bounds to wit: BEGINNING at a point located at the intersection of U. S. Highway No 1 and Old National Highway and running in a southeasterly direction along Old National Highway S 50°27'26" a distance of 426.96 feet to a point; thence turning and running in a southwesterly direction S81°04'18"W a distance of 242.18 feet to a point; thence S78°40'38"W a distance of 809.15 feet to a point; thence turning and running in a northwesterly direction N11°19'22"W a distance of 268.21 feet to a point; thence turning and running in a northeasterly direction N74°48'34"E a distance of 783.43 feet to the point and place of Beginning.

DERIVATION: An undivided one-half interest to Virginia R. Monroe from G. P. Monroe, Jr. by deed dated December 29, 1997 and recorded December 30, 1997 in the Office of the Register of Deeds for Richland County in Deed Book 1425, at page 688; and Deed to G. P. Monroe, Jr. from J. L. Rogers dated April 26, 1960 and recorded April 28, 1960 in the Office of the Clerk of Court (n/k/a Register of Deeds) for Richland County in Volume 273, at page 374.

TMS No.: Portion of 25900-04-04

NPCOL1:787401.1-DE-(IMM) 035873-00001

**EXHIBIT "A"**

1.08

**LEGAL DESCRIPTION**

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the County of Richland, State of South Carolina, and delineated as Tract Four (4), containing 1.08 acres, on a plat prepared for Joe Hudson by E. F. Owens, Reg. Land Surveyor, dated August 9, 1972 and recorded August 27, 1973 in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 43, at page 812. Reference is hereby craved to said recorded plat for a more complete and accurate metes and bounds description of said 1.08 acres.

DERIVATION: Quitclaim Deed to Dorothy W. Hudson from Joe Q. Hudson dated September 14, 1999 and recorded September 28, 1999 in the Office of the Register of Deeds for Richland County, South Carolina in Record Book 348, at page 1216.

TMS NO.: 25800-03-04

- 4 -

Richland County Map

From richlandmaps.com



From richlandmaps.com

## DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS DEBTOR-IN-POSSESSION CREDIT AGREEMENT dated as of June 9, 2011, is entered into by and among KT Spears Creek, LLC (the "Borrower"), and JK Air Investment Group, LLC (the "Lender").

## R E C I T A L S

A.    The Borrower previously filed a voluntary petition for relief as a debtor and debtor-in-possession under Title 11 of the United States Bankruptcy Code (as amended from time to time, the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") under Case number 11-33991 (the "Chapter 11 Case").

B.    Borrower is continuing to operate its business and manage its property as a debtor-in-possession under the Bankruptcy Code.

C.    The Borrower has requested that the Lender provide postpetition financing to the Borrower in the form of an unsecured debtor-in-possession loan facility with a maximum aggregate commitment for the Lender of $100,000.00.

D.    The Lender has agreed to make such debtor-in-possession loan and extension of credit subject to the terms and conditions of this Agreement.

E.    In consideration of the mutual covenants and agreements herein contained and of the loans, extensions of credit and commitments hereinafter referred to, the parties hereto agree as follows:

## ARTICLE I
### Definitions and Accounting Matters

Section 1.01    Terms Defined Above.  As used in this Agreement, each term defined above has the meaning indicated above.

Section 1.02    Certain Defined Terms.  As used in this Agreement, the following terms have the meanings specified below:

"Affiliate" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Agreement" means this Debtor-In-Possession Credit Agreement, as the same may from time to time be amended, modified, supplemented or restated.

"Availability Period" means the period from and including the Effective Date to but excluding the Termination Date.

Case 11-34241-H3-11 Document 622 Filed in TXSB on 07/05/11 Page 2 of 23 Main
Document
Case 11-33991 Document 749 Filed in TXSB on 06/09/11 Page 2 of 23

"Board" means the Board of Governors of the Federal Reserve System of the United States of America or any successor Governmental Authority.

"Borrowing" means a borrowing by the Borrower under this Agreement.

"Borrowing Request" means a request by the Borrower for a Borrowing under this Agreement.

"Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banks in Houston, Texas are authorized or required by law to remain closed.

"Capital Leases" means, in respect of any Person, all leases which shall have been, or should have been, in accordance with GAAP, recorded as capital leases on the balance sheet of the Person liable (whether contingent or otherwise) for the payment of rent thereunder.

"Carve Out" has the meaning assigned such term in the Interim Order.

"Cash Collateral" has the meaning assigned such term in the Interim Order.

"Casualty Event" means any loss, casualty or other insured damage to any Property of the Borrower in an amount greater than $25,000, or any nationalization, taking under power of eminent domain or by condemnation or similar proceeding of, any Property of the Borrower having a fair market value in excess of $25,000.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute.

"Commitment" means, with respect to the Lender, the commitment of such Lender to make Loans hereunder in an amount up to $100,000.00.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. For the purposes of this definition, and without limiting the generality of the foregoing, any Person that owns directly or indirectly 10% or more of the Equity Interests having ordinary voting power for the election of the directors or other governing body of a Person (other than as a limited partner of such other Person) will be deemed to "control" such other Person. "Controlling" and "Controlled" have meanings correlative thereto.

"Debt" means, for any Person, without duplication and on a consolidated basis, the sum of the following (without duplication): (a) all obligations of such Person for borrowed money or evidenced by bonds, bankers' acceptances, debentures, notes or other similar instruments; (b) all obligations of such Person (whether contingent or otherwise) in respect of letters of credit, surety or other bonds and similar instruments; (c) all accounts payable and other accrued expenses, liabilities or other obligations of such Person; (d) all obligations of such Person under Capital Leases; (e) all obligations of such Person under Synthetic Leases; (f) all Debt (as defined in the other clauses of this definition) of others secured by a Lien on any property of such Person, whether or not such Debt is assumed by such Person; and (g) all Debt (as defined in the other clauses of this definition) of others guaranteed by such Person or in which such Person otherwise

2

assures a creditor against loss of the Debt (howsoever such assurance shall be made) to the extent of the lesser of the amount of such Debt and the maximum stated amount of such guarantee or assurance against loss.

"DIP Liens" has the meaning assigned such term in Section 2.06.

"Effective Date" means the date on which the conditions specified in Section 5.01 are satisfied (or waived by Lender).

"Environmental Laws" means any and all Governmental Requirements pertaining in any way to public health and safety, the environment, the preservation or reclamation of natural resources, or the management, release or threatened release of any Hazardous Materials, in effect in any and all jurisdictions in which the Borrower is conducting, or at any time has conducted, business, or where any property or assets of the Borrower are located.

"Environmental Permit" means any permit, registration, license, notice, approval, consent, exemption, variance, or other authorization required under or issued pursuant to applicable Environmental Laws.

"Equity Interests" means shares of capital stock, partnership interests, membership interests in a limited liability company, beneficial interests in a trust or other equity ownership interests in a Person, and any warrants, options or other rights entitling the holder thereof to purchase or acquire any such Equity Interest.

"Event of Default" has the meaning assigned such term in Section 9.01.

"Excepted Liens" means: (a) Liens for Taxes, assessments or other governmental charges or levies which are not delinquent or which are being contested in good faith by appropriate action; (b) Liens in connection with workers' compensation, unemployment insurance or other social security, old age pension or public liability obligations which are not delinquent or which are being contested in good faith by appropriate action; (c) statutory landlord's liens, operators', vendors', carriers', warehousemen's, repairmen's, mechanics', suppliers', workers', materialmen's, construction or other like Liens arising by operation of law in the ordinary course of business; (d) easements, restrictions, servitudes, permits, conditions, covenants, exceptions or reservations applicable to the Property; and (e) Liens securing Pre-Petition Debt.

"Existing Credit Agreements" means (i) that certain Commercial Promissory Note dated as of May 25, 2006, between Borrower and RBC Centura Bank in the original principal amount of $19,700,000.00, as modified or amended from time to time (the "RBC Bank Note"), and secured by a mortgage on the Excluded Property, (ii) that certain Loan Agreement dated as of December 21, 2007, among the Borrower, First Savers Bank, a division of Plantation Federal Bank, and Kyle D. Tauch in the amount of $6,000,000.00, and secured by a mortgage on all or a portion of the Property; and (iii) that certain loan agreement between the Borrower and First Palmetto Savings Bank entered into in 2006 and by a mortgage on all or a portion of the Property.

3

"Final Order" means the final order of the Bankruptcy Court that is entered by the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), which is (i) satisfactory in form and substance to the Borrower and the Lender, adopting and/or leaving undisturbed its finding in the Interim Order, including that credit extended by the Lender under this Agreement and the other Loan Documents will be extended in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code and approving this Agreement and the Transactions (including the granting of the Liens and priority position to be provided in connection therewith), and (ii) not be subject to vacatur, amendment, modification, reversal, or stay.

"GAAP" means generally accepted accounting principles in the United States of America as in effect from time to time subject to the terms and conditions set forth in Section 1.04.

"Governmental Authority" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government over the Borrower, any Subsidiary, any of their properties, or the Lender.

"Governmental Requirement" means any law, statute, code, ordinance, order, determination, rule, regulation, judgment, decree, injunction, franchise, permit, certificate, license, authorization or other directive or requirement (whether or not having the force of law), whether now or hereinafter in effect.

"Hazardous Material" means any substance regulated or as to which liability might arise under any applicable Environmental Law and including without limitation: (a) any chemical, compound, material, product, byproduct, substance or waste defined as or included in the definition or meaning of "hazardous substance," "hazardous material," "hazardous waste," "solid waste," "toxic waste," "extremely hazardous substance," "toxic substance," "contaminant," "pollutant," or words of similar meaning or import found in any applicable Environmental Law; and (b) radioactive materials, explosives, asbestos or asbestos containing materials, polychlorinated biphenyls, radon, infectious or medical wastes.

"Highest Lawful Rate" means the maximum nonusurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received on the Note or on other Indebtedness under applicable law.

"Indebtedness" means any and all amounts owing or to be owing by the Borrower, absolute or contingent, due or to become due, now existing or hereafter arising: (a) to the Lender under any Loan Document; and (b) all renewals, extensions and/or rearrangements thereof.

"Interest Rate" means twelve percent (12%) per annum, compounded monthly.

"Interim Order" means the interim order which is entered by the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), which is in form and substance satisfactory to the Borrower and the Lender in all respects, and which authorizes

4

the incurrence by the Borrower of secured and superpriority indebtedness in accordance with the Loan Documents.

"Investment" means the acquisition (whether for cash, property, services or securities or otherwise) of Equity Interests of any other Person, the contribution of capital to any other Person, or any agreement to make any such acquisition or capital contribution.

"Lien" means any interest in property securing an obligation owed to, or a claim by, a Person other than the owner of the property, whether such interest is based on the common law, statute or contract, and whether such obligation or claim is fixed or contingent.

"Loan Documents" means this Agreement and the Note.

"Loans" has the meaning assigned such term in Section 2.01.

"Material Adverse Effect" means a material adverse change in, or material adverse effect on (a) the business, operations, property or financial condition of the Borrower and its Subsidiaries taken as a whole, (b) the ability of Borrower to perform any of its obligations under any Loan Document, (c) the validity or enforceability of any Loan Document or (d) the rights and remedies of or benefits available to the Lender under any Loan Document.

"Maximum Credit Amount" means, as to the Lender, the amount of $100,000.00, or such higher amount as Lender may agree from time to time.

"Note" means the promissory note of the Borrower described in Section 2.02 and being substantially in the form of Exhibit A, together with all amendments, modifications, replacements, extensions and rearrangements thereof.

"Organizational Documents" means, with respect to any Person, (a) in the case of any corporation, the certificate of incorporation or formation and by-laws (or similar documents) of such Person, (b) in the case of any limited liability company, the certificate of formation and limited liability company agreement (or similar documents) of such Person, (c) in the case of any limited partnership, the certificate of formation and limited partnership agreement (or similar documents) of such Person, (d) in the case of any general partnership, the partnership agreement (or similar document) of such Person and (e) in any other case, the functional equivalent of the foregoing.

"Permitted Asset Sales" means sales of assets of the Borrower where the consideration received from all of such sales does not exceed $50,000 in the aggregate.

"Permitted Tax Distributions" means tax distributions to the members of the Borrower in an amount equal to (a) the sum of the highest marginal United States federal income tax rate applicable to individuals on ordinary income, multiplied by (b) the Borrower's federal taxable income. Permitted Tax Distributions may be made quarterly, based on the Borrower's estimated taxable income for each applicable quarterly period, and annually, based on the Borrower's annual federal income tax filing.

"Person" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.

"Pre-Petition Debt" means Debt incurred by the Borrower pursuant to the Existing Credit Agreements.

"Pre-Petition Lenders" means the lenders under the Existing Credit Agreements.

"Property" means all real property owned by the Borrower, wherever located, including, without limitation, the real property described in Exhibit B; but excluding the Excluded Property.

"Redemption" means with respect to any Debt, the repurchase, redemption, prepayment, repayment, defeasance or any other acquisition or retirement for value (or the segregation of funds with respect to any of the foregoing) of such Debt. "Redeem" has the correlative meaning thereto.

"Related Parties" means, with respect to any specified Person, such Person's Affiliates and the respective directors, officers, employees, agents and advisors (including attorneys, accountants and experts) of such Person and such Person's Affiliates.

"Reorganization Plan" means a joint plan of reorganization proposed by the Borrower or any other Person in the Chapter 11 Cases.

"Restricted Payment" means any dividend or other distribution (whether in cash, securities or other Property) with respect to any Equity Interests in the Borrower, or any payment (whether in cash, securities or other Property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any such Equity Interests in the Borrower, or any option, warrant or other right to acquire any such Equity Interests in the Borrower.

"SEC" means the U.S. Securities and Exchange Commission or any successor Governmental Authority.

"S&P" means Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies, Inc., and any successor thereto that is a nationally recognized rating agency.

"Subsidiary" means: (a) any Person of which at least a majority of the outstanding Equity Interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or managers or other governing body of such Person is at the time directly or indirectly owned or controlled by the Borrower, and (b) any partnership of which the Borrower is a general partner.

"Taxes" means any and all present or future taxes, levies, imposts, duties, deductions, charges or withholdings imposed by any Governmental Authority.

"Termination Date" means the earlier to occur of (i) June 1, 2012; (ii) the date which is the effective date of any Reorganization Plan; or (iii) the date of the conversion of the Chapter 11

Case to a Chapter 7 Case under the Bankruptcy Code, or (iv) the date of the dismissal of the Chapter 11 Case.

"Transactions" means the execution, delivery and performance by the Borrower of this Agreement and each other Loan Document to which it is a party, the borrowing of the Loans, the use of the proceeds thereof, and the grant of Liens to the Lender by the Borrower on the Collateral.

Section 1.03   Terms Generally; Rules of Construction.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "or" shall mean "and/or".  Unless the context requires otherwise (a) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (b) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including" and (c) any reference herein to Articles, Sections, Annexes, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Annexes, Exhibits and Schedules to, this Agreement.

Section 1.04   Accounting Terms and Determinations; GAAP.   Unless otherwise specified herein, all accounting terms used herein shall be interpreted, all determinations with respect to accounting matters hereunder shall be made, and all financial statements and certificates and reports as to financial matters required to be furnished to the Lender hereunder shall be prepared, in accordance with GAAP, applied on a consistent basis.

## ARTICLE II
## The Credits

Section 2.01   Commitment.  Subject to the terms and conditions set forth herein, the Lender agrees to make revolving loans (each a "Loan") to the Borrower during the Availability Period in an aggregate principal amount up to $100,000.00 (the "Commitment").  Within the foregoing limits and subject to the terms and conditions set forth herein, the Borrower may borrow, repay and reborrow the Loans.

Section 2.02   Note.  The Loans made by the Lender shall be evidenced by a single Note of the Borrower in substantially the form of Exhibit A, dated as of the date of this Agreement.

Section 2.03   Requests for Borrowings.  To request a Borrowing, the Borrower shall notify the Lender of such request by telephone at least one Business Day before the proposed Borrowing.  Each such telephonic and written Borrowing Request shall specify the following information: (i) the aggregate amount of the requested Borrowing; (ii) the date of such Borrowing, which shall be a Business Day; and (iii) the location and number of the applicable Borrower's account to which funds are to be disbursed.

Section 2.04   Funding of Borrowings. The Lender shall make each Loan to be made by it hereunder on the funding date in the Borrowing Request by wire transfer of immediately available funds to the account of the Borrower specified in the Borrowing Request.

7

Section 2.05    Termination.    The Commitment of the Lender to make the Loans described herein shall terminate on the Termination Date.

(a)    Grant of Security Interest; Superpriority Administrative Claim.    As security for the prompt payment in full of the Indebtedness, the Borrower hereby pledges and grants to the Lender, a Lien and security interest (subject only to Excepted Liens) in, to and on all of the Collateral (the "DIP Liens").  The Indebtedness shall be a superpriority administrative expense in the Chapter 11 Case as set forth in the Interim Order and Final Order.

## ARTICLE III
### Payments of Principal and Interest; Prepayments; Fees

Section 3.01    Repayment of Loans.    The Borrower hereby unconditionally promises to pay to the Lender the then unpaid interest, fees and principal amount of the Loans in full in cash on the Termination Date.

Section 3.02    Interest.

(a)    Rate.    The Loans shall bear interest at the Interest Rate, but in no event to exceed the Highest Lawful Rate.

(b)    Interest Payment Date.    All accrued and unpaid interest shall be due and payable in full on the Termination Date.

(c)    Interest Rate Computations.    All interest hereunder shall be computed on the basis of a year of 360 days, unless such computation would exceed the Highest Lawful Rate, in which case interest shall be computed on the basis of a year of 365 days (or 366 days in a leap year).

Section 3.03    Prepayments.

(a)    Optional Prepayments.    The Borrower shall have the right at any time and from time to time, to prepay any Borrowing in whole or in part, subject to payment of all accrued and unpaid interest.

(b)    Mandatory Prepayments.    During an Event of Default, the Borrower shall prepay the Borrowings with all net cash proceeds received from sales and other dispositions of any assets of Borrower, subject to payment of all accrued and unpaid interest.

(c)    No Premium or Penalty.    Prepayments permitted or required under this Section 3.03 shall be without premium or penalty.

Section 3.04    Origination Fee.    The Borrower agrees to pay to the Lender an origination fee equal to five percent (5%) of the Commitment, with such fee being accrued to the balance of the Loans as of the Effective Date, and being due and payable in full on the Termination Date.

8

## ARTICLE IV
## Payments

Section 4.01    Payments Generally.  The Borrower shall make each payment required to be made by them hereunder prior to 5:00 pm, Houston time, on the date when due, in immediately available funds, without defense, deduction, recoupment, set-off or counterclaim.  Fees, once paid, shall be fully earned and shall not be refundable under any circumstances absent manifest error.  All such payments shall be made to the Lender at such place and in such manner as the Lender determines.  If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension. All payments hereunder shall be made in dollars.

Section 4.02    Application of Insufficient Payments.  If at any time insufficient funds are received by and available to the Lender to pay fully all amounts of principal, interest and fees then due hereunder and allowable under the Interim Order, the Final Order and/or any other order of the Bankruptcy Court, such funds shall be applied (i) first, towards payment of interest and fees then due hereunder, and (ii) second, towards payment of principal then due hereunder.

## ARTICLE V
## Conditions Precedent

Section 5.01    Effective Date.  The obligations of the Lender to make Loans hereunder hall not become effective until the date on which each of the following conditions is satisfied (or waived by Lender):

(a)    After appropriate notice and opportunity for a hearing, entry by the Bankruptcy Court of the Interim Order finding that all credit extended by the Lender under the Loan Documents will be extended in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code, approving this Agreement and the Transactions, and granting the superpriority claim and Priming Liens described herein, and granting the protections to be afforded to the Lender, as described herein, in form and substance reasonably satisfactory to the Lender and the Borrower and approved by the Bankruptcy Court, which shall not have been vacated, modified, amended, reversed or stayed.

(b)    All corporate and judicial proceedings and all instruments and agreements in connection with the Transactions shall be reasonably satisfactory in form and substance to the Lender.

(c)    The Lender and Borrower shall have received from each party hereto counterparts of this Agreement signed on behalf of such party.

(d)    The Lender shall have received a duly executed Note payable to the order of the Lender in a principal amount equal to the Commitment.

(e)    The Lender shall be satisfied that there is no litigation seeking to enjoin or prevent the financing contemplated hereby.

9

Section 5.02 <u>Each Credit Event</u>. The obligation of each Lender to make a Loan on the occasion of any Borrowing (including the initial funding), is subject to the satisfaction of the following conditions:

(a) The Final Order shall be in full force and effect, and shall not have been reversed, modified, amended or stayed, except for such modifications or amendments as may be reasonably acceptable to the Lender.

(b) At the time of and immediately after giving effect to such Borrowing no Event of Default shall have occurred and be continuing.

(c) The representations and warranties of the Borrower set forth in this Agreement and in the other Loan Documents shall be true and correct in all material respects on and as of the date of such Borrowing except to the extent any such representations and warranties are expressly limited to an earlier date.

(d) Subject to the terms of the Interim Order, Final Order and/or any other order of the Bankruptcy Court, the Borrower shall have paid the balance of all fees and expenses then payable to the Lender, provided that the Loans shall as necessary be used for this purpose and this condition shall thereupon be satisfied upon the making of such payment from the Loans.

(e) The receipt by the Lender of a Borrowing Request.

## ARTICLE VI
## Representations and Warranties

The Borrower represents and warrants to the Lender that:

Section 6.01 <u>Organization; Powers</u>. The Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, has all requisite power and authority, and has all material governmental licenses, authorizations, consents and approvals necessary, to own its assets and to carry on its business as now conducted, and is qualified to do business in, and is in good standing in, every jurisdiction where such qualification is required, except where failure to have such power, authority, licenses, authorizations, consents, approvals and qualifications could not reasonably be expected to have a Material Adverse Effect.

Section 6.02 <u>Authority; Enforceability</u>. The Transactions have been duly authorized by all necessary limited liability company action of Borrower. Each Loan Document to which the Borrower is a party has been duly executed and delivered by the Borrower and constitutes a legal, valid and binding obligation of the Borrower enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

Section 6.03 <u>Approvals; No Conflicts</u>. The Transactions (a) do not require any consent or approval of, registration or filing with, or any other action by, any Governmental Authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any Loan Document or the consummation of the

transactions contemplated thereby, except such as have been obtained or made and are in full force and effect other than those third party approvals or consents which, if not made or obtained, could not reasonably be expected to have a Material Adverse Effect or do not have an adverse effect on the enforceability of the Loan Documents, (b) will not violate any applicable law or regulation or any Organizational Document of the Borrower or any order of any Governmental Authority, (c) will not violate or result in a default under any indenture, agreement or other instrument binding upon the Borrower, or give rise to a right thereunder to require any payment to be made by the Borrower, and (d) will not result in the creation or imposition of any Lien on any property of the Borrower (other than the Liens created by the Loan Documents).

Section 6.04    Compliance with the Laws and Agreements; No Defaults.  The Borrower is in compliance with all Governmental Requirements applicable to it or its property and all agreements and other instruments binding upon it or its property, and possesses all licenses, permits, franchises, exemptions, approvals and other authorizations granted by Governmental Authorities necessary for the ownership of its property and the conduct of its business, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

Section 6.05    Insurance.  The Borrower has (a) all insurance policies sufficient for compliance with all material Governmental Requirements and all material agreements and (b) insurance coverage in at least amounts and against such risk (including, without limitation, public liability) that are usually insured against by companies similarly situated and engaged in the same or a similar business for the assets and operations of the Borrower.  The Lender has been named as an additional insured and loss payee in respect of such insurance policies.

Section 6.06    Subsidiaries.  The Borrower has no Subsidiaries.

Section 6.07    Properties; Titles, Etc.

(a)    The Borrower has good and defensible title to the Property and its other assets and properties, in each case, free and clear of all Liens except Liens permitted by Section 8.02.

(b)    The rights and properties presently owned, leased or licensed by the Borrower include all rights necessary to permit the Borrower to conduct its business in all material respects in the same manner as its business has been conducted prior to the date hereof.

Section 6.08    No Brokers.  No Person is entitled to any brokerage fee or finder's fee or similar fee or commission in connection with arranging the Loans contemplated by this Agreement as of the Effective Date.

## ARTICLE VII
### Affirmative Covenants

Until the Commitment has terminated and the principal of and interest on each Loan and all fees payable hereunder and all other amounts payable under the Loan Documents shall have been paid in full, the Borrower covenants and agrees with the Lender that:

11

Section 7.01    Use of Loan Proceeds.  The Borrower will use the proceeds of the Loans solely to pay for expenses of Borrower during the course of the Chapter 11 Case including, without limitation, for architectural renderings, surveying, appraisals, environmental reports, legal fees, loan origination fees, and other expenses approved by the Lender.

Section 7.02    Requested Information.  Promptly following any request therefore from the Lender, the Borrower will provide to Lender such information regarding the operations, business affairs and financial condition of the Borrower as the Lender may reasonably request.

Section 7.03    Notices of Material Events.  The Borrower will furnish to the Lender prompt written notice of the following:

(a)    the occurrence of any Event of Default;

(b)    the filing or commencement of, or the threat in writing of, any action, suit, proceeding, investigation or arbitration by or before any arbitrator or Governmental Authority against the Borrower not previously disclosed in writing to the Lender or any material adverse development in any action, suit, proceeding, investigation or arbitration (whether or not previously disclosed to the Lender) that, in either case, if adversely determined, could reasonably be expected to result in a Material Adverse Effect;

(c)    the Borrower's receipt of any demand letter.

Section 7.04    Existence; Conduct of Business.  The Borrower will do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the rights, licenses, permits, privileges and franchises material to the conduct of its business and maintain, if necessary, its qualification to do business in each jurisdiction in which its real property assets are located or the ownership of its properties requires such qualification, except where the failure to so qualify could not reasonably be expected to have a Material Adverse Effect.

Section 7.05    Operation and Maintenance of Properties.  The Borrower will:

(a)    operate its properties and assets in accordance with the practices of the Borrower's industry and in compliance with all applicable contracts and agreements and in compliance with all Governmental Requirements, including, without limitation, applicable Environmental Laws, except, in each case, where the failure to comply could not reasonably be expected to have a Material Adverse Effect;

(b)    keep, preserve and maintain all property material to the conduct of its business in good working order and condition, ordinary wear and tear excepted;

Section 7.06    Insurance.  The Borrower will maintain, with financially sound and reputable insurance companies, insurance in such amounts and against such risks as are customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations.

12

Section 7.07    Books and Records; Inspection Rights.  The Borrower will keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and activities.  The Borrower will permit any representatives designated by the Lender, upon reasonable prior notice, to visit and inspect its properties, to examine and make extracts from its books and records, and to discuss its affairs, finances and condition with its officers and independent accountants, all at such reasonable times during normal business hours and as often as reasonably requested.

Section 7.08    Compliance with Laws.  The Borrower will comply with all laws, rules, regulations and orders of any Governmental Authority applicable to it or its property (including Environmental Laws), except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

Section 7.09    Further Assurances.  The Borrower will promptly execute and deliver to the Lender all such other documents, agreements and instruments reasonably requested by the Lender to comply with, cure any defects or accomplish the conditions precedent, covenants and agreements of the Borrower in the Loan Documents, or to correct any defect, error or inaccuracy in this Agreement, or to make any recordings, file any notices or obtain any consents, all as may be reasonably necessary or appropriate, in the reasonable discretion of the Lender, in connection therewith.

Section 7.10    Subsidiaries.  In the event that Borrower forms or acquires any Subsidiary, Borrower shall promptly cause such Subsidiary to guarantee the Indebtedness.  In connection with any such guaranty, such Borrower shall, or shall cause such Subsidiary to, (a) execute and deliver a guaranty agreement satisfactory to the Lender, (b) pledge all of the Equity Interests of such new Subsidiary, and (c) execute and deliver such other additional closing documents and certificates as shall reasonably be requested by the Lender.

# ARTICLE VIII
## Negative Covenants

Until the Commitment has terminated and the principal of and interest on each Loan and all fees payable hereunder and all other amounts payable under the Loan Documents have been paid in full, the Borrower covenants and agrees with the Lender that:

Section 8.01    Debt.  The Borrower will not incur, create, assume or suffer to exist any Debt, except:

(a)    the Note or other Indebtedness arising under the Loan Documents;

(b)    endorsements of negotiable instruments for collection in the ordinary course of business;

(c)    Debt under Capital Leases not to exceed $100,000.00 in aggregate principal amount at any time outstanding; and

(d)    Pre-Petition Debt.

13

Section 8.02    Liens.  The Borrower will not create, incur, assume or permit to exist any Lien on any of its properties (now owned or hereafter acquired), except:

      (a)    DIP Liens securing the payment of the Indebtedness;

      (b)    Excepted Liens;

      (c)    Liens securing Capital Leases permitted by Section 8.01(c);

      (d)    Valid, existing Liens of creditors other than the Lender and the Pre-Petition Lenders, but only to the extent determined by the Bankruptcy Court; and

      (e)    Liens securing the Carve Out.

Section 8.03    Dividends, Distributions and Redemptions.   The Borrower will not declare, pay or make, or agree to pay or make, directly or indirectly, any Restricted Payment, or return any capital or make any distribution of its property or assets to its Equity Interest holders, except Borrower may declare and pay Permitted Tax Distributions.

Section 8.04    Investments, Loans and Advances.   The Borrower will not make any Investments in or to any Person.

Section 8.05    Nature of Business.  The Borrower will not allow any material change to be made in the character of its business.

Section 8.06    Mergers, Etc.  Borrower will not merge into or with or consolidate with any other Person, or permit any other Person to merge into or consolidate with it, or sell, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its property to any other Person (whether now owned or hereafter acquired) (any such transaction, a "consolidation"), or liquidate or dissolve.

Section 8.07    Sale of Properties.  Without the prior written consent of the Lender, the Borrower will not sell, assign, convey or otherwise transfer any property or assets except for Permitted Asset Sales.

Section 8.08    Subsidiaries.  The Borrower will not create or acquire any Subsidiary unless the Borrower gives prior written notice to the Lender of such creation or acquisition and complies with the terms of this Agreement regarding Subsidiaries.  The Borrower shall not sell, assign or otherwise dispose of any Equity Interests in any Subsidiary.

Section 8.09    Negative Pledge Agreements; Dividend Restrictions.  Borrower will not create, incur, assume or suffer to exist any contract, agreement or understanding (other than this Agreement, or Capital Leases creating Liens permitted by Section 8.02(c), or the Pre-Petition Credit Agreements) which in any way prohibits or restricts the granting, conveying, creation or imposition of any Lien on any of its property in favor of the Lender, or which requires the consent of or notice to other Persons in connection therewith.

Section 8.10    Plan of Reorganization.  Borrower will not file any Plan of Reorganization that has not been previously approved by the Lender in writing.

## ARTICLE IX
## Events of Default; Remedies

Section 9.01    Events of Default.  One or more of the following events shall constitute an "Event of Default":

(a)    the Borrower shall fail to pay any interest on or principal of any Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof, by acceleration or otherwise.

(b)    any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with any Loan Document shall prove to have been incorrect when made or deemed made.

(c)    the Borrower shall fail to observe or perform any covenant, condition or agreement contained in this Agreement or any other Loan Document, and such failure shall continue unremedied for a period of ten (10) days after notice thereof from the Lender to the Borrower.

(d)    (i) the Chapter 11 Case of Borrower shall be dismissed or converted to a Chapter 7 case, (ii) a Chapter 11 Trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of Borrower shall be appointed in the Chapter 11 Case and the order appointing such Person shall not be reversed or vacated within five (5) Business Days after the entry thereof, (iii) any other superpriority claim which is *pari passu* with or senior to the claims of the Lender shall be granted; or (iv) the Chapter 11 Case shall be moved from the Southern Division of Texas, Houston Division, to any other bankruptcy court including, without limitation, to the United States Bankruptcy Court for the District of South Carolina.

(e)    the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest other than the Lender.

(f)    an order shall be entered reversing, amending, supplementing, staying for a period in excess of five (5) Business Days, vacating or otherwise modifying the Interim Order or the Final Order without the consent of the Lender.

(g)    (i) one or more judgments as to any post-petition obligation shall be rendered against either Borrower and the enforcement thereof shall not be stayed (by court ordered stay or by consent of the party litigants) or (ii) any one or more non-monetary judgments that have, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, shall be rendered against Borrower.

(h)    the Loan Documents after delivery thereof shall for any reason, except to the extent permitted by the terms thereof, cease to be in full force and effect and valid, binding and enforceable in accordance with their terms against the Borrower.

15

     (i)     Failure of the Borrower to file a Plan of Reorganization acceptable to Lender by September 2, 2011, or to have a Plan of Reorganization acceptable to Lender confirmed by November 30, 2011.

     (j)     the filing and/or pursuing confirmation of any Plan of Reorganization that has not been approved by the Lender.

     (k)     the filing of any pleading by Borrower, or support of any pleading by Borrower that, unless otherwise waived by the Lender, would deny the Lender the ability to credit bid, as permitted under Bankruptcy Code §363(k).

Section 9.02    <u>Remedies</u>.

     (a)     At any time during the continuance of an Event of Default, the Lender may, by notice to the Borrower, take any or all of the following actions, at the same or different times: (i) terminate the Commitment, and thereupon the Commitment shall terminate immediately, or (ii) declare the Note and the Loans then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable), and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrower accrued hereunder and under the Note and the other Loan Documents, shall become due and payable immediately, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, all of which are hereby waived by the Borrower, or (iii) exercise all remedies of a ~~secured~~ party against the property and assets securing the Indebtedness as provided herein, and in the Interim Order, in the Final Order, and under applicable law. ~~In addition to (and not in lieu of) the foregoing remedies,~~ at any time during the continuance of an Event of Default until the Indebtedness has been paid in full, the Lender shall have the right to designate a majority ~~of the~~ managers or directors of the Borrower resulting in the Lender ~~having full~~ and complete control over the Borrower during such period. ~~The holder of the~~ Equity Interest in Borrower agrees to vote all such Equity Interests ~~held by them to appoint the managers or directors so designated by the Lender.~~

     (b)     In the case of the occurrence and continuance of an Event of Default, the Lender will have all other rights and remedies available at law and equity.

     (c)     All proceeds realized from the liquidation or other disposition of collateral or otherwise received after maturity of the Note, whether by acceleration or otherwise, shall be applied:

     (i)     *first*, to payment or reimbursement of that portion of the Indebtedness constituting fees, expenses and indemnities payable to the Lender;

     (ii)     *second,* to payment of accrued interest on the Loans;

     (iii)     *third*, payment of principal outstanding on the Loans;

     (iv)     *fourth*, to any other Indebtedness; and

Case 11-33991 Document 62-1 Filed 06/09/11 Page 17 of 23

(v)   *fifth*, any excess, after all of the Indebtedness shall have been indefeasibly paid in full in cash, shall be paid to the Borrower or as otherwise required by any Governmental Requirement.

## ARTICLE X
### Miscellaneous

Section 10.01   Notices.

(a)   Except in the case of notices and other communications expressly permitted to be given by telephone (and subject to Section 10.01(b)), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, or mailed by certified or registered mail, as follows:

(i)   if to the Borrower, to it at 22 Waugh Rd., Suite 270, Houston, Texas 77007.

(ii)   if to the Lender, to it at 550 Westcott, Suite 235, Houston, Texas 77007.

(b)   The Lender or the Borrower may, in their discretion, agree to accept notices and other communications hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.

(c)   Any party hereto may change its address for notices and other communications hereunder by notice to the other party hereto.   All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt.

Section 10.02   Waivers; Amendments.

(a)   No failure on the part of the Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power or privilege, or any abandonment or discontinuance of steps to enforce such right, power or privilege, under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under any of the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power or privilege.   The rights and remedies of the Lender hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.   Without limiting the generality of the foregoing, the making of a Loan shall not be construed as a waiver of any Event of Default, regardless of whether the Lender may have had notice or knowledge of such Event of Default at the time.

(b)   This Agreement may only be amended by written agreement of the Borrower and the Lender.

17

Section 10.03  Expenses.   The Borrower shall pay (i) all reasonable out-of-pocket expenses incurred by the Lender in the preparation, negotiation, execution, delivery and administration of this Agreement and the other Loan Documents and any amendments, modifications or waivers of or consents related to the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), (ii) all costs, expenses, Taxes, assessments and other charges incurred by the Lender in connection with any filing, registration, recording or perfection of any security interest contemplated by this Agreement, (iii) all out of pocket expenses incurred by the Lender, including the fees, charges and disbursements of any counsel for the Lender, in connection with the enforcement or protection of its rights in connection with this Agreement or any other Loan Document, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans; provided, however, that attorney fees and expenses may only be paid as approved by the Bankruptcy Court or the terms of any order of the Bankruptcy Court.

Section 10.04  Successors and Assigns.

(a)  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Lender (and any attempted assignment or transfer by the Borrower without such consent shall be null and void). Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)  The Lender may assign to one or more assignees or participants all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans at the time owing to it) with the prior written consent (such consent not to be unreasonably withheld) of the Borrower, provided that no consent of the Borrower shall be required for an assignment made during the continuation of an Event of Default.

(c)  The Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, and this Section 10.04(c) shall not apply to any such pledge or assignment of a security interest; provided that no such pledge or assignment of a security interest shall release the Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.

(d)  Notwithstanding any other provisions of this Section 10.04, no transfer or assignment of the interests or obligations of the Lender or any grant of participations therein shall be permitted if such transfer, assignment or grant would require the Borrower to file a registration statement with the SEC or to qualify the Loans under the "Blue Sky" laws of any state.

Section 10.05  Survival; Revival; Reinstatement.

(a)     All covenants, agreements, representations and warranties made by the Borrower herein and in the other Loan Documents shall be considered to have been relied upon by the Lender and shall survive the execution and delivery of this Agreement and the making of any Loans, regardless of any investigation made by the Lender or on its behalf.

(b)     To the extent that any payments on the Indebtedness or proceeds of any collateral are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver or other Person under any bankruptcy law, common law or equitable cause, then to such extent, the Indebtedness so satisfied shall be revived and continue as if such payment or proceeds had not been received and the Lender's Liens, security interests, rights, powers and remedies under this Agreement, the Interim Order, the Final Order, and each Loan Document shall continue in full force and effect. In such event, each Loan Document shall be automatically reinstated and the Borrower shall take such action as may be reasonably requested by the Lender to effect such reinstatement.

Section 10.06    Counterparts; Integration; Effectiveness.

(a)     This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.

(b)     This Agreement and the other Loan Documents constitute the entire contract among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. **THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND THERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(c)     Delivery of an executed counterpart of a signature page of this Agreement or any other Loan Document by telecopy, pdf or other electronic transmission shall be effective as delivery of a manually executed counterpart thereof.

Section 10.07    Severability.    Any provision of this Agreement or any other Loan Document held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof or thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

Section 10.08    GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS.

(a)     THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS. CHAPTER 346 OF THE TEXAS FINANCE CODE (WHICH REGULATES CERTAIN

19

REVOLVING CREDIT LOAN ACCOUNTS AND REVOLVING TRI-PARTY ACCOUNTS) SHALL NOT APPLY TO THIS AGREEMENT OR THE NOTES.

(b)     ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THE LOAN DOCUMENTS SHALL BE BROUGHT IN THE BANKRUPTCY COURT SO LONG AS THE BANKRUPTCY CASE IS PENDING AND THEREAFTER, IN THE COURTS OF THE STATE OF TEXAS OR OF THE UNITED STATES OF AMERICA LOCATED IN HARRIS COUNTY, TEXAS, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HEREBY ACCEPTS FOR ITSELF AND (TO THE EXTENT PERMITTED BY LAW) IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING, WITHOUT LIMITATION, ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS. THIS SUBMISSION TO JURISDICTION IS NON-EXCLUSIVE AND DOES NOT PRECLUDE A PARTY FROM OBTAINING JURISDICTION OVER ANOTHER PARTY IN ANY COURT OTHERWISE HAVING JURISDICTION.

(c)     EACH PARTY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO IT AT THE ADDRESS SPECIFIED IN SECTION 10.01 OR SUCH OTHER ADDRESS AS IS SPECIFIED PURSUANT TO SECTION 10.01, SUCH SERVICE TO BECOME EFFECTIVE THIRTY (30) DAYS AFTER SUCH MAILING. NOTHING HEREIN SHALL AFFECT THE RIGHT OF A PARTY OR ANY HOLDER OF A NOTE TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST ANOTHER PARTY IN ANY OTHER JURISDICTION.

(d)     EACH     PARTY     HEREBY     (i)     IRREVOCABLY     AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN; (ii) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES; AND (iii) CERTIFIES THAT NO PARTY HERETO NOR ANY REPRESENTATIVE, AGENT OR COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS.

Section 10.09  Headings.  Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

Section 10.10 <u>Interest Rate Limitation</u>. It is the intention of the parties hereto that the Lender shall conform strictly to usury laws applicable to it. Accordingly, if the transactions contemplated hereby would be usurious as to the Lender under laws applicable to it (including the laws of the United States of America and the State of Texas or any other jurisdiction whose laws may be mandatorily applicable to such Lender notwithstanding the other provisions of this Agreement), then, in that event, notwithstanding anything to the contrary in any of the Loan Documents, it is agreed as follows: (a) the aggregate of all consideration which constitutes interest under law applicable to the Lender that is contracted for, taken, reserved, charged or received by the Lender under any of the Loan Documents or agreements or otherwise in connection with the Note shall under no circumstances exceed the maximum amount allowed by such applicable law, and any excess shall be canceled automatically and if theretofore paid shall be credited by the Lender on the principal amount of the Indebtedness (or, to the extent that the principal amount of the Indebtedness shall have been or would thereby be paid in full, refunded by the Lender to the Borrower); and (b) in the event that the maturity of the Note is accelerated by reason of an election of the holder thereof resulting from any Event of Default under this Agreement or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest under law applicable to the Lender may never include more than the maximum amount allowed by such applicable law, and excess interest, if any, provided for in this Agreement or otherwise shall be canceled automatically by the Lender as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited by the Lender on the principal amount of the Indebtedness (or, to the extent that the principal amount of the Indebtedness shall have been or would thereby be paid in full, refunded by the Lender to the Borrower). All sums paid or agreed to be paid to the Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by law applicable to the Lender, be amortized, prorated, allocated and spread throughout the stated term of the Loans evidenced by the Note until payment in full so that the rate or amount of interest on account of any Loans hereunder does not exceed the maximum amount allowed by such applicable law. To the extent that Chapter 303 of the Texas Finance Code is relevant for the purpose of determining the Highest Lawful Rate applicable to the Lender, the Lender elects to determine the applicable rate ceiling under such Chapter by the weekly ceiling from time to time in effect. Chapter 346 of the Texas Finance Code does not apply to the Borrower's obligations hereunder.

[SIGNATURE PAGE FOLLOWS]

Case 11-34243 Document 1-7 Filed 07/05/11 in TXSB on 07/05/11 Page 522 Desc Main
Document   Page 769 of 824
Case 11-33991   Document 52-2   Filed in TXSB on 06/09/11   Page 22 of 23

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.


BORROWER:                          **KT SPEARS CREEK, LLC**

                                   By: _____
                                   Name: _____Kyle Tauch_____
                                   Title: _____Manager_____


LENDER:                            **JK AIR INVESTMENT GROUP, LLC**

                                   By: _____
                                   Name: _____Jay H Krasoff_____
                                   Title: _____Pres_____

Case 11-34243 Document 67-5 Filed in TXSB on 07/05/11 Page 523 Desc Main
Document    Page 770 of 824
Case 11-33991   Document 52-2   Filed in TXSB on 06/09/11   Page 23 of 23

EXHIBIT A
PROMISSORY NOTE

$100,000.00                                              _____, 2011

        FOR VALUE RECEIVED, KT Spears Creek, LLC, a South Carolina limited liability
company (the "Borrower") hereby promises to pay to JK Air Investment Group, LLC (the
"Lender"), or its registered assigns, at the place and in the manner designated by the Lender, the
principal sum of up to One Hundred Thousand Dollars ($100,000.00) or such lesser amount as
shall equal the aggregate unpaid principal amount of the Loans made by the Lender to the
Borrower under the Credit Agreement, as hereinafter defined), in lawful money of the United
States of America and in immediately available funds, on the date provided in the Credit
Agreement, and to pay interest on the unpaid principal amount of each such Loan, at such office,
in like money and funds, for the period commencing on the date of such Loan until such Loan
shall be paid in full, at the rates per annum and on the dates provided in the Credit Agreement.

        This Note is the Note referred to in the Debtor-In-Possession Credit Agreement dated as
of _____, 2011, between the Borrower and the Lender (as the same may be amended,
supplemented or restated from time to time, the "Credit Agreement"), and evidences Loans made
by the Lender thereunder.  Capitalized terms used in this Note have the respective meanings
assigned to them in the Credit Agreement.

        This Note is a registered Note and, as provided in the Credit Agreement, upon surrender
of this Note for registration of transfer or exchange (and in the case of a surrender for registration
of transfer, duly endorsed or accompanied by a written instrument of transfer duly executed by
the registered holder of this Note or such holder's attorney duly authorized in writing), a new
Note for a like aggregate principal amount will be issued to, and registered in the name of, the
transferee.  Prior to the due presentment for registration and transfer, the Borrower may treat the
Person in whose name this Note is registered as the holder and the owner of this Note for the
purpose of receiving payment and for all other purposes of this Note and the Credit Agreement.
Notwithstanding anything to the contrary herein, the right to receive payments of interest and
principal under this Note shall be transferable only upon surrender for cancellation of this Note,
and the issuance of a new Note registered in the name of the transferee.

        This Note is issued pursuant to, and is subject to the terms and conditions set forth in, the
Credit Agreement and is entitled to the benefits provided for in the Credit Agreement and the
other Loan Documents.  The Credit Agreement provides for the acceleration of the maturity of
this Note upon the occurrence of certain events, for prepayments of Loans upon the terms and
conditions specified therein and other provisions relevant to this Note. THIS NOTE SHALL BE
GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE
STATE OF TEXAS.

KT SPEARS CREEK, LLC

By:    _____
Name:  Kyle Tauch
Title: Mgr.

*Signature Page to Credit Agreement*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | |
| | § | |
| Debtor. | § | Chapter 11 |

**FINAL STIPULATION AND ORDER
REGARDING CASH USAGE BY DEBTOR**
[This Interim Order relates to Docket. Nos. 18 and 23]

KT Speers Creek, LLC, debtor in possession (the "Debtor") in the above-styled bankruptcy case (the "Case") and RBC Bank (USA). f/k/a RBC Centura Bank ("RBC Bank") (collectively, the "Parties") stipulate as follows:

1.     The Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 3, 2011 (the "Petition Date"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (M).

2.     The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Note") between the Debtor and RBC Bank in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008. As of the Petition Date, the Debtor's obligation under the RBC Note was $22,646,397.88, plus interest at an allowable rate. As security for the RBC Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering the property located in Richland County, South Carolina, including the Greenhill Parrish Apartment Complex (the "Greenhill

Apartments"). The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008

3.      RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025, which sought to foreclose its mortgage and security interest and obtain a deficiency judgment.

4.      On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property, including the Greenhill Apartments and rents and profits therefrom (the "Property"). The Greenhill Apartments were in receivership (the "Receivership") pursuant to the Order of the Court of Common Pleas of Richland County, South Carolina and are managed by GREP Atlantic, L.P. (the "Property Manager") at the time of the filing of the Petition.

5.      On May 18, 2011, the Debtor filed an Emergency Motion for Entry of Stipulation and Order Regarding Receivership ("Cash Usage Motion") [Docket No. 18]. In connection with the Cash Usage Motion, the Debtor and RBC entered into a Stipulation and Order Regarding Receivership ("Cash Usage Stipulation") wherein RBC agreed not to seek dismissal of this Case, relief from the automatic stay or transfer of venue during May 2011, but specifically reserved its right to pursue those claims for relief and others after May 31, 2011. In exchange, the Debtor agreed, among other relief, not to pursue turnover in accordance with Bankruptcy Code § 543 and to allow the Receiver to collect rents and pay operating expenses for the Greenhill Apartments. The Court entered the Cash Usage Stipulation on May 24, 2011 [Docket No. 23]

("Cash Usage Stipulation").  The Cash Usage Stipulation was continued through this Court's order entered on June 21, 2011 (Docket No. 67).

6.    On June 10, 2011, the Debtor and RBC Bank filed a Joint Motion for Entry of Stipulation and Agreed Order Regarding Relief from the Automatic Stay (Docket No. 59) ("Joint Motion").  Pursuant to the Joint Motion, RBC Bank and the Debtor sought the entry of a Stipulation and Agreed Order Regarding Relief from the Automatic Stay ("Stay Stipulation), which terminated the Automatic Stay so long as RBC Bank would forbear from enforcement of its judgment against the Debtor and others until 5:00 p.m. on December 1, 2011.

7.    The proposed Stay Stipulation provided that the provisions contained therein were mutually dependent and nonseverable from obtaining an order extending the relief under the Cash Usage Stipulation (Docket No. 23).  The extension of the Cash Usage Stipulation would have provided that the Receiver would remain in place through December 1, 2011, or until the repayment of RBC Bank, whichever occurred first.

8.    The office of the U.S. Trustee for the Southern District of Texas has indicated that it opposes the continuation of the Receiver in the bankruptcy Case.

9.    The Parties have, therefore, agreed to enter into an amended Cash Usage Stipulation that eliminates the Receiver, retains the Property Manager, and allows the Debtor to continue to operate in strict compliance with the budget attached hereto as Exhibit A (the "Final Cash Usage Stipulation").  The Parties agree that entry of this Final Cash Usage Stipulation shall be mutually dependent and nonseverable from the proposed amended Stay Relief Stipulation [Docket No. __].

10.    As part of this Final Cash Usage Stipulation, RBC has agreed not to seek dismissal of this Case or transfer of venue through December 1, 2011, but specifically reserves

its right to pursue these claims for relief and others after December 1, 2011 and further reserves the right to pursue such matters in the event that the Stay Relief Stipulation is not entered by the Court.

11.    The Parties agree that the Final Cash Usage Stipulation shall be in effect through and including December 1, 2011.

12.    The Debtor and RBC agree to allow the Property Manager to remain in place and to continue to operate the Greenhill Apartments and to collect the rents and profits therefrom and make payments of the ordinary operating expenses in accordance with  the attached proposed budget.  In the event the total operating expenses exceed the proposed budget by more than 15%, then, in that event, the Property Manager shall submit an explanation and request for the budget variance to both counsel for the Debtor and counsel for RBC Bank.  Provided no objection to the variance is raised within __ hours notice, then the Property Manger shall proceed as requested. If either the Debtor or RBC Bank wishes to object, they shall first seek to resolve the objection without intervention of the court.  In the event that the objection cannot be resolved, then the objecting party may file an objection to Proposed Cash Usage and schedule it for hearing on the next available court date.

13.    The Debtor agrees that RBC will continue to receive all Net Operating Income (being the amount of rents collected less the operating expenses for the Greenhill Apartments) generated through December 1, 2011, or an earlier date pursuant to which RBC's Indebtedness has been indefeasibly paid.  In no case shall any cash be turned over to the Debtor without further order of this Court.

14.    RBC Bank agrees not to seek dismissal of this Case, relief from the automatic stay or transfer of venue through the period ending December 1, 2011 and specifically reserves

its right to pursue these forms of relief, and any others, following the expiration of such date.

15.    The Debtor agrees that the post-petition rents and profits generated by Greenhill Apartments do not constitute property of the estate.

16.    Accordingly, the Property Manager has authority to use funds in which RBC Bank holds a first priority security interest ("Cash Usage"), on the terms and conditions provided for in this Final Cash Usage Stipulation through and including December 1, 2011.  Any continued Cash Usage thereafter shall be subject to further hearing and order of this Court, or written agreement among RBC Bank and the Debtor, as memorialized in a stipulation filed with this Court.

17.    In addition, the Property Manager has authority to continue to use the existing Bank Accounts,[1] cash management procedures and policies and any business forms necessary to operate the Greenhill Apartments, including paying prepetition debts incurred by the Receiver, paying vendors in the ordinary course of business and to otherwise comply with the terms of the Final Cash Usage Stipulation and any and all related orders entered by this Court.  All of the banks at which the Bank Accounts are maintained, including but not limited to, RBC (the "Cash Management Banks"), are authorized and directed to continue, maintain, service and administer the Bank Accounts.

18.    Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Cash Usage Motion is appropriate.

19.    Under the circumstances, notice of the Cash Usage Motion was appropriate and sufficient for the limited purpose of this Final Cash Usage Stipulation..

---

[1] The following bank accounts (the "Bank Accounts") are controlled by the Receiver and the Property Manager and used to collect, hold and transmit funds related to the Greenhill Apartments.
- RBC Account No. XX-XXX-617-7 (Held by the Receiver)
- Bank of America Account No. XXXX-XXXX-6757 (Held by the Property Manager)
- Bank of America Account No. XXXX-XXXX-3393  (Held by the Property Manager)

APPROVED AND ENTRY REQUESTED:


By:_____          By:_____
Constance L. Young                    Matthew S. Okin
**JOHNSTON, ALLISON & HORD, PA**      Texas Bar #00784695
1065 East Morehead Street             Maggie D. Conner
Charlotte, North Carolina  28204      Texas Bar. #24038439
Tel:  704.998.2259                    **OKIN ADAMS & KILMER LLP**
Fax:  704.376.1628                    1113 Vine St., Suite 201
                                      Houston, TX  77002
                                      Tel:  713- 228-4100
Joseph G. Epstein                     Fax:  888-865-2118
**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002                  **PROPOSED ATTORNEYS FOR THE**
Tel:  713.650.2740 Direct             **DEBTOR IN POSSESSION**
Fax: 713.650.2400 Fax


**COUNSEL FOR RBC**


The above Final *Stipulation and Order Authorizing Cash Usage* is approved and its terms

are so ORDERED.


Signed this _____ day of _____ 2011.


_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

*Quarterly US Trustee's Fees from July 1, 2011 - November 30, 2011 are also included in budget.

Scottsdale Resort Conference Center(?)
Budget Comparison Cash Flow

4 mos. April YTD

5/12/2011 9:17 AM

| Account | Description | PTD Actual | PTD Budget | Variance | % Var | YTD Actual | YTD Budget | Variance | % Var | Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| 41000-000 | Market Rent | 228,610.00 | 228,150.00 | 460.00 | 0.20 | 905,910.00 | 906,450.00 | -460.00 | 0.05 | 2,728,350.00 |
| 41020-000 | Loss to Lease | -2,935.00 | -2,806.98 | -86.02 | -2.32 | -6,830.00 | -7,171.83 | 3,241.83 | 32.65 | -17,511.69 |
| 41020-999 | Potential Rent | 225,675.00 | 225,287.02 | 391.98 | 0.17 | 902,080.00 | 899,276.17 | 2,601.83 | 0.31 | 2,723,908.31 |
| 41091-000 | One-Time Concessions | -5,559.63 | -3,400.00 | -2,159.63 | -63.25 | -19,165.46 | -6,103.00 | -13,056.46 | -214.11 | -19,000.00 |
| 41092-000 | Renewal Concessions | -2,950.00 | -1,200.00 | -1,700.00 | 49.48 | -3,650.00 | -12,000.00 | 8,350.00 | 69.58 | -41,100.00 |
| 41093-000 | Recurring Concessions | -26,270.94 | -25,006.25 | -1,264.69 | -4.82 | -97,559.23 | -99,242.75 | 1,284.52 | 1.29 | -395,975.00 |
| 41094-000 | Preferred Employer Discount | -86.67 | -675.00 | 588.33 | 44.38 | -5,214.92 | -3,200.00 | -2,014.92 | -62.97 | -9,300.00 |
| 41095-000 | Vacancy Loss | -19,605.88 | -21,308.75 | 2,703.07 | 20.21 | -73,964.09 | -61,956.81 | -14,409.04 | -23.81 | -154,903.51 |
| 41110-000 | Employee Units | -118.47 | -415.00 | 296.53 | 71.21 | -731.67 | -1,590.00 | 858.33 | 52.77 | -4,989.00 |
| 41120-000 | Model & Storage Units | -1,955.00 | 0.00 | 0.00 | 0.00 | -4,160.00 | -4,160.00 | 0.00 | 0.00 | -12,000.00 |
| 41125-000 | Guest Suite | -456.17 | -10.00 | -395.17 | -3,951.70 | -2,385.33 | -43.00 | -2,365.33 | -5,693.32 | -120.00 |
| 41150-000 | Bad Debt - Rent | -5,490.49 | -4,745.00 | -745.49 | -15.71 | -27,703.23 | -19,695.00 | -7,693.23 | -38.60 | -57,835.00 |
| 41155-000 | Bad Debt Recovery - Rent | 1,568.88 | 2,000.00 | -431.12 | -21.56 | 3,313.80 | 4,200.00 | -886.20 | -21.10 | 16,920.00 |
| 41999-999 | Total Rental Inc. - Residential | 174,819.63 | 174,286.02 | 551.61 | 0.32 | 668,889.21 | 696,024.41 | -27,135.20 | -3.90 | 2,117,096.80 |
| 47999-999 | Total Other Rental Inc. - Commercial | 174,819.63 | 174,286.02 | 551.61 | 0.32 | 668,889.21 | 696,024.41 | -27,135.20 | -3.90 | 2,117,096.80 |
| | | | | | | | | | | |
| | Other Income - Residential | | | | | | | | | |
| 43000-000 | Access Gate Remote Income | 90.00 | 60.00 | 30.00 | 50.00 | 310.00 | 210.00 | 100.00 | 47.62 | 660.00 |
| 43005-000 | Administrative Fees | 1,515.00 | 1,275.00 | 240.00 | 18.83 | 7,865.00 | 2,485.00 | 5,380.00 | 216.50 | 10,530.00 |
| 43010-000 | Application Fees | 405.00 | 280.00 | 125.00 | 44.64 | 1,755.00 | 940.00 | 815.00 | 86.70 | 3,180.00 |
| 43020-000 | Cable TV Commissions | 1,000.00 | 1,000.00 | 0.00 | 0.00 | 2,300.75 | 2,040.00 | 260.75 | 13.04 | 4,100.00 |
| 43055-000 | Club Room Rental Fees | 0.00 | 35.00 | -35.00 | N/A | 515.00 | 225.00 | 290.00 | 128.89 | 900.00 |
| 43060-000 | Damages | 325.00 | 790.00 | -465.00 | -58.86 | 2,641.29 | 3,160.00 | -518.71 | -16.41 | 9,480.00 |
| 43090-000 | Deposit Forfeitures | 0.00 | 1,000.00 | -1,000.00 | -100.00 | 0.00 | 2,000.00 | -2,000.00 | -100.00 | 6,000.00 |
| 43097-000 | Eviction Fees | 170.00 | 200.00 | -30.00 | -15.00 | 400.00 | 880.00 | -480.00 | -54.55 | 2,640.00 |
| 43109-000 | Garage Income | 5,147.17 | 5,895.00 | -727.83 | -12.35 | 19,560.76 | 21,976.00 | -2,389.73 | -10.88 | 66,295.00 |
| 43110-000 | Guest Suite Income | 65.00 | 0.00 | 65.00 | N/A | 65.00 | 0.00 | 65.00 | N/A | 0.00 |
| 43115-000 | Late Charge Fees | 1,953.50 | 1,700.00 | 155.50 | 9.15 | 7,462.56 | 8,700.00 | -1,237.35 | -14.22 | 26,900.00 |
| 43145-000 | Lease Cancellation Fee | 735.00 | 1,000.00 | -265.00 | -26.50 | 735.00 | 2,000.00 | -3,265.00 | -81.62 | 12,900.00 |
| 43160-000 | Lock / Key Income | 120.00 | 35.00 | 85.00 | 242.86 | 265.00 | 145.00 | 120.00 | 82.71 | 420.00 |
| 43170-000 | Month-to-Month Premiums | 0.00 | 150.00 | -150.00 | -100.00 | 0.00 | 305.00 | -290.00 | -95.57 | 700.00 |
| 43180-000 | NSF Fees | 240.00 | 90.00 | 150.00 | 166.67 | 320.00 | 450.00 | -130.00 | -26.67 | 1,265.00 |
| 43210-000 | Pet Fees - Non-Refundable | 1,650.00 | 1,100.00 | 550.00 | 50.00 | 3,800.00 | 2,925.00 | 1,775.00 | 33.62 | 10,725.00 |
| 43211-000 | Pet Rent | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 | N/A | 0.00 |
| 43230-000 | Short Term Premiums | 20.00 | 40.00 | -20.00 | 100.00 | 270.00 | 160.00 | 40.00 | -25.00 | 450.00 |
| 43235-000 | Storage Rent | 190.00 | 240.00 | -60.00 | -25.00 | 721.30 | 960.00 | -238.70 | -24.86 | 2,400.00 |
| 43255-000 | Telephone Commissions | 0.00 | 50.00 | -50.00 | -100.00 | 0.00 | 100.00 | -100.00 | -100.00 | 675.00 |
| 43256-000 | Transfer Fee | -250.00 | 0.00 | -250.00 | N/A | 1,095.00 | 500.00 | 590.00 | 139.00 | 2,590.00 |
| 43265-000 | Vending Income | 0.00 | 30.00 | -30.00 | -100.00 | 107.97 | 58.00 | 47.97 | 79.95 | 129.00 |
| 43267-000 | Vendor Rebates | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.00 | -90.00 | -100.00 | 270.00 |
| 43270-000 | Washer / Dryer Rental Income | 160.00 | 50.00 | 90.00 | 180.00 | 480.00 | 200.00 | 280.00 | 140.00 | 900.00 |
| 43599-999 | Total Other Inc. - Residential | 13,437.67 | 14,935.00 | -1,497.33 | -10.03 | 50,639.11 | 52,555.00 | -1,995.89 | -3.86 | 163,025.00 |
| 43799-999 | Total Other Inc. - Commercial | 188,257.30 | 189,203.02 | -945.52 | -0.52 | 719,448.32 | 748,579.41 | -29,131.09 | -3.89 | 2,280,723.80 |
| | | | | Page 1 of 5 | | | | | | |
| | | | | | | | | | | |
| | EXPENSES | | | | | | | | | |
| 50000-000 | Payroll & Benefits | | | | | | | | | |
| 51001-000 | Management - Salaries | 4,576.85 | 4,715.46 | -161.39 | -3.69 | 17,216.38 | 17,661.64 | -54.54 | -0.31 | 57,470.95 |
| 51010-000 | Assistant Management - Salaries | 2,398.65 | 2,284.00 | -113.85 | -4.98 | 9,164.95 | 9,139.20 | -25.25 | -0.28 | 29,752.40 |
| 51015-000 | Leasing - Salaries | 2,018.37 | 1,876.80 | -151.57 | -8.41 | 7,369.34 | 7,507.20 | -463.14 | -6.16 | 24,398.40 |

5/12/2011 9:17 AM

## Budget Comparison Cash Flow

Fairwind Ranch Division (Unposted)
Index = Act'l

| Account | Name | PTD Actual | PTD Budget | Variance | % Var | YTD Actual | YTD Budget | Variance | % Var | Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| 51000-000 | Bonuses | 2,250.01 | 2,250.00 | -0.01 | 0.00 | 5,427.01 | 6,400.00 | 972.99 | 15.20 | 22,045.00 |
| 51030-001 | Quarterly Bonuses | 1,318.28 | 2,560.00 | 1,241.72 | 48.50 | 2,516.52 | 4,992.00 | 2,475.42 | 48.80 | 10,992.00 |
| 51040-002 | Maintenance - Salaries | 3,475.52 | 3,567.55 | 92.03 | 2.58 | 14,423.83 | 14,275.20 | -153.63 | -1.06 | 46,378.16 |
| 51045-003 | Assistant Maintenance - Salaries | 1,999.26 | 2,185.25 | 195.99 | 8.97 | 8,293.74 | 8,741.60 | 447.26 | 5.12 | 28,698.24 |
| 51070-000 | Payroll Taxes | 778.50 | 1,344.62 | 566.14 | 42.03 | 7,188.52 | 6,182.13 | -1,066.39 | -16.28 | 17,245.03 |
| 51090-000 | 401k Contributions | 166.24 | 168.59 | 2.35 | 1.39 | 606.44 | 674.36 | 69.92 | 10.37 | 2,191.66 |
| 51110-000 | Employee Burden | 2,356.91 | 1,203.82 | -1,153.09 | -95.69 | 5,840.34 | 2,729.62 | -3,129.94 | -7.05 | 13,106.11 |
| 51120-000 | Group Insurance | 1,485.00 | 2,475.00 | 990.00 | 40.00 | 5,845.00 | 9,085.00 | 2,415.00 | 38.96 | 29,258.80 |
| 51150-000 | Contract Staffing - Admin | 0.00 | 0.00 | 0.00 | N/A | 0.02 | 300.00 | 300.00 | 100.00 | 300.00 |
| 51160-000 | Contract Staffing - Maintenance | 606.24 | 0.00 | -606.24 | N/A | 606.24 | 0.00 | -606.24 | N/A | 0.00 |
| 51599-999 | Total Payroll & Benefits | 13,478.75 | 24,371.89 | 932.14 | 3.66 | 84,811.36 | 89,953.33 | 5,041.97 | 5.61 | 202,713.01 |
| | | | | | | | | | | |
| 51600-199 | EXPENSES | | | | | | | | | |
| | | | | | | | | | | |
| 51600-199 | General Maintenance Expense | | | | | | | | | |
| | | | | | | | | | | |
| 52000-000 | Repairs & Maintenance | | | | | | | | | |
| 52001-000 | Access Gate Expense | 726.73 | 200.00 | -526.73 | -263.36 | 801.73 | 1,300.00 | 498.27 | 38.33 | 3,825.00 |
| 52020-000 | Appliance Repairs | 87.17 | 125.00 | 37.83 | 30.26 | 553.77 | 455.00 | -100.77 | -21.44 | 1,185.00 |
| 52040-000 | Building - Exterior | 0.00 | 250.00 | 250.00 | 100.00 | 0.00 | 300.00 | 300.00 | 100.00 | 870.00 |
| 52050-000 | Building - Interior | 54.88 | 36.00 | -18.88 | -56.80 | -126.63 | 100.00 | 31.33 | 20.36 | 600.00 |
| 52055-000 | Carpet Cleaning Repairs - Occupied | 365.00 | 150.00 | -215.00 | -205.83 | 105.00 | 100.00 | -5.00 | -1.67 | 1,180.00 |
| 52060-000 | Common Area Repairs | 0.00 | 375.00 | 375.00 | 100.00 | 88.44 | 555.00 | 466.56 | 84.05 | 915.00 |
| 52070-000 | Electrical Supplies / Repairs | 0.00 | 40.00 | 40.00 | 100.00 | 0.08 | 300.00 | 270.00 | 100.00 | 660.00 |
| 52083-000 | Exterior Wall / Fence Repair | 0.00 | 0.05 | 0.05 | N/A | 0.00 | 0.00 | 0.00 | N/A | 100.00 |
| 52290-000 | Garage Repairs & Maintenance | 0.00 | 30.00 | 30.00 | 100.00 | 0.00 | 170.00 | 170.00 | 100.00 | 360.00 |
| 52100-000 | Golf Cart Repairs | 0.00 | 0.00 | 0.00 | N/A | 6.00 | 16.00 | 10.00 | 100.00 | 430.00 |
| 52110-000 | HVAC Supplies / Repairs | 76.36 | 687.00 | 608.64 | 95.60 | 339.24 | 1,823.00 | 1,483.76 | 81.39 | 6,129.00 |
| 52130-000 | Lighting Supplies / Repairs | 153.96 | 108.00 | -44.96 | -41.63 | 433.45 | 462.00 | 28.55 | 6.18 | 1,386.00 |
| 52140-000 | Lock & Keys | 0.00 | 33.00 | 33.00 | 100.00 | 31.91 | 86.00 | 54.09 | 62.90 | 215.00 |
| 52150-000 | Maintenance Supplies | 13.00 | 120.00 | 107.00 | 89.17 | 330.13 | 240.00 | -99.13 | -41.30 | 670.00 |
| 52190-000 | Parking Lot (Misc) / Repairs | 0.00 | 180.00 | 180.00 | 100.00 | 0.00 | 180.00 | 180.00 | 100.00 | 360.00 |
| 52199-000 | Plumbing Supplies / Repairs | 0.70 | 170.00 | 161.30 | 94.88 | 192.38 | 750.00 | 557.62 | 74.35 | 2,320.00 |
| 52210-000 | Safety & Fire Supplies / Maint. | 0.00 | -60.20 | 60.00 | 100.00 | 38.07 | 750.00 | 711.93 | 94.92 | 5,955.04 |
| 52220-000 | Signage Supplies / Repairs | 10.50 | 0.00 | -10.50 | N/A | 160.25 | 0.00 | -160.25 | N/A | 0.00 |
| 52239-000 | Small Tools & Equipment | 193.09 | 0.00 | -193.95 | N/A | 616.47 | 1,000.00 | 383.58 | 38.36 | 1,000.00 |
| 52242-000 | Sundeler / Irrigation Supplies / Repairs | 0.00 | 0.00 | 0.05 | N/A | 0.00 | 80.00 | 80.00 | 100.00 | 240.00 |
| 52299-000 | Total Repairs & Maintenance | 1,579.25 | 2,333.00 | 753.75 | 32.31 | 4,026.41 | 8,781.00 | 4,754.59 | 54.15 | 28,356.00 |
| | | | | | | | | | | |
| 52400-000 | Make - Ready / Redecorating | | | | | | | | | |
| 52610-000 | Blinds / Drapes Repair | 27.19 | 40.00 | 12.81 | 32.02 | 179.47 | 160.00 | -19.47 | -12.17 | 480.00 |
| 52620-000 | Carpet Cleaning / Repair - Vacant | 1,015.00 | 935.00 | -180.00 | -21.66 | 5,492.00 | 2,080.00 | -2,410.00 | -115.87 | 8,820.00 |
| 52645-000 | Cleaning Supplies | 129.33 | 65.00 | -64.27 | -105.38 | 243.88 | 240.00 | -3.88 | -1.62 | 725.00 |
| 52644-000 | Drywall Repairs | 0.00 | 0.00 | 0.00 | N/A | 9.00 | 208.99 | 239.00 | 100.00 | 480.00 |
| 52650-000 | Maid / Cleaning Service | 876.00 | 952.00 | 82.00 | 8.61 | 3,675.00 | 2,175.00 | -2,499.00 | -88.80 | 9,724.00 |
| 52660-000 | Paint Contractor | 2,040.00 | 2,352.00 | 312.00 | 13.27 | 8,106.00 | 5,376.00 | -2,724.00 | -58.07 | 21,024.00 |
| 52670-000 | Painting Supplies | 172.89 | 157.50 | -15.39 | -9.77 | 703.69 | 360.00 | -343.96 | -95.44 | 1,698.75 |
| 52690-000 | Vinyl / Tile Repair - Vacant | 0.00 | 0.00 | 0.00 | N/A | 52.89 | 0.00 | -52.89 | N/A | 0.00 |
| 52799-000 | Total Make - Ready / Redecorating | 4,268.31 | 4,396.50 | 148.19 | 3.37 | 17,445.84 | 16,992.00 | -6,853.84 | -64.71 | 45,976.75 |

5/12/2011 9:17 AM

Covenant Fails Company Inc md
**Budget Comparison Cash Flow**
Period = Apr 2011
$000 = Actual + Budget

Page 3 of 5

| | | PTD Actual | PTD Budget | Variance | % Var | YTD Actual | YTD Budget | Variance | % Var | Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Recreational Amenities** | | | | | | | | | |
| 52800-000 | Business Center | 0.00 | 0.00 | 0.00 | N/A | 42.39 | 191.00 | 59.21 | 58.05 | 204.00 |
| 52810-000 | Cab Room | 95.23 | 95.23 | 0.00 | 0.00 | 389.92 | 380.92 | 0.00 | 0.00 | 1,141.76 |
| 52830-000 | Exercise / Weight Room | 85.00 | 225.00 | 140.00 | 62.22 | 166.40 | 503.00 | 393.99 | 78.77 | 1,100.00 |
| 52860-000 | Pool Supplies / Maint | 118.42 | 375.00 | 256.58 | 68.42 | 276.64 | 525.00 | 248.36 | 47.31 | 1,775.70 |
| 53870-005 | Video Library | 0.00 | 40.00 | 40.00 | 100.00 | 0.00 | 160.00 | 160.00 | 100.00 | 480.00 |
| 53820-003 | Other Recreational Amenities | 0.00 | 0.00 | 0.00 | N/A | 524.41 | 180.00 | -524.41 | N/A | 250.00 |
| 52999-999 | Total Recreational Amenities | 298.65 | 735.23 | 436.53 | 59.38 | 1,331.16 | 1,647.92 | 336.76 | 20.19 | 4,951.76 |
| | **Contract Services** | | | | | | | | | |
| 53000-000 | Fire Alarm Contract | 31.17 | 31.00 | -0.17 | -0.55 | 124.68 | 124.00 | -0.68 | -0.55 | 372.00 |
| 53050-000 | Intrusion Alarm Contract | 19.00 | 19.00 | 0.00 | 0.00 | 76.00 | 76.00 | 0.00 | 0.00 | 228.00 |
| 53085-000 | Janitorial Contract | 400.00 | 430.00 | 30.00 | 6.98 | 1,740.00 | 1,820.00 | 80.00 | 4.40 | 5,560.00 |
| 53092-000 | Lake Maintenance Contract | 40.00 | 40.00 | 0.00 | 0.00 | 160.00 | 160.00 | 0.00 | 0.00 | 485.00 |
| 53100-000 | Landscape - Seasonal Contract | 6,500.00 | 6,500.00 | 0.00 | 0.00 | 6,500.00 | 6,500.00 | 0.00 | 0.00 | 18,600.00 |
| 53155-000 | Landscape Maintenance Contract | 2,335.25 | 2,335.00 | -0.25 | 0.00 | 9,390.00 | 9,390.00 | 0.00 | 0.00 | 27,960.00 |
| 53130-000 | Patrol / Courtesy Officer Contract | 452.00 | 553.00 | 101.00 | 17.94 | 566.72 | 2,252.00 | 1,685.66 | 74.85 | 6,756.00 |
| 53160-000 | Pest Control Contract | 276.00 | 276.00 | 0.00 | 0.00 | -1,104.00 | 1,104.00 | 0.00 | 0.00 | 3,312.00 |
| 53175-000 | Termite Contract | 0.00 | 0.00 | 0.00 | N/A | 366.00 | 0.00 | -360.00 | N/A | 3,730.00 |
| 53180-000 | Trash Removal Contract | -1,121.67 | 1,435.00 | -683.67 | -85.67 | 3,871.65 | 4,306.00 | -508.55 | 23.36 | 12,565.00 |
| 53185-000 | Trash Removal Rebill | -814.00 | -866.25 | -52.25 | -6.03 | -3,166.00 | -3,386.25 | -220.25 | -6.51 | -35,839.00 |
| 53210-000 | Washer / Dryer Rental Contract | 2,626.05 | 1,840.00 | -788.05 | -42.83 | 9,557.31 | 8,080.00 | -1,477.31 | -18.28 | 18,446.00 |
| 53299-999 | Total Contract Services | 12,988.89 | 12,192.75 | -797.14 | -6.54 | 39,909.35 | 40,909.75 | 792.79 | 2.34 | 37,143.00 |
| 53999-999 | Total General Maintenance Expenses | 19,226.10 | 19,657.48 | 541.38 | 2.75 | 52,409.37 | 51,356.67 | -1,056.70 | -2.05 | 166,396.51 |
| | **Advertising / Marketing / Promotions** | | | | | | | | | |
| 54000-000 | Advertising - Internet | 890.25 | 545.75 | -342.56 | -62.76 | 2,670.50 | 2,183.00 | -487.50 | -31.49 | 6,545.00 |
| 54010-000 | Advertising - Other Sources | 143.65 | 143.65 | 0.00 | 0.00 | 574.60 | 574.60 | 0.00 | 0.00 | 1,723.80 |
| 54020-000 | Advertising - Property Website | 0.00 | 12.00 | 12.00 | 100.00 | 0.00 | 12.00 | 12.00 | 100.00 | 24.00 |
| 54030-000 | Advertising - Trade Publication | 1,565.25 | 1,565.25 | 0.00 | 0.00 | 6,261.00 | 7,805.60 | 1,515.00 | 16.79 | 20,338.00 |
| 54040-000 | Brochures / Floor Plans | 0.00 | 850.00 | 850.00 | 100.00 | 0.00 | 850.00 | 850.00 | 100.00 | 850.00 |
| 54050-000 | Call Center Service | 520.00 | -450.00 | -880.00 | -196.98 | 2,356.50 | 1,775.00 | -983.50 | -177.14 | 6,475.00 |
| 54060-000 | Guest Suite Expense | 6.00 | 6.00 | 0.00 | 0.00 | -22.42 | 22.42 | -22.42 | N/A | 0.00 |
| 54080-000 | Locator Fees | 795.00 | 289.00 | 0.00 | 0.00 | 578.00 | 578.00 | 0.00 | 0.00 | 1,156.00 |
| 54090-000 | Marketing / Promotions | 165.30 | 168.00 | 2.70 | 1.61 | 485.48 | 935.00 | 439.52 | 47.52 | 2,325.00 |
| 54095-000 | Marketing - Printing Expense | 129.45 | 72.00 | -54.45 | -79.74 | 986.83 | 288.00 | -399.80 | -110.84 | 869.00 |
| 54100-000 | Model Expense | 95.21 | 95.23 | 0.20 | 0.00 | 380.92 | 380.72 | 0.00 | 0.00 | 1,142.76 |
| 54105-000 | Prospect Refreshments | 16.56 | 62.00 | 45.44 | 73.29 | 148.17 | 248.00 | 99.53 | 40.13 | 744.00 |
| 54119-000 | Resident Activities | 496.03 | 250.00 | -246.03 | -98.41 | 516.46 | 872.00 | 153.54 | 22.92 | 2,600.00 |
| 54120-000 | Resident Referral Fees | 600.00 | 100.00 | -200.00 | -100.90 | 1,600.00 | 1,200.00 | -600.00 | -50.00 | 3,600.00 |
| 54122-000 | Resident Retention | 5.62 | 95.00 | 89.38 | 94.06 | 197.03 | 780.00 | 582.97 | 74.74 | 1,395.00 |
| 54135-000 | Shopping Reports | 140.00 | 35.00 | -105.00 | -300.00 | 245.00 | 245.00 | 0.00 | 0.00 | 840.00 |
| 54136-000 | Signage | 186.29 | 155.00 | -36.79 | -24.53 | 210.98 | 355.00 | 79.03 | 73.56 | 760.00 |
| 54999-999 | Total Advertising / Marketing / Promotions | 5,734.13 | 5,280.88 | -172.25 | -3.41 | 17,154.32 | 13,337.32 | 1,293.20 | 6.55 | 50,387.56 |
| 58000-000 | **General & Administrative** | | | | | | | | | |
| 58001-000 | Office Expenses | | | | | | | | | |

5/12/2011 9:17 AM

## Budget Comparison Cash Flow

| Account | Description | PTD Actual | PTD Budget | Variance | % Var | YTD Actual | YTD Budget | Variance | % Var | Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| 56200-000 | Answering / On-hold Service | 86.50 | 80.00 | 6.00 | 0.00 | 356.00 | 350.00 | 6.00 | 0.56 | 1,056.00 |
| 56030-000 | Copy Machine Contract | 290.06 | 150.00 | -140.06 | -95.09 | 1,241.66 | 1,026.00 | -215.66 | -20.96 | 2,464.00 |
| 56050-000 | Forms | 42.00 | 156.00 | 114.00 | 73.08 | 271.77 | 574.00 | 302.23 | 52.65 | 1,320.00 |
| 56070-000 | Office Equipment - Rental / Repair | 44.45 | 45.00 | 0.05 | 0.11 | 179.80 | 180.00 | 0.20 | 0.11 | 540.00 |
| 56080-000 | Office Supplies | 42.69 | 50.00 | 7.31 | 14.62 | 88.48 | 200.00 | 111.52 | 55.76 | 600.00 |
| 56090-000 | Pagers / Cellular Phones | 10.00 | 10.00 | 0.00 | 0.00 | 120.00 | 120.00 | 0.00 | 0.00 | 360.00 |
| 56100-000 | Postage & Delivery | 123.61 | 180.00 | 76.39 | 43.07 | 572.69 | 728.00 | 155.31 | 21.33 | 2,186.00 |
| 56105-000 | Printing Expense | 38.95 | 122.00 | 83.05 | 68.07 | 186.92 | 488.00 | 301.08 | 61.11 | 1,464.00 |
| 56107-000 | Resident Screening | 175.20 | 175.20 | 0.00 | 0.00 | 708.97 | 700.80 | -8.17 | -1.17 | 2,102.00 |
| 56110-000 | Telephone Expense | 688.49 | 957.00 | -52.49 | -3.40 | 3,825.40 | 3,828.00 | 2.60 | 0.07 | 11,484.00 |
| 56199-099 | Total Office Expenses | 1,654.95 | 1,965.20 | 110.25 | 5.61 | 7,549.09 | 8,200.80 | 651.71 | 7.95 | 24,005.40 |
| | **Other General & Administrative** | | | | | | | | | |
| 55210-002 | Assoc. Fees / Membership Dues | 0.00 | 0.00 | 0.00 | N/A | 487.00 | 467.00 | -20.00 | -4.26 | 1,342.00 |
| 59825-000 | Bank Charges | 157.15 | 216.00 | 78.85 | 13.35 | 659.98 | 864.20 | 204.42 | 23.61 | 2,592.00 |
| 56320-000 | Computer Expense | 300.00 | 335.00 | 35.00 | 18.45 | 1,200.00 | 1,340.50 | 140.00 | 10.45 | 4,076.00 |
| 56425-000 | Data Storage | 0.00 | 55.00 | 95.00 | 100.00 | 0.60 | 260.00 | 260.00 | 100.00 | 780.00 |
| 56267-000 | Employee Meetings | 0.00 | 10.01 | 10.05 | 100.00 | 3.94 | 40.00 | 36.06 | 90.15 | 126.00 |
| 56250-000 | Employee Recruitment | 108.52 | 0.00 | -108.52 | N/A | 357.10 | 0.00 | -357.10 | N/A | 216.00 |
| 56253-000 | Employee Recognition | 0.00 | 0.00 | 0.00 | N/A | -375.00 | 500.00 | 875.00 | 175.00 | 500.00 |
| 56255-000 | Entertainment Expense | 22.53 | 0.00 | -22.53 | N/A | 22.53 | 0.00 | -22.53 | N/A | 0.00 |
| 56260-000 | Eviction Fees | 110.45 | 290.00 | 79.69 | 38.86 | 1,085.56 | 840.00 | -244.56 | -29.11 | 2,880.00 |
| 56275-000 | Legal Fees | 0.00 | 0.00 | 0.00 | N/A | 764.00 | 0.00 | -264.00 | N/A | 0.00 |
| 56280-000 | Licenses / Fees / Permits | 0.00 | 0.00 | 0.00 | N/A | 2,075.69 | 2,625.00 | 559.00 | -9.55 | 2,905.00 |
| 56281-000 | Mileage Expense | 102.53 | 85.00 | -17.53 | -20.62 | 644.71 | 555.00 | 100.39 | 18.61 | 1,885.00 |
| 56290-000 | Training / Seminars | 250.00 | 290.00 | 40.09 | 13.79 | 1,000.00 | 1,100.09 | 160.00 | 13.79 | 3,480.00 |
| 56300-000 | Travel Expense | 0.00 | 100.00 | 100.00 | 100.00 | 8.50 | 350.00 | 341.50 | 97.57 | 1,000.00 |
| 56305-005 | Uniform Rental / Purchase | 286.50 | 575.00 | 294.50 | 51.22 | 299.67 | 575.00 | 275.36 | 47.89 | 1,150.00 |
| 56380-099 | Miscellaneous General / Admin | 0.04 | 72.00 | 72.00 | 100.00 | -47,159.00 | 288.00 | 287.20 | 99.72 | 864.00 |
| 56950-099 | Total Other General & Administrative | 1,271.61 | 1,948.00 | 576.19 | 29.59 | 6,240.43 | 9,894.50 | 1,523.57 | 15.45 | 23,224.00 |
| 56950-099 | Total General & Administrative | 3,226.56 | 3,913.20 | 686.64 | 17.55 | 15,889.52 | 18,084.80 | 2,175.28 | 12.04 | 47,820.40 |
| | **Utilities** | | | | | | | | | |
| 56920-000 | Electric - Common Areas | 3,537.95 | 4,180.00 | 622.05 | 14.88 | 16,101.42 | 17,126.00 | 944.58 | 5.53 | -6,366.00 |
| 56930-000 | Electric - Models | 33.93 | 100.00 | 66.07 | 66.07 | 422.81 | 475.00 | 22.19 | 4.67 | 1,425.00 |
| 56940-000 | Electric - Vacant Units | 1,591.13 | 1,700.00 | 108.95 | 6.41 | 3,963.55 | 7,300.00 | 2,063.55 | -28.27 | 16,800.00 |
| 59100-000 | Utility Repair Service Fees | 1,500.24 | 1,338.00 | -162.24 | -12.13 | 5,880.88 | 5,322.00 | -567.69 | -10.67 | 16,272.00 |
| 59110-000 | Water / Sewer | 10,293.82 | 10,195.00 | -18.82 | -0.18 | 40,925.71 | 40,740.00 | -135.71 | -0.33 | 122,220.00 |
| 59115-000 | Water / Sewer Recall | -13,331.73 | -10,210.00 | 3,181.73 | 31.15 | -47,199.06 | -9,840.00 | 6,329.06 | 15.54 | -122,572.00 |
| 59999-999 | Total Utilities | 3,495.31 | 7,293.00 | 3,797.69 | 52.07 | 25,594.11 | 20,123.00 | 4,528.89 | 15.03 | 89,563.00 |
| | **Management Fees** | | | | | | | | | |
| 61030-006 | Management Fees | 5,842.00 | 6,005.38 | 60.38 | 1.01 | 23,191.64 | 23,784.17 | 193.53 | 2.49 | 72,422.23 |
| 61999-999 | Total Management Fees | 5,842.00 | 6,005.38 | 60.38 | 1.01 | 23,191.64 | 23,784.17 | 593.52 | 2.49 | 72,422.22 |
| | **Taxes** | | | | | | | | | |
| 62010-000 | Ad Valorem Property Taxes | 24,159.00 | 23,357.50 | 1,202.50 | 4.76 | 96,605.02 | 99,015.00 | 2,415.00 | 2.44 | 291,875.00 |
| 62030-000 | Personal Property Taxes | 481.25 | 491.25 | 0.00 | 0.00 | 1,925.00 | 1,925.00 | 0.00 | 0.00 | 5,775.00 |

Page 4 of 5

5/12/2011 9:17 AM

Acquisition Planning Report(s)
**Budget Comparison Cash Flow**
Period - Apr 2011
Year - Accrual

| | | PTD Actual | PTD Budget | Variance | % Var | YTD Actual | YTD Budget | Variance | % Var | Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| 62500-0099 | Total Taxes | 24,531.25 | 25,838.75 | 1,307.50 | 4.67 | 98,525.00 | 100,940.00 | 2,415.00 | 2.39 | 307,696.00 |
| | **Insurance** | | | | | | | | | |
| 63000-0002 | Property Insurance | -457.36 | 2,214.50 | 2,651.86 | 119.78 | 5,885.79 | 8,648.00 | 2,759.21 | 31.99 | 26,364.00 |
| 63010-0002 | General Liability Insurance | 532.76 | 669.58 | 136.82 | 19.84 | 7,522.88 | 2,692.65 | 169.67 | 6.30 | 8,209.29 |
| 63020-0002 | Umbrella Liability Insurance | 27.72 | 191.92 | 164.72 | 85.52 | 576.04 | 748.40 | 172.36 | 23.13 | 2,284.76 |
| 63040-0002 | Boiler Insurance | -1.58 | 0.00 | -1.58 | N/A | 105.36 | 0.00 | -105.36 | N/A | 0.00 |
| 63050-0002 | Builder's Risk Insurance | -10.04 | 0.00 | 10.04 | N/A | 921.97 | 0.00 | -921.97 | N/A | 0.00 |
| 63090-0002 | Other Insurance | 0.00 | 0.00 | 0.00 | N/A | 18.66 | 0.00 | -18.66 | N/A | 0.00 |
| 63999-0099 | Total Insurance | 134.64 | 3,096.00 | 2,961.36 | 95.65 | 10,035.82 | 12,090.05 | 2,054.23 | 16.99 | 36,910.05 |
| 66578-1099 | Total Non - Reimbursable Expenses | 61,805.73 | 72,887.49 | 9,081.99 | 12.81 | 242,795.78 | 254,710.21 | 11,914.43 | 4.68 | 761,971.74 |
| 66593-0099 | Total Non - Reimbursable Expenses | 85,295.54 | 95,259.59 | 9,374.04 | 10.07 | 122,707.14 | 340,663.54 | 16,956.40 | 4.92 | 1,044,064.78 |
| 69999-000 | Total Opening / Non Recoverable Expenses | 95,205.54 | 95,259.59 | 9,974.04 | 10.47 | 327,707.14 | 344,663.54 | 16,956.40 | 4.92 | 1,044,684.78 |
| 69999-0099 | Net Operating Income | 102,971.96 | 93,943.44 | 9,028.52 | 9.61 | 391,741.18 | 403,515.87 | -12,274.69 | -3.01 | -1,236,939.02 |
| | **Routine Replacement Expense** | | | | | | | | | |
| 70000-000 | | | | | | | | | | |
| 71011-000 | Appliances - Dishwashers | 0.00 | 0.00 | 0.00 | N/A | 274.65 | 0.00 | -274.65 | N/A | 0.00 |
| 71010-000 | Appliances - Stove / Microwave / Range Hoods | 0.00 | 0.00 | 0.00 | N/A | 398.45 | 0.00 | -398.45 | N/A | 0.00 |
| 71020-000 | Carpet | 698.37 | 1,000.00 | 301.67 | 30.17 | 3,498.15 | 4,000.00 | 501.92 | 12.55 | 12,000.00 |
| 71035-000 | Ceiling Fans / Fixtures | 0.00 | 0.00 | 0.00 | N/A | 124.47 | 140.00 | 15.53 | 11.09 | 420.00 |
| 71037-000 | Countertops | 0.00 | 0.00 | 0.00 | N/A | 100.21 | 0.00 | -100.21 | N/A | 0.00 |
| 71110-000 | Mini-Blinds / Drapes | 0.00 | 195.00 | 195.00 | 100.00 | 39.00 | 780.00 | 740.64 | 94.99 | 2,340.00 |
| 71699-099 | Total Routine Replacement Expenses | 698.37 | 1,195.00 | 496.67 | 41.56 | 4,435.32 | 4,920.00 | 481.98 | 9.36 | 14,760.00 |
| 71690-099 | NOI After Replacements | 102,273.63 | 92,748.44 | 9,525.19 | 10.27 | 387,306.16 | 398,995.87 | -11,689.71 | -2.93 | -1,251,279.02 |
| 89999-999 | Net Income | 102,273.63 | 92,748.44 | 9,525.19 | 10.27 | 387,306.16 | 398,995.87 | -11,689.71 | -2.93 | -1,251,279.02 |
| | **ADJUSTMENTS** | | | | | | | | | |
| 11010-020 | Cash - Security Deposit | -250.00 | 0.00 | -250.00 | N/A | -378.00 | 0.00 | -378.00 | 0.00 | 0.00 |
| 12010-000 | Accounts Receivable | -6,379.55 | 0.00 | -6,379.55 | N/A | 9,238.84 | 0.00 | 9,238.84 | N/A | 0.00 |
| 12075-000 | A/R - Other | -1,814.00 | 0.00 | -1,814.00 | N/A | -2,628.00 | 0.00 | -2,628.00 | N/A | 0.00 |
| 12125-0005 | Allowance for Doubtful Accounts | -5,490.43 | 0.00 | -5,490.43 | N/A | -2,731.46 | 0.00 | -2,731.46 | N/A | 0.00 |
| 13050-002 | Prepaid Insurance | -30,376.09 | 0.00 | -30,376.09 | N/A | -32,992.22 | 0.00 | -32,992.22 | N/A | 0.00 |
| 21010-002 | Trade Accounts Payable | -133.39 | 0.00 | -133.59 | N/A | -12,518.97 | 0.00 | -12,518.97 | N/A | 0.00 |
| 22010-002 | Accrued Expense | 8,464.75 | 0.00 | 8,464.75 | N/A | 5,669.13 | 0.00 | 5,669.13 | N/A | 0.00 |
| 22020-002 | Accrued Real Property Taxes | 24,631.25 | 0.00 | 24,631.25 | N/A | 96,525.00 | 0.00 | 98,525.00 | N/A | 0.00 |
| 22035-000 | Accrued Insurance | -3,294.34 | 0.00 | -3,294.34 | N/A | 5.00 | 0.00 | 5.00 | N/A | 0.00 |
| 23510-000 | Prepaid Rent | -8,390.46 | 0.00 | -8,390.46 | N/A | 2,655.18 | 0.00 | 2,355.18 | N/A | 0.00 |
| 23230-000 | Security Deposits | 250.00 | 0.00 | 250.00 | N/A | 378.00 | 0.00 | 378.00 | N/A | 0.00 |
| 35000-000 | Distributions | -87,882.66 | 0.00 | -87,882.66 | N/A | -454,989.13 | 0.00 | -454,989.13 | N/A | 0.00 |
| | **TOTAL ADJUSTMENTS** | -106,205.10 | 0.00 | -106,205.10 | N/A | -364,099.27 | 0.00 | -364,099.27 | N/A | 0.00 |
| | **CASH FLOW** | -3,931.47 | 92,748.44 | -96,679.91 | -104.24 | 3,206.35 | 398,995.87 | -395,789.48 | -99.20 | -1,251,279.02 |

Page 5 of 5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:

**KT SPEARS CREEK, LLC,**

      **DEBTOR.**

**Case No. 11-33991-H3-11**
**Chapter 11**

### STIPULATION AND AGREED ORDER REGARDING THE AUTOMATIC STAY
**[This instrument relates to Docket No. __]**

      This matter comes before the Court on the Joint Motion of KT Spears Creek, LLC ("Debtor") and RBC Bank (USA) ("RBC") for entry of Stipulation and Agreed Order Regarding Relief from the Automatic Stay Pursuant to Bankruptcy Rule 4001(d) (Docket No. __) (the "Joint Motion").  The parties have entered into the following stipulations regarding relief from the automatic stay:

### STIPULATIONS

      1.     Debtor filed its voluntary petition for relief under Title 11 of the United States Code on May 3, 2011, in order to stop the completion of a judicial foreclosure of a multi-family apartment complex commonly known as the Greenhill Apartments located in Richland County, South Carolina.

      2.     On or about May 25, 2006, KT Spears executed and delivered to RBC a written Promissory Note in the original principal amount of $19,700,000.00, as amended or modified by that certain Modification, Cross-Collateralization and Cross-Default Agreement dated May 25, 2006, and that certain Change In Terms Agreement dated May 23, 2008 (as may be amended from time to time including all renewals and modifications collectively " Note").

3.    To secure the indebtedness owed to RBC under the Note, KT Spears executed and delivered to RBC a written Mortgage, Assignment of Rents and Security Agreement dated May 25, 2006, and recorded with the Register of Deeds of Richland County, South Carolina on June 2, 2006 in Book 1190, Page 1008 ("Mortgage") encumbering certain real property located in Richland County, South Carolina ("Real Property") described therein.

4.    KT Spears defaulted under the terms of the Loan Documents by, among other things, failing to pay the Note in full at maturity.  Pursuant to the Loan Documents, the per diem at a default rate is $9,507.72.  RBC filed its Proof of Claim in the amount of $22,448,165.54 on June 2, 2011 (Claim Registry No. 2).

5.    The Debtor's interest in the Greenhill Apartments and personal property, including the income generated therefrom, was and continues to be in the hands of Henry W. Moore of Colliers International, as state-appointed receiver (the "Receiver") in Columbia, South Carolina, pursuant to the Order Appointing Receiver entered by the Special Circuit Court Judge Joseph M. Strickland dated November 12, 2010 in the matter styled:  *RBC Bank (USA) v. KT Spears Creek, LLC, KT Builders, LTD, Kyle D. Tauch and Hyco Plumbing, Inc.*, Case No. 2010-CP-40-6025, in the Court of Common Pleas of Richland County, South Carolina (the "Receivership Action").  Since his appointment, the Receiver has collected all rents and paid all operating expenses for the Greenhill Apartments and paid the Net Operating Income (being the funds remaining in the hand of the Receiver after payment of operating expenses) to RBC which has been applied against the RBC Indebtedness (as defined below).

6.    Pursuant to the pre-petition Assignment of Rents and the actions of the Receiver, none of the rents generated by the Greenhill Apartments post-petition constitute property of the Debtor's bankruptcy estate.  The May 24, 2011 Stipulation and Order Regarding Receivership

(Docket No. 23) allowed the Receiver to remain in possession of the Greenhill Apartments and the rents and profits generated thereby, subject to (A) the Receiver's collection of all rents and profits and payment of operating expenses for the Greenhill Apartments and payment of all Net Operating Income to RBC during this bankruptcy case (which shall be applied as a credit on the RBC Indebtedness to the  extent of all Net Operating Income paid to RBC), and (B) the Receiver's serving operating reports and related information for the Greenhill Apartments on the Debtor, RBC and the US Trustee.

7.      Because of concerns and potential objections raised by the Office of the U.S. Trustee, RBC and the Debtor have agreed for the Receiver to turn over the property in its control and for Greystar Property Management, LLC (the "Property Manager") to assume control of the property previously in the hands of the Receiver.

8.      Upon the entry of this Stipulation and Agreed Order, RBC agrees that it will withdraw and will not re-file during the term of this Joint Motion and  Stipulation and Agreed Order thereon its Motion to Designate Case as Single Asset Real Estate Case Pursuant to 11 U.S.C. §101(51B) and Motion to Dismiss for Bad Faith Filing and for Improper Venue Pursuant to 28 U.S.C. §1406(a) and §1408 (Docket Nos. 25 and 26).  Pending entry of this Agreed Order and Stipulation, the parties agree to abate all hearings on the foregoing matters.

9.      The parties further agree that the Debtor will not grant any post-petition liens on the RBC Collateral.

10.     The parties agree that the terms of this Stipulation and Agreed Order are nonseverable and mutually dependent on the terms of the proposed Final Stipulation and Order Regarding Cash Usage.

The Court, having reviewed the Joint Motion and any responses, as well as the stipulation and agreement of the parties, finds that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O); and, (c) notices of the Joint Motion and the hearing before the Court were sufficient under the circumstances.  Having considered the Joint Motion, any responses, and the agreement between the Debtor and RBC, as evidenced by the terms of this Stipulation and Agreed Order and the signatures of counsel, the Court is of the opinion that the Joint Motion is meritorious and establishes sufficient grounds for the relief requested therein, subject to the stipulations set forth herein and terms and conditions set forth below.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Joint Motion is **GRANTED**.

2.      The automatic stay is terminated, pursuant to 11 U.S.C. § 362(d)(1) as it relates to the interests of RBC in the real property, easements, and rights-of-way described in **Exhibit A** (the "Property"), and all personal property situated therein, and rights related thereto (the "Collateral"),[1] for purposes of allowing RBC to exercise all of its rights and remedies provided under the Loan Documents and applicable law, including, but not limited to, the completion of the judicial foreclosure of its liens on the Property and/or Collateral as provided by applicable South Carolina law.  Notwithstanding the foregoing, RBC agrees to forbear from the exercise of its rights and remedies subject to the conditions set forth below.  RBC and the Debtor stipulate that time is of the essence and the Deadline (defined hereafter) must be timely satisfied. However, in the event the Deadline is not fully or timely satisfied, including the indefeasible payment of RBC's Indebtedness (defined hereafter) under the Loan Documents as set forth

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Joint Motion, unless otherwise defined in this Stipulation and Agreed Order.

herein, then, without further order of the Bankruptcy Court, RBC shall be authorized to immediately exercise all of its rights and remedies regarding the Property and/or Collateral, as provided under the Loan Documents and applicable law, including, but not limited to, completion of the judicial foreclosure of its liens on the Property and/or Collateral.

3.      RBC shall forbear from taking action to collect upon its judgment dated February 18, 2011 in Case No. 2010-CP-40-6025; in the Court of Common Please, Richland County, South Carolina against any defendant or to complete the judicial foreclosure of the Property only if the Debtor fails to indefeasibly pay to RBC, by 5:00 p.m. (CDT) on Thursday, December 1, 2011 (the "Deadline"), all amounts due and owing under the Loan Documents, including the amount listed on RBC's Proof of Claim (Claim Registry No. 2), plus interest at the non-default rate, plus RBC's post-bankruptcy attorneys' fees, in a reasonable amount to be agreed upon by the parties, less all payments and credits attributable to the payment of Net Operating Income to RBC during the bankruptcy case ("RBC's Indebtedness"), then RBC shall be authorized to commence any and all actions necessary to complete the judicial foreclose of its liens on the Property and/or Collateral, or exercise any other rights and remedies regarding the Property and/or Collateral, including, but not limited to, any action to realize the value of the Property and/or Collateral, dispose of the Property and/or Collateral, or otherwise, as provided under the Loan Documents and/or applicable law.  Upon tendering full payment, any rents or any other property held by the Property Manager or RBC shall be immediately returned to the Debtor.

4.      The Debtor waives any right to change through a reorganization plan or otherwise contest the terms and provisions of this Stipulation and Agreed Order at a later date, and further agrees that no action shall be taken by or on behalf of the Debtor to stop or otherwise interfere with RBC's enforcement or exercise of its rights as provided in this Stipulation and Agreed

Order, including, but not limited to, seeking any temporary restraining order or an injunction against RBC or its agent(s) in any state or federal court.

5.      The fourteen-day stay provided under Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not apply.

6.      This Court shall retain exclusive jurisdiction to enforce the terms of this Stipulation and Agreed Order.

7.      This Stipulation and Agreed Order is a Final Order within the meaning of 28 U.S.C. § 158(a)(1) and is effective immediately upon entry.

**SIGNED this _____ day of _____, 2011**

_____

**THE HONORABLE LETITIA Z. PAUL**
**UNITED STATES BANKRUPTCY JUDGE**

543669 v.1

APPROVED AND ENTRY REQUESTED:

By:_____

Constance L. Young

**JOHNSTON, ALLISON & HORD, PA**

1065 East Morehead Street

Charlotte, North Carolina  28204

Tel:  704.998.2259

Fax:  704.376.1628

cyoung@jahlaw.com

Joseph G. Epstein

**WINSTEAD PC**

1100 JPMorganChaseTower

600TravisStreet

Houston, Texas 77002

Tel:713.650.2740

Fax:713.650.2400

jepstein@winstead.com

**COUNSEL FOR RBC**

By:_____

Matthew S. Okin

Texas Bar #00784695

Maggie D. Conner

Texas Bar. #24038439

**OKIN ADAMS & KILMER LLP**

1113 Vine St., Suite 201

Houston, TX  77002

Tel:  713- 228-4100

Fax:  888-865-2118

mokin@oakllp.com

mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTOR IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING, AND (II) SCHEDULING FINAL HEARING
(This Order relates to Docket No. 28.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the "Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

(a)    authorization for the Debtor to borrow up to $100,000.00 in principal amount of post-petition financing (the "DIP Financing");

(b)    approval of the terms and conditions of the DIP Credit Agreement as executed;

(c)    authorization for the Debtor to perform under the DIP Credit Agreement such acts as may be necessary or appropriate in connection therewith and under the terms of this order (the "Final Order"); and

(d)    authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Credit Agreement upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Interim Hearing and Time to Object.*  The Court held an interim hearing on the DIP Motion on June 13, 2011, and on June 21, 2011, the Court entered its Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the Debtor to Obtain Post-Petition Financing, and (II) Scheduling Final Hearing [Docket No. 68] (the "Interim Order"). Pursuant to the Interim Order, objections to the DIP Motion were to be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before 5:00 p.m. (prevailing Central Time) on June 24, 2011.  The Court held a final hearing on June ___, 2011.

2.    *Disposition/Jurisdiction.*    The DIP Motion is granted on a final basis in accordance with the terms of this Final Order.  This Court has core jurisdiction over this Case commenced on May 3, 2011 (the "Petition Date"), the DIP Motion, nd the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.    *Notice.*    Notice of the DIP Motion, the relief requested herein and the Final Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy

Rules, and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

     4.    *Findings Regarding the DIP Loan.*

    (a)    All findings of fact and conclusions of law as announced on the record by the Court at the Final Hearing are hereby adopted and incorporated in this Final Order.

    (b)    Sufficient cause has been shown for entry of this Interim Order.

    (c)    The Debtor has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process. The DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate. The Debtor's reorganization efforts require the DIP Financing.

    (d)    The Debtor is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement.

    (e)    The Lender is willing to provide the DIP financing to or for the benefit of the Debtor only in accordance with the DIP Credit Agreement and this Final Order.

    (f)    The DIP Credit Agreement has been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to DIP Credit Agreement, owing to the Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

    (g)    Pursuant to this Order, the provisions of the terms of the DIP Credit Agreement are found to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

     5.    *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

    (a)    The Debtor is hereby authorized to borrow on a final basis up to an aggregate principal amount of $100,000.00, in accordance with the terms of this Final Order.

    (b)    This will be an unsecured advance to the Debtor by the DIP Lender.

(c)    Upon execution and delivery of the DIP Credit Agreement, the DIP Credit Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Final Order.

(d)    The terms and conditions of the DIP Credit Agreement as executed are approved;

(e)    The Debtor is authorized to perform under the DIP Credit Agreement such acts as may be necessary or appropriate in connection therewith and under the terms of this Final Order; and

(f)    The Lender is authorized to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Credit Agreement upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion.

6.    *Use of DIP Loan Proceeds.*  The Debtor shall use the proceeds of the DIP Loan solely as provided by the DIP Credit Agreement and this Final Order and in accordance with the attached budget.

7.    *Retention of Jurisdiction.*  This Court shall retain jurisdiction to enforce the provisions of this Final Order.

SIGNED THIS ___ day of June, 2011.

_____
HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

### KT Spears Creek DIP Loan Budget
Monday, June 27, 2011

| | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | 5-Sep | 12-Sep | 19-Sep | 26-Sep | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | |
| Chiron Equities DIP Loan | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | 95,000 |
| **Total Revenue** | 10,000 | - | - | 25,000 | - | 20,000 | 15,000 | - | 20,000 | - | 5,000 | - | - | 95,000 |
| | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | |
| Legal Fees (Okin, Adams, Kilmer) | - | - | - | 15,000 | - | - | - | - | 20,000 | - | - | - | - | 35,000 |
| Sales Marketing/Advertising/Brokerage Fees | - | - | 6,000 | - | - | - | 6,000 | - | - | - | 6,000 | - | - | 18,000 |
| General & Administrative Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,300 |
| Travel Costs | - | - | 1,000 | - | - | 1,000 | - | - | 800 | - | - | - | - | 2,800 |
| Professional Reports | - | - | - | 4,000 | - | - | 8,000 | - | - | - | - | - | - | 12,000 |
| Anticipated Loan Due Diligence Fee | - | - | - | - | - | 20,000 | - | - | - | - | - | - | - | 20,000 |
| Quarterly Trustee Fees | - | - | - | 4,750 | - | - | - | - | - | - | - | - | - | 4,750 |
| **Total Expenses** | 100 | 100 | 7,100 | 23,850 | 100 | 21,100 | 14,100 | 100 | 20,900 | 100 | 6,100 | 100 | 100 | 93,850 |
| | | | | | | | | | | | | | | |
| **Net Cash Remaining** | 9,900 | 9,800 | 2,700 | 3,850 | 3,750 | 2,650 | 3,550 | 3,450 | 2,550 | 2,450 | 1,350 | 1,250 | 1,150 | |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | **Case No. 11-33991** |
| | § | |
| DEBTOR. | § | **(Chapter 11)** |

**PROPOSED ORDER DENYING
MOTION TO DISMISS FOR BAD FAITH FILING AND FOR
IMPROPER VENUE PURSUANT TO 29 U.S.C. § 1406(A) AND § 1408**
**(This Order Relates to Docket No. 25.)**

Came on for consideration RBC Bank (USA)'s Motion to Dismiss for Bad Faith Filing
and for Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408 [Docket No. 25] (the
"Motion to Dismiss").  The Court, after considering the Motion to Dismiss, the joinder and
response thereto, and any arguments, hereby finds that the Motion to Dismiss should be denied;
therefore, it is

**ORDERED** that the Motion to Dismiss is **DENIED** in its entirety.

Dated: _____, 2011.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

**PROPOSED ORDER DENYING**
**MOTION TO DESIGNATE CASE AS SINGLE ASSET REAL ESTATE**
**CASE PURSUANT TO 11 U.S.C. § 101(51B)**

**(This Order Relates to Docket No. 26.)**

Came on for consideration RBC Bank (USA)'s Motion to Designate Case as Single Asset

Real Estate Case Pursuant to 11 U.S.C. § 10151(B) [Docket No. 26] (the "Motion").  The Court,

after considering the Motion, the response thereto, and any arguments, hereby finds that the

Motion should be denied; therefore, it is

**ORDERED** that the Motion is **DENIED** in its entirety.

Dated: _____, 2011.

_____
THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter11) |
| DEBTOR | § | |

## FIRST SAVERS BANK'S EXHIBIT LIST FOR ITS
## JOINDER IN MOTION TO DISMISS FOR BAD FAITH FILING
## AND FOR IMPROPER VENUE

First Savers Bank ("First Savers"), files this *Exhibit List* in connection with the

filing of its Joinder [Docket No. 46] to the Motion to Dismiss for Bad Faith Filing and for

Improper Venue filed by RBC  Bank (USA) [Docket No. 25], as follows:

### EXHIBIT LIST

| No. | Description | Offered | Objection | Admitted | Disposition After Trial |
|---|---|---|---|---|---|
| 1. | Bankruptcy Schedules | | | | |
| 2. | Statement of Financial Affairs | | | | |
| 3. | Temporary Restraining Order (filed in Case No. 2010-CP-40-6025); in the Court of Common Pleas, State of South Carolina | | | | |
| 4. | Order Appointing Receiver [Docket No. 23] | | | | |
| 5. | State Court Petition in *IES Residential v. KT Spears Creek* | | | | |
| 6. | Execution Notice – Richland County, South Carolina, Treasurer | | | | |
| 7. | | | | | |
| 8. | | | | | |

| No. | Description | Offered | Objection | Admitted | Disposition After Trial |
|-----|-------------|---------|-----------|----------|-------------------------|
| 9. | | | | | |

Dated: June 27, 2011.

Respectfully submitted,

*/s/ David S. Elder*
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com (*email*)

*ATTORNEY-IN-CHARGE FOR
FIRST SAVERS BANK*

### CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2011, a true and correct copy of the foregoing Motion was served (i) electronically, via the Court's ECF system, upon Debtor's counsel, the Office of the U.S. Trustee, parties who have filed notices of appearance in this case, and all other parties receiving ECF notifications in this case, and (ii) by first class U.S. mail, postage prepaid on the parties listed on the Master Service List attached.

*/s/ David S. Elder*
David S. Elder

2

## Service List

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

**Debtors:**
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

**Debtors' Attorney:**
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX  77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**U.S. Trustee:**
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Fax:713-718-4670

---

*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

---

**Internal Revenue Service:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

**Counsel for RBC:**
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC  28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**Receiver:**
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC  29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

***Property Manager:***
Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

***20 Largest Creditors:***
Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

***Parties Requesting Notice:***
Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | **CASE NO. 11-33991** |
| | § | **CHAPTER 11** |
| **KT SPEARS CREEK, LLC,** | § | |
| | § | **Hearing Date: June 28, 2011** |
| Debtor. | § | **Hearing Time: 11:30 a.m.** |

## AMENDED WITNESS AND EXHIBIT LIST

TO THE HONORABLE LETICIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

First Palmetto Savings Bank, FSB ("FPSB") files this *Amended Witness and Exhibit List*

in connection with the June 28, 2011 hearings on the following:

*Motion to Dismiss for Bad Faith Filing and For Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408* (Dkt. No. 25);

*First Savers Bank's Joinder in Motion to Dismiss or Transfer Venue* (Dkt. No. 46); and

*First Palmetto Savings Bank, Response in Support of the Motion to Dismiss for Bank Faith Filing and for Improper Venue* (Dkt. No. 54).

## WITNESSES

| Witness No. | Name | Title | Nature of Testimony | Time Estimate |
|---|---|---|---|---|
| 1 | Kyle D. Tauch | Debtor's Sole Member of the South Carolina LLC | Mr. Tauch will testify regarding matters including, but not limited to, the Debtor's business. | Approximately 30-40 minutes |
| 2 | Any witness designated by any other party | | | |

1

**EXHIBITS**

| Exhibit No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | *Order Appointing Receiver*; Case No. 2010-CP-40-6025; In the Court of Common Pleas for the Fifth Judicial Circuit Court of Richland County, South Carolina (Dkt. No. 26-1); | | | | |
| 2 | *Temporary Restraining Order*; Case No. 2010-CP-40-6025; In the Court of Common Pleas for the Fifth Judicial Circuit Court of Richland County, South Carolina (Dkt No. 25-2); | | | | |
| 3 | Map of Debtors Real Property (Color) (Dkt. No. 77-4); | | | | |
| 4 | *Schedules* (Dkt No. 14); | | | | |
| 5 | *Statement of Financial Affairs* (Dkt. No. 15); | | | | |
| 6 | Proposed *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 Authorizing the Debtor to Obtain Post-Petition Financing, and DIP Loan Budget* (Dkt. 77-9); and | | | | |
| 7 | *Amended Lis Pendens*; Case No. 2011-CP-40-2885; In the Court of Common Pleas for the Fifth Judicial Circuit Court of Richland County, South Carolina | | | | |

FPSB reserves the right to use any exhibits presented by any other party and the right to use exhibits not listed here for impeachment or rebuttal purposes at the hearing.

2

FPSB reserves the right to amend or supplement this Amended Witness and Exhibit List.

Dated: June 27, 2011

Respectfully Submitted,

GREENBERG TRAURIG, LLP

By: */s/ Shari L. Heyen*
    Shari L. Heyen
    State Bar No. 09564750
    HeyenS@gtlaw.com
    1000 Louisiana St., Ste. 1700
    Houston, TX 77002
    Telephone: (713) 374-3564
    Facsimile: (713) 374-3505

*Counsel for First Palmetto Savings Bank, FSB*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Amended Witness and Exhibit List has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on June 27, 2011.

*/s/ Shari L. Heyen*
Shari L. Heyen

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) |  |
|  | ) |  |
| KT SPEARS CREEK, LLC, | ) | CASE NO. 11-33991-H3-11 |
|  | ) |  |
| Debtor, | ) |  |
|  | ) |  |

ENTERED
06/28/2011

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the venue issues
contained in the "Motion to Dismiss for Bad Faith Filing and for
Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408"
(Docket No. 25), together with "First Savers Bank's Joinder
In Motion to Dismiss or Transfer Venue" (Docket No. 46) and
"First Palmetto Savings Bank, Response in Support of the
Motion to Dismiss for Bad Faith Filing and for Improper Venue"
(Docket No. 54).  The following are the Findings of Fact and
Conclusions of Law of the court.  A separate Judgment will be
entered transferring the above captioned case to the United
States Bankruptcy Court for the District of South Carolina.  To
the extent any of the Findings of Fact are considered Conclusions
of Law, they are adopted as such.  To the extent any of the
Conclusions of Law are considered Findings of Fact, they are
adopted as such.

Findings of Fact

KT Spears Creek, LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 3, 2011.

Debtor owns an apartment complex located in Columbia, South Carolina, and two undeveloped tracts of real property contiguous to the tract on which the apartment complex is located.

Kyle Tauch, the person who signed the Chapter 11 petition on Debtor's behalf, as Debtor's sole member, testified that the apartment complex is Debtor's sole current source of revenue.

Tauch testified that, until a receiver was appointed, Debtor employed a management company to operate the apartment complex. He testified that a receiver was appointed to operate Debtor's interest in the apartment complex on May 2, 2010. He testified that Debtor has no employees.

Tauch testified that, prior to the filing of the petition in the instant case, Debtor's books and records were maintained at his home. He testified that he has since moved the records to an office at which Tauch conducts the business of Debtor and 60 to 70 other entities. Tauch and his office are located in Houston, Texas.

Tauch testified that Debtor's real property is located in South Carolina. He testified that all but one of Debtor's

2

secured creditors are located in South Carolina.  He testified
that Debtor's other secured creditor, RBC Bank, is located in
North Carolina.

Tauch testified that all but one of Debtor's unsecured
creditors is located in South Carolina.

Tauch testified that he has sought informally to sell
portions of Debtor's real property, using the brokerage services
of a person he describes as a friend.  He testified that he has
additionally begun discussions with a commercial real estate firm
directed toward listing the property for sale.  He testified that
both his friend and the commercial real estate firm operate in
South Carolina.

<u>Conclusions of Law</u>

Under 28 U.S.C. § 1408, a case may be commenced in the
district "in which the domicile, residence, principal place of
business in the United States, or principal assets in the United
States" are located.

The principal place of business refers to the place
where a corporation's high level officers direct, control, and
coordinate the corporation's activities, which will typically be
found at its corporate headquarters.  <u>In re Commonwealth Oil Ref.
Co.</u>, 596 F.2d 1239 (5th Cir. 1979).

In the instant case, Tauch is the sole member of the
Debtor, and makes its decisions.  The court concludes that

3

Houston, Texas is Debtor's principal place of business, though
its domicile, residence, and principal assets are located in
South Carolina.

If a petition is filed in a proper district, the court,
on the timely motion of a party in interest or on its own motion,
and after hearing on notice to the petitioners, the United States
trustee, and other entities as directed by the court, may
transfer the case to any other district if the court determines
that the transfer is in the interest of justice or for the
convenience of the parties.  BR 1014(a)(1).

The "interest of justice" inquiry involves considering
four factors: "(1) the administrative difficulties flowing from
court congestion; (2) the local interest in having localized
interests decided at home; (3) the familiarity of the forum with
the law that will govern the case; and (4) the avoidance of
unnecessary problems of conflict of laws of the application of
foreign law." In re Volkswagen, 371 F.3d 201 (5th Cir. 2004).

In the instant case, there is no evidence as to court
congestion.  The court considers that to be a neutral factor.
The local interest in having localized interests decided at home
weighs in favor of transfer to South Carolina, in light of the
location of all of Debtor's property in South Carolina.  The
documents addressing the relationships among the parties appear
to be governed by South Carolina law.  That factor weighs in

4

favor of transfer to South Carolina.  There appear to be no conflicts of laws issues; all issues appear governed by South Carolina law.  That factor weighs in favor of transfer to South Carolina.  The convenience of parties also weighs in favor of transfer.  The only connection of this case to Houston, Texas is the presence of Tauch.  Nearly all of the creditors are located in South Carolina.  The court concludes, in the interest of justice and for the convenience of the parties, that the above captioned Chapter 11 case should be transferred to the United States Bankruptcy Court for the District of South Carolina.

Based on the foregoing, a separate Judgment will be entered transferring the above captioned case to the United States Bankruptcy Court for the District of South Carolina.

Signed at Houston, Texas on June 28, 2011.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

5

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**06/28/2011**

```
                              )
IN RE                         )
                              )
KT SPEARS CREEK, LLC,         )   CASE NO. 11-33991-H3-11
                              )
          Debtor,             )
                              )
```

<u>JUDGMENT</u>

Based on the separate Memorandum Opinion signed this same date, it is

ORDERED that, pursuant to Bankruptcy Rule 1014(a)(1), the above captioned Chapter 11 case is transferred to the United States Bankruptcy Court for the District of South Carolina.

Signed at Houston, Texas on June 28, 2011.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

Sender's Copy

**FedEx** Express

**NEW Package US Airbill**

FedEx Tracking Number  **8764 2868 7053**

**1 From** *Please print and press hard.*

Date _____

Sender's FedEx Account Number _____

Sender's Name _____   Phone ( )

Company  **US DISTRICT COURT/CLERK**

Address  **515 RUSK ST STE 5300**

City  **HOUSTON**   State **TX**   ZIP **77002-2600**

**2 Your Internal Billing Reference**
*First 24 characters will appear on invoice.*   OPTIONAL

**3 To**
Recipient's Name  **United States Bankruptcy Courthouse**   Phone ( 803 ) 765-5436

Company _____

Address  **1100 Laurel Street**
We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address _____
Use this line for the HOLD location address or for continuation of your shipping address.

City  **Columbia**   State **SC**   ZIP **29201**

**The FedEx US Airbill has changed. See Section 4.**
For shipments over 150 lbs., order the new FedEx Express Freight US Airbill.

0438220353

**4 Express Package Service** *To most locations.*
NOTE: Service order has changed. Please select carefully.

Packages up to 150 lbs.

**Next Business Day**
- [ ] FedEx First Overnight
- [ ] FedEx Priority Overnight
- [ ] FedEx Standard Overnight

**2 or 3 Business Days**
- [ ] FedEx 2Day A.M.
- [ ] FedEx 2Day
- [ ] FedEx Express Saver
- [ ] Other

**5 Packaging** *Declared value limit $500.*
- [ ] FedEx Envelope*
- [ ] FedEx Pak*
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling and Delivery Signature Options**
- [ ] SATURDAY Delivery

**Does this shipment contain dangerous goods?**
- [ ] No
- [ ] Yes

No Signature Required / Direct Signature / Indirect Signature

**7 Payment** *Bill to:*
- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages ___ Total Weight ___ Total Declared Value $ ___ .00

611

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
06/27/2011

|  |  |  |
|---|---|---|
| | ) | |
| IN RE | ) | |
| | ) | |
| KT SPEARS CREEK, LLC, | ) | CASE NO. 11-33991-H3-11 |
| | ) | |
| Debtor, | ) | |

<u>ORDER SETTING AND RESETTING HEARINGS</u>

The court has previously set a hearing for June 28,
2011, at 11:30 a.m., in Courtroom 401, 515 Rusk, Houston, Texas,
on the "Motion to Dismiss for Bad Faith Filing and for Improper
Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408" (Docket No. 25)
filed by RBC Bank, the "Motion to Designate Case as Single Asset
Real Estate Case Pursuant to 11 U.S.C. § 101(51B)" (Docket No.
26) filed by RBC Bank, "Debtor's Emergency Motion for Interim and
Final Orders Approving Use of Cash Collateral" (Docket No. 27),
the "Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, and
364 And Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing the
Debtor To Obtain Post-petition Secured Financing, (II) Granting
Security Interests, and (III) Scheduling Final Hearing" (Docket
No. 28) filed by Debtor, and the "Emergency Motion for Turnover
of Property and Request for Accounting" (Docket No. 31) filed by
Debtor.  First Savers Bank and First Palmetto Savings Bank have
joined in the motion to dismiss, or alternatively seek transfer
of venue.

The parties having advised that they anticipate that
the hearing on the instant motions may be lengthy, the hearing
set on June 28, 2011 at 11:30 a.m. is limited to the issues
relating to venue.  The remainder of the issues will be set for
hearing on either June 29, 2011 or June 30, 2011, subject to this
court's determination as to venue.

SO ORDERED.

Signed at Houston, Texas on June 27, 2011.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court
Southern District of Texas

In re:                                                                                        Case No. 11-33991-lzp
KT Spears Creek, LLC                                                                          Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4            User: mrod              Page 1 of 1              Date Rcvd: Jun 27, 2011
                               Form ID: pdf002         Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 29, 2011.
db          +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
aty         +Joseph G. Epstein,  Winstead PC,  JPMorgan Chase Tower,  600 Travis Street,   Suite 1100,
             Houston, TX 77002-3030
cr          +First Palmetto Savings Bank, F.S.B.,  c/o Shari L. Heyen,  Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                    TOTAL: 0

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr            First Savers Bank
intp          RBC Bank (USA)
                                                                            TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 29, 2011**                        **Signature:**   _Joseph Speetjens_

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter 11) |
| DEBTOR | § | |
| _____ | § | |
| FIRST SAVERS BANK | § | |
| | § | |
| Movant | § | |
| | § | |
| VS. | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | |
| | § | |
| Respondent | § | |

## FIRST SAVERS BANK'S WAIVER OF 30-DAY HEARING REQUIREMENT

First Savers Bank, a division of Plantation Federal Bank (the "Bank"), files this *Waiver of 30-Day Hearing Requirement*, relating to the Bank's *Motion for Relief From Stay* [Docket No. 58] and would respectfully show the Court the following:

1.    A preliminary hearing on the Bank's *Motion for Relief From Stay* had been scheduled for July 6, 2011.  However, on June 28, 2011 the Court ordered that venue of this case be transferred to South Carolina.  In order to facilitate the transfer of this case to South Carolina, the Bank hereby waives the 30-day hearing requirement set forth in §362(e) of the Bankruptcy Code.

2.    This waiver of the 30-day hearing requirement will allow the Bankruptcy Court in South Carolina to schedule another hearing on the *Motion for Relief From Stay*

at that Court's convenience.  The Bank reserves the right to prosecute its *Motion for*

*Relief From Stay*, following the transfer of the case to South Carolina.

Respectfully submitted,


*/s/ David S. Elder*
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com (*email*)

ATTORNEY-IN-CHARGE FOR
FIRST SAVERS BANK


## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2011, a true and correct copy of the foregoing
Motion was served (i) electronically, via the Court's ECF system, upon Debtor's counsel,
the Office of the U.S. Trustee, parties who have filed notices of appearance in this case,
and all other parties receiving ECF notifications in this case, and (ii) by first class U.S.
mail, postage prepaid on the parties listed on the Master Service List attached.


*/s/ David S. Elder*
David S. Elder

**Service List**

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

**Debtors:**
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

**Debtors' Attorney:**
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX  77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**U.S. Trustee:**
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Fax:713-718-4670

---
*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

---

**Internal Revenue Service:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

**Counsel for RBC:**
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC  28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**Receiver:**
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC  29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

**Property Manager:**
Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

**20 Largest Creditors:**
Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

**Parties Requesting Notice:**
Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

Page 2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

**ENTERED**
**06/28/2011**

HOUSTON DIVISION

| | )
|---|---|
| IN RE | ) |
| | ) |
| KT SPEARS CREEK, LLC, | )  CASE NO. 11-33991-H3-11 |
| | ) |
| Debtor, | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the venue issues
contained in the "Motion to Dismiss for Bad Faith Filing and for
Improper Venue Pursuant to 28 U.S.C. § 1406(a) and § 1408"
(Docket No. 25), together with "First Savers Bank's Joinder
In Motion to Dismiss or Transfer Venue" (Docket No. 46) and
"First Palmetto Savings Bank, Response in Support of the
Motion to Dismiss for Bad Faith Filing and for Improper Venue"
(Docket No. 54).  The following are the Findings of Fact and
Conclusions of Law of the court.  A separate Judgment will be
entered transferring the above captioned case to the United
States Bankruptcy Court for the District of South Carolina.  To
the extent any of the Findings of Fact are considered Conclusions
of Law, they are adopted as such.  To the extent any of the
Conclusions of Law are considered Findings of Fact, they are
adopted as such.

## Findings of Fact

KT Spears Creek, LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 3, 2011.

Debtor owns an apartment complex located in Columbia, South Carolina, and two undeveloped tracts of real property contiguous to the tract on which the apartment complex is located.

Kyle Tauch, the person who signed the Chapter 11 petition on Debtor's behalf, as Debtor's sole member, testified that the apartment complex is Debtor's sole current source of revenue.

Tauch testified that, until a receiver was appointed, Debtor employed a management company to operate the apartment complex. He testified that a receiver was appointed to operate Debtor's interest in the apartment complex on May 2, 2010. He testified that Debtor has no employees.

Tauch testified that, prior to the filing of the petition in the instant case, Debtor's books and records were maintained at his home. He testified that he has since moved the records to an office at which Tauch conducts the business of Debtor and 60 to 70 other entities. Tauch and his office are located in Houston, Texas.

Tauch testified that Debtor's real property is located in South Carolina. He testified that all but one of Debtor's

2

secured creditors are located in South Carolina. He testified
that Debtor's other secured creditor, RBC Bank, is located in
North Carolina.

Tauch testified that all but one of Debtor's unsecured
creditors is located in South Carolina.

Tauch testified that he has sought informally to sell
portions of Debtor's real property, using the brokerage services
of a person he describes as a friend. He testified that he has
additionally begun discussions with a commercial real estate firm
directed toward listing the property for sale. He testified that
both his friend and the commercial real estate firm operate in
South Carolina.

<u>Conclusions of Law</u>

Under 28 U.S.C. § 1408, a case may be commenced in the
district "in which the domicile, residence, principal place of
business in the United States, or principal assets in the United
States" are located.

The principal place of business refers to the place
where a corporation's high level officers direct, control, and
coordinate the corporation's activities, which will typically be
found at its corporate headquarters. <u>In re Commonwealth Oil Ref.
Co.</u>, 596 F.2d 1239 (5th Cir. 1979).

In the instant case, Tauch is the sole member of the
Debtor, and makes its decisions. The court concludes that

3

Houston, Texas is Debtor's principal place of business, though its domicile, residence, and principal assets are located in South Carolina.

If a petition is filed in a proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.  BR 1014(a)(1).

The "interest of justice" inquiry involves considering four factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." In re Volkswagen, 371 F.3d 201 (5th Cir. 2004).

In the instant case, there is no evidence as to court congestion.  The court considers that to be a neutral factor. The local interest in having localized interests decided at home weighs in favor of transfer to South Carolina, in light of the location of all of Debtor's property in South Carolina.  The documents addressing the relationships among the parties appear to be governed by South Carolina law.  That factor weighs in

4

favor of transfer to South Carolina.  There appear to be no
conflicts of laws issues; all issues appear governed by South
Carolina law.  That factor weighs in favor of transfer to South
Carolina.  The convenience of parties also weighs in favor of
transfer.  The only connection of this case to Houston, Texas is
the presence of Tauch.  Nearly all of the creditors are located
in South Carolina.  The court concludes, in the interest of
justice and for the convenience of the parties, that the above
captioned Chapter 11 case should be transferred to the United
States Bankruptcy Court for the District of South Carolina.

Based on the foregoing, a separate Judgment will be
entered transferring the above captioned case to the United
States Bankruptcy Court for the District of South Carolina.

Signed at Houston, Texas on June 28, 2011.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

5

United States Bankruptcy Court
Southern District of Texas

In re:                                                                    Case No. 11-33991-lzp
KT Spears Creek, LLC                                                      Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0541-4          User: mrod              Page 1 of 1              Date Rcvd: Jun 28, 2011
                              Form ID: pdf002         Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 30, 2011.
db          +KT Spears Creek, LLC,   5410 Piping Rock,   Houston, TX 77056-4916
aty         +Joseph G. Epstein,  Winstead PC,  JPMorgan Chase Tower,   600 Travis Street,   Suite 1100,
             Houston, TX 77002-3030
cr          +First Palmetto Savings Bank, F.S.B.,   c/o Shari L. Heyen,   Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,   Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                            TOTAL: 0

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr           First Savers Bank
intp         RBC Bank (USA)
                                                                     TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 30, 2011**                          **Signature:**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**06/28/2011**

|                          |   |                           |
|--------------------------|---|---------------------------|
| IN RE                    | ) |                           |
|                          | ) |                           |
| KT SPEARS CREEK, LLC,    | ) | CASE NO. 11-33991-H3-11   |
|                          | ) |                           |
|          Debtor,         | ) |                           |
|                          | ) |                           |

JUDGMENT

Based on the separate Memorandum Opinion signed this same date, it is

ORDERED that, pursuant to Bankruptcy Rule 1014(a)(1), the above captioned Chapter 11 case is transferred to the United States Bankruptcy Court for the District of South Carolina.

Signed at Houston, Texas on June 28, 2011.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court
Southern District of Texas

In re:                                                              Case No. 11-33991-lzp
KT Spears Creek, LLC                                                Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0541-4        User: mrod            Page 1 of 1            Date Rcvd: Jun 28, 2011
                           Form ID: pdf002        Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 30, 2011.
db          +KT Spears Creek, LLC,    5410 Piping Rock,    Houston, TX 77056-4916
aty         +Joseph G. Epstein,   Winstead PC,    JPMorgan Chase Tower,    600 Travis Street,    Suite 1100,
             Houston, TX 77002-3030
cr          +First Palmetto Savings Bank, F.S.B.,    c/o Shari L. Heyen,    Greenberg Traurig, LLP,
             1000 Louisiana Street, Suite 1700,    Houston, TX 77002-5001

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                        TOTAL: 0

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr           First Savers Bank
intp         RBC Bank (USA)
                                                                     TOTALS: 2, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.

Date: Jun 30, 2011                     Signature:    *Joseph Speetjens*