IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC, | § | Case No. 11-33991 |
| | § | |
| DEBTOR. | § | (Chapter 11) |

EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR
TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

KT Spears Creek, LLC, as debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed attorneys, hereby files this emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014, and for entry of an order authorizing the Debtor to, *inter alia*, (a) obtain post-petition financing of $100,000.00 in principal and (b) grant junior security interests. In support thereof, the Debtor would show as follows:

## I.  JURISDICTION, VENUE AND PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 362, 363, 364(c)(3), and 364(e) and Bankruptcy Rules 2002, 4001, and 9014.

2.      On May 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtor's above-styled case (the "Case").

3.      Since the Petition Date, the Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.      As of the date of this DIP Motion, no official committee of unsecured creditors has been appointed.

## II.  FACTUAL BACKGROUND

### A.      The Debtor's Business and Real Property

5.      The Debtor is a South Carolina limited liability company with its principal place of business located in Houston, Texas. Kyle D. Tauch is the sole member of the Debtor and

-2-

resides in Houston, Texas. The Debtor was formed on September 14, 2004 and is in the business of real estate investment and development.

6.     The Debtor's assets include, *inter alia*, three real estate holdings. One of these real estate holdings includes an operating apartment complex and an additional area on which a second apartment complex may be constructed. The operating apartment complex, Greenhill Parish Crossing Apartments Homes (the "Greenhill Apartments"), located in Elgin, South Carolina is substantially occupied. The Debtor's remaining two real estate holdings are comprised of undeveloped commercial land.

**B.     Secured Credit Facilities**

**RBC Bank**

7.     The Debtor is the borrower under that certain Commercial Promissory Note dated as of May 25, 2006 (the "RBC Bank Note") between the Debtor and RBC Centura Bank ("RBC Bank") in the original principal amount of $19,700,000.00 with interest at the initial rate of RBC Centura LIBOR Base Rate plus 1.85% per annum. The RBC Bank Note was modified on May 25, 2006 by the execution of a Modification, Cross-Collateralization and Cross-Default Agreement, and by the execution of a Change in Terms Agreement on May 23, 2008.

8.     As security for the RBC Bank Note, the Debtor executed in favor of RBC Bank a Mortgage, Assignment of Rents and Security Agreement dated as of May 25, 2006 covering certain property, including the Greenhill Apartments. The Mortgage, Assignment of Rents and Security Agreement was recorded on June 2, 2006, and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 1190, at page 1008.

9.     As of the Petition Date, the Debtor's obligation under the RBC Bank Note was approximately $22,646,397.88.

-3-

**First Savers**

10.     The Debtor is also the borrower under that certain Loan Agreement dated as of December 21, 2007 (the "First Savers Loan Agreement") among the Debtor; First Savers Bank ("First Savers"), a division on Plantation Federal Bank; and Kyle D. Tauch in the amount of $6,000,000.00.  The Debtor's obligation to First Savers is secured by a Mortgage, Assignment, Security Agreement and Fixture Filing dated as of December 21, 2007 covering approximately 65 acres of undeveloped commercial real property located near Columbia, South Carolina.

11.     As of the Petition Date, the Debtor's obligation under the First Savers Loan Agreement was approximately $6,300,000.00.

**First Palmetto**

12.     The Debtor is also the borrower under a loan agreement between the Debtor and First Palmetto Savings Bank ("First Palmetto") entered into in 2006 and secured by interests in approximately 7 acres of undeveloped commercial real property located near Pontiac, South Carolina.

13.     As of the Petition Date, the Debtor's obligation to First Palmetto was approximately $870,000.00.

C.      **The Receivership and Foreclosure Action**

14.     RBC Bank filed a lawsuit against the Debtor and additional defendants in the Court of Common Pleas for Richland County, South Carolina (the "Court of Common Pleas") styled and numbered *RBC Bank (USA) v. KT Spears Creek, LLC et al.*, Case No. 2010-CP-40-6025.

15.     On November 12, 2010, the Court of Common Pleas entered an order appointing Henry W. Moore of Colliers International as receiver (the "Receiver") over certain property,

-4-

including the Greenhill Apartments and rents and profits therefrom (the "Property").   The Greenhill Apartments are currently in receivership (the "Receivership") pursuant to this state court order and are managed by GREP Atlantic, L.P. (the "Property Manager").

16.     On February 17, 2011, the Court of Common Pleas issued a judgment of foreclosure of the Property (the "Foreclosure Judgment"). Accordingly, a public foreclosure sale was held on April 4, 2011, with bidding to remain open through and including May 4, 2011 pursuant to South Carolina state law.

D.     **Factors Leading to Bankruptcy**

17.     As a result of factors including the tightening of credit markets and the Foreclosure Judgment, the Debtor sought bankruptcy protection. Considering these factors, the Debtor determined that it was appropriate to commence this Case to protect and maximize the value of its assets for the benefit of its creditors and to pursue refinancing and reorganization.

### III. MATERIAL TERMS OF THE PROPOSED POST-PETITION FINANCING

18.     The Debtor presently lacks sufficient liquidity to support its operations and reorganization efforts. The Debtor has thus concluded that it will require new post-petition financing to meet its ongoing working capital and general business needs while it seeks confirmation of a plan of reorganization. The Debtor, in consultation with its legal and advisors, has negotiated and entered into, subject to Court approval, a Debtor in Possession Loan Term Sheet (the "Term Sheet"), a true and correct copy of which is attached hereto as **Exhibit A**, and which is intended to outline the material terms of a debtor in possession loan (the "DIP Loan").[1]

---

[1] The emergency need for post-petition financing has necessitated the filing of this DIP Motion prior to the execution of definitive documentation relating to the DIP Loan (the "DIP Documents"). However, the Term Sheet outlines the material terms of the DIP Loan, and any DIP Documents will be consistent with the terms of the Term Sheet. The Debtors will supplement this DIP Motion by filing and/or making available for inspection, the applicable DIP Documents and DIP Budget once available.

The Debtor proposes to borrow funds pursuant to the DIP Loan to operate its business and to pre-develop its assets consistent with a DIP Budget to be filed with this Court.

19.     Bankruptcy Rule 4001 requires that motions requesting authority to incur post-petition financing begin with a concise statement of the relief requested, that summarizes the material terms and sets forth where the material terms can be found in the documents. Such summary is set forth below.[2] The Debtor believes that these terms will reasonably address its near-term financing requirements and constitute a favorable financing option given the circumstances of its business, its capital structure, and this Chapter 11 case.

        (a)    **The DIP Loan Parties and Other General Terms.** The extensions of credit under the DIP Loan will be made by JK Air Investment Group, LLC, as lender (the "Lender"), to the Debtor, as borrower. (Term Sheet p. 1).

        (b)    **Total Facility.** The DIP Loan shall be in the total amount of $100,000.00. The amount of $100,000.00 shall be available upon entry of an order by this Court approving the DIP Loan. (Term Sheet p. 1).

        (c)    **Security.** Pursuant to Bankruptcy Code § 364(c)(3), the Lender shall be granted junior perfected liens on all property of the Debtor subject to existing valid, perfected, enforceable, and unavoidable liens on such property.

        (d)    **Use of Proceeds.** The DIP Loan is being entered into to fund the general working capital needs of the Debtor during the pendency of this Case. The proceeds of the DIP Loan may be used to fund:  (i) the fees and expenses associated with the DIP Loan as agreed to by the Debtor including, but not limited to, the loan origination fee, and (ii) additional expenses of the Debtor during the course of its bankruptcy proceedings including, but not limited to, architectural renderings, surveying, appraisals, environmental reports, legal fees and other expenses that may be pre-approved by the Lender and the Court. (Term Sheet p. 1).

        (e)    **Term.** The maturity date of the DIP Loan is the earlier of (i) June 1, 2012, (ii) one (1) year from the closing date of the DIP Loan; (iii) the conversion or dismissal of this bankruptcy case; or (iv) the effective date of a plan of reorganization for the Debtor (the "Term"). (Term Sheet p. 2).

        (f)    **Interest Rate.** The DIP Loan will bear interest at a rate of twelve percent (12%) per annum, compounded monthly (the "Interest Rate"). Interest shall be due and payable on the last day of the Term. (Term Sheet p. 1).

---

[2] This summary is qualified in its entirety by reference to the provisions of the Term Sheet, the eventual DIP Documents, and any order of this Court relating to the proposed post-petition financing described herein.

(g)    **Fees.** Debtor will pay Lender an origination fee equal to five percent (5%) of the aggregate principal amount of the DIP Loan (the "<u>Commitment Fee</u>"). The Commitment Fee shall be payable to the Lender on the effective date of the DIP Documents. (Term Sheet p. 1).

(h)    **Representations and Warranties.** The DIP Loan shall contain various representations and warranties by the Debtor (to the extent set forth therein), with respect to, *inter alia*, their organization and existence, ability to enter into the DIP Loan, and insurance.

(i)    **Covenants.** The DIP Loan shall contain various covenants, relating to, *inter alia*: (a) the Debtor's corporate authority to enter into the DIP Loan; (b) the Debtor's ownership of and authority to operate its properties; (c) timely payment of obligations; (d) maintenance and insurance of the Debtor's properties; (e) the safe and legal operation of the Debtor's properties; and, (f) enacting certain cost savings measures. (Term Sheet p. 2).

(j)    **Events of Default.** Events of default pursuant to the DIP Loan include, *inter alia*: (a) failure to make payments when due under the DIP Loan; (b) non-compliance with covenants; (c) appointment of chapter 11 trustee, examiner with extended powers or conversion of Bankruptcy Case to chapter 7; (d) transfer of the chapter 11 Case from the Southern District of Texas, Houston Division, to any other bankruptcy court; and, (e) failure of the Debtor to file a plan of reorganization acceptable to the Lender by September 2, 2011, or to have a plan of reorganization acceptable to the Lender confirmed by November 30, 2011. (Term Sheet p. 2).

(k)    **Remedies upon Default.** Upon the occurrence of an event of default, the Lender may declare all principal and interest due and immediately payable. The interim and final orders approving the DIP Loan shall provide that the automatic stay of section 362 of the Bankruptcy Code shall be modified to permit the Lender to exercise any and all remedies under the DIP Loan and applicable law, including setoff and foreclosure, upon written notice to the Debtor, the U.S. Trustee and any statutory committees appointed in this Case. At the election of Lender, upon the occurrence of a default, Lender shall have the right to exercise any and all remedies under the DIP Documents and applicable law, including foreclosure, as provided above.

(l)    **Costs and Expenses.** Debtor shall bear all reasonable costs and expenses arising in connection with the preparation, execution and delivery of the DIP Documents. Payment of such costs and expenses shall not be subject to approval by this Court, but if there is a dispute concerning the reasonableness of such fees, this Court shall have jurisdiction to resolve such disputes.

## IV.  RELIEF REQUESTED

20.    By this Motion, pursuant to Bankruptcy Code §§ 105, 362, 363, 364(c)(3), and

364(e) and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests:

(a)    authorization for the Debtor to borrow up to $100,000.00 in principal amount of post-petition financing (the "<u>DIP Financing</u>");

(b)      authorization for the Debtor's execution of the DIP Credit Agreement and any other necessary DIP Documents, to perform such other and further acts as may be necessary or appropriate in connection therewith, and to grant the liens and security interests to the Lender as provided herein;

(c)      authorization pursuant to Bankruptcy Code § 364(c)(3) to grant certain liens to the Lender to secure the Debtor's obligations under the DIP Loan;

(d)      authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Documents upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion; and

(e)      the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this DIP Motion to become effective pursuant to the Final Order.

## V.  BASIS FOR RELIEF

**Request for Approval of the DIP Facility and Related Actions**

21.      As described above, it is essential to the success of the Debtor's chapter 11 Case that the Debtor immediately obtain access to sufficient post-petition financing. The preservation of estate assets, the Debtor's continuing viability, and its ability to timely reorganize successfully under a plan of reorganization (or maximize value under a liquidating plan of reorganization), all depend heavily upon the approval of the DIP Loan and the related actions requested herein.

22.      Bankruptcy Code § 364 distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business, and (c) obtaining credit with specialized priority or with security. If a debtor in possession cannot obtain post-petition credit on an unsecured basis, pursuant to Bankruptcy Code § 364(c)(3), a court may authorize the obtaining of credit or the incurring of debt, repayment of which is secured by a junior lien on encumbered property.

23.    Because the Debtor proposes to obtain financing under a DIP Credit Agreement and related DIP Documents that is secured by junior liens with respect to certain of the Debtor's property, the approval of the DIP Loan is governed by Bankruptcy Code § 364(c)(3).

**Financing Under Bankruptcy Code § 364(c)**

24.    Pursuant to Bankruptcy Code § 364(c), a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit, and the proposed borrowing is in the best interests of its estate. *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit Debtor in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); *see also* 3 Collier Bankr. ¶ 364.03, at 364-7-18 (15th ed. rev.).

25.    The statutory requirement for obtaining post-petition credit under Bankruptcy Code § 364(c) is a finding, made after notice and hearing, that the debtor in possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense." *See Ames Dep't Stores*, 115 B.R. at 37-39 (a debtor must show that it has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under Bankruptcy Code § 364(c) must prove that it was unable to obtain unsecured credit pursuant to Bankruptcy Code § 364(b)).

26.    Courts have articulated a three-part test to determine whether a debtor may obtain financing under Bankruptcy Code § 364(c):

- the debtor is unable to obtain unsecured credit solely under Bankruptcy Code § 364(b) (*i.e.*, by granting a lender administrative expense priority);

- the credit transaction is necessary to preserve the assets of the estate; and

- the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit acquired is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere"); *Ames Dep't Stores*, 115 B.R. at 37-39.

27.    To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Bankruptcy Code § 364(c). *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* at 1088. Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

28.    Based upon the Debtor's experience seeking financing and upon initial conversations with potential lenders, the Debtor has been unable to find a lender willing to extend credit on an unsecured basis. Considering the foregoing, as well as the poor state of the credit markets, the Debtor strongly believes that it is unable to obtain unsecured financing from any capital source.

29.    The Debtor and the Lender have engaged in fair negotiations resulting in the financing proposal discussed in this DIP Motion and proposed for approval by the Court. Accordingly, the Debtor believes that the terms and conditions outlined in the Term Sheet and in this DIP Motion are reasonable and justified under the circumstances, in that this DIP Loan will enable the Debtor to have sufficient liquidity to continue with its operations and the plan process in a manner that will best serve all parties-in-interest herein.

**Protections Under Bankruptcy Code § 364(e)**

30.    The Debtor believes that the terms and conditions of the DIP Loan are the best possible under the circumstances of this Case and were negotiated in good faith. Accordingly, the Lender should be provided with the benefit and protection of Bankruptcy Code § 364(e), such that if any of the provisions of any order granting this DIP Motion are later modified, vacated, stayed, or terminated by subsequent order of this or any other court, the Lender would be fully protected with respect to any amounts disbursed before such modification, vacation, stay, or termination.

**The DIP Loan is Necessary to Preserve the Assets of the Estates**

31.    It is essential that the Debtor obtains financing necessary to continue, *inter alia*, the orderly operation of the Debtor's business and this Case, and to otherwise satisfy its working capital requirements. Without immediate access to new borrowing relief, the Debtor's business operations and this Case in general would be seriously impeded, which in turn would seriously jeopardize the value of the Debtor's assets. The new liquidity offered by the proposed DIP Loan would ensure that the Debtor can maintain and pre-develop its assets and administer this Case through the next several months as the plan process ensues. Thus, approval of borrowing under the DIP Loan is crucial to maximizing the value of the Debtor's estate.

-11-

**The Terms of the DIP Loan Are Fair, Reasonable, and Appropriate**

32.    The DIP Loan provides that the security interests granted to the DIP Lender is subject to the Carve-Out described above.  In *Ames Department Stores*, the bankruptcy court found that such "carve-outs" are not only reasonable but necessary to insure that debtors' estates are adequately assisted by counsel and other professionals. *Ames*, 115 B.R. at 40.

33.    Likewise, the Debtor believes that the fees and other charges required by the Lender under the DIP Loan are reasonable and appropriate under the circumstances.    The proposed fees under the DIP Loan are within the parameters of market fee structures for similar post-petition financing.  Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Bankruptcy Code § 364.  *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) (approving a debtor in possession financing facility that included a lender "enhancement fee").

**Application of the Business Judgment Standard**

34.    As described above, after appropriate investigation and analysis, the Debtor's management and advisors have concluded that the DIP Loan provides the best alternative available under the circumstances of this chapter 11 Case. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility, and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"). In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of

-12-

administration of the estate, and threaten the court's ability to control a case impartially."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

35.     The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and has satisfied the legal prerequisites to incur debt under the DIP Loan. Accordingly, the Court should grant the Debtor the authority to enter into DIP Loan and obtain funds from the Lender on the secured basis described above, pursuant to Bankruptcy Code § 364(c).

**Request for Modification of the Automatic Stay**

36.     Bankruptcy Code § 362 provides for an automatic stay upon the filing of a bankruptcy case. As summarized above, the proposed DIP Loan contemplates a modification of the automatic stay to permit (a) the Debtor to grant certain liens under the DIP Documents and to perform the Debtor's liabilities and obligations to the Lender, and (b) the exercise of remedies by the Lender following an event of default. Upon the occurrence of an event of default and during the continuance thereof, the Lender is entitled to exercise its rights and remedies under applicable law and as set forth herein and in the DIP Documents.

37.     The Debtor submits that, in the Debtor's business judgment, such provisions are reasonable under the present circumstances. Accordingly, the Debtor respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth herein.

## VI. GROUNDS FOR EMERGENCY CONSIDERATION

38.     The Debtor hereby requests emergency consideration of the DIP Motion to prevent immediate and irreparable harm to the Debtor's estate. There exists an immediate need to allow the Debtor to continue to operate its business on an interim basis. Emergency relief will avoid business interruption, which would harm the Debtor's estate and creditors. Without the

requested relief, the Debtor's estate and its creditors will suffer immediate and irreparable harm. Therefore, the Debtor respectfully requests that this Court hear this DIP Motion on an emergency basis within the next five (5) days.

## VII. INTERIM RELIEF

39.     Pending final approval of the DIP Loan, the Debtor requests that this Court authorize the Debtor to borrow under the DIP Loan on an interim basis, pursuant to Bankruptcy Rule 4001(c)(2), to the extent necessary to avoid immediate and irreparable harm to its business and to this chapter 11 Cases prior to any final approval thereof.  It is essential to the continued maintenance and pre-development of the Debtor's assets and this Case that the Court immediately authorize it to borrow up to $100,000.00.  The Debtor urgently needs funds to maintain and pre-develop its asset as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process.  Thus, the interim relief requested in this Motion, pending a final hearing, is necessary, appropriate, fully warranted, and essential to the Debtor's efforts to maximize the value of its estate in this chapter 11 Case for the benefit of all of its creditors and parties-in-interest.

40.     Accordingly, pending a final hearing on the Motion, the Debtor respectfully requests that the Court approve the terms of the DIP Loan on an interim basis pursuant to the terms of the proposed Interim Order.

## VIII. NOTICE

41.     Notice of this pleading will be served *via* the Court's Electronic Case Filing system and/or regular United States mail to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all

persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy Rules.

WHEREFORE, premises considered, the Debtor request that this Court: (a) hear the DIP Motion on an emergency basis; (b) enter an Interim Order authorizing the Debtor to obtain the post-petition financing described herein on an interim basis and setting the DIP Motion for a final hearing; and, (c) grant such other and further relief as the Court may deem just and proper.

Dated: June 1, 2011.

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: /s/ Maggie D. Conner
Matthew S. Okin
Texas Bar #00784695
Maggie D. Conner
Texas Bar. #24038439
1113 Vine St., Suite 201
Houston, TX 77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**PROPOSED ATTORNEYS FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed on the attached Service List *via* the Court's Electronic Case Filing system on the 1st day of June, 2011 and/or *via* regular United States mail on the 2nd day of June, 2011.

/s/ Maggie D. Conner
Maggie D. Conner

# Exhibit A

# JK AIR INVESTMENT GROUP, LLC

550 Westcott, Suite 235
Houston, TX 77007

May 20, 2011

KT Spears Creek, LLC
Attn: Kyle Tauch
22 Waugh Rd., Suite 270
Houston, TX  77007

**RE:     PROPOSAL FOR DIP LOAN**

      The purpose of this letter is to set forth certain general terms regarding a Debtor in Possession Loan (the "**Loan**") by JK Air Investment Group, LLC ("**JK Air**" or the "**Investor**") to KT Spears Creek, LLC ("**KT Spears**" and collectively the "**Parties**"). No portion of this letter is to be considered legally binding in any manner whatsoever, with the exception of Paragraphs 11 and 12 below, nor shall any of the provisions hereof constitute any form of representation or warranty from us to you. However, this letter sets forth our sincere interest in pursuing and consummating a deal with you on the following terms:

| | |
|---|---|
| **1. Borrower:** | KT Spears Creek, LLC (the "**Borrower**"). |
| **2. Investment:** | A draw facility in the amount of $100,000 (the "**Loan Commitment**").The Loan Commitment shall be advanced at Closing to be used solely to pay for expenses of the Borrower during the course of its bankruptcy proceedings including, but not limited to, architectural renderings, surveying, appraisals, environmental reports, legal fees, loan origination fees and other expenses that may be pre-approved by JK Air and the bankruptcy court. |
| **3. Interest:** | Interest on the JK Air Investment will accrue monthly at a rate of interest equal to twelve percent (12%) per annum, compounded monthly. |
| **4. Origination Fee:** | Five percent (5%) of the Loan Commitment. Such fee shall accrue to the balance of the Loan at Closing. |
| **5. Guarantee:** | There shall be no personal guaranty required, but all standard corporate guarantees from the Borrower will be required. |

May 20, 2011
Page 2 of 3

| | |
|---|---|
| **6. Term:** | The Loan will mature one year after the Closing Date, but in no event later than June 1, 2012 or at the Effective Date of a Plan of Reorganization (the "Termination Date") |
| **7. Loan Covenants** | a.)   No Plan of Reorganization can be filed without the prior written approval of JK Air. |
| | b.)   A Plan of Reorganization must be filed with the court no later than September 2, 2011 and such Plan must be confirmed no later than November 30, 2011. |
| | c.)   The Debtor must actively take steps to enact certain cost saving measures with respect to operations of the apartments, which shall enhance value and maximize cash flow. Such cost savings measures are more specifically defined under Exhibit A to this agreement. |
| **8. Default:** | In the event of a Default, which shall include a violation of any of the Loan Covenants; failure by Borrowers to pay the Loan in full on or before the Termination Date; or a transfer of the bankruptcy proceedings out of the Southern District of Texas, Houston Division, JK Air shall immediately be entitled to two board seats on a three member board given full and exclusive control of the Borrowers, with the remaining seat occupied at the discretion of the equity holders. |
| **9. Prepayment:** | The Financing may be voluntarily prepaid at any time, subject to payment of all accrued and unpaid interest. |
| **10. Closing Date** | Closing shall occur on or before June 15, 2011 (the "Closing Date"). |
| **11. Confidentiality:** | The Parties agree to keep confidential the existence and terms of this LOI and all information exchanged pursuant to this LOI, except with respect to necessary disclosure to partners, employees, accountants, attorneys, lenders and consultants, each of which shall be advised as to the confidential nature of such information, or as required by law or court order. No public announcements or statements concerning this LOI or the transactions contemplated herein shall be made by any Investor without the written consent of all involved parties. |
| **12. Non-Binding Effect:** | Although this letter is intended to evidence the preliminary understandings which we have reached regarding the contemplated transaction and our mutual intent to negotiate to enter into the Definitive Agreement, it is understood and agreed that this is merely a letter of intent. It is further understood and agreed that this letter shall not be binding, with the exception of Paragraphs 11 and 12, on either party until the Definitive Agreements are executed by the parties. |

May 20, 2011
Page 3 of 3

If the foregoing is acceptable to you, please sign and return the enclosed copy of this letter prior to 12:00 pm CST on May 31, 2011, at which time this offer will expire.

**KT Spears Creek, LLC**

By: _____

Title: _____

The foregoing letter of intent is hereby acknowledged, consented and agreed to by a duly authorized officer or representative of the undersigned as of this 20th day of May, 2011.

**JK Air Investment Group, LLC**

By: _____

Title: _____

Service List

*__United States Trustee:__*

Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

*__IRS:__*

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

*__Counsel for RBC:__*

Constance L. Young
Johnston, Allison & Hord, P.A
1065 East Morehead Street
Charlotte, North Carolina  28204
Tel:  704.998.2259
Fax:  704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Tel:  713.650.2740 Direct
Fax:  713.650.2400 Fax
jepstein@winstead.com

*__Receiver:__*

Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, South Carolina
Tel:  803.254.2300
Fax:  803.401.4236
woody.moore@colliers.com

*__Property Manager:__*

Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, North Carolina  28202
Tel:  704.332.0404
Fax:  704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, South Carolina  29045
Tel:  803.865.0400
Fax:  803.865.2505
greenhillparishmgr@greystar.com

*__Counsel for First Palmetto Bank__*

Shari L. Heyen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Tel: 713.374.3500
Fax: 713.374.3505
heyens@gtlaw.com

Service List

Richland County South Carolina
2020 Hampton Street
Columbia, SC 29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC 29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC 29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC 29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC 29223

First Savers Bank, a division of
Plantation Federal Bank
c/o Amy L.B. Hill
1310 Gadsden Street, P.O. Box 11449
Columbia, SC 29211

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC 29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX 77098

RBC
P.O. Box 1220
Rocky Mount, NC 27802-1220

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In RE:** | § | |
| | § | |
| **KT SPEARS CREEK, LLC,** | § | **Case No. 11-33991** |
| | § | |
| **DEBTOR.** | § | **(Chapter 11)** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364
### AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTOR
### TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING
### SECURITY INTERESTS, AND (III) SCHEDULING FINAL HEARING
(This Order relates to Docket No. ____.)

Before the Court is KT Spears Creek, LLC's, the debtor and debtor in possession (the

"Debtor")[1] emergency motion (the "DIP Motion") for an order, pursuant to Bankruptcy Code §§

105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

      (a)    authorization for the Debtor to borrow up to $100,000.00 in principal amount of post-petition financing (the "DIP Financing");

      (b)    authorization for the Debtor's execution of the DIP Credit Agreement and any other necessary DIP Documents, to perform such other and further acts as may be necessary or appropriate in connection therewith, and to grant the liens and security interests to the Lender as provided herein;

      (c)    authorization pursuant to Bankruptcy Code § 364(c)(3) to grant certain liens to the Lender to secure the Debtor's obligations under the DIP Loan;

      (d)    authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the DIP Documents upon the occurrence and continuance of an event of default, subject to the provisions of this DIP Motion and any order granting this DIP Motion; and

      (e)    the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this DIP Motion to become effective pursuant to the Final Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Final Hearing.*  A final hearing on the DIP Motion shall be held on June __, 2011, at __:__ __.m. before this Court, in Courtroom 401, at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.  Objections to the DIP Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the parties listed on the Service List attached hereto so that any such objections are received on or before __:__ __.m. (prevailing Central Time) on June __, 2011.

2.    *Disposition/Jurisdiction.*    The DIP Motion is granted on an interim basis in accordance with the terms of this interim order (the "Interim Order").  Any objections to the DIP Motion with respect to entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Court has core jurisdiction over this Case commenced on May 3, 2011 (the "Petition Date"), the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3.    *Notice.*    Notice of the DIP Motion, the relief requested herein and the Interim Hearing was served by the Debtor *via* United States mail, e-mail and/or the Court's Electronic Case Filing system to: (a) the U.S. Trustee; (b) the Debtor's secured creditors; (c) the Receiver; (d) the Property Manager; (e) the Debtor's twenty (20) largest unsecured creditors; (f) the Internal Revenue Service and all governmental agencies required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules; and (g) any and all persons or entities that have formally appeared and requested service in this Case pursuant to Rule 9010(b) of the Bankruptcy

-2-

Rules., and no further notice of the relief sought at the Interim Hearing and the relief granted

herein is necessary or required.

    4.    *Findings Regarding the DIP Loan.*

    (a)    All findings of fact and conclusions of law as announced on the record by the Court at the Interim Hearing are hereby adopted and incorporated into this Interim Order.

    (b)    Good cause has been shown for entry of this Interim Order.

    (c)    The Debtor has an immediate need to obtain financing to maintain and pre-develop its assets as well as to pay U.S. Trustee fees and its professionals while it undertakes the reorganization process. The DIP Loan is necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of the Debtor's estate

    (d)    The Debtor is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP Credit Agreement and are unable to obtain adequate unsecured credit allowable under Bankruptcy Codes § 503(b)(1) as an administrative expense.

    (e)    Pursuant to the terms of this Interim Order, the provisions of the Term Sheet and the DIP Documents are found to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitutes reasonably equivalent value and fair consideration.

    (f)    The DIP Documents have been the subject of fair negotiations conducted in good faith among the Debtor, the Lender and other parties in interest, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Loan, including, without limitation, all loans made to the Debtor pursuant to the DIP Documents, owing to the Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term is used in § 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise.

    (g)    The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). Absent granting the relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Loan in accordance with this Interim Order, the Term Sheet and the DIP Documents is in the best interest of the Debtor's estate.

    5.    *Authorization of the DIP Loan, DIP Term Sheet and DIP Documents.*

    (a)    The Debtor is hereby authorized to enter into the DIP Loan, DIP Credit Agreement, and DIP Documents to borrow thereunder up to an aggregate principal amount of $100,000.00, in accordance with the terms of this Interim Order.

     (b)    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts to execute and deliver all instruments and documents and to pay all fees and expenses reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loan, DIP Credit Agreement, and DIP Documents, including, without limitation, (i) the execution, delivery and performance of the DIP Credit Agreement and DIP Documents; (ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Credit Agreement and DIP Documents, in each case in such forms as the Debtor and Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Credit Agreement and DIP Documents (and any fees paid in connection therewith).

     (c)    Upon execution and delivery of the DIP Credit Agreement and DIP Documents, the DIP Credit Agreement and DIP Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim Order and the DIP Credit Agreement and DIP Documents. No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the DIP Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law.

    6.    *DIP Lien.* Pursuant to Bankruptcy Code § 364(c)(3), the Lender shall be granted junior perfected liens on all property of the Debtor subject to existing valid, perfected, enforceable and unavoidable liens on such property until the conclusion of the Final Hearing on the DIP Motion.

    7.    *Use of DIP Loan Proceeds.* The Debtor shall use the proceeds of the DIP Loan solely as provided by the DIP Credit Agreement, the DIP Documents, and this Interim Order, and also be subject to the budget attached hereto.

    8.    *Retention of Jurisdiction.* This Court shall retain jurisdiction to enforce the provisions of this Interim Order.

SIGNED THIS ___ day of June, 2011.

 

                         _____
                         HONORABLE LETITIA Z. PAUL
                         UNITED STATES BANKRUPTCY JUDGE