IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter 11) |
| DEBTOR | § | |
| | § | |
| FIRST SAVERS BANK | § | |
| | § | |
| Movant | § | |
| | § | |
| VS. | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | |
| | § | |
| Respondent | § | |

**MOTION OF FIRST SAVERS BANK
FOR RELIEF FROM THE AUTOMATIC STAY**

This is a motion for relief from the automatic stay. If it is granted, the movants may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least two days before the hearing. If you file your response less than 5 days before the hearing, you must send a copy to the movants by facsimile, by hand, or by electronic delivery. If you cannot settle, you must attend the hearing. Evidence may be offered at the court and court may rule.

Represented parties should act through their attorney.

There will be a preliminary hearing on this matter in the U.S. Bankruptcy Court, Courtroom No. 404, 515 Rusk Ave., 4th Floor, Houston, Texas 77002, on **Wednesday, July 6, 2011 at 10:00am.**

First Savers Bank, a division of Plantation Federal Bank (the "Bank"), files this *Motion for Relief from Stay* (the "Motion"), pursuant to 11 U.S.C. § 362(d), seeking relief from the automatic stay to permit the Bank to foreclose on a 65.94-acre tract of unimproved land in Richland County, South Carolina, owned by KT Spears Creek, LLC (the "Debtor").

I.
JURISDICTION AND VENUE

1.        The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§1334
and 157.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).  Venue is proper
before this Court pursuant to 28 USC §§1408 and 1409.

II.
BACKGROUND

2.        On December 21, 2007, the Debtor borrowed $6,000,000 from the Bank, secured
by a 65.94-acre tract of unimproved land in Richland County, South Carolina (the "Property").
The loan is evidenced by the Debtor's promissory note (the "Note") in the original amount of
$6,000,000.  The Note is secured by a first lien Mortgage (the "Mortgage") recorded in the real
property records of Richland County, South Carolina.  The loan was renewed and extended, most
recently on January 26, 2010.

3.        The Debtor has failed to make any payments on the Note in more than a year.  As
a result, the Bank filed suit in Richland County, South Carolina on September 9, 2010, seeking a
judicial foreclosure of its lien on the Property; a copy of that Complaint is attached as Exhibit 1
(and copies of the applicable Notes and Mortgage are attached to the Complaint).  Pursuant to
this proceeding, a foreclosure sale has been scheduled for August 8, 2011.

4.        The Debtor has also failed to pay the property taxes owing on the Property.  As a
result, a tax foreclosure sale was noticed and held on December 6, 2010, with the Property being
sold to a third party.  Attached as Exhibit 2 is a copy of the Execution Notice from Richland
County, reflecting that the unpaid taxes due were $359,675.32 (as of 2010).  The final date to
redeem the Property is December 7, 2011.

5.        In addition to the Property, the Debtor owns an apartment project adjacent to the
Property, financed by a secured loan from RBC Bank.  As of the Petition Date, the Debtor owes

2

approximately $19 million to RBC Bank. According to the attorney for RBC Bank, the Debtor has agreed to pay RBC Bank in full by December 1, 2011, or else allow the lien on the apartment project to be foreclosed.

6.      Due to the well-publicized problems in the housing market, the Property is now worth far less than what it was worth in 2007. The Debtor cannot (or will not) adequately protect the Bank's interest in the Property. The Debtor is not paying any interest or property taxes. The Debtor has made no effort to develop the Property, or to market the Property for sale. There is no possibility of the Debtor successfully reorganizing in Chapter 11. Consequently, the stay should be lifted to allow the Bank to foreclose its lien on the Property.

III.
RELIEF REQUESTED

7.      By this Motion, the Bank requests entry of an Order, substantially in the form of the proposed order filed contemporaneously herewith, modifying the automatic stay allowing the Bank to foreclose its lien on the Property and (if necessary) to redeem the Property with respect to the tax sale, and waiving the ten-day stay imposed by FED. R. BANKR. P. 4001(a)(3).

IV.
BASIS FOR RELIEF REQUESTED

8.      The Bank is entitled to relief from the stay because of a lack of adequate protection. 11 U.S.C. §362(d)(1). In addition to not paying any interest or property taxes, the Debtor has agreed to pay RBC Bank [its other secured creditor] in full. The Property does not generate any revenue, and the Debtor has no income with which to pay interest, property taxes, or development costs. In light of that, there is not even a remote possibility that the Debtor could successfully reorganize. As such, the stay should be modified to permit The Bank to foreclose its lien on the Property.

3

9.    Bankruptcy Rule 4001(a)(3) imposes a ten-day stay on all orders granting relief from the automatic stay imposed by 11 USC § 362, unless the Court orders otherwise. FED. R. BANKR. P. 4001(a)(3). The Bank avers that, as shown above, cause exists for the Court to waive the ten-day stay imposed by Bankruptcy Rule 4001.

10.    For the foregoing reasons, the Bank respectfully requests that the Court enter an Order (a) modifying the automatic stay to allow the Bank to foreclose its lien and (if necessary) to redeem the Property with respect to the tax sale, (b) waiving the ten-day stay imposed by Bankruptcy Rule 4001(a)(3); and (c) granting such other relief as may be just or appropriate. Dated: June 10, 2011.

Respectfully submitted,

/s/ David S. Elder
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com (*email*)

*ATTORNEY-IN-CHARGE FOR
FIRST SAVERS BANK*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he has conferred with Maggie Conner and Matt Okin, counsel for the Debtor, and the Debtor is opposed to the relief requested. The parties were unable to reach an agreement on the relief requested.

/s/ David S. Elder
David S. Elder

4

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2011, a true and correct copy of the foregoing Motion was served (i) electronically, via the Court's ECF system, upon Debtor's counsel, the Office of the U.S. Trustee, parties who have filed notices of appearance in this case, and all other parties receiving ECF notifications in this case, and (ii) by first class U.S. mail, postage prepaid on the parties listed on the Master Service List attached.

/s/ David S. Elder
David S. Elder

5

STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
          )
COUNTY OF RICHLAND   )
          )
Plantation Federal Bank and First Savers )  CIVIL ACTION COVERSHEET
Bank, a division of Plantation Federal Bank, )
       **Plaintiff(s)** )
          )  2010-CP 40-06221
          )
      **vs.**   )
          )
KT Spears Creek, LLC; Kyle D. Tauch, )
Individually; Greenhill Parish Community
Association, a/k/a The Greenhill Parish
Community Association, Inc.; and RBC Centura
Bank,
       **Defendant(s)** )

(Please Print)

**Submitted By:** Amy L. B. Hill, Esquire

**Address:** Sowell Gray Stepp & Laffitte, LLC
    1310 Gadsden Street (29201)
    Post Office Box 11449
    Columbia, South Carolina 29211

| | |
|---|---|
| **SC Bar #:** | 68541 |
| **Telephone #:** | (803) 929-1400 |
| **Fax #:** | (803) 929-0336 |
| **Other:** | |
| **E-mail:** | ahill@sowellgray.com |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
***If Action is Judgment/Settlement do not complete***

☐ **JURY TRIAL** demanded in complaint. ☒ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☒ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20___-CP-___-___ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Other (899) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | ☐ Other (799) | | ☐ Administrative Law Judge (980) |
| Special/Complex /Other | | | ☐ Public Service Commission (990) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| | ☐ Sexual Predator (510) | | |

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE
DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**     **You must comply with the Supreme Court Rules regarding ADR.**
                            **Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA        )    IN THE COURT OF COMMON PLEAS
                               )
COUNTY OF RICHLAND             )    IN THE FIFTH JUDICIAL CIRCUIT
                               )
Plantation Federal Bank and First Savers   )    Civil Action No.
Bank, a division of Plantation Federal     )
Bank,                          )
                               )            **SUMMONS**
                Plaintiffs,    )    **Foreclosure/Collection on Guaranty**
                               )         **Deficiency Demanded**
        vs.                    )            **Non-Jury**
                               )
KT Spears Creek, LLC; Kyle D. Tauch,       )
Individually; Greenhill Parish Community   )
Association, Inc., a/k/a The Greenhill      )
Parish Community Association, Inc.; and     )
RBC Centura Bank,              )
                               )
                Defendants.    )

#### TO:   THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in the above captioned action, a copy of which is herewith served upon you, and to serve a copy of your Response on the subscribers located at 1310 Gadsden Street, Post Office Box 11449, Columbia, South Carolina 29211, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

TO MINOR(S) OVER FOURTEEN YEARS OF AGE, AND/OR TO MINOR(S) UNDER FOURTEEN YEARS OF AGE AND THE PERSON WITH WHOM THE MINOR(S) RESIDES, AND/OR TO PERSONS UNDER SOME LEGAL DISABILITY:

YOU ARE FURTHER SUMMONED AND NOTIFIED to apply for the appointment of a guardian ad litem within thirty (30) days after the service of this Summons and Notice upon you. If you fail to do so, application for such appointment will be made by the Mortgagee

immediately and separately and such application will be deemed absolute and total in the absence of your application for such an appointment within thirty (30) days after the service of the Summons and Complaint upon you.

YOU WILL ALSO TAKE NOTICE that under the provisions of South Carolina Code §29-3-100, effective June 16, 1993, any collateral assignment of rents contained in the mortgage identified in the Complaint is hereby perfected and Plaintiffs hereby give further notice that all rents shall be payable directly to it by delivery of the same to its undersigned attorneys from the date of default forward. In the alternative, the Plaintiffs will move a Judge of this Circuit Court on the tenth (10th) day after service hereof, or as soon as counsel for Plaintiffs may be heard, for an Order enforcing the assignment of rents, if any, and/or profits, if any, compelling payments of all such funds covered by the mortgage and/or by statute and/or by common law directly to the undersigned attorneys for the Plaintiffs, which Motion is based upon the original Note and Mortgage identified in the Complaint herein and attached hereto as well as any applicable laws, statutes or regulations.

2

YOU WILL ALSO TAKE NOTICE that should you fail to Answer the foregoing

Summons, the Plaintiffs will move for an Order of Reference of this cause to the Master-In-

Equity or Special Referee in/for this County, which Order shall, pursuant to Rule 53 of the South

Carolina Rules of Civil Procedure, specifically provide that the said Master-In-Equity or Special

Referee is authorized and empowered to enter a final judgment in this cause with appeal only to

the South Carolina Court of Appeals pursuant to Rule 203 (d)(1) of the SCAR, effective June 1,

1999.

SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By: _____
       Amy K. B. Hill
       1310 Gadsden Street
       Post Office Box 11449
       Columbia, South Carolina 29211

Attorneys for Plaintiffs

Columbia, South Carolina
September ____, 2010

3

STATE OF SOUTH CAROLINA        )    IN THE COURT OF COMMON PLEAS
                               )
COUNTY OF RICHLAND             )    IN THE FIFTH JUDICIAL CIRCUIT
                               )
Plantation Federal Bank and First Savers    )    Civil Action No.:
Bank, a division of Plantation Federal      )
Bank,                                       )
                                            )
                        Plaintiffs,         )    **NOTICE OF LIS PENDENS**
                                            )
        vs.                                 )
                                            )
KT Spears Creek, LLC; Kyle D. Tauch,        )
Individually; Greenhill Parish              )
Community Association, Inc., a/k/a G-P-      )
C-A, Inc.; and RBC Centura Bank,            )
                                            )
                        Defendants.         )
                                            )

NOTICE IS HEREBY GIVEN that an action has been commenced or will be commenced within 20 days in the Court of Common Pleas for Richland County upon a Complaint of the above-named Plaintiffs against the above-named Defendants for foreclosure of a certain Mortgage given by **KT Spears Creek, LLC**, to **First Savers Bank** dated December 21, 2007 and recorded on December 27, 2007 at 12:34 p.m. in the records of Richland County, South Carolina in Book 1387 at page 1944.

At the time of the filing of this notice, the premises affected by the said action were situated in the County of Richland, State of South Carolina, and are described in said Mortgage as follows:

> ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION: Deed from DAK I, LLC to KT Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland ·County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By: _____
Amy L.B. Hill
1310 Gadsden Street
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400

Attorneys for Plaintiffs

Columbia, South Carolina
September 9, 2010

2

STATE OF SOUTH CAROLINA          )     IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF RICHLAND               )     IN THE FIFTH JUDICIAL CIRCUIT
                                 )
Plantation Federal Bank and First Savers   )   Civil Action No.:
Bank, a division of Plantation Federal     )
Bank,                                      )
                                 )
                      Plaintiffs, )
                                 )
        vs.                      )     **VERIFICATION**
                                 )
K.T. Spears Creek, LLC; Kyle D. Tauch,     )
Individually; Greenhill Parish             )
Community Association, Inc.; and RBC       )
Centura Bank,                              )
                                 )
                     Defendants.  )
                                 )

| | |
|---|---|
| Current Principal Balance: | $5,939,503.69 |
| Interest Amount Due: | $  185,923.14 |
| Fees: | $   13,946.34 |
| **Total Due:** | **$6,139,373.17** |

PERSONALLY APPEARED BEFORE ME the undersigned, who being first duly sworn,

deposes and says:  That the above information is a true and correct statement of the account for

K.T. Spears Creek, LLC, and that no part of the sum due has been paid by discount, set-off or

otherwise, and he has authority to verify this account.

FIRST SAVERS BANK

By: _____

Its:  _____VICE PRESIDENT_____

SWORN TO AND SUBSCRIBED
Before me this _3rd_____ day of September, 2010.

_____
Notary Public for South Carolina
My Commission expires ___My Commission Expires
                              April 15, 2015

STATE OF SOUTH CAROLINA )   IN THE COURT OF COMMON PLEAS
                        )
COUNTY OF RICHLAND      )   IN THE FIFTH JUDICIAL CIRCUIT

Plantation Federal Bank and First Savers )   Civil Action No.:
Bank, a division of Plantation Federal   )
Bank,                                    )
                                         )   **VERIFIED COMPLAINT**
                    Plaintiffs,          )   **Foreclosure/Collection on Guaranty**
                                         )   **Deficiency Demand**
        vs.                              )   **Non-Jury**
                                         )
KT Spears Creek, LLC; Kyle D. Tauch,     )
Individually; Greenhill Parish           )
Community Association, Inc., a/k/a The    )
Greenhill Parish Community               )
Association, Inc.; and RBC Centura       )
Bank,                                    )
                                         )
                    Defendants.          )
                                         )

        Plaintiffs complaining of the above-named Defendants, would respectfully allege the

following:

        1.      This is an action to foreclose a mortgage on real property located in Richland

County, South Carolina and the Plaintiffs seek a deficiency judgment if the sale of the subject

property does not cover the amounts owed.

        2.      Pursuant to the South Carolina Supreme Court's Administrative Order filed on

May 22, 2009, the mortgage loan identified herein is a commercial mortgage loan which is not

owned, securitized or guaranteed by Fannie Mae or Freddie Mac nor is any servicer of the loan

participating in the Home Affordable Modification Program (HMP), as referenced in the above

Administrative Order. As such, the HMP is not applicable to the loan and mortgage identified

herein.

3.      Plaintiffs Plantation Federal Bank and First Savers Bank, a division of Plantation Federal Bank (collectively "Bank") are banking corporations organized and existing under the laws of the United States.

4.      Defendant KT Spears Creek, LLC ("Borrower") is a limited-liability company organized pursuant to the laws of South Carolina and the owner of record of the subject property.

5.      Defendant Kyle D. Tauch ("Guarantor") is, upon information and belief, a citizen and resident of Houston County, Texas.

6.      Defendant Greenhill Parish Community Association, Inc., a/k/a G-P-C-A, Inc., is a corporation organized pursuant to the laws of South Carolina and upon information and belief, its office is located in Richland County, South Carolina.

7.      Upon information and belief, Defendant RBC Centura Bank ("RBC")is a corporation organized pursuant to the laws of North Carolina with an office located in Richland County, South Carolina

8.      This Court has jurisdiction over this matter.

9.      The real property which is the subject of the within Mortgage foreclosure action is located in Richland County, South Carolina.

### FOR A FIRST CAUSE OF ACTION
(Foreclosure)

10.     Each of the allegations in the above-numbered paragraphs are repeated herein as if stated verbatim.

11.     On or about December 21, 2007, the Bank made a loan to Borrower in the principal sum of Six Million and no/100 Dollars ($6,000,000.00) (the "Loan").

12.     On or about December 21, 2007, in consideration of the Loan, Borrower made, executed and delivered to First Savers Bank, its successors and assigns, a Promissory Note (as

2

amended, renewed and modified, referred to herein as the "Note") whereby it promised to pay to the order of First Savers the principal sum of $6,000,000.00, together with interest at a fixed rate of 7%.

13.     A true and authentic copy of the Note is incorporated herein by reference and attached hereto as **Exhibit A.**

14.     On December 21, 2007, in order to secure the indebtedness represented by the Note, the Borrower executed and delivered to the Bank, its successors and assigns, a Mortgage (as amended, referred to herein as the "Mortgage") encumbering the real property located in Richland County, South Carolina ("Premises") which is described as follows:

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION: Deed from DAK I, LLC to K. T. Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

15.     The Mortgage was recorded on December 27, 2007 at 12:34 p.m. in the records of Richland County, South Carolina in Book 1387 at page 1944.

16.     A true and correct copy of the Mortgage is attached hereto and incorporated by reference as **Exhibit B.**

17.     The Mortgage constitutes a first priority mortgage on the Premises encumbered by the Mortgage.

3

18.     Subsequent to December 21, 2007 but prior to January 26, 2010, Plantation Federal Bank became the successor to First Savers Bank and First Savers Bank became a division of Plantation Federal Bank.

19.     Therefore, Plantation Federal Bank became the owner and holder of the Note, Renewal Note (as herein after defined), the Mortgage, and the 2007 Guaranty (as also herein after defined).

20.     On or about January 26, 2010, the Note was renewed in the principal amount of $5,950,000.00.

21.     That renewal of the Note is evidenced by a Promissory Note dated January 26, 2010, which was executed and delivered to Plantation Federal Bank by Borrower in the amount of $5,950,000.00 (the "Renewal Note").

22.     The Renewal Note required 11 payments of $46,487.98 and a "balloon payment" of the unpaid balance and interest due on January 26, 2011.

23.     A true and authentic copy of the Renewal Note is incorporated herein by referenced and attached hereto as **Exhibit C**.

24.     The Borrower is in default under the terms of the Renewal Note by reason of its failure to pay the periodic payments due and owing under the Renewal Note, despite demand for payment having been made.

25.     The Renewal Note and Mortgage provided, among other things, that on failure to pay any installment of either principal or interest, or any portion thereof when due, the Bank shall have the right to declare the entire amount of the principal of the debt immediately due, and to proceed to enforce the collection of the same, together with interest, attorney's fees and all other amounts secured thereby.

4

26.   The Renewal Note, together with the Mortgage, is therefore in default and Plaintiff has and does hereby declare the entire balance of principal and interest to be immediately due and payable at once.

27.   Plaintiffs may be forced to pay sums for taxes and insurance and costs for securing the property, which sums according to the terms of the mortgage, should be added to the amount of the debt.

28.   The 2010 Renewal Note is expressly secured by the Mortgage.

29.   Plaintiffs have provided the Borrower with all notices of default, if any, required under the Renewal Note and Mortgage.

30.   As a result of the defaults set forth above, Plaintiffs have placed the Renewal Note and the Mortgage and other loan documents in the hands of its attorneys for collection by foreclosure.

31.   The amount due under the Renewal Note (exclusive of attorney's fees and costs of collection) as of September 3, 2010, was as follows:

| Principal | $5,939,503.69 |
| Interest | $ 185,923.14 |
| Late Charges | $ 13,946.34 |
| **TOTAL DEBT** | **$6,139,373.17** |

32.   Plaintiffs are entitled to judgment of foreclosure and sale of the Premises.

33.   The hereinafter named Defendants may have some interest in or lien upon the premises covered by the Mortgage set forth above, or some part thereof, but such interests or liens are junior and subsequent to the lien of Plaintiffs' Mortgage or, if specified below, have been paid in full and either should be satisfied of record or the lien released from the subject real

estate. Said liens or interests are of record in the Office of the ROD or Clerk of Court of the aforesaid county and are described as follows:

      a.    As will be described in this paragraph, Defendant RBC Centura Bank has a mortgage on a large tract of land totaling 95.90 acres, including the 65.94 acres that are the subject of this litigation. Plaintiffs are informed and believe that monies were paid to RBC Centura Bank in exchange for an agreement by said Defendant that its mortgage on the 65.94 acres would be released and that any assignment of rents or leases or any UCC filing impacting the 65.94 acres that are the subject of this litigation would be released. The mortgage held RBC Centura Bank was given by KT Spears Creek, LLC to secure the sum of $5,500,000.00 is dated December 2, 2004 and was recorded on December 6, 2004 in Book 1003 at page 1587 ("RBC 2004 Mortgage"). The 95.90 acre property covered by the RBC 2004 Mortgage:

> ALL that certain piece, parcel or tract of land, with all improvements thereon, situate, lying and being near Pontiac, in the County of Richland, State of South Carolina, containing 95.90 Acres and being more particularly shown and delineated on a plat entitled "Plat prepared for DAK I, LLC" and prepared by United Design Services, Inc., William M, Brasington, PLS No. 9312, dated July 26, 2002 and revised July 26, 2002 and recorded in the Office of the Register of Deeds for Richland County in Record Book 687, at page 3506. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 95.90 acres.

> DERIVATION: Deed from Baker and Baker Real Estate Developers, LLC, A. M. Lourie, Isadore E. Lourie and Marvin L. McCrory to DAK I, LLC dated January 13, 2000 and recorded January 14, 2000 in the Office of the Register of Deeds for Richland County in Record Book 376, at page 2717.

> TMS NO.: 25800-03-05 (portion)

KT Spears Creek, LLC also gave a mortgage to RBC Centura Bank in the amount of $17,700,000 dated May 25, 2006 and recorded on June 2, 2006 on property that was a

portion of the property covered by the mortgage described above but excluding the property which is subject to this lawsuit. (KT Spears Creek, LLC agreed to subordinate the December 2004 mortgage to the June 2006 mortgage.) (KT Spears Creek, LLC also agreed to cross-collateralize the June 2006 mortgage with the property that is the subject of this lawsuit.) Plaintiffs are informed and believe that the RBC 2004 Mortgage was partially paid in the amount of $3,000,000 in exchange for an agreement by RBC Centura Bank to release from the RBC 2004 Mortgage the property which is the subject of this action. Plaintiffs seek an order of this Court so releasing the property that is the subject of this action from the lien of the RBC 2004 Mortgage. Plaintiffs also seek an order of this Court releasing the premises from an RBC Centura Bank Assignment of Leases and Rents and any other UCC filings relating to the property that is the subject of this lawsuit.

b.  Greenhill Parish Community Association, Inc., a/k/a The Greenhill Parish Community Association, Inc. by virtue of covenants, conditions and restrictions filed in the office of ROD for Richland County on May 8, 2001 in Book 515 at page 1703; as amended; to include, but not limited to, the right to claim a lien against the Premises for any unpaid assessments levied thereon.

34.  Plaintiffs do not waive, but specifically demand a deficiency judgment against the Borrower and Guarantor, jointly and severally, for any amount outstanding after application of the proceeds of sale including but not limited to interest, the costs of collection and attorneys fees.

## FOR A SECOND CAUSE OF ACTION
### (Collection on Guaranty)

35.  Each and every allegation in the above-numbered paragraphs is repeated herein as if verbatim.

36.     On December 21, 2007, in order to better secure the Note, Defendant Kyle D. Tauch ("Guarantor") executed a Guaranty ("Guaranty") by which he individually and unconditionally guaranteed the payment of all indebtedness evidenced by the Note, including all renewals, extensions and/or modifications thereof, to include but not limited to the Renewal Note, plus costs and reasonable attorneys' fees of the Lender.

37.     A true and authentic copy of the Guaranty is attached hereto and incorporated by reference as **Exhibit D.**

38.     On January 26, 2010, in order to better secure the Renewal Note, Defendant Tauch executed a Continuing Unlimited Guaranty (the "2010 Guaranty") by which he unconditionally guaranteed the payment of all indebtedness of the Borrower to Plantation Federal Bank, including the indebtedness evidenced by the Renewal Note.

39.     A true and authentic copy of the 2010 Guaranty is incorporated herein by reference and attached hereto as **Exhibit E.**

40.     Plaintiffs have declared the entire balance of the Renewal Note and Guaranty due and payable and hereby demand payment of the same, but said Defendant Guarantor has refused to pay, and therefore is in default under the terms of the Guaranty.

41.     Plaintiffs expressly reserve the right to enter a deficiency judgment against the Defendants KT Spears Creek, LLC and Kyle D. Tauch after the sale of the mortgage property.

WHEREFORE, having fully set forth its Complaint, Plaintiffs pray that the Court inquire to the matters set forth herein and:

a.     That the amount due upon the Renewal Note, together with the attorneys' fees and the costs of collection, be ascertained and determined under the direction of the Court;

b.     That the Mortgage be declared a first mortgage on the Premises;

8

c.    That Plaintiffs have judgment of foreclosure for the amount so found to be due and owing under the Renewal Note;

d.    That the Premises be sold free and clear of all liens and interests; that the equity of redemption be barred, and the proceeds of the sale be applied as follows:

FIRST, to the costs and expenses of the within action and sale;

SECOND, to the payment and discharge of the amount due Plaintiffs upon the Renewal Note, together with costs and fees awarded by the court;

THIRD, the surplus, if any, be distributed according to law;

e.    For an Order directing and empowering the Sheriff of Richland County, South Carolina, to place the successful purchaser(s) at such foreclosure sale in possession of the Premises should the same become necessary;

f.    That the Court enter a deficiency judgment against Borrower and Guarantor, jointly and severally, for any amount due and owing to Plaintiffs after application of the proceeds of sale; and,

g.    For such other and further relief as this Court deems just and proper.

SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By: _____
        Amy L.B. Hill
        1310 Gadsden Street
        Post Office Box 11449
        Columbia, South Carolina 29211
        (803) 929-1400

Attorneys for Plaintiffs

Columbia, South Carolina
September 9, 2010

9

# EXHIBIT A

✗ 8800023481 101

# PROMISSORY NOTE

$6,000,000.00

December 21st, 2007

FOR VALUE RECEIVED, the undersigned KT SPEARS CREEK, LLC, a South Carolina limited liability company ("Borrower"), hereby promises to pay to the order of FIRST SAVERS BANK, a banking institution, located at 501 Roper Mountain Road, Greenville, South Carolina 29615, ("Lender"), or at such other place or to such other party or parties as the holder of this Note may from time to time designate, without offset, the principal sum of SIX MILLION and No/100 ($6,000,000.00) DOLLARS, or so much thereof as may be advanced, with interest thereon computed from date of each advance at the rate set forth below.

Section 1: Payment Schedule and Maturity Date. Prior to maturity, accrued and unpaid interest for each calendar month shall be due and payable in arrears on the fifth (5th) day of each month, commencing on January 5, 2008. The entire principal balance of this Note then unpaid, together with all accrued or unpaid interest and all other amounts payable hereunder and under the other Loan Documents (as hereinafter defined), shall be due and payable in full on December 31, 2009 (the "Maturity Date"), as the final maturity of this Note.

Section 2: Security; Loan Documents. The security for this Note includes a Mortgage, Assignment, Security Agreement, and Fixture Filing (as the same may from time to time be amended, restated, modified, or supplemented, the "Mortgage") of even date herewith from Borrower to Lender, conveying and encumbering certain real and personal property more particularly described therein (the "Property"). This Note, the Mortgage, the Loan Agreement between Borrower and Lender of even date herewith (as the same may from time to time be amended, restated, modified or supplemented, the "Loan Agreement") and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the "Loan"), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a "Loan Document" and together the "Loan Documents."

Section 3: Interest Rate. The unpaid principal balance of this Note from day to day outstanding which is not past due, shall bear interest at a fixed rate equal to Seven Percent (7%) per annum. If any amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at Eighteen Percent (18%) per annum or the highest amount permitted by applicable Law.

Section 4: Prepayment. Borrower shall be subject to a prepayment penalty in the amount of One Percent (1%) of the amount prepaid at any point prior to ninety (90) days before the Maturity Date. Such penalty shall not apply if Borrower refinances the current Loan with the proceeds of an alternate loan issued by Lender, prior to the Maturity Date.

Section 5: Late Charges. If Borrower shall fail to make any payment under the terms of this Note (other than the payment due at maturity) within fifteen (15) days after the date such payment is due, Borrower shall pay to Lender on demand a late charge equal to five percent (5%) of the amount of such

payment. Such fifteen (15) day period shall not be construed as in any way extending the due date of any payment. The late charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other amount that Lender may be entitled to receive or action that Lender may be authorized to take as a result of such late payment.

Section 6: Certain Provisions Regarding Payments. All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Lender under the Loan Documents, in such manner and order as Lender may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 p.m. shall be deemed to be received on, and shall be posted as of, the following Business Day. Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

Section 7: Events of Default. The occurrence of any one or more of the following shall constitute an "Event of Default" under this Note:

(a)    Borrower fails to pay when and as due and payable any amounts payable by Borrower to Lender under the terms of this Note.

(b)    Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period.

(c)    An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note (subject to any applicable grace or cure period).

Section 8: Remedies. Upon the occurrence of an Event of Default, Lender may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a)    Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

(b)    Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

2

(c)    Lender may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9: Remedies Cumulative. All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10: Costs and Expenses of Enforcement. Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with bankruptcy, insolvency or appeal.

Section 11: Heirs, Successors and Assigns. The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties. The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted under the Loan Documents.

Section 12: General Provisions. Time is of the essence with respect to Borrower's obligations under this Note. If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby. Borrower and each party executing this Note as Borrower hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any extensions or postponements of time of payment of this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinate to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party

against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. This Note and its validity, enforcement and interpretation shall be governed by the laws of the state in which payment of this Note is to be made (without regard to any principles of conflicts of laws) and applicable United States federal law. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made. The term "Business Day" shall mean a day on which Lender is open for the conduct of substantially all of its banking business at its office in the city in which this Note is payable (excluding Saturdays and Sundays). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement. The words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 13: Notices. Any notice, request, or demand to or upon Borrower or Lender shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 14: No Usury. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note and all other indebtedness secured by the Mortgage, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

4

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first above written.

**BORROWER:**

KT SPEARS CREEK, LLC    [SEAL]

By: _____

Kyle Tauch
*Its: Authorized Signatory*

5

# EXHIBIT B

Prepared By/Return To:

First Savers Bank
501 Roper Mtn. Rd.
Greenville, SC 29615
Attn: Jeff McGehee

Book 1387-1944
2007113122  12/27/2007 12:34:04:997
Fee:$24.00  County Tax: $0.00

Mortgage
State Tax: $0.00

2007113122  Richard W. Rodden          Richland County ROD

THE COLLATERAL SUBJECT TO THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND
FIXTURE FILING INCLUDES GOODS THAT ARE OR ARE TO BECOME FIXTURES.

THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND FIXTURE FILING IS TO BE
FILED IN THE REAL PROPERTY RECORDS FOR GREENVILLE COUNTY, AND SHALL SERVE AS A
FIXTURE FILING FINANCING STATEMENT.

MORTGAGE, ASSIGNMENT,
SECURITY AGREEMENT AND
FIXTURE FILING

by

KT Spears Creek, LLC,
a South Carolina limited liability company,
as Mortgagor,

to and in favor of

First Savers Bank,
as Mortgagee

## Mortgage, Assignment, Security Agreement and Fixture Filing

This Mortgage, Assignment, Security Agreement and Fixture Filing is made as of the _21st_ day of December, 2007, by KT Spears Creek, LLC, a South Carolina limited liability company (herein referred to as "Mortgagor"), whose address is 5410 Piping Rock, Houston, TX 77056, to First Savers Bank ("Lender"), whose address is 501 Roper Mountain Rd., Greenville, SC 29615.

### Recitals

Mortgagor has requested that Lender make the Loan (as hereinafter defined) to Mortgagor. As a condition precedent to making the Loan, Lender has required that Mortgagor execute and deliver this Mortgage, Assignment, Security Agreement and Fixture Filing to Lender.

### Grants and Agreements

Now, therefore, in order to induce Lender to make the Loan to Mortgagor, Mortgagor agrees as follows:

### Article I
Definitions.

As used in this Mortgage, the terms defined in the Preamble hereto shall have the respective meanings specified therein, and the following additional terms shall have the meanings specified:

"Accessories" means all fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies and other articles of personal property, of every kind and character, tangible and intangible (including software embedded therein), now owned or hereafter acquired by Mortgagor, which are now or hereafter attached to or situated in, on or about the Land or Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or Improvements, and all Additions to the foregoing, all of which are hereby declared to be permanent accessions to the Land.

"Accounts" means all accounts of Mortgagor within the meaning of the Uniform Commercial Code of the State, derived from or arising out of the use, occupancy or enjoyment of the Property or for services rendered therein or thereon.

"Additions" means any and all alterations, additions, accessions and improvements to property, substitutions therefor, and renewals and replacements thereof.

"Claim" means any liability, suit, action, claim, demand, loss, expense, penalty, fine, judgment or other cost of any kind or nature whatsoever, including fees, costs and expenses of attorneys, consultants, contractors and experts.

"Condemnation" means any taking of title to, use of, or any other interest in the Property under the exercise of the power of condemnation or eminent domain, whether temporarily or permanently, by any Governmental Authority or by any other Person acting under or for the benefit of a Governmental Authority.

"Condemnation Awards" means any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

"Default" means an event or circumstance which, with the giving of Notice or lapse of time, or both, would constitute an Event of Default under the provisions of this Mortgage.

"Encumbrance" means any Lien, easement, right of way, roadway (public or private), condition, covenant or restriction, Lease or other matter of any nature that would affect title to the Property.

"Event of Default" means an event or circumstance specified in Article VI and the continuance of such event or circumstance beyond the applicable grace and/or cure periods therefor, if any, set forth in Article VI.

"Expenses" means all fees, charges, costs and expenses of any nature whatsoever incurred at any time and from time to time (whether before or after an Event of Default) by Lender in making, funding, administering or modifying the Loan, in negotiating or entering into any "workout" of the Loan, or in exercising or enforcing any rights, powers and remedies provided in this Mortgage or any of the other Loan Documents, including attorneys' fees, court costs, receiver's fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of, or selling, the Property.

"Governmental Authority" means any governmental or quasi-governmental entity, including any court, department, commission, board, bureau, agency, administration, service, district or other instrumentality of any governmental entity.

"Guarantor" means Kyle Tauch, his heirs, personal representatives, successors and assigns.

"Guaranty" means the Guaranty Agreement of even date herewith executed by Guarantor for the benefit of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Improvements" means all buildings, structures and other improvements now or hereafter existing, erected or placed on the Land, together with any on-site improvements and off-site improvements in any way used or to be used in connection with the use, enjoyment, occupancy or operation of the Land.

"Insurance Proceeds" means the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to such Property, in each case whether now or hereafter existing or arising.

"Land" means the real property described in Exhibit A attached hereto and made a part hereof.

"Laws" means all federal, state and local laws, statutes, rules, ordinances, regulations, codes, licenses, authorizations, decisions, injunctions, interpretations, orders or decrees of any court or other Governmental Authority having jurisdiction as may be in effect from time to time.

"Leases" means all leases, license agreements and other occupancy or use agreements (whether oral or written), now or hereafter existing, which cover or relate to the Property or any part thereof, together with all options therefor, amendments thereto and renewals, modifications and guaranties thereof, including any cash or security deposited under the Leases to secure performance by the tenants of their obligations under the Leases, whether such cash or security is to be held until the expiration of the terms of the Leases or applied to one or more of the installments of rent coming due thereunder.

"Lender" means Lender and its successors and assigns.

"Lien" means any mortgage, Mortgage, pledge, security interest, assignment, judgment, lien or charge of any kind, including any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction.

"Loan" means the loan from Lender to Mortgagor, the repayment obligations in connection with which are evidenced by the Note.

"Loan Agreement" means the Loan Agreement of even date herewith between Mortgagor and Lender which sets forth, among other things, the terms and conditions upon which the proceeds of the Loan will be disbursed, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Loan Documents" means this Mortgage, the Note, the Guaranty, the Loan Agreement, and any and all other documents which Mortgagor, Guarantor or any other party or parties have executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Mortgage" means this Mortgage, Assignment, Security Agreement and Fixture Filing, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Note" means the Promissory Note of even date herewith in the original principal amount of Six Million and No/100 Dollars ($6,000,000.00) made by Mortgagor to the order of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Notice" means a notice, request, consent, demand or other communication given in accordance with the provisions of Section 8.8 of this Mortgage.

"Obligations" means all present and future debts, obligations and liabilities of Mortgagor to Lender arising pursuant to, and/or on account of, the provisions of this Mortgage, the Note or any of the other Loan Documents, including the obligations: (a) to pay all principal, interest, late charges, prepayment premiums (if any) and other amounts due at any time under the Note; (b) to pay all Expenses, indemnification payments, fees and other amounts due at any time under this Mortgage or any of the other Loan Documents, together with interest thereon as herein or therein provided; (c) to perform, observe and comply with all of the other terms, covenants and conditions, expressed or implied, which Mortgagor is required to perform, observe or comply with pursuant to this Mortgage or any of the other Loan Documents; and (d) in accordance with Section 29-3-50, as amended, Code of Laws of South Carolina 1976, to pay and perform all future advances, readvances and other obligations that Mortgagor or any successor in ownership of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender, when a writing evidences the parties' agreement that the advance, readvance or obligation be secured by this Mortgage; provided, however, that nothing contained herein shall create an obligation on the part of Lender to make future advances or readvances to Mortgagor. The maximum amount of all indebtedness outstanding at any one time secured hereby shall not exceed twice the face amount of the Note, plus interest thereon, all charges and expenses of collection incurred by Lender, including court costs, and reasonable attorneys' fees.

"Permitted Encumbrances" means (a) any matters set forth in any policy of title insurance issued to Lender and insuring Lender's interest in the Property which are acceptable to Lender as of the date hereof, (b) the Liens and interests of this Mortgage, and (c) any other Encumbrance that Lender shall expressly approve in its sole and absolute discretion, as evidenced by a "marked-up" commitment for title insurance initialed on behalf of Lender.

"Person" means an individual, a corporation, a partnership, a joint venture, a limited liability company, a trust, an unincorporated association, any Governmental Authority or any other entity.

"Personalty" means all personal property of any kind or nature whatsoever, whether tangible or intangible and whether now owned or hereafter acquired, in which Mortgagor now has or hereafter acquires an interest and which is used in the construction of, or is placed upon, or is derived from or used in connection with the maintenance, use, occupancy or enjoyment of, the Property, including (a) the

Accessories; (b) the Accounts; (c) all franchise, license, management or other agreements with respect to the operation of the Real Property or the business conducted therein (provided all of such agreements shall be subordinate to this Mortgage, and Lender shall have no responsibility for the performance of Mortgagor's obligations thereunder) and all general intangibles (including payment intangibles, trademarks, trade names, goodwill, software and symbols) related to the Real Property or the operation thereof; (d) all sewer and water taps, appurtenant water stock or water rights, allocations and agreements for utilities, bonds, letters of credit, permits, certificates, licenses, guaranties, warranties, causes of action, judgments, Claims, profits, security deposits, utility deposits, and all rebates or refunds of fees, Taxes, assessments, charges or deposits paid to any Governmental Authority related to the Real Property or the operation thereof; (e) all insurance policies held by Mortgagor with respect to the Property or Mortgagor's operation thereof; and (f) all money, instruments and documents (whether tangible or electronic) arising from or by virtue of any transactions related to the Property, and all deposits and deposit accounts of Mortgagor with Lender related to the Property, including any such deposit account from which Mortgagor may from time to time authorize Lender to debit and/or credit payments due with respect to the Loan; together with all Additions to and Proceeds of all of the foregoing.

"Proceeds," when used with respect to any of the Property, means all proceeds of such Property, including all Insurance Proceeds and all other proceeds within the meaning of that term as defined in the Uniform Commercial Code of the State.

"Property" means the Real Property and the Personalty and all other rights, interests and benefits of every kind and character which Mortgagor now has or hereafter acquires in, to or for the benefit of the Real Property and/or the Personalty and all other property and rights used or useful in connection therewith, including all Leases, all Rents, all Condemnation Awards, and all Proceeds.

"Property Assessments" means all Taxes, payments in lieu of taxes, water rents, sewer rents, assessments, condominium and owner's association assessments and charges, maintenance charges and other governmental or municipal or public or private dues, charges and levies and any Liens (including federal tax liens) which are or may be levied, imposed or assessed upon the Property or any part thereof, or upon any Leases or any Rents, whether levied directly or indirectly or as excise taxes, as income taxes, or otherwise.

"Real Property" means the Land and Improvements, together with (a) all estates, title interests, title reversion rights, remainders, increases, issues, profits, rights of way or uses, additions, accretions, servitudes, strips, gaps, gores, liberties, privileges, water rights, water courses, alleys, passages, ways, vaults, licenses, tenements, franchises, hereditaments, appurtenances, easements, rights-of-way, rights of ingress or egress, parking rights, timber, crops, mineral interests and other rights, now or hereafter owned by Mortgagor and belonging or appertaining to the Land or Improvements; (b) all Claims whatsoever of Mortgagor with respect to the Land or Improvements, either in law or in equity, in possession or in expectancy; (c) all estate, right, title and interest of Mortgagor in and to all streets, roads and public places, opened or proposed, now or hereafter adjoining or appertaining to the Land or Improvements; and (d) all options to purchase the Land or Improvements, or any portion thereof or interest therein, and any greater estate in the Land or Improvements, and all Additions to and Proceeds of the foregoing.

"Rents" means all of the rents, royalties, issues, profits, revenues, earnings, income and other benefits of the Property, or arising from the use or enjoyment of the Property, including all such amounts paid under or arising from any of the Leases and all fees, charges, accounts or other payments for the use or occupancy of rooms or other public facilities within the Real Property.

"State" means South Carolina.

"Taxes" means all taxes and assessments, whether general or special, ordinary or extraordinary, or foreseen or unforeseen, which at any time may be assessed, levied, confirmed or imposed by any Governmental Authority or any community facilities or other private district on Mortgagor or on any of

its properties or assets or any part thereof or in respect of any of its franchises, businesses, income or profits.

"Transfer" means any direct or indirect sale, assignment, conveyance or transfer, including any Contract of Sale and any other contract or agreement to sell, assign, convey or transfer, whether made voluntarily or by operation of Law or otherwise, and whether made with or without consideration.

## Article II
### Granting Clauses; Condition of Grant.

Section 2.1    Conveyances and Security Interests.

In order to secure the prompt payment and performance of the Obligations, Mortgagor (a) grants, bargains, sells and conveys the Real Property unto Lender, to have and to hold the Real Property in fee simple forever; provided that Mortgagor may retain possession of the Real Property until the occurrence of an Event of Default; (b) grants to Lender a security interest in the Personalty; and (c) assigns to Lender, and grants to Lender a security interest in, all Condemnation Awards and all Insurance Proceeds. All Persons who may have or acquire an interest in all or any part of the Property will be deemed to have notice of, and will be bound by, the terms of the Obligations and each other agreement or instrument made or entered into in connection with each of the Obligations. Such terms include any provisions in the Note or the Loan Agreement which provide that the interest rate on one or more of the Obligations may vary from time to time.

Section 2.2    Absolute Assignment of Leases and Rents.

In consideration of the making of the Loan by Lender to Mortgagor, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor absolutely and unconditionally assigns the Leases and Rents to Lender. This assignment is, and is intended to be, an unconditional, absolute and present assignment from Mortgagor to Lender of all of Mortgagor's right, title and interest in and to the Leases and the Rents and not an assignment in the nature of a pledge of the Leases and Rents or the mere grant of a security interest therein. So long as no Event of Default shall exist, however, and so long as Mortgagor is not in default in the performance of any obligation, covenant or agreement contained in the Leases, Mortgagor shall have a license (which license shall terminate automatically and without notice upon the occurrence of an Event of Default or a default by Mortgagor under the Leases) to collect, but not prior to accrual, all Rents. Mortgagor agrees to collect and hold all Rents in trust for Lender and to use the Rents for the payment of the cost of operating and maintaining the Property and for the payment of the other Obligations before using the Rents for any other purpose.

Section 2.3    Security Agreement, Fixture Filing and Financing Statement.

This Mortgage creates a security interest in the Personalty, and, to the extent the Personalty is not real property, this Mortgage constitutes a security agreement from Mortgagor to Lender under the Uniform Commercial Code of the State. In addition to all of its other rights under this Mortgage and otherwise, Lender shall have all of the rights of a secured party under the Uniform Commercial Code of the State, as in effect from time to time, or under the Uniform Commercial Code in force from time to time in any other state to the extent the same is applicable Law. This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real estate records of each county where any part of the Property (including such fixtures) is situated. This Mortgage shall also be effective as a financing statement with respect to any other Property as to which a security interest may be perfected by the filing of a financing statement and may be filed as such in any appropriate filing or recording office. The respective mailing addresses of Mortgagor and Lender are set forth in the opening paragraph of this Mortgage. A carbon, photographic or other reproduction of this Mortgage or any other financing statement relating to this Mortgage shall be sufficient as a financing statement for any of the purposes referred to in this Section. Mortgagor hereby

irrevocably authorizes Lender at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements as authorized by applicable Law, reasonably required by Lender to establish or maintain the validity, perfection and priority of the security interests granted in this Mortgage. The foregoing authorization includes Mortgagor's irrevocable authorization for Lender at any time and from time to time to file any initial financing statements and amendments thereto that indicate the Personalty (a) as "all assets" of Mortgagor or words of similar effect, regardless of whether any particular asset comprised in the Personalty falls within the scope of the Uniform Commercial Code of the State or the jurisdiction where the initial financing statement or amendment is filed, or (b) as being of an equal or lesser scope or with greater detail.

Section 2.4    Release of Mortgage and Termination of Assignments and Financing Statements.

If and when Mortgagor has paid and performed all of the Obligations, and no further advances are to be made under the Loan Agreement, Lender will provide a release of the Property from the lien of this Mortgage and termination statements for filed financing statements, if any, to Mortgagor. Mortgagor shall be responsible for the recordation of such release and the payment of any recording and filing costs. Upon the recording of such release and the filing of such termination statements, the absolute assignments set forth in Section 2.2 shall automatically terminate and become null and void.

Article III
Representations and Warranties.

Mortgagor makes the following representations and warranties to Lender:

Section 3.1    Title to Real Property.

Mortgagor (a) owns fee simple title to the Real Property, (b) owns all of the beneficial and equitable interest in and to the Real Property, and (c) is lawfully seized and possessed of the Real Property. Mortgagor has the right and authority to convey the Real Property and does hereby convey the Real Property. The Real Property is subject to no Encumbrances other than the Permitted Encumbrances.

Section 3.2    Title to Other Property.

Mortgagor has good title to the Personalty, and the Personalty is not subject to any Encumbrance other than the Permitted Encumbrances. None of the Leases or Rents are subject to any Encumbrance other than the Permitted Encumbrances.

Section 3.3    Property Assessments.

The Real Property is assessed for purposes of Property Assessments as a separate and distinct parcel from any other property, such that the Real Property shall never become subject to the Lien of any Property Assessments levied or assessed against any property other than the Real Property.

Section 3.4    Independence of the Real Property.

No buildings or other improvements on property not covered by this Mortgage rely on the Real Property or any interest therein to fulfill any requirement of any Governmental Authority for the existence of such property, building or improvements; and none of the Real Property relies, or will rely, on any property not covered by this Mortgage or any interest therein to fulfill any requirement of any Governmental Authority. The Real Property has been properly subdivided from all other property in accordance with the requirements of any applicable Governmental Authorities.

Section 3.5    Existing Improvements.

The existing Improvements, if any, were constructed, and are being used and maintained, in accordance with all applicable Laws, including zoning Laws.

Section 3.6    Leases and Tenants.

The Leases are valid and are in full force and effect, and Mortgagor is not in default under any of the terms thereof. Except as expressly permitted in the Loan Agreement, Mortgagor has not accepted any Rents in advance of the time the same became due under the Leases and has not forgiven, compromised or discounted any of the Rents. Mortgagor has title to and the right to assign the Leases and Rents to Lender, and no other assignment of the Leases or Rents has been granted. To the best of Mortgagor's knowledge and belief, no tenant or tenants occupying, individually or in the aggregate, more than five percent (5%) of the net rentable area of the Improvements are in default under their Lease(s) or are the subject of any bankruptcy, insolvency or similar proceeding.

Article IV
Affirmative Covenants.

Section 4.1    Obligations.

Mortgagor agrees to promptly pay and perform all of the Obligations, time being of the essence in each case.

Section 4.2    Property Assessments; Documentary Taxes.

Mortgagor (a) will promptly pay in full and discharge all Property Assessments, and (b) will furnish to Lender, upon demand, the receipted bills for such Property Assessments prior to the day upon which the same shall become delinquent. Property Assessments shall be considered delinquent as of the first day any interest or penalty commences to accrue thereon. Mortgagor will promptly pay all stamp, documentary, recordation, transfer and intangible taxes and all other taxes that may from time to time be required to be paid with respect to the Loan, the Note, this Mortgage or any of the other Loan Documents.

Section 4.3    Permitted Contests.

Mortgagor shall not be required to pay any of the Property Assessments, or to comply with any Law, so long as Mortgagor shall in good faith, and at its cost and expense, contest the amount or validity thereof, or take other appropriate action with respect thereto, in good faith and in an appropriate manner or by appropriate proceedings; provided that (a) such proceedings operate to prevent the collection of, or other realization upon, such Property Assessments or enforcement of the Law so contested, (b) there will be no sale, forfeiture or loss of the Property during the contest, (c) Lender is not subjected to any Claim as a result of such contest, and (d) Mortgagor provides assurances satisfactory to Lender (including the establishment of an appropriate reserve account with Lender) of its ability to pay such Property Assessments or comply with such Law in the event Mortgagor is unsuccessful in its contest. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Mortgagor shall indemnify and save Lender harmless against all Claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Mortgagor shall comply with such Law and/or pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

Section 4.4    Compliance with Laws.

Mortgagor will comply with and not violate, and cause to be complied with and not violated, all present and future Laws applicable to the Property and its use and operation.

Section 4.5    Maintenance and Repair of the Property.

Mortgagor, at Mortgagor's sole expense, will (a) keep and maintain Improvements and Accessories in good condition, working order and repair, and (b) make all necessary or appropriate repairs and Additions to Improvements and Accessories, so that each part of the Improvements and all of the Accessories shall at all times be in good condition and fit and proper for the respective purposes for which they were originally intended, erected, or installed.

Section 4.6    Additions to Security.

All right, title and interest of Mortgagor in and to all Improvements and Additions hereafter constructed or placed on the Property and in and to any Accessories hereafter acquired shall, without any further Mortgage, conveyance, assignment or other act by Mortgagor, become subject to the Lien of this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described in the granting clauses hereof. Mortgagor agrees, however, to execute and deliver to Lender such further documents as may be required by the terms of the Loan Agreement and the other Loan Documents.

Section 4.7    Subrogation.

To the extent permitted by Law, Lender shall be subrogated, notwithstanding its release of record, to any Lien now or hereafter existing on the Property to the extent that such Lien is paid or discharged by Lender whether or not from the proceeds of the Loan. This Section shall not be deemed or construed, however, to obligate Lender to pay or discharge any Lien.

Section 4.8    Leases.

(a)    Except as expressly permitted in the Loan Agreement, Mortgagor shall not enter into any Lease with respect to all or any portion of the Property without the prior written consent of Lender.

(b)    Lender shall not be obligated to perform or discharge any obligation of Mortgagor under any Lease. The assignment of Leases provided for in this Mortgage in no manner places on Lender any responsibility for (i) the control, care, management or repair of the Property, (ii) the carrying out of any of the terms and conditions of the Leases, (iii) any waste committed on the Property, or (iv) any dangerous or defective condition on the Property (whether known or unknown).

(c)    No approval of any Lease by Lender shall be for any purpose other than to protect Lender's security and to preserve Lender's rights under the Loan Documents, and no such approval shall result in a waiver of a Default or Event of Default.

Article V
Negative Covenants.

Section 5.1    Encumbrances.

Except as otherwise provided below, Mortgagor will not permit any of the Property to become subject to any Encumbrance other than the Permitted Encumbrances. Within thirty (30) days after the filing of any mechanic's lien or other Lien or Encumbrance against the Property, Mortgagor will promptly discharge the same by payment or filing a bond or otherwise as permitted by Law. So long as Lender's security has been protected by the filing of a bond or otherwise in a manner satisfactory to Lender in its sole and absolute discretion, Mortgagor shall have the right to contest in good faith any Claim, Lien or Encumbrance, provided that Mortgagor does so diligently and without prejudice to Lender or delay in completing construction of the Improvements. Mortgagor shall give Lender Notice of any default under any Lien and Notice of any foreclosure or threat of foreclosure with respect to any of the Property.

Section 5.2    Transfer of the Property.

Mortgagor will not Transfer, or contract to Transfer, all or any part of the Property or any legal or beneficial interest therein (except for certain Transfers of the Accessories expressly permitted in this Mortgage). The Transfer of more than 10% of the membership interests in Mortgagor (whether in one or more transactions during the term of the Loan) shall be deemed to be a prohibited Transfer of the Property.

Section 5.3    Removal, Demolition or Alteration of Accessories and Improvements.

Except to the extent permitted by the following sentence, no Improvements or Accessories shall be removed, demolished or materially altered without the prior written consent of Lender. Mortgagor may remove and dispose of, free from the Lien of this Mortgage, such Accessories as from time to time become worn out or obsolete, provided that, either (a) at the time of, or prior to, such removal, any such Accessories are replaced with other Accessories which are free from Liens other than Permitted Encumbrances and have a value at least equal to that of the replaced Accessories (and by such removal and replacement Mortgagor shall be deemed to have subjected such Accessories to the Lien of this Mortgage), or (b) so long as a prepayment may be made without the imposition of any premium pursuant to the Note, such Accessories are sold at fair market value for cash and the net cash proceeds received from such disposition are paid over promptly to Lender to be applied to the prepayment of the principal of the Loan.

Section 5.4    Additional Improvements.

Mortgagor will not construct any Improvements other than those presently on the Land and those described in the Loan Agreement without the prior written consent of Lender. Mortgagor will complete and pay for, within a reasonable time, any Improvements which Mortgagor is permitted to construct on the Land. Mortgagor will construct and erect any permitted Improvements (a) strictly in accordance with all applicable Laws and any private restrictive covenants, (b) entirely on lots or parcels of the Land, (c) so as not to encroach upon any easement or right of way or upon the land of others, and (d) wholly within any building restriction and setback lines applicable to the Land.

Section 5.5    Restrictive Covenants, Zoning, etc.

Without the prior written consent of Lender, Mortgagor will not initiate, join in, or consent to any change in, any restrictive covenant, easement, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Property. Mortgagor (a) will promptly perform and observe, and cause to be performed and observed, all of the terms and conditions of all agreements affecting the Property, and (b) will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor of, or constituting any portion of, the Property.

Article VI
Events of Default.

The occurrence or happening, from time to time, of any one or more of the following shall constitute an Event of Default under this Mortgage:

Section 6.1    Payment Obligations.

Mortgagor fails to pay any of the Obligations when due (after lapse of notice or applicable cure periods), whether on the scheduled due date or upon acceleration, maturity or otherwise.

Section 6.2    Transfers.

Mortgagor Transfers, or contracts to Transfer, all or any part of the Property or any legal or beneficial interest therein (except for Transfers of the Accessories expressly permitted under this Mortgage). The Transfer of more than 10% of the membership interests in Mortgagor (whether in one or more transactions during the term of the Loan) shall be deemed to be a prohibited Transfer of the Property constituting an Event of Default.

Section 6.3    Other Obligations.

Mortgagor fails to promptly perform or comply with any of the Obligations set forth in this Mortgage (other than those expressly described in other Sections of this Article VI), and such failure

continues uncured for a period of thirty (30) days after Notice from Lender to Mortgagor, unless (a) such failure, by its nature, is not capable of being cured within such period, and (b) within such period, Mortgagor commences to cure such failure and thereafter diligently prosecutes the cure thereof, and (c) Mortgagor causes such failure to be cured no later than ninety (90) days after the date of such Notice from Lender.

Section 6.4      Event of Default Under Other Loan Documents.

An Event of Default (as defined therein) occurs under the Note or the Loan Agreement, or Borrower or Guarantor fails to promptly pay, perform, observe or comply with any obligation or agreement contained in any of the other Loan Documents (within any applicable grace or cure period).

Section 6.5     · Change in Zoning or Public Restriction.

Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Loan Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

Section 6.6      Default Under Leases.

Mortgagor fails duly to perform its obligations under any Lease, and such failure is not cured within the grace period, if any, provided in the Lease.

Section 6.7      Default Under Other Lien Documents.

A default occurs under any other mortgage or security agreement covering the Property, including any Permitted Encumbrances, and the same is not cured within thirty (30) days.

Section 6.8      Execution; Attachment.

Any execution or attachment is levied against any of the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

## Article VII
## Rights and Remedies.

Upon the happening of any Event of Default, Lender shall have the right, in addition to any other rights or remedies available to Lender under any of the Loan Documents or applicable Law, to exercise any one or more of the following rights, powers or remedies:

Section 7.1      Acceleration.

Lender may accelerate all Obligations under the Loan Documents whereupon such Obligations shall become immediately due and payable, without notice of default, notice of acceleration or intention to accelerate, presentment or demand for payment, protest, notice of protest, notice of nonpayment or dishonor, or notices or demands of any kind or character (all of which are hereby waived by Mortgagor).

Section 7.2    Foreclosure.

Upon failure to pay the Obligations in full at any stated or accelerated maturity, the Lender may foreclose the lien of this Mortgage and sell, as an entirety or in separate lots or parcels, the Property, under the judgment or decree of a court or courts of competent jurisdiction. Lender shall take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, or both, as the Lender may determine. Lender, at its option, is authorized to foreclose this Mortgage subject to the rights of any tenants of the Property and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted by Mortgagor to be, a defense to any proceedings instituted by Lender to collect the sums secured hereby or to collect any deficiency remaining unpaid after the foreclosure sale of the Property.

Upon any such foreclosure sale, Lender may bid for and purchase the Property and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such Property in its own absolute right without further accountability. Upon any such foreclosure sale, Lender may, if permitted by law, after allowing for the proportion of the total purchase price required to be paid in cash and for the costs and expenses of the sale, compensation and other charges, in paying the purchase price apply any portion of or all sums due to Lender under the Note, this Mortgage or any other instrument securing the Note, in lieu of cash, to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon.

Section 7.3    Enforcement of Assignment of Rents; Entry on Property.

In addition to the rights of Lender under Article 3 hereof, prior or subsequent to taking possession of any portion of the Property or taking any action with respect to such possession, Lender may: (1) collect and/or sue for the Rents in Lender's own name, give receipts and releases therefor, and after deducting all expenses of collection, including attorneys' fees and expenses, apply the net proceeds thereof to the Obligations in such manner and order as Lender may elect and/or to the operation and management of the Property, including the payment of management, brokerage and attorney's fees and expenses; and (2) require Mortgagor to transfer all security deposits and records thereof to Lender together with original counterparts of the Leases. Additionally, Lender is authorized, prior or subsequent to the institution of any foreclosure proceedings, to the fullest extent permitted by applicable law, to enter upon the Property, or any part thereof, and to take possession of the Property and all books and records, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics relating thereto, and to exercise without interference from Mortgagor any and all rights which Mortgagor has with respect to the management, possession, operation, protection or preservation of the Property. Lender shall not be deemed to have taken possession of the Property or any part thereof except upon the exercise of its right to do so, and then only to the extent evidenced by its demand and overt act specifically for such purpose. All costs, expenses and liabilities of every character incurred by Lender in managing, operating, maintaining, protecting or preserving the Property shall constitute a demand obligation of Mortgagor (which obligation Mortgagor hereby promises to pay) to Lender pursuant to this Mortgage. If necessary to obtain the possession provided for above, Lender may invoke any and all legal remedies to dispossess Mortgagor. In connection with any action taken by Lender pursuant to this Section, Lender shall not be liable for any loss sustained by Mortgagor resulting from any failure to let the Property or any part thereof, or from any act or omission of Lender in managing the Property unless such loss is caused by the willful misconduct and bad faith of Lender, nor shall Lender be obligated to perform or discharge any obligation, duty or liability of Mortgagor arising under any lease or other agreement relating to the Property or arising under any Permitted Encumbrance or otherwise arising. Mortgagor hereby assents to, ratifies and confirms any and all actions of Lender with respect to the Property taken under this Section 7.3.

Section 7.4    Taking Possession or Control of the Property.

As a matter of right without regard to the adequacy of the security, and to the extent permitted by Law without notice to Mortgagor, Lender shall be entitled, upon application to a court of competent jurisdiction, to the immediate appointment of a receiver for all or any part of the Property and the Rents, whether such receivership may be incidental to a proposed sale of the Property or otherwise, and Mortgagor hereby consents to the appointment of such a receiver, waives notice of such appointment, of any request therefore or hearing in connection therewith, and any and all defenses to such appointment, and agrees that such receiver shall have all of the rights and powers granted to Lender pursuant to Section 7.3. Nothing herein is to be construed to deprive Lender of any other right, remedy or privilege it may have under the law to have a receiver appointed. Any money advanced by Lender in connection with any such receivership shall be a demand obligation (which obligation Mortgagor hereby promises to pay) owing by Mortgagor to Lender pursuant to this Mortgage.

Section 7.5    Management of the Property.

Upon obtaining possession of the Property or upon the appointment of a receiver as described in Section 7.3, Lender, or the receiver, as the case may be, may, at its sole option, (a) make all necessary or proper repairs and Additions to or upon the Property, (b) operate, maintain, control, make secure and preserve the Property, and (c) complete the construction of any unfinished Improvements on the Property and, in connection therewith, continue any and all outstanding contracts for the erection and completion of such Improvements and make and enter into any further contracts which may be necessary, either in their or its own name or in the name of Mortgagor (the costs of completing such Improvements shall be Expenses secured by this Mortgage and shall accrue interest as provided in the Loan Agreement and the other Loan Documents). Lender or such receiver shall be under no liability for, or by reason of, any such taking of possession, entry, holding, removal, maintaining, operation or management, except for gross negligence or willful misconduct. The exercise of the remedies provided in this Section shall not cure or waive any Event of Default, and the enforcement of such remedies, once commenced, shall continue for so long as Lender shall elect, notwithstanding the fact that the exercise of such remedies may have, for a time, cured the original Event of Default.

Section 7.6    Uniform Commercial Code.

Lender may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. Upon the occurrence of any Event of Default, Mortgagor shall assemble all of the Accessories and make the same available within the Improvements. Any notification required by the Uniform Commercial Code shall be deemed reasonably and properly given if sent in accordance with the Notice provisions of this Mortgage at least ten (10) days before any sale or other disposition of the Personalty. Disposition of the Personalty shall be deemed commercially reasonable if made pursuant to a public sale advertised at least twice in a newspaper of general circulation in the community where the Property is located. It shall be deemed commercially reasonable for the Lender to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

Section 7.7    Application of Proceeds.

Unless otherwise provided by applicable Law, all proceeds from the sale of the Property or any part thereof pursuant to the rights and remedies set forth in this Article VII and any other proceeds received by Lender from the exercise of any of its other rights and remedies hereunder or under the other Loan Documents shall be applied first to pay all Expenses and next in reduction of the other Obligations, in such manner and order as Lender may elect.

Section 7.8    Other Remedies.

Lender shall have the right from time to time to protect, exercise and enforce any legal or equitable remedy against Mortgagor provided under the Loan Documents or by applicable Laws.

Article VIII
Miscellaneous.

Section 8.1      Rights, Powers and Remedies Cumulative.

Each right, power and remedy of Lender as provided for in this Mortgage, or in any of the other
Loan Documents or now or hereafter existing by Law, shall be cumulative and concurrent and shall be in
addition to every other right, power or remedy provided for in this Mortgage, or in any of the other Loan
Documents or now or hereafter existing by Law, and the exercise or beginning of the exercise by Lender
of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later
exercise by Lender of any or all such other rights, powers or remedies.

Section 8.2      No Waiver by Lender.

No course of dealing or conduct by or between Lender and Mortgagor shall be effective to
amend, modify or change any provisions of this Mortgage or the other Loan Documents. No failure or
delay by Lender to insist upon the strict performance of any term, covenant or agreement of this Mortgage
or of any of the other Loan Documents, or to exercise any right, power or remedy consequent upon a
breach thereof, shall constitute a waiver of any such term, covenant or agreement or of any such breach,
or preclude Lender from exercising any such right, power or remedy at any later time or times. By
accepting payment after the due date of any of the Obligations, Lender shall not be deemed to waive the
right either to require prompt payment when due of all other Obligations, or to declare an Event of
Default for failure to make prompt payment of any such other Obligations. Neither Mortgagor nor any
other Person now or hereafter obligated for the payment of the whole or any part of the Obligations shall
be relieved of such liability by reason of (a) the failure of Lender to comply with any request of
Mortgagor or of any other Person to take action to foreclose this Mortgage or otherwise enforce any of the
provisions of this Mortgage, or (b) any agreement or stipulation between any subsequent owner or owners
of the Property and Lender, or (c) Lender's extending the time of payment or modifying the terms of this
Mortgage or any of the other Loan Documents without first having obtained the consent of Mortgagor or
such other Person. Regardless of consideration, and without the necessity for any notice to or consent by
the Lender of any subordinate Lien on the Property, Lender may release any Person at any time liable for
any of the Obligations or any part of the security for the Obligations and may extend the time of payment
or otherwise modify the terms of this Mortgage or any of the other Loan Documents without in any way
impairing or affecting the Lien of this Mortgage or the priority of this Mortgage over any subordinate
Lien. The Mortgagor shall not agree to or allow the Lender of any subordinate Lien to terminate any
Lease regardless of whether or not such Lease is subordinate to this Mortgage. Lender may resort to the
security or collateral described in this Mortgage or any of the other Loan Documents in such order and
manner as Lender may elect in its sole discretion.

Section 8.3      Waivers and Agreements Regarding Remedies.

To the full extent Mortgagor may do so, Mortgagor hereby:

(a)      agrees that it will not at any time plead, claim or take advantage of any Laws
now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and
waives and releases all rights of redemption, valuation, appraisement, stay of execution, extension and
notice of election to accelerate the Obligations;

(b)      waives all rights to a marshalling of the assets of Mortgagor, including the
Property, or to a sale in the inverse order of alienation in the event of a foreclosure of the Property, and
agrees not to assert any right under any Law pertaining to the marshalling of assets, the sale in inverse
order of alienation, the exemption of homestead, the administration of estates of decedents, or other
matters whatsoever to defeat, reduce or affect the right of Lender under the terms of this Mortgage to a
sale of the Property without any prior or different resort for collection, or the right of Lender to the

payment of the Obligations out of the proceeds of sale of the Property in preference to every other claimant whatsoever;

       (c)      waives any right to bring or utilize any defense, counterclaim or setoff, other than one which denies the existence or sufficiency of the facts upon which any foreclosure action is grounded. If any defense, counterclaim or setoff, other than one permitted by the preceding clause, is timely raised in a foreclosure action, such defense, counterclaim or setoff shall be dismissed. If such defense, counterclaim or setoff is based on a Claim which could be tried in an action for money damages, such Claim may be brought in a separate action which shall not thereafter be consolidated with the foreclosure action. The bringing of such separate action for money damages shall not be deemed to afford any grounds for staying the foreclosure action; and

       (d)      waives and relinquishes any and all rights and remedies which Mortgagor may have or be able to assert by reason of the provisions of any Laws pertaining to the rights and remedies of sureties.

Section 8.4     Successors and Assigns.

All of the grants, covenants, terms, provisions and conditions of this Mortgage shall run with the Land and shall apply to and bind the successors and assigns of Mortgagor (including any permitted subsequent owner of the Property), and inure to the benefit of Lender, its successors and assigns.

Section 8.5     No Warranty by Lender.

By inspecting the Property or by accepting or approving anything required to be observed, performed or fulfilled by Mortgagor or to be given to Lender pursuant to this Mortgage or any of the other Loan Documents, Lender shall not be deemed to have warranted or represented the condition, sufficiency, legality, effectiveness or legal effect of the same, and such acceptance or approval shall not constitute any warranty or representation with respect thereto by Lender.

Section 8.6     Amendments.

This Mortgage may not be modified or amended except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

Section 8.7     Severability.

In the event any one or more of the provisions of this Mortgage or any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any other respect, or in the event any one or more of the provisions of the Loan Documents operates or would prospectively operate to invalidate this Mortgage or any of the other Loan Documents, then and in either of those events, at the option of Lender, such provision or provisions only shall be deemed null and void and shall not affect the validity of the remaining Obligations, and the remaining provisions of the Loan Documents shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

Section 8.8     Notices.

All Notices required or which any party desires to give hereunder or under any other Loan Document shall be in writing and, unless otherwise specifically provided in such other Loan Document, shall be deemed sufficiently given or furnished if delivered by personal delivery, by nationally recognized overnight courier service or by certified United States mail, postage prepaid, addressed to the party to whom directed at the applicable address specified in the Preamble to this Mortgage (unless changed by similar notice in writing given by the particular party whose address is to be changed) or by facsimile. Any Notice shall be deemed to have been given either at the time of personal delivery or, in the case of courier or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile, upon receipt; provided that service of a Notice required by any applicable

statute shall be considered complete when the requirements of that statute are met. Notwithstanding the foregoing, no notice of change of address shall be effective except upon actual receipt. This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in this Mortgage or in any other Loan Document or to require giving of notice or demand to or upon any Person in any situation or for any reason.

Section 8.9     Joint and Several Liability.

[Intentionally omitted.]

Section 8.10    Rules of Construction.

The words "hereof," "herein," "hereunder," "hereto," and other words of similar import refer to this Mortgage in its entirety. The terms "agree" and "agreements" mean and include "covenant" and "covenants." The words "include" and "including" shall be interpreted as if followed by the words "without limitation." The headings of this Mortgage are for convenience of reference only and shall not be considered a part hereof and are not in any way intended to define, limit or enlarge the terms hereof. All references (a) made in the neuter, masculine or feminine gender shall be deemed to have been made in all such genders, (b) made in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well, (c) to the Loan Documents are to the same as extended, amended, restated, supplemented or otherwise modified from time to time unless expressly indicated otherwise, (d) to the Land, Improvements, Personalty, Real Property or Property shall mean all or any portion of each of the foregoing, respectively, and (e) to Articles or Sections are to the respective Articles or Sections contained in this Mortgage unless expressly indicated otherwise. Any term used or defined in the Uniform Commercial Code of the State, as in effect from time to time, which is not defined in this Mortgage shall have the meaning ascribed to that term in the Uniform Commercial Code of the State. If a term is defined in Article 9 of the Uniform Commercial Code of the State differently than in another Article of the Uniform Commercial Code of the State, the term shall have the meaning specified in Article 9.

Section 8.11    Governing Law.

This Mortgage shall be construed, governed and enforced in accordance with the Laws in effect from time to time in the State.

Section 8.12    Entire Agreement.

The Loan Documents constitute the entire understanding and agreement between Mortgagor and Lender with respect to the transactions arising in connection with the Loan, and supersede all prior written or oral understandings and agreements between Mortgagor and Lender with respect to the matters addressed in the Loan Documents. In particular, and without limitation, the terms of any commitment by Lender to make the Loan are merged into the Loan Documents. Except as incorporated in writing into the Loan Documents, there are no representations, understandings, stipulations, agreements or promises, oral or written, with respect to the matters addressed in the Loan Documents.

[continued on following page]

Section 8.13   Waiver of Appraisal Rights.

The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the Property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE MORTGAGOR HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE PROPERTY.

        IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be executed under seal as of the day and year first written above.

WITNESSES:                                    KT SPEARS CREEK, LLC

_____        By: _____
Witness                                            Kyle Tauch
                                                        Its: _____Mgr._____

_____
Notary Public

****************************

STATE OF _Texas_          )
                                        )        ACKNOWLEDGEMENT
COUNTY OF _Harris County_  )

I, the undersigned, a Notary Public, do hereby certify that KT SPEARS CREEK, LLC, a South Carolina limited liability company, by its authorized signatory personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and seal
this _21_ day of December, 2007.

_____ (SEAL)
Notary Public for ~~South Carolina~~ Texas
My commission expires: _9-10-2010_

MICHELE LEE REED
Notary Public, State of Texas
My Commission Expires
September 12, 2010

Exhibit A

### LEGAL DESCRIPTION

ALL that certain piece, parcel or tract of land, with any improvements thereon, situate, lying and being near Columbia, in the County of Richland, State of South Carolina, containing 65.94 acres and being more particularly shown and delineated on a plat prepared for KT Spears Creek, LLC, prepared by United Design Services, Inc. dated August 13, 2007 and recorded in the Office of the Register of Deeds for Richland County, South Carolina in Plat Book 1366, at page 3582. Reference is hereby craved to said plat for a more complete and accurate metes and bounds description of said 65.94 acres.

DERIVATION: Deed from DAK I, LLC to K T Spears Creek, LLC dated December 3, 2004 and recorded December 6, 2004 in the Office of the Register of Deeds for Richland County in Record Book 1003, at page 1581.

TMS NO.: 25800-03-40 (portion)

PLEASE RETURN TO:
NEXSEN PRUET JACOBS & POLLARD
P.O. BOX DRAWER 2426
COLUMBIA, SC 29202
ATTENTION: ILA CAULK

Prepared By/Return To:

First Savers Bank
501 Roper Mtn. Rd.
Greenville, SC 29615
Attn: Jeff McGehee

Book 1387-1944
2007113122  12/27/2007 12:34:04:997                    Mortgage
Fee:$24.00   County Tax:$0.00          State Tax:$0.00

2007113122  Richard W. Rodden          Richland County RCD

*THE COLLATERAL SUBJECT TO THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND FIXTURE FILING INCLUDES GOODS THAT ARE OR ARE TO BECOME FIXTURES.*

*THIS MORTGAGE, ASSIGNMENT, SECURITY AGREEMENT AND FIXTURE FILING IS TO BE FILED IN THE REAL PROPERTY RECORDS FOR GREENVILLE COUNTY, AND SHALL SERVE AS A FIXTURE FILING FINANCING STATEMENT.*

MORTGAGE, ASSIGNMENT,
SECURITY AGREEMENT AND
FIXTURE FILING

by

KT Spears Creek, LLC,
a South Carolina limited liability company,
as Mortgagor,

to and in favor of

First Savers Bank,
as Mortgagee

# EXHIBIT C

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 301 | KT Spears Creek LLC | 8800023481 | 01/26/10 | JJM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $5,950,000.00 | Not Applicable | 7.000% | 01/26/11 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial - Single Advance)
RENEWAL NOTE

**DATE AND PARTIES.** The date of this Promissory Note (Note) is January 26, 2010. The parties and their addresses are:

LENDER:
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
501 Roper Mountain Road
Greenville, SC 29615
Telephone: (864) 477-2560

BORROWER:
KT SPEARS CREEK LLC
a South Carolina Limited Liability Company
5410 Piping Rock
Houston, TX 77056

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 21, 2007 | # 8800023481 - 301 | $6,000,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $5,950,000.00.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $5,950,000.00 (Principal) plus interest from January 26, 2010 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.000 percent (Interest Rate).

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the South Carolina usury laws under S.C. Code Ann. §§ 37-3-605, 37-3-106 and 37-10-101 et. seq.

D. **Accrual.** Interest accrues using an Actual/360 days counting method.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Note in 12 payments. This Note is amortized over 240 payments. I will make 11 payments of $46,487.98 beginning on February 26, 2010, and on the 26th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due January 26, 2011.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** This is a business-purpose loan transaction.

**10. SECURITY.** The Loan is secured by previously executed, separate security instruments described as follows:

| Description | Date |
|---|---|
| Mortgage, Assignment, Security Agreement & Fixture Filing | December 21, 2007 |

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**14. APPLICABLE LAW.** This Note is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**22. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**23. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

KT Spears Creek LLC

By _____ (Seal)
Kyle D Teuch, Member

# EXHIBIT D

# UNCONDITIONAL GUARANTY

December *21st*, 2007

BORROWER:            KT SPEARS CREEK, LLC
                     5410 Piping Rock
                     Houston, TX 77056


GUARANTOR:           Kyle Tauch, Individually
                     5410 Piping Rock
                     Houston, TX 77056


LENDER:              First Savers Bank
                     501 Roper Mountain Road
                     Greenville, South Carolina 29615

WHEREAS, the above Borrower has borrowed or shall borrow sums of money under a Promissory Note in the sum of Six Million and No/100 ($6,000,000.00) Dollars (the "Note") from FIRST SAVERS BANK (hereinafter termed "Lender") pursuant to a Loan Agreement (the "Agreement") from Borrower to Lender dated of even date herewith, and,

WHEREAS, Lender is unwilling to make the loan to Borrower evidenced by the Note unless it receives an unconditioned and continuing guaranty from the above-named Guarantor (hereinafter "Guarantor"), covering all Obligations of Borrower as hereinafter defined.

NOW, THEREFORE, in consideration of the promises and covenants contained herein and of other good and valuable consideration, and in order to induce Lender to lend money to Borrower as evidenced by the Note, Guarantor hereby absolutely and unconditionally guarantees to Lender and its successors and assigns, the due and punctual payment of the Note as and when the same shall become due and payable (whether by acceleration or otherwise), in accordance with the terms of the Note, and including all renewals, extensions and/or modifications thereof, plus all interest, costs and reasonable attorney's fees of Lender and any indebtedness or obligations of Borrower under the Note and the Agreement as defined in the Mortgage (all liabilities and obligations of the Borrower to Lender, including all of the foregoing, being hereinafter collectively termed "Obligations of Borrower").

Further, whether or not suit is brought by Lender to acquire possession of collateral or to enforce collection of any unpaid balance(s) hereunder, Guarantor expressly hereby agrees to pay all legal expenses and the reasonable attorneys' fees incurred by Lender with respect to this Guaranty.

Without limiting the foregoing provisions of this Guaranty, Guarantor absolutely and unconditionally guarantees the payment and performance of all obligations of Borrower under Articles 2, 4, 5, and 8 of the Mortgage from Borrower to Lender (the "Mortgage") securing the Note.

So long as any default by Borrower shall have been cured by Guarantor, Guarantor shall have the right to receive any undisbursed portion of the loan, subject to the terms and conditions contained in the Agreement in order to enable Guarantor to perform their obligations for completion. Guarantor agrees that his obligations hereunder will be performed strictly in accordance with the terms of the Agreement and any other Loan Documents as defined therein and that such obligations shall be absolute and unconditional.

In order to implement the foregoing and as additional inducements to Lender, Guarantor further covenants and agrees:

1.     This Guaranty is and shall remain an unconditional and continuing guaranty of payment and not of collection, shall remain in full force and effect irrespective of any interruptions in the business or other dealings and relations of Borrower with Lender and shall apply to and guarantee the due and punctual payment of all Obligations of Borrower due by Borrower to Lender. To that end, Guarantor hereby expressly waives any right to require Lender to bring any action against Borrower or any other person or to require that resort be had to any security or to any balances of any deposit or other accounts or debts or creditors on the books of Lender in favor of Borrower or any other person.    Guarantor acknowledges that his liabilities and obligations hereunder are primary rather than secondary, recognizing that Borrower is identified as "BORROWER" and the undersigned is identified as "GUARANTOR" solely for convenience in identification of the parties involved in this Guaranty Agreement and in the obligation being secured hereby. To that end and without limiting the generality of the foregoing, the undersigned Guarantor expressly waives any rights he otherwise might have under provisions of South Carolina or other applicable law to require Lender to attempt to recover against Borrower and/or to realize upon any securities or collateral security which Lender holds for the obligation evidenced or secured hereby.

2.     TIME IS OF THE ESSENCE HEREOF. Any notices to Guarantor shall be sufficiently given if mailed to the address of Guarantor shown above.

3.     This Guaranty Agreement constitutes the entire agreement between the parties, and no waivers or modifications shall be valid unless they are reduced to writing,

2

duly executed by the party to be charged thereby, and expressly approved in writing by an officer of Lender actually involved in the transaction being guaranteed hereby.

4.      If any process is issued or ordered to be served upon Lender, seeking to seize Borrower's and/or Guarantor's rights and/or interests in any bank accounts maintained with Lender, the balances in any such accounts shall immediately be deemed to have been and shall be set off against any and all Obligations of Borrower and/or all obligations and liabilities of Guarantor hereunder, as of the time of the issuance of any such writ or process, whether or not Borrower, Guarantor and/or Lender shall then have been served therewith.

5.      All moneys available to and/or received by Lender for application toward payment of (or reduction of) the Obligations of Borrower may be applied by Lender to such Obligations of Borrower in such manner, and apportioned in such amounts and at such times, as Lender, in its sole discretion, may deem suitable or desirable.

6.      As security for any and all liabilities of Guarantor hereunder, now existing or hereafter arising, Guarantor hereby grants Lender the right to retain a security interest in any and all moneys or other property (i.e., goods and merchandise, as well as all documents relative thereto; also, funds, investment securities, chooses in action and any and all other forms of property, whether real, personal or mixed, and any right, title or interest of Guarantor therein or thereto) and/or the proceeds thereof, which have been or may hereafter be deposited or left with Lender (or with any agent or other third party acting on Lender's behalf) by or for the account or credit of the undersigned Guarantor, including (without limitation of the foregoing) any property in which Guarantor may have any interest.    Further, where any money is due Lender hereunder, Lender is herewith authorized to exercise its right of set-off or "Bank Lien" as to any moneys deposited in demand, checking, time, savings, or other accounts of any nature maintained in and with it by any of the undersigned, without advance notice.    Said right of set-off shall also be applicable and exercised by Lender, in its sole discretion, where Lender is indebted to Guarantor by reason of any Certificates of Deposit, Bonds, Notes or otherwise.

7.      Guarantor agrees that his liability hereunder shall not be diminished by any failure on the part of Lender to perfect (by filing, recording or otherwise) any security interests he may have in any property securing this Guaranty Agreement and/or the Obligations of Borrower secured hereby and hereunder.

8.      Guarantor further hereby consents and agrees that Lender may at any time, or from time to time, in its sole discretion: (i) extend or change the time of payment, and/or the manner, place or terms of payment of any or all of the Obligations of Borrower, upon reasonable notice to Guarantor; (ii) exchange, release and/or surrender all or any of any collateral security, or any parts thereof, by whomsoever deposited, which is or may hereafter be held by it in connection with all or any of the Obligations of Borrower and/or any liabilities or obligations of Guarantor hereunder; (iii) sell or otherwise dispose of and/or purchase all or any of any such collateral at public or private

3

sale, or to or through any investment securities broker, and after deducting all costs and expenses of every kind for collection, preparation for sale, sale or delivery, the net proceeds of any such sales or other disposition may be applied by Lender upon all or any of the Obligations of Borrower; and, (iv) settle or compromise with the Borrower, any insurance carrier and/or any other persons liable thereon, any and all of the Obligations of Borrower, and/or subordinate the payment of all or any part of same, to the payment of any other debts or claims, which may at any time be due or owing to Lender and/or any other persons; all in such manner and upon such terms as Lender may deem proper and/or desirable, and without notice to or further assent from Guarantor, it being agreed that Guarantor shall be and remain bound upon this Guaranty Agreement, irrespective of the existence, value or condition of any collateral, and notwithstanding any such change, exchange, settlement, compromise, surrender, release, sale or other disposition, application, renewal or extension and notwithstanding also that the Obligations of Borrower may at any time exceed the aggregate principal sum of the Note. Further, this Guaranty shall not be construed to impose any obligation on Lender to extend or continue to extend credit or otherwise to deal with Borrower at any time.

9.    If Borrower is an organization, this Guaranty covers all Obligations of Borrower purporting to be created or undertaken on behalf of such organization by any officer, partner, manager or agent of such organization, without regard to the actual authority of any such officer, partner, manager or agent, whether or not corporate resolutions, proper or otherwise, are given by any corporate Borrower to Lender, and/or whether or not such purported organizations are legally chartered or organized.

10.    In consideration of Lender's extension of credit to Borrower in Lender's sole discretion, Guarantor hereby agrees:

(a)    To subordinate, and by this Agreement does subordinate debts now or hereafter owed by Borrower to Guarantor to any and all debts of Borrower to Lender now or hereafter existing while this Agreement is in effect.

(b)    Every note evidencing any part of the subordinated debt and every ledger page relating thereto will bear a legend which will indicate this subordination.

(c)    Guarantor will not request or accept payment of or any security for any part of the subordinated debt, and if all or any part of it should be paid to Guarantor, through error or otherwise, Guarantor will immediately forward every such payment to Lender in the form received, properly endorsed to the order of Lender, to apply on any debt then owing to Lender by the Borrower. This subordination shall continue in full force and effect as long as this Agreement is in effect.

11.    This Guaranty Agreement shall be binding upon Guarantor, his heirs, personal representatives, successors and assigns; and it shall inure to the benefit of, and be enforceable by, Lender, and its successors, transferees and assigns. It further shall be deemed to have been made under and shall be governed by the Laws of the State of South Carolina in all respects, including matters of construction, validity and performance.

4

12.     Further, all terms or expressions contained herein which are defined in the South Carolina Uniform Commercial Code shall have the same meaning herein as in said Code.

13.     No waiver by Lender of any defaults by Guarantor or Borrower shall operate as a waiver of any other default or of the same default on a future occasion. Further, use of the masculine or neuter pronoun herein shall include the masculine, feminine and neuter, and also the plural. Lender, or any other holder hereof, may correct patent errors in this Agreement.

14.     Guarantor hereby waives: (i) notice of acceptance of this Guaranty; (ii) notices of extensions of the Note and/or continuations of the Note to Borrower by Lender; (iii) notices of entering into and engaging in business transactions and/or contractual relationships and any other dealings between Borrower and Lender; (iv) presentment and/or demand for payment of any of the Obligations of Borrower; (v) protest or notice of dishonor or default to Guarantor or to any other person with respect to any of the Obligations of Borrower; (vi) any demand for payment under this Guaranty; and, (vii) the benefit of any homestead or other exemption and (viii) any appraisal rights to reduce a deficiency judgment against either the Guarantor or the Borrower.

15.     Anything contained herein to the contrary notwithstanding, if for any reason the effective rate of interest on any of the Obligations of Borrower should exceed the maximum lawful rate, the effective rate of such obligations shall be deemed reduced to and shall be such maximum lawful rate, and any sums of interest which have been collected in excess of such maximum lawful rate shall be applied as a credit against the unpaid principal balance due.

16.     Guarantor acknowledges and represents that he has relied upon his own due diligence in making his own independent appraisal of Borrower and its business affairs and financial condition, will continue to be responsible for making his own independent appraisal of such matters and has not relied upon and will not hereafter rely upon Lender for information for such appraisal or other assessment or review and, further, will not rely upon any such information which may now or hereafter be prepared by or for Lender for any appraisals regarding the Borrower.

17.     Any provision hereof to the contrary notwithstanding, to the extent Guarantor is determined to be an "insider" as such term is used in the United States Bankruptcy Code or cases thereunder, Guarantor waives any right (whether established by contract or statute or otherwise available at law or in equity) to reimbursement, indemnity, subrogation, contribution or other such claim against Borrower or any other person primarily or secondarily liable for any obligations of Borrower or any other person primarily or secondarily liable for any obligations of Borrower with respect to any disbursement or payment made by Guarantor under or in connection with this Guarantee or otherwise.

5

18.     In the event any payment made by Guarantor to Lender is determined to be a preferential transfer under any bankruptcy or similar law and Lender is required to return such payment to a trustee in bankruptcy, to a receiver, to the Guarantor, or to another person or entity, Guarantor's obligations under this Guaranty shall not be discharged with respect to such preferential payment notwithstanding any satisfaction of the Note guaranteed hereby or the return of this Guaranty. Furthermore, Guarantor shall be liable to Lender for the amount of any such preferential payment and in any interest, expenses or other expenses, including but not limited to reasonable attorney's fees, incurred by Lender related in any way to such preferential payment, and Guarantor agrees to reinstate any collateral given to Lender as security for the obligations under this Guaranty notwithstanding the fact that such collateral may have been released by Lender.

19.     Guarantor acknowledges that Guarantor has previously submitted financial statements and tax returns to Lender for the purpose of inducing Lender to extend credit to Borrower. Guarantor agrees to update such financial statements and provide tax returns from time to time as reasonably requested by Lender. Guarantor further agrees to immediately notify Lender in writing of any material adverse change in the financial position of Guarantor.

20.     EVENTS OF DEFAULT.  Guarantor shall be in default under this Guaranty Agreement upon the happening of any of the following events, circumstances or conditions, namely:

(a)     Default in the payment or performance of any of the obligations or of any covenant, warranty or liability contained or referred to herein, or contained in any other contract or agreement of Borrower or Guarantor with Lender, whether now existing or hereafter arising; or,

(b)     Any warranty, representation or statement made or furnished to Lender by or on behalf of Borrower or Guarantor in connection with this Guaranty Agreement or to induce Lender to extend credit or otherwise deal with either Borrower or Guarantor proving to have been false in any material respect when made or furnished; or,

(c)     Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any state or federal bankruptcy or insolvency laws by or against Guarantor or Borrower; or,

(d)     Failure of a corporate Borrower or Guarantor to maintain its corporate existence in good standing; or,

(e)     The assertion or making or any seizure, vesting or intervention by or under authority of any government by which the management of Borrower or Guarantor is displaced or their authority in the conduct or their businesses is curtailed; or,

6

(f)     The entry of any monetary judgment or the assessment and/or filing of any tax lien against either Borrower or Guarantor or upon the issuance of any writ of garnishment or attachment against any property of, debts due or rights of Borrower or Guarantor, to specifically include the commencement of any action or proceeding to seize moneys of either Borrower or Guarantor on deposit in any bank account with Lender, which is not contested or appealed in good faith or dismissed, discharged or bonded within thirty (30) days.

Notwithstanding the foregoing, the death of an individual Guarantor shall not be an Event of Default if, within sixty (60) days thereafter, the Primary Obligor or estate of the deceased guarantor furnishes a substitute guarantor or makes other arrangements, either of which must be acceptable to Lender in its sole discretion.

21.     REMEDIES ON DEFAULT.     Upon the occurrence of any of the foregoing events, circumstances, or conditions of default, all of the obligations, evidenced herein and secured or guaranteed hereby shall immediately be due and payable without notice. Further, Lender shall then have all of the rights and remedies granted hereunder, and all of the rights and remedies of a Secured Party and/or Holder-in-Due-Course under the South Carolina Uniform Commercial Code and/or under other laws of South Carolina.

22.     Guarantor and Lender submit to the jurisdiction of any court of competent jurisdiction within the State of South Carolina. Guarantor and Lender agree that any action concerning this Guaranty or the debts guaranteed hereby, whether initiated by Lender, Borrower, Guarantor or any other party, shall be tried only in a court of competent jurisdiction within the State of South Carolina, and Guarantor and Lender agree that venue shall be only in Richland County, South Carolina, or in the U.S. District Court in Columbia, South Carolina. All matters arising hereunder shall be determined in accordance with the law and practice of such South Carolina court. Guarantor further agrees to comply with all requirements necessary to give such court in personam jurisdiction and agree that service of process may be accomplished by, in addition to any other lawful means, certified mail, return receipt requested, to the Guarantor at Guarantor's address set forth above or any new address of which Lender has been notified by Guarantor in writing.

**REMAINDER     OF     PAGE     INTENTIONALLY     BLANK**

7

The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the Premises apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE PREMISES.

WITNESS the Hands and Seals of the undersigned, this Guaranty Agreement being executed and delivered on the date first above written.

WITNESSES:

GUARANTOR:

Kyle Tauch, Individually

8

# EXHIBIT E

## GUARANTY
(Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is January 26, 2010. The parties and their addresses are:

**LENDER:**
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
501 Roper Mountain Road
Greenville, SC 29615
Telephone: (864) 477-2560

**BORROWER:**
KT SPEARS CREEK LLC
a South Carolina Limited Liability Company
5410 Piping Rock
Houston, TX 77056

**GUARANTOR:**
KYLE D TAUCH
701 N Post Oak Rd, Apt 300
Houston, TX 77024

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. Pronouns. The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. Note. "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. Property. "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 301, dated January 26, 2010, from KT Spears Creek LLC (Borrower) to you, in the amount of $5,950,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

A. Future Advances. I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive

Kyle D Tauch
South Carolina Guaranty
SC/4Xdbailey0011980000663201401261OY

possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way effect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, the following: a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of my right of set-off.

Kyle D Tauch
South Carolina Guaranty
SC/4Xdballey0011880000663201401 2610Y                Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™                Page 2

F. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

14. APPLICABLE LAW. This Guaranty is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. AGREEMENT TO ARBITRATE. You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

21. WAIVER OF TRIAL FOR ARBITRATION. You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

22. SIGNATURES. By signing under seal, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR: _____ (Seal)
Kyle D Tauch
Individually

## EXECUTION NOTICE

**RICHLAND COUNTY TREASURER**
P.O. BOX 11947
COLUMBIA SC 29211-1947

REAL ESTATE
### THESE TAXES ARE PAST DUE! PAY NOW TO AVOID ADVERTISEMENT AND SALE OF PROPERTY

| YEAR | BILL NUMBER | TAX MAP # | DIST. |
|------|-------------|-----------|-------|
| R-2009 | 091378 | 25800-03-40 | 2DP |

PROPERTY DESCRIPTION
10682 TWO NOTCH RD

| LEVY YEAR | ASSESSMENT VALUE | TOTAL |
|-----------|------------------|-------|
| 2009 | 707,800 | 359,595.32 |

18035 1 MB 0.382
K T SPEARS CREEK LLC          018035
%KYLE TAUCH                    18035
5410 PIPING ROCK LN              76
HOUSTON TX  77056-4916

R

| | | |
|---|---|---|
| AMOUNT DUE BY | 5/19/2010 | 359,595.32 |
| EXECUTION COST | | 80.00 |
| AMOUNT DUE AFTER | 5/19/2010 | 359,675.32 |

IF THESE TAXES, ASSESSMENTS, PENALTIES AND COSTS ARE NOT PAID BY 12/03/2010 . THE PROPERTY MUST BE DULY ADVERTISED AND SOLD FOR DELINQUENT PROPERTY TAXES, ASSESSMENTS, PENALTIES AND COSTS.

258000340

## ADVERTISING OF PROPERTY WILL BEGIN THE WEEK OF NOVEMBER 14, 2010

**IF YOU DO NOT PAY THE AMOUNT DUE, THE FOLLOWING ACTIONS WILL BE TAKEN:**

1. AN "OFFICIAL NOTICE OF LEVY" WILL BE MAILED TO YOU.
2. A SIGN MAY BE PLACED ON YOUR PROPERTY ANNOUNCING THAT THE PROPERTY IS TO BE SOLD FOR NON-PAYMENT OF TAXES.
3. YOUR NAME AND PROPERTY WILL BE ADVERTISED IN A LOCAL NEWSPAPER.
4. YOUR PROPERTY WILL BE SOLD AT A PUBLIC AUCTION.

## SEE IMPORTANT PHONE NUMBERS ON BACK

IF THIS BILL IS INCORRECT, PLEASE CALL (803) 576-2250

▼ TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT ▼

*** CREDIT CARD PAYMENT FOR LEVY YEAR 2009 ONLY ***

BILL NUMBER:    R-2009-091378          YOU CAN PAY BY CREDIT CARD AT WWW.RCGOV.US
                                       OR CALL 803-576-2262. THERE WILL BE A PROCESSING FEE.
TAX MAP #:      25800-03-40

| AMOUNT DUE | 359,595.32 |
|------------|------------|

AMOUNT DUE AFTER  5/19/2010     359,675.32

K T SPEARS CREEK LLC
%KYLE TAUCH

5410 PIPING ROCK
HOUSTON          TX 77056

MAKE PAYMENTS TO:

**RICHLAND COUNTY TREASURER**
PO Box 11947
Columbia SC  29211-1947

R

*April 16, 2010*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | CASE NO. 11-33991 |
| | § | (Chapter 11) |
| DEBTOR | § | |
| | § | |
| | § | |
| FIRST SAVERS BANK | § | |
| | § | |
| Movant | § | |
| | § | |
| VS. | § | |
| | § | |
| KT SPEARS CREEK, LLC | § | |
| | § | |
| Respondent | § | |

## ORDER FOR RELIEF FROM STAY

On this day came on to be heard the Motion for Relief from Stay filed herein by First Savers Bank (the "Bank"). The Court finds good cause to grant the relief requested.

It is hereby ORDERED that the automatic stay is terminated to allow the Bank to foreclose its lien on the 65.94-acre tract described in the *Motion for Relief From the Automatic Stay* and (if necessary) to redeem the Property with respect to the tax sale.

The ten-day stay imposed by FED. R. BANKR. P.4001(a)(3) is waived.

SIGNED: _____.

_____
UNITED STATES BANKRUPTCY JUDGE

APPROVED:


*/s/ David S. Elder*
David S. Elder
State Bar No. 06507700
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, Texas  77002
713-276-5750 (*direct dial*)
713-276-6750 (*direct fax*)
delder@gardere.com

*ATTORNEY-IN-CHARGE FOR*
*FIRST SAVERS BANK*

## Service List

*(KT Spears Creek, LLC)*
Case No. 11-33991
Chapter 11

**Debtors:**
KT Spears Creek, LLC
5410 Piping Rock
Houston, TX 77056

**Debtors' Attorney:**
**Okin Adams & Kilmer LLP**
Matthew S. Okin
Maggie D. Conner
1113 Vine St., Suite 201
Houston, TX 77002
Tel: 713- 228-4100
Fax: 888-865-2118
mokin@oakllp.com
mconner@oakllp.com

**U.S. Trustee:**
Office of the U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Fax:713-718-4670

---

*Note:*
*No mail will be sent to shaded*
*addresses as mail is consistently*
*returned by the USPO as box closed,*
*moved, insufficient address, unknown,*
*undeliverable, etc.*

---

**Internal Revenue Service:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

**Counsel for RBC:**
Constance L. Young
Johnston, Allison & Hord, PA
1065 East Morehead Street
Charlotte, NC 28204
Tel: 704.998.2259
Fax: 704.376.1628
cyoung@jahlaw.com

Joseph G. Epstein
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
Tel: 713.650.2740 Direct
Fax: 713.650.2400 Fax
jepstein@winstead.com

David A. Zdunkewicz
Joseph P. Rovira
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX 77002
Tel: 713.220.4128
Fax: 713.238.7106
dzdunkewicz@andrewskurth.com
josephrovira@andrewskurth.com

**Receiver:**
Henry W. Moore, Jr., CCIM
Colliers International
1301 Gervais Street, Suite 600 (29201)
P.O. Box 11610
Columbia, SC 29211-1610
Tel: 803.254.2300
Fax: 803.401.4236
woody.moore@colliers.com

*Property Manager:*
Lisa Taylor
Greystar
521 East Morehead Street, Suite 140
Charlotte, NC  28202
Tel: 704.332.0404
Fax: 704.332.0405
ltaylor@greystar.com

Kelly Carrig
Greystar
10682 Two Notch Road
Elgin, SC  29045
Tel: 803.865.0400
Fax: 803.865.2505
greenhillparishmgr@greystar.com

*20 Largest Creditors:*
Richland County South Carolina
2020 Hampton Street
Columbia, SC  29204

Nexsen Pruett, LLC
Attn: Henry W. Brown
P.O. Drawer 2426
Columbia, SC  29202

Orkin, Inc.
P.O. Box 71869
North Charleston, SC  29415

Signs by Tomorrow
7364 Two Notch Road
Columbia, SC  29223

First Palmetto Savings Bank
1636 HWY 17 North
Columbia, SC  29223

First Savers Bank, a division of
Plantation Federal Bank
Att'n: Mark Kiskunas
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Hyco Plumbing, Inc.
c/o N. Ward Lambert
Harper Lambert & Brown
P.O. Box 908
Greenville, SC  29602

IES Residential, Inc.
f/k/a Houston-Stafford Electric
c/o Stephen E. Toomey, Attorney at Law
4200 South Shepherd, Ste. 212
Houston, TX  77098

RBC
P.O. Box 1220
Rocky Mount, NC  27802-1220

*Parties Requesting Notice:*
Shari L. Heyen
HeyenS@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

Plantation Federal Bank
11039 Ocean Highway
PO Box 3848
Pawleys Island, SC  29585

Amy L.B. Hill
Sowell Gray
P.O. Box 11449
Columbia, SC  29211

HOUSTON 1114681v.2